FILED
2024 Mar-18 PM 02:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA,**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **KIM NAUGLE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE** |
| | ) | **NUMBER: __________** |
| **THE LINCOLN NATIONAL** | ) | |
| **LIFE INSURANCE COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

Comes now the Plaintiff, Kim Naugle, and hereby files her Complaint against The Lincoln National Life Insurance Company.

**PARTIES**

1. The Plaintiff, Kim Naugle ("Ms. Naugle"), is an insured under Group Long Term Disability Plan for employees of Siemens Operating Company ("the Plan"), who has been improperly denied disability benefits under the Plan.

2. Defendant, The Lincoln National Life Insurance Company ("Lincoln"), is the Administrator of the Plan. Upon information and belief, Lincoln is a foreign corporation incorporated in the State of Pennsylvania, which conducts business generally in the State of Alabama and specifically within this District.

## JURISDICTION AND VENUE

3. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiff asserts claims for short term disability ("STD") and long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Ms. Naugle brings this action to recover benefits due to her pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(3). This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties. 29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4. The Plaintiff in this case was subjected to improper claim handling procedures by Lincoln as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Ms. Naugle's valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit Plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Ms. Naugle, as an employee insured for disability, was supposed to be treated as a beneficiary by Lincoln in its role as a statutory fiduciary. Instead, Lincoln has breached those duties and victimized Ms.

Naugle by engaging in improper claim handling procedures. As described in more detail below, Lincoln has clearly engaged in bad faith claim handling and Ms. Naugle, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

**STATEMENT OF FACTS**

5. Ms. Naugle is an insured for benefits under the Plan. Lincoln is the administrator of the Plan. The Plan provides insureds, like Ms. Naugle, STD and LTD benefits and was in full force and effect at all times relevant to this Complaint.

6. At all relevant times, Ms. Naugle was employed by Siemens Corporation and was a covered participant in the Plan, as defined in 29 U.S.C. § 1002(7) and under the terms and conditions of the Plan.

7. Ms. Naugle, a woman sixty (60) years of age, worked at Siemens Corporation until her disabilities forced her to stop working on or about December 23, 2020.

8. Ms. Naugle was employed by Siemens Corporation as a Project Coordinator, an occupation which is considered of a Light exertional level.

9. Ms. Naugle's medical disabilities include generalized anxiety disorder, major depressive disorder, posttraumatic stress disorder ("PTSD"), coronary artery disease, hypertension, and history of coronary bypass surgery. The symptoms of her impairments and the side effects of the medications and treatment prescribed render Ms. Naugle unable to perform any job.

10. Ms. Naugle was approved for and began receiving STD benefits from Lincoln on December 31, 2020.

11. Ms. Naugle received continuous STD benefits from December 31, 2020 through March 22, 2021, totaling nearly three (3) months of continuous benefits.

12. Ms. Naugle's LTD benefits were approved and paid from December 31, 2020 until March 22, 2021 because Lincoln determined that she was unable to perform all the essential functions of her position, as defined under the Plan.

13. By letter dated June 3, 2021, Lincoln wrongfully terminated Ms. Naugle's LTD benefits beyond March 22, 2021.

14. The Plan, as governed by ERISA and relied upon to deny Ms. Naugle's STD benefits states, in part:

> For purposes of the Plan, "Disability" means a physical or mental condition that prevents an eligible employee from performing all the essential functions of his or her position, with or without reasonable accommodations, for more than seven consecutive calendar days. The disability must be verified by and under the continuous care of an appropriate legally licensed health care practitioner working within the scope of his or her license. The employee must be actively at work at the time the disability occurs.

15. Using this test of disability, Lincoln found Ms. Naugle disabled and approved her STD benefits for almost three (3) months, as Ms. Naugle's generalized anxiety disorder, major depression, PTSD, and coronary artery disease prevented her from performing all the essential functions of her occupation.

16. However, on June 3, 2021, Lincoln reversed course and terminated Ms. Naugle's STD benefits. The termination of STD benefits was based at least in part upon the paid review of Dr. Marcus Goldman ("Dr. Goldman").

17. Dr. Goldman, who has never seen or treated Ms. Naugle, opined that the claimant did not experience impairment which would preclude her regular occupation, in direct contradiction to the statements and opinions of Ms. Naugle's treating medical providers.

18. Despite Lincoln finding Ms. Naugle's medical records to be sufficient to prove disability for nearly three (3) months, Dr. Goldman insisted that the frequency and intensity of Ms. Naugle's medical treatment was not indicative of impairment.

19. During the period reviewed, Ms. Naugle in fact maintained the same level of care with her primary care physician and therapist which was once deemed sufficient to prove disability while also beginning to receive additional medical care, initiating further therapy with a second provider in June 2021.

20. Dr. Goldman claimed that Ms. Naugle's symptoms resulted from workplace stress and were therefore not indicative of global impairment, ignoring the multiple non-work-related stressors experienced by the claimant and noted by her medical providers to negatively affect Ms. Naugle's symptoms.

21. Lincoln and Dr. Goldman did not consider all of Ms. Naugle's medical

conditions and instead ignored, for example, cardiology treatment and December 2020 notations from Ms. Naugle's cardiologist, Dr. Hemant Solomon ("Dr. Solomon"), supporting a leave from work.

22. On October 21, 2021, Ms. Naugle appealed the denial of her STD benefits by and through counsel. Included with this appeal were additional medical records as well as personal declarations from Ms. Naugle and her husband.

23. Updated medical records included a June 4, 2021 primary care checkup with Dr. Ronald Prucha ("Dr. Prucha") which noted Ms. Naugle's anxiety to be a "chronic, worsening problem," as well as a July 15, 2021 statement from Dr. Prucha noting that "Ms. Naugle continues to be under my medical care and remains unable to work due to an underlying medical condition. She has not, as yet, been medically cleared to return to work and continues to convalesce from her condition."

24. Dr. Solomon provided a statement on September 13, 2021 noting diagnoses of Takotsubo cardiomyopathy and coronary artery disease and opining that Ms. Naugle's generalized anxiety, major depression, and PTSD could further elevate her blood pressure.

25. Eric Kelly, LCSW ("Mr. Kelly"), Ms. Naugle's therapist, provided an assessment on October 20, 2021 which noted that the claimant's depression, anxiety, and PTSD caused difficulty with concentration, persistence, and pace, serious distraction which would prevent her from completing tasks in a timely manner, and

an expectation of numerous absences from work each month. Mr. Kelly further noted that the claimant's "severe anxiety/depression symptoms significantly decrease her focus, as well as slowed pace & lower functioning in the workplace."

26. In support of her appeal, Ms. Naugle submitted a declaration, pursuant to 28 U.S.C. § 1746, through which she outlined the effects of her disabling condition on her activities of daily living and her ability to return to work. Under penalty of perjury, Ms. Naugle noted that her symptoms caused even simple tasks to overwhelm and exhaust her and to make it "impossible to do anything with consistency."

27. Ms. Naugle's husband, Ronald Naugle, also provided a declaration in support of his wife's disability claim. Under penalty of perjury, Mr. Naugle reported the claimant's difficulty with stress and exhaustion, noting that Ms. Naugle "has a never ending routine of trying to manage her medications, her doctor appointments, her emotions, accomplish any goals, try to relax her mind or find some peace is she can barely do, and it takes everything out of her to do it."

28. Lincoln informed Ms. Naugle of additional independent peer reports in a letter dated November 11, 2021, allowing her an opportunity to respond to these reports.

29. Ms. Naugle's claim was referred to paid reviewers Dr. Candace Good ("Dr. Good") and Dr. Mark A. Sims ("Dr. Sims"), both of whom concluded that Ms.

Naugle did not require restrictions and limitations severe enough to preclude full-time work.

30. Although Dr. Good spoke with Ms. Naugle's therapist, Mr. Kelly, and was informed of the severity of Ms. Naugle's symptoms and the minimal progress made thus far through treatment, Dr. Good dismissed this opinion and instead issued an opinion based upon a generalized blanket statement that "anxiety and depression are typically treated on an outpatient basis and do not interfere with ability to work."

31. Dr. Sims, who has never seen or treated the claimant, concluded that Ms. Naugle did not require restrictions and limitations which would preclude work activity, to the contradiction of Ms. Naugle's treating physicians.

32. As Dr. Good examined Ms. Naugle's claim from a solely psychiatric perspective and declined to comment on cardiovascular or other physical conditions, and as Dr. Sims examined Ms. Naugle's claim from a cardiovascular perspective and decline to comment on psychiatric conditions, neither of these two paid reviewers considered the effect of her psychiatric conditions on her physical state or of her physical conditions on her psychiatric state.

33. By and through counsel, Ms. Naugle responded to these paid reviews on December 1, 2021.

34. Despite providing proof of her disability both before the termination of benefits and throughout the appeals process, Lincoln refused to award Ms. Naugle's

STD benefits and issued its final termination by letter dated December 10, 2021.

35. In its December 10, 2021 denial letter, Lincoln relied upon the opinions of its paid reviewers, Dr. Good and Dr. Sims, which contradicted the repeated opinions of Ms. Naugle's treating physicians.

36. Following this ultimate denial for STD benefits, Ms. Naugle submitted an application for LTD benefits to Lincoln.

37. By letter dated March 9, 2022, Lincoln wrongfully denied Ms. Naugle's LTD benefits.

38. The Plan at issue, as governed by ERISA and relied upon to deny Ms. Naugle's LTD benefits states, in part:

> "Disability" or "Disabled" means:
> 1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:
>    i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>    ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

39. Lincoln's March 9, 2022 denial of Ms. Naugle's LTD benefits was based at least in part upon the paid reviews of Dr. Wendell Goins ("Dr. Goins") and Dr. Stephen Gilman ("Dr. Gilman").

40. Dr. Goins, who has never seen or treated the claimant, opined that, while the claimant experienced an impairing diagnosis, this impairment was not

severe enough to preclude work activity.

41. Dr. Gilman, who has never seen or treated Ms. Naugle, concluded that no impairments were supported at all, contradicting the opinions of the claimant's own physicians as well as Dr. Goins.

42. Dr. Gilman claimed that no impairments were indicated due to a lack of noted cognitive decline, psychosis, delusion, suicidal ideation, or higher levels of care, none of which are criteria for disability under the Plan.

43. On May 23, 2022, Ms. Naugle was informed by the Social Security Administration that she was deemed totally disabled as of December 24, 2020.

44. By and through counsel in a letter dated September 2, 2022, Ms. Naugle appealed the denial of her LTD benefits. Ms. Naugle included with her appeal letter additional medical records as well as a Notice of Award from the Social Security Administration.

45. Updated medical records included a February 7, 2022 statement from Dr. Prucha noting the claimant's history of depression, anxiety, and PTSD and asserting that Ms. Naugle "continues to struggle daily with depression, anxiety, PTSD and stress and has been under the care of multiple physicians and therapists."

46. Despite providing proof of her disability before the denial of benefits and throughout the appeals process, Lincoln continued to refuse benefits to Ms. Naugle and instead issued its final termination by letter dated November 11, 2022.

47. In its final termination letter of November 11, 2022, Lincoln relied on the opinions of paid medical reviewers Dr. Justin Stamschror ("Dr. Stamschror") and Dr. Stanley Chou ("Dr. Chou").

48. Dr. Stamschror, who has never seen or treated Ms. Naugle, asserted that Ms. Naugle suffered no impairing conditions, contradicting numerous statements provided by the claimant's treating physicians as well as the Social Security Administration's findings of medically determinable impairments.

49. Dr. Chou, who has never seen or treated the claimant, acknowledged that Ms. Naugle required restrictions and limitations secondary to coronary artery disease and prior coronary artery bypass grafting but still asserted that Ms. Naugle was capable of unrealistically arduous exertional tasks such as frequent standing, to the direct contradiction of the claimant's own physicians and the findings of the Social Security Administration.

50. Although neither Dr. Stamschror nor Dr. Chou had treated Ms. Naugle, spoke to Ms. Naugle, or spoke with Ms. Naugle's treating physicians, these paid reviewers opined that Ms. Naugle had the functional capacity to return to her own occupation.

51. Lincoln informed Ms. Naugle of the paid reviews conducted by Dr. Stamschror and Dr. Chou in a letter dated October 3, 2022, providing her an opportunity to respond.

52. By and through counsel, Ms. Naugle responded to Dr. Stamschror's and Dr. Chou's paid reviews in a letter dated October 24, 2022.

53. Lincoln continued to uphold the opinions of paid reviewers over those of treating physicians and, based upon Dr. Stamschror's and Dr. Chou's opinions, issued its final denial of LTD benefits on November 11, 2022.

54. As of this date, Ms. Naugle has been denied benefits rightfully owed to her under the Plan.

55. Ms. Naugle has met and continues to meet the Plan's definition of disabled.

56. Ms. Naugle has exhausted any applicable administrative review procedures and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

57. Lincoln's refusal to pay benefits has caused tremendous financial hardship on Ms. Naugle.

## **STANDARD OF REVIEW**

58. A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.

59. When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent

conflict of interest that mandates a heightened arbitrary and capricious standard of review.

60. Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Lincoln or to any other entity who may have adjudicated Ms. Naugle's claim. Therefore, the Court should review Ms. Naugle's claim for benefits under a *de novo* standard.

61. Upon information and belief, Lincoln evaluated and paid all claims under the Plan at issue, creating an inherent conflict of interest.

62. Lincoln has failed to comply with the letter of the claims procedures outlined in ERISA and therefore Ms. Naugle's claim for benefits should be reviewed by this Court under a *de novo* standard.

63. In the alternative, if the Court finds that Lincoln is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's benefits constitutes a clear abuse of discretion as Lincoln's decision to deny Ms. Naugle's STD and LTD benefits was arbitrary and capricious.

## DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

64. Lincoln has wrongfully denied STD and LTD benefits to Ms. Naugle in violation of the policy provisions and ERISA, for the following reasons:

(a) Ms. Naugle is totally disabled, in that she is unable to perform the material and substantial duties of her own occupation;

(b) Ms. Naugle is entitled to disability benefits under the terms of the Plan, as she meets the Plan's definition of disability and she has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

(c) Lincoln failed to accord proper weight to the evidence in the administrative record showing that Ms. Naugle is totally disabled;

(d) Lincoln's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable, arbitrary, capricious, and otherwise violated the standards required by ERISA;

(e) Lincoln wrongfully denied Ms. Naugle a full, fair and impartial review of her benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary, looking instead for less credible evidence of marginal significance to support its goal of denying her benefits claim;

(f) Lincoln failed to give proper weight to Ms. Naugle's own accounts regarding the debilitating effects of her symptoms;

(g) Lincoln ignored the records and opinions of Ms. Naugle's treating physicians that show that Ms. Naugle is totally disabled, and instead

based its decision to deny benefits on its internal review by Lincoln staff member and its paid reviewers, who had never seen or treated Ms. Naugle, some of whom never spoke with her treating physicians about the nature of her disability, and who were not as qualified as Ms. Naugle's treating physicians to formulate opinions regarding the nature and extent of her disability;

(h) Lincoln failed to exercise reasonable flexibility in its claims review process to assure Ms. Naugle a full, fair review, well-reasoned and principled of her claim;

(i) Lincoln administered Ms. Naugle's claim for benefits while acting under an inherent and substantial conflict of interest in that Lincoln served both as fiduciary of and funding source for the Plan, and placed its own pecuniary interests above Ms. Naugle's interests in wrongfully terminating her LTD benefits and failing to administer the Plan as an impartial decision-maker, free of such conflict of interest, would;

(j) Lincoln made erroneous interpretations of some evidence in violation of its obligation to discharge its duties with care, prudence, skill, and diligence;

(k) Lincoln acted in bad faith by denying Ms. Naugle's claim based

upon the inability of Lincoln's paid reviewers to find Ms. Naugle disabled, and otherwise failed to administer the Plan honestly, fairly and in good faith, and to at all times act in Ms. Naugle's best interests;

(l) Lincoln terminated Ms. Naugle's STD benefits without the support of any new information that altered in some significant way the previous decision to pay STD benefits to Ms. Naugle;

(m) Lincoln terminated Ms. Naugle's STD benefits without the support of any new information that showed improvement in Ms. Naugle's medical condition, when in fact, her treating physicians opined that her condition continued to deteriorate;

(n) Lincoln failed to support the denial of benefits with substantial evidence;

(o) Lincoln imposed a standard not required by the Plan's provisions, by requiring objective evidence of Ms. Naugle's subjective medical conditions where such evidence cannot be reasonably provided;

(p) Lincoln denied Ms. Naugle's claim for a lack of objective medical evidence when Ms. Naugle has provided ample subjective evidence of a disability and Lincoln has neither identified any objective evidence that Ms. Naugle could have supplied to support the claim;

(q) Lincoln failed to adequately consider Ms. Naugle's non-exertional limitations caused by her disability, such as the side effects of her prescribed medication, her ability to regularly attend work, and the effect her disability has on her concentration, persistence and pace when performing the material duties of her occupation;

(r) Lincoln's denial of Ms. Naugle's benefits failed to provide a detailed explanation and the basis of its disagreement with the opinions of Ms. Naugle's treating physicians;

(s) Lincoln's denial of Ms. Naugle's benefits failed to provide a detailed explanation and the basis of its disagreement with the disability determination by the Social Security Administration;

(t) Lincoln wrongfully denied Ms. Naugle's benefits in such other ways to be shown through discovery and/or hearing.

65. As a result of the foregoing, the relief to which Ms. Naugle is entitled includes: (1) monthly LTD income benefits to Ms. Naugle, (2) payment of back STD benefits from March 23, 2021 throughout the maximum duration of the STD Plan, (3) payment of back LTD benefits from June 24, 2021 to the date of judgment, (4) pre-judgment interest, (5) equitable relief, including declaratory and injunctive relief, to redress Lincoln's practices that are violative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (6) an award of attorney's fees and

costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

66. Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

67. At all times relevant to this action, Ms. Naugle was a participant of the Plan underwritten by Lincoln and issued to Siemens Corporation and was eligible to receive disability benefits under the Plan.

68. As more fully described above, the termination and refusal to pay Ms. Naugle's benefits under the Plan for the period from at least on or about March 23, 2021 through the present constitutes a breach of Defendant's obligations under the Plan and ERISA. The decision to deny benefits to Ms. Naugle constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1. A judgment ordering the applicable standard of review in this case is *de novo*;

2. A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying her

STD and LTD benefits owed to her through the Plan;

3. In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable, arbitrary and capricious, and unsupported by substantial evidence;

4. Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by denying Ms. Naugle's STD and LTD benefits, that Ms. Naugle is entitled to a continuation of future benefits from Defendant pursuant to the Plan;

5. Declaratory and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff; enjoining Defendant from further violations of its fiduciary duties; and directing Defendant to take all actions necessary to administer the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

6. A judgment ordering Defendant to pay Ms. Naugle's STD benefits from March 23, 2021 throughout the maximum duration of the STD Plan as well as LTD benefits from June 24, 2021 through the date judgment is entered herein, together with pre-judgment interest on each and every such monthly payment through the

date of judgment;

7. An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

8. For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this the 18th day of March, 2024.

*/s/ Peter H. Burke*_______________
Peter H. Burke (ASB-1992-K74P)
phburke@crlegalteam.com
CR LEGAL TEAM, LLP
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Phone: 205-747-1901
Fax: 877-718-9952
*Attorney for Plaintiff Kim Naugle*

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

The Lincoln National Life Insurance Company
c/o Legal Department
1300 S. Clinton St.
Fort Wayne, IN 4680