FILED
2024 Jun-20 PM 05:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

| | |
|---|---|
| Date: | November 11, 2022 |
| To: | CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | |
| Fax: | (877) 293-8687 |
| From: | Tammy Sullivan<br>Claim Resolution Specialist<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-0401 |
| Total Pages<br>(Including Cover): | 11 |
| RE:<br><br>Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

EXHIBIT
2

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

November 11, 2022

Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

To Whom It May Concern:

We have completed our review of Kim Naugle's appeal for Long Term Disability (LTD) benefits under the Siemens Corporation's Group Disability Income Policy ("the Policy"). Based on our review the original determination to deny benefits is being maintained.

**<u>Initial Claim Decision</u>**

Kim Naugle filed a claim for anxiety, post-traumatic stress disorder, coronary artery disease, status post coronary artery bypass grafting, hypertension, hyperlipidemia, obesity, and history of Covid-19 infection. Based on the documentation contained in her claim file, Ms. Naugle's last day of work was December 23, 2020, and date of disability was December 24, 2020. Benefits would have begun on June 24, 2021, after satisfying her Policy's Elimination Period.

The Lincoln National Life Insurance Company evaluated Ms. Naugle's claim as of December 24, 2020, based on medical information received from Eric Kelly, LCSW, Jennie Baird Buchkovick, PA-C / Dr. Hemant Solomon, and Dr. Ronald Prucha. It was determined that Ms. Naugle was not disabled throughout and beyond the LTD Elimination Period as defined by the Policy. In February 2022 and March 2022, a review of all of the medical evidence on file was performed by independent physicians, board certified in internal medicine and psychiatry, and it was determined that impairment from Ms. Naugle's own occupation was not supported based on the medical and vocational information contained in her file. The psychiatry physician review showed the following:

*Taking into consideration the entire clinical picture, the records do not support an impairing diagnosis from a psychiatric perspective from 06/22/2021 and ongoing. During the timeframe in question, the claimant was being managed for symptoms related to anxiety, depression, and posttraumatic stress. Clinical symptoms are largely stable. The claimant was treated on an outpatient basis with medication follow-up visits and with individual therapy. There was no evidence of any cognitive decline, psychosis, delusion, suicidal ideation, or requirements for higher*

*levels of care or service. The claimant's clinical picture did not arise to the level of impairment. There were no clinical findings from 06/22/2021 moving forward that would preclude activity. On 02/07/2022, the claimant was still in psychotherapy and was making progress towards her goals. The claimant reported that all of her issues are mental and emotional and not physical. Examination demonstrated no focal abnormalities.*

The internal medicine physician review stated the following:

*Considering the entire clinical picture, the records do support an impairing diagnosis from a family practice perspective from 06/22/2021.*

*Relative to the claimant's chronic conditions, there is no evidence of any objective or diagnostic findings that would preclude activity. The claimant is being treated at the outpatient level for behavioral health related conditions. Relative to medical conditions, the claimant's cardiac presentation has been stable. While some elevated blood pressure readings are noted, treatment of hypertension would not necessitate restrictions or limitations. The claimant specifically states she has no physical impairments at the last clinical assessment on 02/07/2022. Chronic clinical conditions are stable. However, given her age and weight restrictions/limitations would be supported given her history of medical issues. Duration of the restrictions/limitations below are through 05/15/2022 to allow for reassessment.*

*Sitting: Unrestricted*
*Standing: Occasionally up to 20 minutes at one time and up to 2 hours per day*
*Walking: Occasionally up to 10 minutes at one time and up to 1 hour per day*
*Lifting/Carrying/Pushing/Pulling: Occasionally up to 20 pounds*
*Climbing Stairs: Occasionally*
*Climbing Ladders: Occasionally*
*Stooping: Occasionally*
*Kneeling: Occasionally*
*Crouching: Occasionally*
*Crawling: Occasionally*
*Reaching Overhead: Occasionally*
*Reaching at waist and desk level: Unrestricted*
*Reaching below waist and overhead: Occasionally*
*Use lower extremities for foot controls: Occasionally*
*Keyboarding: Unrestricted*

*In addition, the claimant was noted to have tested positive for Covid in the 02/07/2022 visit. The exact date of the positive test is unknown. In addition, there was no documentation of a positive lab test. However, based solely on the claimant's description of a positive test she would warrant restrictions to include no work for 10 days from the positive result. While the claimant self-treated for symptoms related to Covid, there is no manifestation of ongoing symptoms that would necessitate long-term restrictions or limitations. An impairing diagnosis from a family practice perspective has not been determined.*

A letter was sent to Dr. Prucha on March 3, 2022, to provide opportunity to comment on the Internal Medicine peer review. Dr. Prucha signed and dated the review March 8, 2022 and returned with no additional comment provided.

A letter was sent to Eric Kelly, LCSW, on March 3, 2022, with the completed peer review and provided opportunity to comment on the competed review. The provider returned an email on March 3, 2022 stating:

*"I reviewed and agreed with the assessment findings for this patient."*

A vocational consultant also reviewed Ms. Naugle's file to determine how her occupation is performed within the local economy. The vocational assessment stated:

***JOB / OCCUPATION COMPARISON:***

*Job Duties:*
*This position works closely with the Operations Manager and Project Managers within SBT (BAU, FIS, SES). The goal of the position is to allow Project Managers and Supervisors to focus on job execution, while ensuring implementation of our core business processes. Coordinators also act as the HUB on all projects ensuring they move smoothly through all Project Milestones, keep a focused attention on document control, project close out, and act as the alternate point of contact or customers in order to help ensure overall customer satisfaction. Act as liaison between Customers, PMs, Specialists, Sales Executives, Engineering, and the FBA Staff. Coordinate and attend Operations meetings. Administer financial reporting.*

*The insured reported on the TE&E that job was a Project Coordinator in the Infrastructure department and job duties included coordinating and performing project management, billing, financials, and subcontracts.*
*Job Physical Demands: Unknown*
*Not specified.*
*Occupational Duties per eDOT:*
*Reviews and evaluates engineering plans, maps, and reports. Coordinates with internal and external teams to achieve project goals and timely and accurate completion. Updates and maintains databases containing project and client information.*

*Occupational Physical Demands per eDOT: Light*

- *Occasional walking, standing, reaching at all levels, fingering, keyboarding, and accommodation*
- *Frequent sitting, handling, talking, hearing, and near acuity*

***LOCAL ECONOMY:***
*The employee lives in Fuquay-Varina, NC. Wake County falls within the Raleigh. NC, Metropolitan Statistical Area (MSA). A review was performed on current openings using Indeed.com. This review demonstrated that, in this MSA, duties and tasks are reflective of those reported by the DOT. Part-time openings were not found. Considering this information, it is reasonable to conclude that, in the insured's local economy, the occupation Project Coordinator Engineering is performed in the same manner as found in the national economy.*

***SUMMARY:***
*The physical demand level of the job is unknown. In the local and national economy per eDOT, the occupation requires light work.*

***Physical Demands – Strength Rating***

*Light Work: Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects. Physical demand requirements are in excess of those for Sedentary Work.*

The basis for the decision was outlined in a letter to you dated March 9, 2022. You were provided an opportunity to request an appeal review of the denial of Ms. Naugle's claim, stating the reasons why she felt that her claim should not have been denied, and submit additional information to support her claim. Specifically, you were advised to submit the following information: *All treatment notes, diagnostic tests, radiology results, operative and procedure reports from all providers including Dr. Prucha, Eric Kelly, LCSW and any provider who treated you from December 24, 2020 through the present that has not already been submitted for review; physician documentation to support the specific restrictions and limitations given by your providers, including an explanation of how they preclude you from performing the substantial and material duties of your own occupation; therapy notes, medications prescribed and filled; hospitalization records; as well as any additional information which you feel will support your claim. The medical documentation should clearly show impairment from a physical or psychiatric illness that preclude you from performing the duties of any occupation with respect to medically supported restrictions and limitations.*

**Appeal**

We received your written request for reconsideration for Ms. Naugle's long term disability benefits on September 2, 2022. We also received the following information:

- Medical records dated January 12, 2022 through March 5, 2022 from Avance Care
- Medical records dated April 1, 2022 from WakeMed Heart & Vascular
- Medical records dated February 7, 2022 through June 22, 2022 from Dr. Ronald Prucha
- Notice of Award for Social Security Disability benefits dated May 23, 2022

**Appeal Evaluation**

To ensure a thorough evaluation of Ms. Naugle's appeal, her file was referred for review by a nurse disability consultant.

Following a complete review of the available medical evidence, the nurse review showed the following:

*The employee is noted to have chronic physical conditions that include morbid obesity, hypertension, high cholesterol, sleep apnea, coronary artery disease status past CABG in 2018, hypothyroidism, and pre-diabetes. She routinely treats with primary care and cardiology for medication management and maintenance of these chronic conditions and medical records on file from 12/24/20 through present day, do not reveal evidence of signficiant exacerbations in any co-morbid conditions or poor control of any conditions with associated symptoms. The employee continually denies any shortness of breath, chest pain, palpitations, or headaches and although*

*one elevated blood pressure was noted on 6/18/21 at her cardiology office visit, there is no evidence of associated side effects and no evidence of recurrence of significantly elevated blood pressures. Medications were adjusted as needed and no other care escalations have occurred due to poorly controlled symptoms related to blood pressure, cardiac disease, or any other co-morbid conditions. Restrictions were endorsed from 6/22/21-5/15/22 by Dr. Goins in a review completed on 3/1/22. Updated medical records have been received and due to the complexity of the employee's chronic heart disease, morbid obesity and co-morbid conditions, further review with the medical evidence on file is recommended with a physician dual boarded in Internal medicine and cardiology, for comment on physical restrictions/limitations from 12/24/20 through present day and beyond. Peer to peer contact with Dr. Prucha and Dr. Solomon may be beneficial if determined to be appropriate during the review.*

Ms. Naugle's file was also referred for review by an independent physician, Dr. Justin Stamschror, board certified in psychiatry. The physician review stated the following:

*Based on the documentation provided, there is no support of impairment for any psychiatric restrictions or limitations from 12/24/2020 and onwards. There is no evidence of any significant impairment noted on any exams. For example, on 1/4/2021, the claimant was noted to have intact judgment, cognition, insight. There is no documented impairments in mental status exam findings demonstrating with impairments. If such impairment was supported, it would be expected that the medical records would include recent/ongoing documentation of evidence of symptomatology such as deficiencies in grooming/hygiene, as individuals often neglect self-care when experiencing persistent and severe symptomatology resulting from an impairing/incapacitating psychiatric condition. Other indications of functional impairment might include documentation of observed symptomatology such as suicidal ideation, poor impulse control, poor concentration, poor memory, homicidal ideation, paranoia, psychosis, delusional thinking, disorganized thought processing, aggressive/hostile ideation/behavior, or conversely, catatonic-like or excessively withdrawn behavior, causing impairment in social functioning. Such persistent symptomatology is not present in the medical documentation for the time frame of interest.*

*Furthermore, the claimant's level of care was inconsistent with a severely impairing psychiatric condition as well. On 2/12/2021 and 6/4/2021, she did not undergo any changes in her medication regimen. She did not have any changes in her medication regimen until 10/6/2021, at which point time her primary care doctor increased her Paxil dose to 40 mg. At that time, she was reporting that she was "feeling better after having left work". On 2/7/2021, no medication changes were made, and she was noted to be "well controlled" in terms of PTSD symptoms. This was again consistent with a 6/22/2022 primary care note. Furthermore, there appears to be a gap in her therapy care between 5/20/2021 and 7/28/2021, followed by another gap in care from 7/28/2021 and 9/7/2021. She had another gap in care between 12/1/2021 and 12/29/2021, and then was seen about every 2 weeks until 2/5/2021. The content of these therapy sessions was primarily related to relationships with her family members. The infrequent psychotherapy along with relatively minimal psychiatric medication management is not consistent with a severely impairing psychiatric condition, which would typically result in referral to specialty psychiatric care as well as a higher level of intensive treatment, such as an intensive outpatient program. This is not documented during the timeframe in question.*

*Overall, based on the documentation provided, the exam findings that were documented and level of care that the claimant was receiving, are largely inconsistent with a severely impairing*

*psychiatric condition, and therefore I do not find adequate support for any global psychiatric restrictions or limitations.*

The physician attempted to contact Ms. Naugle's providers Eric Kelly, LCSW on September 20, 2022 and September 21, 2022 and Dr. Ronald Prucha on September 21, 2022, and September 22, 2022, to discuss her case. However, a return call was not received.

Additionally, Ms. Naugle's file was referred for review by an independent physician, Dr. Stanley Chou, board certified in internal medicine / cardiovascular disease. The physician review showed the following:

*Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, the claimant has a level of impairment translates into restrictions and limitations from 12/24/2020 to present.*

*The claimant is a 59-year-old female with a medical history significant for coronary artery disease status post coronary artery bypass grafting, hypertension, hyperlipidemia, obesity, and history of Covid-19 infection.*

*Interval history shows that the claimant has coronary artery disease. Her carotid dopplers on 08/01/2019 were essentially normal and her 2D echo showed normal left ventricular systolic function with an EF of 55-60%. Her CHADS-Vasc score was 3. She underwent coronary artery bypass grafting with LIMA-LAD and SVG – D2 on 08/07/2018. Postoperatively, she had a couple of episodes of paroxysmal atrial fibrillation. She wore a cardiac monitor from 08/22/2018 to 09/04/2018, predominantly rhythm was normal sinus rhythm, symptoms of palpitations/rapid heart rate correspond with sinus bradycardia and a trial run of 4 beats. Her repeat nuclear perfusion stress test on 10/2019 showed normal myocardial perfusion study, LVEF as 73%. Her EKG showed as normal sinus rhythm. She is currently stable and treated with aspirin, atorvastatin and metoprolol. Her lipids are well controlled and will continue with her current regimen. She has hypertension and treated with hydralazine, benazepril and HCTZ. Her hydralazine was increased due to uncontrolled blood pressure for which she had a reading of 170/90. Her current blood pressure reading is at 138/80. The claimant is obese with weight as 161 kg and a BMI of 50.91. She continues to make efforts with losing weight. Currently, her weight is at 135.1 kg. She had history with Covid-19 infection with cough, sinus congestion, pain, and postnasal drip on early February of 2022.*

*Based on the information above, I opine that the claimant requires restrictions. The claimant has coronary artery disease for which she underwent coronary artery bypass surgery. Currently, she is stable with her current regimen with no episodes of cardiac complaints. The claimant was documented with a history of Covid-19 but there is no evidence of positive test result. The claimant has hypertension, hyperlipidemia, and obesity status which increases cardiovascular risk that may predispose her to future complications. Overall, due to her cardiac history and until her blood pressure is controlled and weight is stable, the claimant should limit activities that may cause aggravated symptoms. As such, the claimant is conclusively impaired from a functional standpoint and requires restrictions and limitations as outlined below:*

*Sitting: Unrestricted*
*Standing: Frequently, for up to 3 hours per day*
*Walking: Occasionally, for up to 2 hours per day*

*Lifting: Occasionally, up to 20 lbs. BUE*
*Carrying: Occasionally, up to 20 lbs. BUE*
*Pushing: Occasionally, up to 20 lbs. BUE*
*Pulling: Occasionally, up to 20 lbs. BUE*
*Climbing stairs: Occasionally*
*Balancing: Never*
*Stooping: Occasionally*
*Kneeling: Occasionally*
*Crouching: Occasionally*
*Crawling: Never*
*Reaching: Occasionally overhead and below waist level; Unrestricted desk level*
*Use lower extremities for foot controls: Unrestricted BLE*
*Fine manipulation: Unrestricted BUE*
*Simple and firm grasping: Unrestricted BUE*

*No climbing ladders*
*No working at unprotected heights*
*No operating heavy machinery*

*The above recommended restrictions and limitations are indicated from 12/24/2020 to present with reassessment on or around 03/23/2023.*

*The claimant's abilities are sustainable on a full-time basis.*

The physician attempted to contact Ms. Naugle's provider Dr. Prucha on September 22, 2022 and September 23, 2022, to discuss her case. However, a return call was not received. The physician also contacted Dr. Solomon on September 22, 2022 and was advised to fax questions in writing.

On October 3, 2022, we faxed you a letter which included a copy of the clinical assessments performed in connection with Ms. Naugle's request for appeal. You were given an opportunity to review and respond with any additional information that she would like considered before a final determination was made on the appeal. A deadline for response was given of October 23, 2022. We received your correspondence dated October 24, 2022, in which you noted the opinions of Ms. Naugle's treating providers and cited the reasons why peer to peer consultations were needed. You further advised Ms. Naugle was awarded Social Security Disability (SSD) benefits and based on the SSD's definition of disability, it indicated that Ms. Naugle's health had deteriorated to a point that she would not be able to perform any work. However, no additional medical records were included.

On November 1, 2022, a copy of the internal medicine / cardiovascular physician review was faxed to Dr. Prucha and Dr. Solomon for review and comment. On November 9, 2022, we received a response from Dr. Prucha stating he agreed with the findings of the review. To date, we have not received a response from Dr. Solomon.

Based on the restrictions and limitations outlined by Dr. Chou and the physical requirements of Ms. Naugle's occupation, she does not meet the definition of disability as defined by the Policy. Additionally, Ms. Naugle's treating provider, Dr. Prucha, has agreed with the restrictions and limitations outlined by Dr. Chou.

**<u>Conclusion</u>**

We conducted a thorough and independent review of Kim Naugle's entire claim. In summary, we acknowledge that Ms. Naugle may have continued to experience some impairments and symptoms associated with her condition. However, the information does not contain physical or mental status exam findings, diagnostic test results, or other forms of medical documentation supporting her impairments and symptoms remained of such a severity, frequency, and duration that they resulted in restrictions and limitations rendering her unable to perform the duties of her own occupation throughout and beyond the Policy's Elimination Period.

Having carefully considered all of the information submitted in support of Ms. Naugle's claim, our position remains that proof of her continued disability in accordance with the Policy provisions has not been provided. Therefore, no benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**<u>Policy Provisions</u>**

To be eligible to receive benefits, you must satisfy the requirements of all Policy provisions that state, in part:

***Elimination Period:***

*The greater of:*

*a. the end of the Covered Person's Short Term Disability Benefits; or*

*b. 180 days*

***"Disability"*** *or* ***"Disabled"*** *means:*

1. *For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

   *i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

   *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

***"Material and Substantial Duties"*** *means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.*

***"Own Occupation"*** *means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the local economy.*

***"Proof"*** *means the evidence in support of a claim for benefits and includes, but is not limited to,*

*the following:*

1. *a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*

*2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*
*3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Lincoln.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, Ms. Naugle was entitled to appeal the decision made by Lincoln National Life Insurance Company, and to submit any additional information she wished to be considered as part of the appeal. Lincoln National Life Insurance Company has conducted a full and fair review of her appeal and accompanying materials, and has concluded that the denial of benefits will be maintained.

At this time, Ms. Naugle's administrative right to review has been exhausted; no further review will be conducted by Lincoln and her claim will remain closed. She may request to receive, free of charge, copies of all documents relevant to her claim. Ms. Naugle has the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The Siemens Corporation's Group Disability Income Policy contains the below provision:

***Legal Proceedings***

*A claimant or the claimant's authorized representative cannot start any legal action:*

1. *until 60 days after Proof of claim has been given; or*

*2. more than three years after the time Proof of claim is required.*

If Ms. Naugle's plan is subject to ERISA, she may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact her local U.S. Department of Labor Office or her state insurance regulatory agency. In addition, once all required reviews of Ms. Naugle claim have been completed, she has the right to bring a civil action under applicable law. Ms. Naugle's employer's plan has a contractual limitations period of three years, which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is September 22, 2024.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable plan language.

Nothing in this letter should be construed as a waiver of any Lincoln National Life Insurance Company rights and defenses under the above captioned Plan, and all of these rights and defenses

are reserved to the Company, whether or not they are specifically mentioned herein.

Decisions made by Lincoln National Life Insurance Company are based on the provisions outlined in the Siemens Corporation's LTD Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If Ms. Naugle requires language translation assistance, please contact Lincoln National Life Insurance Company to initiate a service provided free of charge to assist with understanding her claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Tammy Sullivan
Claim Resolution Specialist
Phone No.: (888) 437-7611 Ext. 69903
Secure Fax No.: (603) 334-0401