**Claim Coversheet Report**

Find | Clear | Print | Save | New | Help

Admin Notes Claim Class Correspond Doc List Medical SPELL Letters

Claim Number 12227902 Claim Last Updated 04/02/2024 Printed On 4/3/2024

Claimant Information

| | | | | | |
|---|---|---|---|---|---|
| Name | KIM R NAUGLE | SSN | | Birth Date | |
| Address | | Salary Amount $ | 5114.07 | Mode | M |
| | | Date of Hire | 08/13/2007 | | |
| | | Last Work Date | 12/23/2020 | | |
| | | Federal Tax | Employee Option | State Tax | No |
| Phone | | Phys Demands | Light | | |

JobDesc Z0024V6X - PROJECT COORDINATOR

| | | | | | |
|---|---|---|---|---|---|
| Claim Status | Denied | Status Reason | Not TD Own Occ | Received Date | 12/22/2021 |
| Disability Date | 12/24/2020 | Close Date | 12/24/2020 | Reopen Date | 12/24/2020 |
| Sick Days Left | 182 | Max Ben Date | 04/03/2028 | RTW FT / PT | |
| Ben Begin Date | 06/24/2021 | Apprv Thru Date | | Gross Ben $ | |

Diagnosis 1 Code/Desc I25.1 Atherosclerotic heart disease of native coronary artery

Diagnosis 2 Code/Desc I25.810 Atherosclerosis of CABG w/o angina pectoris

Policyholder Information

Customer ID 03 - 510101 SIEMENS CORPORATION

Subsidiary 0000

Location 30400000 SIEMENS CORPORATION

Symb GF Numeral 01 Product LTD Funding CON Bank Y Calcs Y Cntr Eff 01/01/2014

Class 01 ALL EMPLOYEES ELECTING EMPLOYER PAID BENEFITS, EXCLUDING EMPLOYEES

Waiting Period: New/Mode-Current/Mode 0 0 Days in WRKWK

Elimination Period: Days/Type 180 Sickness COLA: Mode/Duration

Successive Period: Period/Mode 6 Month SS Integration:Type/Value FSS

Partial Disability Type/Pct Survivor Ben Months/Wait Period 3 180

Non-Verifiable Symptoms Limit 24 Own Occupation Definition Limit 24 M/N Limit 24

Benefit % Max Benefit $ Min Benefit $ Employer Contr % 100.00 Subro Ind Y

Selected Benefits

| Symbol | Numeral | Product Type | Class | Eligibility Date |
|---|---|---|---|---|
| GF | 01 | LTD | 01 | 08/13/2007 |
| PD | 01 | STD | 1C | 08/13/2007 |

Additional Information:



EXHIBIT
3, part 1

**Claim Coversheet Report**

Find | Clear | Print | Save | New | Help

Admin Notes Claim Class Correspond Doc List Medical SPELL Letters

Claim Number 10839136 Claim Last Updated 12/10/2021 Printed On 4/3/2024

Claimant Information

| | | | | | |
|---|---|---|---|---|---|
| Name | KIM R NAUGLE | SSN | | Birth Date | |
| Address | | Salary Amount $ | 1180.17 | Mode | W |
| | | Date of Hire | 08/13/2007 | | |
| | | Last Work Date | 12/23/2020 | | |
| | | Federal Tax | None | State Tax | No |
| Phone | | Phys Demands | Light | | |

JobDesc Z0024V6X - PROJECT COORDINATOR

| | | | | | |
|---|---|---|---|---|---|
| Claim Status | Closed | Status Reason | Not TD Own Occ | Received Date | 12/18/2020 |
| Disability Date | 12/24/2020 | Close Date | 03/23/2021 | Reopen Date | |
| Sick Days Left | | Max Ben Date | 06/23/2021 | RTW FT / PT | |
| Ben Begin Date | 12/31/2020 | Apprv Thru Date | 03/22/2021 | Gross Ben $ | |

Diagnosis 1 Code/Desc F41.9 Anxiety disorder, unspecified

Diagnosis 2 Code/Desc I51.9 Heart disease, unspecified

Policyholder Information

Customer ID 03 - 510101 SIEMENS CORPORATION

Subsidiary 0000

Location 30400000 SIEMENS CORPORATION

Symb PD Numeral 01 Product STD Funding ASO Bank N Calcs Y Cntr Eff 01/01/2014

Class 1C WEEKLY-ALL REGULAR SALARIED AND HOURLY EMPLOYEES IN OPTION 1 EXCLUI

Waiting Period: New/Mode-Current/Mode 0 0 Days in WRKWK 5

Elimination Period: Days/Type 7 Sickness COLA: Mode/Duration

Successive Period: Period/Mode 90 Day SS Integration:Type/Value

Partial Disability Type/Pct Survivor Ben Months/Wait Period

Non-Verifiable Symptoms Limit Own Occupation Definition Limit M/N Limit

Benefit % Max Benefit $ Min Benefit $ Employer Contr % Subro Ind Y

Selected Benefits

| Symbol | Numeral | Product Type | Class | Eligibility Date |
|---|---|---|---|---|
| GF | 01 | LTD | 01 | 08/13/2007 |
| PD | 01 | STD | 1C | 08/13/2007 |

Additional Information:

**Claim Coversheet Report**

Find | Clear | Print | Save | New | Help

Admin Notes Claim Class Correspond Doc List Medical SPELL Letters

Claim Number 11680231 Claim Last Updated 08/16/2021 Printed On 4/3/2024

Claimant Information

| | | | | | |
|---|---|---|---|---|---|
| Name | KIM R NAUGLE | SSN | | Birth Date | |
| Address | | Salary Amount $ | | Mode | W |
| | | Date of Hire | 08/13/2007 | | |
| | | Last Work Date | 12/23/2020 | | |
| | | Federal Tax | None | State Tax | No |
| Phone | | Phys Demands | Light | | |

JobDesc Z0024V6X - PROJECT COORDINATOR

| | | | | | |
|---|---|---|---|---|---|
| Claim Status | Void | Status Reason | Duplicate Claim | Received Date | 08/09/2021 |
| Disability Date | 12/24/2020 | Close Date | 12/24/2020 | Reopen Date | |
| Sick Days Left | | Max Ben Date | 06/23/2021 | RTW FT / PT | |
| Ben Begin Date | 12/31/2020 | Apprv Thru Date | | Gross Ben $ | |

Diagnosis 1 Code/Desc F41.9 Anxiety disorder, unspecified

Diagnosis 2 Code/Desc F32 Major depressive disorder, single episode

Policyholder Information

Customer ID 03 - 510101 SIEMENS CORPORATION

Subsidiary 0000

Location 30400000 SIEMENS CORPORATION

Symb PD Numeral 01 Product STD Funding ASO Bank N Calcs Y Cntr Eff 01/01/2014

Class 1C WEEKLY-ALL REGULAR SALARIED AND HOURLY EMPLOYEES IN OPTION 1 EXCLUI

Waiting Period: New/Mode-Current/Mode 0 0 Days in WRKWK 5

Elimination Period: Days/Type 7 Sickness COLA: Mode/Duration

Successive Period: Period/Mode 90 Day SS Integration:Type/Value

Partial Disability Type/Pct Survivor Ben Months/Wait Period

Non-Verifiable Symptoms Limit Own Occupation Definition Limit M/N Limit

Benefit % Max Benefit $ Min Benefit $ Employer Contr % Subro Ind Y

Selected Benefits

| Symbol | Numeral | Product Type | Class | Eligibility Date |
|---|---|---|---|---|
| GF | 01 | LTD | 01 | 08/13/2007 |
| PD | 01 | STD | 1C | 08/13/2007 |

Additional Information:

**Note Report**

Report | Clear | Print | Help

AS Accom AS Event Add Note Appeal Claim Coord Claim Note Correspond Doc List Employee Leave Life Claim Lve Addtl Info
Lve Correspondence Lve Program Lve Work Sched Medical Medical History Note SPELL Letters Scheduled Pmt Task Print Task Rpt
Tasks

Claim
* **Claim/Event/Leave Number** 12227902 **Accommodation Number**
**Note type:**

Primary Sort Order
Note Type
Note Number
● Note Date/Time
Accm. No.

Sec
●

**04/02/2024 12:07 PM - CLAIM Note 54**
Claim/Event/Leave: 12227902
NoteSubject : Legal
Other Subject : LAWSUIT FILED
Text: [04/02/2024 - MAINELLI, DEBRA]CLAIMANT HAS FILED A LAWSUIT. PLEASE DIRECT ANY FURTHER INQUIRY ON THIS CLAIM TO THE LITIGATION MANAGER.

**11/11/2022 3:47 PM - CLAIM Note 53**
Claim/Event/Leave: 12227902
NoteSubject : Appeal
Other Subject : OUT
Text: [11/11/2022 - SULLIVAN, TAMMY]EE IS A 59YOF PROJECT COORDINATOR. LDW 12/23/2020 DOD 12/24/2020 DX ANXIETY, PTSD, CAD, HTN, HX OF COVID. CLAIM WAS INITIALLY DENIED FOR NOT TD OWN OCC. ON APPEAL ADDL MEDICAL INFORMATION WAS RECD AND A FULL FILE REVIEWWAS COMPLETED TO INCLUDE AN NDC, CARDIOLOGY AND PSYCH PEER REVIEWS. THE NDC REVIEWED THE CLAIM FOR PHYSICAL AND RECOMMENDED A CARDIOLOGY PEER REVIEW. THE CARDIOLOGY PEER STATED BASED ON THE MEDICAL INFO THE EE HAS CAD FOR WHICH SHE UNDERWENT CABG SX.CURRENTLY EE IS STABLE W/ HER CURRENT REGIMEN W/ NO EPISODES OF CARDIAC COMPLAINTS. OVERALL D/T CARDIAC HX AND UNTIL HER BP IS CONTROLLED AND WEIGHT IS STABLE THE EE SHOULD LIMIT ACTIVITIES THAT MAY CAUSE AGGRAVATED SX. R/LS INCLUDE STANDING FREQUENTLY UP TO 3HRS / DAY, WALKING OCCASIONALLY UP TO 2HRS /DAY, LIFTING / CARRYING / PUSHING / PULLING OCCASIONALLY UP TO 20LB BUE, CLIMBING STAIRS OCCASIONALLY, BALANCING NEVER, STOOPING / KNEELING / CROUCHING OCCASIONALLY, CRAWLING NEVER, REACHING OVERHEAD AND BELOW WAIST OCCASIONALLY NO CLIMBING LADDERS, WORKING AT UNPROTECTED HEIGHTS OR OPERTING HEAVY EQUIPMENT. PSYCH PEER REVIEW STATED OVERALL BASED ON THE DOCUMENTATION PROVIDED THE EXAM FINDINGS THAT WERE DOCUMENTED AND LEVEL OF CARE THAT THEEE WAS REC ARE LARGELY INCONSISTENT WITH A SEVERELY IMPAIRING PSYCH CONDITION AND THEREFORE THEY DID NOT FIND ADEQUATE SUPPORT FOR ANY GLOBAL PSYCH R/LS. PER OA EE'S OCC IS LIGHT. CARDIOLOGY PEER WAS ALSO FAXED TO EE'S PCP AND CARDIOLOGIST. PCP RESPONDED THAT HE AGREED W/ PEER. NO RESPONSE FROM CARDIOLOGIST. RTR WAS OFFERED. ATTY SUBMITTED LETTER CITING P2P CONSULTATION WAS NEEDED AND EE WAS AWARDED SSDI HOWEVER DID NOT SUBMIT ANY ADDITIONAL MEDICAL INFORMATION. DETAILED UH LETTER SENT TO ATTY

**11/11/2022 3:37 PM - CLAIM Note 52**
Claim/Event/Leave: 12227902
NoteSubject : Med Records Rcvd
Other Subject :
Text: [11/11/2022 - SULLIVAN, TAMMY]RECD RESPONSE FROM DR. PRUCHA AGREEING WITH CARDIOLOGY PEER REVIEW.

**11/01/2022 1:24 PM - CLAIM Note 51**
Claim/Event/Leave: 12227902
NoteSubject : Appeal
Other Subject : STATUS
Text: [11/01/2022 - SULLIVAN, TAMMY]IN REVIEW OF CARDIOLOGY PEER REVIEW AP SOLOMON REQUESTED QUESTIONS BE FAXED. PER REPORT IT DOES NOT APPEAR QUESTIONS WERE FAXED TO AP. SENT COPY OF PEER REVIEW TO DR. SOLOMON FOR REVIEW AND RESPONSE. STATUS LETTER SENT TO ATTY

**10/06/2022 2:44 PM - CLAIM Note 50**
Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [10/06/2022 - NAI, TIMOTHY]INVOICE DATED 09/30/2022 FROM ECN . INV #BOCA160156 IN THE AMT OF $660.00 FOR PEER REVIEW INVOICE PAID IN FULL.

**10/06/2022 2:23 PM - CLAIM Note 49**
Claim/Event/Leave: 12227902

NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [10/06/2022 - ALVELO LOPEZ, ASHLEY]INVOICE RECEIVED ON 09/29/2022 AND DATED 09/26/2022 FROM MLS GROUP OF COMPANIES. INV #138416-1 , IN THE AMOUNT OF $810.00 FOR PEER REVIEW PERFORMED BY JUSTIN STAMSCHROR WITH A SPECIALTY IN PSYCHIATRY . DATES OF SERVICE 09/26/2022 INVOICE PAID IN FULL.

**10/03/2022 10:10 AM - CLAIM Note 48**
Claim/Event/Leave: 12227902
NoteSubject : Appeal
Other Subject : RTR
Text: [10/03/2022 - SULLIVAN, TAMMY]RECD IM/CARDIOLOGY PEER REVIEW... SENT A COPY OF CLINICAL REVIEWS (NDC, IM/CARDIOLOGY, PSYCH) TO ATTY WITH RTR. RESPONSE DUE BY 10/23/2022

**10/03/2022 9:59 AM - CLAIM Note 47**
Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : INVOICE
Text: [10/03/2022 - SULLIVAN, TAMMY]RECD INVOICE BOCA 160156 IN THE AMT OF $660.00 FROM ECN FOR A CARDIOLOGY PEER REVIEW. SHARED W/ J. BEST FOR PROCESSING

**09/28/2022 8:06 AM - CLAIM Note 46**
Claim/Event/Leave: 12227902
NoteSubject : Peer Review
Other Subject : PSYCH
Text: [09/28/2022 - SULLIVAN, TAMMY]RECD PSYCH PEER REVIEW. AWAITING IM REVIEW.

**09/28/2022 8:01 AM - CLAIM Note 45**
Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : INVOICE
Text: [09/28/2022 - SULLIVAN, TAMMY]RECD INVOICE 138416-1 IN THE AMT OF $810.00 FROM MLS FOR A PSYCH PEER REVIEW. SHARED W/ J. BEST FOR PROCESSING.

**09/20/2022 8:50 PM - CLAIM Note 44**
Claim/Event/Leave: 12227902
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 9/20/2022 - REFERRED TO EXAM COORDINATORS - ECN FOR PEER REVIEW.

**09/19/2022 9:02 AM - CLAIM Note 43**
Claim/Event/Leave: 12227902
NoteSubject : Appeal
Other Subject : STATUS
Text: [09/19/2022 - SULLIVAN, TAMMY]PER NDC REVIEW, REFERRED CLAIM FOR A PHYSICIAN LEVEL REVIEW DUAL BOARDED IM / CARDIOLOGY

**09/15/2022 3:11 PM - MDS Note**
Claim/Leave: 12227902
Episode #: 1
Nurse Name: DENNIS, COURTNEY
Service #: 17500082
Service Date: 09/15/2022
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, TAMMY, SULLIVAN
Note Type: INFORMATION OBTAINED DESC
Text: FILE REVIEWED BY NDC, PLEASE SEE DOC LIST FOR MEMORANDUM. CRS NOTIFIED, ASSIGNMENT COMPLETE.

**09/13/2022 12:08 PM - CLAIM Note 42**
Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : FILE COPY
Text: [09/13/2022 - PILAR, SARAH]COPY OF DOC LIST EXCEPT INVOICES AND OUTBOUND CORRESPONDENCE SENT TO MLS VIA MLS PORTAL.

**09/12/2022 8:50 PM - CLAIM Note 41**
Claim/Event/Leave: 12227902
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 9/12/2022 - REFERRED TO MLS GROUP OF COMPANIES FOR PANEL REVIEW.

**09/09/2022 7:58 AM - CLAIM Note 40**
Claim/Event/Leave: 12227902
NoteSubject : Ref to Managed Care
Other Subject : ARU REFERRAL

Text: [09/09/2022 - SULLIVAN, TAMMY]EE IS 59YOF PROJECT COORDINATOR. LDW 12/23/2020 DOD 12/24/2020. DX HX CAD, CABG, ANXIETY, PTSD. PLEASE REVIEW FROM A PHYSICAL PERSPECTIVE. PROVIDE A DESCRIPTION OF THE CLAIMANT'S IMPAIRMENTS, IF ANY, AND OUTLINE HOW ANYIMPAIRMENT TRANSLATES TO RESTRICTIONS AND LIMITATIONS AS OF 12/24/2020. PLEASE INCLUDE THE EXPECTED DURATION FOR ANY SUPPORTED RESTRICTIONS AS OF 12/24/2020.

**09/09/2022 7:44 AM - CLAIM Note 39**
Claim/Event/Leave: 12227902
NoteSubject : Appeal
Other Subject : INITIAL REVIEW
Text: [09/09/2022 - SULLIVAN, TAMMY]FI LTD ERISA, FILED: 12/22/2021. DISABILITY CODING CORRECT. APPEAL CODING UPDATED. JD ON FILE. AUTH ON FILE. LTD CLAIM DENIED NOT TD OO -LETTER ISSUED 3/8/2022. 180 DAY APPEAL TIMELINE. APPEAL DUE 9/4/2022. ATTY REPRESENTED. APPEAL LETTER DATED AND RECEIVED 9/2/2022*****ACTION PLAN: DETERMINATION FOR PHYSICIAN LEVEL REVIEW WITH PSYCHIATRY AND NDC; REFERRALS IN PROCESS. APPEAL ACK LETTER SENT.

**09/08/2022 8:26 AM - PHONE Note 7**
Claim/Event/Leave: 12227902
NoteSubject : Other Called
Other Subject : ATTY
Text: [09/08/2022 - SULLIVAN, TAMMY]RECD TC FROM LAUREN AT CRUMLEY ROBERTS LAW FIRM CALLING TO CONFIRM RECEIPT OF APPEAL. ADVISED HER THAT WE DID REC APPEAL AND THE CLAIM WAS ASSIGNED TO CRS YESTERDAY. LAUREN THANKED CRS.

**09/07/2022 9:14 AM - CLAIM Note 38**
Claim/Event/Leave: 12227902
NoteSubject : Appeal
Other Subject : REFERRAL RECVD
Text: [09/07/2022 - AVERILL, REBECCA]ASSIGNED TO TAMMY SULLIVAN

**09/06/2022 8:51 PM - CLAIM Note 37**
Claim/Event/Leave: 12227902
NoteSubject : Ref to Appeals
Other Subject : SCORE REFERRAL
Text: 9/6/2022 - REFERRED TO APPEALS UNIT FOR CLAIM REVIEW AND DETERMINATION.

**09/06/2022 3:17 PM - CLAIM Note 36**
Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [09/06/2022 - BELANGER, JESSICA]AGREE WITH RECOMMENDATION AS OUTLINED TO REFER CLAIM TO CRS

**09/06/2022 1:35 PM - CLAIM Note 35**
Claim/Event/Leave: 12227902
NoteSubject : Ref to Appeals
Other Subject : APPEAL TO ARU
Text: [09/06/2022 - SHORTER, JOHNNA]**ATTY REPPED** 58 YOF PROJECT COORDINATOR (LIGHT OCC PER OA) LTD BBD 06/22/2021, LWD 12/23/2020, DOD 12/24/2020, ANXIETY DISORDER, POST-TRAUMATIC STRESS DISORDER, HISTORY OF CORONARY ARTERY DISEASE, CORONARY ARTERY BYPASS GRAFTING, HYPERLIPIDEMIA, HYPERTENSION. STD DENIED AND LTD FILED. N&P COMPLETED THRU ATTY AND ALL MEDICAL RECORDS SUBMITTED THRU ATTY. CLAIM SENT FOR FULL FILE REVIEW FOR PSYCH AS WELL AS PHYSICAL (INTERNAL MED). ASC STATED THE MENTAL NERVOUS CONDITION WAS IMPAIRING HER BUT SHE WAS UNSURE IF SHE WOULD BE ABLE TO WORK PHYSICALLY ALSO. PSYCH PEER REVIEW COMPLETED 02/28/2022 AND DID FOUND TAKING INTO CONSIDERATION THE ENTIRE CLINICAL PICTURE, THE RECORDS DO NOT SUPPORT AN IMPAIRING DIAGNOSIS FROM A PSYCHIATRIC PERSPECTIVE FROM 06/22/2021 AND ONGOING. PEER REVIEW SENT TO PROVIDER ERIC KELLY FOR COMMENT AND RETURNED IN AGREEMENT OF NO RESTRICTIONS. INTERNAL MED PEER COMPLETED 3/1/22 AND FOUND THE RECORDS DO SUPPORT AN IMPAIRING DIAGNOSIS FROM A FAMILY PRACTICE PERSPECTIVE FROM 06/22/2021. DURATION OF THE RESTRICTIONS/LIMITATIONS BELOW ARE THROUGH 05/15/2022 TO ALLOW FOR REASSESSMENT. SITTING: UNRESTRICTED STANDING: OCCASIONALLY UP TO 20 MINUTES AT ONE TIME AND UP TO 2 HOURS PER DAY WALKING: OCCASIONALLY UP TO 10 MINUTES AT ONE TIME AND UP TO 1 HOUR PER DAY LIFTING/CARRYING/PUSHING/PULLING: OCCASIONALLY UP TO 20 POUNDS CLIMBING STAIRS: OCCASIONALLY CLIMBING LADDERS: OCCASIONALLY STOOPING: OCCASIONALLY KNEELING: OCCASIONALLY CROUCHING: OCCASIONALLY CRAWLING: OCCASIONALLY REACHING OVERHEAD: OCCASIONALLY REACHING AT WAIST AND DESK LEVEL: UNRESTRICTED REACHING BELOW WAIST AND OVERHEAD: OCCASIONALLY USE LOWER EXTREMITIES FOR FOOT CONTROLS: OCCASIONALLY KEYBOARDING: UNRESTRICTED. ----VERIFIED WITH OA, WALKING IS REQUIRED OCCASIONALLY FOR HER OCC AS A PROJECT COORDINATOR. DENIAL OF CLAIM AS EE'S OCC IS WITHIN HER RESTRICTIONS AND SHE WOULD BE ABLE TO COMPLETE HER OCCUPATION. APPEAL LETTER RECEIVEDAND DCM RECOMMENDS REFERRAL TO ARU FOR APPEAL MGT.

**09/06/2022 1:33 PM - CLAIM Note 34**
Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : APPEAL RECEIVED
Text: [09/06/2022 - SHORTER, JOHNNA]APPEAL LETTER RECEIVED AND BEING REFERRED TO ARU

**03/09/2022 10:36 AM - PHONE Note 6**
Claim/Event/Leave: 12227902

Claim/Event/Leave: 12227902
NoteSubject : Called Other
Other Subject : ATTY-DENIED NOT TD
Text: [03/09/2022 - SHORTER, JOHNNA]CALLED ATTY AT 336-333-9899, SPOKE WITH ATTY PETER BURKE REGARDING DENIAL NOT TD FOR LTD. EXPLAINED APPEAL AND ATTY STATED THEY WILL APPEAL BUT WILL TAKE SOME TIME. LETTER SENT TO ATTY. THANKED AND CALL ENDED.

**03/09/2022 10:14 AM - CLAIM Note 33**
Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : MGR REVIEW
Text: [03/09/2022 - BELANGER, JESSICA]AGREE WITH RECOMMENDATION AS OUTLINED - MED REVIEW AND OA CONCLUDED NOT TD OWN OCC

**03/08/2022 3:20 PM - CLAIM Note 32**
Claim/Event/Leave: 12227902
NoteSubject : Denied
Other Subject : NOT TD OO
Text: [03/08/2022 - SHORTER, JOHNNA]**ATTY REPPED** 58 YOF PROJECT COORDINATOR (LIGHT OCC PER OA) LTD BBD 06/22/2021, LWD 12/23/2020, DOD 12/24/2020, ANXIETY DISORDER, POST-TRAUMATIC STRESS DISORDER, HISTORY OF CORONARY ARTERY DISEASE, CORONARY ARTERY BYPASS GRAFTING, HYPERLIPIDEMIA, HYPERTENSION. STD DENIED AND LTD FILED. N&P COMPLETED THRU ATTY AND ALL MEDICAL RECORDS SUBMITTED THRU ATTY. CLAIM SENT FOR FULL FILE REVIEW FOR PSYCH AS WELL AS PHYSICAL (INTERNAL MED). ASC STATED THE MENTAL NERVOUS CONDITION WAS IMPAIRING HER BUT SHE WAS UNSURE IF SHE WOULD BE ABLE TO WORK PHYSICALLY ALSO. PSYCH PEER REVIEW COMPLETED 02/28/2022 AND DID FOUND TAKING INTO CONSIDERATION THE ENTIRE CLINICAL PICTURE, THE RECORDS DO NOT SUPPORT AN IMPAIRING DIAGNOSIS FROM A PSYCHIATRIC PERSPECTIVE FROM 06/22/2021 AND ONGOING. PEER REVIEW SENT TO PROVIDER ERIC KELLY FOR COMMENT AND RETURNED IN AGREEMENT OF NO RESTRICTIONS. INTERNAL MED PEER COMPLETED 3/1/22 AND FOUND THE RECORDS DO SUPPORT AN IMPAIRING DIAGNOSIS FROM A FAMILY PRACTICE PERSPECTIVE FROM 06/22/2021. DURATION OF THE RESTRICTIONS/LIMITATIONS BELOW ARE THROUGH 05/15/2022 TO ALLOW FOR REASSESSMENT. SITTING: UNRESTRICTED STANDING: OCCASIONALLY UP TO 20 MINUTES AT ONE TIME AND UP TO 2 HOURS PER DAY WALKING: OCCASIONALLY UP TO 10 MINUTES AT ONE TIME AND UP TO 1 HOUR PER DAY LIFTING/CARRYING/PUSHING/PULLING: OCCASIONALLY UP TO 20 POUNDS CLIMBING STAIRS: OCCASIONALLY CLIMBING LADDERS: OCCASIONALLY STOOPING: OCCASIONALLY KNEELING: OCCASIONALLY CROUCHING: OCCASIONALLY CRAWLING: OCCASIONALLY REACHING OVERHEAD: OCCASIONALLY REACHING AT WAIST AND DESK LEVEL: UNRESTRICTED REACHING BELOW WAIST AND OVERHEAD: OCCASIONALLY USE LOWER EXTREMITIES FOR FOOT CONTROLS: OCCASIONALLY KEYBOARDING: UNRESTRICTED. ----VERIFIED WITH OA, WALKING IS REQUIRED OCCASIONALLY FOR HER OCC AS A PROJECT COORDINATOR. DCM RECOMMENDS DENIAL OF CLAIM AS EE'S OCC IS WITHIN HER RESTRICTIONS AND SHE WOULD BE ABLE TO COMPLETE HER OCCUPATION.

**03/08/2022 2:55 PM - CLAIM Note 31**
Claim/Event/Leave: 12227902
NoteSubject : Medical Status
Other Subject : DR PRUCHA-PEER AGREE
Text: [03/08/2022 - SHORTER, JOHNNA]DR PRUCHA RETURNED INTERNAL MED PEER REVIEW LETTER AND SIGNED WITH NO FURTHER COMMENT.

**03/07/2022 12:37 PM - CLAIM Note 30**
Claim/Event/Leave: 12227902
NoteSubject : Voc Rehab
Other Subject : LIGHT OCC
Text: [03/07/2022 - SHORTER, JOHNNA]AN OCCUPATIONAL ANALYSIS (OA) WAS COMPLETED TO COMPARE THE JOB TITLE PROJECT COORDINATOR TO THE OCCUPATION IN THE NATIONAL ECONOMY PER EDOT, OF PROJECT COORDINATOR ENGINEERING PERFORMED AT THE LIGHT LEVEL OF PHYSICAL DEMAND.

**03/07/2022 12:16 PM - CLAIM Note 29**
Claim/Event/Leave: 12227902
NoteSubject : Voc Rehab
Other Subject : OA
Text: [03/07/2022 - DOWNING, HANNA]THE PHYSICAL DEMAND LEVEL OF THE JOB IS UNKNOWN. IN THE LOCAL AND NATIONAL ECONOMY PER EDOT, THE OCCUPATION REQUIRES LIGHT WORK.

**03/04/2022 8:52 PM - CLAIM Note 28**
Claim/Event/Leave: 12227902
NoteSubject : Voc Rehab
Other Subject : CLAIM/EVENT TO VCM
Text: 3/4/2022-REFERRAL RECEIVED BY VCM AND ASSIGNED TO DOWNING, HANNA. CLAIM/AS EVENT IS PENDING REVIEW.

**03/03/2022 8:51 PM - CLAIM Note 27**
Claim/Event/Leave: 12227902
NoteSubject : Ref to Voc Rehab
Other Subject : SCORE REFERRAL
Text: 3/3/2022 - REFERRED TO THE VOC UNIT FOR OCCUPATIONAL ANALYSIS.

**03/03/2022 2:52 PM - CLAIM Note 26**
Claim/Event/Leave: 12227902

NoteSubject : Peer Review
Other Subject : PSYCH - AP CONTACT
Text: [03/03/2022 - SHORTER, JOHNNA]AP ERIC KELLY LCSW RETURNED COMMENT FOR PSYCH PEER REVIEW AND STATED / NO PROBLEM. I REVIEWED AND AGREED WITH THE ASSESSMENT FINDINGS FOR THIS PATIENT. / EMAIL SAVED TO DOC LIST : IN AGREEMENT OF REPORT

**03/03/2022 2:51 PM - CLAIM Note 25**
Claim/Event/Leave: 12227902
NoteSubject : LTR to AP
Other Subject : ERIC KELLY LCSW
Text: [03/03/2022 - SHORTER, JOHNNA]FROM: ERIC KELLY <ERICJKELLYLCSW@GMAIL.COM> SENT: THURSDAY, MARCH 3, 2022 2:49 PM TO: SHORTER, JOHNNA <JOHNNA.SHORTER@LFG.COM> SUBJECT: RE: KIM NAUGLE LTD 12227902 ***THIS EMAIL IS FROM AN EXTERNAL SOURCE. ONLY OPEN LINKS AND ATTACHMENTS FROM A TRUSTED SENDER.*** HI JOHNNA, NO PROBLEM. I REVIEWED AND AGREED WITH THE ASSESSMENT FINDINGS FOR THIS PATIENT. THANK YOU, ERIC KELLY, MSW, LCSW

**03/03/2022 2:50 PM - PHONE Note 5**
Claim/Event/Leave: 12227902
NoteSubject : AP Called
Other Subject : ERIC KELLY RTC
Text: [03/03/2022 - SHORTER, JOHNNA]DCM HAD LVM ASKING FOR RTC AND BEST WAY TO SEND REPORT TO OFFICE. ERIC KELLY RTC AND VERIFIED THE EMAIL ON HIS WEB SITE WAS THE BEST WAY TO SEND AND CONFIRMED THIS WAS RECEIVED BY HIM. PROVIDER WANTED TO KNOW HOW TO REPLY IF HE AGREES. DCM EXPLAINED HE HAS THE OPPORTUNITY TO CLARIFY OR ADD WHATEVER HE WANTS, IF HE AGREES HE CAN SIGN AND RETURN AS SUCH. PROVIDER STATED THERE IS NOTHING TO ADD TO THE REPORT AND HE AGREES WITH IT. PROVIDER ASKED IF HE COULD REPLYIN AN EMAIL WITH HIS COMMENT TO MAKE IT EASIER. SENT EMAIL TO ERICJKELLYLCSW@GMAIL.COM SO HE COULD JUST REPLY HIS COMMENTS IN AN EMAIL AS THE MOST CONVENIENT OPTION FOR HIM. SENT EMAIL: FROM: SHORTER, JOHNNA <JOHNNA.SHORTER@LFG.COM> SENT: THURSDAY, MARCH 3, 2022 2:45 PM TO: ERICJKELLYLCSW@GMAIL.COM SUBJECT: KIM NAUGLE LTD 12227902 ERIC KELLY- THANK YOUR RETURN CALL IN RESPONSE TO OUR MEDICAL REVIEW REQUEST. PROVIDING AN EMAIL TO REPLY TO. THANK YOU JOHNNA SHORTER SENIORLTD CLAIM SPECIALIST II **** THANKED AND CALL ENDED

**03/03/2022 2:34 PM - CLAIM Note 24**
Claim/Event/Leave: 12227902
NoteSubject : Peer Review
Other Subject : PSYCH
Text: [03/03/2022 - SHORTER, JOHNNA]PEER REVIEW RECEIVED AND SENT TO PSYCH AP FOR COMMENT WITH RETURN DEADLINE OF END OF BUSINESS DAY 3/9/22. ***SENT BY FAX AND IN DOC LIST - FAX FAILED SO DCM FOUND AP'S WEBSITE AND SENT VIA EMAIL. NOTIFIED ATTY

**03/03/2022 2:33 PM - CLAIM Note 23**
Claim/Event/Leave: 12227902
NoteSubject : Peer Review
Other Subject : INTERNAL MED
Text: [03/03/2022 - SHORTER, JOHNNA]PEER REVIEW RECEIVED AND SENT TO INTERNAL MED AP FOR COMMENT WITH RETURN DEADLINE OF END OF BUSINESS DAY 3/9/22. ***SENT BY FAX AND IN DOC LIST

**03/03/2022 2:30 PM - CLAIM Note 22**
Claim/Event/Leave: 12227902
NoteSubject : LTR to Atty
Other Subject : CLAIM UPDATE
Text: [03/03/2022 - SHORTER, JOHNNA]FROM: SHORTER, JOHNNA SENT: THURSDAY, MARCH 3, 2022 2:29 PM TO: MONICA L. REYNOLDS <MLREYNOLDS@CRUMLEYROBERTS.COM> CC: PETER H. BURKE <PHBURKE@CRUMLEYROBERTS.COM> SUBJECT: RE: KIM NAUGLE - 12227902 IMPORTANCE: HIGH GOOD AFTERNOON PETER AND MONICA- I WANTED TO GIVE YOU AN UPDATE ON KIM NAUGLE S LTD CLAIM # 12227902. I HAVE RECEIVED BOTH REPORTS BACK FROM PSYCHIATRY AND AN INTERNAL MEDICAL 3RD PARTY PEER REVIEWS. THEY HAVE BEEN SENT TO MS NAUGLE S PROVIDERS FOR REVIEW AND COMMENT. THEY WERE SENT TO: INTERNAL MED PEER REVIEW DR RONALD PRUCHA FAXED TO (919) 235-6598 FOR REVIEW. MUST REPLY BY END OF BUSINESS DAY WEDNESDAY 3/9/22 DEADLINE. PSYCHIATRY PEER REVIEW - ERIC KELLY, LCSWEMAILED TO ERICJKELLYLCSW@GMAIL.COM AS THE FAX NUMBER HE LISTS AS 919-210-2070 FAILED AND SEEMS HE SIMPLY OFFICE PHONE NUMBER IN ERROR(BELOW). I FOUND HIS EMAIL ON THE WEB SITE AND SENT IT THAT WAY AS WELL AS LEFT HIM A VOICEMAIL EXPLAINING I WASSENDING THEREPORT OVER FOR REVIEW AND COMMENT WITH A DEADLINE OF END OF BUSINESS DAY 3/9/22. IF YOU HAVE A FAX NUMBER FOR HIM, PLEASE PROVIDE BUT IT APPEARS THE EMAIL WENT THROUGH WITHOUT ISSUE.[03/03/2022 - SHORTER, JOHNNA]THANK YOU, JOHNNA SHORTER

**03/03/2022 8:43 AM - CLAIM Note 21**
Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [03/03/2022 - DOW, KAITLYN]INVOICE RECEIVED ON 3/3/2022 AND DATED 2/28/2022 FROM EXAM COORDINATORS NETWORK, LLC. INV #BOCA 132537 , IN THE AMOUNT OF $660.00 FOR PEER REVIEW PERFORMED BY WENDELL GOINS WITH A SPECIALTY IN FAMILY MEDICINE. DATE OF SERVICE 2/15/22 . INVOICE PAID IN FULL

**03/02/2022 4:56 PM - CLAIM Note 20**

Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : 2ND ERISA NOTICE
Text: [03/02/2022 - SHORTER, JOHNNA]2ND ERISA NOTICE LETTER SENT TO EE

**03/02/2022 1:20 PM - CLAIM Note 19**
Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [03/02/2022 - MUELLER, JACQUELINE]INVOICE RECEIVED ON 02/28/2022 AND DATED 02/28/202 FROM EXAM COORDINATORS NETWORK INV # BOCA 132545 IN THE AMOUNT OF $860.00 FOR PSYCHIATRY PEER REVIEW PERFORMED BY STEPHEN GILMAN INVOICE PAID IN FULL.

**02/11/2022 8:51 PM - CLAIM Note 18**
Claim/Event/Leave: 12227902
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 2/11/2022 - REFERRED TO EXAM COORDINATORS - ECN FOR PEER REVIEW.

**02/11/2022 4:07 PM - CLAIM Note 17**
Claim/Event/Leave: 12227902
NoteSubject : Med Records Rcvd
Other Subject : ERIK KELLY LCSW
Text: [02/11/2022 - SHORTER, JOHNNA]ERIK KELLY LCSW OVN RECEIVED FROM 7/8/21, 9/7/21, 9/27/21, 10/5/21, 10/20/21, 10/28/2021, 11/17/2021, 12/01/2021, 12/29/2021, 1/12/2022, 2/9/2022[02/11/2022 - SHORTER, JOHNNA].

**02/10/2022 4:30 PM - CLAIM Note 16**
Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : PAYMENTS TO ATTY
Text: [02/10/2022 - SHORTER, JOHNNA]ATTY: CRUMLEY ROBERTS, LLP LETTER RECEIVED ALLOWING PAYMENTS TO BE SENT TO ATTY

**02/10/2022 3:53 PM - CLAIM Note 15**
Claim/Event/Leave: 12227902
NoteSubject : LTR to Atty
Other Subject : END OF N&P
Text: [02/10/2022 - SHORTER, JOHNNA]FROM: MONICA L. REYNOLDS <MLREYNOLDS@CRUMLEYROBERTS.COM> SENT: THURSDAY, FEBRUARY 10, 2022 3:52 PM TO: SHORTER, JOHNNA <JOHNNA.SHORTER@LFG.COM> CC: PETER H. BURKE <PHBURKE@CRUMLEYROBERTS.COM> SUBJECT: RE: KIM NAUGLE- 12227902 THANKS FOR LETTING US KNOW. MONICA L. REYNOLDS SENIOR LITIGATION CASE MANAGER, CRUMLEY ROBERTS, LLP OFFICE: 336-333-9899 MLREYNOLDS@CRUMLEYROBERTS.COM FROM: SHORTER, JOHNNA MAILTO:JOHNNA.SHORTER@LFG.COM SENT: THURSDAY, FEBRUARY 10, 2022 2:40 PM TO: MONICA L. REYNOLDS <MLREYNOLDS@CRUMLEYROBERTS.COM> SUBJECT: RE: KIM NAUGLE - 12227902 EXTERNAL GOOD AFTERNOON, INFORMATION RECEIVED. LAST DAY OF NOTICE AND IS TODAY SO I AM SENDING THIS FOR A MEDICAL REVIEW. AS AS LONG AS WE GET THE FORM/LETTER BEFORE THE REVIEW IS COMPLETE, I WILL ADD IT! THIS CAN TAKE UP TO 2 WEEKS. THANK YOU, JOHNNA

**02/10/2022 3:37 PM - CLAIM Note 14**
Claim/Event/Leave: 12227902
NoteSubject : LTR to Atty
Other Subject : ATTY UPDATE
Text: [02/10/2022 - SHORTER, JOHNNA]FROM: MONICA L. REYNOLDS <MLREYNOLDS@CRUMLEYROBERTS.COM> SENT: THURSDAY, FEBRUARY 10, 2022 2:44 PM TO: SHORTER, JOHNNA <JOHNNA.SHORTER@LFG.COM> CC: PETER H. BURKE <PHBURKE@CRUMLEYROBERTS.COM> SUBJECT: RE: KIM NAUGLE- 12227902 JOHNNA, ATTACHED ARE THE FOLLOWING DOCUMENTS FROM MS. NAUGLE: AVANCE CARE/ERIC KELLY NOTES FROM 1/12/2021 & 2/5/2021 WAKEMED/DR. PRUCHA NOTES FROM 2/7/2022 LETTER FROM DR. PRUCHA (IN LIEU OF LINCOLN S FORM) CURRENT SOCIAL SECURITY BENEFIT LETTER - IT CONFIRMS THAT MS. NAUGLE HAS NOT RECEIVED SSDB AS OF THIS DATE. ERIC KELLY COMPLETED LINCOLN'S MENTAL HEALTH ASSESSMENT, BUT INFORMED MS. NAUGLE THAT IT MUST BE SENT THROUGH THEIR AUTHORIZED RECORDS DEPARTMENT TO OUR OFFICE. THE FACILITY WOULD NOT PROVIDE MS. NAUGLE WITH A COPY OF THE COMPLETED FORM. WE WILL FORWARD THE COMPLETED FORM AS SOON AS IT IS RECEIVED. MONICA L. REYNOLDS SENIOR LITIGATION CASE MANAGER, CRUMLEY ROBERTS, LLP OFFICE: 336-333-9899 MLREYNOLDS@CRUMLEYROBERTS.COM

**02/10/2022 3:36 PM - CLAIM Note 13**
Claim/Event/Leave: 12227902
NoteSubject : Social Security
Other Subject : FRPPF OF FILING
Text: [02/10/2022 - SHORTER, JOHNNA]SSDI FILED AND PROOF OF FILING IN DOC LIST. EE IS USING OWN ATTY FOR THIS APPLICATION.

**02/10/2022 3:31 PM - CLAIM Note 12**
Claim/Event/Leave: 12227902
NoteSubject : Med Records Rcvd
Other Subject : DR PRUCHA
Text: [02/10/2022 - SHORTER, JOHNNA]DR PRUCHA OVN RECEIVED FROM 2/7/22[02/10/2022 - SHORTER, JOHNNA]**LETTER

Text: [02/10/2022 - SHORTER, JOHNNA]DR PRUCHA OVN RECEIVED FROM 2/7/22[02/10/2022 - SHORTER, JOHNNA]***LETTER ALSO SENT ON BEHALF OF EE DATED 2/7/22 FROM DR PRUCHA

**02/10/2022 3:23 PM - CLAIM Note 11**
Claim/Event/Leave: 12227902
NoteSubject : Med Records Rcvd
Other Subject : ADVANCE CARE THERAPY
Text: [02/10/2022 - SHORTER, JOHNNA]ADVANCE CARE THERAPY OVN RECEIVED FROM 1/12/22[02/10/2022 - SHORTER, JOHNNA]***ALSO, 2/5/22 OVN RECEIVED

**02/08/2022 11:23 AM - CLAIM Note 10**
Claim/Event/Leave: 12227902
NoteSubject : Med Records Rcvd
Other Subject : DR PRUCHA
Text: [02/08/2022 - SHORTER, JOHNNA]DR PRUCHA LETTER RECEIVED OUTLINING TREATMENT

**02/01/2022 2:06 PM - CLAIM Note 9**
Claim/Event/Leave: 12227902
NoteSubject : LTR to Atty
Other Subject :
Text: [02/01/2022 - SHORTER, JOHNNA]FROM: MONICA L. REYNOLDS <MLREYNOLDS@CRUMLEYROBERTS.COM> SENT: TUESDAY, FEBRUARY 1, 2022 12:39 PM TO: SHORTER, JOHNNA <JOHNNA.SHORTER@LFG.COM> CC: PETER H. BURKE <PHBURKE@CRUMLEYROBERTS.COM> SUBJECT: RE: KIM NAUGLE- 12227902 JOHNNA, I AM RESPONDING TO LINCOLN S LETTER DATED DECEMBER 28, 2021 WHEREIN THEY REQUESTED MEDICAL RECORDS AND COMPLETED FORMS FROM MS. NAUGLE. ATTACHED ARE THE COMPLETED FORMS FROM MS. NAUGLE. ALSO ATTACHED ARE MS. NAUGLE S UPDATED MEDICAL RECORDS FROM THE FOLLOWING: AVANCE THERAPY DR. PRUCHA WAKE MED CARDIOLOGY MONICA L. REYNOLDS SENIOR LITIGATION CASE MANAGER, CRUMLEY ROBERTS, LLP OFFICE: 336-333-9899 MLREYNOLDS@CRUMLEYROBERTS.COM

**02/01/2022 2:06 PM - CLAIM Note 8**
Claim/Event/Leave: 12227902
NoteSubject : Med Records Rcvd
Other Subject : WAKE MED CARDIOLOGY
Text: [02/01/2022 - SHORTER, JOHNNA]WAKE MED CARDIOLOGY OVN RECEIVED FOR 10/29/21

**02/01/2022 2:05 PM - CLAIM Note 7**
Claim/Event/Leave: 12227902
NoteSubject : Med Records Rcvd
Other Subject : AVANCE THERAPY
Text: [02/01/2022 - SHORTER, JOHNNA]AVANCE THERAPY OVN RECEIVED FOR 1/6/22

**02/01/2022 2:02 PM - CLAIM Note 6**
Claim/Event/Leave: 12227902
NoteSubject : Med Records Rcvd
Other Subject : DR PRUCHA
Text: [02/01/2022 - SHORTER, JOHNNA]AFTER VISIT SUMMARY RECEIVED FOR 1215/21

**02/01/2022 1:59 PM - CLAIM Note 5**
Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : FORMS RECEIVED
Text: [02/01/2022 - SHORTER, JOHNNA]AQ, ACB, AUTH, CSS, FIQ, TEE

**02/01/2022 1:56 PM - PHONE Note 4**
Claim/Event/Leave: 12227902
NoteSubject : Initial EE Interview
Other Subject : ICP
Text: [02/01/2022 - SHORTER, JOHNNA]LAST DAY OF WORK: 12/23/20 JOB TITLE: PROJECT COORDINATOR JOB ACTIVITIES: DESK JOB WITH WALKING, WORKED IN THE OFFICE OR HOME, HIGH STRESS DUE TO HIGH VOLUME, NO REGULAR TRAVEL. PRIMARY REASON OOW AND WHY YOU CANNOT WORK: EE HAD HEART SURGERY 8/7/18 AND WENT BACK TO WORK. EE STARTED HAVING PANIC ATTACKS AND WAS EVALUATED FOR M/N CONDITION LDW 12/23/20. DX W PTSD DUE TO CARDIOLOGY ISSUE, DEPRESSION AND ANXIETY. EE WAS TOLD THAT STRESS HAD CAUSED HEART ISSUE. EE STATED SHE IS NOT IMPAIRED OR BEING KEPT OOW BY CARDIOLOGY. EE IS OOW FOR M/N. SEES THERAPIST KELLY ONCE EVERY 2 WEEKS AS THAT IS ALL SHE CAN AFFORD. SEES PCP ONCE EVERY 3 MONTHS. EE HAD HER MEDS INCREASED 5 M AGO BY PRIMARY. NO ESCALATION OF CARE TO FINANCIAL LIMITATIONS. ANY OTHER HEALTH CONDITIONS: HEART CONDITION, HIGH BP CONTROLLED W MEDS, DEAD THYROID CONTROLLED BY MEDS ANTICIPATED RTW DATE: WITHIN 2022 WHO IS KEEPING OOW - TREATING PROVIDER INFO LOV / NOV: PCPDR PRUCHA 2/7/22 (PRIMARY) THERAPIST ERIK KELLEY NOV 2/10 OR 15 PER EE (ADVANCE MEDIAL) TESTING COMPLETED: NO, PSYCHOLOGICAL EVALUATIONS MONARCH, FOLLOWED TO NEW MEDICAL GROUP ADVANCE HOSPITAL OR URGENT CARE VISITS SINCE DOD: NO ACTIVITIES OFDAILY LIVING: CAN CARE FOR SELF, HAS LONG BOUTS OF SLEEPING AND ANXIETY, HUSBAND DOES MAJORITY CHILDREN UNDER THE AGE OF 18 NAME AND DOB: NO MARRIED / SINGLE / WIDOWED / DIVORCED: MARRIED DOB: HEIGHT AND WEIGHT: 5 10 295 LBSHIGHEST LEVEL OF EDUCATION: 13 MILITARY OR RESERVES: NO ANNUAL SALARY: 61368.87 RECEIVING ANY OTHER FORM INCOME: NO APPLIED FOR SSDI HAS APPLIED AND ITS PENDING, WILL SEND PROOF OF FILING. FILED SELF. DO YOU HAVE ANY SECOND JOBS/BUSINESS: NOARE YOU IN SCHOOL?: NO IS THIS JOB WORK RELATED: NO WC INFO IF YES: N/A RESULT OF AN ACCIDENT OR IS THERE A 3RD PARTY INVOLVED: N/A ______________________________ EXPLAINED

ANY LETTERS THEY WILL RECEIVE EXPLAINED HOW EMAIL AND OTHER COMMUNICATION TOOLS (IVR, ESIGNATURE & TEXT MESSAGING) CAN BE USED EXPLAINED MYLINCOLNPORTAL AND PROVIDED CUSTOMER ACCESS CODE[02/01/2022 - SHORTER, JOHNNA]***EE STATED SHE CURRENTLY HAS COVID** EE COMPLETED INTERVIEW WITH ATTY DAVID BURKE PRESENT

**01/21/2022 3:01 PM - CLAIM Note 4**
Claim/Event/Leave: 12227902
NoteSubject : Notice/Proof Review
Other Subject : DAY 21
Text: [01/21/2022 - SHORTER, JOHNNA]FROM: SHORTER, JOHNNA <JOHNNA.SHORTER@LFG.COM> SENT: FRIDAY, JANUARY 21, 2022 2:21 PM TO: MONICA L. REYNOLDS <MLREYNOLDS@CRUMLEYROBERTS.COM> CC: PETER H. BURKE <PHBURKE@CRUMLEYROBERTS.COM> SUBJECT: RE: KIM NAUGLE -12227902 GOOD AFTERNOON, WE ARE HALF WAY THROUGH NOTICE AND PROOF AND STILL NEED TO INTERVIEW THE CLAIMANT AS WELL AS OBTAIN ALL FORMS AND MEDICAL RECORDS. PLEASE PROVIDE A TIME WE CAN DISCUSS THE LTD INTERVIEW WITH THE CLAIMANT. A FORMAL LETTER WILL BE SENT TO FOLLOW. THANK YOU, JOHNNA SHORTER

**12/29/2021 2:05 PM - CLAIM Note 3**
Claim/Event/Leave: 12227902
NoteSubject : Other
Other Subject : ATTY REP LETTER
Text: [12/29/2021 - SHORTER, JOHNNA]LETTER OF REP RECEIVED FROM CRUMLEY ROBERTS ATTY AT LAW

**12/28/2021 8:51 AM - PHONE Note 3**
Claim/Event/Leave: 12227902
NoteSubject : EE Called
Other Subject : RTC
Text: [12/28/2021 - SHORTER, JOHNNA]EE RTC TO DCM TO SAY SHE IS BEING REPPED BY HER ATTY. EXPLAINED EE WILL NEED TO HAVE ATTY SEND LETTER OF REP. THANKED AND CALL ENDED.

**12/27/2021 3:18 PM - PHONE Note 2**
Claim/Event/Leave: 12227902
NoteSubject : Called EE
Other Subject : ICP 1ST ATTEMPT
Text: [12/27/2021 - SHORTER, JOHNNA]CALLED EE AT LVM TO CLARIFY REPRESENTING. EE'S ATTY SENT LETTER ASKING FOR CLAIM BUT NOT SAYING REP. ASKED EE TO PROVIDE A LETTER OF REP. OR RTC FOR ICP

**12/27/2021 3:13 PM - PHONE Note 1**
Claim/Event/Leave: 12227902
NoteSubject : Called Other
Other Subject : ATTY
Text: [12/27/2021 - SHORTER, JOHNNA]CALLED ATTY TO DETERMINE IF THEY ARE REPRESENTING EE FOR THE LTD OR IF SHE WILL BE MANAGING IT ON HER OWN. ATTY OFFICE OF PETER BURKE AT 336-333-9899 IS ONLY ANSWERING EMERGENT CALLS AND THE OFFICE IS CLOSED. WILL CALLEE TO CLARIFY REPRESENTATION.

**12/27/2021 3:06 PM - CLAIM Note 2**
Claim/Event/Leave: 12227902
NoteSubject : Notice/Proof Review
Other Subject :
Text: [12/27/2021 - SHORTER, JOHNNA]NOTICE AND PROOF LETTER DATE MONDAY, DECEMBER 27, 2021 21 DAY FOLLOW UP SUNDAY, JANUARY 16, 2022 45 DAY WEDNESDAY, FEBRUARY 9, 2022 46 DAY FOLLOW UP THURSDAY, FEBRUARY 10, 2022

**12/23/2021 10:49 AM - CLAIM Note 1**
Claim/Event/Leave: 12227902
NoteSubject : Initial Entry
Other Subject :
Text: [12/23/2021 - HORTON, EMILY]CLAIM CREATED PER EMAIL REQUEST; PLEASE VERIFY ALL CLAIM INFO; VERIFY LDW/DOD; VERIFY BENEFIT ASSIGNMENT CLAIM ASSIGNED IN PROCESS AS UNSURE OF BENEFIT CLASS

**Note Report**

Report | Clear | Print | Help

AS Accom AS Event Add Note Appeal Claim Coord Claim Note Correspond Doc List Employee Leave Life Claim Lve Addtl Info Lve Correspondence Lve Program Lve Work Sched Medical Medical History Note SPELL Letters Scheduled Pmt Task Print Task Rpt Tasks

Claim

* **Claim/Event/Leave Number** 10839136 **Accommodation Number**

**Note type:**

Primary Sort Order
- Note Type
- Note Number
- ● Note Date/Time
- Accm. No.

Sec

**08/28/2023 10:22 AM - CLAIM Note 62**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : FILE COPY
Text: [08/28/2023 - KEEFER, DAWN]COMPLETE FILE COPY REQUEST HAS BEEN COMPLETED AND SENT VIA ONE DRIVE TO THE EMAIL ADDRESS PROVIDED MLREYNOLDS@CRLEGALTEAM.COM

**03/07/2022 10:04 AM - CLAIM Note 61**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [03/07/2022 - NAI, TIMOTHY]INVOICE DATED 05/24/2021 FROM SCANSTAT . INV #722036D0482942A3A478 IN THE AMT OF $12.90 FOR MEDICAL RECORDS INVOICE PAID IN FULL.

**03/04/2022 11:57 AM - CLAIM Note 60**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [03/04/2022 - SPRAGUE, TAYLA]INVOICE DATED 5/7/21 FROM SCANSTAT. INV#0B118F3AA9A24C1F9011 , IN THE AMT OF $27.65 FOR MEDICAL RECORDS FROM MONARCH BEHAVIORAL HEALTH . INVOICE PAID IN FULL.

**02/07/2022 2:13 PM - CLAIM Note 59**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : FILE COPY
Text: [02/07/2022 - PILAR, SARAH]COPY OF CLAIM FILE SENT TO ATTY MLREYNOLDS@CRUMLEYROBERTS.COM VIA ONEDRIVE.

**02/04/2022 3:08 PM - CLAIM Note 58**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : FAX FROM ATTY
Text: [02/04/2022 - MIKULICK, BROOK]TODAY, ARC RECVD A FAX FROM ATTY REQUESTING A COMPLETE COPY OF EE'S CLAIM FILE.

**12/20/2021 4:29 PM - CLAIM Note 57**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : ATTY LETTER
Text: [12/20/2021 - MIKULICK, BROOK]RECVD A LETTER FROM ATTY REQUESTING LTD CLM AND FORMS

**12/15/2021 4:03 PM - CLAIM Note 56**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [12/15/2021 - DEVLIN, TAMIE]INVOICE RECEIVED FROM VENDOR ECN, INV# BOCA124631, DATED 12/8/2021, IN THE AMOUNT OF $200.00, FOR PEER REVIEW: PSYCHIATRY. INVOICE PAID IN FULL.

**12/11/2021 12:56 PM - CLAIM Note 55**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : VENDOR PAYMENTS
Text: [12/11/2021 - LEWIS, MIA]INVOICE RECEIVED ON 12/08/2021 AND DATED 12/08/2021 FROM EXAM COORDINATORS

NETWORK, LLC. INV #BOCA124632 , IN THE AMOUNT OF $200.00 FOR PEER REVIEW PERFORMED BY MARK A SIMS WITH A SPECIALTY IN CARDIOLOGY . DATE OF SERVICE 12/02/2021 . INVOICE PAID IN FULL

**12/10/2021 2:21 PM - CLAIM Note 54**
Claim/Event/Leave: 10839136
NoteSubject : LTR to Atty
Other Subject : UPHOLD LETTER
Text: [12/10/2021 - MIKULICK, BROOK]ARC FAXED UH LETTER TO EE'S ATTY

**12/10/2021 2:09 PM - CLAIM Note 53**
Claim/Event/Leave: 10839136
NoteSubject : Appeal
Other Subject : UPHOLD
Text: [12/10/2021 - MIKULICK, BROOK]EE IS A 58 YOF PROJECT COORDINATOR (SED) WHO WORKS FOR SIEMENS CORPORATION. LDW: 12/23/2020. DOD: 12/24/2020. DXS: ANXIETY, DEPRESSION, PTSD, AND CORONARY ARTERY DISEASE. PROVIDERS: DR. PRUCHA, ERIC KELLY, LCSW, AND DR.SOLOMON (CARDIO). CLM APPROVED THRU 3/22/21 AND CLOSED NOT TD ONGOING BASED ON PSYCH CP REVIEW. EE RETAINED AN ATTY AND APPEAL REQUESTED. ON APPEAL, DR. PRUCHA (PCP) PROVIDED A LETTER DATED 7/15/21-PROGRESS NOTES DATED 2/12/2021, 6/4/21, 10/6/21-PHONE NOTE DATED 5/28/21, ERIC KELLY, LCSW, PROVIDED TELEHEALTH NOTES DATED 3/1/21, 4/1/21, 4/15/21, 5/6/21, 5/20/21-TX PLAN DATED 3/1/21-PHQ-9 QUESTIONNAIRE DATED 5/6/21, MAIMOUNA DIOP, NP (PSYCH) PROVIDED TELEHEALTH NOTE DATED 11/24/2020, DR. SOLOMON (CARDIO) PROVIDED OVNS DATED 12/4/2020 AND 6/18/21, JENNIE BUCHKOVICH, PA-C (CARDIO) PROVIDED OVN DATED 10/1/21 AND DECLARATION FROM EE AND HER HUSBAND. CARDIO AND PSYCH PEER REVIEWS COMPLETED AND CONCLUDED IMPAIRMENT BEYOND 3/22/21 WAS NOT SUPPORTED. ***RTR SENT TO ATTY ON 11/11/21, DL 12/1/21*** ADD'L INFO RECVD: LETTER FROM ATTY. FILE REFERRED BACK FOR ADDENDUMS TO BE COMPLETED. PSYCH ADDENDUM NOTED: IT IS TRUE THAT I DID NOT EXAMINE THE PATIENT DIRECTLY, MY ROLE IS TO REVIEW AND SUMMARIZE RECORDS AND PROVIDE AN OPINION. I AM A PAID REVIEWER BUT DO NOT WORK DIRECTLY FOR THE INSURANCE COMPANY AND MY REIMBURSEMENT IS NOT DEPENDENT ON MY OPINION. IT IS ALSO TRUE THAT HER THERAPIST PROVIDES OBJECTIVE INFORMATION RE: SUBJECTIVE SYMPTOMS BUT STATING THAT SHE SOMETIMES NEEDS TO BE REDIRECTED IN SESSION FOR GETTING STUCK ON A TOPIC IS NOT THE SAME AS HER ATTENTION BEING SO IMPAIRED THAT SHE CANNOT WORK. HER THERAPIST IS TREATING HER REGULARLY FOR PTSD, BUT SESSION NOTES ARE LIMITEDWITH REGARDS TO HOW IMPAIRMENT INFORMS HIS OPINION ON HER FUNCTIONAL CAPACITY AND DID NOT PROVIDE ADDITIONAL INFORMATION RE: DSM-5 CRITERIA ON THE CALL. THE STATEMENTS ABOUT ANXIETY BEING A CARDIOVASCULAR RISK FACTOR IS RATHER GENERAL IN THAT IT APPLIES TO POPULATION IN GENERAL AND THE CARDIOLOGIST S NOTES STATE HER BLOOD PRESSURE IS CONTROLLED. AGAIN, DETERMINATION OF HER ABILITY TO WORK BASED ON CARDIOVASCULAR STATUS IS DEFERRED TO THE APPROPRIATE SPECIALTY REVIEWER. CARDIO ADDENDUM NOTED:THE CASE WAS CAREFULLY REVIEWED, ALL CARDIAC RELATED RECORDS WERE METICULOUSLY SUMMARIZED AND ASSESSED. DR. SOLOMON S 8/31/21 CARDIOLOGY QUESTIONNAIRE FAILED TO PROVIDE ANY CURRENT CLINICAL OR TEST-BASED ASSESSMENT OF THE CLAIMANT S CURRENT CARDIAC FUNCTIONAL CAPACITY, STATUS OF HER ISCHEMIC HEART DISEASE, LEFT VENTRICULAR FUNCTION, ANY ASSESSMENT OF CARDIAC RHYTHM ON A LONG-TERM BASIS, OR DOCUMENTATION OF SERIAL BLOOD PRESSURES IN HER FREE- LIVING STATE. MY ASSESSMENT THAT THE RECORDS PROVIDEDFOR REVIEW FAILED TO SUPPORT CARDIOVASCULAR BASED IMPAIRMENT WAS BASED ON A LACK OF FORMAL CLINICAL AND TEST-BASED DATA SUPPORTING SUCH IMPAIRMENT. IF ADDITIONAL DATA THAT WOULD ALTER/IMPACT MY PRIOR EXPRESSED OPINION SHOULD BECOME AVAILABLE, IT SHOULD OF COURSE BE REVIEWED. IN ADDITION, I WOULD RECOMMEND THAT DR. SOLOMON RESPOND TO MY POSED QUESTIONS OR PREFERABLY RESPOND TO ATTEMPTS TO REACH HIM, ALLOWING HIM THE OPPORTUNITY TO PROVIDE RIGOROUSLY BASED DATA THAT WOULD SUPPORT HIS OPINIONS IN THIS CASE. MR. BURKE HAS OPINED THAT MY REVIEW SHOULD HAVE ACCEPTED THE OPINION OF DR. SOLOMON WITHOUT APPROPRIATE SUPPORTING DATA. I WOULD ADD THAT DR. SOLOMON OPINED THAT ANXIETY, DEPRESSION, AND PSTD MAY RAISE BLOOD PRESSURE HE DID NOT PROVIDE ANYDOCUMENTATION THAT THIS IN FACT HAD OCCURRED OR RESULTED IN ADDITIONAL CARDIAC RELATED MORBIDITY. AS AN INDEPENDENT REVIEWER IT IS MY RESPONSIBLY TO EVALUATE MEDICAL RECORDS AND SEEK DATA THAT WOULD SUPPORT OR FAIL TO SUPPORT IMPAIRMENT IN MY AREA OFSPECIALTY AND NOT TO PROVIDE OPINIONS IN OTHER MEDICAL DISCIPLINES WHICH ARE OUTSIDE MY AREA OF EXPERTISE SUCH AS PSYCHIATRY PARTICULARLY IN VIEW OF THE FACT THAT THIS CASE WAS REVIEWED BY A PSYCHIATRIST. ***ARC IS MAINTAINING THE DENIAL FOR BENEFITS BEYOND 3/22/21.

**12/10/2021 11:44 AM - CLAIM Note 52**
Claim/Event/Leave: 10839136
NoteSubject : LTR to Atty
Other Subject : STD SPD
Text: [12/10/2021 - MIKULICK, BROOK]ARC FAXED A COPY OF STD SPD TO EE'S ATTY.

**12/02/2021 2:40 PM - PHONE Note 35**
Claim/Event/Leave: 10839136
NoteSubject : Other Called
Other Subject : CRUMLEY ROBERTS
Text: [12/02/2021 - MIKULICK, BROOK]LAUREN FROM ATTY OFFICE CALLED ARC TODAY @ 8:50AM AND LEFT A VM STATING THAT SHE WAS CALLING TO DISCUSS EE'S CLM. SHE STATED THAT THEIR OFFICE REQUESTED EE'S CLM FILE AND POLICY INFO, BUT HAVE NOT RECVD POLICY INFO FORHER STD. SHE WANTED TO KNOW THE BEST WAY TO GET INFO. SHE TRIED TO GET POLICY THRU ER, BUT WAS ADVD SHE HAD TO GO THRU LFG. REQUESTED A C/B @ 800-288-1529 X 1601. ---ARC R/C TO LAUREN. SPOKE TO TAYLOR. SHE TRANSFERRED CALL. ADVD HER THAT ARC CANNOT RELEASE SPD TO THEM W/O ER CONSENT. ADVD HER THAT ER PROFILE SPECIFICALLY STATES TO CONTACT THE ER TO OBTAIN THE INFO. ADVD ARC HAS EMAILED ER TO FIND OUT IF ARC CAN SEND THEM THE SPD. SHE UNDERSTOOD AND THANKED ARC FOR THE R/C.

**12/01/2021 4:43 PM - CLAIM Note 51**

Claim/Event/Leave: 10839136
NoteSubject : Appeal
Other Subject : STATUS
Text: [12/01/2021 - MIKULICK, BROOK]ARC REFERRED FILE BACK TO ECN FOR PEER ADDENDUMS TO BE COMPLETED

**12/01/2021 4:37 PM - CLAIM Note 50**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : CRUMLEY ROBERTS
Text: [12/01/2021 - MIKULICK, BROOK]TODAY, ARC RECVD A LETTER FROM ATTY OFFICE FOR RTR RESPONSE.

**11/15/2021 1:41 PM - CLAIM Note 49**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [11/15/2021 - MITCHELL, CATHERINE]INVOICE DATED 11/10/2021 FROM ECN INV #BOCA 122454 IN THE AMT OF $ 660.00 FOR CARDIOLOGY PEER REVIEW INVOICE PAID IN FULL.

**11/11/2021 10:00 AM - CLAIM Note 48**
Claim/Event/Leave: 10839136
NoteSubject : Appeal
Other Subject : STATUS
Text: [11/11/2021 - MIKULICK, BROOK]ARC SENT ATTY RTR LETTER VIA FAX ALONG W/ COPIES OF PSYCH AND CARDIO PEER REPORTS TO REVIEW AND RESPOND BY 12/1/21

**11/10/2021 3:51 PM - CLAIM Note 47**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : VENDOR PAYMENT
Text: [11/10/2021 - DEVLIN, TAMIE]INVOICE RECEIVED FROM VENDOR ECN, INV# BOCA122365, DATED 11/9/2021, IN THE AMOUNT OF $860.00, FOR PEER REVIEW: PSYCHIATRY. INVOICE PAID IN FULL.

**11/10/2021 3:33 PM - CLAIM Note 46**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : FAX TO ATTY
Text: [11/10/2021 - MIKULICK, BROOK]ARC FAXED A LETTER TO EE'S ATTY PROVIDING THEM W/ CONTACT INFO TO REQUEST A COPY OF STD SPD.

**11/10/2021 3:30 PM - PHONE Note 34**
Claim/Event/Leave: 10839136
NoteSubject : Other Called
Other Subject : ATTY
Text: [11/10/2021 - MIKULICK, BROOK]LAUREN FROM ATTY OFFICE CALLED ARC TODAY @ 3:14 AND LEFT A VM ADVING SHE STILL NEEDED COPY OF ER STD PLAN DOC FOR THEIR RECORDS.

**11/10/2021 9:02 AM - CLAIM Note 45**
Claim/Event/Leave: 10839136
NoteSubject : Appeal
Other Subject : STATUS
Text: [11/10/2021 - MIKULICK, BROOK]PSYCH PEER REVIEW RECVD. AWAITING CARDIO PEER REVIEW.

**10/26/2021 8:52 PM - CLAIM Note 44**
Claim/Event/Leave: 10839136
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 10/26/2021 - REFERRED TO EXAM COORDINATORS - ECN FOR PEER REVIEW.

**10/26/2021 9:53 AM - CLAIM Note 43**
Claim/Event/Leave: 10839136
NoteSubject : LTR to Atty
Other Subject : APPEAL ACK
Text: [10/26/2021 - MIKULICK, BROOK]ARC SENT APPEAL ACK W/ MEDICAL REVIEW LETTER TO EE'S ATTY VIA FAX

**10/26/2021 9:48 AM - CLAIM Note 42**
Claim/Event/Leave: 10839136
NoteSubject : Appeal
Other Subject : STATUS
Text: [10/26/2021 - MIKULICK, BROOK]UPON FURTHER REVIEW, ARC REFERRED FILE FOR A PSYCH PEER REVIEW W/ AP CONTACT AND CARDIO PEER REVIEW W/ AP CONTACT[10/26/2021 - MIKULICK, BROOK]----FILE REFERRED TO ECN

**10/26/2021 9:21 AM - CLAIM Note 41**
Claim/Event/Leave: 10839136
NoteSubject : Appeal
Other Subject : INITIAL REVIEW

Other Subject : INITIAL REVIEW
Text: [10/26/2021 - MIKULICK, BROOK]PRESCREEN COMPLETED. CODING IS ACCURATE. STD ASO ERISA. CLAIM FILED 12/18/2020. JD NOT ON FILE. AUTH ON FILE. CLAIM DENIED NOT TD ONGOING, DATE OF DENIAL WAS 06/03/2021. APPEAL TIMEFRAME IS 180 DAYS, APPEAL DUE 11/30/2021. LETTER OF APPEAL RECEIVED 10/21/2021. ATTORNEY REPRESENTED. ON APPEAL, DR. PRUCHA (PCP) PROVIDED A LETTER DATED 7/15/21-PROGRESS NOTES DATED 2/12/2021, 6/4/21, 10/6/21-PHONE NOTE DATED 5/28/21, ERIC KELLY, LCSW, PROVIDED TELEHEALTH NOTES DATED3/1/21, 4/1/21, 4/15/21, 5/6/21, 5/20/21-TX PLAN DATED 3/1/21-PHQ-9 QUESTIONNAIRE DATED 5/6/21 MAIMOUNA DIOP, NP (PSYCH): TELEHEALTH NOTE DATED 11/24/2020 , DR. SOLOMON (CARDIO) PROVIDED OVNS DATED 12/4/2020 AND 6/18/21, DR. JENNIE BUCHKOVICH (CARDIO) PROVIDED AN OVN DATED 10/1/21, AND DECLARATION FROM EE AND HER HUSBAND. ACTION PLAN: PENDING FURTHER REVIEW.

**10/26/2021 8:13 AM - CLAIM Note 40**
Claim/Event/Leave: 10839136
NoteSubject : Appeal
Other Subject : REFERRAL RECVD
Text: [10/26/2021 - AVERILL, REBECCA]ASSIGNED TO BROOK MIKULICK

**10/25/2021 8:51 PM - CLAIM Note 39**
Claim/Event/Leave: 10839136
NoteSubject : Ref to Appeals
Other Subject : SCORE REFERRAL
Text: 10/25/2021 - REFERRED TO APPEALS UNIT FOR CLAIM REVIEW AND DETERMINATION.

**10/25/2021 2:12 PM - CLAIM Note 38**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : CONSOLIDATED REVIEW
Text: [10/25/2021 - MOREAU, ALLYSON]REVIEWED CLAIM IN TOTALITY AND AGREE WITH ESCALATION TO APPEALS FOR ONGOING HANDING AND FURTHER REVIEW.

**10/22/2021 12:25 PM - CLAIM Note 37**
Claim/Event/Leave: 10839136
NoteSubject : Appeal
Other Subject : RECD
Text: [10/22/2021 - BOYCE, LYNN]RECD APPEAL LETTER ATTORNEY REP CRUMBLEY ROBERTS ATTORNEYS AT LAW 3535 GRANDVIEW PARKWAY STE 100, BIRMINGHAM, AL 35243 T# 336-333-9899, DIRECT DIAL 205-747-1915 F# 877-293-8687. RECD APPEAL LTR ATTORNEY REP 92 PAGES TOTAL

**10/13/2021 11:53 AM - PHONE Note 33**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : ?'S
Text: [10/13/2021 - LAYTHE, ALEXA]EE CALLED AND ADV ON ISSUE WITH PERSONAL LEAVE FILED :: PLACED ON HOLD AND REVIEWED WITH LS AND LS ADV NEEDS DATES FOR PLOA :: DCM RETURN TO CALL WITH EE AND ADV THAT LS WAS CALLING FOR DATES FOR PLOA TO SET UP FOR EE ;:EE ADV SHE WAS TOLD TO FILE AS LFG DENIED HER AND SHE IS APPEALING WITH HER LAWYER CURRENTLY, AND EE ADV SO SHE DID FILE AND EE PROVIDED A STD CLAIM 11680231. ADV THAT WAS FILED FOR STD AND EE ADV SHE DOESN'T KNOW WHAT TO TELL DCM. EE ASKED DCM TO ADV HER ON WHAT DATES TO FILE AND DCM ADV THAT IS WHAT SHE IS IS TRYING TO ASCERTAIN SO LS CAN SET UP THE LOA FOR HER. EE ADV THIS IS THE PROBLEM AND ASKED FOR MANAGER. ADV TO HOLD :: RETURNED TO CALL WITH EE AND ALERTED EE THAT WILL RTC TODAY AND CXRTC NUMBER :: EE THANKED AND E.C

**07/16/2021 8:05 AM - CLAIM Note 36**
Claim/Event/Leave: 10839136
NoteSubject : LTR to ER
Other Subject : UPDATE
Text: [07/16/2021 - MOREAU, ALLYSON]GOOD MORNING WILL. I LEFT YOU A VOICE MESSAGE THIS MORNING. I AM TRYING TO DETERMINE LAST ACTIONS REGARDING THIS EMPLOYEE. I HAVE BEEN IN CONTACT WITH HER AS SHE HAS NOT RETURNED TO WORK. SHE INDICATED THAT SHE HAS NOT RECEIVED ANY COMMUNICATION FROM LF. CAN YOU CONFIRM HER LATEST STATUS AND IS SHE APPEALING THE DECISION? HAS SHE PROVIDED ANY PAPERWORK. YOUR ASSISTANCE IS APPRECIATED. , KIM HAS BEEN ADVISED OF HER DENIAL AND SHE IS STILL WITHIN THE TIMEFRAME OF HER APPEAL (180 DAYS FROM THE DATE SHE RECEIVED HER DENIAL LETTER). HER ATTORNEY HAS REQUESTED A COPY OF HER CLAIM FILE, WHICH WAS PROVIDED TO THEM ON 7/7/21. AS OF NOW, THAT IS THE NEWEST STATUS WE WOULD HAVE IN REGARDS TO KIM S CLAIM. MOVING FORWARD, WE WOULD NEED TO AWAIT KIM S OFFICIAL APPEAL IN ORDER TO PROCEED WITH THE APPEAL OF HER CLAIM.

**07/07/2021 12:35 PM - CLAIM Note 35**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : COPY JOB
Text: [07/07/2021 - HOLMES, SIERRA]COPY OF COMPLETE FILE SENT TO MLREYNOLDS@CRUMLEYROBERTS.COM VIA ONEDRIVE.

**07/06/2021 1:04 PM - CLAIM Note 34**
Claim/Event/Leave: 10839136
NoteSubject : Other

Other Subject : CLAIM FILE
Text: [07/06/2021 - MOREAU, ALLYSON]CLAIM FILE REQUEST TO CLAIMSHOA

**07/02/2021 3:00 PM - CLAIM Note 33**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : ATTY DOCS
Text: [07/02/2021 - MARTINEZ, DIANA]RCVD REPRESENTATION FROM CRUMLEY ROBERTS, REQUESTING COPY OF FILE AND ALL FURTHER CORRESPONDENCE FOR CLAIM

**07/01/2021 9:43 AM - PHONE Note 32**
Claim/Event/Leave: 10839136
NoteSubject : Called ER
Other Subject :
Text: [07/01/2021 - MARTINEZ, DIANA]RTC TO ROBERT YANCE AT 919.208.5007 ADVISED ER, EE WAS NOTIFIED OF CLOSURE AND APPEALS PROCESS. TO DATE NO CONTACT FROM EE REGARDING APPEAL. ER QUESTIONED RTW DATE, ADVISED ER LFG DOES NOT HAVE A RTW DATE AND CLAIM WAS CLOSED EFF 3/22/21, FMLA WAS CLOSED IN MARCH FOR MAX ENTITLEMENT. ER UNDERSTOOD AND WILL CONTACT HR FOR FURTHER GUIDANCE

**07/01/2021 9:33 AM - PHONE Note 31**
Claim/Event/Leave: 10839136
NoteSubject : ER Called
Other Subject :
Text: [07/01/2021 - MARTINEZ, DIANA]RCVD VMX FROM ER ROBERT YANCE, HAD QUESTIONS REGARDING RTW DATE. REQUESTED RTC AT 919.208.5007

**06/09/2021 7:36 AM - CLAIM Note 32**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : COPY JOB
Text: [06/09/2021 - HALL, BRITTNEY]COPY OF COMPLETE FILE SENT TO VIA ONE DRIVE.

**06/07/2021 10:04 AM - PHONE Note 30**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : EMAIL LETTER
Text: [06/07/2021 - CHASE, ROBERT]EE CALLED AND REQUESTED WE EMAIL HER COPY OF CLOSURE LETTER. ADVISED I WOULD DO SO NOW

**06/03/2021 10:16 AM - PHONE Note 29**
Claim/Event/Leave: 10839136
NoteSubject : Called EE
Other Subject :
Text: [06/03/2021 - FOWLER, SERA]EE CALLED 6/2 - LVM ASKING FOR STATUS UPDATE - DID NOT SEE UPDATE ON PORTAL - NO RTC NEEDED EE SPOKE TO ADCM

**06/02/2021 11:57 AM - PHONE Note 28**
Claim/Event/Leave: 10839136
NoteSubject : Called EE
Other Subject : CLOSURE
Text: [06/02/2021 - CHASE, ROBERT]CALLED EE AND ADVISED OF CLOSURE FOR NOT TD. EE TOOK MOMENT TO THANK ADCM FOR ASSISTANCE AND PROFESSIONALISM DURING THE PROCESS. ADVISED OF APPEAL PROCESS. EE ASKED IF SHE COULD REQ COPY OF CLAIM FILE. ADVISED EE SHE CERTAINLY COULD AND WOULD NEED TO SEND REQ IN WRITING. EE UNDERSTOOD, THANKED AGAIN AND C/E

**06/02/2021 9:05 AM - CLAIM Note 31**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : M1 REVIEW
Text: [06/02/2021 - MOREAU, ALLYSON]REVIEWED CLAIM AND AGREE WITH CLOSURE FOR NOT TD AS MEDICAL ON FILE DOES NOT SUPPORT RESTRICTIONS FROM WORK

**06/02/2021 8:03 AM - CLAIM Note 30**
Claim/Event/Leave: 10839136
NoteSubject : Closed
Other Subject : NOT TD
Text: [06/02/2021 - CHASE, ROBERT]LDW 12/23 DOD 12/24 EE IS A 57 YOF DX ANXIETY, PTSD. CLAIM INITIALLY SUPPORTED THRU 3/22. NEW MEDICAL IN AND REFERRED FOR ICP REVIEW. PER REVIEW WITH PRACTICING PHYSICIAN, R/LS NOT SUPPORTED BEYOND 3/22. DCM RECOMMEND CLOSURE NOT TD

**05/28/2021 10:02 AM - PHONE Note 27**
Claim/Event/Leave: 10839136
NoteSubject : Called EE
Other Subject :

Text: [05/28/2021 - FOWLER, SERA]CALLED EE TO ADVISE OF ICP REFERRAL, LEFT DETAILS OF RUSHED STATUS AND HOPE TO BE COMPLETE EOB BUT IF NOT BY TUESDAY. LEFT DIRECT LINE FOR RTC FOR ANY QUESTIONS OR CONCERNS

**05/27/2021 1:04 PM - PHONE Note 26**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : STATUS
Text: [05/27/2021 - CHASE, ROBERT]EE CALLED TO CHECK THE STATUS OF CLAIM AS SHE HAS WAITED ANOTHER WEEK. ADVISED I HAD JUST CHECKED THE STATUS OF CLAIM REVIEW YESTERDAY AND WAS ADVISED IT IS STILL IN PROCESS AND SHOULD BE DONE SOON. EE EXPRESSED FRUSTRATION WITH THE DELAY AND ADVISED THAT THERAPIST IS ALSO LEAVING PRACTICE. EE SAID HER NEXT STEPS WILL BE TO GET AN ATTORNEY. ADVISED EE TO HAVE ATTORNEY REACH OUT IF SHE SO WISHES. EE ASKED FOR M1 TO DISCUSS FURTHER WAYS TO EXPEDITE REVIEW GIVEN LONG WAIT. CONNECTED TO M1 VOICEMAIL

**05/21/2021 11:53 AM - PHONE Note 25**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : STATUS
Text: [05/21/2021 - CHASE, ROBERT]EE CALLED TO CHECK THE STATUS OF CLAIM- ADVISED CLAIM WITH CLINICAL PRACTICIONER AND I WOULD FOLLOW UP ONCE I HAD UPDATE. EE SAID SHE WOULD CONTINUE TO HARRASS ME UNTIL SHE HAD AN ANSWER

**05/21/2021 10:13 AM - PHONE Note 24**
Claim/Event/Leave: 10839136
NoteSubject : AP Called
Other Subject : KELLEY
Text: [05/21/2021 - CHASE, ROBERT]AP KELLEY CALLED AND LEFT MESSAGE- EE WAS CALLING TO ADVISE THAT HE IS AVAILABLE FOR CONTACT AND ADVISE THAT HE CAN BE CALLED BACK @ 9192102070 FOR DISCUSSIONS REGARDING CLAIM

**05/19/2021 12:16 PM - PHONE Note 23**
Claim/Event/Leave: 10839136
NoteSubject : Called EE
Other Subject : RETURN CALL
Text: [05/19/2021 - CHASE, ROBERT]CALLED EE AND ADVISED RETURNING CALL- ADVISED MEDICAL RECEIVED FROM MONARCH AROUND 5/10 AND REFERRED TO CLINICAL STAFF AND NCM STATED THAT MEDICAL DOCUMENTATION IS UNCLEAR AND CLAIM REFERRED TO ICP FOR AP TO AP CONTACT, EEASKED WHAT IS NOT CLEAR, SHE HAS PTSD AND ANXIETY AND IS SEEING A THERAPIST. ADVISED THIS IS NOT HELPING. ADVISED EE AS SOON AS I HEAR BACK I WOULD LET HER KNOW. EE THANKED AND CE/

**05/19/2021 12:12 PM - PHONE Note 22**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : LEFT MESSAGE
Text: [05/19/2021 - CHASE, ROBERT]EE CALLED AND LEFT MESSAGE REQ CALL BACK FOR STATUS OF CLAIM, EXPRESSED FRUSTRATION WITH THE DELAY IN HER RECORDS BEING REVIEWED AND ADVISED SHE NEEDS TO BE PAID

**05/17/2021 6:56 AM - MDS Note**
Claim/Leave: 10839136
Episode #: 3
Nurse Name: ROBERTSON, RACHAEL
Service #: 17142295
Service Date: 05/17/2021
Activity: COORD SERVICES, LM CONSULTING PHYSICIAN
Contact Information: CLAIMS, ROBERT, CHASE
Note Type: INFORMATION OBTAINED DESC
Text: BHC COMPLETED ICP REFERRAL. CS UPDATED. BHC ACTIVITIES CONCLUDED.

**05/17/2021 6:52 AM - MDS Note**
Claim/Leave: 10839136
Episode #: 3
Nurse Name: ROBERTSON, RACHAEL
Service #: 17142294
Service Date: 05/17/2021
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, ROBERT, CHASE
Note Type: INFORMATION OBTAINED DESC
Text: BHC MEMORANDUM COMPLETED AND ADDED TO DOC LIST. BHC TO REFER CLAIM TO ICP FOR REVIEW. CS UPDATED.

**05/14/2021 10:14 AM - PHONE Note 21**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : STATUS
Text: [05/14/2021 - CHASE, ROBERT]EE CALLED AND WANTED TO CHECK STATUS OF CLAIM- EE ADVISED STRESSED ABOUT NOT GETTING PAID AND THIS HAS NOT HELPED IMPROVE HER MENTAL HEALTH. EXPLAINED TO EE THAT WE NEED TO

NOT GETTING PAID AND THIS HAS NOT HELPED IMPROVE HER MENTAL HEALTH. EXPLAINED TO EE THAT WE NEED TO WAIT FOR MDS REVIEW TO COMPLETE AND I WOULD FOLLOW UP AS SOON AS POSSIBLE. EE THANKED AND C/E

**05/10/2021 8:09 AM - CLAIM Note 29**
Claim/Event/Leave: 10839136
NoteSubject : Med Records Rcvd
Other Subject : MONARCH
Text: [05/10/2021 - CHASE, ROBERT]41 PAGE FAX- TELEHEALTH NOTES FROM 5/6 OV- EE STRESSED WITH HOME RESPONSIBILITY AND THE LONG ADMIN WAIT TIMES, EE VENTING FEELSINGS DURING SESSIONS, EE HAS HAD DIFFICULTY SLEEPING, 4/15 THERAPY NOTES- EE SEEN FOR FOLLOW UPREGARDING ANXIETY, 4/1/21 TELEHEALTH VISIT, 3/1/21 TELEHEALTH OV, MASTER TREATMENT PLAN, 11/24/20 OV NOTE, 11/3/20 TELEHEALTH VISIT, 11/3/20 TELEHEALTH VISIT,

**05/05/2021 1:22 PM - PHONE Note 20**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : STATUS
Text: [05/05/2021 - CHASE, ROBERT]EE CALLED TO SEE IF MEDICAL IN- ADVISED RECEIVED SOME MEDICAL AND REFERRED TO MDS- EE SAID SHE WAS TOLD EVERYTHING THEY HAVE HAS BEEN SENT. EE CONF ONLY TREATING AT MONARCH. EE NOTED HAS OV TOMORROW AND NO ERTW CURRENTLY

**05/05/2021 8:23 AM - CLAIM Note 28**
Claim/Event/Leave: 10839136
NoteSubject : Ref to Managed Care
Other Subject : FULL FILE 1
Text: [05/05/2021 - CHASE, ROBERT]LDW 12/23 DOD 12/24 EE IS A 58 YOF OOW DUE TO ANXIETY AND PTSD. INITIALLY TREATED WITH WAKEMED UNTIL REFERRED TO MENTAL HEALTH TREATMENT. EE HAS CONFIRMED NOW ONLY TREATING AT MONARCH HEALTH. NOTICE AND PROOF WAS DUE 5/1,TO DATE, HAVE ONLY RECEIVED OV SUMMARIES THAT EE WAS ABLE TO PRINT OUT DUE TO ISSUES WITH THIRD PARTY PROCESSING COMPANY. GIVEN MEDICAL INFORMATION RECEIVED, WOULD INFORMATION ON FILE SUPPORT ONGOING ABSENCE FROM WORK? EE HAS NO ERTW DATE CURRENTLY.AP TO AP CONTACT APPROVED.

**05/05/2021 8:21 AM - CLAIM Note 27**
Claim/Event/Leave: 10839136
NoteSubject : Med Records Rcvd
Other Subject : MONARCH
Text: [05/05/2021 - CHASE, ROBERT]12 PAGE FAX- PRINTOUT FROM EE- 4/15 TELEHEALTH THERAPY NOTES- AP NOTES THAT EE WISHES GET BACK TO NORMAL, SEEMINGLY NO CLINICAL FINDINGS IN NOTES, 4/1 NOTES- EE SEEN FOR SOLUTION FOCUSED THERAPY, AP REVIEWING OPTIONS WITHEE TO REDUCE STRESS LEVEL, 3/1/21 TELEHEALTH VISIT- DEVELOPING INITIAL TREATMENT PLAN, MASTER TREATMENT PLAN- START DATE 3/1, EE WISHES TO KNOW HY SHE IS HAVING DEPRESSION, ANXIETY AND PTSD,

**04/28/2021 8:00 AM - CLAIM Note 26**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : ESC DEFERRED
Text: [04/28/2021 - CHASE, ROBERT]ESC DEFERRED- N&P DUE 5/1

**04/27/2021 9:32 AM - PHONE Note 19**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : UPDATE
Text: [04/27/2021 - CHASE, ROBERT]EE CALLED AND ADVISED THAT AP HAS TOLD HER THAT MEDICAL RECORDS DATA COMPANY IS MONTHS BEHIND AND IS NOT SENDING MEDICAL. EE EXPRESSED FRUSTRATION WITH AP. EE SAID SHE HAS BEEN CALLING DAILY AND HASN'T GOTTEN AN UPDATE FROM THEM. EE SAID SHE CAN SEE MINOR INFORMATION IN PATIENT PORTAL AND WILL TRY TO SEND THAT. THANKED AND C/E

**04/21/2021 4:11 PM - PHONE Note 18**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : STATUS
Text: [04/21/2021 - CHASE, ROBERT]EE CALLED TO CHECK THE STATUS OF REQ- ADVISED NEED MEDICAL FROM MONARCH BEHAVIORAL. EE ADVISED AP TOLD HER MEDS WERE SENT 3/24. ADVISED RECEIVED NOTHING SINCE 2/12 VISIT NOTE. EE SAID SHE'D CALL AP

**04/13/2021 12:35 PM - PHONE Note 17**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : UPDATE
Text: [04/13/2021 - CHASE, ROBERT]EE CALLED AND ADVISED THAT SHE TALKED WITH MONARCH AND THEY ARE SENDING MEDICAL RECORDS. EE ALSO NOTED THAT FOR WAKE MED, THEY AREN'T KEEPING HER OOW. ADVISED IF THAT IS THE CASE, MONARCH NOTES WILL BE NEEDED TO BE REVIEWED. EE NOTED 4/1 SAW AP AND SEES THEM AGAIN THURS AND WILL SEND THOSE NOTES. ADVISED I WOULD KEEP AN EYE OUT FOR NOTES

**04/08/2021 2:51 PM - PHONE Note 16**
Claim/Event/Leave: 10839136

NoteSubject : Called EE
Other Subject : DAY 15
Text: [04/08/2021 - CHASE, ROBERT]CALLED EE AND LEFT MESSAGE ADVISING STILL IN NEED OF MEDICAL RECORDS

**04/08/2021 2:50 PM - PHONE Note 15**
Claim/Event/Leave: 10839136
NoteSubject : Called AP
Other Subject : WAKEMED
Text: [04/08/2021 - CHASE, ROBERT]CALLED AP AND LEFT MESSAGE REQ CALL BACK FOR MED REQ STATUS

**04/08/2021 2:50 PM - PHONE Note 14**
Claim/Event/Leave: 10839136
NoteSubject : Called AP
Other Subject : MONARCH
Text: [04/08/2021 - CHASE, ROBERT]CALLED AP AND LEFT ON HOLD FOR OVER 5 MINS, DC CALL

**03/30/2021 9:01 AM - PHONE Note 13**
Claim/Event/Leave: 10839136
NoteSubject : AP Called
Other Subject : WAKEMED
Text: [03/30/2021 - CHASE, ROBERT]AP CALLED AND ADVISED THAT THEY RECEIVED MED REQ AND ARE NOT KEEPING EE OOW. AP NOTED THAT THEY HAVE NOT SEEN HER IN THE MONTH OF MARCH AND ARE ONLY CONSULTING HER FOR WEIGHT LOSS. THANKED AND C/E

**03/22/2021 1:50 PM - DOCUMENT Note 3**
Claim/Event/Leave: 10839136
NoteSubject : eSignature
Other Subject : Document Signed

**03/20/2021 12:32 PM - DOCUMENT Note 2**
Claim/Event/Leave: 10839136
NoteSubject : eSignature
Other Subject : Document Not Signed Day 2

**03/18/2021 12:35 PM - CLAIM Note 25**
Claim/Event/Leave: 10839136
NoteSubject : Notice/Proof Review
Other Subject : DUE 5/1/21
Text: [03/18/2021 - BOYCE, LYNN]FAXED REQ FOR ALL RECORDS FROM 3/8/21 TO PRESENT AND FMSE TO MONARCH BEHAVIORAL - ATTN: ERIC KELLY. FAXED REQ FOR ALL MEDICAL RECORDS FROM 3/1/21 TO PRESENT AND RESTR FORM WAKE MED BARIATRIC. N&P LTR EMAILED TO EE. DAY 154/1/21 DAY 30 4/16/21

**03/18/2021 12:32 PM - DOCUMENT Note 1**
Claim/Event/Leave: 10839136
NoteSubject : eSignature
Other Subject : Document Requested

**03/18/2021 12:25 PM - PHONE Note 12**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : STATUS
Text: [03/18/2021 - BOYCE, LYNN]RECD CALL FROM EE NO ERTW. LOV DR PRUCHA 2/12/21, F/U IN JUNE - IS COORDINATING EE TREATMENT FOR ANXIETY, DEPRESSION, PTDS AND MEDIAL ISSUES AND WILL NOT SEE EE UNTIL SHE FINISHES THERAPY AND TX WITH OTHER PROVIDERS. STARTED SEEING THERAPIST ERICK KELLY AT MONARCH BEHAVIORAL T# 866-272-7826 FOV LAST WEEK, SHE DID NOT RECALL THE DATE, NOV 4/1/21. ALSO SEEING DR Z, DID NOT RECALL AP EXACT NAME BUT SEEN AT WAKE MED BARIATRIC LOV LAST WEEK DID NOT RECALL DATE AND NOV 4/14/21. ADVISED WILL NEED UPDATED MEDICAL RECORDS FOR REVIEW.[03/18/2021 - BOYCE, LYNN]DR Z WAKE MED BARIATRIC T# 919-350-7331

**03/18/2021 11:57 AM - PHONE Note 11**
Claim/Event/Leave: 10839136
NoteSubject : Called EE
Other Subject : LEFT MESSAGE
Text: [03/18/2021 - CHASE, ROBERT]CALLED EE AND LEFT MESSAGE REQ CALL BACK FOR UPDATE

**03/17/2021 10:15 PM - CLAIM Note 24**
Claim/Event/Leave: 10839136
NoteSubject : FMLA
Other Subject : LEAVE END
Text: THE COORDINATED LEAVE WAS CLOSED FOR MAXIMUM ENTITLEMENT

**03/10/2021 2:26 PM - PHONE Note 10**
Claim/Event/Leave: 10839136
NoteSubject : Called EE
Other Subject : LEFT MESSAGE
Text: [03/10/2021 - CHASE, ROBERT]CALLED EE AND LEFT MESSAGE REQ CALL BACK FOR UPDATE REGARDING ONGOING

Text: [03/10/2021 - CHASE, ROBERT]CALLED EE AND LEFT MESSAGE REQ CALL BACK FOR UPDATE REGARDING ONGOING TREATMENT PAN

**02/24/2021 3:18 PM - CLAIM Note 23**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : PAY REVIEW
Text: [02/24/2021 - BOYCE, LYNN]AGREED WITH AUDIT AND PAY.

**02/24/2021 2:47 PM - CLAIM Note 22**
Claim/Event/Leave: 10839136
NoteSubject : Status Report
Other Subject :
Text: APPROVED THRU 3/22

**02/24/2021 2:47 PM - CLAIM Note 21**
Claim/Event/Leave: 10839136
NoteSubject : Action Plan
Other Subject :
Text: [02/24/2021 - CHASE, ROBERT]FOLLOW UP WITH EE FOR ONGOING AND ERTW

**02/24/2021 2:47 PM - CLAIM Note 20**
Claim/Event/Leave: 10839136
NoteSubject : Extended Benefits
Other Subject : THRU 3/22
Text: [02/24/2021 - CHASE, ROBERT]LDW 12/23 DOD 12/24 EE IS A 57 YOF DX ANXIETY. PER MDS REVIEW, DCM TO APPROVE THRU 1/31** GIVEN PRIOR MDS REVIEW AND THE FACT THAT EE COULDN'T GET BACK INTO AP PRUCHA UNTIL 2/10, REASONABLE TO EXT THRU 2/14** GIVEN MDS REVIEW, DCM TO EXT THRU 3/22

**02/24/2021 2:46 PM - CLAIM Note 19**
Claim/Event/Leave: 10839136
NoteSubject : FMLA
Other Subject : REQUEST END DATE CHG
Text: THE REQUESTED LEAVE END DATE WAS ADJUSTED TO REFLECT A CHANGE TO THE DISABILITY CLAIM'S APPROVED THROUGH DATE. THE ACTUAL LEAVE END DATE MAY HAVE CHANGED AS A RESULT OF THIS ACTION.

**02/24/2021 11:56 AM - MDS Note**
Claim/Leave: 10839136
Episode #: 2
Nurse Name: ROBERTSON, RACHAEL
Service #: 17087788
Service Date: 02/24/2021
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, ROBERT, CHASE
Note Type: INFORMATION OBTAINED DESC
Text: BHC MEMORANDUM COMPLETED AND ADDED TO DOC LIST. CS UPDATED.

**02/24/2021 8:56 AM - CLAIM Note 18**
Claim/Event/Leave: 10839136
NoteSubject : Ref to Managed Care
Other Subject : FULL FILE 1
Text: [02/24/2021 - CHASE, ROBERT]GIVEN MEDICAL RECEIVED ARE ONGOING R/LS SUPPORTED? THROUGH WHEN?

**02/19/2021 8:46 AM - CLAIM Note 17**
Claim/Event/Leave: 10839136
NoteSubject : Med Records Rcvd
Other Subject : WAKEMED
Text: [02/19/2021 - CHASE, ROBERT]GIVEN MEDICAL RECEIVED, ARE R/LS SUPPORTED UNTIL JUNE?

**02/05/2021 4:51 PM - CLAIM Note 16**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : PAY REVIEW
Text: [02/05/2021 - BOYCE, LYNN]AGREED WITH AUDIT AND PAY

**02/05/2021 10:27 AM - CLAIM Note 15**
Claim/Event/Leave: 10839136
NoteSubject : FMLA
Other Subject : REQUEST END DATE CHG
Text: THE REQUESTED LEAVE END DATE WAS ADJUSTED TO REFLECT A CHANGE TO THE DISABILITY CLAIM'S APPROVED THROUGH DATE. THE ACTUAL LEAVE END DATE MAY HAVE CHANGED AS A RESULT OF THIS ACTION.

**02/05/2021 10:26 AM - CLAIM Note 14**
Claim/Event/Leave: 10839136
NoteSubject : Action Plan

NoteSubject : Action Plan
Other Subject :
Text: [02/05/2021 - CHASE, ROBERT]GET UPDATE FOR ONGOING

**02/05/2021 10:26 AM - CLAIM Note 13**
Claim/Event/Leave: 10839136
NoteSubject : Status Report
Other Subject :
Text: APPROVED THRU 2/14

**02/05/2021 10:26 AM - CLAIM Note 12**
Claim/Event/Leave: 10839136
NoteSubject : Extended Benefits
Other Subject : THRU 2/14
Text: [02/05/2021 - CHASE, ROBERT]LDW 12/23 DOD 12/24 EE IS A 57 YOF DX ANXIETY. PER MDS REVIEW, DCM TO APPROVE THRU 1/31** GIVEN PRIOR MDS REVIEW AND THE FACT THAT EE COULDN'T GET BACK INTO AP PRUCHA UNTIL 2/10, REASONABLE TO EXT THRU 2/14

**02/05/2021 10:24 AM - PHONE Note 9**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : LEFT MESSAGE
Text: [02/05/2021 - CHASE, ROBERT]EE CALLED AND LEFT MESSAGE- ADVISED THAT SHE HAS NOT GOTTEN BACK INTO PRUCHA DUE TO SCHEDULE ISSUES. NOV IS ON 2/10. ADVISED EE I WOULD EXT THRU 2/14 AND FOLLOW UP AFTER OV. IF NO RTW, WILL NEED MEDICAL. EE UNDERSTOOD. EEALSO NOTED THAT SHE HAS BEEN TRYING TO SEE A THERAPIST, HOWEVER THEY ARE BOOKED UNTIL MARCH AT THE EARLIEST BUT SHE WOULD ADVISE IF ANYTHING CHANGES

**02/04/2021 11:59 AM - PHONE Note 8**
Claim/Event/Leave: 10839136
NoteSubject : Called EE
Other Subject : LEFT MESSAGE
Text: [02/04/2021 - CHASE, ROBERT]CALLED EE AND LEFT MESSAGE REQ CALL BACK FOR UPDATE REGARDING EAP AND RTW

**01/28/2021 3:31 PM - CLAIM Note 11**
Claim/Event/Leave: 10839136
NoteSubject : Other
Other Subject : PAY REVIEW
Text: [01/28/2021 - BOYCE, LYNN]AGREED WITH AUDIT AND PAY.

**01/28/2021 2:04 PM - CLAIM Note 10**
Claim/Event/Leave: 10839136
NoteSubject : FMLA
Other Subject : APPROVED LEAVE
Text: THE LEAVE WAS APPROVED CONCURRENT WITH THE DISABILITY CLAIM DETERMINATION. THE LEAVE WILL REMAIN COORDINATED WITH THE DISABILITY CLAIM UNTIL THE EARLIER OF THE CLAIM CLOSURE OR THE LEAVE END DATE.

**01/28/2021 2:04 PM - CLAIM Note 9**
Claim/Event/Leave: 10839136
NoteSubject : FMLA
Other Subject : ACKNOWLEDGMENT SENT
Text: THIS LEAVE ACKNOWLEDGEMENT LETTER WAS SENT. THE LEAVE BEGIN DATE IS 12/24/2020 AND THE LEAVE END DATE IS 01/31/2021.

**01/28/2021 1:47 PM - CLAIM Note 8**
Claim/Event/Leave: 10839136
NoteSubject : Status Report
Other Subject :
Text: APPROVED THRU 1/31

**01/28/2021 1:47 PM - CLAIM Note 7**
Claim/Event/Leave: 10839136
NoteSubject : Action Plan
Other Subject :
Text: [01/28/2021 - CHASE, ROBERT]GET UPDATE FOR ONGOING

**01/28/2021 1:47 PM - CLAIM Note 6**
Claim/Event/Leave: 10839136
NoteSubject : Approved
Other Subject : THRU 1/31
Text: [01/28/2021 - CHASE, ROBERT]LDW 12/23 DOD 12/24 EE IS A 57 YOF DX ANXIETY. PER MDS REVIEW, DCM TO APPROVE THRU 1/31

**01/28/2021 1:44 PM - CLAIM Note 5**
Claim/Event/Leave: 10839136

NoteSubject : Other
Other Subject : SAL CALC
Text: [01/28/2021 - CHASE, ROBERT]PER ELIG- 61368.87/52 = 1180.17

**01/28/2021 1:44 PM - PHONE Note 7**
Claim/Event/Leave: 10839136
NoteSubject : Called EE
Other Subject : UPDATE
Text: [01/28/2021 - CHASE, ROBERT]CALLED EE FOR UPDATE- EE ADVISED THAT SHE HAS NOT BEEN INTO SEE AP PRUCHA AGAIN AS SHE WAS REFERRED TO THERAPY AND HAS BEEN TRYING TO GET STARTED WITH EAP PROGRAM. ADVISED EE I WOULD APPROVE THRU 1/31

**01/28/2021 8:27 AM - MDS Note**
Claim/Leave: 10839136
Episode #: 1
Nurse Name: PIECHOWIAK, CHRISTINE
Service #: 17071163
Service Date: 01/28/2021
Activity: NURSE REVIEW, FILE REVIEW
Contact Information: CLAIMS, ROBERT, CHASE
Note Type: INFORMATION OBTAINED DESC
Text: SEE NURSE MEMORANDUM IN DOC LIST.

**01/26/2021 8:02 AM - CLAIM Note 4**
Claim/Event/Leave: 10839136
NoteSubject : Ref to Managed Care
Other Subject : FULL FILE 1
Text: [01/26/2021 - CHASE, ROBERT]GIVEN MEDICAL RECEIVED ARE R/LS SUPPORTED? THROUGH WHEN?

**01/26/2021 8:02 AM - CLAIM Note 3**
Claim/Event/Leave: 10839136
NoteSubject : Med Records Rcvd
Other Subject : PRUCHA
Text: [01/26/2021 - CHASE, ROBERT]12 PAGE FAX- 12/11 OV NOTE- EE SEEN FOR INTESTINAL PROBLEMS ALL WEEK, DX BACTERIAL SINUSITIS, 12/14 OV- EE SEEN FOR FOLLOW UP- EE CAN'T STAND AFTER HAVING PROBLEMS WITH HER KNEE, ALSO EXPERIENCING MENTAL HEALTH ISSUES, HIGH STRESS JOB AND HIGH FAMILY DRAMA. EE STARTED ON PAXIL 20 MG DAILY, RETURN IN 3 MOS

**01/25/2021 10:34 AM - PHONE Note 6**
Claim/Event/Leave: 10839136
NoteSubject : EE Called
Other Subject : DAY 30
Text: [01/25/2021 - CHASE, ROBERT]EE CALLED TO FOLLOW UP ON CLAIM- ADVISED STILL WAITING ON ACTUAL MEDICAL RECORDS, ONLY RECEIVED MED LIST. ADVISED I WOULD BE CALLING AP TO FOLLOW UP

**01/08/2021 11:06 AM - PHONE Note 5**
Claim/Event/Leave: 10839136
NoteSubject : Called EE
Other Subject : LEFT MESSAGE
Text: [01/08/2021 - CHASE, ROBERT]CALLED EE AND LEFT MESSAGE ADVISING STILL NEED OV NOTES FROM AP

**01/08/2021 10:34 AM - PHONE Note 4**
Claim/Event/Leave: 10839136
NoteSubject : Called AP
Other Subject : DAY 15
Text: [01/08/2021 - CHASE, ROBERT]CALLED AP AND LEFT MESSAGE ADVISING RECEIVED FMSE FORM AND MED LIST BUT NO OV NOTES

**01/08/2021 10:23 AM - CLAIM Note 2**
Claim/Event/Leave: 10839136
NoteSubject : Med Records Rcvd
Other Subject : WAKEMED
Text: [01/08/2021 - CHASE, ROBERT]22 PAGE FAX- MEDICATION LIST, FMSE FORM AND ACTUAL OV NOTES NOT INCLUDED
[01/08/2021 - CHASE, ROBERT]CORRECTION, FMSE FORM RECEIVED, NO OV NOTES

**12/30/2020 1:41 PM - PHONE Note 3**
Claim/Event/Leave: 10839136
NoteSubject : Called AP
Other Subject : DAY 5
Text: [12/30/2020 - GILMAN, IOLA]CALLED AP DR PRUCHA, DAY 5 FOR STATUS ON MED REQUEST. PHONE DID NOT RING OR COULD NOT LVM, DCM SENT ANOTHER REQUEST TO AP DR PRUCHA C/E

**12/24/2020 10:58 AM - CLAIM Note 1**
Claim/Event/Leave: 10839136
NoteSubject : Notice/Proof Review

NoteSubject : Notice/Proof Review
Other Subject : DUE 2/6
Text: [12/24/2020 - CHASE, ROBERT]FAXED REQ TO AP PRUCHA FOR OV NOTES, MAILED LETTER TO EE

**12/23/2020 1:10 PM - PHONE Note 2**
Claim/Event/Leave: 10839136
NoteSubject : Initial EE Interview
Other Subject : II COMPLETE
Text: [12/23/2020 - CHASE, ROBERT]LDW: 12/23/24 ;; DOD: 12/24/20 ;; GAP?: ;; DX: RECENT DOUBLE BYPASS IN 2018. HAVING SEVERE ANXIETY, PANIC ATTACKS, PTSD ;; WORK RELATED?: YES ;; EXCESSIVE WORKPLACE DEMANDS?: WORK IS VERY STRESSFUL, WHICH DOES NOT HELP ;; MANAGER SUPPORTIVE?: YES ;; SYMPTOMS MOST PREVENTING EE FROM WORKING: ANXIETY, STRESS ;; HX OF PSYCH TX?: NO ;; INPATIENT/OUTPATIENT PROGRAM?: EE HAS BEEN REFERRED, BUT IOP DOES NOT TAKE INSURANCE ;; PX: REFERRED TO PSYCHIATRY ;; TX PLAN?: REFERRED TO PSYCHIATRY ;; IS TX WORKING?: TOO SOON TO TELL ;; PLAN IF TX NOT WORKING?: UNSURE ;; AP (PCP): RONALD PRUCHA- PCP- WAKE MED PRIMARY CARE. 9192356575 - FAX 9192356598 ;; AP (THERAPIST): ;;AP (SPECIALIST): MONARCH PSYCHIATRY- EE MIGHT CHANGE BECAUSE THEY HAVE BEEN HARD TO CONTACT 9195670558- EE HAS SEEN THEM ONCE FOR INITIAL EVAL AND THEY HAVE NOT CONTACTED HER BACK FOR TREATMENT PLAN OR FOLLOW UP ;; REFERED TO OTHER CLINICAL SERVICES? (PSYCH? THERAPIST?): NA ;; COMORBIDS?: HEART CONDITION ;; FOV: NOVEMBER ;; LOV: ABOUT 2 WEEKS AGO, WITH AP PRUCHA ;; NOV: IN ABOUT A MONTH, NOT SCHEDULED YET. SUPPOSED TO BE 6 WEEKS FROM LOV ;; ERTW: UNSURE, WILL BE DETERMINED BY DR PRUCHA ;; DOH: 08/13/07 ;; JOB TITLE: PROJECT COORDINATOR ;; TYPE: SED ;; FT/PT?: FT ;; FULL TIME OVER 1 YR?: YES ;; SCHEDULE: M-F ;; ONLY INCOME?: YES ;; STAT?: NA ;; BEST PHONE#: ON FILE ;; DISTRIBUTION PREFERENCE? EMAIL ;; BEST EMAIL? ON FILE ;; SIGNED AUTH?: YES ;; EXPLAINED EP TIME : YES ;; EXPLAINED FMLA : YES ;; EXPLAINED NOTICE&PROOF : ES ;; ***** ;; GAVE EE RTW / IVR INFORMATION YES ;;

**12/21/2020 11:46 AM - PHONE Note 1**
Claim/Event/Leave: 10839136
NoteSubject : Initial EE Interview
Other Subject : II NOT NEEDED
Text: [12/21/2020 - CHASE, ROBERT]II NOT NEEDED YET AS EE FILED FOR FDOD WITHIN 2 WEEKS

**Note Report**

Report | Clear | Print | Help

AS Accom AS Event Add Note Appeal Claim Coord Claim Note Correspond Doc List Employee Leave Life Claim Lve Addtl Info Lve Correspondence Lve Program Lve Work Sched Medical Medical History Note SPELL Letters Scheduled Pmt Task Print Task Rpt Tasks

Claim

* **Claim/Event/Leave Number** 11680231 **Accommodation Number**

**Note type:**

Primary Sort Order
- ○ Note Type
- ○ Note Number
- ◉ Note Date/Time
- ○ Accm. No.

Sec

**10/13/2021 11:28 AM - LEAVE Note 2**
Claim/Event/Leave: 11680231
NoteSubject : FMLA
Other Subject :
Text: [10/13/2021 - PERRY, LAURA] AT NO ANSWER LVM OFFERING PLOA IN RESPONSE TO ER INQUIRY, EXPLAINED MAX DUR, NEED LBD. LEFT C/B INFO

**08/18/2021 11:16 AM - LEAVE Note 1**
Claim/Event/Leave: 11680231
NoteSubject : FMLA
Other Subject : SAM CADE
Text: [08/18/2021 - LAYTHE, ALEXA] ER CALLED TO CHECK ON STATUS OF PERSONAL LEAVE AND ADV CONT. STD AND FMLA WERE OPENED AND ER ASKED IF PEROSONAL COULD BE CREATED OR IF EE WILL HAVE TO REFILE :: ER THANKED AND E.C

**08/16/2021 11:29 AM - CLAIM Note 4**
Claim/Event/Leave: 11680231
NoteSubject : Other
Other Subject : M1 REVIEW
Text: [08/16/2021 - MOREAU, ALLYSON]AGREE WITH VOID AS EE DID NOT RTW AFTER CLOSURE FOR NOT TD THEREFORE MUST APPEAL PRIOR CLAIM BEFORE FILING NEW CLAIM WITH NO RTW IN BETWEEN.

**08/13/2021 3:29 PM - CLAIM Note 3**
Claim/Event/Leave: 11680231
NoteSubject : VOID
Other Subject : DUPLICATE CLAIM
Text: [08/13/2021 - BOYCE, LYNN]VOID DUPLICATE CLAIM SEE PRIOR CLAIM.

**08/13/2021 3:29 PM - PHONE Note 1**
Claim/Event/Leave: 11680231
NoteSubject : Initial EE Interview
Other Subject : COMPLETE
Text: [08/13/2021 - BOYCE, LYNN]CALLED EE CONFIRMED LDW 12/23/20 - EE NEVER RTN TO WORK IS WORKING ON DOING AN APPEAL OF PRIOR CLAIM THAT WAS CLOSED FOR NOT TD ONGOING. EE ADVISED SHE WAS DIRECTED BY EEEEEER TO FILE FOR A PERSONAL LEAVE SINCE HER FMLA REACHED MAX ENTITLEMENT SHE WAS NOT TRYING TO REFILE FOR STD.

**08/09/2021 11:40 AM - CLAIM Note 1**
Claim/Event/Leave: 11680231
NoteSubject : Internet Intake
Other Subject : SURGERY INFO
Text: SERVERE ANXIETY, DEPRESSION AND PTSD. CURRENTLY, APPEALING PREVIOUS SUBMITTED LONG TERM CLAIM. SIEMENS HR, SAM CADE, INSTRUCTED ME TO SUBMIT A LEAVE OF ABSENCE IN THE INTERIM.

**08/09/2021 11:40 AM - CLAIM Note 2**
Claim/Event/Leave: 11680231
NoteSubject : Internet Intake
Other Subject : ADDITIONAL INFO
Text: SERVERE ANXIETY, DEPRESSION AND PTSD. CURRENTLY, APPEALING PREVIOUS SUBMITTED LONG TERM CLAIM. SIEMENS HR, SAM CADE, INSTRUCTED ME TO SUBMIT A LEAVE OF ABSENCE IN THE INTERIM.

**FAX NUMBER:** 16033340401

**FROM:** Lauren Best

**DATE:** 08-25-2023 11:03 AM

**SUBJECT:** Kim Naugle, Claim # 12227902

**TOTAL PAGES:** 3

Please see attached request for updated claim file regarding Kim Naugle, Claim # 12227902.

Lauren Best
Case Manager

CR Legal Team, LLP

2400 Freeman Mill Rd

Suite 200

Greensboro, NC 27406

Office: 833-488-1112

Fax: 866-916-8059

E-mail: LABest@CRLegalTeam.com

Web Site: https://www.CRLegalTeam.com

*"Privileged and Confidential - This communication may contain confidential or legally privileged information and is intended only for the use of the individual or entity to whom it is addressed. Any dissemination, distribution, printing or copying of this material by anyone other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately."*

WE STAND UP FOR YOU®
CRLegalTeam.com

**MAILING ADDRESS:**
2400 Freeman Mill Road
Suite 200
Greensboro, NC 27406
336-333-9899
336-333-9894 Fax

**1-800-288-1-LAW**
(1-800-288-1529)
**www.CRLegalTeam.com**

August 25, 2023

**SENT VIA FACESMILE: 603-334-0401**

The Lincoln National Life Insurance Co.
Disability and Life Claims Appeal
ATTN: Tammy Sullivan
PO Box 2578
Omaha, NE 68172-9688

| | | |
|---|---|---|
| RE: | Claimant: | Kim Naugle |
| | Claim No.: | 12227902 |
| | Policyholder: | Siemens Corporation |

Dear Tammy:

I am writing to request an updated copy of Ms. Naugle's claim file from **June 1, 2021 to the present**. We are requesting the complete claim file, including but not limited to, all medical evidence, whether considered and mentioned in the evaluation process or not; correspondence from Lincoln to any of Ms. Naugle's medical providers regarding this claim; internal notes, updates and daily activity reports regarding this claim; opinions of any "independent medical examiners", on-site physicians, vocational experts or other medical professionals paid or employed by Lincoln to review this claim.

Please let us know if you need any other information. If the claim file is being sent via email please send to my assistant, Monica Reynolds at mlreynolds@crlegalteam.com

Sincerely,
CR Legal Team. LLP*

Peter H. Burke
Attorney

*Effective October 1, 2022, the legal name of the law firm of Crumley Roberts, LLP has been changed to CR Legal Team, LLP

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

November 1, 2022

Dr. Ronald Prucha

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle
Claimant D.O.B.:

Dear Dr. Ronald Prucha:

We are the Disability Claims Administrator for your patient, Kim Naugle. A full file physician's level review was completed to help us determine the patient's medically supported restrictions and limitations. Please review the enclosed report completed by the physician. Please review the restrictions identified by the physician and advise if you agree with their assessment and restrictions.

**Please review the concluded findings and enclosed information, sign below, and provide any comments you wish to have considered by November 9, 2022.** If we do not receive a response by this date, we will make our determination based on the medical data contained in our file. If you disagree with the physician's findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

**Please mark next to the appropriate statement and sign:**

**1) ✓ I agree with the findings of the review. OR**

**2) ____ I agree with the findings of the review, and I have provided additional clarification or information. OR**

**3) ____ I have supplied additional information/comments to highlight where I do not agree with the findings of the review.**

[signature] 11-9-22

**Signature** **Date**

If you have any questions regarding this matter, please contact me.

Lincoln
Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

| | |
|---|---|
| Date: | November 1, 2022 |
| To: | DR HEMANT SOLOMON<br>WAKE MED |
| Attn: | |
| Fax: | (919) 367-2693 |
| From: | Tammy Sullivan<br>Claim Resolution Specialist<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-0401 |
| Total Pages<br>(Including Cover): | 11 |
| RE: | Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

November 1, 2022

Dr. Hemant Solomon
Wake Med

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle
Claimant D.O.B.:

Dear Dr. Hemant Solomon:

We are the Disability Claims Administrator for your patient, Kim Naugle. A full file physician's level review was completed to help us determine the patient's medically supported restrictions and limitations. Please review the enclosed report completed by the physician. Please review the restrictions identified by the physician and advise if you agree with their assessment and restrictions.

**Please review the concluded findings and enclosed information, sign below, and provide any comments you wish to have considered by November 9, 2022.** If we do not receive a response by this date, we will make our determination based on the medical data contained in our file. If you disagree with the physician's findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

**Please mark next to the appropriate statement and sign:**

**1) _____ I agree with the findings of the review. OR**

**2) _____ I agree with the findings of the review, and I have provided additional clarification or information. OR**

**3) _____ I have supplied additional information/comments to highlight where I do not agree with the findings of the review.**

______________________________ ____________

**Signature** **Date**

If you have any questions regarding this matter, please contact me.

Sincerely,

Tammy Sullivan
Claim Resolution Specialist
Phone No.: (888) 437-7611 Ext. 69903
Secure Fax No.: (603) 334-0401

Attachments: 12227902-MEDICAL-CP/PEER REVIEW-09.30.2022

# Stanley Chou, MD
***Board-Certified in Internal Medicine***
***Cardiovascular disease***

CLAIMANT NAME: Naugle, Kim
EXAMINER: Stanley Chou, MD
ECN #: 199863-3
CLAIM #: 12227902
DATE OF LOSS: 12/24/2020
DATE OF SERVICE: 9/30/2022

**Peer Review**

This is a peer review regarding Naugle, Kim. I have been asked to review the medical records on behalf of ECN. I reviewed records from 12/04/2020 through 06/22/2022 including: Dr. Ronald Ronald Prucha, MD/Family Medicine, extending from 12/11/2020 to 06/22/2022; Dr. Hemant Solomon, MD/Cardiology, extending from 12/04/2020 to 06/18/2021; Jennie Baird Buchkovich, Pa-C/Certified Physician Assistant, extending from 10/01/2021 to 04/01/2022; Sirrell Butler, LCSW/Licensed Clinical Social Worker, on 11/03/2020; Maimouna Diop, NP/Nurse Practitioner, on 11/29/2020; Eric J. Kelly, LCSW/Licensed Clinical Social Worker, extending from 03/01/2021 to 02/05/2022; Mark A. Sims, MD/Cardiovascular Disease, on 11/10/2021.

The claimant is a 59-year-old female with a medical history significant for coronary artery disease status post coronary artery bypass grafting, hypertension, hyperlipidemia, obesity, and history of Covid-19 infection.

12/04/2020, Hermant Solomon, MD / Cardiology: The claimant presents with medical history of coronary artery disease for which she underwent coronary artery bypass graft on 08/07/2018 with LIMA-LAD and SVG – D2. She had a couple of paroxysmal atrial fibrillation postoperatively. Her carotid dopplers on 08/01/2019 were essentially normal. Her 2D echo on 08/01/2018 showed normal left ventricular systolic function with an EF of 55-60%. Her CHADS-Vasc score was 3. She wore a cardiac monitor from 08/22/2018 to 09/04/2018, predominantly rhythm was normal sinus rhythm, no evidence of tachycardia or bradycardia arrhythmias, symptoms of palpitations/rapid heart rate correspond with sinus bradycardia and atrial run of 4 beats. Her repeat nuclear perfusion stress test on 10/2019 showed normal myocardial perfusion study, LVEF as 73%. She presents today with anxiety and depression. She currently takes Lexapro and this does not seem to be helping her. Her BP today is 140/80, weight is 161 kg with a BMI of 50.91. Her EKG showed as normal sinus rhythm. She is currently stable with her coronary artery disease. She will be meeting with bariatric surgery in the beginning of January to help her with her weight loss. Encouraged her to exercise 30 minutes daily.

12/14/2020, Ronald Joseph Prucha, MD / Family Medicine: The claimant presents with aches and pain bursitis and elbow aches.

06/04/2021, Ronald Joseph Prucha, MD / Family Medicine: The clamant had an ankle injury that occurred 2 days ago. Her pain level is at 5/10 as moderate in severity. The has been fluctuating since onset. Her pain is associated with inability to bear weight and a loss of sensation. Her symptoms are aggravated by movement. She has tried NSAIDs for the symptoms and provided mild relief. To obtain x-ray of the right ankle.

06/18/2021, Hermant Solomon, MD / Cardiology: The claimant presents for follow-up. Her hydralazine was increased to 50 mg due to uncontrolled BP. Her BP today is at 170/90, weight is at 151.4 with a BMI of 47.88.

10/01/2021, Jennie Buchkovich, PAC / Physician Assistant: The claimant presents for follow-up. Her BP remains elevated. Her home BP is at 130/80. She continues to wear with CPAP and has been working on losing weight. Her BP is at 140/80, weight as 145 kg. She will continue with ASA, statin and metoprolol for CAD. She will continue to consider adjustment of hydralazine, and continue efforts for weight loss.

10/29/2021, Jennie Buchkovich, PAC / Physician Assistant: The claimant presents for follow-up. She notes her BP at home usually at 130/70s, occasionally as high as 150s. She is still working with bariatric surgery. Her BP today is at 134/80, weight is at 145.7. She appears obese, harsh midsystolic murmur is present with a grade of 3/6 at the upper right sternal border radiating to the neck. She will continue with her current regimen and continue to make efforts for weight loss.

02/07/2022, Ronald Joseph Prucha, MD / Family Medicine: The claimant presents with cough and sinus congestion with pain for which she was contracted with Covid-19 infection. She was advised to continue with conservative measures.

04/01/2022, Jennie Buchkovich, PAC / Physician Assistant: The claimant presents for follow-up. Her BP at home is at 130s to 140s most days. She recently switched insurance and will require some adjustment in her medications. She continues to work and being successful with weight loss. Her BP today is at 138/80, weight is at 135.1. She will continue with ASA, atorvastatin and metoprolol for CAD. Her lipids are well controlled. Her hydralazine will be increased to 75 and will continue with benazepril and HCTZ for hypertension. She will continue to make efforts for weight loss.

06/22/2022, Ronald Joseph Prucha, MD / Family Medicine: The claimant presents for follow-up. She has ear fullness and post nasal drip and this was worsening and the right ear is worse than the left ear that started 4 weeks ago. She has tried acetaminophen.

**DIAGNOSES:**

Anxiety Disorder, unspecified
Medical / Surgical Conditions: CAD, HTN, DM, Obesity, PTSD, Anxiety

**CALL ATTEMPTS:**

9-22-2022, 11:34AM, Phone contact with Dr. Prucha: Left a message at WakeMed Primary Care - Kildaire with front office, Hope. Contact number used for outreach: 919-235-6575.

9-22-2022, 11:41AM, Phone contact with Dr. Solomon: Left a message at WakeMed Heart & Vascular Cardiology with RN, Michelle requested to have the questions faxed in writing to 919-367-2693. Contact number used for outreach: 919-232-0322.

9-23-2022, 9:17AM, Phone contact with Dr. Prucha: Left a message at WakeMed Primary Care - Kildaire with front office, Hope. Contact number used for outreach: 919-235-6575.

**RESPONSE TO QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

Coronary artery disease (I25.1)
Status post coronary artery bypass grafting (I25.810)

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Hypertension (I10)
Hyperlipidemia (E78.5)
Obesity (E66)
History of Covid-19 infection

**3. Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 12/24/2020 to present, and comment on the expected duration.**

Yes, taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, the claimant has a level of impairment translates into restrictions and limitations from 12/24/2020 to present.

The claimant is a 59-year-old female with a medical history significant for coronary artery disease status post coronary artery bypass grafting, hypertension, hyperlipidemia, obesity, and history of Covid-19 infection.

Interval history shows that the claimant has coronary artery disease. Her carotid dopplers on 08/01/2019 were essentially normal and her 2D echo showed normal left ventricular

systolic function with an EF of 55-60%. Her CHADS-Vasc score was 3. She underwent coronary artery bypass grafting with LIMA-LAD and SVG – D2 on 08/07/2018. Postoperatively, she had a couple of episodes of paroxysmal atrial fibrillation. She wore a cardiac monitor from 08/22/2018 to 09/04/2018, predominantly rhythm was normal sinus rhythm, symptoms of palpitations/rapid heart rate correspond with sinus bradycardia and a trial run of 4 beats. Her repeat nuclear perfusion stress test on 10/2019 showed normal myocardial perfusion study, LVEF as 73%. Her EKG showed as normal sinus rhythm. She is currently stable and treated with aspirin, atorvastatin and metoprolol. Her lipids are well controlled and will continue with her current regimen. She has hypertension and treated with hydralazine, benazepril and HCTZ. Her hydralazine was increased due to uncontrolled blood pressure for which she had a reading of 170/90. Her current blood pressure reading is at 138/80. The claimant is obese with weight as 161 kg and a BMI of 50.91. She continues to make efforts with losing weight. Currently, her weight is at 135.1 kg. She had history with Covid-19 infection with cough, sinus congestion, pain, and postnasal drip on early February of 2022.

Based on the information above, I opine that the claimant requires restrictions. The claimant has coronary artery disease for which she underwent coronary artery bypass surgery. Currently, she is stable with her current regimen with no episodes of cardiac complaints. The claimant was documented with a history of Covid-19 but there is no evidence of positive test result. The claimant has hypertension, hyperlipidemia, and obesity status which increases cardiovascular risk that may predispose her to future complications. Overall, due to her cardiac history and until her blood pressure is controlled and weight is stable, the claimant should limit activities that may cause aggravated symptoms. As such, the claimant is conclusively impaired from a functional standpoint and requires restrictions and limitations as outlined below:

Sitting: Unrestricted
Standing: Frequently, for up to 3 hours per day
Walking: Occasionally, for up to 2 hours per day
Lifting: Occasionally, up to 20 lbs. BUE
Carrying: Occasionally, up to 20 lbs. BUE
Pushing: Occasionally, up to 20 lbs. BUE
Pulling: Occasionally, up to 20 lbs. BUE
Climbing stairs: Occasionally
Balancing: Never
Stooping: Occasionally
Kneeling: Occasionally
Crouching: Occasionally
Crawling: Never
Reaching: Occasionally overhead and below waist level; Unrestricted desk level
Use lower extremities for foot controls: Unrestricted BLE
Fine manipulation: Unrestricted BUE
Simple and firm grasping: Unrestricted BUE

No climbing ladders
No working at unprotected heights
No operating heavy machinery

The above recommended restrictions and limitations are indicated from 12/24/2020 to present with reassessment on or around 03/23/2023.

The claimant's abilities are sustainable on a full-time basis.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

N/A. The records do not include specific restrictions or limitations that were recommended by the treating providers for the time-frames in question.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Yes, the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g., workplace conflicts child or elder care issues, or legal issues) that may adversely impact work?**

No, there are not any non-medical circumstances identified in the medical records that may adversely impact work.

Sincerely,

**Matthew Chan, MD**
**ABMS Board Certification**
**Occupational Medicine**
**Medical License Number CA 105924**

Claimant Name: Kim Naugle
Claim Number: 12227902
Case Number: 199863-3

"I, Stanley Chou, MD, am a physician duly licensed to practice medicine in the State of ____CA_________. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

______ M. Chan

Signature of Physician Date

Medical/Professional License # _105924________________

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 394-3423
Secure Fax No.: (603) 334-7174

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator, and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

The **information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) Kim R. Naugle

Name of legal representative, if applicable (print) Crowley-Roberts, PA Relationship Attorney

Signature of claimant or legal representative Kim R Naugle Date: 1/30/2022

Date of Birth: ______ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original.**

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

| | |
|---|---|
| Date: | November 1, 2022 |
| To: | DR RONALD PRUCHA |
| Attn: | |
| Fax: | (919) 235-6598 |
| From: | Tammy Sullivan<br>Claim Resolution Specialist<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-0401 |
| Total Pages (Including Cover): | 11 |
| RE: | Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

November 1, 2022

Dr. Ronald Prucha

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle
Claimant D.O.B.:

Dear Dr. Ronald Prucha:

We are the Disability Claims Administrator for your patient, Kim Naugle. A full file physician's level review was completed to help us determine the patient's medically supported restrictions and limitations. Please review the enclosed report completed by the physician. Please review the restrictions identified by the physician and advise if you agree with their assessment and restrictions.

**Please review the concluded findings and enclosed information, sign below, and provide any comments you wish to have considered by November 9, 2022.** If we do not receive a response by this date, we will make our determination based on the medical data contained in our file. If you disagree with the physician's findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

**Please mark next to the appropriate statement and sign:**

**1) _____ I agree with the findings of the review. OR**

**2) _____ I agree with the findings of the review, and I have provided additional clarification or information. OR**

**3) _____ I have supplied additional information/comments to highlight where I do not agree with the findings of the review.**

______________________________ ____________

**Signature** **Date**

If you have any questions regarding this matter, please contact me.

Sincerely,

Tammy Sullivan
Claim Resolution Specialist
Phone No.: (888) 437-7611 Ext. 69903
Secure Fax No.: (603) 334-0401

Attachments: 12227902-MEDICAL-CP/PEER REVIEW-09.30.2022

# Stanley Chou, MD
***Board-Certified in Internal Medicine***
***Cardiovascular disease***

CLAIMANT NAME: Naugle, Kim
EXAMINER: Stanley Chou, MD
ECN #: 199863-3
CLAIM #: 12227902
DATE OF LOSS: 12/24/2020
DATE OF SERVICE: 9/30/2022

**Peer Review**

This is a peer review regarding Naugle, Kim. I have been asked to review the medical records on behalf of ECN. I reviewed records from 12/04/2020 through 06/22/2022 including: Dr. Ronald Ronald Prucha, MD/Family Medicine, extending from 12/11/2020 to 06/22/2022; Dr. Hemant Solomon, MD/Cardiology, extending from 12/04/2020 to 06/18/2021; Jennie Baird Buchkovich, Pa-C/Certified Physician Assistant, extending from 10/01/2021 to 04/01/2022; Sirrell Butler, LCSW/Licensed Clinical Social Worker, on 11/03/2020; Maimouna Diop, NP/Nurse Practitioner, on 11/29/2020; Eric J. Kelly, LCSW/Licensed Clinical Social Worker, extending from 03/01/2021 to 02/05/2022; Mark A. Sims, MD/Cardiovascular Disease, on 11/10/2021.

The claimant is a 59-year-old female with a medical history significant for coronary artery disease status post coronary artery bypass grafting, hypertension, hyperlipidemia, obesity, and history of Covid-19 infection.

12/04/2020, Hermant Solomon, MD / Cardiology: The claimant presents with medical history of coronary artery disease for which she underwent coronary artery bypass graft on 08/07/2018 with LIMA-LAD and SVG – D2. She had a couple of paroxysmal atrial fibrillation postoperatively. Her carotid dopplers on 08/01/2019 were essentially normal. Her 2D echo on 08/01/2018 showed normal left ventricular systolic function with an EF of 55-60%. Her CHADS-Vasc score was 3. She wore a cardiac monitor from 08/22/2018 to 09/04/2018, predominantly rhythm was normal sinus rhythm, no evidence of tachycardia or bradycardia arrhythmias, symptoms of palpitations/rapid heart rate correspond with sinus bradycardia and atrial run of 4 beats. Her repeat nuclear perfusion stress test on 10/2019 showed normal myocardial perfusion study, LVEF as 73%. She presents today with anxiety and depression. She currently takes Lexapro and this does not seem to be helping her. Her BP today is 140/80, weight is 161 kg with a BMI of 50.91. Her EKG showed as normal sinus rhythm. She is currently stable with her coronary artery disease. She will be meeting with bariatric surgery in the beginning of January to help her with her weight loss. Encouraged her to exercise 30 minutes daily.

12/14/2020, Ronald Joseph Prucha, MD / Family Medicine: The claimant presents with aches and pain bursitis and elbow aches.

06/04/2021, Ronald Joseph Prucha, MD / Family Medicine: The clamant had an ankle injury that occurred 2 days ago. Her pain level is at 5/10 as moderate in severity. The has been fluctuating since onset. Her pain is associated with inability to bear weight and a loss of sensation. Her symptoms are aggravated by movement. She has tried NSAIDs for the symptoms and provided mild relief. To obtain x-ray of the right ankle.

06/18/2021, Hermant Solomon, MD / Cardiology: The claimant presents for follow-up. Her hydralazine was increased to 50 mg due to uncontrolled BP. Her BP today is at 170/90, weight is at 151.4 with a BMI of 47.88.

10/01/2021, Jennie Buchkovich, PAC / Physician Assistant: The claimant presents for follow-up. Her BP remains elevated. Her home BP is at 130/80. She continues to wear with CPAP and has been working on losing weight. Her BP is at 140/80, weight as 145 kg. She will continue with ASA, statin and metoprolol for CAD. She will continue to consider adjustment of hydralazine, and continue efforts for weight loss.

10/29/2021, Jennie Buchkovich, PAC / Physician Assistant: The claimant presents for follow-up. She notes her BP at home usually at 130/70s, occasionally as high as 150s. She is still working with bariatric surgery. Her BP today is at 134/80, weight is at 145.7. She appears obese, harsh midsystolic murmur is present with a grade of 3/6 at the upper right sternal border radiating to the neck. She will continue with her current regimen and continue to make efforts for weight loss.

02/07/2022, Ronald Joseph Prucha, MD / Family Medicine: The claimant presents with cough and sinus congestion with pain for which she was contracted with Covid-19 infection. She was advised to continue with conservative measures.

04/01/2022, Jennie Buchkovich, PAC / Physician Assistant: The claimant presents for follow-up. Her BP at home is at 130s to 140s most days. She recently switched insurance and will require some adjustment in her medications. She continues to work and being successful with weight loss. Her BP today is at 138/80, weight is at 135.1. She will continue with ASA, atorvastatin and metoprolol for CAD. Her lipids are well controlled. Her hydralazine will be increased to 75 and will continue with benazepril and HCTZ for hypertension. She will continue to make efforts for weight loss.

06/22/2022, Ronald Joseph Prucha, MD / Family Medicine: The claimant presents for follow-up. She has ear fullness and post nasal drip and this was worsening and the right ear is worse than the left ear that started 4 weeks ago. She has tried acetaminophen.

**DIAGNOSES:**

Anxiety Disorder, unspecified
Medical / Surgical Conditions: CAD, HTN, DM, Obesity, PTSD, Anxiety

**CALL ATTEMPTS:**

9-22-2022, 11:34AM, Phone contact with Dr. Prucha: Left a message at WakeMed Primary Care - Kildaire with front office, Hope. Contact number used for outreach: 919-235-6575.

9-22-2022, 11:41AM, Phone contact with Dr. Solomon: Left a message at WakeMed Heart & Vascular Cardiology with RN, Michelle requested to have the questions faxed in writing to 919-367-2693. Contact number used for outreach: 919-232-0322.

9-23-2022, 9:17AM, Phone contact with Dr. Prucha: Left a message at WakeMed Primary Care - Kildaire with front office, Hope. Contact number used for outreach: 919-235-6575.

**RESPONSE TO QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

Coronary artery disease (I25.1)
Status post coronary artery bypass grafting (I25.810)

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Hypertension (I10)
Hyperlipidemia (E78.5)
Obesity (E66)
History of Covid-19 infection

**3. Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 12/24/2020 to present, and comment on the expected duration.**

Yes, taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, the claimant has a level of impairment translates into restrictions and limitations from 12/24/2020 to present.

The claimant is a 59-year-old female with a medical history significant for coronary artery disease status post coronary artery bypass grafting, hypertension, hyperlipidemia, obesity, and history of Covid-19 infection.

Interval history shows that the claimant has coronary artery disease. Her carotid dopplers on 08/01/2019 were essentially normal and her 2D echo showed normal left ventricular

systolic function with an EF of 55-60%. Her CHADS-Vasc score was 3. She underwent coronary artery bypass grafting with LIMA-LAD and SVG – D2 on 08/07/2018. Postoperatively, she had a couple of episodes of paroxysmal atrial fibrillation. She wore a cardiac monitor from 08/22/2018 to 09/04/2018, predominantly rhythm was normal sinus rhythm, symptoms of palpitations/rapid heart rate correspond with sinus bradycardia and a trial run of 4 beats. Her repeat nuclear perfusion stress test on 10/2019 showed normal myocardial perfusion study, LVEF as 73%. Her EKG showed as normal sinus rhythm. She is currently stable and treated with aspirin, atorvastatin and metoprolol. Her lipids are well controlled and will continue with her current regimen. She has hypertension and treated with hydralazine, benazepril and HCTZ. Her hydralazine was increased due to uncontrolled blood pressure for which she had a reading of 170/90. Her current blood pressure reading is at 138/80. The claimant is obese with weight as 161 kg and a BMI of 50.91. She continues to make efforts with losing weight. Currently, her weight is at 135.1 kg. She had history with Covid-19 infection with cough, sinus congestion, pain, and postnasal drip on early February of 2022.

Based on the information above, I opine that the claimant requires restrictions. The claimant has coronary artery disease for which she underwent coronary artery bypass surgery. Currently, she is stable with her current regimen with no episodes of cardiac complaints. The claimant was documented with a history of Covid-19 but there is no evidence of positive test result. The claimant has hypertension, hyperlipidemia, and obesity status which increases cardiovascular risk that may predispose her to future complications. Overall, due to her cardiac history and until her blood pressure is controlled and weight is stable, the claimant should limit activities that may cause aggravated symptoms. As such, the claimant is conclusively impaired from a functional standpoint and requires restrictions and limitations as outlined below:

Sitting: Unrestricted
Standing: Frequently, for up to 3 hours per day
Walking: Occasionally, for up to 2 hours per day
Lifting: Occasionally, up to 20 lbs. BUE
Carrying: Occasionally, up to 20 lbs. BUE
Pushing: Occasionally, up to 20 lbs. BUE
Pulling: Occasionally, up to 20 lbs. BUE
Climbing stairs: Occasionally
Balancing: Never
Stooping: Occasionally
Kneeling: Occasionally
Crouching: Occasionally
Crawling: Never
Reaching: Occasionally overhead and below waist level; Unrestricted desk level
Use lower extremities for foot controls: Unrestricted BLE
Fine manipulation: Unrestricted BUE
Simple and firm grasping: Unrestricted BUE

No climbing ladders
No working at unprotected heights
No operating heavy machinery

The above recommended restrictions and limitations are indicated from 12/24/2020 to present with reassessment on or around 03/23/2023.

The claimant's abilities are sustainable on a full-time basis.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

N/A. The records do not include specific restrictions or limitations that were recommended by the treating providers for the time-frames in question.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Yes, the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g., workplace conflicts child or elder care issues, or legal issues) that may adversely impact work?**

No, there are not any non-medical circumstances identified in the medical records that may adversely impact work.

Sincerely,

**Matthew Chan, MD**
**ABMS Board Certification**
**Occupational Medicine**
**Medical License Number CA 105924**

Claimant Name: Kim Naugle
Claim Number: 12227902
Case Number: 199863-3

"I, Stanley Chou, MD, am a physician duly licensed to practice medicine in the State of ____CA_________. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

______ M. Chan

________________________________________________________________________
Signature of Physician                                                                  Date

Medical/Professional License # _105924________________

12/28/21 11:09:58 Lincoln Financial -> 18772938687 2 Lincoln Financial Gr Page 007

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 394-3423
Secure Fax No.: (603) 334-7174

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator, and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

The **information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) Kim R. Naugle

Name of legal representative, if applicable (print) Crowley-Roberts, PA Relationship Attorney

Signature of claimant or legal representative Kim R Naugle Date: 1/30/2022

Date of Birth: ______ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original.**

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

| | |
|---|---|
| Date: | November 1, 2022 |
| To: | CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | |
| Fax: | (877) 293-8687 |
| From: | Tammy Sullivan<br>Claim Resolution Specialist<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-0401 |
| Total Pages (Including Cover): | 3 |
| RE: | Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

November 1, 2022

Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

To Whom It May Concern:

We are writing at this time to advise you of the status of Kim Naugle’s request for reconsideration of her claim for Long Term Disability (LTD) benefits. Ms. Naugle’s file is currently being reviewed in the Claim Resolution Services Unit and no decision has been made at this time. A copy of the physician review has been sent to Dr. Solomon and Dr. Prucha for review and comment.

Under the Employee Retirement Income Security Act (ERISA), an appeal decision should be rendered within 45 days of receipt of the appeal, unless there are special circumstances beyond Lincoln’s control which require a delay in making a decision. If additional time is needed, ERISA allows for a 45 day extension to evaluate and render the appeal decision. Thus, with an extension of time, an appeal decision must be made within 90 days.

We will render a decision on Ms. Naugle’s claim as soon as possible. You will be notified of that decision in writing. We regret the delay this will cause in rendering a decision on her claim; however, we think this step is necessary in order to provide her claim with every opportunity for a full and fair review.

Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe is tolled while Liberty is awaiting receipt of requested documentation to fully evaluate her claim. (Tolled: accumulation of time is suspended.)

If you have any questions regarding this matter, please contact me.

Sincerely,

Tammy Sullivan
Claim Resolution Specialist
Phone No.: (888) 437-7611 Ext. 69903
Secure Fax No.: (603) 334-0401

**From:** DisabilityDocuments
**Sent:** Monday, October 24, 2022 4:37 PM
**To:** SA-EMLRIP114-P
**Subject:** FW: Kim Naugle - 12227902

---

**From:** Monica L. Reynolds <MLReynolds@crlegalteam.com>
**Sent:** Monday, October 24, 2022 8:35:04 PM (UTC+00:00) Monrovia, Reykjavik
**To:** DisabilityDocuments <DisabilityDocuments@lfg.com>
**Cc:** Peter H. Burke <PHBurke@crlegalteam.com>
**Subject:** Kim Naugle - 12227902

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

See attached regarding Kim Naugle.

Please confirm receipt. Thanks.

**Monica L. Reynolds**
**Senior Litigation Case Manager**

https://www.crlegalteam.com/images/hidden%20images/NEW_Dark_Horizontal_Email.png

CR Legal Team, LLP
3535 Grandview Pkwy
Suite 100
Birmingham, AL 35243
Office: 205-747-1915
Fax: 877-293-8687

E-mail: MLReynolds@CRLegalTeam.com
Web Site: https://www.CRLegalTeam.com

*"Privileged and Confidential - This communication may contain confidential or legally privileged information and is intended only for the use of the individual or entity to whom it is addressed. Any dissemination, distribution, printing or copying of this material by anyone other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately."*

2022-10-24 Ltr to
Lincoln re l...

WE STAND UP
FOR YOU®
CRLegalTeam.com

**MAILING ADDRESS:**
2400 Freeman Mill Road
Suite 200
Greensboro, NC 27406
336-333-9899
336-333-9894 Fax

**1-800-288-1-LAW**
(1-800-288-1529)
**www.CRLegalTeam.com**

Peter H. Burke
Writer's Direct No.: 205.747.1901
Writer's E-mail: phburke@crlegalteam.com

October 24, 2022

**SENT VIA EMAIL: disabilitydocuments@lfg.com**

The Lincoln National Life Insurance Co.
Disability and Life Claims Appeal
ATTN: Tammy Sullivan
PO Box 2578
Omaha, NE 68172-9688

| | | |
|---|---|---|
| RE: | Claimant: | Kim Naugle |
| | Claim No.: | 12227902 |
| | Policyholder: | Siemens Corporation |

Dear Ms. Sullivan:

I hope this finds you well. I am writing in response to your letter dated October 3, 2022, wherein you informed our office of additional evidence gathered in relation to Ms. Naugle's LTD claim. Upon reviewing Ms. Naugle's claim, Lincoln's Nurse Consultant determined that peer to peer contact with the claimant's physicians, Dr. Prucha and Dr. Solomon, would be beneficial. The claim was thus forwarded to consulting physicians, Dr. and Dr., both of whom rendered their opinion of Ms. Naugle's functional capacity but were not able to contact any of her medical providers. This is a considerable omission, given the need for physician consultation in order to clarify Ms. Naugle's medical state and limitations. Without such consultation, a complete and fully informed evaluation of the claim remains unaccomplished.

Consultation with Ms. Naugle's treating medical providers would have certainly provided more context into her medical treatment and clarity into her limitations. Her cardiology provider has affirmed the need for Ms. Naugle to remain out of work, as noted by PA-C Jennie Buchkovich during an October 29, 2021 appointment. "I would fully support her taking leave of absence from work if her PCP would recommend this." Ms. Naugle's primary care provider did apparently agree with this course of action. Dr. Prucha, Ms. Naugle's primary physician and the medical provider most familiar with the patient and her overall health, documents Ms. Naugle's severe symptoms and inability to work throughout the medical records. On February 7, 2022, Dr. Prucha stated that Ms. Naugle experienced "inordinate levels" of depression and anxiety and had left work in order to pursue therapy, counseling, and medication management. These steps were

necessary, Dr. Prucha noted, due to her emotional lability secondary to stress, anxiety, depression, and PTSD. Although Ms. Naugle expressed a desire to return to work, "She continues to struggle daily" with her mental health symptoms. This is a far cry from Dr. Stamschror's claim that Ms. Naugle suffers from no impairing conditions at all. It is unfortunate that neither Dr. Stamschror nor Dr. Chou were able to personally speak with physicians so supportive of disability, given the wide disparity of opinion between those familiar with the patient and those afforded only a brief review of the medical records.

Ms. Naugle's actual treating physicians have of course spent more time with the claimant, have personally spoken with and examined her, and have thus been able to develop a much better understanding of her functional capacity than can be gained through medical record review alone. This is especially true with regard to her depression, anxiety, and PTSD which, as mental illness diagnoses, are diagnosed and monitored largely by patient reports and in-person observations. As their treatment of the claimant is extensive and longstanding, Ms. Naugle's own medical providers are much better qualified to assess her actual functioning, especially regarding her psychological status. This was specifically addressed in the 2005 decision of Sheehan v. Metropolitan Life Ins. Co., 368 F.Supp.2d 228 (S.D.N.Y.2005), which stated that:

> "Courts discount the opinions of psychiatrists who have never seen the patient for obvious reasons. Unlike cardiologists or orthopedists, who can formulate medical opinions based upon objective findings derived from objective clinical tests, the psychiatrist typically treats his patient's subjective symptoms: in Sheehan's case, as described by Dr. Prati, depression, fear of death, and anxiety, among others. Physicians do not diagnose or evaluate these different conditions in the same way. It matters not if a patient with ischemia, ventricular scarring, or atrial fibrillations is depressed or elated; an echocardiogram or stress test will reveal his condition. But surely Dr. Prati was right in testifying that when a psychiatrist evaluates a patient's mental condition, 'a lot of this depends on interviewing the patient and spending time with the patient," TR. 145, a methodology essential to understanding and treating the fears, anxiety, depression, and other subjective symptoms the patient describes."

The facts in Sheehan are relevant to Ms. Naugle's claim. As in Sheehan, Lincoln is inclined to rely upon the opinion of a paid psychiatric reviewer, Dr. Stamschror, who discounted the opinions of Ms. Naugle's own treating physicians. Despite never seeing or speaking with the claimant, much less extensively observing her behaviors and symptoms as her treating providers did, Lincoln's paid reviewer nevertheless opined that functional limitations were not supported for Ms. Naugle's depression, anxiety, or PTSD. It is unreasonable to deem the opinion of a paid reviewer, without the familiarity and understanding of the claimant's mental health condition obtained through extensive personal treatment, as more accurate than those physicians who have treat her, interviewed and spent time with her, and observed and evaluated her symptoms. The opinion of a paid reviewer in this claim should be held in lower regard than those of Ms. Naugle's own physicians "for obvious reasons."

Although Ms. Naugle's favorable Social Security Disability determination has been noted by Lincoln, it has not been emphasized or even largely credited. Although the standards of disability may be different between the policy and the Social Security guidelines, the timing of

this decision as well as the factors considered by the Social Security Administration are entirely relevant to Ms. Naugle's claim. For example, while the policy calls for Ms. Naugle to be evaluated from an "own occupation" standard, the Social Security Administration assessed Ms. Naugle's disability claim based on whether she could perform any occupation at all. The baseline for Social Security Disability, therefore, is an inability to perform even sedentary work. Ms. Naugle met this baseline, was found to be impaired and incapable of performing sedentary work activity, and was granted Social Security Disability benefits. This decision, it must be noted, was rendered less than three months after Lincoln initially denied Ms. Naugle's claim and asserted that she was capable of performing her own light duty occupation. It also stands in stark contrast to the claims of Dr. Stamschror, who wrote that Ms. Naugle had no impairing conditions and no restrictions, as well as those of Dr. Chou, who endorsed restrictions due to Ms. Naugle's coronary artery disease and history of coronary artery bypass grafting but still asserted that she was capable of tasks such as frequent standing. The higher standards for disability, as well as the frequently presumed permanence of a medical condition to be awarded Social Security Disability benefits, strongly indicate that Ms. Naugle's health has deteriorated to a point incompatible with any work – including her occupation as a Project Coordinator – and that this deterioration is expected to be long-term. When considered with the supportive statements of Ms. Naugle's treating physicians, it is clear that Ms. Naugle continues to struggle with her health and experiences significant and disabling symptoms from her coronary artery disease, hypertension, anxiety, depression, and PTSD.

As stated in our previous appeal, Ms. Naugle no longer has the capacity to perform the duties of her own occupation, a fact echoed by her treating physicians and the Social Security Administration. The opinions of Dr. Stamschror and Dr. Chou go against the provided evidence and the opinions of the medical providers most familiar with her condition. The opinions of Ms. Naugle's treating physicians and the precedence of her approval for Social Security Disability benefits should be given greater preference and an approval for benefits should be rendered.

Sincerely,
CR Legal Team, LLP

Peter H. Burke
Attorney

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

| | |
|---|---|
| Date: | October 3, 2022 |
| To: | CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | |
| Fax: | (877) 293-8687 |
| From: | Tammy Sullivan<br>Claim Resolution Specialist<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-0401 |
| Total Pages<br>(Including Cover): | 22 |
| RE:<br><br>Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

October 3, 2022

Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

To Whom It May Concern:

Lincoln National Life Insurance Company (Lincoln) is responsible for managing claims for Siemens Corporation's Group Long Term Disability Policy.

We are in the process of reviewing Kim Naugle's appeal of our decision regarding the above-referenced claim. The purpose of this letter and enclosure is to provide you with an opportunity to review and comment on new evidence before a decision is rendered on her appeal.

Please find attached a copy of the clinical reviews, which is new or additional evidence in connection with Ms. Naugle's appeal. You may review the clinical assessments and provide a response to us and any additional medical documentation, which we will consider in making our decision on her appeal. If we do not receive your response within 21 days of the date of this letter or **October 23, 2022**, we will proceed with making a determination on Ms. Naugle's appeal.

Upon receipt of your response, we will promptly complete our review and render a determination on Ms. Naugle's appeal. If your response is not received by October 23, 2022 (21 days from the date of this letter), we will render a determination based on the information contained in her file. Please submit any written comments or documentation to us at the address in the upper right hand corner of this letter or you can fax it directly to 603-334-0401. If you prefer email you can use the email address of, disabilitydocuments@lfg.com. If you will not be responding to the review, please advise us in writing immediately. Should you require an extension to the stated deadline, please contact us as soon as possible to request this.

*****Please note, this is not a denial notice, but rather an opportunity for you to review our initial assessment and submit additional information should you wish to do so.**

Due to these special circumstances, an extension of time to process her appeal is required and we are

exercising our right to take such an extension under the Employee Retirement Income Security Act.

Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond Lincoln's control, which require a delay in making a determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. [Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe is tolled while Lincoln is awaiting receipt of requested documentation needed to fully evaluate her claim. (Tolled: accumulation of time is suspended.)]

If you have any questions regarding this matter, please contact me.

Sincerely,

Tammy Sullivan
Claim Resolution Specialist
Phone No.: (888) 437-7611 Ext. 69903
Secure Fax No.: (603) 334-0401

Attachments: 12227902-MEDICAL-CORRESPONDENCE-09.15.2022
12227902-MEDICAL-CP/PEER REVIEW-09.26.2022
12227902-MEDICAL-CP/PEER REVIEW-09.30.2022

Lincoln Financial Group®

Date: September 15, 2022

Subject: **Appeal Nursing Memorandum**

Claim#: LTD 12227902

Employee: Kim Naugle

Date of Birth:

Date of Disability: 12/24/2020

Review of medical records on file complete. All available medical records have been reviewed through date and time of this review. Information summarized below includes those portions of the records received that have relevance to the questions and time frame identified for this review.

The employee ceased work on 12/24/20. This NDC is asked to comment on physical conditions only for the purpose of this review as a separate psychiatric physician review is being completed.

The employee has co-morbid conditions that include coronary artery disease with prior CABG {coronary artery bypass grafting surgery, open heart surgery} on 8/7/18, hypertension, pre-diabetes, hyperlipidemia, hypothyroidism, arthritis, fibroids, morbid obesity, and sleep apnea.

Treating providers include Dr. Ronald Prucha {primary care}and the employee had a visit on 12/11/20 and reported intestinal issues for 1-week, post-nasal drip, sinus pressure and drainage, sinus headache, and eye swelling. Exam noted a blood pressure of 140/82 {normal 120/80}, weight of 346lbs, and was otherwise unremarkable. The employee was diagnosed with a bacterial sinus infection and prescribed antibiotics. She was seen again on 12/14/20 and reported joint aching and pain and reported she stood up from the coach and her knee went out. She could only stand for 10 minutes at a time and was unable to exercise now. Blood pressure was normal, and she reported work stress and anxiety and requested FMLA.

On 2/12/21 the employee saw Dr. Prucha for work stress management and completed a RF on 2/17/21 endorsing restrictions related to mental health conditions only from 12/14/20-6/14/21.

On 6/4/21 the employee saw Dr. Prucha and discussed her frustration with the disability process and her anxiety and depression. She was noted to be taking part in medically supervised weight loss and did not want to do bariatric surgery. Her cardiologist was encouraging this surgery, but she was not interested due to dear of complications. A right ankle injury 2 days prior was reported, and she stated she twisted her ankle and was unable to bear weight and had loss of sensation. Exam noted mildly elevated blood pressure at 146/65 and no ankle abnormalities were

documented. An x-ray of the ankle was ordered, and diet was discussed for weight loss. A note from the provider stated the x-ray was normal.

On 6/18/21 the employee had a 6 month follow up with cardiologist Dr. Hermant Solomon. Exam noted elevated blood pressure at 170/90 however no associated symptoms were reported and her Hydralazine blood pressure medication dose was increased. Exam was otherwise normal, and she was recommended to follow up in 3 months.

A 7/15/21 letter from Dr. Prucha stated the employee remained unable to work due to an underlying medical condition.

A 7/20/21 declaration letter from the employee noted that she took many medications and supplements daily which caused her to have to use the restroom often, and at times also made her drowsy and sick to her stomach. She voiced concern about returning to work due to the stress it would cause on her heart.

A questionnaire completed by Dr. Solomon on 8/13/21 endorsed that he agreed that anxiety related conditions raised the risk for developing heart issues, and the employee's mental conditions could further elevate her blood pressure. Of note, records on file reveal the employee had a normal cardiac stress test in 2019 and normal cardiac ultrasound in 2018.

On 10/1/21 the employee saw cardiology and denied any chest pain, shortness of breath, or palpitations, she continued to use her CPAP for sleep apnea and was working on weight loss. Blood pressure was mildly elevated at 140/80 and exam was normal. No changes to treatment were made. On 10/29/21 she followed up with a blood pressure log and reported her readings at home had been typically 130/70s, occasionally up to the 150s. A heart murmur was noted on exam {extra noise heard during a heartbeat when listening during an exam, most are harmless} and lab work was ordered.

A physician review was completed on 11/10/21 by Dr. Mark Sims {cardiology}. Dr. Sims stated that the records on file did not support a diagnosis of stress provoked cardiomyopathy as suggested by Dr. Solomon and there was no evidence of cardiac dysfunction, recurrent chest pain or abnormal heart rhythms after her open-heart surgery. No cardiac restrictions were supported beyond 3/23/21. See report for details.

Paperwork was completed by the employee on 1/30/22 and stated she could sit for 2 or more hours, stand for one hour, and walk for 15 minutes. The employee reported she was on leave from work for severe anxiety and PTSD.

A 2/7/22 letter from Dr. Prucha discussing the employee's mental health conditions was reviewed. The employee was seen that day for a cough and sinus congestion. She reported she had contracted Covid-19 and became ill 3 weeks ago but was feeling better now. She had gone to another provider after being unable to obtain an appointment with Dr. Prucha, and was prescribed antibiotics, steroids, and antiviral medication used to treat Covid-19. Blood pressure was normal, weight was down to 298lbs, and follow up in 3 months was planned.

A physician review was completed on 3/1/22 by Dr. Wendell Goins {board certified family/addiction medicine, general surgery, and critical care medicine}. Dr. Goins supported impairing diagnoses of coronary artery disease and CABG. Co-morbid conditions of hypertension, hyperlipidemia, congestive heart failure, acid reflux disease, anxiety disorder, PTSD, and history of Covid-19 were also noted. Dr. Goins stated that the medical evidence on file supported impairment from a family medicine perspective from 6/22/21-5/15/22 due to the employee's age and weight. These restrictions included sitting unrestricted, occasional standing/walking/climbing stairs and ladders/crouching/crawling/reaching overhead, lifting/carrying/pushing/pulling occasionally up to 20lbs, and occasional reaching below waist and overhead and occasional use of lower extremities for foot controls. Dr. Goins noted the employee reported a positive Covid-19 test at her 2/7/22 visit and the date of the test was unknown; however, restrictions of no work for 10 days would be supported from the date of the positive result. Please see report for details.

On 4/1/22 the employee was seen by Jennie Buchkovich PA-C {cardiology} for follow up. Exam revealed normal vital signs including blood pressure of 138/80, a weight of 297lbs, and no physical abnormalities. PA-C Buchkovich increased her Hydralazine blood pressure medication, and recommended she continue aspirin, metoprolol, atorvastatin, and benazepril {medications for blood pressure, cholesterol, and heart health}. Weight loss was discussed, and the employee denied chest pain or shortness of breath and she was noted to continue to work and be successful with weight loss.

On 6/22/22 the employee was seen by Dr. Prucha for reports of ear fullness, post-nasal drip, and ear pain, right worse than left. She reported she had qualified for social security disability and was feeling better from a depression standpoint. Her ear issues had begun 1-4 weeks prior, and she denied fever and reported very mild discomfort. Blood pressure was stable at 136/77, weight loss and exercise were discussed, and current medications were refilled. Follow up in 6 months was recommended for anxiety and depression follow up.

Appeal letter from the employee's attorney representation dated 9/2/22 was reviewed and noted the employee was suffering from generalized anxiety disorder, major depressive disorder, PTSD, coronary artery disease, hypertension, and had a history of coronary bypass surgery which prevented her from performing her own occupation.

The employee ceased work on 12/24/20 due to mental health concerns, work related stress, anxiety, and panic attacks. As previously noted, this NDC has been asked to comment on physical conditions only from 12/24/20 forward. The employee is noted to have chronic physical conditions that include morbid obesity, hypertension, high cholesterol, sleep apnea, coronary artery disease status past CABG in 2018, hypothyroidism, and pre-diabetes. She routinely treats with primary care and cardiology for medication management and maintenance of these chronic conditions and medical records on file from 12/24/20 through present day, do not reveal evidence of signficiant exacerbations in any co-morbid conditions or poor control of any conditions with associated symptoms. The employee continually denies any shortness of breath, chest pain, palpitations, or headaches and although one elevated blood pressure was noted on 6/18/21 at her cardiology office visit, there is no evidence of associated side effects and no

evidence of recurrence of significantly elevated blood pressures. Medications were adjusted as needed and no other care escalations have occurred due to poorly controlled symptoms related to blood pressure, cardiac disease, or any other co-morbid conditions. Restrictions were endorsed from 6/22/21-5/15/22 by Dr. Goins in a review completed on 3/1/22. Updated medical records have been received and due to the complexity of the employee's chronic heart disease, morbid obesity and co-morbid conditions, further review with the medical evidence on file is recommended with a physician dual boarded in Internal medicine and cardiology, for comment on physical restrictions/limitations from 12/24/20 through present day and beyond. Peer to peer contact with Dr. Prucha and Dr. Solomon may be beneficial if determined to be appropriate during the review. Discussed with claims resolution specialist, assignment complete.

Courtney D. RN, CCM

Nurse Disability Appeals Consultant II, Lincoln Financial Group

9/26/2022

| | | | |
|---|---|---|---|
| RE: | Claimant Name | : | KIM R NAUGLE |
| | Client | : | Lincoln Life Assurance Company of Boston - 92 |
| | Referred By | : | Sullivan, Tammy |
| | Type of Review | : | Disability |
| | Type of Service | : | LTD |
| | Claim Number: | : | 12227902 |

**MEDICAL DOCUMENTATION REVIEWED**

I have reviewed all of the documents provided.

| | | |
|---|---|---|
| PROGRESS NOTES | Monarch | 11/03/20-05/20/21 |
| PROGRESS NOTES | WakeMed Primary Care | 12/04/20-06/22/22 +Undated |
| PROGRESS NOTES | Avance Care | 06/25/21-03/02/22 |
| FILE REVIEWS | C. Piechowiak, R.N. | 01/28/21 |
| FILE REVIEWS | Rachael, R., MSW, LICSW | 02/24/21-05/17/21 |
| FILE REVIEWS | M. Goldman, M.D. | 06/01/21 |
| FILE REVIEWS | C. R. Good, M.D. | 11/09/21-12/08/21 |
| FILE REVIEWS | M. A. Sims, M.D., MBA, MHA | 11/10/21-12/08/21 |
| FILE REVIEWS | S. Gilman, M.D. | 02/28/22 |
| FILE REVIEWS | W. Goins, M.D. | 03/01/22 |
| OTHER | H. Downing, M.Ed., CRC | 03/07/22 |
| MISC | | 12/24/20-09/06/22 +Undated |
| ROI | | 03/22/21-01/30/22 +Undated |

**SUMMARY OF PEER OUTREACH**

TELECONFERENCE #1:

1) AP NAME: Eric Kelly LCSW
2) DATE: 9/20/2022
3) TIME: 6:24 PM ET
4) PERSON SPOKEN WITH: Voicemail

5) POSITION OF PERSON SPOKEN WITH: Voicemail

SUMMARY OF CONVERSATION: I left a voicemail message requesting a return call.

TELECONFERENCE #2:
1) AP NAME: Eric Kelly LCSW
2) DATE: 9/21/2022
3) TIME: 10:25 AM ET
4) PERSON SPOKEN WITH: Voicemail
5) POSITION OF PERSON SPOKEN WITH: Voicemail

SUMMARY OF CONVERSATION: I left a voicemail message requesting a return call.

TELECONFERENCE #3:
1) AP NAME: Dr. Ronald Prucha
2) DATE: 9/21/2022
3) TIME: 10:26 AM ET
4) PERSON SPOKEN WITH: Hope
5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: A message was left asking for a return call.

TELECONFERENCE #4:
1) AP NAME: Dr. Ronald Prucha
2) DATE: 9/22/2022
3) TIME: 4:09 PM ET
4) PERSON SPOKEN WITH: Hope
5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: A message was left asking for a return call.

**SUMMARY OF MEDICAL DOCUMENTATION**

The claimant is a 59 year-old female. The following review is from a Psychiatric perspective.

11/3/2020: The claimant was seen for an initial evaluation by Sirell Butler, LCSW. The claimant was being seen for mental health evaluation. She reported that she had "nonstop anxiety. I could not function all day yesterday." She reported that she had a high stress job that was demanding. She reported not having a personal life, and this was difficult for her. She reported that she was taking Lexapro. Her PHQ-9 score was 16. Her GAD-7 score was not provided. On exam, she had full range affect with linear thought process and normal thought content, cognition, insight, judgment. She was noted to have a "better day" in terms of her mood.

11/24/2020: A note by Maimouna Diop, NP. The claimant was being treated for generalized anxiety disorder, major depressive disorder, and post-traumatic stress disorder (PTSD). She was describing having anxiety and panic attacks. She reported her symptoms began after she underwent cardiac surgery. She was endorsing anxiety and panic attacks. She was reporting having palpitations, sweating, and trembling. On exam, she had depressed mood with restricted, sad, and tearful affect. The rest of her mental status exam, including perceptual, cognition, judgment, orientation, appearance, and hygiene were grossly normal.

12/4/2020: A note by Dr. Hermant Solomon. The claimant was endorsing having significant anxiety and depression. She was requesting a leave of absence from work. She was recommended to see her PCP. On exam, she was in no distress and appeared stated age.

1/4/2021: An Attending Physician Statement by Dr. Ronald Prucha. On exam, the claimant was sad and slightly anxious. She had normal cognition and judgment as well as insight. She was still able to socially engage. It was reported that she cannot perform any job tasks and required a stress-free environment.

2/12/2021: A note by Dr. Ronald Prucha of primary care. The claimant was endorsing having depression" stress related work burden and diminished quality of life and decreased cognitive and physical functioning secondary to the sheer amount of work stress she was incurring at her job". She reportedly had been compliant with Paxil and was finding this helpful. She reported having low energy and depressed mood. She was going to see a therapist. She was stressed about her disability company. On exam, she had normal mood. Her work stress was noted to be a "chronic stable problem". No changes were made in her medication regimen. She was going to be seen back in 3 months.

2/17/2021: An Attending Physician Statement by Dr. Ronald Prucha. It was reported that the claimant was unable to work in any environment due to her mental health condition. This reportedly was at least until 6/14/2021. She reportedly had depressed mood, anxiety, fatigue, and slowed cognition.

3/1/2021-5/20/2021: Therapy notes by Eric Kelly, LCSW. The claimant appeared to be receiving psychotherapy about every 2 weeks. The claimant reportedly was receiving "solution focused psychotherapy". The claimant was reporting on 4/1/2021 to be overwhelmed and unmotivated. On 4/15/2021, she reported having "bothersome thoughts/feelings related to anxiety". On 5/6/2021, the claimant was noted to have a PHQ-9 score of 15. She was discussing long administrative wait times at this facility. On 5/20/2021, she was discussing "her current situation with employer and having to face into long-term disability given her medical and mental health complications". She was discussing trying to obtain long-term disability benefits.

6/4/2021: A note by Dr. Ronald Prucha of primary care. The claimant reported being upset with her disability insurance company. She reported that this had "exacerbated her condition". She reported difficulty with sleep and was using clonazepam. She was blaming the disability insurance company for the way she felt. She reportedly was seeing a therapist twice per month. She reported having anxiety but felt Paxil and clonazepam were helpful. She reportedly was

upset with her work and felt that she was being micromanaged as a project manager. She reportedly was "thankful she is not there presently". On exam she was in no acute distress. No medication changes were made.

7/28/2021-XXXXX: The claimant was seen for psychotherapy by Eric Kelly, LCSW. She reported having a "hypersensitivity to stress and anxiety that comes with it". She reportedly was taking clonazepam for this. On her initial exam on 7/28/2021, she was noted to be grossly normal in appearance, and was noted to be friendly, smiling often, and humorous. Her mood was depressed and anxious with congruent affect. Her speech, intellectual functioning, abstraction, insight, judgment, and memory all were grossly normal. She reportedly was taking Paxil and clonazepam. Her second appointment was on 9/7/2021. She was describing her relationship with her mother. Her third appointment was on 9/27/2021, about 3 weeks later. She was discussing strategies to help control her stress. She was then seen next on 10/5/2021. She was again discussing stress control strategies. Her next appointment was about 2 weeks later on 10/20/2021. She again was discussing stress control. Following this, she was seen on 10/28/2021, 11/17/2021, 12/1/2021. On 12/1/2021, she was describing gardening and tending to her animals. She was then seen again on 12/29/2021, 1/12/2022, 2/5/2022. She was frequently noted to discuss her relationships with family members.

8/13/2021: A form from an illegible author. They reported that an anxiety related condition did raise the risk of developing heart problems. He stated that her mental health conditions could further exacerbate her hypertension. He felt that a high stress job in addition to her cardiac conditions would place her at risk. He did not feel that the claimant was exaggerating her condition.

10/6/2021: A note by Dr. Ronald Prucha of primary care. The claimant reported that she was not benefiting from therapy. She reportedly was on vaccinated and was not taking her vaccine, and this was stressful for her family as well. She reportedly was "feeling better after having left work and she is a better place and is having some family issues". On exam, she was in no acute distress. Her dose of Paxil was increased to 40 mg. She was scheduled for follow-up in 3 months.

10/20/2021: A form from the claimant's therapist, Eric Kelly, LCSW. He reported that the claimant had extreme concerns related to the claimant's workplace environment. She was thought to have marked difficulty due to anxiety. This reportedly was because she had decreased focus as well as slowed pace and lower functioning in the workplace. He felt that the claimant would miss more than 3 days/month due to her mental health condition.

2/7/2022: A letter by Dr. Ronald Prucha of primary care. The claimant reportedly had significant depression and anxiety that was exacerbated by her stressful job, which "resulted in her having to leave her position to seek therapy, counseling and medications to manage her emotional lability". He reported that the claimant continued to struggle with depression, anxiety, and PTSD. She reportedly wanted to return to work when her anxiety was under better control. She was undergoing psychotherapy. It was thought that she was "quickly approaching a state of

work readiness and her short-term goal presently is to return to work when she completes her current mental health treatment plan".

2/8/2022: An APS by Eric Kelly, LCSW. The claimant was diagnosed with major depression, PTSD, and generalized anxiety disorder. It was reported that on exam the claimant appeared disheveled and at times circumstantial. They had increased stress due to "several life areas". They had intact immediate memory and long-term memory. They reportedly had intrusive thoughts. She reportedly had "hypersensitivity to stressful situations: Chronic panic attacks and depression, and PTSD". She reportedly was able to do low stress tasks. She reportedly had been "not medically relieved for work at this time".

2/7/2022: A note by Dr. Ronald Prucha of primary care. She was asking for her doctor to write her a statement rather than complete the individual boxes that it was asking for. She reportedly was working with her therapist to get anxiety under control. She stated that her symptoms were mostly improved. She reportedly was struggling with appealing her insurance denial. She reportedly sent a form to the doctor that had to the "functional mental part has been done". She was asking for a narrative on the functional assessment. On exam, she was well appearing and in no acute distress. She had a normal mood. It was reported that her PTSD was "well controlled".

6/22/2022: A note by Dr. Ronald Prucha of primary care. The claimant was noting that she was having anxiety. She reportedly had moderate severity and anxiety. She was noted to be stable in terms of her anxiety. She was taking clonazepam without side effects. Depression was also noted to be stable. She was taking Paxil and was tolerating this as well. No medication changes were made.

**QUESTION**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

There are no impairing conditions or diagnoses from a psychiatric perspective.

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

There are no comorbid diagnoses significant to impairment.

**3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 12/24/2020 to - present, and comment on the expected duration.**

Based on the documentation provided, there is no support of impairment for any psychiatric restrictions or limitations from 12/24/2020 and onwards. There is no evidence of any significant impairment noted on any exams. For example, on 1/4/2021, the claimant was noted to have

intact judgment, cognition, insight. There is no documented impairments in mental status exam findings demonstrating with impairments. If such impairment was supported, it would be expected that the medical records would include recent/ongoing documentation of evidence of symptomatology such as deficiencies in grooming/hygiene, as individuals often neglect self-care when experiencing persistent and severe symptomatology resulting from an impairing/incapacitating psychiatric condition. Other indications of functional impairment might include documentation of observed symptomatology such as suicidal ideation, poor impulse control, poor concentration, poor memory, homicidal ideation, paranoia, psychosis, delusional thinking, disorganized thought processing, aggressive/hostile ideation/behavior, or conversely, catatonic-like or excessively withdrawn behavior, causing impairment in social functioning. Such persistent symptomatology is not present in the medical documentation for the time frame of interest.

Furthermore, the claimant's level of care was inconsistent with a severely impairing psychiatric condition as well. On 2/12/2021 and 6/4/2021, she did not undergo any changes in her medication regimen. She did not have any changes in her medication regimen until 10/6/2021, at which point time her primary care doctor increased her Paxil dose to 40 mg. At that time, she was reporting that she was "feeling better after having left work". On 2/7/2021, no medication changes were made, and she was noted to be "well controlled" in terms of PTSD symptoms. This was again consistent with a 6/22/2022 primary care note. Furthermore, there appears to be a gap in her therapy care between 5/20/2021 and 7/28/2021, followed by another gap in care from 7/28/2021 and 9/7/2021. She had another gap in care between 12/1/2021 and 12/29/2021, and then was seen about every 2 weeks until 2/5/2021. The content of these therapy sessions was primarily related to relationships with her family members. The infrequent psychotherapy along with relatively minimal psychiatric medication management is not consistent with a severely impairing psychiatric condition, which would typically result in referral to specialty psychiatric care as well as a higher level of intensive treatment, such as an intensive outpatient program. This is not documented during the timeframe in question.

Overall, based on the documentation provided, the exam findings that were documented and level of care that the claimant was receiving, are largely inconsistent with a severely impairing psychiatric condition, and therefore I do not find adequate support for any global psychiatric restrictions or limitations.

**4. Do medical records support any R&Ls that were recommended by treating providers for the time frames in question?**

As mentioned above, the medical records do not support the restrictions and limitations that were recommended by treating providers during the timeframe in question.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

As mentioned above, I do not find adequate support for psychiatric restrictions and limitations. Therefore, infrequent medication changes by the claimant's primary care physician and infrequent psychotherapy would be consistent with the apparent level of severity of her condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

Yes. There are non-medical circumstances identified in the medical records. The claimant frequently discusses significant workplace stress as a factor in her discontinuing employment.

**7. Please initiate AP contact when it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for work absence. AP contact information:**

**Name: Eric Kelly LCSW (919) 210 2070 email iericjkellylcsw@gmail.com**
**Name: Dr. Ronald Prucha (919) 235 6575 F 919-235-6598**

See call section.

CONFLICT OF INTEREST:

*I certify that I have no relationship or affiliation with the beneficiary of this independent review or a significant past or present relationship with the Attending Provider and/or the treatment facility. I further certify that I have no familial or material professional or business relationship or incentive to promote the use of a certain product or service associated with the review of this case. I further certify that I have no direct or indirect financial incentive for a particular determination or ownership interest of greater than 5% between any affected parties.*

*This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.*

Sincerely,

Justin Stamschror, MD
Board Certified: American Board of Psychiatry and Neurology, Psychiatry
American Academy of Addiction Psychiatry
American Psychiatric Association Medical Student Mentor

*MLS attests to the fact that there is no conflict of interest with this review MLS attests that its compensation is not dependent on the specific outcome of this review. All opinions in this report are solely the opinions of the author. All opinions are advisory only, independently developed by the author and are based upon a reasonable degree of medical certainty and evidence-based medical concepts, considering the data available at the time of this report.*

**Stanley Chou, MD**
***Board-Certified in Internal Medicine***
***Cardiovascular disease***

CLAIMANT NAME: Naugle, Kim
EXAMINER: Stanley Chou, MD
ECN #: 199863-3
CLAIM #: 12227902
DATE OF LOSS: 12/24/2020
DATE OF SERVICE: 9/30/2022

**Peer Review**

This is a peer review regarding Naugle, Kim. I have been asked to review the medical records on behalf of ECN. I reviewed records from 12/04/2020 through 06/22/2022 including: Dr. Ronald Ronald Prucha, MD/Family Medicine, extending from 12/11/2020 to 06/22/2022; Dr. Hemant Solomon, MD/Cardiology, extending from 12/04/2020 to 06/18/2021; Jennie Baird Buchkovich, Pa-C/Certified Physician Assistant, extending from 10/01/2021 to 04/01/2022; Sirrell Butler, LCSW/Licensed Clinical Social Worker, on 11/03/2020; Maimouna Diop, NP/Nurse Practitioner, on 11/29/2020; Eric J. Kelly, LCSW/Licensed Clinical Social Worker, extending from 03/01/2021 to 02/05/2022; Mark A. Sims, MD/Cardiovascular Disease, on 11/10/2021.

The claimant is a 59-year-old female with a medical history significant for coronary artery disease status post coronary artery bypass grafting, hypertension, hyperlipidemia, obesity, and history of Covid-19 infection.

12/04/2020, Hermant Solomon, MD / Cardiology: The claimant presents with medical history of coronary artery disease for which she underwent coronary artery bypass graft on 08/07/2018 with LIMA-LAD and SVG – D2. She had a couple of paroxysmal atrial fibrillation postoperatively. Her carotid dopplers on 08/01/2019 were essentially normal. Her 2D echo on 08/01/2018 showed normal left ventricular systolic function with an EF of 55-60%. Her CHADS-Vasc score was 3. She wore a cardiac monitor from 08/22/2018 to 09/04/2018, predominantly rhythm was normal sinus rhythm, no evidence of tachycardia or bradycardia arrhythmias, symptoms of palpitations/rapid heart rate correspond with sinus bradycardia and atrial run of 4 beats. Her repeat nuclear perfusion stress test on 10/2019 showed normal myocardial perfusion study, LVEF as 73%. She presents today with anxiety and depression. She currently takes Lexapro and this does not seem to be helping her. Her BP today is 140/80, weight is 161 kg with a BMI of 50.91. Her EKG showed as normal sinus rhythm. She is currently stable with her coronary artery disease. She will be meeting with bariatric surgery in the beginning of January to help her with her weight loss. Encouraged her to exercise 30 minutes daily.

12/14/2020, Ronald Joseph Prucha, MD / Family Medicine: The claimant presents with aches and pain bursitis and elbow aches.

06/04/2021, Ronald Joseph Prucha, MD / Family Medicine: The clamant had an ankle injury that occurred 2 days ago. Her pain level is at 5/10 as moderate in severity. The has been fluctuating since onset. Her pain is associated with inability to bear weight and a loss of sensation. Her symptoms are aggravated by movement. She has tried NSAIDs for the symptoms and provided mild relief. To obtain x-ray of the right ankle.

06/18/2021, Hermant Solomon, MD / Cardiology: The claimant presents for follow-up. Her hydralazine was increased to 50 mg due to uncontrolled BP. Her BP today is at 170/90, weight is at 151.4 with a BMI of 47.88.

10/01/2021, Jennie Buchkovich, PAC / Physician Assistant: The claimant presents for follow-up. Her BP remains elevated. Her home BP is at 130/80. She continues to wear with CPAP and has been working on losing weight. Her BP is at 140/80, weight as 145 kg. She will continue with ASA, statin and metoprolol for CAD. She will continue to consider adjustment of hydralazine, and continue efforts for weight loss.

10/29/2021, Jennie Buchkovich, PAC / Physician Assistant: The claimant presents for follow-up. She notes her BP at home usually at 130/70s, occasionally as high as 150s. She is still working with bariatric surgery. Her BP today is at 134/80, weight is at 145.7. She appears obese, harsh midsystolic murmur is present with a grade of 3/6 at the upper right sternal border radiating to the neck. She will continue with her current regimen and continue to make efforts for weight loss.

02/07/2022, Ronald Joseph Prucha, MD / Family Medicine: The claimant presents with cough and sinus congestion with pain for which she was contracted with Covid-19 infection. She was advised to continue with conservative measures.

04/01/2022, Jennie Buchkovich, PAC / Physician Assistant: The claimant presents for follow-up. Her BP at home is at 130s to 140s most days. She recently switched insurance and will require some adjustment in her medications. She continues to work and being successful with weight loss. Her BP today is at 138/80, weight is at 135.1. She will continue with ASA, atorvastatin and metoprolol for CAD. Her lipids are well controlled. Her hydralazine will be increased to 75 and will continue with benazepril and HCTZ for hypertension. She will continue to make efforts for weight loss.

06/22/2022, Ronald Joseph Prucha, MD / Family Medicine: The claimant presents for follow-up. She has ear fullness and post nasal drip and this was worsening and the right ear is worse than the left ear that started 4 weeks ago. She has tried acetaminophen.

**DIAGNOSES:**

Anxiety Disorder, unspecified
Medical / Surgical Conditions: CAD, HTN, DM, Obesity, PTSD, Anxiety

**CALL ATTEMPTS:**

9-22-2022, 11:34AM, Phone contact with Dr. Prucha: Left a message at WakeMed Primary Care - Kildaire with front office, Hope. Contact number used for outreach: 919-235-6575.

9-22-2022, 11:41AM, Phone contact with Dr. Solomon: Left a message at WakeMed Heart & Vascular Cardiology with RN, Michelle requested to have the questions faxed in writing to 919-367-2693. Contact number used for outreach: 919-232-0322.

9-23-2022, 9:17AM, Phone contact with Dr. Prucha: Left a message at WakeMed Primary Care - Kildaire with front office, Hope. Contact number used for outreach: 919-235-6575.

**RESPONSE TO QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

Coronary artery disease (I25.1)
Status post coronary artery bypass grafting (I25.810)

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Hypertension (I10)
Hyperlipidemia (E78.5)
Obesity (E66)
History of Covid-19 infection

**3. Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 12/24/2020 to present, and comment on the expected duration.**

Yes, taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, the claimant has a level of impairment translates into restrictions and limitations from 12/24/2020 to present.

The claimant is a 59-year-old female with a medical history significant for coronary artery disease status post coronary artery bypass grafting, hypertension, hyperlipidemia, obesity, and history of Covid-19 infection.

Interval history shows that the claimant has coronary artery disease. Her carotid dopplers on 08/01/2019 were essentially normal and her 2D echo showed normal left ventricular

systolic function with an EF of 55-60%. Her CHADS-Vasc score was 3. She underwent coronary artery bypass grafting with LIMA-LAD and SVG – D2 on 08/07/2018. Postoperatively, she had a couple of episodes of paroxysmal atrial fibrillation. She wore a cardiac monitor from 08/22/2018 to 09/04/2018, predominantly rhythm was normal sinus rhythm, symptoms of palpitations/rapid heart rate correspond with sinus bradycardia and a trial run of 4 beats. Her repeat nuclear perfusion stress test on 10/2019 showed normal myocardial perfusion study, LVEF as 73%. Her EKG showed as normal sinus rhythm. She is currently stable and treated with aspirin, atorvastatin and metoprolol. Her lipids are well controlled and will continue with her current regimen. She has hypertension and treated with hydralazine, benazepril and HCTZ. Her hydralazine was increased due to uncontrolled blood pressure for which she had a reading of 170/90. Her current blood pressure reading is at 138/80. The claimant is obese with weight as 161 kg and a BMI of 50.91. She continues to make efforts with losing weight. Currently, her weight is at 135.1 kg. She had history with Covid-19 infection with cough, sinus congestion, pain, and postnasal drip on early February of 2022.

Based on the information above, I opine that the claimant requires restrictions. The claimant has coronary artery disease for which she underwent coronary artery bypass surgery. Currently, she is stable with her current regimen with no episodes of cardiac complaints. The claimant was documented with a history of Covid-19 but there is no evidence of positive test result. The claimant has hypertension, hyperlipidemia, and obesity status which increases cardiovascular risk that may predispose her to future complications. Overall, due to her cardiac history and until her blood pressure is controlled and weight is stable, the claimant should limit activities that may cause aggravated symptoms. As such, the claimant is conclusively impaired from a functional standpoint and requires restrictions and limitations as outlined below:

Sitting: Unrestricted
Standing: Frequently, for up to 3 hours per day
Walking: Occasionally, for up to 2 hours per day
Lifting: Occasionally, up to 20 lbs. BUE
Carrying: Occasionally, up to 20 lbs. BUE
Pushing: Occasionally, up to 20 lbs. BUE
Pulling: Occasionally, up to 20 lbs. BUE
Climbing stairs: Occasionally
Balancing: Never
Stooping: Occasionally
Kneeling: Occasionally
Crouching: Occasionally
Crawling: Never
Reaching: Occasionally overhead and below waist level; Unrestricted desk level
Use lower extremities for foot controls: Unrestricted BLE
Fine manipulation: Unrestricted BUE
Simple and firm grasping: Unrestricted BUE

No climbing ladders
No working at unprotected heights
No operating heavy machinery

The above recommended restrictions and limitations are indicated from 12/24/2020 to present with reassessment on or around 03/23/2023.

The claimant's abilities are sustainable on a full-time basis.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

N/A. The records do not include specific restrictions or limitations that were recommended by the treating providers for the time-frames in question.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Yes, the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g., workplace conflicts child or elder care issues, or legal issues) that may adversely impact work?**

No, there are not any non-medical circumstances identified in the medical records that may adversely impact work.

Sincerely,

**Matthew Chan, MD**
**ABMS Board Certification**
**Occupational Medicine**
**Medical License Number CA 105924**

Claimant Name: Kim Naugle
Claim Number: 12227902
Case Number: 199863-3

"I, Stanley Chou, MD, am a physician duly licensed to practice medicine in the State of ____CA_________. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

______ M. Chan

Signature of Physician                                        Date

Medical/Professional License # _105924______________

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 394-3423
Secure Fax No.: (603) 334-7174

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator, and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

The **information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) Kim R. Naugle

Name of legal representative, if applicable (print) Crowley-Roberts, PA Relationship Attorney

Signature of claimant or legal representative Kim R. Naugle Date: 1/30/2022

Date of Birth: ________ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original.**

# Stanley Chou, MD
## *Board-Certified in Internal Medicine*
## *Cardiovascular disease*

CLAIMANT NAME: Naugle, Kim
EXAMINER: Stanley Chou, MD
ECN #: 199863-3
CLAIM #: 12227902
DATE OF LOSS: 12/24/2020
DATE OF SERVICE: 9/30/2022

**Peer Review**

This is a peer review regarding Naugle, Kim. I have been asked to review the medical records on behalf of ECN. I reviewed records from 12/04/2020 through 06/22/2022 including: Dr. Ronald Ronald Prucha, MD/Family Medicine, extending from 12/11/2020 to 06/22/2022; Dr. Hemant Solomon, MD/Cardiology, extending from 12/04/2020 to 06/18/2021; Jennie Baird Buchkovich, Pa-C/Certified Physician Assistant, extending from 10/01/2021 to 04/01/2022; Sirrell Butler, LCSW/Licensed Clinical Social Worker, on 11/03/2020; Maimouna Diop, NP/Nurse Practitioner, on 11/29/2020; Eric J. Kelly, LCSW/Licensed Clinical Social Worker, extending from 03/01/2021 to 02/05/2022; Mark A. Sims, MD/Cardiovascular Disease, on 11/10/2021.

The claimant is a 59-year-old female with a medical history significant for coronary artery disease status post coronary artery bypass grafting, hypertension, hyperlipidemia, obesity, and history of Covid-19 infection.

12/04/2020, Hermant Solomon, MD / Cardiology: The claimant presents with medical history of coronary artery disease for which she underwent coronary artery bypass graft on 08/07/2018 with LIMA-LAD and SVG – D2. She had a couple of paroxysmal atrial fibrillation postoperatively. Her carotid dopplers on 08/01/2019 were essentially normal. Her 2D echo on 08/01/2018 showed normal left ventricular systolic function with an EF of 55-60%. Her CHADS-Vasc score was 3. She wore a cardiac monitor from 08/22/2018 to 09/04/2018, predominantly rhythm was normal sinus rhythm, no evidence of tachycardia or bradycardia arrhythmias, symptoms of palpitations/rapid heart rate correspond with sinus bradycardia and atrial run of 4 beats. Her repeat nuclear perfusion stress test on 10/2019 showed normal myocardial perfusion study, LVEF as 73%. She presents today with anxiety and depression. She currently takes Lexapro and this does not seem to be helping her. Her BP today is 140/80, weight is 161 kg with a BMI of 50.91. Her EKG showed as normal sinus rhythm. She is currently stable with her coronary artery disease. She will be meeting with bariatric surgery in the beginning of January to help her with her weight loss. Encouraged her to exercise 30 minutes daily.

12/14/2020, Ronald Joseph Prucha, MD / Family Medicine: The claimant presents with aches and pain bursitis and elbow aches.

06/04/2021, Ronald Joseph Prucha, MD / Family Medicine: The clamant had an ankle injury that occurred 2 days ago. Her pain level is at 5/10 as moderate in severity. The has been fluctuating since onset. Her pain is associated with inability to bear weight and a loss of sensation. Her symptoms are aggravated by movement. She has tried NSAIDs for the symptoms and provided mild relief. To obtain x-ray of the right ankle.

06/18/2021, Hermant Solomon, MD / Cardiology: The claimant presents for follow-up. Her hydralazine was increased to 50 mg due to uncontrolled BP. Her BP today is at 170/90, weight is at 151.4 with a BMI of 47.88.

10/01/2021, Jennie Buchkovich, PAC / Physician Assistant: The claimant presents for follow-up. Her BP remains elevated. Her home BP is at 130/80. She continues to wear with CPAP and has been working on losing weight. Her BP is at 140/80, weight as 145 kg. She will continue with ASA, statin and metoprolol for CAD. She will continue to consider adjustment of hydralazine, and continue efforts for weight loss.

10/29/2021, Jennie Buchkovich, PAC / Physician Assistant: The claimant presents for follow-up. She notes her BP at home usually at 130/70s, occasionally as high as 150s. She is still working with bariatric surgery. Her BP today is at 134/80, weight is at 145.7. She appears obese, harsh midsystolic murmur is present with a grade of 3/6 at the upper right sternal border radiating to the neck. She will continue with her current regimen and continue to make efforts for weight loss.

02/07/2022, Ronald Joseph Prucha, MD / Family Medicine: The claimant presents with cough and sinus congestion with pain for which she was contracted with Covid-19 infection. She was advised to continue with conservative measures.

04/01/2022, Jennie Buchkovich, PAC / Physician Assistant: The claimant presents for follow-up. Her BP at home is at 130s to 140s most days. She recently switched insurance and will require some adjustment in her medications. She continues to work and being successful with weight loss. Her BP today is at 138/80, weight is at 135.1. She will continue with ASA, atorvastatin and metoprolol for CAD. Her lipids are well controlled. Her hydralazine will be increased to 75 and will continue with benazepril and HCTZ for hypertension. She will continue to make efforts for weight loss.

06/22/2022, Ronald Joseph Prucha, MD / Family Medicine: The claimant presents for follow-up. She has ear fullness and post nasal drip and this was worsening and the right ear is worse than the left ear that started 4 weeks ago. She has tried acetaminophen.

**DIAGNOSES:**

Anxiety Disorder, unspecified
Medical / Surgical Conditions: CAD, HTN, DM, Obesity, PTSD, Anxiety

**CALL ATTEMPTS:**

9-22-2022, 11:34AM, Phone contact with Dr. Prucha: Left a message at WakeMed Primary Care - Kildaire with front office, Hope. Contact number used for outreach: 919-235-6575.

9-22-2022, 11:41AM, Phone contact with Dr. Solomon: Left a message at WakeMed Heart & Vascular Cardiology with RN, Michelle requested to have the questions faxed in writing to 919-367-2693. Contact number used for outreach: 919-232-0322.

9-23-2022, 9:17AM, Phone contact with Dr. Prucha: Left a message at WakeMed Primary Care - Kildaire with front office, Hope. Contact number used for outreach: 919-235-6575.

**RESPONSE TO QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

Coronary artery disease (I25.1)
Status post coronary artery bypass grafting (I25.810)

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Hypertension (I10)
Hyperlipidemia (E78.5)
Obesity (E66)
History of Covid-19 infection

**3. Taking into consideration the entire clinical picture, including evidence-based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 12/24/2020 to present, and comment on the expected duration.**

Yes, taking into consideration the entire clinical picture, including standards of care and evidence-based medicine and any medication or other treatment side effects, the claimant has a level of impairment translates into restrictions and limitations from 12/24/2020 to present.

The claimant is a 59-year-old female with a medical history significant for coronary artery disease status post coronary artery bypass grafting, hypertension, hyperlipidemia, obesity, and history of Covid-19 infection.

Interval history shows that the claimant has coronary artery disease. Her carotid dopplers on 08/01/2019 were essentially normal and her 2D echo showed normal left ventricular

systolic function with an EF of 55-60%. Her CHADS-Vasc score was 3. She underwent coronary artery bypass grafting with LIMA-LAD and SVG – D2 on 08/07/2018. Postoperatively, she had a couple of episodes of paroxysmal atrial fibrillation. She wore a cardiac monitor from 08/22/2018 to 09/04/2018, predominantly rhythm was normal sinus rhythm, symptoms of palpitations/rapid heart rate correspond with sinus bradycardia and a trial run of 4 beats. Her repeat nuclear perfusion stress test on 10/2019 showed normal myocardial perfusion study, LVEF as 73%. Her EKG showed as normal sinus rhythm. She is currently stable and treated with aspirin, atorvastatin and metoprolol. Her lipids are well controlled and will continue with her current regimen. She has hypertension and treated with hydralazine, benazepril and HCTZ. Her hydralazine was increased due to uncontrolled blood pressure for which she had a reading of 170/90. Her current blood pressure reading is at 138/80. The claimant is obese with weight as 161 kg and a BMI of 50.91. She continues to make efforts with losing weight. Currently, her weight is at 135.1 kg. She had history with Covid-19 infection with cough, sinus congestion, pain, and postnasal drip on early February of 2022.

Based on the information above, I opine that the claimant requires restrictions. The claimant has coronary artery disease for which she underwent coronary artery bypass surgery. Currently, she is stable with her current regimen with no episodes of cardiac complaints. The claimant was documented with a history of Covid-19 but there is no evidence of positive test result. The claimant has hypertension, hyperlipidemia, and obesity status which increases cardiovascular risk that may predispose her to future complications. Overall, due to her cardiac history and until her blood pressure is controlled and weight is stable, the claimant should limit activities that may cause aggravated symptoms. As such, the claimant is conclusively impaired from a functional standpoint and requires restrictions and limitations as outlined below:

Sitting: Unrestricted
Standing: Frequently, for up to 3 hours per day
Walking: Occasionally, for up to 2 hours per day
Lifting: Occasionally, up to 20 lbs. BUE
Carrying: Occasionally, up to 20 lbs. BUE
Pushing: Occasionally, up to 20 lbs. BUE
Pulling: Occasionally, up to 20 lbs. BUE
Climbing stairs: Occasionally
Balancing: Never
Stooping: Occasionally
Kneeling: Occasionally
Crouching: Occasionally
Crawling: Never
Reaching: Occasionally overhead and below waist level; Unrestricted desk level
Use lower extremities for foot controls: Unrestricted BLE
Fine manipulation: Unrestricted BUE
Simple and firm grasping: Unrestricted BUE

No climbing ladders
No working at unprotected heights
No operating heavy machinery

The above recommended restrictions and limitations are indicated from 12/24/2020 to present with reassessment on or around 03/23/2023.

The claimant's abilities are sustainable on a full-time basis.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

N/A. The records do not include specific restrictions or limitations that were recommended by the treating providers for the time-frames in question.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Yes, the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g., workplace conflicts child or elder care issues, or legal issues) that may adversely impact work?**

No, there are not any non-medical circumstances identified in the medical records that may adversely impact work.

Sincerely,



**Matthew Chan, MD**
**ABMS Board Certification**
**Occupational Medicine**
**Medical License Number CA 105924**

Claimant Name: Kim Naugle
Claim Number: 12227902
Case Number: 199863-3

"I, Stanley Chou, MD, am a physician duly licensed to practice medicine in the State of ____CA_________. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

_____ M. Chan

Signature of Physician                                                                 Date

Medical/Professional License # _105924_______________

Lincoln/Naugle 0154

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator, and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information:** The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) Kim R. Naugle

Name of legal representative, if applicable (print) Crumley-Roberts, PA Relationship Attorney

Signature of claimant or legal representative Kim R. Naugle Date: 1/30/2022

Date of Birth: ______ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original.**

**From:**Russell, Joshua <Joshua.Russell@genexservices.com>
**Sent:**Fri, 30 Sep 2022 21:48:25 +0000
**To:**VendorReferrals
**Subject:**K. Naugle CL# 12227902
**Attachments:**Invoice.pdf, Peer Review.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good Afternoon,
Attached please find the Peer Review and Invoice for the above referenced claimant.
Please advise if we can further assist you with this file.
Thanks for the referral,

**Joshua Russell**
***Quality Assurance Coordinator***
Exam Coordinators Network, a division of Genex Services
**T**: 877-463-9463
**F**: 561-392-5881
**Access our portal at:** View My Cases

ACCREDITED
Independent Medical Examinations
Expires 04/01/2024

All electronic communications from ECN / Genex are confidential, unpublished property of Genex. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. This document is intended for the use of the individual(s) or entity to which it is addressed, and may contain information that is privileged and confidential, including personal health information, and applicable law may prohibit further disclosure of this information. If the recipient of the message is not the intended addressee, or the employee or agent responsible for delivering this message to the addressee, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender. Please note the following from the HIPAA Privacy Rule Standards: A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault. Refer to 45 CFR 164.512(l)

The information and any attachments contained in this email are confidential and proprietary, and may be protected under the law, including federal and state privacy laws. The information and attachments are intended solely for use by the individual or entity to whom this email is addressed. If you are not the intended recipient, you are notified that any use, dissemination, forwarding, or copying of this information or attachments is strictly prohibited. If you received this email in error, please notify the sender immediately and delete all copies of this email. Thank you.

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**Invoice:** **BOCA 160156**

**Date** **9/30/2022**

***Bill To:***

**Tammy Sullivan**
**Lincoln Financial-London, KY**
**P.O. Box 7207**
**London, KY 40742**

**Claim #** 12227902
**Date of Loss:** 12/24/2020
**ECN #** 199863-3
**Account #**

**Claimant** Kim Naugle

| | | |
|---|---|---|
| 9/22/2022 | Peer Review - Long Term Disability: Service<br>Provider: Stanley Chou, MD<br>Specialty: Internal Medicine/Cardiology | $660.00 |
| | **SubTotal** | $660.00 |
| | **Final Invoice Total** | $660.00 |

***Remit To:***
Exam Coordinators Network
440 E. Swedesford Road
Suite 1000
Wayne, PA 19087

Terms: Net 30 days
Tax Id #: 95-3327434

THANK YOU FOR THE OPPORTUNITY TO PROVIDE THIS SERVICE FOR YOU. PLEASE REMIT PAYMENT PROMPTLY.

9/26/2022

| | | | |
|---|---|---|---|
| RE: | Claimant Name | : | KIM R NAUGLE |
| | Client | : | Lincoln Life Assurance Company of Boston - 92 |
| | Referred By | : | Sullivan, Tammy |
| | Type of Review | : | Disability |
| | Type of Service | : | LTD |
| | Claim Number: | : | 12227902 |

**MEDICAL DOCUMENTATION REVIEWED**

I have reviewed all of the documents provided.

| | | |
|---|---|---|
| PROGRESS NOTES | Monarch | 11/03/20-05/20/21 |
| PROGRESS NOTES | WakeMed Primary Care | 12/04/20-06/22/22 +Undated |
| PROGRESS NOTES | Avance Care | 06/25/21-03/02/22 |
| FILE REVIEWS | C. Piechowiak, R.N. | 01/28/21 |
| FILE REVIEWS | Rachael, R., MSW, LICSW | 02/24/21-05/17/21 |
| FILE REVIEWS | M. Goldman, M.D. | 06/01/21 |
| FILE REVIEWS | C. R. Good, M.D. | 11/09/21-12/08/21 |
| FILE REVIEWS | M. A. Sims, M.D., MBA, MHA | 11/10/21-12/08/21 |
| FILE REVIEWS | S. Gilman, M.D. | 02/28/22 |
| FILE REVIEWS | W. Goins, M.D. | 03/01/22 |
| OTHER | H. Downing, M.Ed., CRC | 03/07/22 |
| MISC | | 12/24/20-09/06/22 +Undated |
| ROI | | 03/22/21-01/30/22 +Undated |

**SUMMARY OF PEER OUTREACH**

TELECONFERENCE #1:

1) AP NAME: Eric Kelly LCSW
2) DATE: 9/20/2022
3) TIME: 6:24 PM ET
4) PERSON SPOKEN WITH: Voicemail

5) POSITION OF PERSON SPOKEN WITH: Voicemail

SUMMARY OF CONVERSATION: I left a voicemail message requesting a return call.

TELECONFERENCE #2:
1) AP NAME: Eric Kelly LCSW
2) DATE: 9/21/2022
3) TIME: 10:25 AM ET
4) PERSON SPOKEN WITH: Voicemail
5) POSITION OF PERSON SPOKEN WITH: Voicemail

SUMMARY OF CONVERSATION: I left a voicemail message requesting a return call.

TELECONFERENCE #3:
1) AP NAME: Dr. Ronald Prucha
2) DATE: 9/21/2022
3) TIME: 10:26 AM ET
4) PERSON SPOKEN WITH: Hope
5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: A message was left asking for a return call.

TELECONFERENCE #4:
1) AP NAME: Dr. Ronald Prucha
2) DATE: 9/22/2022
3) TIME: 4:09 PM ET
4) PERSON SPOKEN WITH: Hope
5) POSITION OF PERSON SPOKEN WITH: Receptionist

SUMMARY OF CONVERSATION: A message was left asking for a return call.

**SUMMARY OF MEDICAL DOCUMENTATION**

The claimant is a 59 year-old female. The following review is from a Psychiatric perspective.

11/3/2020: The claimant was seen for an initial evaluation by Sirell Butler, LCSW. The claimant was being seen for mental health evaluation. She reported that she had "nonstop anxiety. I could not function all day yesterday." She reported that she had a high stress job that was demanding. She reported not having a personal life, and this was difficult for her. She reported that she was taking Lexapro. Her PHQ-9 score was 16. Her GAD-7 score was not provided. On exam, she had full range affect with linear thought process and normal thought content, cognition, insight, judgment. She was noted to have a "better day" in terms of her mood.

11/24/2020: A note by Maimouna Diop, NP. The claimant was being treated for generalized anxiety disorder, major depressive disorder, and post-traumatic stress disorder (PTSD). She was describing having anxiety and panic attacks. She reported her symptoms began after she underwent cardiac surgery. She was endorsing anxiety and panic attacks. She was reporting having palpitations, sweating, and trembling. On exam, she had depressed mood with restricted, sad, and tearful affect. The rest of her mental status exam, including perceptual, cognition, judgment, orientation, appearance, and hygiene were grossly normal.

12/4/2020: A note by Dr. Hermant Solomon. The claimant was endorsing having significant anxiety and depression. She was requesting a leave of absence from work. She was recommended to see her PCP. On exam, she was in no distress and appeared stated age.

1/4/2021: An Attending Physician Statement by Dr. Ronald Prucha. On exam, the claimant was sad and slightly anxious. She had normal cognition and judgment as well as insight. She was still able to socially engage. It was reported that she cannot perform any job tasks and required a stress-free environment.

2/12/2021: A note by Dr. Ronald Prucha of primary care. The claimant was endorsing having depression" stress related work burden and diminished quality of life and decreased cognitive and physical functioning secondary to the sheer amount of work stress she was incurring at her job". She reportedly had been compliant with Paxil and was finding this helpful. She reported having low energy and depressed mood. She was going to see a therapist. She was stressed about her disability company. On exam, she had normal mood. Her work stress was noted to be a "chronic stable problem". No changes were made in her medication regimen. She was going to be seen back in 3 months.

2/17/2021: An Attending Physician Statement by Dr. Ronald Prucha. It was reported that the claimant was unable to work in any environment due to her mental health condition. This reportedly was at least until 6/14/2021. She reportedly had depressed mood, anxiety, fatigue, and slowed cognition.

3/1/2021-5/20/2021: Therapy notes by Eric Kelly, LCSW. The claimant appeared to be receiving psychotherapy about every 2 weeks. The claimant reportedly was receiving "solution focused psychotherapy". The claimant was reporting on 4/1/2021 to be overwhelmed and unmotivated. On 4/15/2021, she reported having "bothersome thoughts/feelings related to anxiety". On 5/6/2021, the claimant was noted to have a PHQ-9 score of 15. She was discussing long administrative wait times at this facility. On 5/20/2021, she was discussing "her current situation with employer and having to face into long-term disability given her medical and mental health complications". She was discussing trying to obtain long-term disability benefits.

6/4/2021: A note by Dr. Ronald Prucha of primary care. The claimant reported being upset with her disability insurance company. She reported that this had "exacerbated her condition". She reported difficulty with sleep and was using clonazepam. She was blaming the disability insurance company for the way she felt. She reportedly was seeing a therapist twice per month. She reported having anxiety but felt Paxil and clonazepam were helpful. She reportedly was

upset with her work and felt that she was being micromanaged as a project manager. She reportedly was "thankful she is not there presently". On exam she was in no acute distress. No medication changes were made.

7/28/2021-XXXXX: The claimant was seen for psychotherapy by Eric Kelly, LCSW. She reported having a "hypersensitivity to stress and anxiety that comes with it". She reportedly was taking clonazepam for this. On her initial exam on 7/28/2021, she was noted to be grossly normal in appearance, and was noted to be friendly, smiling often, and humorous. Her mood was depressed and anxious with congruent affect. Her speech, intellectual functioning, abstraction, insight, judgment, and memory all were grossly normal. She reportedly was taking Paxil and clonazepam. Her second appointment was on 9/7/2021. She was describing her relationship with her mother. Her third appointment was on 9/27/2021, about 3 weeks later. She was discussing strategies to help control her stress. She was then seen next on 10/5/2021. She was again discussing stress control strategies. Her next appointment was about 2 weeks later on 10/20/2021. She again was discussing stress control. Following this, she was seen on 10/28/2021, 11/17/2021, 12/1/2021. On 12/1/2021, she was describing gardening and tending to her animals. She was then seen again on 12/29/2021, 1/12/2022, 2/5/2022. She was frequently noted to discuss her relationships with family members.

8/13/2021: A form from an illegible author. They reported that an anxiety related condition did raise the risk of developing heart problems. He stated that her mental health conditions could further exacerbate her hypertension. He felt that a high stress job in addition to her cardiac conditions would place her at risk. He did not feel that the claimant was exaggerating her condition.

10/6/2021: A note by Dr. Ronald Prucha of primary care. The claimant reported that she was not benefiting from therapy. She reportedly was on vaccinated and was not taking her vaccine, and this was stressful for her family as well. She reportedly was "feeling better after having left work and she is a better place and is having some family issues". On exam, she was in no acute distress. Her dose of Paxil was increased to 40 mg. She was scheduled for follow-up in 3 months.

10/20/2021: A form from the claimant's therapist, Eric Kelly, LCSW. He reported that the claimant had extreme concerns related to the claimant's workplace environment. She was thought to have marked difficulty due to anxiety. This reportedly was because she had decreased focus as well as slowed pace and lower functioning in the workplace. He felt that the claimant would miss more than 3 days/month due to her mental health condition.

2/7/2022: A letter by Dr. Ronald Prucha of primary care. The claimant reportedly had significant depression and anxiety that was exacerbated by her stressful job, which "resulted in her having to leave her position to seek therapy, counseling and medications to manage her emotional lability". He reported that the claimant continued to struggle with depression, anxiety, and PTSD. She reportedly wanted to return to work when her anxiety was under better control. She was undergoing psychotherapy. It was thought that she was "quickly approaching a state of

work readiness and her short-term goal presently is to return to work when she completes her current mental health treatment plan".

2/8/2022: An APS by Eric Kelly, LCSW. The claimant was diagnosed with major depression, PTSD, and generalized anxiety disorder. It was reported that on exam the claimant appeared disheveled and at times circumstantial. They had increased stress due to "several life areas". They had intact immediate memory and long-term memory. They reportedly had intrusive thoughts. She reportedly had "hypersensitivity to stressful situations: Chronic panic attacks and depression, and PTSD". She reportedly was able to do low stress tasks. She reportedly had been "not medically relieved for work at this time".

2/7/2022: A note by Dr. Ronald Prucha of primary care. She was asking for her doctor to write her a statement rather than complete the individual boxes that it was asking for. She reportedly was working with her therapist to get anxiety under control. She stated that her symptoms were mostly improved. She reportedly was struggling with appealing her insurance denial. She reportedly sent a form to the doctor that had to the "functional mental part has been done". She was asking for a narrative on the functional assessment. On exam, she was well appearing and in no acute distress. She had a normal mood. It was reported that her PTSD was "well controlled".

6/22/2022: A note by Dr. Ronald Prucha of primary care. The claimant was noting that she was having anxiety. She reportedly had moderate severity and anxiety. She was noted to be stable in terms of her anxiety. She was taking clonazepam without side effects. Depression was also noted to be stable. She was taking Paxil and was tolerating this as well. No medication changes were made.

**QUESTION**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

There are no impairing conditions or diagnoses from a psychiatric perspective.

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

There are no comorbid diagnoses significant to impairment.

**3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 12/24/2020 to - present, and comment on the expected duration.**

Based on the documentation provided, there is no support of impairment for any psychiatric restrictions or limitations from 12/24/2020 and onwards. There is no evidence of any significant impairment noted on any exams. For example, on 1/4/2021, the claimant was noted to have

intact judgment, cognition, insight. There is no documented impairments in mental status exam findings demonstrating with impairments. If such impairment was supported, it would be expected that the medical records would include recent/ongoing documentation of evidence of symptomatology such as deficiencies in grooming/hygiene, as individuals often neglect self-care when experiencing persistent and severe symptomatology resulting from an impairing/incapacitating psychiatric condition. Other indications of functional impairment might include documentation of observed symptomatology such as suicidal ideation, poor impulse control, poor concentration, poor memory, homicidal ideation, paranoia, psychosis, delusional thinking, disorganized thought processing, aggressive/hostile ideation/behavior, or conversely, catatonic-like or excessively withdrawn behavior, causing impairment in social functioning. Such persistent symptomatology is not present in the medical documentation for the time frame of interest.

Furthermore, the claimant's level of care was inconsistent with a severely impairing psychiatric condition as well. On 2/12/2021 and 6/4/2021, she did not undergo any changes in her medication regimen. She did not have any changes in her medication regimen until 10/6/2021, at which point time her primary care doctor increased her Paxil dose to 40 mg. At that time, she was reporting that she was "feeling better after having left work". On 2/7/2021, no medication changes were made, and she was noted to be "well controlled" in terms of PTSD symptoms. This was again consistent with a 6/22/2022 primary care note. Furthermore, there appears to be a gap in her therapy care between 5/20/2021 and 7/28/2021, followed by another gap in care from 7/28/2021 and 9/7/2021. She had another gap in care between 12/1/2021 and 12/29/2021, and then was seen about every 2 weeks until 2/5/2021. The content of these therapy sessions was primarily related to relationships with her family members. The infrequent psychotherapy along with relatively minimal psychiatric medication management is not consistent with a severely impairing psychiatric condition, which would typically result in referral to specialty psychiatric care as well as a higher level of intensive treatment, such as an intensive outpatient program. This is not documented during the timeframe in question.

Overall, based on the documentation provided, the exam findings that were documented and level of care that the claimant was receiving, are largely inconsistent with a severely impairing psychiatric condition, and therefore I do not find adequate support for any global psychiatric restrictions or limitations.

**4. Do medical records support any R&Ls that were recommended by treating providers for the time frames in question?**

As mentioned above, the medical records do not support the restrictions and limitations that were recommended by treating providers during the timeframe in question.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

As mentioned above, I do not find adequate support for psychiatric restrictions and limitations. Therefore, infrequent medication changes by the claimant's primary care physician and infrequent psychotherapy would be consistent with the apparent level of severity of her condition.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

Yes. There are non-medical circumstances identified in the medical records. The claimant frequently discusses significant workplace stress as a factor in her discontinuing employment.

**7. Please initiate AP contact when it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for work absence. AP contact information:**

**Name: Eric Kelly LCSW (919) 210 2070 email iericjkellylcsw@gmail.com**
**Name: Dr. Ronald Prucha (919) 235 6575 F 919-235-6598**

See call section.

CONFLICT OF INTEREST:

*I certify that I have no relationship or affiliation with the beneficiary of this independent review or a significant past or present relationship with the Attending Provider and/or the treatment facility. I further certify that I have no familial or material professional or business relationship or incentive to promote the use of a certain product or service associated with the review of this case. I further certify that I have no direct or indirect financial incentive for a particular determination or ownership interest of greater than 5% between any affected parties.*

*This attestation certifies that the peer reviewer named below has the appropriate scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue under review and has current, relevant experience and/or knowledge to render a determination for the case under review.*

Sincerely,

Justin Stamschror, MD
Board Certified: American Board of Psychiatry and Neurology, Psychiatry
American Academy of Addiction Psychiatry
American Psychiatric Association Medical Student Mentor

*MLS attests to the fact that there is no conflict of interest with this review MLS attests that its compensation is not dependent on the specific outcome of this review. All opinions in this report are solely the opinions of the author. All opinions are advisory only, independently developed by the author and are based upon a reasonable degree of medical certainty and evidence-based medical concepts, considering the data available at the time of this report.*

**From:**SWood@mlsgroupllc.com
**Sent:**Mon, 26 Sep 2022 12:13:15 -0400
**To:**VendorReferrals
**Subject:**MLS review notification for case - 12227902 ID: MLS# 138416
**Attachments:**Invoice_138416-1_v1.pdf, Report_MLS_D2__R01_138416-1_v1.doc

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

This is to inform you that the review for your case #12227902 (MLS #138416, Initial, ) has been completed and is ready to be viewed on our website.

You can access the report via https://client.mlsgroupllc.com using your username and password.

Thank you for the referral,
MLS Group of Companies, LLC

Cheryl Gratowski
cgratowski@mlsgroupllc.com

Sharee Wood
SWood@mlsgroupllc.com

*"Privileged and Confidential: The information contained in this e-mail message, including any attachments, is intended only for the personal and confidential use of the intended recipient(s) and may contain confidential and privileged information as well as information protected by the Privacy Act of 1974. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please immediately contact the sender by reply e-mail and delete all copies of the original message."*

**Invoice** **138416-1**

**Date of Invoice** 9/26/2022

**MLS Group of Companies**
P.O. Box 492417
Redding CA 96049
248-945-9001 Fax: 248-356-6757

Lincoln Life Assurance Company of Boston - 92
P.O. Box 1525
Dover, NH 03821

**Attention:**
Tammy Sullivan

**Case ID:** 12227902
**Referral ID:** 138416
**Name:** KIM R NAUGLE
**Employer:**
**Physician:** Justin Stamschror
**Specialty:** Psychiatry
**Svc Date:** 9/26/2022

| Item | Rate |
|---|---|
| Peer Review | $810.00 |

| | |
|---|---|
| **Invoice Total** | $810.00 |
| **Tax Total** | $0 |
| **Receipt Total** | $0.00 |
| **Invoice Balance** | $$810.00 |

Please visit our new web-site address located at www.mlsgroupllc.com

MLS Tax ID #: 38-3341904

Please make checks payable to:
MLS Group of Companies

# Lincoln Financial Group - Independent Evaluation

## Peer Review

Requested By: Sabrina Ann Leahey
Disability Claims
P.O. Box 7206
London, KY 40742-7206
(402) 361-7048 x99999
Fax: (402) 361-1350

Document Locations

- [x] Document List
- [ ] Correspondence
- [ ] Paper File

**Return Report to: VendorReferrals@lfg.com**

| | | | |
|---|---|---|---|
| Customer Name: | SIEMENS CORPORATION | Date Sent: | 9/20/2022 |
| Funding type: | CON | Coverage Type: | LTD |
| Claimant Name: | KIM R NAUGLE | Claim #: | 12227902 |
| Claimant Address: | | Claimant SSN: | |
| | | Claimant DOB: | |
| City: | | Claimant Tel. #: | |
| State: | | Claimant DOD: | 12/24/2020 |
| Zip: | | Primary Diagnosis: | Anxiety disorder, unspecified |
| Gender: | FEMALE | Att. Physician: | |
| Specialist Type Requested : | Other | Physician: Phone/Fax | See contacts in questions |

Referral Questions:

Vendor Chosen: Exam Coordinators - ECN

Claimant Name: KIM R NAUGLE

# Lincoln Financial Group - Independent Evaluation

## Peer Review

Core Questions
1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.
2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.
3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 12/24/2020 to - present, and comment on the expected duration.
4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?
5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?
6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?
7. Please initiate AP contact when it may clarify any significant areas such as diagnosis, R&Ls, treatment opportunities, prognosis, or reason for work absence. AP contact information:
Name: Dr. Ronald Prucha
Phone Number: 1 (919) 235 6575 ex -----
Fax Number: 919-235-6598
Name: Dr. Hemant Solomon
Phone Number: 1 (919) 232 0322 ex -----
Fax Number: 919-367-2693
Additional Questions
Please note that this claim is also currently being reviewed by the following specialty or specialties: - Psychiatry

Instructions For Vendor:

Claimant Name: KIM R NAUGLE

# Lincoln Financial Group - Independent Evaluation

## Peer Review

Please assign to a board certified, preferably university affiliated provider.
Questions or issues with this referral should be directed to: Tammy.Sullivan@lfg.com
Medical / Surgical Condition: CAD, HTN, DM, obesity, PTSD, anxiety
Specialty: Please assign to Dual boarded Internal Medicine and Cardiology 690

Attorney Information (if applicable):

Claimant Name: KIM R NAUGLE

**Clinical Review Memo**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| SIEMENS CORPORATION | KIM NAUGLE | 12227902 |

| | | | |
|---|---|---|---|
| **Report Date:** | | | |
| **Referred By:** | Tammy Sullivan | **Claimant DOB:** | |
| **Referral Date:** | 09/19/2022 | **Job Title:** | Z0024V6X - PROJECT COORDINATOR |
| **Due Date:** | 10/03/2022 | **Medical/ Surgical Condition:** | CAD, HTN, DM, obesity, PTSD, anxiety |
| **Referral Type:** | Appeal Referral | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | TCMS Special Circumstance | **LDW:** | 12/23/2020 |
| | | **DOD:** | 12/24/2020 |
| **Physical Demands:** | | **BBD:** | 06/24/2021 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

## Referral Questions

1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.

2. If applicable please identify clinical significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 12/24/2020 to present, and comment on the expected duration.

4. Do the medical records reviewed support the R&Ls, if any, that were recommended by treating providers for the time frames in question? (If “No,” please discuss differences in the comment section below).

5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition? (If “No” please explain in the comment section below).

6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?

7. If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:

**Name: Dr. Ronald Prucha Phone Number: 1 (919) 235 6575 ex ----- Fax Number: 919-235-6598**

Date of call ______, Time ______
Date of call ______, Time ______
Date letter sent to AP

**Name: Dr. Hemant Solomon Phone Number: 1 (919) 232 0322 ex ----- Fax Number: 919-367-2693**

Date of call ______, Time ______
Date of call ______, Time ______
Date letter sent to AP

**Additional Questions**

Please note that this claim is also currently being reviewed by the following specialty or specialties: Psychiatry

**Other Comments**
Other Comments - None

**Analysis of Medical Documentation and Support for Responses to Referral Questions:**

**All medical records provided by Lincoln Financial Group as of today's date were reviewed, including the most recent record in the file which is:**

**Electronically Signed:**

Lincoln Financial Group

Date: September 15, 2022

Subject: **Appeal Nursing Memorandum**

Claim#: LTD 12227902

Employee: Kim Naugle

Date of Birth:

Date of Disability: 12/24/2020

Review of medical records on file complete. All available medical records have been reviewed through date and time of this review. Information summarized below includes those portions of the records received that have relevance to the questions and time frame identified for this review.

The employee ceased work on 12/24/20. This NDC is asked to comment on physical conditions only for the purpose of this review as a separate psychiatric physician review is being completed.

The employee has co-morbid conditions that include coronary artery disease with prior CABG {coronary artery bypass grafting surgery, open heart surgery} on 8/7/18, hypertension, pre-diabetes, hyperlipidemia, hypothyroidism, arthritis, fibroids, morbid obesity, and sleep apnea.

Treating providers include Dr. Ronald Prucha {primary care}and the employee had a visit on 12/11/20 and reported intestinal issues for 1-week, post-nasal drip, sinus pressure and drainage, sinus headache, and eye swelling. Exam noted a blood pressure of 140/82 {normal 120/80}, weight of 346lbs, and was otherwise unremarkable. The employee was diagnosed with a bacterial sinus infection and prescribed antibiotics. She was seen again on 12/14/20 and reported joint aching and pain and reported she stood up from the coach and her knee went out. She could only stand for 10 minutes at a time and was unable to exercise now. Blood pressure was normal, and she reported work stress and anxiety and requested FMLA.

On 2/12/21 the employee saw Dr. Prucha for work stress management and completed a RF on 2/17/21 endorsing restrictions related to mental health conditions only from 12/14/20-6/14/21.

On 6/4/21 the employee saw Dr. Prucha and discussed her frustration with the disability process and her anxiety and depression. She was noted to be taking part in medically supervised weight loss and did not want to do bariatric surgery. Her cardiologist was encouraging this surgery, but she was not interested due to dear of complications. A right ankle injury 2 days prior was reported, and she stated she twisted her ankle and was unable to bear weight and had loss of sensation. Exam noted mildly elevated blood pressure at 146/65 and no ankle abnormalities were

documented. An x-ray of the ankle was ordered, and diet was discussed for weight loss. A note from the provider stated the x-ray was normal.

On 6/18/21 the employee had a 6 month follow up with cardiologist Dr. Hermant Solomon. Exam noted elevated blood pressure at 170/90 however no associated symptoms were reported and her Hydralazine blood pressure medication dose was increased. Exam was otherwise normal, and she was recommended to follow up in 3 months.

A 7/15/21 letter from Dr. Prucha stated the employee remained unable to work due to an underlying medical condition.

A 7/20/21 declaration letter from the employee noted that she took many medications and supplements daily which caused her to have to use the restroom often, and at times also made her drowsy and sick to her stomach. She voiced concern about returning to work due to the stress it would cause on her heart.

A questionnaire completed by Dr. Solomon on 8/13/21 endorsed that he agreed that anxiety related conditions raised the risk for developing heart issues, and the employee's mental conditions could further elevate her blood pressure. Of note, records on file reveal the employee had a normal cardiac stress test in 2019 and normal cardiac ultrasound in 2018.

On 10/1/21 the employee saw cardiology and denied any chest pain, shortness of breath, or palpitations, she continued to use her CPAP for sleep apnea and was working on weight loss. Blood pressure was mildly elevated at 140/80 and exam was normal. No changes to treatment were made. On 10/29/21 she followed up with a blood pressure log and reported her readings at home had been typically 130/70s, occasionally up to the 150s. A heart murmur was noted on exam {extra noise heard during a heartbeat when listening during an exam, most are harmless} and lab work was ordered.

A physician review was completed on 11/10/21 by Dr. Mark Sims {cardiology}. Dr. Sims stated that the records on file did not support a diagnosis of stress provoked cardiomyopathy as suggested by Dr. Solomon and there was no evidence of cardiac dysfunction, recurrent chest pain or abnormal heart rhythms after her open-heart surgery. No cardiac restrictions were supported beyond 3/23/21. See report for details.

Paperwork was completed by the employee on 1/30/22 and stated she could sit for 2 or more hours, stand for one hour, and walk for 15 minutes. The employee reported she was on leave from work for severe anxiety and PTSD.

A 2/7/22 letter from Dr. Prucha discussing the employee's mental health conditions was reviewed. The employee was seen that day for a cough and sinus congestion. She reported she had contracted Covid-19 and became ill 3 weeks ago but was feeling better now. She had gone to another provider after being unable to obtain an appointment with Dr. Prucha, and was prescribed antibiotics, steroids, and antiviral medication used to treat Covid-19. Blood pressure was normal, weight was down to 298lbs, and follow up in 3 months was planned.

A physician review was completed on 3/1/22 by Dr. Wendell Goins {board certified family/addiction medicine, general surgery, and critical care medicine}. Dr. Goins supported impairing diagnoses of coronary artery disease and CABG. Co-morbid conditions of hypertension, hyperlipidemia, congestive heart failure, acid reflux disease, anxiety disorder, PTSD, and history of Covid-19 were also noted. Dr. Goins stated that the medical evidence on file supported impairment from a family medicine perspective from 6/22/21-5/15/22 due to the employee's age and weight. These restrictions included sitting unrestricted, occasional standing/walking/climbing stairs and ladders/crouching/crawling/reaching overhead, lifting/carrying/pushing/pulling occasionally up to 20lbs, and occasional reaching below waist and overhead and occasional use of lower extremities for foot controls. Dr. Goins noted the employee reported a positive Covid-19 test at her 2/7/22 visit and the date of the test was unknown; however, restrictions of no work for 10 days would be supported from the date of the positive result. Please see report for details.

On 4/1/22 the employee was seen by Jennie Buchkovich PA-C {cardiology} for follow up. Exam revealed normal vital signs including blood pressure of 138/80, a weight of 297lbs, and no physical abnormalities. PA-C Buchkovich increased her Hydralazine blood pressure medication, and recommended she continue aspirin, metoprolol, atorvastatin, and benazepril {medications for blood pressure, cholesterol, and heart health}. Weight loss was discussed, and the employee denied chest pain or shortness of breath and she was noted to continue to work and be successful with weight loss.

On 6/22/22 the employee was seen by Dr. Prucha for reports of ear fullness, post-nasal drip, and ear pain, right worse than left. She reported she had qualified for social security disability and was feeling better from a depression standpoint. Her ear issues had begun 1-4 weeks prior, and she denied fever and reported very mild discomfort. Blood pressure was stable at 136/77, weight loss and exercise were discussed, and current medications were refilled. Follow up in 6 months was recommended for anxiety and depression follow up.

Appeal letter from the employee's attorney representation dated 9/2/22 was reviewed and noted the employee was suffering from generalized anxiety disorder, major depressive disorder, PTSD, coronary artery disease, hypertension, and had a history of coronary bypass surgery which prevented her from performing her own occupation.

The employee ceased work on 12/24/20 due to mental health concerns, work related stress, anxiety, and panic attacks. As previously noted, this NDC has been asked to comment on physical conditions only from 12/24/20 forward. The employee is noted to have chronic physical conditions that include morbid obesity, hypertension, high cholesterol, sleep apnea, coronary artery disease status past CABG in 2018, hypothyroidism, and pre-diabetes. She routinely treats with primary care and cardiology for medication management and maintenance of these chronic conditions and medical records on file from 12/24/20 through present day, do not reveal evidence of signficiant exacerbations in any co-morbid conditions or poor control of any conditions with associated symptoms. The employee continually denies any shortness of breath, chest pain, palpitations, or headaches and although one elevated blood pressure was noted on 6/18/21 at her cardiology office visit, there is no evidence of associated side effects and no

evidence of recurrence of significantly elevated blood pressures. Medications were adjusted as needed and no other care escalations have occurred due to poorly controlled symptoms related to blood pressure, cardiac disease, or any other co-morbid conditions. Restrictions were endorsed from 6/22/21-5/15/22 by Dr. Goins in a review completed on 3/1/22. Updated medical records have been received and due to the complexity of the employee's chronic heart disease, morbid obesity and co-morbid conditions, further review with the medical evidence on file is recommended with a physician dual boarded in Internal medicine and cardiology, for comment on physical restrictions/limitations from 12/24/20 through present day and beyond. Peer to peer contact with Dr. Prucha and Dr. Solomon may be beneficial if determined to be appropriate during the review. Discussed with claims resolution specialist, assignment complete.

Courtney D. RN, CCM

Nurse Disability Appeals Consultant II, Lincoln Financial Group

**From:**Sullivan, Tammy
**Sent:**Mon, 12 Sep 2022 19:39:47 +0000
**To:**ClaimsHOAdmin
**Subject:**FW: Urgent: Send Medicals to Peer Review Claim 12227902

Good Afternoon,

Please provide the following for claim 12227902:

- All documents and letters in the Doc List and Correspondence Link **excluding outgoing correspondence and invoices**.

Please deliver the information to referrals@mls-ime.com

Thank you,

**Tammy Sullivan**
**Claim Resolution Specialist**
**Lincoln Financial Group**
LincolnFinancial.com

888-427-7611 Ext. 69903
Office

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

---

**From:** Clinical Referral and Triage <Shelley.Plaisted@lfg.com>
**Sent:** Monday, September 12, 2022 1:43 PM
**To:** Sullivan, Tammy <Tammy.Sullivan@lfg.com>
**Subject:** Urgent: Send Medicals to Peer Review Claim 12227902

Your referral for claim number 12227902 has been sent to an external vendor as no ICP is available to handle it

- Sent to Vendor: MLS National Medical Evaluation (MLS)
- Email records to: referrals@mls-ime.com

**Clinical Review Memo**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| SIEMENS CORPORATION | KIM NAUGLE | 12227902 |

| | | | |
|---|---|---|---|
| **Report Date:** | | | |
| **Referred By:** | Tammy Sullivan | **Claimant DOB:** | |
| **Referral Date:** | 09/09/2022 | **Job Title:** | Z0024V6X - PROJECT COORDINATOR |
| **Due Date:** | 09/23/2022 | **Medical/ Surgical Condition:** | depression, anxiety, PTSD |
| **Referral Type:** | Appeal Referral | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | LTD |
| **Other Considerations** | TCMS Special Circumstance | **LDW:** | 12/23/2020 |
| | | **DOD:** | 12/24/2020 |
| **Physical Demands:** | | **BBD:** | 06/24/2021 |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

## Referral Questions

1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.

2. If applicable please identify clinical significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 12/24/2020 to present, and comment on the expected duration.

4. Do the medical records reviewed support the R&Ls, if any, that were recommended by treating providers for the time frames in question? (If “No,” please discuss differences in the comment section below).

5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition? (If “No” please explain in the comment section below).

6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?

7. If AP contact may clarify any significant area such as diagnosis, restrictions and limitations, treatment opportunities, prognosis, or reason for work absence, currently available information for AP contact is as follows:

**Name: Eric Kelly, LCSW Phone Number: 1 (919) 210 2070 ex -----**

Date of call ______, Time ______
Date of call ______, Time ______
Date letter sent to AP

**Name: Dr. Ronald Prucha Phone Number: 1 (919) 235 6575 ex ----- Fax Number: 919-235-6598**

Date of call ______, Time ______
Date of call ______, Time ______

Date letter sent to AP

**Additional Questions**

Other Please note Eric Kelly does not have a fax number. His email is ericjkellylcsw@gmail.com

**Other Comments**
Other Comments - None

**Analysis of Medical Documentation and Support for Responses to Referral Questions:**

**All medical records provided by Lincoln Financial Group as of today's date were reviewed, including the most recent record in the file which is:**

**Electronically Signed:**

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

| | |
|---|---|
| Date: | September 9, 2022 |
| To: | CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | |
| Fax: | (877) 293-8687 |
| From: | Tammy Sullivan<br>Claim Resolution Specialist<br>Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 334-0401 |
| Total Pages<br>(Including Cover): | 3 |
| RE:<br><br>Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-0401

September 9, 2022

Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

To Whom It May Concern:

The Lincoln National Life Insurance Company (Lincoln) is responsible for managing claims for Long Term Disability (LTD) benefits under Siemens Corporation's Group Disability Policy. We are writing in reference to Kim Naugle's claim for LTD benefits under the Policy.

On September 2, 2022, we received your correspondence which included Kim Naugle's request for reconsideration. We also received the following information:

- *Patient Details from Eric Kelly, LCSW*
- *Progress notes dated April 1, 2022 from Jennie Baird Buchkovich, PA-C*
- *Letter dated February 7, 2022 from Dr. Ronald Prucha*
- *Progress notes dated February 7, 2022 and June 22, 2022 from Dr. Prucha*
- *Social Security Disability Notice of Award*

We understand this is all of the information you intend to submit for our consideration of Ms. Naugle's LTD appeal. Consequently, her file has been forwarded to Lincoln's Claim Resolution Services Unit for a full, and fair review.

To assist us in evaluating Ms. Naugle's eligibility for benefits we have referred her file for a medical review and assessment by a Board Certified Physician. The Board Certified Physician will contact Ms. Naugle's treating providers, Dr. Ronald Prucha, and Eric Kelly, LCSW to discuss her case as part of the medical review. Please make Kim Naugle's providers aware of this as to prevent delays with the completion of the review. The assessment is necessary to ensure a thorough review of her eligibility for benefits under the terms of the Policy.

In accordance with the Employee Retirement Income Security Act, under normal circumstances, you

will be notified in writing of a final decision within 45 days from the date your request for review was received, excluding any days in which we are waiting for you to submit documentation. We will contact you if there are special circumstances requiring a delay in Lincoln's response, and you will be notified of our decision no later than 90 days after the request for review was received.

If you have any questions regarding this matter, please contact me.

Sincerely,

Tammy Sullivan
Claim Resolution Specialist
Phone No.: (888) 437-7611 Ext. 69903
Secure Fax No.: (603) 334-0401

Lincoln/Naugle 0186

# Lincoln Financial Group Appeal Referral

**Appeal Referral From:** **DOVER**

| | | | | | |
|---|---|---|---|---|---|
| Office: | 096 | Manager: | KRISTY, KENNEDY | Case Mgr: | SHORTER, JOHNNA |

| | | | |
|---|---|---|---|
| Claimant Name: | KIM R NAUGLE | Claim #: | 12227902 |
| Occupation (Job Title): | PROJECT COORDINATOR | Date Sent: | 9/6/2022 |
| Diagnosis: | F41.9 Anxiety disorder, unspecified, F43.1 Post-traumatic stress disorder (PTSD) | | |
| Date of Disability: | 12/24/2020 | Date Benefits Began: | 6/24/2021 |
| Maximum Duration: | 6/23/2023 | Paid Through: | 1/1/1900 |
| Date of Denial or (DB451): | 3/8/2022 | Date Appeal Received: | 9/2/2022 |

**This is the date that the full appeal was received by the Field Claim Office*

| | | | |
|---|---|---|---|
| Policyholder/Self-Insured Plan Holder: | SIEMENS CORPORATION | | |
| Product: | LTD | Funding: | CON |
| Is Claimant Eligible for LTD? | Y | | |
| Erisa or Non-Erisa? | ERISA Plan | | |

Document Locations

- [x] Paperless
- [ ] Bilingual - translation complete
- [ ] Paper File
- [ ] Surveillance disk(s)

**Please be sure to send all claim paper files & all surveillance disks to the ARU.*

ER Contacts/CC (if applicable):

PROJECT COORDINATOR

ER Contact Addresses (including email address):

Phone No. FAX No.

Account Specific or Unique Contract Issues / Additional Info:

refer to aru

**From:** DisabilityDocuments
**Sent:** Friday, September 2, 2022 6:16 PM
**To:** SA-EMLRIP114-P
**Subject:** FW: Kim Naugle - 12227902

---

**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Friday, September 2, 2022 10:13:17 PM (UTC+00:00) Monrovia, Reykjavik
**To:** DisabilityDocuments <DisabilityDocuments@lfg.com>
**Cc:** Peter H. Burke <PHBurke@crumleyroberts.com>
**Subject:** Kim Naugle - 12227902

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

See attached regarding the appeal for Kim Naugle.

Please confirm receipt. Thanks.

**Monica L. Reynolds**

**Senior Litigation Case Manager, Long Term Disability**

https://www.crumleyroberts.com/

Crumley Roberts, LLP

3535 Grandview Parkway

Suite 100

Birmingham, AL 35243

Phone: 336-333-9899

Direct Dial No.: 205-747-1915

Fax: 877-293-8687

E-mail: mlreynolds@crumleyroberts.com

Website: http://www.CrumleyRoberts.com

*"Privileged and Confidential - This communication may contain confidential or legally privileged information and is intended only for the use of the individual or entity to whom it is addressed. Any dissemination, distribution, printing or copying of this material by anyone other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately."*

Please consider the environment before printing this email.

**[Error : unloaded OLE object or mail attachment]**

Crumley Roberts
Attorneys At Law
WE STAND UP FOR YOU®

**MAILING ADDRESS:**
2400 Freeman Mill Road
Suite 200
Greensboro, NC 27406
336-333-9899
336-333-9894 - fax

**1-800-288-1-LAW**
(1-800-288-1529)

**www.CrumleyRoberts.com**

September 2, 2022

**SENT VIA EMAIL: disabilitydocuments@lfg.com**

The Lincoln National Life Insurance Co.
ATTN: Appeal Review Unit
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688

RE: KIM NAUGLE
CLAIM NO.: 12227902
SIEMENS CORPORATION

To Whom It May Concern:

I hope this finds you well. Please consider this notice of our appeal of the denial of long term disability benefits to Kim Naugle.

By letter dated March 9, 2022, Lincoln informed Ms. Naugle of its decision to deny benefits. The decision to deny benefits to the claimant and basis given is in contrast to the medical evidence already contained in the claim file, the decision of the Social Security Administration, as well as the additional evidence provided as part of this appeal.

Enclosed for review on this appeal are the following:

1. January 12, 2022 through March 5, 2022 Medical Records from Avance Care;
2. April 1, 2022 Medical Record from WakeMed Heart & Vascular;
3. February7, 2022 through June 22, 2022 Medical Records from Dr. Ronald Prucha; and
4. May 23, 2022 Notice of Award for Social Security Disability Benefits.

The following documents have been requested and will be provided promptly upon receipt:

1. Kim Naugle's Social Security Disability Claim File.

The insurance contract at issue is subject to the ERISA statute. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefit plans." With the information provided in this appeal, Lincoln should agree that Ms. Naugle is entitled to all benefits owed under her policy.

**Lincoln's Determination that Ms. Naugle Does Not Meet the Definition of Disability is Erroneous and Unreasonable.**

Lincoln's March 9, 2022 letter wrongfully denies Ms. Naugle's benefits. Lincoln's assertion that Ms. Naugle, a woman fifty-nine years of age suffering from generalized anxiety disorder, major depressive disorder, posttraumatic stress disorder (PTSD), coronary artery disease, hypertension, and history of coronary bypass surgery can perform the material duties of her own occupation is unreasonable. Due to her ongoing health complications Ms. Naugle is disabled and unable to perform the material duties of her own occupation.

The long term disability policy at issue defines disability as:

> "Disability" or "Disabled" means:
> 1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:
>    i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>    ii. thereafter, the Covered Person is unable to perform with reasonable continuity the Material and Substantial Duties of Any Occupation.

Prior to becoming disabled, Ms. Naugle was employed as a Project Coordinator. This occupation is Light in nature, requiring occasional walking, standing, reaching, fingering, and keyboarding and frequent sitting, handling, talking, hearing, and near-acuity.

To be gainfully employed in any reasonable occupation, including Ms. Naugle's occupation of Project Coordinator, an employee is required to meet both the physical and non-exertional requirements of at least sedentary work. Federal Code 20 C.F.R § 404.1567 defines the physical exertion requirements of sedentary work as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

In addition to the physical requirements necessary to perform an occupation, an insured's non-exertional requirements of an occupation must also be considered. For instance, medical conditions can distract an employee causing them to be "off task" and not as productive as other employees. Federal Courts have held that a person experiencing 10-15% of time off task would not be able to sustain substantial gainful employment. See Mills v. Colvin, 959 F. Supp. 2d 1079, 1084 (2013) stating that "the general tolerance of off-task time is around 10-12% and an individual who needed a ten-minute break every hour would exceed that tolerance." See also Lewis v. Colvin, 973 F. Supp. 2d 985, 992 (2013) stating that "being off task 10-12% of the time [is] the upper limit of what employers will typically tolerate."

Another consideration of non-exertional requirements is an employee's ability to regularly attend work. Frequent absenteeism caused by medical appointments or conditions would preclude employment in any reasonable occupation. A majority of the Federal Courts have found that employers will not tolerate absenteeism averaging two or more days per month.

See Conner v. Shalala, 900 F. Supp. 994, 1003-4 (1995) stating that "in unskilled work the tolerance level would not exceed two absences per month." See also Dennis v. Astrue, 655 F. Supp. 2d 746, 753 (2009) stating that "employers typically will tolerate no more than two absences per month." Spillers v. Colvin, 24 F. Supp. 3d 818, 823 (2014) stated that "if an individual were unable to attend work on a regular basis, missing work two days per month, then full time competitive work was precluded." While Federal Courts have consistently found that an employee may miss up to two absences per month, the absenteeism national average, which includes the employee's peers and coworkers, is significantly less. In 2018, the Bureau of Labor Statistics document that absence in full-time employment averaged 2.9 days per year, substantially less than two days per month or twenty-four days per year. As the Federal Courts and labor market reflects, to perform the main duties of an occupation an employee must consistently attend work and be absent no more than two days per month, and to be competitive, must limit their absences to less than three days per year.

If an insured is unable to perform the minimal sedentary physical exertional requirements, or is unable to stay on task, or is unable to consistently attend work, the insured is incapable of performing the main duties of an occupation and thus would meet the disability under the policy. In other words, and when considering the opinions of the Federal Courts, for the claimant to be employable and not disabled under the policy, she must be able to meet the sedentary physical exertional requirements, stay on task at least 85% of the work day, and have no more than two absences per month. If the claimant fails to meet any of these criteria, she must be found disabled under the policy.

By letter dated March 9, 2022, Lincoln denied Ms. Naugle's long term disability benefits. In coming to this decision, Lincoln utilized the reviews of two consulting physicians, Dr. Wendell Goins and Dr. Stephen Gilman. Dr. Goins, after speaking with the claimant's therapist, acknowledged the presence of an impairing diagnosis from June 22, 2021. However, the restrictions and limitations Dr. Goins subsequently endorsed were far too optimistic and reflected a level of functional capacity Ms. Naugle is not capable of maintaining. Dr. Gilman, meanwhile, contradicted Dr. Goins' review by asserting that no impairing diagnosis was supported at all. Both of these paid reviewers failed to give adequate consideration to the full extent of Ms. Naugle's symptoms as well as their subsequent effects on many aspects of Ms. Naugle's work productivity and persistence.

Dr. Gilman, in particular, claimed that no impairments were supported due to a lack of noted cognitive decline, psychosis, delusion, suicidal ideation, or requirement for higher levels of care. None of these factors, however, are adequate standards of disability. One does not have to be actively suicidal, for example, to experience severe and distressing mental health symptoms which would distract from work. A referral to a heightened level of care, too, is not a persuasive indication of disability when a patient is receiving regular treatment in an environment optimized to meet their needs. In Ms. Naugle's case, she receives therapy and psychiatric medication management while out of work and relatively stress-free. The environmental factors which would prompt a swift decline, and thus a need for higher care, are not present. Undoubtedly a return to Ms. Naugle's own occupation, however, would reintroduce such factors, much to her detriment. Again, one does not have to be on the verge of psychiatric hospitalization to

experience distressing and distracting mental health symptoms which would interfere with the pursuit of job duties.

It must be noted that, in mere weeks following Dr. Goins' assessment of minimal restrictions and Dr. Gilman's of none at all, the Social Security Administration finished its review of Ms. Naugle's Social Security Disability claim and determined her to be totally disabled from any occupation. On May 23, 2022, the Social Security Administration ruled that Ms. Naugle became disabled on December 24, 2020, remained disabled, and would continue to be disabled and unable to perform any work activity. This is a far cry from the opinions rendered by Lincoln's paid reviewers. When considering the scope of the Social Security Administration's review, as well as Lincoln's inadequate insight into Ms. Naugle's non-exertional impairments, it seems clear that the Social Security Disability ruling is the correct one.

**Lincoln Failed to Adequately Consider All of Ms. Naugle's Non-Exertional Limitations.**

While Lincoln's March 9, 2022 denial letter addresses Ms. Naugle's anxiety, depression, and PTSD, it fails to adequately assess the full extent of her non-exertional limitations. Federal Courts have held that both the physical exertional and non-exertional limitations must be considered in determining whether an insured meets the definition of disability. See Rabuck v. Hartford Life and Accident Ins. Co., 522F. Supp. 2d 844 (2007).

Lincoln's March 9, 2022 letter largely focuses on her ability to accomplish the physical aspects of her Light duty occupation. Namely, her ability to walk, stand, reach, finger, keyboard, sit, handle, stoop, kneel, crouch, crawl, and use the lower extremities were noted in this letter. While Dr. Goins does note Ms. Naugle's struggles with mental health, and Dr. Gilman examines Ms. Naugle's mental health conditions and treatment, there is no assessment for key non-exertional impairments that would be experienced secondary to her symptoms. For example, Ms. Naugle's concentration, persistence, and pace would be severely hindered by her anxiety, depression, and panic attacks. These conditions and symptoms would foster a lack of focus, and thus a slow and frequently interrupted production pace. Frequent absences, too, would result from Ms. Naugle's significant mental health symptoms in addition to her physical health complications. Yet none of these factors are mentioned in Lincoln's denial letter. This is a significant oversight, especially given the Social Security Administration's subsequent decision that Ms. Naugle was incapable of perform not only her own occupation, but any occupation as a result of her physical and non-exertional impairments.

Lincoln failed to adequately consider the full extent of Ms. Naugle's non-exertional limitations. Ms. Naugle's concentration, persistence, and pace is so severely limited by anxiety, depression, and PTSD that she is unable to stay on task for a sufficient amount of the workday. The physical and mental exertion as well as the inability to rest as needed would exacerbate Ms. Naugle's condition. Undoubtedly, a return to work in any capacity would increase Ms. Naugle's symptoms, leading her to require additional rest, medication, and treatment, which in turn would lead to a further decrease in ability to maintain an acceptable absentee rate. Lincoln must adequately consider both the exertional and non-exertional limitations of all Ms. Naugle's conditions and it failed to do so in the previous review.

**Lincoln Failed to Justify Taking a Position Differently from the SSA on the Question of Disability.**

Following Lincoln's denial of Ms. Naugle's disability benefits of March 9, 2022, the Social Security Administration found Ms. Naugle disabled and granted her Social Security Disability benefits on May 23, 2022. This favorable decision, rendered less than three months after Lincoln's denial and acknowledging disability as of December 24, 2020, completely contradicts Lincoln's assertions that Ms. Naugle is capable of returning to her own occupation. Lincoln's denial does not accurately reflect the criteria under which the Social Security Administration found her disabled, nor does it acknowledge the chronic nature of her impairments.

When considering whether a claimant is disabled under sections 216(i) and 223(d) of the Social Security Act, the agency must determine whether the claimant has the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go to the next step.

At step one, the agency must determine whether the claimant is engaged in substantial gainful work activity (20 CFR 404.1520(b)). If an individual engages in substantial gainful activity, he or she is not disabled regardless of how severe his or her physical or mental impairments are and regardless of his or her age, education, or work experience. If the individual is not engaged in SGA, the analysis proceeds to the second step.

At step two, the agency must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe medically determinable impairment or combinations of impairments, he or she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the next step.

At step three, the agency must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart A, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirements (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four, the agency must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.

Next, the agency must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work (20 CFR 404-1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last fifteen (15) years or fifteen (15) years prior to the date that disability must be established. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the agency must determine whether the claimant is able to do any work considering his or her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he or she is not disabled. If the claimant is not able to do other work and meets the duration requirement, he or she is disabled.

The Social Security Administration's definition of disability is more stringent than the definition of disability in this policy. Allowing a denial to stand at this appeal stage will not properly address the favorable determination made by the Social Security Administration.

**Ms. Naugle's Ongoing Medical Treatment Further Supports a Finding of Disability.**

Heretofore, the information examined in this appeal was in Lincoln's possession prior to its denial of disability benefits. Additionally, Ms. Naugle has continued to seek medical treatment for her conditions which provides further evidence of her inability to perform her own occupation.

To address her diagnosed generalized anxiety disorder, PTSD, and major depressive disorder, Ms. Naugle maintained regular therapy appointments with Eric Kelly, MSW, LCSW. She attended multiple therapy sessions between January and March 2022.

In a statement dated February 7, 2022, Dr. Ronald Prucha noted Ms. Naugle's history of depression, anxiety, and PTSD resulting in her eventually leaving her job. Dr. Prucha noted that "she continues to struggle daily with depression, anxiety, PTSD and stress and has been under the care of multiple physicians and therapists." Ms. Naugle also followed up with her cardiologist on April 1, 2022 for management of her coronary artery disease with angina pectoris and hypertension. She was prescribed Benazepril, Hydrochlorothiazide, and an increased dosage of Hydralazine, and her further medications were reviewed and reconciled. When she again presented for a primary care appointment with Dr. Prucha on June 22, 2022, she reported taking more Clonazepam recently due to increasing anxiety. She endorsed symptoms of depressed mood, excessive worry, irritability, nervous and anxious behavior, panic, and restlessness. Diagnoses of current severe episode of major depressive disorder, anxiety, high cholesterol,

prediabetes, status post coronary artery bypass grafting, and hypertension were rendered and Ms. Naugle's medications were adjusted.

The claim file and additional documentation provided with this appeal clearly show that Ms. Naugle still suffers from significant medical ailments, but more importantly, the limitations imposed by these disabilities prevent her from working at even a sedentary level. Lincoln's decision is against the treatment records. There is no medical documentation that supports Lincoln's contention that Ms. Naugle could perform her own occupation, and in its best light, Lincoln's decision to deny her benefits is erroneous, arbitrary, and capricious.

**Lincoln Should Reverse its Decision and Approve Ms. Naugle's Long Term Disability Benefits.**

Lincoln has in its possession medical records and the Social Security Administration's decision that support Ms. Naugle's inability to work in her own occupation. It is unclear why Lincoln has chosen to disregard the medical evidence to reach a decision that she is not disabled. Ms. Naugle's medical records do not reflect functional capacity. To the contrary, Ms. Naugle's symptoms remain severe and disabling. Lincoln's decision to deny Ms. Naugle's benefits as her health problems remain severe is arbitrary, capricious, and unreasonable.

When comparing the requirements of Ms. Naugle's occupation, and considering the evidence from Ms. Naugle's treating providers and the Social Security Administration, it is clear that she is unable to meet the exertional and non-exertional requirements of her own occupation. Ms. Naugle's generalized anxiety disorder, major depressive disorder, PTSD, coronary artery disease, hypertension, and history of coronary bypass surgery prevent her from consistently performing the material duties of her own occupation. Lincoln's denial of Ms. Naugle's claim clearly goes against the provided evidence. Proper consideration was not given to the combination of her physical and non-exertional impairments. Restrictions and limitations have been indicated which would prevent her from performing her own occupation, and the Social Security Administration has found Ms. Naugle disabled and awarded Social Security Disability benefits. Ms. Naugle's medical state remains severe since becoming disabled. Ms. Naugle's appeal should reverse the initial denial, and benefits should be approved.

Sincerely,
Crumley Roberts, LLP

Peter H. Burke
Attorney

Enclosure

**Important: Please note only data that has clinical mapping will be shared/transmitted.**

The following sections represent the most current data on record and are not specific to the date of the Visit: Demographics, Social History, Problems, Allergies, Immunizations, Health Concerns, and Medical Equipment (UDI).

## Patient Details

| Patient name | Contact info | Patient IDs | Sex |
|---|---|---|---|
| Kim Naugle | | 275659<br>275659 | Female |
| | tel: | | |

| LANGUAGE | RACE | ETHNICITY |
|---|---|---|
| English | White | Hispanic or Latino |

| | |
|---|---|
| **Care Giver** | Eric Kelly |
| **Contact Info** | 815 Oberlin Rd<br>Raleigh, NC 27605-1130<br>Tel: 919-237-1337 |

Information recipient:

# PROBLEMS

| Type | Condition | ICD9-CM Code | ICD10-CM Code | Onset Dates | Condition Status | W/U Status | Risk | SNOMED Code |
|---|---|---|---|---|---|---|---|---|
| Problem | Post-traumatic stress disorder, unspecified | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Generalized anxiety disorder | | F41.1 | | Active | confirmed | | 21897009 |
| Problem | Adjustment reaction with anxiety and depression | | F43.23 | | Active | confirmed | | 55668003 |
| Problem | Post traumatic stress disorder (PTSD) | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Severe episode of recurrent major depressive disorder, without psychotic features | | F33.2 | | Active | confirmed | | 36474008 |

# ALLERGIES

| Allergen (clinical drug ingredient) | Drug/Non Drug Allergy documented on EMR | Reaction | Allergy Type | Onset Date | Status |
|---|---|---|---|---|---|
| | CEPHLASPORINS | Unknown | Non Drug | | Active |

Allergy

## ENCOUNTERS from to 2022-02-10

| Encounter | Location | Date | Provider | Diagnosis |
|---|---|---|---|---|
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 12 Jan, 2022 | Eric Kelly | Generalized anxiety disorder F41.1 |

## IMMUNIZATIONS

No Information

## SOCIAL HISTORY

Sex Assigned At Birth:

| Social History Observation | Description |
|---|---|
| Sex Assigned At Birth | Unknown |

## REASON FOR REFERRAL

No Information

## VITAL SIGNS

No information

## MEDICATIONS

No Information

## PROCEDURES

No Information

## RESULTS

No Results

## REASON FOR VISIT

No Information

## Goals Section

No Information

## Health Concerns

No Information

## MEDICAL EQUIPMENT

No Information

## MENTAL STATUS

No Information

## FUNCTIONAL STATUS

No Information

## ASSESSMENTS

| Encounter Date | Diagnosis | Treatment Notes |
|---|---|---|
| 12 Jan, 2022 | Generalized anxiety disorder (ICD-10 - F41.1) | |

## PLAN OF TREATMENT

Treatment Notes

| Assessment | Notes |
|---|---|
| Generalized anxiety disorder | |

Next Appt

| Details |
|---|
| 2 Weeks Reason: |
| Provider Name:Eric J Kelly, 2022-02-11 12:00:00 AM, 815 Oberlin Rd, Raleigh, NC, 27605-1130, 919-237-1337 |

## Insurance Providers

| Payer Name | Payer Address | Payer Phone | Insured Name | Patient Relationship to Insured | Coverage Start Date | Coverage End Date | Subscriber Number | Group Number |
|---|---|---|---|---|---|---|---|---|
| United Healthcare | PO BOX 5220 KINGSTON NY 12402-5032 | 844-368-7151 | Naugle, Kim | self | 01/01/2022 | | 122653234 | NCONEX |

## Care team

**Guarantor** Kim Naugle

**Contact**

| | |
|---|---|
| **info** | Tel: |
| **Emergency contact** | ronald naugle |
| **Contact info** | US |

***©Powered by eClinicalWorks***

**Important: Please note only data that has clinical mapping will be shared/transmitted.**

The following sections represent the most current data on record and are not specific to the date of the Visit: Demographics, Social History, Problems, Allergies, Immunizations, Health Concerns, and Medical Equipment (UDI).

# Patient Details

| Patient name | Contact info | Patient IDs | Sex |
|---|---|---|---|
| Kim Naugle | , US | 275659<br>275659 | Female |

tel:

| LANGUAGE | RACE | ETHNICITY |
|---|---|---|
| English | White | Hispanic or Latino |

| | |
|---|---|
| **Care Giver** | Eric Kelly |
| **Contact Info** | 815 Oberlin Rd<br>Raleigh, NC 27605-1130<br>Tel: 919-237-1337 |

Information recipient:

# PROBLEMS

| Type | Condition | ICD9-CM Code | ICD10-CM Code | Onset Dates | Condition Status | W/U Status | Risk | SNOMED Code |
|---|---|---|---|---|---|---|---|---|
| Problem | Post-traumatic stress disorder, unspecified | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Generalized anxiety disorder | | F41.1 | | Active | confirmed | | 21897009 |
| Problem | Adjustment reaction with anxiety and depression | | F43.23 | | Active | confirmed | | 55668003 |
| Problem | Post traumatic stress disorder (PTSD) | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Severe episode of recurrent major depressive disorder, without psychotic features | | F33.2 | | Active | confirmed | | 36474008 |

# ALLERGIES

| Allergen (clinical drug ingredient) | Drug/Non Drug Allergy documented on EMR | Reaction | Allergy Type | Onset Date | Status |
|---|---|---|---|---|---|
| | CEPHLASPORINS | Unknown | Non Drug Allergy | | Active |

# ENCOUNTERS from to 2022-02-10

| Encounter | Location | Date | Provider | Diagnosis |
|---|---|---|---|---|
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 05 Feb, 2022 | Eric Kelly | Generalized anxiety disorder F41.1 |

# IMMUNIZATIONS

No Information

# SOCIAL HISTORY

Sex Assigned At Birth:

| Social History Observation | Description |
|---|---|
| Sex Assigned At Birth | Unknown |

# REASON FOR REFERRAL

No Information

# VITAL SIGNS

No information

# MEDICATIONS

No Information

# PROCEDURES

No Information

# RESULTS

No Results

# REASON FOR VISIT

No Information

# Goals Section

No Information

# Health Concerns

No Information

# MEDICAL EQUIPMENT

No Information

# MENTAL STATUS

No Information

# FUNCTIONAL STATUS

No Information

# ASSESSMENTS

| Encounter Date | Diagnosis | Treatment Notes |
|---|---|---|
| 05 Feb, 2022 | Generalized anxiety disorder (ICD-10 - F41.1) | |

# PLAN OF TREATMENT

Treatment Notes

| Assessment | Notes |
|---|---|
| Generalized anxiety disorder | |

Next Appt

Details

1 Week Reason:

Provider Name:Eric J Kelly, 2022-02-11 12:00:00 AM, 815 Oberlin Rd, Raleigh, NC, 27605-1130, 919-237-1337

# Insurance Providers

| Payer Name | Payer Address | Payer Phone | Insured Name | Patient Relationship to Insured | Coverage Start Date | Coverage End Date | Subscriber Number | Group Number |
|---|---|---|---|---|---|---|---|---|
| United Healthcare | PO BOX 5220 KINGSTON NY 12402-5032 | 844-368-7151 | Naugle,Kim | self | 01/01/2022 | | 122653234 | NCONEX |

# Care team

| | |
|---|---|
| **Guarantor** | Kim Naugle |
| **Contact info** | Tel: |
| **Emergency contact** | ronald naugle |
| **Contact info** | |

Tel:

©Powered by eClinicalWorks

**Important: Please note only data that has clinical mapping will be shared/transmitted.**

The following sections represent the most current data on record and are not specific to the date of the Visit: Demographics, Social History, Problems, Allergies, Immunizations, Health Concerns, and Medical Equipment (UDI).

## Patient Details

| Patient name | Contact info | Patient IDs | Sex |
|---|---|---|---|
| Kim Naugle | | 275659<br>275659 | Female |
| | tel: | | |

| LANGUAGE | RACE | ETHNICITY |
|---|---|---|
| English | White | Hispanic or Latino |

| | |
|---|---|
| **Care Giver** | Eric Kelly |
| **Contact Info** | 815 Oberlin Rd<br>Raleigh, NC 27605-1130<br>Tel: 919-237-1337 |

Information recipient:

# PROBLEMS

| Type | Condition | ICD9-CM Code | ICD10-CM Code | Onset Dates | Condition Status | W/U Status | Risk | SNOMED Code |
|---|---|---|---|---|---|---|---|---|
| Problem | Post-traumatic stress disorder, unspecified | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Generalized anxiety disorder | | F41.1 | | Active | confirmed | | 21897009 |
| Problem | Adjustment reaction with anxiety and depression | | F43.23 | | Active | confirmed | | 55668003 |
| Problem | Post traumatic stress disorder (PTSD) | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Severe episode of recurrent major depressive disorder, without psychotic features | | F33.2 | | Active | confirmed | | 36474008 |

# ALLERGIES

| Allergen (clinical drug ingredient) | Drug/Non Drug Allergy documented on EMR | Reaction | Allergy Type | Onset Date | Status |
|---|---|---|---|---|---|
| | CEPHLASPORINS | Unknown | Non Drug | | Active |

Allergy

## ENCOUNTERS from to 2022-05-24

| Encounter | Location | Date | Provider | Diagnosis |
|---|---|---|---|---|
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 11 Feb, 2022 | Eric Kelly | Generalized anxiety disorder F41.1 |

## IMMUNIZATIONS

No Information

## SOCIAL HISTORY

Sex Assigned At Birth:

| Social History Observation | Description |
|---|---|
| Sex Assigned At Birth | Unknown |

## REASON FOR REFERRAL

No Information

## VITAL SIGNS

No information

## MEDICATIONS

No Information

## PROCEDURES

No Information

## RESULTS

No Results

## REASON FOR VISIT

No Information

## Goals Section

No Information

## Health Concerns

No Information

## MEDICAL EQUIPMENT

No Information

## MENTAL STATUS

No Information

## FUNCTIONAL STATUS

No Information

## ASSESSMENTS

| Encounter Date | Diagnosis | Treatment Notes |
|---|---|---|
| 11 Feb, 2022 | Generalized anxiety disorder (ICD-10 - F41.1) | |

## PLAN OF TREATMENT

Treatment Notes

| Assessment | Notes |
|---|---|
| Generalized anxiety disorder | |

Next Appt

| Details |
|---|
| 3 Weeks Reason: |

## Insurance Providers

| Payer Name | Payer Address | Payer Phone | Insured Name | Patient Relationship to Insured | Coverage Start Date | Coverage End Date | Subscriber Number | Group Number |
|---|---|---|---|---|---|---|---|---|
| United Healthcare | PO BOX 5220 KINGSTON NY 12402-5032 | 844-368-7151 | Naugle, Kim | self | 01/01/2022 | | 122653234 | NCONEX |

## Care team

| | |
|---|---|
| **Guarantor** | Kim Naugle |
| **Contact info** | Tel: |

| | | |
|---|---|---|
| **Emergency contact** | ronald naugle | |
| **Contact info** | Tel: | US |

***©Powered by eClinicalWorks***

**Important: Please note only data that has clinical mapping will be shared/transmitted.**

The following sections represent the most current data on record and are not specific to the date of the Visit: Demographics, Social History, Problems, Allergies, Immunizations, Health Concerns, and Medical Equipment (UDI).

# Patient Details

| Patient name | Contact info | Patient IDs | Sex |
|---|---|---|---|
| Kim Naugle | , US | 275659<br>275659 | Female |

tel:

| LANGUAGE | RACE | ETHNICITY |
|---|---|---|
| English | White | Hispanic or Latino |

| | |
|---|---|
| **Care Giver** | Eric Kelly |
| **Contact Info** | 815 Oberlin Rd<br>Raleigh, NC 27605-1130<br>Tel: 919-237-1337 |

Information recipient:

# PROBLEMS

| Type | Condition | ICD9-CM Code | ICD10-CM Code | Onset Dates | Condition Status | W/U Status | Risk | SNOMED Code |
|---|---|---|---|---|---|---|---|---|
| Problem | Post-traumatic stress disorder, unspecified | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Generalized anxiety disorder | | F41.1 | | Active | confirmed | | 21897009 |
| Problem | Adjustment reaction with anxiety and depression | | F43.23 | | Active | confirmed | | 55668003 |
| Problem | Post traumatic stress disorder (PTSD) | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Severe episode of recurrent major depressive disorder, without psychotic features | | F33.2 | | Active | confirmed | | 36474008 |

# ALLERGIES

| Allergen (clinical drug ingredient) | Drug/Non Drug Allergy documented on EMR | Reaction | Allergy Type | Onset Date | Status |
|---|---|---|---|---|---|
| | CEPHLASPORINS | Unknown | Non Drug Allergy | | Active |

# ENCOUNTERS from to 2022-05-24

| Encounter | Location | Date | Provider | Diagnosis |
|---|---|---|---|---|
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 02 Mar, 2022 | Eric Kelly | Generalized anxiety disorder F41.1 |

# IMMUNIZATIONS

No Information

# SOCIAL HISTORY

Sex Assigned At Birth:

| Social History Observation | Description |
|---|---|
| Sex Assigned At Birth | Unknown |

# REASON FOR REFERRAL

No Information

# VITAL SIGNS

No information

# MEDICATIONS

No Information

# PROCEDURES

No Information

# RESULTS

No Results

# REASON FOR VISIT

No Information

# Goals Section

No Information

# Health Concerns

No Information

# MEDICAL EQUIPMENT

No Information

# MENTAL STATUS

No Information

# FUNCTIONAL STATUS

No Information

# ASSESSMENTS

| Encounter Date | Diagnosis | Treatment Notes |
|---|---|---|
| 02 Mar, 2022 | Generalized anxiety disorder (ICD-10 - F41.1) | |

# PLAN OF TREATMENT

Treatment Notes

| Assessment | Notes |
|---|---|
| Generalized anxiety disorder | |

Next Appt

| Details |
|---|
| 4 Weeks Reason: |

# Insurance Providers

| Payer Name | Payer Address | Payer Phone | Insured Name | Patient Relationship to Insured | Coverage Start Date | Coverage End Date | Subscriber Number | Group Number |
|---|---|---|---|---|---|---|---|---|
| United Healthcare | PO BOX 5220 KINGSTON NY 12402-5032 | 844-368-7151 | Naugle,Kim | self | 01/01/2022 | | 122653234 | NCONEX |

# Care team

| | | |
|---|---|---|
| **Guarantor** | Kim Naugle | |
| **Contact info** | Tel: | |
| **Emergency contact** | ronald naugle | |
| **Contact info** | Tel: | US |

WakeMed

WakeMed, 3000 New Bern Avenue, Raleigh, NC 27610, 919-350-8000

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# Appointment Details

## Notes

### Progress Notes

Jennie Baird Buchkovich at 4/1/2022 11:30 AM

**Chief Complaint**

**Chief Complaint**

Patient presents with
- Follow-up

**Problem List Items Addressed This Visit**

**Essential hypertension**

Relevant Medications

benazepriL (LOTENSIN) 40 MG tablet
hydroCHLOROthiazide (HYDRODIURIL) 25 MG tablet
hydrALAZINE (APRESOLINE) 25 MG tablet

**Coronary artery disease of native artery of native heart with stable angina pectoris (CMS/HCC) - Primary**

Relevant Medications

benazepriL (LOTENSIN) 40 MG tablet
hydroCHLOROthiazide (HYDRODIURIL) 25 MG tablet
hydrALAZINE (APRESOLINE) 25 MG tablet

**HPI/ CAD/ S/P CABG**

Kim Naugle is a very pleasant 58-year-old Caucasian female who underwent **CABG 8/7/2018.**

6/2021: I would fully support her taking leave of absence from work if her PCP would recommend this. I am pleased to document that she will be meeting with bariatric surgery in the beginning of January to help with weight loss. I have encouraged her to exercise 30 minutes daily. I have increase her hydralazine to 50mg po tid due to uncontrolled BP currently.

Patient presents today **10/1/21** for follow-up. BP remains elevated in the office (repeat 160/80) patient notes at home BP is ~130/80. No symptoms of chest pain, dyspnea, palpitations. She continues to wear her CPAP. Working on losing weight.

She presents today **10/29/21** for follow-up. She notes BP at home usually 130/70s. Occasionally as high as 150s. She is still working with Bariatric surgery. No weight loss. BP better in the office today.

She presents today **4/1/22** for follow-up. BP at home 130s-140s most days. She recently switched insurance and will require some adjustments in her medication. No chest pain or dyspnea. She continues to work and being successful with weight loss.

Current antihypertensive regimen (4/1/22)
Metoprolol XL 100 mg daily
Hydralazine 75 BID, 50 daily (1 pm)
Benazepril 40 mg daily
HCTZ 25 mg daily

**Cardiac risk factors:**
HTN YES
DM Pre-diabetes
HLD
Smoking 1.5 PPY hx
Family hx of CAD YES
**Coronary artery disease:**
CABG with Dr Kilinger **on 8/7/2018** with a LIMA -LAD and SVG - D2 - had a couple of episodes of PAF post op.
Discharged home POD #4
NMT 10/2019 Normal myocardial perfusion study
**Cardiomyopathy:**
Echo 8/1/2018 EF 55-60%.
**Valvular:**
None
**Arrhythmia:**
Post-op PAF
Patient wore cardiac monitor from **8/22/2018 through 9/4/2018.** Predominant rhythm was normal sinus rhythm. There was no evidence of tachycardia or bradycardia arrhythmias. Symptoms of palpitations/rapid heart rate corresponded with sinus bradycardia and atrial run of 4 beats.
CHADS2-VAsc score = 3.
**Peripheral arterial disease:**
Carotid dopplers **8/1/2018** were essentially normal
**Other:**
Hypothyroidism

**Medical History:**
**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Anxiety | |
| • Arachnoid cyst | |
| • Arthritis | |
| • CAD in native artery | |
| • Cervical cancer screening | 2014 |

*normal per pt*
- Congenital heart disease
  *Congenital heart mumur*
- CTS (carpal tunnel syndrome)
- Depression
- Disease of thyroid gland
- Fibroid
- Gestational diabetes
- Heart murmur
- Herpes
- High cholesterol
  *Borderline*
- History of recurrent miscarriages
- Hx of colonoscopy 2015
  *3 polyps*
- Hx of mammogram 2014
  *normal per pt*
- Hx of pregnancy
- Hypertension
- Meniscus tear
- Post-traumatic stress
- Post-traumatic stress
- Sleep apnea 2009
- STD (sexually transmitted disease)
  *Genital Herpes*
- Torn ACL
- Urinary tract infection
  *In the past*
- Urogenital trichomoniasis
- Varicella

**Surgical History:**
**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • ABDOMINAL SURGERY | | 1998 |
| • CARDIAC CATHETERIZATION | | |
| • CARPAL TUNNEL RELEASE | | 2015 |
| • CESAREAN SECTION | | |
| • COLONOSCOPY | | 2018 |
| • COLPOSCOPY | | |
| • CONDYLOMA EXCISION/FULGURATION | | |
| • CORONARIES LHC WITH OR WITHOUT LV | Left | 8/3/2018 |
| *Procedure: Coronaries LHC with or without LV; Surgeon: Hemant Solomon, MD; Location: WCH INVASIVE CARDIOLOGY; Service: Cardiovascular; Laterality: Left;* | | |
| • CORONARY ARTERY BYPASS GRAFT | | 08/07/2018 |
| *CAB x 2* | | |
| • double open heart by pass | | |
| • FLEXIBLE SIGMOIDOSCOPY | | |
| • laminectomy | | 1989 |
| • LUMBAR DISCECTOMY | | 1989 |
| • TONSILECTOMY, ADENOIDECTOMY, BILATERAL MYRINGOTOMY AND TUBES | | 1968 |
| • TONSILLECTOMY | | 1968 |
| • TUBAL LIGATION | | 2011 |

**Medications:**
**Current Outpatient Medications**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin 81 MG tablet | Take 1 tablet (81 mg total) by mouth daily. | 90 tablet | 3 |
| • atorvastatin (LIPITOR) 40 MG tablet | Take 1 tablet (40 mg total) by mouth nightly. | 90 tablet | 1 |
| • calcium carbonate (CALCIUM 600 ORAL) | Take 600 Units by mouth. | | |
| • cetirizine (ZYRTEC) 10 MG tablet | Take 10 mg by mouth daily. | | |
| • clonazepam (KLONOPIN) 0.5 MG tablet | Take 1 tablet (0.5 mg total) by mouth daily as needed for anxiety. | 30 tablet | 0 |
| • hydrALAZINE (APRESOLINE) 50 MG tablet | Take 1 tablet (50 mg total) by mouth 3 (three) times a day. Take at 8am, 2pm and 10pm daily | 360 tablet | 3 |
| • metformin (GLUCOPHAGE-XR) 500 MG 24 hr tablet | Take 2 tablets (1,000 mg total) by mouth daily with breakfast. | 60 tablet | 2 |
| • metoprolol succinate (TOPROL-XL) 100 MG 24 hr tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • multivitamin capsule | Take 1 capsule by mouth 2 (two) times a day. Bausch and lomb areds2 | | |
| • PARoxetine (PAXIL) 40 MG tablet | Take 1 tablet (40 mg total) by mouth daily. | 30 tablet | 2 |
| • SYNTHROID 137 mcg tablet | TAKE 1 TABLET BY MOUTH 6 DAYS A WEEK AND 2 TABLETS BY MOUTH ONCE A WEEK | | 1 |
| • benazepriL (LOTENSIN) 40 MG tablet | Take 1 tablet (40 mg total) by mouth daily. | 90 tablet | 3 |
| • hydrALAZINE (APRESOLINE) 25 MG tablet | Take 1 tablet (25 mg total) by mouth 2 (two) times a day. | 180 tablet | 3 |
| • hydroCHLOROthiazide (HYDRODIURIL) 25 MG tablet | Take 1 tablet (25 mg total) by mouth daily. | 90 tablet | 3 |

No current facility-administered medications for this visit.

**Allergies:**
**Allergies**

| Allergen | Reactions |
|---|---|
| • Cephalosporins | Rash |

**Social History:**
**Social History**

Tobacco Use

| | |
|---|---|
| • Smoking status: | Former Smoker |
| Packs/day: | 0.50 |
| Years: | 3.00 |
| Pack years: | 1.50 |
| Types: | Cigarettes |
| Quit date: | 1/1/1985 |
| Years since quitting: | 37.2 |
| • Smokeless tobacco: | Never Used |
| • Tobacco comment: | 15 thru 19 |

Substance Use Topics

| | |
|---|---|
| • Alcohol use: | Yes |
| Alcohol/week: | 1.0 standard drink |
| Types: | 1 Glasses of wine per week |

*Comment: once a month (Rarely)*

**Family History:**
**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Colon polyps | Mother | |
| • Cancer *Cervical & Skin* | Mother | |
| • Diabetes | Mother | |
| • Heart attack | Father | |
| • Hypertension | Father | |
| • Heart disease | Father | |
| • Diabetes | Father | |
| • Vision loss *Macular Degeneration* | Father | |
| • Hypertension | Brother | |
| • Cancer *Breast & Bone* | Maternal Grandmother | |
| • Vision loss | Maternal Grandmother | |
| • Anemia | Maternal Grandmother | |
| • Breast cancer | Maternal Grandmother | 40 |
| • Cancer *Throat* | Maternal Grandfather | |
| • Hypertension | Maternal | |

| | |
|---|---|
| | Grandfather |
| • Heart disease | Maternal Grandfather |
| • Diabetes | Maternal Grandfather |
| • Cancer | Paternal Grandmother |
| • Vision loss | Paternal Grandmother |
| *Macular Degeneration* | |
| • Cancer | Paternal Grandfather |
| *Stomach/Stomach cancer* | |
| • Alcohol abuse | Brother |
| *Both Brothers* | |
| • Diabetes | Brother |
| *Both Brothers* | |
| • Heart disease | Brother |
| *Older Brother* | |
| • Hypertension | Brother |
| *Both Brothers* | |
| • Diabetes | Brother |
| • Hypertension | Brother |
| • Diabetes | Brother |
| • Hypertension | Brother |
| *Younger Brother* | |

.

**Review of Systems:**
.Review of Systems
Constitutional: Negative for chills, fever and weight loss.
Respiratory: Negative for cough, shortness of breath and wheezing.
Cardiovascular: Negative for chest pain, palpitations, orthopnea, claudication, leg swelling and PND.
Gastrointestinal: Negative for constipation, diarrhea, nausea and vomiting.
Musculoskeletal: Negative for back pain, joint pain, myalgias and neck pain.
Skin: Negative for itching and rash.
Neurological: Negative for dizziness, weakness and headaches.
Endo/Heme/Allergies: Does not bruise/bleed easily.
Psychiatric/Behavioral: Negative for depression.

Objective

Blood pressure 138/80, pulse 60, temperature 97.4 °F (36.3 °C), temperature source Tympanic, height 1.778 m (5' 10"), weight **(!) 135.1 kg (297 lb 13.5 oz)**, last menstrual period 05/14/2020, SpO2 97 %.

**Physical Exam**
**Physical Exam**
Constitutional:

General: She is not in acute distress.
Appearance: She is well-developed. She is obese.

HENT:
Head: Normocephalic and atraumatic.

Eyes:
Conjunctiva/sclera: Conjunctivae normal.
Pupils: Pupils are equal, round, and reactive to light.

Neck:
Thyroid: No thyromegaly.
Vascular: No carotid bruit or JVD.

Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Pulses: Intact distal pulses.
Heart sounds: No murmur heard.
No friction rub. No gallop.

Pulmonary:
Effort: Pulmonary effort is normal. No respiratory distress.
Breath sounds: Normal breath sounds. No wheezing or rales.

Abdominal:
General: Bowel sounds are normal. There is no distension.
Palpations: Abdomen is soft.
Tenderness: There is no abdominal tenderness. There is no rebound.

Musculoskeletal:
General: No tenderness or deformity. Normal range of motion.
Cervical back: Normal range of motion and neck supple.

Skin:
General: Skin is warm and dry.
Findings: No erythema or rash.

Neurological:
Mental Status: She is alert and oriented to person, place, and time.

**Test Results**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHOL | 135 | 10/29/2021 |
| LDL | 52 | 10/29/2021 |
| HDL | 61 | 10/29/2021 |
| TRIG | 109 | 10/29/2021 |
| NA | 136 | 10/29/2021 |
| K | 4.0 | 10/29/2021 |
| CL | 99 | 10/29/2021 |
| CO2 | 29 | 10/29/2021 |
| BUN | 19 | 10/29/2021 |
| CREAT | 0.81 | 10/29/2021 |
| GFR | >60 | 07/21/2017 |

]

Assessment/Plan

**1. Coronary artery disease of native artery of native heart with stable angina pectoris (CMS/HCC)**
- Continue ASA, Atorvastatin, Metoprolol
- lipids well controlled

**2. Essential hypertension**
- Will increase Hydralazine to 75 BID
- Continue Benazepril 40 mg daily and HCTZ 25 mg daily

Return in about 4 months (around 8/1/2022).
**Patient Instructions**
- Benazepril 40 mg daily
- HCTZ 25 mg in the morning-- continue
- Increase Hydralazine to 75 mg morning and evening. Continue 50 mg mid-day

Suggestions for non-pharmacologic prevention and treatment of hypertension.
1. WEIGHT LOSS. Expect about 1 mmHg reduction in BP with every 1 kg reduction in body weight
2. Dash Diet
3. Reduce Sodium Intake Goal <1500 mg/day
4. Increase intake of dietary potassium (from potassium rich foods as opposed to a supplement).
   Figs, Molasses, Seaweed, Dried dates/prunes, Nuts, Avocado, bran cereal, spinach, broccoli, beets, carrots, bananas, cantaloupe, oranges
5. Increased physical activity 90-150 min/week aerobic exercise, 90-150 min/week dynamic resistant, and isometric resistance.
6. Limit alcohol consumption. Men max of 2 drinks daily, Women max of 1 drink daily

I have seen the patient with the assistance of ancillary staff. However, no physician was involved in the care of Kim Naugle at this time.

**Jennie Baird Buchkovich, PA-C**
**Hemant Solomon, MD, FACC, MRCP (UK), RPVI**
**WakeMed Heart and Vascular - Apex Office**
**120 Healthplex Way Suite 210**
**Apex, NC 27502**
**Phone: (919) 232-0322**

## Patient Instructions

Jennie Baird Buchkovich at 4/1/2022 11:30 AM

- Benazepril 40 mg daily
- HCTZ 25 mg in the morning-- continue

- Increase Hydralazine to 75 mg morning and evening. Continue 50 mg mid-day

Suggestions for non-pharmacologic prevention and treatment of hypertension.

1. WEIGHT LOSS. Expect about 1 mmHg reduction in BP with every 1 kg reduction in body weight
2. Dash Diet
3. Reduce Sodium Intake Goal <1500 mg/day
4. Increase intake of dietary potassium (from potassium rich foods as opposed to a supplement).
   Figs, Molasses, Seaweed, Dried dates/prunes, Nuts, Avocado, bran cereal, spinach, broccoli, beets, carrots, bananas, cantaloupe, oranges
5. Increased physical activity 90-150 min/week aerobic exercise, 90-150 min/week dynamic resistant, and isometric resistance.
6. Limit alcohol consumption. Men max of 2 drinks daily, Women max of 1 drink daily

MyChart® licensed from Epic Systems Corporation © 1999 - 2022

WakeMed, 3000 New Bern Avenue, Raleigh, NC 27610, 919-350-8000

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# Letter Details

WakeMed
Primary Care
110 Kildaire Park Drive
Suite 305
Cary NC 27518-6130
Phone: 919-235-6575
Fax: 919-235-6598

re:
Kim Romero Naugle

02/07/22

To whom it may concern:

I am writing on behalf of my longtime patient Ms. Kim Naugle, who has been through inordinate levels of stress, depression and anxiety exacerbated by many factors to include her previous job, which was stressful and anxiety-provoking and resulted in her having to leave her position to seek therapy, counseling and medication to manage her emotional lability. She continues to struggle daily with depression, anxiety, PTSD and stress and has been under the care of multiple physicians and therapists. She recently underwent an extensive mental health evaluation by her therapist and she presently feels she is making progress on all fronts of her mental health battle through the use of therapy and medications. Her desire is to return to work eventually once she has fully improved from a psychological standpoint and has gotten her anxiety under better control. She continues with psychotherapy presently and is making progress with this and feels that her present issues are more mental rather than physical and that her medications and current therapy program are affording her some improvement in her mental health state and overall, she feels she is doing considerably better.

The majority of her mental and emotional health issues are gradually beginning to resolve for her and she continues to make headway with her PTSD surrounding her panic attacks and her recent heart surgery and cardiac concerns. Her long-term goal is to put all of this behind her and return to being gainfully employed and is hoping to see an end to her emotional struggles of late and get on with her life in her newly improved mental health state. She is quickly approaching a state of work readiness and her short term goal presently is to return to work once she completes her current mental health treatment plan.

Respectfully,



Ronald J. Prucha, Jr., M.D.
PRIMARY CARE-KILDAIRE FARM RD
WAKEMED PRIMARY CARE-KILDAIRE
110 KILDAIRE PARK DRIVE
SUITE 305
CARY NC 27518-6130
Dept: 919-235-6575
Dept Fax: 919-235-6598
Loc: 919-235-6575

*This letter was initially viewed by Kim Romero Naugle at 2/10/2022 2:13 PM.*

MyChart® licensed from Epic Systems Corporation © 1999 - 2022

WakeMed

WakeMed, 3000 New Bern Avenue, Raleigh, NC 27610, 919-350-8000

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# Appointment Details

## Notes

### Progress Notes

Ronald Joseph Prucha at 6/22/2022 10:30 AM

**Subjective:**

Subjective

**Patient ID:** Kim Romero Naugle is a 59 y.o. female.

Is this a CM Visit?: **(!) Yes**

**Chief Complaint:**
Follow-up (Medication ) and Ear Fullness (Right ear)

**History of Present Illness:**
Ms. Naugle presents to the office today for ear fullness and post nasal drip and this is worsening and the right ear is worse than the left ear. She is w/o swelling or drainage from the ear and no significant hearing olooss In the ear., she qualified for SS disability she is feeling better from a depression standpoint and continues to work with a therapist. She is taking more clonazepam of late due to anxiety and family drama\

**Ear Fullness**
There is pain in the right ear. This is a new problem. The current episode started 1 to 4 weeks ago. The problem occurs constantly. The problem has been gradually worsening. There has been no fever. The pain is at a severity of 2/10. The pain is mild. Associated symptoms include rhinorrhea. Pertinent negatives include no abdominal pain or neck pain. She has tried acetaminophen for the symptoms. The treatment provided no relief. There is no history of a chronic ear infection, hearing loss or a tympanostomy tube.

**Anxiety**
Presents for follow-up visit. Symptoms include depressed mood, excessive worry, irritability, nervous/anxious behavior, panic and restlessness. Patient reports no chest pain.

Symptoms occur most days. The most recent episode lasted 1000 days. The severity of symptoms is moderate. The quality of sleep is fair. Nighttime awakenings: occasional.

Compliance with medications is 76-100%.

**Other**

This is a chronic (template for depression) problem. The current episode started more than 1 year ago. The problem occurs constantly. The problem has been gradually improving. Pertinent negatives include no abdominal pain, chest pain or neck pain. The symptoms are aggravated by stress. Treatments tried: paxil. The treatment provided moderate relief.

**Hyperlipidemia**

This is a chronic problem. The current episode started more than 1 year ago. The problem is controlled. Recent lipid tests were reviewed and are normal. Exacerbating diseases include diabetes. She has no history of chronic renal disease. There are no known factors aggravating her hyperlipidemia. Pertinent negatives include no chest pain. Current antihyperlipidemic treatment includes statins. The current treatment provides significant improvement of lipids. There are no compliance problems. Risk factors for coronary artery disease include stress, obesity and dyslipidemia.

**Blood Sugar Problem**

This is a chronic problem. The current episode started more than 1 year ago. The problem occurs constantly. The problem has been unchanged. Pertinent negatives include no abdominal pain, chest pain or neck pain. The symptoms are aggravated by stress. Treatments tried: glucophage. The treatment provided moderate relief.

**Outpatient Medications Prior to Visit**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin 81 MG tablet | Take 1 tablet (81 mg total) by mouth daily. | 90 tablet | 3 |
| • betamethasone dipropionate (DIPROSONE) 0.05 % cream | | | |
| • calcium carbonate (CALCIUM 600 ORAL) | Take 600 Units by mouth. | | |
| • cetirizine (ZYRTEC) 10 MG tablet | Take 10 mg by mouth daily. | | |
| • clonazepam (KLONOPIN) 0.5 MG tablet | TAKE 1 TABLET BY MOUTH DAILY AS NEEDED FOR ANXIETY | 30 tablet | 2 |
| • hydrALAZINE (APRESOLINE) 50 MG tablet | Take 1 tablet (50 mg total) by mouth 3 (three) times a day. Take at 8am, 2pm and 10pm daily | 360 tablet | 3 |
| • multivitamin capsule | Take 1 capsule by mouth 2 (two) times a day. | | |

| | | | |
|---|---|---|---|
| | Bausch and lomb areds2 | | |
| • PARoxetine (PAXIL) 40 MG tablet | Take 1 tablet (40 mg total) by mouth daily. | 30 tablet | 2 |
| • SYNTHROID 137 mcg tablet | TAKE 1 TABLET BY MOUTH 6 DAYS A WEEK AND 2 TABLETS BY MOUTH ONCE A WEEK | | 1 |
| • atorvastatin (LIPITOR) 40 MG tablet | TAKE 1 TABLET BY MOUTH AT NIGHT | 90 tablet | 1 |
| • benazepriL (LOTENSIN) 40 MG tablet | Take 1 tablet (40 mg total) by mouth daily. | 90 tablet | 3 |
| • metformin (GLUCOPHAGE-XR) 500 MG 24 hr tablet | Take 2 tablets (1,000 mg total) by mouth daily with breakfast. | 60 tablet | 2 |
| • metoprolol succinate (TOPROL-XL) 100 MG 24 hr tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • bisacodyl DR (DULCOLAX) 5 mg EC tablet | | | |
| • ciclopirox (PENLAC) 8 % solution | | | |
| • hydrALAZINE (APRESOLINE) 25 MG tablet | Take 1 tablet (25 mg total) by mouth 2 (two) times a day. | 180 tablet | 3 |
| • magnesium citrate solution | | | |
| • hydroCHLOROthiazide (HYDRODIURIL) 25 MG tablet | Take 1 tablet (25 mg total) by mouth daily. | 90 tablet | 3 |

No facility-administered medications prior to visit.

Review of Systems
Constitutional: Positive for irritability.
HENT: Positive for rhinorrhea.
Cardiovascular: Negative for chest pain.
Gastrointestinal: Negative for abdominal pain.
Musculoskeletal: Negative for neck pain.
Psychiatric/Behavioral: The patient is nervous/anxious.

**Objective:**

Objective

BP 136/77 Comment: she is w/ adequate home readings. | Pulse 50 | Temp 98.5 °F (36.9 °C) (Oral) | Resp 15 | Ht 1.795 m (5' 10.67") | Wt (!) 133 kg (293 lb 5.2 oz) | LMP 05/14/2020 (Approximate) Comment: pmp had period 3 wks ago | SpO2 97% | BMI 41.29 kg/m²

Physical Exam

**Assessment:**

Assessment

1. **Current severe episode of major depressive disorder without psychotic features without prior episode (CMS/HCC)**
2. Anxiety
3. Ear fullness, right
4. High cholesterol
5. Prediabetes
6. S/P CABG x 2
7. Essential hypertension
8. Severe episode of recurrent major depressive disorder, without psychotic features (CMS/HCC)
9. Anxiety about health
10. Work stress
11. BMI 40.0-44.9, adult (CMS/HCC)

**Anxiety**
Chronic stable problem
This problem is presently well controlled.
She will continue her clonazepam as prescribed, as she is tolerating this well without side effects.
The side effects of this medication were explained in detail to her and she verbalized understanding of these and will contact me to let me know if any occur.
She verbalized satisfaction and understanding of this treatment plan and she was afforded the opportunity to ask questions regarding this plan today.

**Depression**
Chronic stable problem
This problem is presently well controlled.
She will continue her paxil as prescribed, as she is tolerating this well without side effects.
The side effects of this medication were explained in detail to her and she verbalized understanding of these and will contact me to let me know if any occur.
She verbalized satisfaction and understanding of this treatment plan and she was afforded the opportunity to ask questions regarding this plan today.

**Ear fullness, right**
New problem, uncertain etiology, further work-up planned.
I have asked the patient to be on the alert for new or increasing symptoms such as blood drainage fevers chills and to call directly if such should occur.
Doubt sinister etiology based upon both clinical presentation and physical exam today.
We reviewed the various etiologies of this presentation today, which include: estacean tube dysfunctionj

**High cholesterol**
Chronic stable problem
This problem is presently well controlled.
She will continue her statin as prescribed, as she is tolerating this well without side effects.
The side effects of this medication were explained in detail to her and she verbalized understanding of these and will contact me to let me know if any occur.
She verbalized satisfaction and understanding of this treatment plan and she was afforded the opportunity to ask questions regarding this plan today.

**BMI 40.0-44.9, adult (CMS/HCC)**
Chronic worsening problem
This entity was addressed today and she is taking steps to improve control over this aspect of her life through a combination of both increased physical activity as tolerated and selective calorie restriction through reduced frequency of eating and improved food choices overall. We discussed the benefits of weight loss as regards improved quality of life and reduced health problems. she was asked to make an attempt to improve diet and exercise patterns to aid in medical management of this problem.

## Plan:

Plan

**Medications Ordered This Encounter**
Medications

- metformin (GLUCOPHAGE-XR) 500 MG 24 hr tablet
  Sig: Take 2 tablets (1,000 mg total) by mouth daily with breakfast.
  Dispense: 180 tablet
  Refill: 1
- atorvastatin (LIPITOR) 40 MG tablet
  Sig: Take 1 tablet (40 mg total) by mouth nightly.
  Dispense: 90 tablet
  Refill: 1
- benazepriL (LOTENSIN) 40 MG tablet
  Sig: Take 1 tablet (40 mg total) by mouth daily.
  Dispense: 90 tablet
  Refill: 1
- metoprolol succinate (TOPROL-XL) 100 MG 24 hr tablet
  Sig: Take 1 tablet (100 mg total) by mouth daily.
  Dispense: 90 tablet
  Refill: 1
- hydroCHLOROthiazide (HYDRODIURIL) 25 MG tablet
  Sig: Take 1 tablet (25 mg total) by mouth daily.
  Dispense: 90 tablet
  Refill: 1

## Goals

- Avoid prcessed foods
  Avoid processed foods or "fast food."

---

- Blood Pressure < 130/80
  Your blood pressure should generally be less than 130/80. Please let your provider know if your blood pressure numbers are over this goal.

---

- Increase Daily Activity
  Attempt to increase exertion around daily activities (take the stairs instead of the elevator, walk instead of driving a few blocks, etc.).

---

- Weight < 68 kg (150 lb)
  3 month goal is to loose 26 lbs based on body fat percent

**Follow-Up:**

Return in about 6 months (around 12/22/2022) for Anxiety, Depression follow up.

MyChart® licensed from Epic Systems Corporation © 1999 - 2022

WakeMed, 3000 New Bern Avenue, Raleigh, NC 27610, 919-350-8000

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# Progress Notes

Ronald Joseph Prucha at 2/7/2022 8:45 AM

**Subjective:**

**Patient ID:** Kim Romero Naugle is a 58 y.o. female.
**Date of Service:** 02/07/22

Is this a CM Visit?: No

**Chief Complaint:**
**Chief Complaint**
Patient presents with
- Cough
  *Go over symptoms of covid (CONSENT)*
- Sinus congestion/pain

**History of Present Illness:**

I conducted this encounter via secure, live face-to-face video conference using a Video Visit with the patient. Kim was located at home in North Carolina, with the patient and the provider participating in the encounter. Prior to the interview, the risks and benefits of telemedicine were discussed with the patient and verbal consent was obtained.

**Patient Active Problem List**
Diagnosis
- Essential hypertension
- Anxiety
- Hypothyroidism
- Cervical cancer screening
- OSA on CPAP
- Gastroenteritis
- Other chest pain
- Coronary artery disease of native artery of native heart with stable angina pectoris (CMS/HCC)
- H/O heart bypass surgery
- Morbid obesity with BMI of 45.0-49.9, adult (CMS/HCC)
- Annual physical exam
- URI, acute
- Need for influenza vaccination
- Need for hepatitis C screening test
- BMI 45.0-49.9, adult (CMS/HCC)
- Bacterial sinusitis
- Work stress
- Severe episode of recurrent major depressive disorder, without psychotic features (CMS/HCC)
- Depression

- Acute right ankle pain
- Prediabetes
- Post-nasal drip
- Choking due to phlegm in larynx
- Vasomotor rhinitis
- Multiple thyroid nodules
- Post-traumatic stress
- COVID-19

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Anxiety | |
| • Arachnoid cyst | |
| • Arthritis | |
| • CAD in native artery | |
| • Cervical cancer screening<br>*normal per pt* | 2014 |
| • Congenital heart disease<br>*Congenital heart mumur* | |
| • CTS (carpal tunnel syndrome) | |
| • Depression | |
| • Disease of thyroid gland | |
| • Fibroid | |
| • Gestational diabetes | |
| • Heart murmur | |
| • Herpes | |
| • High cholesterol<br>*Borderline* | |
| • History of recurrent miscarriages | |
| • Hx of colonoscopy<br>*3 polyps* | 2015 |
| • Hx of mammogram<br>*normal per pt* | 2014 |
| • Hx of pregnancy | |
| • Hypertension | |
| • Meniscus tear | |
| • Post-traumatic stress | |
| • Post-traumatic stress | |
| • Sleep apnea | 2009 |
| • STD (sexually transmitted disease)<br>*Genital Herpes* | |
| • Torn ACL | |
| • Urinary tract infection<br>*In the past* | |
| • Urogenital trichomoniasis | |
| • Varicella | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • ABDOMINAL SURGERY | | 1998 |
| • CARDIAC CATHETERIZATION | | |
| • CARPAL TUNNEL RELEASE | | 2015 |
| • CESAREAN SECTION | | |
| • COLONOSCOPY | | 2018 |
| • COLPOSCOPY | | |
| • CONDYLOMA EXCISION/FULGURATION | | |
| • CORONARIES LHC WITH OR WITHOUT LV<br>*Procedure: Coronaries LHC with or without LV; Surgeon: Hemant Solomon, MD; Location: WCH INVASIVE CARDIOLOGY; Service: Cardiovascular; Laterality: Left;* | Left | 8/3/2018 |

| | |
|---|---|
| • CORONARY ARTERY BYPASS GRAFT<br>*CAB x 2* | 08/07/2018 |
| • double open heart by pass | |
| • FLEXIBLE SIGMOIDOSCOPY | |
| • laminectomy | 1989 |
| • LUMBAR DISCECTOMY | 1989 |
| • TONSILECTOMY, ADENOIDECTOMY, BILATERAL MYRINGOTOMY AND TUBES | 1968 |
| • TONSILLECTOMY | 1968 |
| • TUBAL LIGATION | 2011 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Colon polyps | Mother | |
| • Cancer<br>*Cervical & Skin* | Mother | |
| • Diabetes | Mother | |
| • Heart attack | Father | |
| • Hypertension | Father | |
| • Heart disease | Father | |
| • Diabetes | Father | |
| • Vision loss<br>*Macular Degeneration* | Father | |
| • Hypertension | Brother | |
| • Cancer<br>*Breast & Bone* | Maternal Grandmother | |
| • Vision loss | Maternal Grandmother | |
| • Anemia | Maternal Grandmother | |
| • Breast cancer | Maternal Grandmother | 40 |
| • Cancer<br>*Throat* | Maternal Grandfather | |
| • Hypertension | Maternal Grandfather | |
| • Heart disease | Maternal Grandfather | |
| • Diabetes | Maternal Grandfather | |
| • Cancer | Paternal Grandmother | |
| • Vision loss<br>*Macular Degeneration* | Paternal Grandmother | |
| • Cancer<br>*Stomach/Stomach cancer* | Paternal Grandfather | |
| • Alcohol abuse<br>*Both Brothers* | Brother | |
| • Diabetes<br>*Both Brothers* | Brother | |
| • Heart disease<br>*Older Brother* | Brother | |
| • Hypertension<br>*Both Brothers* | Brother | |
| • Diabetes | Brother | |
| • Hypertension | Brother | |
| • Diabetes | Brother | |
| • Hypertension<br>*Younger Brother* | Brother | |

**Social History**

Occupational History
- Not on file

Tobacco Use

- Smoking status: Former Smoker
  - Packs/day: 0.50
  - Years: 3.00
  - Pack years: 1.50
  - Types: Cigarettes
  - Quit date: 1/1/1985
  - Years since quitting: 37.1
- Smokeless tobacco: Never Used
- Tobacco comment: 15 thru 19

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 1.0 standard drink
  - Types: 1 Glasses of wine per week
  - *Comment: once a month (Rarely)*
- Drug use: No
- Sexual activity: Yes
  - Partners: Male
  - Birth control/protection: Surgical
  - *Comment: Tubes Tied*

**Outpatient Medications Prior to Visit**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin 81 MG tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • atorvastatin (LIPITOR) 40 MG tablet | Take 1 tablet (40 mg total) by mouth nightly. | 90 tablet | 1 |
| • benazepril-hydrochlorthiazide (LOTENSIN HCT) 20-12.5 mg per tablet | TAKE 2 TABLETS BY MOUTH EVERY DAY | 180 tablet | 1 |
| • calcium carbonate (CALCIUM 600 ORAL) | Take 600 Units by mouth. | | |
| • cetirizine (ZYRTEC) 10 MG tablet | Take 10 mg by mouth daily. | | |
| • clonazepam (KLONOPIN) 0.5 MG tablet | Take 1 tablet (0.5 mg total) by mouth daily as needed for anxiety. | 30 tablet | 0 |
| • hydrALAZINE (APRESOLINE) 50 MG tablet | Take 1 tablet (50 mg total) by mouth 3 (three) times a day. Take at 8am, 2pm and 10pm daily | 360 tablet | 3 |
| • metformin (GLUCOPHAGE-XR) 500 MG 24 hr tablet | Take 2 tablets (1,000 mg total) by mouth daily with breakfast. | 60 tablet | 2 |
| • metoprolol succinate (TOPROL-XL) 100 MG 24 hr tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • multivitamin capsule | Take 1 capsule by mouth 2 (two) times a day. Bausch and lomb areds2 | | |
| • PARoxetine (PAXIL) 40 MG tablet | Take 1 tablet (40 mg total) by mouth daily. | 30 tablet | 2 |
| • SYNTHROID 137 mcg tablet | TAKE 1 TABLET BY | | 1 |

MOUTH 6 DAYS A
WEEK AND 2
TABLETS BY
MOUTH ONCE A
WEEK

No facility-administered medications prior to visit.

Ms. Naugle presents to the office today VV after having contracted covid. She got sick about 3 weeks prior and is doing better from that standpoint as of the past several days now. She and her husband both got this. After the second week, she was unable to get into see me and had to go to America's Front Line Doctors to be seen and were given zpak and prednisone and hydroxychlorquine and ivermectin she tried to get but due to the cost of the Rx, she elected for the other hydroxy. She had to prove that they did not have covid in order to get the hydroxy filled and she is happy to be feeling better. She is gaining her energy back and half the day she is good and there other half of the day she can't get off of the couch. She is also desiring to discuss her therapy and her dealings with her insurance and the battle she is struggling with as regards her disability. Her therapist did a "mental" eval on her and her lawyer and her have discussed her. She is asking me to write a statement on the form rather than complete the form in the capacity that it is asking to be completed. In other words, simply put a narrative on the form rather than complete the individual boxes that it is asking for. She is asking me to write on the form due to it being straight forward that she is in therapy and has made progress and she feels like she wants to go back to work really soon and wants to get better psychology and she just wants to finish this go around. She is working with her therapist to get her anxiety under control. She is still in psychotherapy and is making progress towards working and that she is on medications and they are working and that all of her issues are mental and emotional and no physical as per pt. She has a pie in front of her that is affecting her and the biggest piece of this pie was her job, stress, depression, anxiety and the depression piece is mostly improved and she continues to work oin the PTSD part of her therapy and her panic attacks and her heart and her heart surgery. She is making progress and is seeing improvements and she is doing better. She feels her insurance company is looking for loopholes to get out of paying and she has been fighting this for over one year and has not received the 60% of her salary and have paid only the first 3 months. All this has done is to drag out her problem and has put her through a lot fighting with them. She wsnet me the form. The functional mental part has been done. She just wants the narrative on the functional assessment from me.

She is back to discussing covid and blood clots and she thought it was only from the vaccine. She is w/ no shortness of breath, dyspnea on exertion, chest pain, chest pressure, palpitations or lower extremity edema. We discussed the importance of mov't and exercise in the prevention of this.

The following portions of the patient's history were reviewed and updated as appropriate: medications, allergies, past medical history, family history, social history, surgical history, current problems.

**Review of Systems:** All of the patient's ROS were normal except as documented in the HPI.

**Objective:**

BP 135/80 (BP Location: Left upper arm, BP Position: Sitting, Cuff Size: Large Adult (Burgundy)) | Pulse 52 | Ht 1.795 m (5' 10.67") | Wt (!) 135.2 kg (298 lb) | LMP 05/14/2020 (Approximate) Comment: pmp had period 3 wks ago | BMI 41.95 kg/m²

**Physical Exam:**

Gen: alert and oriented, NAD, well appearing
Resp: normal RR, no tachypnea, no retractions

Skin: no visualized rash on observed skin
**Psych:** normal mood, A and O x3

**Assessment and Plan:**

1. **COVID-19**
2. Severe episode of recurrent major depressive disorder, without psychotic features (CMS/HCC)
3. Post-traumatic stress

**Severe episode of recurrent major depressive disorder, without psychotic features (CMS/HCC)**
Chronic stable problem
imprOving gradually with therapy and medications
She will cont this modalites and I will complete paperwork pursuant ot her claim
See hpi fo r details of this

**COVID-19**
New problem, stable and self-limiting
Continue conservative measures for now: Fluids, rest and over-the-counter measures discussed today.
No antimicrobial therapy is currently indicated based upon my clinical assessment today.
I have asked her to be on the alert for new or increasing symptoms such as new rash, fevers, chills, shortness of breath, wheezing, worsening cough or increased respiratory effort, chest pains or coughing blood and to call directly if such should occur.
She verbalized satisfaction and understanding of this treatment plan and she was afforded the opportunity to ask questions regarding this plan today.

**Post-traumatic stress**
Chronic stable problem
This problem is presently well controlled.
She will continue her psychotropic meds as prescribed, as she is tolerating this well without side effects.
The side effects of this medication were explained in detail to her and she verbalized understanding of these and will contact me to let me know if any occur.
She verbalized satisfaction and understanding of this treatment plan and she was afforded the opportunity to ask questions regarding this plan today.

I spent 22 minutes providing patient care, education, and counseling.

**Follow-Up:**

Return in about 3 months (around 5/7/2022).

**Patient Goals:**

**Goals**

- Avoid prcessed foods
  Avoid processed foods or "fast food."

- Blood Pressure < 130/80
  Your blood pressure should generally be less than 130/80. Please let your

provider know if your blood pressure numbers are over this goal.

- Increase Daily Activity
  Attempt to increase exertion around daily activities (take the stairs instead of the elevator, walk instead of driving a few blocks, etc.).

- Weight < 68 kg (150 lb)
  3 month goal is to loose 26 lbs based on body fat percent

**Patient Instructions :**

There are no Patient Instructions on file for this visit.

MyChart® licensed from Epic Systems Corporation © 1999 - 2022

Social Security Administration
**Retirement, Survivors and Disability Insurance**
Notice of Award

Northeastern Program Service Center
1 Jamaica Center Plaza
Jamaica, New York 11432-3898
Date: May 23, 2022
BNC#: 22MS712G31165-HA

0000294 00003471 2 SP 0.730 0519M3MCS1PI T23 P
KIM R NAUGLE

020112KY500242* 0000294 000000100

You are entitled to monthly disability benefits beginning June 2021.

**The Date You Became Disabled**

We found that you became disabled under our rules on December 24, 2020.

To qualify for disability benefits, you must be disabled for five full calendar months in a row. The first month you are entitled to benefits is June 2021.

**What We Will Pay And When**

We pay Social Security benefits for a given month in the next month. For example, Social Security benefits for March are paid in April.

- You will receive $23,243.00 around May 24, 2022.
- This is the money you are due for June 2021 through April 2022.
- Your next payment of $2,179.00, which is for May 2022, will be received on or about the second Wednesday of June 2022.
- After that you will receive $2,179.00 on or about the second Wednesday of each month.
- These and any future payments will go to the financial institution you selected. Please let us know if you change your mailing address, so we can send you letters directly.

Enclosure(s):
Pub 05-10153

C

See Next Page

**Your Benefits**

The following chart shows your benefit amount(s) before any deductions or rounding. The amount you actually receive(s) may differ from your full benefit amount. When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums. We must also round down to the nearest dollar.

| Beginning Date | | Benefit Amount | Reason |
|---|---|---|---|
| June | 2021 | $2,058.00 | Entitlement began |
| December | 2021 | $2,179.40 | Cost-of-living adjustment |

**Other Social Security Benefits**

This benefit is the only benefit you can receive from us at this time. In the future, if you think you might qualify for another benefit from us, you will need to apply again.

**Your Responsibilities**

We based our decision on information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away.

We have enclosed a pamphlet, "What You Need To Know When You Get Social Security Disability Benefits." It tells you what you must report and how to report. Please be sure to read the parts of the pamphlet that tell you what to do if you go to work or your health improves.

A vocational rehabilitation or employment services provider may contact you to help you in going to work. The provider may be from a State agency or work under contract with Social Security.

If you go to work, we have special rules that let us continue your cash payments and health care coverage. To learn more about how work and earnings affect disability benefits, visit our website at www.socialsecurity.gov/work/. You may also call or visit any Social Security office to ask for the following publications:

- Social Security - Working While Disabled...How We Can Help (SSA Publication No. 05-10095).
- Social Security - If You Are Blind--How We Can Help (SSA Publication No. 05-10052).

**Your Benefits May Be Taxed**

You may have to pay taxes on the benefits you get from us. Part of your Social Security benefits may be taxed if:

- you are single and your total income is more than $25,000 or

- you are married and you and your spouse have total income of more than $32,000.

You can decide if you want to have federal taxes withheld from your benefits. If you want taxes withheld, you need to complete and return a Form W-4V, Voluntary Withholding Request. You can get Form W-4V from the Internal Revenue Service by calling 1-800-829-3676. You can also get this form at www.socialsecurity.gov/planners/taxes.htm on our website. After you complete and sign the form, return it to your local Social Security office by mail or in person.

You can find more information on paying taxes in the enclosed pamphlet, "What You Need To Know When You Get Social Security Disability Benefits".

**Do You Disagree With The Decision?**

If you do not agree with this decision, you have the right to appeal. We will review your case and look at any new facts you have. A person who did not make the first decision will decide your case. We will review the parts of the decision that you think are wrong and correct any mistakes. We may also review the parts of our decision that you think are right. We will make a decision that may or may not be in your favor.

- You have 60 days to ask for an appeal.
- The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period.
- You must have a good reason if you wait more than 60 days to ask for an appeal.
- You can file an appeal with any Social Security office. You must ask for an appeal in writing. Please use our "Request for Reconsideration" form, SSA-561-U2. You may go to our website at www.socialsecurity.gov/online/ to find the form. You can also call, write, or visit us to request the form. If you need help to fill out the form, we can help you by phone or in person.

**Things To Remember For The Future**

Doctors and other trained staff decided that you are disabled under our rules. However, we must review all disability cases. Therefore, we will review your case in 5 to 7 years. We will send you a letter before we start the review. Based on that review, your benefits will continue if you are still disabled, but will end if you are no longer disabled.

**If You Want Help With Your Appeal**

You can have a friend, representative, or someone else help you. There are groups that can help you find a representative or give you free legal services if you qualify. There are also representatives who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

22MS712G31165-HA

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a representative who is eligible for direct pay, we will withhold up to 25 percent of any past due benefits to pay toward the fee.

**Suspect Social Security Fraud?**

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

**If You Have Questions**

We invite you to visit our website at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-888-221-9512. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
4701 Old Wake FRST Rd
Raleigh NC 27609

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

*Social Security Administration*

WakeMed

WakeMed Physician Practices
Primary Care- Kildaire
110 Kildaire Park Drive Suite 305
Cary, North Carolina 27518
PH: (919)235-6575
FAX: (919)235-6598

# Fax

**TO:** Lincoln Financial **FROM:** Dr. Prucha's Office

**FAX:** 603·334·7174 **PH:**

**DATE:** 3·8·22 **PAGES:** 11 pgs. (including cover sheet)

**RE:** Naugle, Kim

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

• **Comments:** The documents accompanying this transmission may contain confidential information that is legally privileged and or legally protected. This information is intended only for the use of the individual or entity named above. The authorized recipient of this information is prohibited from disclosing this information to any other party unless required to do so by law or regulation and is required to destroy the information after its stated need has been fulfilled. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance on the contents of these documents is strictly prohibited. If you have received this information in error, please notify the sender immediately and arrange for the return or destruction of these documents. If any of this transmission is missing or is not clearly received, please contact me at the number listed above.

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

| | |
|---|---|
| Date: | March 3, 2022 |
| To: | DR RONALD PRUCHA |
| Attn: | PLEASE REPLY WITHIN 5 BUSINESS DAY |
| Fax: | (919) 235-6598 |
| From: | Johnna Shorter<br>Senior LTD Technical Claim Specialist II<br>Phone No.: Phone No.: (877) 294-3423<br>Secure Fax No.: (603) 334-7174 |
| Total Pages (Including Cover): | 10 |
| RE: | Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens |

Noted
3-8-22

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (877) 294-3423 and permanently shred the original and any copy of any fax and any printout thereof.

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

March 3, 2022

Dr. Ronald Prucha

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle
Claimant D.O.B.:

Dear Dr. Ronald Prucha:

We are the Disability Claim Administrator for your patient, Kim Naugle.

On March 1, 2022 a/an Internal Medicine Peer Review was performed to assist us in determining Ms. Naugle's eligibility for Long Term Disability (LTD) benefits. The results of this assessment demonstrate the following:

**PLEASE SEE FULL REPORT ATTACHED**

*"Relative to the claimant's chronic conditions, there is no evidence of any objective or diagnostic findings that would preclude activity. The claimant is being treated at the outpatient level for behavioral health related conditions. Relative to medical conditions, the claimant's cardiac presentation has been stable. While some elevated blood pressure readings are noted, treatment of hypertension would not necessitate restrictions or limitations. The claimant specifically states she has no physical impairments at the last clinical assessment on 02/07/2022. Chronic clinical conditions are stable. However, given her age and weight restrictions/limitations would be supported given her history of medical issues. Duration of the restrictions/limitations below are through 05/15/2022 to allow for reassessment.*

*Sitting: Unrestricted*
*Standing: Occasionally up to 20 minutes at one time and up to 2 hours per day*
*Walking: Occasionally up to 10 minutes at one time and up to 1 hour per day*
*Lifting/Carrying/Pushing/Pulling: Occasionally up to 20 pounds*
*Climbing Stairs: Occasionally*
*Climbing Ladders: Occasionally*
*Stooping: Occasionally*
*Kneeling: Occasionally*

*Crouching: Occasionally*
*Crawling: Occasionally*
*Reaching Overhead: Occasionally*
*Reaching at waist and desk level: Unrestricted*
*Reaching below waist and overhead: Occasionally*
*Use lower extremities for foot controls: Occasionally*
*Keyboarding: Unrestricted*

*In addition, the claimant was noted to have tested positive for Covid in the 02/07/2022 visit. The exact date of the positive test is unknown. In addition, there was no documentation of a positive lab test. However, based solely on the claimant's description of a positive test she would warrant restrictions to include no work for 10 days from the positive result. While the claimant self-treated for symptoms related to Covid, there is no manifestation of ongoing symptoms that would necessitate long-term restrictions or limitations. An impairing diagnosis from a family practice perspective has not been determined. "*

Please review the enclosed report by Wendell Goins, M.D., and provide any comments you wish to have considered. If you disagree with Wendell Goins, M.D.'s findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by March 9, 2022. Failure to provide the requested information may result in an adverse benefit determination. The information can be faxed to our office at our secure fax number (603) 334-7174 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Naugle allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Naugle's signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

Attachments: 12227902-MEDICAL-CP/PEER REVIEW-03.01.2022

**Wendell Goins, M.D.**
**Board Certified Addiction Medicine**
**Board Certified Family Medicine**
**Board Certified General Surgery**
**Board Certified Surgical Critical Care Medicine**

**CLAIMANT NAME: Kim Naugle**
**ECN #: 199863-2**
**CLAIM #: 12227902**
**DATE OF LOSS: 12/24/2020**
**DATE OF REVIEW: 03/01/2022**
**CASE TYPE: Long-Term Disability**

**MEDICAL RECORDS REVIEWED:**

1. 11/03/2020, Therapy Report, Sirrell Butler, LCSCW.
2. 11/24/2020, Progress Report, Malmouna Diop, NP.
3. 12/04/2020, Progress Report, Hemant Solomon, MD.
4. 12/11/2020, Progress Report, Ronald Prucha, MD.
5. 01/04/2021, Functional Mental Status Evaluation, Ronald Prucha, MD.
6. 02/08/2021, Functional Mental Status Evaluation, Eric Kelly, LCSW.
7. 02/12/2021, Progress Report, Ronald Prucha, MD.
8. 02/17/2021, Restrictions Form, Ronald Prucha, MD.
9. 02/24/2021, Behavioral Health Memorandum, Lincoln Financial Group.
10. 03/01/2021, Therapy Report, Eric Kelly, LCSW.
11. 04/01/2021, Therapy Report, Eric Kelly, LCSW.
12. 05/06/2021, Therapy Report, Eric Kelly, LCSW.
13. 05/17/2021, ICP Memo, Marcus Goldman, MD.
14. 05/20/2021, Therapy Report, Eric Kelly, LCSW.
15. 06/04/2021, Progress Report, Ronald Prucha, MD.
16. 06/18/2021, Progress Report, Hemant Solomon, MD.
17. 06/30/2021, Correspondence, Peter Burke,
18. 07/28/2021, Therapy Report, Eric Kelly, LCSW.
19. 09/07/2021, Therapy Report, Eric Kelly, LCSW.
20. 09/27/2021, Therapy Report, Eric Kelly, LCSW.
21. 10/01/2021, Progress Report, Jennie Buchkovich, PA-C.
22. 10/05/2021, Therapy Report, Eric Kelly, LCSW.
23. 10/20/2021, Therapy Report, Eric Kelly, LCSW.
24. 10/21/2021, Correspondence, Peter Burke,
25. 10/28/2021, Therapy Report, Eric Kelly, LCSW.
26. 10/29/2021, Progress Report, Jennie Buchkovich, PA-C.
27. 11/01/2021, Declaration of Claimant, Kim Naugle.

28. 11/09/2021, Peer Review, Candace Good, MD.
29. 11/10/2021, Peer Review, Mark Sims, MD.
30. 11/17/2021, Therapy Report, Eric Kelly, LCSW.
31. 12/01/2021, Correspondence, Peter Burke,
32. 12/08/2021, Peer Review, Mark Sims, MD.
33. 12/23/2021, Claim Information, Kim Naugle.
34. 12/29/2021, Individual Therapy Report, Eric Kelly, LCSW.
35. 01/30/2022, Activities Questionnaire, Lincoln Financial Group.
36. 02/05/2022, Therapy Report, Eric Kelly, LCSW.
37. 02/07/2022, Progress Report, Ronald Prucha, MD.

**HISTORY:** This case involves a now 58-year-old female with a date of loss of 12/24/2020. The documented diagnosis is anxiety disorder.

On 11/24/2020, the claimant was seen by Malmeuna Diop, NP. The visit was performed by telemedicine. The claimant had a psychiatric history significant for PTSD, depression, and anxiety. Treatment had included Lexapro. Past history was significant for coronary artery bypass grafting. Medical history included hypertension, hyperlipidemia, congestive heart failure, acid reflux, obesity, and pain. There was a discussion related to use of additional medication. The claimant was going to address the use of medication with her cardiologist.

On 12/04/2020, the claimant was seen by Dr. Solomon. The claimant was seen for assessment of coronary artery disease. The claimant had a history of coronary artery bypass graft surgery on 08/07/2018. Most recent cardiac perfusion stress study from October 2019 showed normal findings with an ejection fraction of 73%. There was noted anxiety and depression. Medical history was positive for coronary artery disease, congestive heart failure, hypercholesterolemia, herpes, hypertension, sleep apnea, and arthritis. Examination demonstrated stable vital signs. There was a blood pressure 140/80. Heart was regular rate and rhythm. Lungs were clear. Coronary artery disease was stable.

On 12/11/2020, the claimant was seen by Dr. Prucha. The claimant was seen for follow-up of anxiety and depression. The claimant was to begin treatment with Paxil. The claimant had started treatment with Paxil.

On 06/18/2021, the claimant was seen by Dr. Solomon. The claimant was seen for a cardiac follow-up related to coronary artery disease. There was a discussion regarding bariatric surgery for weight loss. The claimant was encouraged exercise 30 minutes daily. Hydralazine dose was increased to address hypertension. Examination demonstrated a blood pressure of 170/90. There were no neurologic or musculoskeletal abnormalities. There was no additional change in treatment.

On 10/01/2021, the claimant was seen by Jennie Buchkovich, PA-C, for evaluation. The claimant was seen for a cardiology follow-up assessment. The claimant was seen for follow-up

of hypertension and coronary artery disease. Blood pressure remained elevated at 160/80. The claimant denied any symptoms of chest pain, dyspepsia, or palpitations. She was wearing a CPAP device at night and working on weight loss. Examination demonstrated the heart was regular rate and rhythm. Lungs were clear. There were no abdominal abnormalities. Neurologic and musculoskeletal examinations were benign. Weight loss measures and continued use of medication for hypertension was recommended.

On 10/29/2021, the claimant was seen by Jennie Buchkovich, PA-C. The claimant was seen for follow-up of obesity, coronary artery disease and hypertension. There were no listed subjective complaints. Examination noted a weight of 321 pounds. Blood pressure was 134/80. There was a mid systolic murmur. There were no abdominal or musculoskeletal abnormalities on examination. There was no interval change in the claimant's medication regimen. Continued weight loss measures were recommended.

On 02/07/2022, the claimant was seen by Dr. Prucha. The claimant had tested positive for Covid since the last visit. She continued treatment with supportive measures. The claimant requested a disability form/statement. The claimant stated that all of her issues are mental and emotional. She denied having any physical impairments. There were no medications prescribed or dispensed.

**DIAGNOSIS:** Anxiety disorder, unspecified

Medical / Surgical Conditions: Depression, prior cardiac issues, PTSD

**RESPONSE TO REFERRAL QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

History of coronary artery disease (I25.1) and coronary artery bypass grafting (Z95.1).

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Hypertension (I10), hyperlipidemia (E78.5), congestive heart failure (I50.9), gastroesophageal reflux disease, anxiety disorder, depressive disorder, posttraumatic stress disorder, and history of Covid.

**3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 6/22/21 (ltd benefit begin date) to - ongoing, and comment on the expected duration.**

Considering the entire clinical picture, the records do support an impairing diagnosis from a family practice perspective from 06/22/2021.

Relative to the claimant's chronic conditions, there is no evidence of any objective or diagnostic findings that would preclude activity. The claimant is being treated at the outpatient level for behavioral health related conditions. Relative to medical conditions, the claimant's cardiac presentation has been stable. While some elevated blood pressure readings are noted, treatment of hypertension would not necessitate restrictions or limitations. The claimant specifically states she has no physical impairments at the last clinical assessment on 02/07/2022. Chronic clinical conditions are stable. However, given her age and weight restrictions/limitations would be supported given her history of medical issues. Duration of the restrictions/limitations below are through 05/15/2022 to allow for reassessment.

Sitting: Unrestricted

Standing: Occasionally up to 20 minutes at one time and up to 2 hours per day

Walking: Occasionally up to 10 minutes at one time and up to 1 hour per day

Lifting/Carrying/Pushing/Pulling: Occasionally up to 20 pounds

Climbing Stairs: Occasionally

Climbing Ladders: Occasionally

Stooping: Occasionally

Kneeling: Occasionally

Crouching: Occasionally

Crawling: Occasionally

Reaching Overhead: Occasionally

Reaching at waist and desk level: Unrestricted

Reaching below waist and overhead: Occasionally

Use lower extremities for foot controls: Occasionally

Keyboarding: Unrestricted

In addition, the claimant was noted to have tested positive for Covid in the 02/07/2022 visit. The exact date of the positive test is unknown. In addition, there was no documentation of a positive lab test. However, based solely on the claimant's description of a positive test she would warrant restrictions to include no work for 10 days from the positive result. While the claimant self-treated for symptoms related to Covid, there is no manifestation of ongoing symptoms that would necessitate long-term restrictions or limitations. An impairing diagnosis from a family practice perspective has not been determined.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

There are no listed restrictions and limitations from a family practice perspective.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

The claimant has been treated appropriately for clinical symptoms.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

Nonmedical circumstances are not identified.

**AP CONTACT:**

I called the number listed (919-235-6575) on 2/16/22 at 11:36am CST and left a message for a return call on the general office voicemail.

My staff received a return call on 2/16/22 at 1:46pm CST from Dr. Prucha and I was unavailable to take the call; a message was left requesting a return phone call to an alternate number for Eric Kelly, LCSW (919-210-2070).

I called the number provided for Eric Kelly, LCSW (919-210-2070) on 2/22/22 at 10:30am CST and left a message for a return call on the general office voicemail.

My staff received a return call on 2/22/22 at 11:39am CST from Eric Kelly, LCSW and I discussed the case with Eric Kelly.

He stated that this claimant was unable to work due to her anxiety, depression, lethargy, and poor attention to detail and work. He did not know if and when she would be able to return to work. He did say that his conclusion was based on her own subjective complaints and his assessment of her coping skills. The additional information does not change the above opinions in this case from a family practice perspective.

Wendell G Goins MD

Wendell Goins, M.D.
Board Certified Addiction Medicine
Board Certified Family Medicine
Board Certified General Surgery
Board Certified Surgical Critical Care Medicine

License: 9401199 NC
License: 17278 SC

ECN

Corporate Office

Exam Coordinators Network A division of Genex Services, LLC

Claimant Name: Kim Naugle
Claim Number: 12227902
Case Number: 199863-2

"I, Wendell A Goins, MD, am a physician duly licensed to practice medicine in the State of NC. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

Wendell A Goins MD 3/1/2022

Signature of Physician Date

Medical/Professional License # 9401199

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

| | |
|---|---|
| Date: | March 9, 2022 |
| To: | CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | Peter Burke |
| Fax: | (877) 293-8687 |
| From: | Johnna Shorter<br>Senior LTD Technical Claim Specialist II<br>Phone No.: Phone No.: (877) 294-3423<br>Secure Fax No.: (603) 334-7174 |
| Total Pages (Including Cover): | 8 |
| RE: | Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (877) 294-3423 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

March 9, 2022

Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

To Whom It May Concern:

The Lincoln National Life Insurance Company is responsible for managing claims for Long Term Disability (LTD) benefits under Siemens's Group Disability Policy. We are writing in reference to Kim Naugle's claim for LTD benefits under the Policy.

We have completed a thorough review of her eligibility for benefits and have determined that benefits are not payable. Siemens's LTD Policy requires that to be eligible for benefits Ms. Naugle must meet the following definition of disability:

> ***"Disability"*** *or* ***"Disabled"*** *means:*
>
> 1. *For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
>
>    i. *that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
>
>    ii. *thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*
>
> 2. *With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:*
>
>    ***"Disability"*** *or* ***"Disabled"*** *means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation.*
>
> ***"Own Occupation"*** *means the Covered Person's occupation that he was performing when*

*his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will consider the Covered Person's occupation as it is normally performed in the local economy.*

In order to evaluate whether or not Ms. Naugle has met the above definition of disability, we requested medical information from her physician(s).

Siemens's Policy requires that Ms. Naugle provide proof of disability as follows:

**Notice and Proof of Claim**

1. **Notice**

   a. Notice of claim must be given to Lincoln within 20 days of the date of the loss on which the claim is based. If that is not possible, Lincoln must be notified as soon as it is reasonably possible to do so. Such notice of claim must be received in a form or format satisfactory to Lincoln.

   b. When written notice of claim is applicable and has been received by Lincoln, the Covered Person will be sent claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send to Lincoln written Proof of claim without waiting for the forms.

2. **Proof**

   a. Satisfactory Proof of loss must be given to Lincoln no later than 90 days after the end of the Elimination Period.

   b. Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.

   c. Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Lincoln within 30 days of the request for such Proof.

Lincoln reserves the right to determine if the Covered Person's Proof of loss is satisfactory.

On January 24, 2022 we requested all treatment notes, test results, operative reports, prescription histories and treatment plans from all treating providers and was told the attorney office will be providing all medical reports. Ms. Naugle was notified that this information was due by February 10, 2022.

To date we have not received all of the requested information.

Ms. Naugle submitted a claim for anxiety, PTSD, history of coronary artery disease, coronary artery bypass grafting, hyperlipidemia, hypertension and her claim file contains the following medical documentation:

- Sirrell Butler, LCSW
  - Therapy reports dated November 3, 2020

- Malmouna Diop, NP
  - Office visit notes dated November 24, 2020

- Dr. Hemant Solomon
  - Office visit notes dated December 4, 2020 through June 18, 2021

- Dr. Ronald Prucha
  - Office visit notes and forms dated December 11, 2020 through February 7, 2022

- Eric Kelly, LCSW
  - Office visit notes and forms dated February 8, 2021 through February 5, 2022

- Jeannie Buchknovich, PA-C
  - Office visit notes dated October 1, 2021 through October 29, 2021

We compared her restrictions and limitations to the requirements of her occupation.

Ms. Naugle's occupation as a(n) Project Coordinator Engineer requires Ms. Naugle to:

Occupational Physical Demands per eDOT: Light
- Occasional walking, standing, reaching at all levels, fingering, keyboarding, and accommodation
- Frequent sitting, handling, talking, hearing, and near acuity

Physical Review
In order to determine her functional capacity, her claim was reviewed by Dr. Wendell Goins, an Independent Physician Board Certified in Family Medicine. Prior to completing his final report, Dr. Goins attempted to speak with Dr. Prucha on February 16, 2022. A call was returned from Dr. Prucha's office that date directing peer reviewer to call Eric Kelly, LCSW. On February 22, 2022, the peer reviewer had a conversation with Eric Kelly, LCSW. The results of the review were:

> *"Considering the entire clinical picture, the records do support an impairing diagnosis from a family practice perspective from 06/22/2021.*
>
> *Relative to the claimant's chronic conditions, there is no evidence of any objective or diagnostic findings that would preclude activity. The claimant is being treated at the outpatient level for behavioral health related conditions. Relative to medical conditions, the claimant's cardiac presentation has been stable. While some elevated blood pressure readings are noted, treatment of hypertension would not necessitate restrictions or*

*limitations. The claimant specifically states she has no physical impairments at the last clinical assessment on 02/07/2022. Chronic clinical conditions are stable. However, given her age and weight restrictions/limitations would be supported given her history of medical issues. Duration of the restrictions/limitations below are through 05/15/2022 to allow for reassessment.*

*Sitting: Unrestricted*
*Standing: Occasionally up to 20 minutes at one time and up to 2 hours per day*
*Walking: Occasionally up to 10 minutes at one time and up to 1 hour per day*
*Lifting/Carrying/Pushing/Pulling: Occasionally up to 20 pounds*
*Climbing Stairs: Occasionally*
*Climbing Ladders: Occasionally*
*Stooping: Occasionally*
*Kneeling: Occasionally*
*Crouching: Occasionally*
*Crawling: Occasionally*
*Reaching Overhead: Occasionally*
*Reaching at waist and desk level: Unrestricted*
*Reaching below waist and overhead: Occasionally*
*Use lower extremities for foot controls: Occasionally*
*Keyboarding: Unrestricted "*

A letter was sent to Dr. Prucha on March 3, 2022 to provide opportunity to comment on the Internal Medicine peer review. Dr. Prucha signed and dated the review March 8, 2022 and returned with no additional comment provided.

<u>Psychiatric Review</u>

In order to evaluate any restrictions or limitations associated with any mental health conditions, her claim was reviewed by Dr. Stephen Gilman, an Independent Physician Board Certified in Psychiatry. Prior to completing his final report, Dr. Gilman attempted to speak with Eric Kelly, LCSW on February 16 and 22, 2022. Messages were left, however, no return call was received. The results of the review were:

*"Taking into consideration the entire clinical picture, the records do not support an impairing diagnosis from a psychiatric perspective from 06/22/2021 and ongoing.*

*During the timeframe in question, the claimant was being managed for symptoms related to anxiety, depression, and posttraumatic stress. Clinical symptoms are largely stable. The claimant was treated on an outpatient basis with medication follow-up visits and with individual therapy. There was no evidence of any cognitive decline, psychosis, delusion, suicidal ideation, or requirements for higher levels of care or service. The claimant's clinical picture did not arise to the level of impairment. There were no clinical findings from 06/22/2021 moving forward that would preclude activity. On 02/07/2022, the claimant was still in psychotherapy and was making progress towards her goals. The claimant reported that all of her issues are mental and emotional and not physical. Examination*

*demonstrated no focal abnormalities.*

*The reviewed records do not support restrictions and limitations placed by the treating providers. As noted above, it is not established that the claimant's behavioral health related symptoms support impairment for the timeframe in question. The claimant is not required any escalating needs for care or level of service. Clinical symptoms have been largely stable.*

*The medical management recommended by the providers and followed by the claimant has been reasonable and consistent with the claimant symptoms; however, there is not a current diagnosis that would arise to the level of impairment."*

A letter was sent to Eric Kelly, LCSW, on March 3, 2022 with the completed peer review and provided opportunity to comment on the competed review.  The provider returned an email on March 3, 2022 stating:

*"I reviewed and agreed with the assessment findings for this patient."*

We understand that while working at Siemens, Ms. Naugle must Occasional  - walking, standing, reaching at all levels, fingering, keyboarding, and accommodation;  Frequent - sitting, handling, talking, hearing, and near acuity.  However, based on research performed by a Vocational Consultant, her occupation as a(n) Project Coordinator Engineer, as defined in the national economy, requires Light.  These requirements are within her functional capabilities Sitting: Unrestricted; Standing: Occasionally up to 20 minutes at one time and up to 2 hours per day; Walking: Occasionally up to 10 minutes at one time and up to 1 hour per day; Lifting/Carrying/Pushing/Pulling: Occasionally up to 20 pounds; Climbing Stairs: Occasionally; Climbing Ladders: Occasionally; Stooping: Occasionally ; Kneeling: Occasionally, Crouching: Occasionally,  Crawling: Occasionally; Reaching Overhead: Occasionally;  Reaching at waist and desk level: Unrestricted;  Reaching below waist and overhead: Occasionally; Use lower extremities for foot controls: Occasionally;  Keyboarding: Unrestricted.  Therefore, Ms. Naugle is capable of performing her occupation with a different employer.

Based on the medical documentation received in relation to the requirements of Ms. Naugle's occupation, she does not meet the definition of disability outlined above. Thus no benefits are payable and we must deny her claim.

This claim determination reflects an evaluation of the claim facts and the Policy provisions.  No internal rules, guidelines, protocols, standards or other similar criteria were relied upon in rendering the claim determination.  We reserve the right to make a determination on any additional information that may be submitted.

Under the Employee Retirement Income Security Act of 1974 (ERISA), Ms. Naugle may request a review of this denial by writing to the address below:

The Lincoln National Life Insurance Company
Attn: Appeal Review Unit
Disability and Life Claims

PO Box 2578
Omaha, NE 68172-9688

The written request for review must be sent within 180 days from the receipt of this letter and state the reasons Ms. Naugle feels her claim should not have been denied. In her request for review please include the following documentation:

- All treatment notes, diagnostic tests, radiology results, operative and procedure reports from all providers including Dr. Prucha, Eric Kelly, LCSW and any provider who treated you from December 24, 2020 through the present that has not already been submitted for review; physician documentation to support the specific restrictions and limitations given by your providers, including an explanation of how they preclude you from performing the substantial and material duties of your own occupation; therapy notes, medications prescribed and filled; hospitalization records; as well as any additional information which you feel will support your claim. The medical documentation should clearly show impairment from a physical or psychiatric illness that preclude you from performing the duties of any occupation with respect to medically supported restrictions and limitations.

You should also provide any additional information that you feel will support her claim.

Ms. Naugle is entitled to receive, upon request and free of charge, copies of all claim file documents relevant to the claim determination. If Lincoln Financial Group does not receive her written request for review within 180 days from the receipt of this notice, our claim decision will be final, her file will remain closed, and no further review will be conducted.

Under normal circumstances, Ms. Naugle will be notified of the final decision within 45 days from the date her request is received.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį́į' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtį́į́ł nínízingo doo bą́ąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducci n, cont cteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelaci n.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If special circumstances cause a delay in our decision, Ms. Naugle will be notified of the final decision no later than 90 days from the date her request is received.

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved by Lincoln Financial Group, whether or not they are specifically mentioned herein.

In addition, a claimant may not start any legal action as per the below:

***Legal Proceedings***

*A claimant or the claimant's authorized representative cannot start any legal action:*

1. *until 60 days after Proof of claim has been given; or*
2. *more than three years after the time Proof of claim is required.*

Proof is defined as:

***Proof***

a. *Satisfactory Proof of loss must be given to Lincoln Financial Group no later than 90 days after the end of the Elimination Period.*

b. *Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.*

c. *Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Lincoln Financial Group within 30 days of the request for such Proof.*

*Lincoln Financial Group reserves the right to determine if the Covered Person's Proof of loss is satisfactory.*

If Ms. Naugle has any questions regarding this matter, please contact me.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

**Lincoln Financial Group**
Group Protection

Hanna Downing, M.Ed., CRC
Vocational Rehabilitation Consultant

# OCCUPATIONAL ANALYSIS

| | |
|---|---|
| **Claimant Name:** | Kim Naugle |
| **Claim Number:** | 12227902 |
| **Claims Case Manager:** | Johnna Shorter |
| **Employer:** | Siemens Corporation |
| **Date of Report:** | 03/07/2022 |

An Occupational Analysis (OA) was completed to compare the job title Project Coordinator to the occupation in the national economy per eDOT, of Project Coordinator Engineering performed at the light level of physical demand.

**RESOURCES / DOCUMENTATION UTILIZED**:

- Job Description
- Training, Education & Experience (TE&E) Form
- Dictionary of Occupational Titles (DOT) – 019.167-014
- Occupational Information Network (O*NET) – 11-9041.00
- Economic Research Institute (ERI) Occupational Assessor – 019.167-012
- Internet Job Boards – Indeed.com

**RESTRICTIONS / LIMITATIONS:**

No restrictions or limitations were specified in the narrative score referral for review with this analysis.

**JOB / OCCUPATION COMPARISON:**

Job Duties:

This position works closely with the Operations Manager and Project Managers within SBT (BAU, FIS, SES). The goal of the position is to allow Project Managers and Supervisors to focus on job execution, while ensuring implementation of our core business processes. Coordinators also act as the HUB on all projects ensuring they move smoothly through all Project Milestones, keep a focused attention on document control, project close out, and act as the alternate point of contact or customers in order to help ensure overall customer satisfaction. Act as liaison between Customers, PMs, Specialists, Sales Executives, Engineering, and the FBA Staff. Coordinate and attend Operations meetings. Administer financial reporting.

The insured reported on the TE&E that job was a Project Coordinator in the Infrastructure department and job duties included coordinating and performing project management, billing, financials, and subcontracts.

<u>Job Physical Demands</u>: Unknown
Not specified.

<u>Occupational Duties per eDOT</u>:
Reviews and evaluates engineering plans, maps, and reports. Coordinates with internal and external teams to achieve project goals and timely and accurate completion. Updates and maintains databases containing project and client information.

<u>Occupational Physical Demands per eDOT</u>: Light

- <u>Occasional</u> walking, standing, reaching at all levels, fingering, keyboarding, and accommodation
- <u>Frequent</u> sitting, handling, talking, hearing, and near acuity

**<u>LOCAL ECONOMY:</u>**
The employee lives in . Wake County falls within the Raleigh. NC, Metropolitan Statistical Area (MSA). A review was performed on current openings using Indeed.com. This review demonstrated that, in this MSA, duties and tasks are reflective of those reported by the DOT. Part-time openings were not found. Considering this information, it is reasonable to conclude that, in the insured's local economy, the occupation Project Coordinator Engineering is performed in the same manner as found in the national economy.

**<u>SUMMARY</u>:**
The physical demand level of the job is unknown. In the local and national economy per eDOT, the occupation requires light work.

I have not met with the Insured for the purpose of this review. All opinions are based on a review of medical records and resources listed only. Thank you for the opportunity to review this file. Please contact me if you have any questions regarding this report or if I can be of further assistance with this file.

Respectfully submitted,

*Electronically Signed*
Hanna Downing, M.Ed., CRC
Vocational Rehabilitation Consultant
Group Protection
Lincoln Financial Group

## Project Coordinator Engineering

**Alternate Titles**

Engineering Project Coordinator

**Primary Duty**

Reviews and evaluates engineering plans, maps and reports.

**Functions**

Coordinates with internal and external teams to achieve project goals and timely and accurate completion.

Updates and maintains databases containing project and client information.

DISCLAIMER: Occupational Assessor software application and reports are designed for use by qualified, experienced job experts and should be considered only a starting point for your research. You acknowledge that the Occupational Assessor software application, its reports, and your use of them are subject to the "Occupational Assessor Disclaimer" (accessible via the Help menu). Occupational Assessor data is licensed to subscribers for internal (see License Agreement) business use only; resale or public distribution of Occupational Assessor data is prohibited.

045782 Copyright© 2022
Patent No. 6,882,596 and 7,647,322
ERI Economic Research Institute

## Project Coordinator Engineering

**Specific Vocational Preparation (SVP): Level (8)**

Over 4 years up to and including 10 years

**Literacy Demands - Reasoning: Level (5)**

Apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical instructions in mathematical or diagrammatic form. Deal with several abstract and concrete variables.

**Literacy Demands - Mathematics: Level (5)**

Algebra: Work with exponents and logarithms, linear equations, quadratic equations, mathematical induction and binomial theorem, and permutations. Calculus: Apply concepts of analytic geometry, differentiations and integration of algebraic functions with applications. Statistics: Apply mathematical operations to frequency distributions, reliability and validity of tests, normal curve, analysis of variance, correlation techniques, chi-square application and sampling theory, and factor analysis.

**Literacy Demands - Language: Level (5)**

Reading: Read literature, book and play reviews, scientific and technical journals, abstracts, financial reports, and legal documents. Writing: Write novels, plays, editorials, journals, speeches, manuals, critiques, poetry, and songs. Speaking: Conversant in the theory, principles, and methods of effective and persuasive speaking, voice and diction, phonetics, and discussion and debate.

**Physical Demands - Strength Rating**

Light Work: Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to move objects. Physical demand requirements are in excess of those for Sedentary Work.

DISCLAIMER: Occupational Assessor software application and reports are designed for use by qualified, experienced job experts and should be considered only a starting point for your research. You acknowledge that the Occupational Assessor software application, its reports, and your use of them are subject to the "Occupational Assessor Disclaimer" (accessible via the Help menu). Occupational Assessor data is licensed to subscribers for internal (see License Agreement) business use only; resale or public distribution of Occupational Assessor data is prohibited.

045782 Copyright© 2022
Patent No. 6,862,596 and 7,647,322
ERI Economic Research Institute

ECONOMIC RESEARCH INSTITUTE

# Occupational Assessor®

Position Description

## Project Coordinator Engineering

**Selected Data Option:** Subject Matter Expert (SME), Internet Analysis & Original DOT
(An asterisk (*) indicates a field that is an added, enhanced measure not found in abandoned 1991 DOT.)

| | 1991 Archive DOT Value | New eDOT Value | Std. Dev |
|---|---|---|---|
| **eDOT code** | 019.167-012 | 019.167-012 | |
| **Occupational Code** | 019-Occupations in Architecture, Engineering, and Surveying, N.E.C. | 019-Occupations in Architecture, Engineering, and Surveying, N.E.C. | |
| **Education Code (CIP)** | | 14.19 | |
| **Worker Functions** | | | |
| **Data** | | 1-Coordinating | |
| **People** | | 6-Speaking-Signaling | |
| **Thing** | | 7-Handling | |
| **Additional Measures** | | | |
| **Creativity*** | | Occasionally | 0.471405 |
| **Administrative Activity*** | | Occasionally | 0.699206 |
| **Discretion Independent Judgment*** | | Constantly | 0.483046 |
| **Specific Vocational Preparation (SVP)** | | 8 | 0.875595 |
| **Education Level*** | | 9 - College degree or equivalent - knowledge a prerequisite for entry into profession | 0 |
| **Literacy Demands** | | | |
| **Mathematics Level** | | 5 | 0.483046 |
| **Language Level** | | 5 | 0.483046 |
| **Reasoning Level** | | 5 | 0.421637 |

**Temperaments**

Dealing with PEOPLE
Performing a VARIETY of duties
DIRECTING, controlling, or planning activities of others
Making JUDGMENTS and decisions

| | | | |
|---|---|---|---|
| **Mental & Stress Demands** | | | |
| **Understanding & Memory** | | | |
| **Memory*** | | Frequently | 0.471405 |
| **Short Instruction Memory*** | | Frequently | 0.666667 |
| **Detailed Instruction Memory*** | | Frequently | 0.816497 |

DISCLAIMER: Occupational Assessor software application and reports are designed for use by qualified, experienced job experts and should be considered only a starting point for your research. You acknowledge that the Occupational Assessor software application, its reports, and your use of them are subject to the "Occupational Assessor Disclaimer" (accessible via the Help menu). Occupational Assessor data is licensed to subscribers for internal (see License Agreement) business use only; resale or public distribution of Occupational Assessor data is prohibited.

045782 Copyright© 2022
Patent No. 6,662,586 and 7,647,322
ERI Economic Research Institute

## Project Coordinator Engineering

| | | |
|---|---|---|
| **Sustained Concentration & Persistence** | | |
| **Short Instruction Carrying Out*** | Frequently | 0.471405 |
| **Detailed Instruction Carrying Out*** | Frequently | 0.567646 |
| **Concentration & Attention*** | Frequently | 0.483046 |
| **Work Schedule*** | Frequently | 0.471405 |
| **Work Routine*** | Frequently | 0.471405 |
| **Work Distractions*** | Frequently | 0.666667 |
| **Work Decisions*** | Frequently | 0.843274 |
| **Work Completion*** | Frequently | 0.471405 |
| **Social Interaction** | | |
| **Public Interaction*** | Frequently | 0.483046 |
| **Assignment/Assistance*** | Frequently | 0.471405 |
| **Work Review*** | Occasionally | 0.699206 |
| **Peer Interaction*** | Frequently | 0.737865 |
| **Work Behavior*** | Occasionally | 0.699206 |
| **Adaptation** | | |
| **Adaptation to Change*** | Frequently | 0.666667 |
| **Hazard Awareness*** | Frequently | 0.971825 |
| **Travel*** | Frequently | 0.674949 |
| **Independent Planning*** | Frequently | 0.471405 |
| **Aptitudes** | | |
| **General Learning Ability** | 4-High | 0.316228 |
| **Verbal Aptitude** | 4-High | 0.316228 |
| **Numeric Aptitude** | 4-High | 0.421637 |
| **Spatial Aptitude** | 4-High | 0.471405 |
| **Form Perception** | 3-Medium | 0.516398 |
| **Clerical Perception** | 3-Medium | 0.483046 |
| **Motor Coordination** | 3-Medium | 0.483046 |
| **Finger Dexterity** | 3-Medium | 0.471405 |
| **Manual Dexterity** | 3-Medium | 0.421637 |
| **Eye-Hand-Foot Coordination** | 1-Markedly Low | 0.483046 |
| **Color Discrimination** | 1-Markedly Low | 0.516398 |

DISCLAIMER: Occupational Assessor software application and reports are designed for use by qualified, experienced job experts and should be considered only a starting point for your research. You acknowledge that the Occupational Assessor software application, its reports, and your use of them are subject to the "Occupational Assessor Disclaimer" (accessible via the Help menu). Occupational Assessor data is licensed to subscribers for internal (see License Agreement) business use only; resale or public distribution of Occupational Assessor data is prohibited.

045782 Copyright© 2022
Patent No. 6,862,596 and 7,647,322
ERI Economic Research Institute

## Project Coordinator Engineering

**Physical Demands**

| | | |
|---|---|---|
| **Strength** | Light Work | 0.471405 |
| **Occasionally Lift/Carry*** | 10 to < 20 pounds | 0.471405 |
| **Frequently Lift/Carry*** | Less than 10 pounds | 0.316228 |
| **Push/Pull*** | Occasionally | 0.737865 |
| **Walking*** | Occasionally | 0.666667 |
| **Sitting*** | Frequently | 0.737865 |
| **Standing*** | Occasionally | 0.699206 |
| **Sit/Stand Option*** | Occasionally | 0.737865 |
| **Climbing** | Not Present | 0.421637 |
| **Balancing** | Not Present | 0.316228 |
| **Stooping** | Not Present | 0.674949 |
| **Kneeling** | Not Present | 0.421637 |
| **Crouching** | Not Present | 0.483046 |
| **Crawling** | Not Present | 0.316228 |
| **Reaching** | Occasionally | 0.421637 |
| **Reaching Upward*** | Occasionally | 0.875595 |
| **Reaching Downward*** | Occasionally | 0.875595 |
| **Handling** | Frequently | 0.421637 |
| **Fingering** | Occasionally | 0.737865 |
| **Feeling** | Not Present | 0.516398 |
| **Keyboard Use*** | Occasionally | 0.699206 |
| **Talking** | Frequently | 0.421637 |
| **Hearing** | Frequently | 0.471405 |
| **Tasting/Smelling** | Not Present | 0 |
| **Near Acuity** | Frequently | 0.674949 |
| **Far Acuity** | Not Present | 0.483046 |
| **Depth Perception** | Not Present | 0.699206 |
| **Accommodation** | Occasionally | 0.699206 |
| **Color Vision** | Not Present | 0.674949 |
| **Field of Vision** | Not Present | 0.421637 |

DISCLAIMER: Occupational Assessor software application and reports are designed for use by qualified, experienced job experts and should be considered only a starting point for your research. You acknowledge that the Occupational Assessor software application, its reports, and your use of them are subject to the "Occupational Assessor Disclaimer" (accessible via the Help menu). Occupational Assessor data is licensed to subscribers for internal (see License Agreement) business use only; resale or public distribution of Occupational Assessor data is prohibited.

045782 Copyright© 2022
Patent No. 6,862,596 and 7,647,322
ERI Economic Research Institute

## Project Coordinator Engineering

**Environmental Conditions**

| | | |
|---|---|---|
| **Exposure to Weather** | Not Present | 0.483046 |
| **Extreme Cold** | Not Present | 0 |
| **Extreme Heat** | Not Present | 0.421637 |
| **Wet and/or Humid** | Not Present | 0.421637 |
| **Noise Intensity Level** | 3-Moderate | 0.471405 |
| **Vibration** | Not Present | 0 |
| **Atmospheric Conditions** | Not Present | 0.516398 |
| **Proximity to Moving Parts** | Not Present | 0.316228 |
| **Exposure to Eletrical Shock** | Not Present | 0 |
| **Working in High, Exposed Place** | Not Present | 0 |
| **Exposure to Radiation** | Not Present | 0 |
| **Working with Explosives** | Not Present | 0 |
| **Exposure to Toxic/Caustic Chemicals** | Not Present | 0.316228 |
| **Exposure to Injury from Biohazards*** | Occasionally | 0.567646 |
| **Other Environmental Conditions** | Not Present | 0.516398 |

DISCLAIMER: Occupational Assessor software application and reports are designed for use by qualified, experienced job experts and should be considered only a starting point for your research. You acknowledge that the Occupational Assessor software application, its reports, and your use of them are subject to the "Occupational Assessor Disclaimer" (accessible via the Help menu). Occupational Assessor data is licensed to subscribers for internal (see License Agreement) business use only; resale or public distribution of Occupational Assessor data is prohibited.

045782 Copyright© 2022
Patent No. 6,862,596 and 7,647,322
ERI Economic Research Institute

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

| | |
|---|---|
| Date: | March 3, 2022 |
| To: | DR RONALD PRUCHA |
| Attn: | PLEASE REPLY WITHIN 5 BUSINESS DAY |
| Fax: | (919) 235-6598 |
| From: | Johnna Shorter<br>Senior LTD Technical Claim Specialist II<br>Phone No.: Phone No.: (877) 294-3423<br>Secure Fax No.: (603) 334-7174 |
| Total Pages<br>(Including Cover): | 10 |
| RE:<br><br>Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (877) 294-3423 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

March 3, 2022

Dr. Ronald Prucha

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle
Claimant D.O.B.:

Dear Dr. Ronald Prucha:

We are the Disability Claim Administrator for your patient, Kim Naugle.

On March 1, 2022 a/an Internal Medicine Peer Review was performed to assist us in determining Ms. Naugle's eligibility for Long Term Disability (LTD) benefits. The results of this assessment demonstrate the following:

**PLEASE SEE FULL REPORT ATTACHED**

*"Relative to the claimant's chronic conditions, there is no evidence of any objective or diagnostic findings that would preclude activity. The claimant is being treated at the outpatient level for behavioral health related conditions. Relative to medical conditions, the claimant's cardiac presentation has been stable. While some elevated blood pressure readings are noted, treatment of hypertension would not necessitate restrictions or limitations. The claimant specifically states she has no physical impairments at the last clinical assessment on 02/07/2022. Chronic clinical conditions are stable. However, given her age and weight restrictions/limitations would be supported given her history of medical issues. Duration of the restrictions/limitations below are through 05/15/2022 to allow for reassessment.*

*Sitting: Unrestricted*
*Standing: Occasionally up to 20 minutes at one time and up to 2 hours per day*
*Walking: Occasionally up to 10 minutes at one time and up to 1 hour per day*
*Lifting/Carrying/Pushing/Pulling: Occasionally up to 20 pounds*
*Climbing Stairs: Occasionally*
*Climbing Ladders: Occasionally*
*Stooping: Occasionally*
*Kneeling: Occasionally*

*Crouching: Occasionally*
*Crawling: Occasionally*
*Reaching Overhead: Occasionally*
*Reaching at waist and desk level: Unrestricted*
*Reaching below waist and overhead: Occasionally*
*Use lower extremities for foot controls: Occasionally*
*Keyboarding: Unrestricted*

*In addition, the claimant was noted to have tested positive for Covid in the 02/07/2022 visit. The exact date of the positive test is unknown. In addition, there was no documentation of a positive lab test. However, based solely on the claimant's description of a positive test she would warrant restrictions to include no work for 10 days from the positive result. While the claimant self-treated for symptoms related to Covid, there is no manifestation of ongoing symptoms that would necessitate long-term restrictions or limitations. An impairing diagnosis from a family practice perspective has not been determined. "*

Please review the enclosed report by Wendell Goins, M.D., and provide any comments you wish to have considered. If you disagree with Wendell Goins, M.D.'s findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by March 9, 2022. Failure to provide the requested information may result in an adverse benefit determination. The information can be faxed to our office at our secure fax number (603) 334-7174 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Naugle allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Naugle's signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

Attachments: 12227902-MEDICAL-CP/PEER REVIEW-03.01.2022

**Wendell Goins, M.D.**
**Board Certified Addiction Medicine**
**Board Certified Family Medicine**
**Board Certified General Surgery**
**Board Certified Surgical Critical Care Medicine**

**CLAIMANT NAME: Kim Naugle**
**ECN #: 199863-2**
**CLAIM #: 12227902**
**DATE OF LOSS: 12/24/2020**
**DATE OF REVIEW: 03/01/2022**
**CASE TYPE: Long-Term Disability**

**MEDICAL RECORDS REVIEWED:**

1. 11/03/2020, Therapy Report, Sirrell Butler, LCSCW.
2. 11/24/2020, Progress Report, Malmouna Diop, NP.
3. 12/04/2020, Progress Report, Hemant Solomon, MD.
4. 12/11/2020, Progress Report, Ronald Prucha, MD.
5. 01/04/2021, Functional Mental Status Evaluation, Ronald Prucha, MD.
6. 02/08/2021, Functional Mental Status Evaluation, Eric Kelly, LCSW.
7. 02/12/2021, Progress Report, Ronald Prucha, MD.
8. 02/17/2021, Restrictions Form, Ronald Prucha, MD.
9. 02/24/2021, Behavioral Health Memorandum, Lincoln Financial Group.
10. 03/01/2021, Therapy Report, Eric Kelly, LCSW.
11. 04/01/2021, Therapy Report, Eric Kelly, LCSW.
12. 05/06/2021, Therapy Report, Eric Kelly, LCSW.
13. 05/17/2021, ICP Memo, Marcus Goldman, MD.
14. 05/20/2021, Therapy Report, Eric Kelly, LCSW.
15. 06/04/2021, Progress Report, Ronald Prucha, MD.
16. 06/18/2021, Progress Report, Hemant Solomon, MD.
17. 06/30/2021, Correspondence, Peter Burke,
18. 07/28/2021, Therapy Report, Eric Kelly, LCSW.
19. 09/07/2021, Therapy Report, Eric Kelly, LCSW.
20. 09/27/2021, Therapy Report, Eric Kelly, LCSW.
21. 10/01/2021, Progress Report, Jennie Buchkovich, PA-C.
22. 10/05/2021, Therapy Report, Eric Kelly, LCSW.
23. 10/20/2021, Therapy Report, Eric Kelly, LCSW.
24. 10/21/2021, Correspondence, Peter Burke,
25. 10/28/2021, Therapy Report, Eric Kelly, LCSW.
26. 10/29/2021, Progress Report, Jennie Buchkovich, PA-C.
27. 11/01/2021, Declaration of Claimant, Kim Naugle.

28. 11/09/2021, Peer Review, Candace Good, MD.
29. 11/10/2021, Peer Review, Mark Sims, MD.
30. 11/17/2021, Therapy Report, Eric Kelly, LCSW.
31. 12/01/2021, Correspondence, Peter Burke,
32. 12/08/2021, Peer Review, Mark Sims, MD.
33. 12/23/2021, Claim Information, Kim Naugle.
34. 12/29/2021, Individual Therapy Report, Eric Kelly, LCSW.
35. 01/30/2022, Activities Questionnaire, Lincoln Financial Group.
36. 02/05/2022, Therapy Report, Eric Kelly, LCSW.
37. 02/07/2022, Progress Report, Ronald Prucha, MD.

**HISTORY:** This case involves a now 58-year-old female with a date of loss of 12/24/2020. The documented diagnosis is anxiety disorder.

On 11/24/2020, the claimant was seen by Malmouna Diop, NP. The visit was performed by telemedicine. The claimant had a psychiatric history significant for PTSD, depression, and anxiety. Treatment had included Lexapro. Past history was significant for coronary artery bypass grafting. Medical history included hypertension, hyperlipidemia, congestive heart failure, acid reflux, obesity, and pain. There was a discussion related to use of additional medication. The claimant was going to address the use of medication with her cardiologist.

On 12/04/2020, the claimant was seen by Dr. Solomon. The claimant was seen for assessment of coronary artery disease. The claimant had a history of coronary artery bypass graft surgery on 08/07/2018. Most recent cardiac perfusion stress study from October 2019 showed normal findings with an ejection fraction of 73%. There was noted anxiety and depression. Medical history was positive for coronary artery disease, congestive heart failure, hypercholesterolemia, herpes, hypertension, sleep apnea, and arthritis. Examination demonstrated stable vital signs. There was a blood pressure 140/80. Heart was regular rate and rhythm. Lungs were clear. Coronary artery disease was stable.

On 12/11/2020, the claimant was seen by Dr. Prucha. The claimant was seen for follow-up of anxiety and depression. The claimant was to begin treatment with Paxil. The claimant had started treatment with Paxil.

On 06/18/2021, the claimant was seen by Dr. Solomon. The claimant was seen for a cardiac follow-up related to coronary artery disease. There was a discussion regarding bariatric surgery for weight loss. The claimant was encouraged exercise 30 minutes daily. Hydralazine dose was increased to address hypertension. Examination demonstrated a blood pressure of 170/90. There were no neurologic or musculoskeletal abnormalities. There was no additional change in treatment.

On 10/01/2021, the claimant was seen by Jennie Buchkovich, PA-C, for evaluation. The claimant was seen for a cardiology follow-up assessment. The claimant was seen for follow-up

of hypertension and coronary artery disease. Blood pressure remained elevated at 160/80. The claimant denied any symptoms of chest pain, dyspepsia, or palpitations. She was wearing a CPAP device at night and working on weight loss. Examination demonstrated the heart was regular rate and rhythm. Lungs were clear. There were no abdominal abnormalities. Neurologic and musculoskeletal examinations were benign. Weight loss measures and continued use of medication for hypertension was recommended.

On 10/29/2021, the claimant was seen by Jennie Buchkovich, PA-C. The claimant was seen for follow-up of obesity, coronary artery disease and hypertension. There were no listed subjective complaints. Examination noted a weight of 321 pounds. Blood pressure was 134/80. There was a mid systolic murmur. There were no abdominal or musculoskeletal abnormalities on examination. There was no interval change in the claimant's medication regimen. Continued weight loss measures were recommended.

On 02/07/2022, the claimant was seen by Dr. Prucha. The claimant had tested positive for Covid since the last visit. She continued treatment with supportive measures. The claimant requested a disability form/statement. The claimant stated that all of her issues are mental and emotional. She denied having any physical impairments. There were no medications prescribed or dispensed.

**DIAGNOSIS:** Anxiety disorder, unspecified

Medical / Surgical Conditions: Depression, prior cardiac issues, PTSD

**RESPONSE TO REFERRAL QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

History of coronary artery disease (I25.1) and coronary artery bypass grafting (Z95.1).

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Hypertension (I10), hyperlipidemia (E78.5), congestive heart failure (I50.9), gastroesophageal reflux disease, anxiety disorder, depressive disorder, posttraumatic stress disorder, and history of Covid.

**3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 6/22/21 (ltd benefit begin date) to - ongoing, and comment on the expected duration.**

Considering the entire clinical picture, the records do support an impairing diagnosis from a family practice perspective from 06/22/2021.

Relative to the claimant's chronic conditions, there is no evidence of any objective or diagnostic findings that would preclude activity. The claimant is being treated at the outpatient level for behavioral health related conditions. Relative to medical conditions, the claimant's cardiac presentation has been stable. While some elevated blood pressure readings are noted, treatment of hypertension would not necessitate restrictions or limitations. The claimant specifically states she has no physical impairments at the last clinical assessment on 02/07/2022. Chronic clinical conditions are stable. However, given her age and weight restrictions/limitations would be supported given her history of medical issues. Duration of the restrictions/limitations below are through 05/15/2022 to allow for reassessment.

Sitting: Unrestricted

Standing: Occasionally up to 20 minutes at one time and up to 2 hours per day

Walking: Occasionally up to 10 minutes at one time and up to 1 hour per day

Lifting/Carrying/Pushing/Pulling: Occasionally up to 20 pounds

Climbing Stairs: Occasionally

Climbing Ladders: Occasionally

Stooping: Occasionally

Kneeling: Occasionally

Crouching: Occasionally

Crawling: Occasionally

Reaching Overhead: Occasionally

Reaching at waist and desk level: Unrestricted

Reaching below waist and overhead: Occasionally

Use lower extremities for foot controls: Occasionally

Keyboarding: Unrestricted

In addition, the claimant was noted to have tested positive for Covid in the 02/07/2022 visit. The exact date of the positive test is unknown. In addition, there was no documentation of a positive lab test. However, based solely on the claimant's description of a positive test she would warrant restrictions to include no work for 10 days from the positive result. While the claimant self-treated for symptoms related to Covid, there is no manifestation of ongoing symptoms that would necessitate long-term restrictions or limitations. An impairing diagnosis from a family practice perspective has not been determined.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

There are no listed restrictions and limitations from a family practice perspective.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

The claimant has been treated appropriately for clinical symptoms.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

Nonmedical circumstances are not identified.

**AP CONTACT:**

I called the number listed (919-235-6575) on 2/16/22 at 11:36am CST and left a message for a return call on the general office voicemail.

My staff received a return call on 2/16/22 at 1:46pm CST from Dr. Prucha and I was unavailable to take the call; a message was left requesting a return phone call to an alternate number for Eric Kelly, LCSW (919-210-2070).

I called the number provided for Eric Kelly, LCSW (919-210-2070) on 2/22/22 at 10:30am CST and left a message for a return call on the general office voicemail.

My staff received a return call on 2/22/22 at 11:39am CST from Eric Kelly, LCSW and I discussed the case with Eric Kelly.

He stated that this claimant was unable to work due to her anxiety, depression, lethargy, and poor attention to detail and work. He did not know if and when she would be able to return to work. He did say that his conclusion was based on her own subjective complaints and his assessment of her coping skills. The additional information does not change the above opinions in this case from a family practice perspective.

Wendell Goins, M.D.
Board Certified Addiction Medicine
Board Certified Family Medicine
Board Certified General Surgery
Board Certified Surgical Critical Care Medicine

License: 9401199 NC
License: 17278 SC

Corporate Office

Exam Coordinators Network A division of Genex Services, LLC

Claimant Name: Kim Naugle
Claim Number: 12227902
Case Number: 199863-2

"I, Wendell A Goins, MD, am a physician duly licensed to practice medicine in the State of NC. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

Wendell A Goins MD — 3/1/2022

Signature of Physician — Date

Medical/Professional License # 9401199

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

| | |
|---|---|
| Date: | March 3, 2022 |
| To: | ERIC KELLY LCSW |
| Attn: | PLEASE REPLY WITHIN 5 BUSINESS DAYS |
| Fax: | (919) 210-2070 |
| From: | Johnna Shorter<br>Senior LTD Technical Claim Specialist II<br>Phone No.: Phone No.: (877) 294-3423<br>Secure Fax No.: (603) 334-7174 |
| Total Pages (Including Cover): | 9 |
| RE: | Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (877) 294-3423 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

March 3, 2022

Eric Kelly, Lcsw

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle
Claimant D.O.B.:

Dear Eric Kelly:

We are the Disability Claim Administrator for your patient, Kim Naugle.

On February 28, 2022 a/an Psychiatry Peer Review was performed to assist us in determining Ms. Naugle's eligibility for Long Term Disability (LTD) benefits. The results of this assessment demonstrate the following:

**PLEASE SEE FULL REPORT ATTACHED**

> *"Taking into consideration the entire clinical picture, the records do not support an impairing diagnosis from a psychiatric perspective from 06/22/2021 and ongoing.*
>
> *During the timeframe in question, the claimant was being managed for symptoms related to anxiety, depression, and posttraumatic stress. Clinical symptoms are largely stable. The claimant was treated on an outpatient basis with medication follow-up visits and with individual therapy. There was no evidence of any cognitive decline, psychosis, delusion, suicidal ideation, or requirements for higher levels of care or service. The claimant's clinical picture did not arise to the level of impairment. There were no clinical findings from 06/22/2021 moving forward that would preclude activity. On 02/07/2022, the claimant was still in psychotherapy and was making progress towards her goals. The claimant reported that all of her issues are mental and emotional and not physical. Examination demonstrated no focal abnormalities. "*

Please review the enclosed report by Stephen Gilman, M.D., and provide any comments you wish to have considered. If you disagree with Stephen Gilman, M.D.'s findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by March 9, 2022. Failure to provide the requested information may result in an adverse benefit determination. The information can be faxed to our

office at our secure fax number (603) 334-7174 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Naugle allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Naugle's signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

Attachments: 12227902-MEDICAL-CP/PEER REVIEW-02.28.2022

**Stephen Gilman, M.D.**
**Board Certified Psychiatry**
**Board Certified Addiction Psychiatry**

**CLAIMANT NAME: Kim Naugle**
**ECN #: 199863-1**
**CLAIM #: 12227902**
**DATE OF LOSS: 12/24/2020**
**DATE OF REVIEW: 02/28/2022**
**CASE TYPE: Long-Term Disability**

**MEDICAL RECORDS REVIEWED:**

1. 11/03/2020, Individual Therapy Report, Sirrell Butler, LCSCW.
2. 11/24/2020, Office Visit, Malmouna Diop, NP.
3. 12/04/2020, Office Visit, Hemant Solomon, MD.
4. 12/11/2020, Office Visit, Ronald Prucha, MD.
5. 01/04/2021, Mental Status Evaluation, Ronald Prucha, MD.
6. 02/08/2021, Mental Status Evaluation, Eric Kelly, LCSW.
7. 02/12/2021, Office Visit, Ronald Prucha, MD.
8. 02/17/2021, Restrictions Form, Ronald Prucha, MD.
9. 02/24/2021, Behavioral Health Memorandum, Lincoln Financial Group.
10. 03/01/2021, Individual Therapy Report, Eric Kelly, LCSW.
11. 04/01/2021, Individual Therapy Report, Eric Kelly, LCSW.
12. 05/06/2021, Individual Therapy Report, Eric Kelly, LCSW.
13. 05/17/2021, ICP Memo, Marcus Goldman, MD.
14. 05/20/2021, Individual Therapy Report, Eric Kelly, LCSW.
15. 06/04/2021, Office Visit, Ronald Prucha, MD.
16. 06/18/2021, Office Visit, Hemant Solomon, MD.
17. 06/30/2021, Letter, Peter Burke,
18. 07/28/2021, Individual Therapy Report, Eric Kelly, LCSW.
19. 09/07/2021, Individual Therapy Report, Eric Kelly, LCSW.
20. 09/27/2021, Individual Therapy Report, Eric Kelly, LCSW.
21. 10/01/2021, Office Visit, Jennie Buchkovich, PA-C.
22. 10/05/2021, Individual Therapy Report, Eric Kelly, LCSW.
23. 10/20/2021, Individual Therapy Report, Eric Kelly, LCSW.
24. 10/21/2021, Letter, Peter Burke,
25. 10/28/2021, Individual Therapy Report, Eric Kelly, LCSW.
26. 10/29/2021, Office Visit, Jennie Buchkovich, PA-C.
27. 11/01/2021, Declaration of Claimant, Kim Naugle.
28. 11/09/2021, Prior Review, Candace Good, MD.
29. 11/10/2021, Prior Review, Mark Sims, MD.

30. 11/17/2021, Individual Therapy Report, Eric Kelly, LCSW.
31. 12/01/2021, Letter, Peter Burke,
32. 12/08/2021, Prior Review, Mark Sims, MD.
33. 12/23/2021, Claim Information, Kim Naugle.
34. 12/29/2021, Individual Therapy Report, Eric Kelly, LCSW.
35. 01/30/2022, Activities Questionnaire, Lincoln Financial Group.
36. 02/05/2022, Individual Therapy Report, Eric Kelly, LCSW.
37. 02/07/2022, Office Visit, Ronald Prucha, MD.

**HISTORY:** This case involves a now 58-year-old female with a date of loss of 12/24/2020. The documented diagnosis is anxiety disorder.

On 11/03/2020, the claimant was seen for individual behavioral therapy. There was a noted diagnosis of anxiety disorder.

On 11/24/2020, the claimant was seen by Malmouna Diop, NP, for a telemedicine evaluation. The claimant was seen for a psychiatric assessment. The claimant presented to establish care. There was a noted history of anxiety, depression, and posttraumatic stress disorder. The claimant reported difficulty with symptoms over the past 10 years. Treatment had included Lexapro. The claimant denied any suicidal or homicidal ideation. Stressors included family and a high stress job environment. Medication use also included hydralazine, Synthroid, metoprolol, aspirin, multivitamins, and Benadryl. Medical history included hypertension, hyperlipidemia, history of heart attack, congestive heart failure, acid reflux, obesity, and pain. Examination demonstrated a linear and logical thought process. Thought content was unremarkable. The claimant was cooperative. Mood was depressed and affect was restricted. The claimant had a history of open-heart surgery. She was going to discuss the potential for additional medications with her cardiologist.

On 12/11/2020, the claimant was seen by Ronald Prucha, MD, for evaluation. The claimant was seen for follow-up of anxiety and depression. The claimant had started treatment with Paxil. Examination demonstrated stable vital signs. Heart was regular rate and rhythm. There was a normal psychiatric mood. The claimant denied any suicidal or homicidal ideation. The claimant was to continue with use of Paxil. There was no change in medication.

On 01/04/2021, a functional mental status evaluation form, completed by Dr. Prucha, noted a mental health referral was pending. The claimant was not capable of functioning at her current job.

On 02/08/2021, a functional mental status evaluation form, completed by Eric Kelly, LCSW, noted diagnosis of recurrent major depressive disorder, posttraumatic stress disorder and generalized anxiety disorder. Specific restrictions and limitations were not stated.

On 02/12/2021, the claimant was seen by Ronald Prucha, MD, for evaluation. The claimant remained on Paxil for treatment of anxiety and depression. The claimant was to continue with

medication at the same dose. She reported benefit. Examination demonstrated the claimant was alert and oriented. There were no focal examination abnormalities. There was no interval change the claimant's medication regimen.

On 02/17/2021, a restrictions form by Dr. Prucha, noted the claimant was undergoing mental health counseling and medication management. She was unable to perform the functions of her job.

On 03/01/2021, the claimant continued with individual behavioral health therapy.

On 06/04/2021, the claimant was seen by Ronald Prucha, MD, for evaluation. The claimant was seen for follow-up of depression and anxiety. The claimant reported an ankle injury after a twisting incident. The injury had occurred two days prior. She reported pain rated a 5/10 in severity. Examination demonstrated no behavioral health abnormalities. There was no acute distress. There was no suicidal or homicidal ideation. There were no musculoskeletal findings. The claimant was diagnosed with anxiety, depression, work stress, right ankle pain, diabetes and obesity. The claimant remained on Paxil for treatment of anxiety and depression.

On 07/28/2021, the claimant continued with individual psychotherapy treatment.

On 11/17/2021, the claimant continued with individual behavioral therapy. The session was performed via telemedicine. There was a working diagnosis of generalized anxiety disorder.

On 12/29/2021, an additional session of individual behavioral therapy was performed.

On 02/05/2022, the claimant continued treatment with individual behavioral therapy.

On 02/07/2022, the claimant was seen by Ronald Prucha, MD, for evaluation. Since her last assessment, the claimant had been diagnosed with Covid. She reported feeling sick for about three weeks prior to her diagnosis and was currently doing better. The claimant was in the process of disability. A lawyer was involved in her care. The claimant asked the provider to write a statement regarding her capacity. The claimant remained in psychotherapy and was making progress towards her goals. The claimant reported that all of her issues are mental and emotional and not physical. There were no additional symptoms. Examination demonstrated no focal abnormalities. Symptoms attributed to Covid were stable and self-limited. The claimant was to continue with conservative measures including fluid, rest and over-the-counter agents. There was no indication for prescription medications.

**DIAGNOSIS:** Anxiety Disorder, unspecified

**RESPONSE TO REFERRAL QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

Generalized anxiety disorder (F41.9).

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Major depressive disorder (F32.9), posttraumatic stress disorder (F43.12), coronary artery disease (I25.1), hypertension and obstructive sleep apnea.

**3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 6/22/21 (ltd benefit begin date) to - ongoing, and comment on the expected duration.**

Taking into consideration the entire clinical picture, the records do not support an impairing diagnosis from a psychiatric perspective from 06/22/2021 and ongoing.

During the timeframe in question, the claimant was being managed for symptoms related to anxiety, depression, and posttraumatic stress. Clinical symptoms are largely stable. The claimant was treated on an outpatient basis with medication follow-up visits and with individual therapy. There was no evidence of any cognitive decline, psychosis, delusion, suicidal ideation, or requirements for higher levels of care or service. The claimant's clinical picture did not arise to the level of impairment. There were no clinical findings from 06/22/2021 moving forward that would preclude activity. On 02/07/2022, the claimant was still in psychotherapy and was making progress towards her goals. The claimant reported that all of her issues are mental and emotional and not physical. Examination demonstrated no focal abnormalities.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

The reviewed records do not support restrictions and limitations placed by the treating providers. As noted above, it is not established that the claimant's behavioral health related symptoms support impairment for the timeframe in question. The claimant is not required any escalating needs for care or level of service. Clinical symptoms have been largely stable.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

The medical management recommended by the providers and followed by the claimant has been reasonable and consistent with the claimant symptoms; however, there is not a current diagnosis that would arise to the level of impairment.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

There are no nonmedical circumstances identified in the medical records that are adversely impacting work.

**AP CONTACT:**

I called the number listed (919-237-1337) on 2/16/22 at 11:25am CST and spoke with Jenia who transferred me to Specialty Systems and I left a message for a return call on the general office voicemail.

I called the number listed (919-237-1337) on 2/22/22 at 8:00am CST and left a message for a return call on the general office voicemail. At the time of submission no returned phone calls had been received.

Stephen Gilman, M.D.
Board Certified Psychiatry
Board Certified Addiction Psychiatry
License: 206351 NY

ECN

Corporate Office

Exam Coordinators Network A division of Genex Services, LLC

Claimant Name: Kim Naugle
Claim Number: 12227902
Case Number: 199863-1

"I, Stephen Gilman, MD, am a physician duly licensed to practice medicine in the State of NY. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

2/28/2022

Signature of Physician — Date
Medical/Professional License # 206351

| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Thursday, March 3, 2022 1:57:28 PM |
| To: | ERICJKELLYLCSW@GMAIL.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Siemens Claim No. 12227902 Kim Naugle |
| Attachments: | xd8rj0wmaskztnuensxn_12292832.pdf; |

---

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

March 3, 2022

Eric Kelly, Lcsw

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle
Claimant D.O.B.:

Dear Eric Kelly:

We are the Disability Claim Administrator for your patient, Kim Naugle.

On February 28, 2022 a/an Psychiatry Peer Review was performed to assist us in determining Ms. Naugle's eligibility for Long Term Disability (LTD) benefits. The results of this assessment demonstrate the following:

PLEASE SEE FULL REPORT ATTACHED

> *"Taking into consideration the entire clinical picture, the records do not support an impairing diagnosis from a psychiatric perspective from 06/22/2021 and ongoing.*
>
> *During the timeframe in question, the claimant was being managed for symptoms related to anxiety, depression, and posttraumatic stress. Clinical symptoms are largely stable. The claimant was treated on an outpatient basis with medication follow-up visits and with individual therapy. There was no evidence of any cognitive decline, psychosis, delusion, suicidal ideation, or requirements for higher levels of care or service. The claimant's clinical picture did not arise to the level of impairment. There were no clinical findings from 06/22/2021 moving forward that would preclude activity. On 02/07/2022, the claimant was still in psychotherapy and was making progress towards her goals. The claimant reported that all of her issues are mental and emotional and not physical. Examination demonstrated no focal abnormalities. "*

Please review the enclosed report by Stephen Gilman, M.D. Board Certified Psychiatry, and provide any comments you wish to have considered. If you disagree with
Stephen Gilman, M.D. Board Certified Psychiatry's findings, please detail the specific areas with which you disagree and provide medical documentation to support your position.

We ask that you provide this information by March 9, 2022. Failure to provide the requested

information may result in an adverse benefit determination. The information can be faxed to our office at our secure fax number (603) 334-7174 or mailed to the above address.

Although HIPAA does not apply to disability insurance carriers, we understand your responsibilities under HIPAA as a health care provider, and our associated responsibility of ensuring this information is protected against deliberate or inadvertent misuse or disclosure.

As the insurance carrier providing employer sponsored Long Term Disability (LTD) benefits coverage to your patient, we have enclosed a HIPAA compliant authorization signed by Ms. Naugle allowing the release of information to our company. This authorization specifically allows you to release medical information to us and is valid for two years from the date of Ms. Naugle's signature.

If you have any questions regarding this matter, please contact me.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

Attachments: 12227902-MEDICAL-CP/PEER REVIEW-02.28.2022

**Stephen Gilman, M.D.**
**Board Certified Psychiatry**
**Board Certified Addiction Psychiatry**

**CLAIMANT NAME: Kim Naugle**
**ECN #: 199863-1**
**CLAIM #: 12227902**
**DATE OF LOSS: 12/24/2020**
**DATE OF REVIEW: 02/28/2022**
**CASE TYPE: Long-Term Disability**

**MEDICAL RECORDS REVIEWED:**

1. 11/03/2020, Individual Therapy Report, Sirrell Butler, LCSCW.
2. 11/24/2020, Office Visit, Malmouna Diop, NP.
3. 12/04/2020, Office Visit, Hemant Solomon, MD.
4. 12/11/2020, Office Visit, Ronald Prucha, MD.
5. 01/04/2021, Mental Status Evaluation, Ronald Prucha, MD.
6. 02/08/2021, Mental Status Evaluation, Eric Kelly, LCSW.
7. 02/12/2021, Office Visit, Ronald Prucha, MD.
8. 02/17/2021, Restrictions Form, Ronald Prucha, MD.
9. 02/24/2021, Behavioral Health Memorandum, Lincoln Financial Group.
10. 03/01/2021, Individual Therapy Report, Eric Kelly, LCSW.
11. 04/01/2021, Individual Therapy Report, Eric Kelly, LCSW.
12. 05/06/2021, Individual Therapy Report, Eric Kelly, LCSW.
13. 05/17/2021, ICP Memo, Marcus Goldman, MD.
14. 05/20/2021, Individual Therapy Report, Eric Kelly, LCSW.
15. 06/04/2021, Office Visit, Ronald Prucha, MD.
16. 06/18/2021, Office Visit, Hemant Solomon, MD.
17. 06/30/2021, Letter, Peter Burke,
18. 07/28/2021, Individual Therapy Report, Eric Kelly, LCSW.
19. 09/07/2021, Individual Therapy Report, Eric Kelly, LCSW.
20. 09/27/2021, Individual Therapy Report, Eric Kelly, LCSW.
21. 10/01/2021, Office Visit, Jennie Buchkovich, PA-C.
22. 10/05/2021, Individual Therapy Report, Eric Kelly, LCSW.
23. 10/20/2021, Individual Therapy Report, Eric Kelly, LCSW.
24. 10/21/2021, Letter, Peter Burke,
25. 10/28/2021, Individual Therapy Report, Eric Kelly, LCSW.
26. 10/29/2021, Office Visit, Jennie Buchkovich, PA-C.
27. 11/01/2021, Declaration of Claimant, Kim Naugle.
28. 11/09/2021, Prior Review, Candace Good, MD.
29. 11/10/2021, Prior Review, Mark Sims, MD.

30. 11/17/2021, Individual Therapy Report, Eric Kelly, LCSW.
31. 12/01/2021, Letter, Peter Burke,
32. 12/08/2021, Prior Review, Mark Sims, MD.
33. 12/23/2021, Claim Information, Kim Naugle.
34. 12/29/2021, Individual Therapy Report, Eric Kelly, LCSW.
35. 01/30/2022, Activities Questionnaire, Lincoln Financial Group.
36. 02/05/2022, Individual Therapy Report, Eric Kelly, LCSW.
37. 02/07/2022, Office Visit, Ronald Prucha, MD.

**HISTORY:** This case involves a now 58-year-old female with a date of loss of 12/24/2020. The documented diagnosis is anxiety disorder.

On 11/03/2020, the claimant was seen for individual behavioral therapy. There was a noted diagnosis of anxiety disorder.

On 11/24/2020, the claimant was seen by Malmouna Diop, NP, for a telemedicine evaluation. The claimant was seen for a psychiatric assessment. The claimant presented to establish care. There was a noted history of anxiety, depression, and posttraumatic stress disorder. The claimant reported difficulty with symptoms over the past 10 years. Treatment had included Lexapro. The claimant denied any suicidal or homicidal ideation. Stressors included family and a high stress job environment. Medication use also included hydralazine, Synthroid, metoprolol, aspirin, multivitamins, and Benadryl. Medical history included hypertension, hyperlipidemia, history of heart attack, congestive heart failure, acid reflux, obesity, and pain. Examination demonstrated a linear and logical thought process. Thought content was unremarkable. The claimant was cooperative. Mood was depressed and affect was restricted. The claimant had a history of open-heart surgery. She was going to discuss the potential for additional medications with her cardiologist.

On 12/11/2020, the claimant was seen by Ronald Prucha, MD, for evaluation. The claimant was seen for follow-up of anxiety and depression. The claimant had started treatment with Paxil. Examination demonstrated stable vital signs. Heart was regular rate and rhythm. There was a normal psychiatric mood. The claimant denied any suicidal or homicidal ideation. The claimant was to continue with use of Paxil. There was no change in medication.

On 01/04/2021, a functional mental status evaluation form, completed by Dr. Prucha, noted a mental health referral was pending. The claimant was not capable of functioning at her current job.

On 02/08/2021, a functional mental status evaluation form, completed by Eric Kelly, LCSW, noted diagnosis of recurrent major depressive disorder, posttraumatic stress disorder and generalized anxiety disorder. Specific restrictions and limitations were not stated.

On 02/12/2021, the claimant was seen by Ronald Prucha, MD, for evaluation. The claimant remained on Paxil for treatment of anxiety and depression. The claimant was to continue with

medication at the same dose. She reported benefit. Examination demonstrated the claimant was alert and oriented. There were no focal examination abnormalities. There was no interval change the claimant's medication regimen.

On 02/17/2021, a restrictions form by Dr. Prucha, noted the claimant was undergoing mental health counseling and medication management. She was unable to perform the functions of her job.

On 03/01/2021, the claimant continued with individual behavioral health therapy.

On 06/04/2021, the claimant was seen by Ronald Prucha, MD, for evaluation. The claimant was seen for follow-up of depression and anxiety. The claimant reported an ankle injury after a twisting incident. The injury had occurred two days prior. She reported pain rated a 5/10 in severity. Examination demonstrated no behavioral health abnormalities. There was no acute distress. There was no suicidal or homicidal ideation. There were no musculoskeletal findings. The claimant was diagnosed with anxiety, depression, work stress, right ankle pain, diabetes and obesity. The claimant remained on Paxil for treatment of anxiety and depression.

On 07/28/2021, the claimant continued with individual psychotherapy treatment.

On 11/17/2021, the claimant continued with individual behavioral therapy. The session was performed via telemedicine. There was a working diagnosis of generalized anxiety disorder.

On 12/29/2021, an additional session of individual behavioral therapy was performed.

On 02/05/2022, the claimant continued treatment with individual behavioral therapy.

On 02/07/2022, the claimant was seen by Ronald Prucha, MD, for evaluation. Since her last assessment, the claimant had been diagnosed with Covid. She reported feeling sick for about three weeks prior to her diagnosis and was currently doing better. The claimant was in the process of disability. A lawyer was involved in her care. The claimant asked the provider to write a statement regarding her capacity. The claimant remained in psychotherapy and was making progress towards her goals. The claimant reported that all of her issues are mental and emotional and not physical. There were no additional symptoms. Examination demonstrated no focal abnormalities. Symptoms attributed to Covid were stable and self-limited. The claimant was to continue with conservative measures including fluid, rest and over-the-counter agents. There was no indication for prescription medications.

**DIAGNOSIS:** Anxiety Disorder, unspecified

**RESPONSE TO REFERRAL QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

Generalized anxiety disorder (F41.9).

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Major depressive disorder (F32.9), posttraumatic stress disorder (F43.12), coronary artery disease (I25.1), hypertension and obstructive sleep apnea.

**3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 6/22/21 (ltd benefit begin date) to - ongoing, and comment on the expected duration.**

Taking into consideration the entire clinical picture, the records do not support an impairing diagnosis from a psychiatric perspective from 06/22/2021 and ongoing.

During the timeframe in question, the claimant was being managed for symptoms related to anxiety, depression, and posttraumatic stress. Clinical symptoms are largely stable. The claimant was treated on an outpatient basis with medication follow-up visits and with individual therapy. There was no evidence of any cognitive decline, psychosis, delusion, suicidal ideation, or requirements for higher levels of care or service. The claimant's clinical picture did not arise to the level of impairment. There were no clinical findings from 06/22/2021 moving forward that would preclude activity. On 02/07/2022, the claimant was still in psychotherapy and was making progress towards her goals. The claimant reported that all of her issues are mental and emotional and not physical. Examination demonstrated no focal abnormalities.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

The reviewed records do not support restrictions and limitations placed by the treating providers. As noted above, it is not established that the claimant's behavioral health related symptoms support impairment for the timeframe in question. The claimant is not required any escalating needs for care or level of service. Clinical symptoms have been largely stable.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

The medical management recommended by the providers and followed by the claimant has been reasonable and consistent with the claimant symptoms; however, there is not a current diagnosis that would arise to the level of impairment.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

There are no nonmedical circumstances identified in the medical records that are adversely impacting work.

**AP CONTACT:**

I called the number listed (919-237-1337) on 2/16/22 at 11:25am CST and spoke with Jenia who transferred me to Specialty Systems and I left a message for a return call on the general office voicemail.

I called the number listed (919-237-1337) on 2/22/22 at 8:00am CST and left a message for a return call on the general office voicemail. At the time of submission no returned phone calls had been received.

Stephen Gilman, M.D.
Board Certified Psychiatry
Board Certified Addiction Psychiatry
License: 206351 NY

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
[illegible]
[illegible]
Toll Free: [illegible]
Local: [illegible]
Fax: [illegible]
E-mail: [illegible] • Web: [illegible]

Claimant Name: Kim Naugle
Claim Number: 12227902
Case Number: 199863-1

"I, Stephen Gilman, MD, am a physician duly licensed to practice medicine in the State of NY. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

2/28/2022

Signature of Physician Date
Medical/Professional License # 206351

**From:**Shorter, Johnna
**Sent:**Thu, 3 Mar 2022 19:45:01 +0000
**To:**ERICJKELLYLCSW@GMAIL.COM
**Subject:**KIM NAUGLE LTD 12227902

Eric Kelly-

Thank your return call in response to our medical review request. Providing an email to reply to. Thank you


**Johnna Shorter**
Senior LTD Claim Specialist II

**Lincoln National Corporation**
LincolnFinancial.com

800-210-0268 x 16505 Office

603-334-7174 Fax

**From:** Eric Kelly <ericjkellylcsw@gmail.com>
**Sent:** Thu, 3 Mar 2022 14:48:36 -0500
**To:** Shorter, Johnna
**Subject:** Re: KIM NAUGLE LTD 12227902

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi Johnna,

No problem. I reviewed and agreed with the assessment findings for this patient.

Thank you,

Eric Kelly,
MSW, LCSW

On Thu, Mar 3, 2022 at 2:45 PM Shorter, Johnna <Johnna.Shorter@lfg.com> wrote:

Eric Kelly-

Thank your return call in response to our medical review request. Providing an email to reply to.  Thank you

**Johnna Shorter**
Senior LTD Claim Specialist II

**Lincoln National Corporation**
LincolnFinancial.com

800-210-0268 x 16505
Office

603-334-7174 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the

sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

Project Coordinator

I. Basic Function

This position works closely with the Operations Manager and Project Managers within SBT (BAU, FIS, SES). The goal of the position is to allow Project Managers and Supervisors to focus on job execution, while ensuring implementation of our core business processes. Coordinators also act as the HUB on all projects ensuring they move smoothly through all Project Milestones, keep a focused attention on document control, project close out, and act as the alternate point of contact for customers in order to help ensure overall customer satisfaction.

II. Essential Duties

Manage the new booking process, ensure booking package is complete. Support PM with directed duties pertaining to projects. Prepare customer training documents. Act as liaison between Customers, PMs, Specialists, Sales Executives, Engineering and the FBA Staff. Track and process billing approvals, distribution, and vendor submissions. Collect and communicate required documentation to facilitate payment. Obtain transmittals and receipts for transfers.

Create purchase requisition for Subcontractors from finalized subcontractor price & scope. Set up subcontractor in BOM,
assign network, network activity and delivery date. Monitor monthly claims to ensure Operations Manager approval, submit for processing. Verify specialist timesheet submissions for approval through month end. Assist with Month End Close for PMs. Ensure all jobs are reviewed and claims are processed in Audit Report. Review PM Milestone sheets and update Project Milestones in SAP during month close. Monitor all closed jobs; ensure all are billed 100%. Run automated TECO process at the POC level. Partner with Solutions to Service Turnover Coordinator.

Administer Financial Reporting for OMs and PMs including Good Receipts and Monthly Cost center Comparison Report.
Manage Sales to Ops and Solutions to ServiceTurnover, schedule weekly meetings, prepare agenda for projects to be turned over, ensure appropriate approvals. Process claims, make adjustments in SAP, provide PMs with project documentation upon completion.

Coordinate and attend Operations meetings. Coordinate Employee Satisfaction Events for the Operations Team. Manage each Divisions Travel/Training costs. Project filing. Other duties as assigned.

III. Knowledge, Skills & Abilities

HS diploma or equivalent required. 1-2 years of vocation/technical training or an Associates degree may be required. Specialized skill training/certification may be required. Demonstrates leading-edge or extensive knowledge in a specialty area and of tasks and responsibilities. Typically, 8+ years of successful experience in area of responsibility and successful demonstration of Key Responsibilities and Knowledge as presented above.

**From:**Shorter, Johnna
**Sent:**Thu, 3 Mar 2022 19:29:10 +0000
**To:**Monica L. Reynolds
**Cc:**Peter H. Burke
**Subject:**RE: Kim Naugle - 12227902
**Importance:**High

Good afternoon Peter and Monica-

I wanted to give you an update on Kim Naugle's LTD claim # 12227902. I have received both reports back from Psychiatry and an Internal Medical 3rd party peer reviews. They have been sent to Ms Naugle's providers for review and comment. They were sent to:

**Internal Med Peer Review** – Dr RONALD PRUCHA faxed to (919) 235-6598 for review. Must reply by end of business day Wednesday 3/9/22 deadline.
**Psychiatry Peer Review** - ERIC KELLY, LCSW – emailed to ERICJKELLYLCSW@GMAIL.COM as the fax number he lists as 919-210-2070 failed and seems he simply office phone number in error(below). I found his email on the web site and sent it that way as well as left him a voicemail explaining I was sending the report over for review and comment with a deadline of end of business day 3/9/22. If you have a fax number for him, please provide but it appears the email went through without issue.


Eric Kelly, LCSW - Behavioral Wellness Specialist (919)210-2070
Examiner's Name (Please Print) | Title/Specialty | Tax ID# | Telephone No. | Fax No.
Signature required: Eric Kelly, MSW, LCSW Date: 2/8/22

Thank you,

**Johnna Shorter**
Senior LTD Technical Claim Specialist II
PO Box 2578
Omaha NE 68182-9688
**Lincoln Financial Group**
LincolnFinancial.com

877-353-6404 ext. 16505 Office

603-334-7174 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**




**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Friday, February 11, 2022 3:42 PM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Cc:** Peter H. Burke <PHBurke@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

Johnna,

Attached are additional office notes from Avance Care and the Functional Mental Status Evaluation completed by Eric Kelly, MSW, LCSW to be included in Ms. Naugle's medical review.

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office: 336-333-9899 | mlreynolds@crumleyroberts.com*

**From:** Shorter, Johnna [mailto:Johnna.Shorter@lfg.com]
**Sent:** Thursday, February 10, 2022 2:40 PM
**To:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

**[EXTERNAL]**

Good afternoon,

Information Received.  Last day of Notice and is today so I am sending this for a medical review.  As as long as we get the form/letter before the review is complete, I will add it!  This can take up to 2 weeks.

Thank you,
Johnna

---

**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Thursday, February 10, 2022 2:44 PM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Cc:** Peter H. Burke <PHBurke@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

Johnna,

Attached are the following documents from Ms. Naugle:

Avance Care/Eric Kelly Notes from 1/12/2021 & 2/5/2021
WakeMed/Dr. Prucha notes from 2/7/2022
Letter from Dr. Prucha (in lieu of Lincoln's form)
Current Social Security Benefit Letter - It confirms that Ms. Naugle has not received SSDB as of this date.

Eric Kelly completed Lincoln's Mental Health Assessment, but informed Ms. Naugle that it must be sent through their authorized records department to our office. The facility would not provide Ms. Naugle with a copy of the completed form. We will forward the completed form as soon as it is received.

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office:  336-333-9899 | mlreynolds@crumleyroberts.com*

---

**From:** Shorter, Johnna [mailto:Johnna.Shorter@lfg.com]
**Sent:** Tuesday, February 1, 2022 1:08 PM
**To:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

**[EXTERNAL]**

Thank you.  Please let me know when the file is complete and ready for review.  This file will be sent for a peer review on day 45 (2/10/22) of notice and proof but we have a complete file, I can send early.

Thank you,



**Johnna Shorter**
Senior LTD Technical Claim
Specialist II
PO Box 2578
Omaha NE 68182-9688
**Lincoln Financial Group**

800-210-0268 x 16505 Office

603-334-7174 Fax

LincolnFinancial.com

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**




---

**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Tuesday, February 1, 2022 12:39 PM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Cc:** Peter H. Burke <PHBurke@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

Johnna,

I am responding to Lincoln's letter dated December 28, 2021 wherein they requested medical records and completed forms from Ms. Naugle. Attached are the completed forms from Ms. Naugle.

Also attached are Ms. Naugle's updated medical records from the following:

Avance Therapy

Dr. Prucha
Wake Med Cardiology

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office:  336-333-9899 | mlreynolds@crumleyroberts.com*

---

**From:** Shorter, Johnna [mailto:Johnna.Shorter@lfg.com]
**Sent:** Thursday, January 27, 2022 3:02 PM
**To:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

**[EXTERNAL]**

Thank you, that works.  800-210-0268 x 16505

**Johnna Shorter**
Senior LTD Technical Claim
Specialist II
PO Box 2578
Omaha NE 68182-9688
**Lincoln Financial Group**
LincolnFinancial.com

800-210-0268 x 16505 Office

603-334-7174 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**




**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Thursday, January 27, 2022 11:44 AM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Subject:** RE: Kim Naugle - 12227902

Let's schedule for 1:30pm EST on 2/1/2022. I will have Mr. Burke initiate the call to you and have Ms. Naugle on the line. What is the best contact number for you?

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office: 336-333-9899 | mlreynolds@crumleyroberts.com*

**From:** Shorter, Johnna [mailto:Johnna.Shorter@lfg.com]
**Sent:** Thursday, January 27, 2022 10:10 AM
**To:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

**[EXTERNAL]**

Thank you for the update. I am available anytime after 1pm est on 2/1/22

Johnna

**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Thursday, January 27, 2022 10:34 AM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Cc:** Peter H. Burke <PHBurke@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Johnna,

Ms. Naugle just contacted us back and she has been sick with COVID and should be getting us the completed forms within the next few days. She is available to do the interview on 2/1/2022. Please let me know your availability between 11:00am to 2:00pm EST.

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office:  336-333-9899 | mlreynolds@crumleyroberts.com*

---

**From:** Shorter, Johnna [mailto:Johnna.Shorter@lfg.com]
**Sent:** Tuesday, January 25, 2022 10:04 AM
**To:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

**[EXTERNAL]**

Monica –

My meeting just canceled for Thursday so I could make anything after 11 am est work now for the initial LTD interview w Ms Naugle (just as another option).

Johnna

---

**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Monday, January 24, 2022 5:13 PM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Subject:** RE: Kim Naugle - 12227902

Letters should be addressed to Peter Burke but sent to my email address – mlreynolds@crumleyroberts.com. I will then forward to Mr. Burke. This is the way her prefers it.

Also, do you have any availability for the LTD interview on February 1, 2022 between 11:00am to 2:00pm CST?  If not Feb 1st, let me know your availability the remainder of that week. Thanks.

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office:  336-333-9899 | mlreynolds@crumleyroberts.com*

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to

which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

| | |
|---|---|
| Date: | March 2, 2022 |
| To: | CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | ATTN: PETER BURKE |
| Fax: | (877) 293-8687 |
| From: | Johnna Shorter<br>Senior LTD Technical Claim Specialist II<br>Phone No.: Phone No.: (877) 294-3423<br>Secure Fax No.: (603) 334-7174 |
| Total Pages (Including Cover): | 25 |
| RE:<br><br>Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (877) 294-3423 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

March 2, 2022

Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

To Whom It May Concern:

The Lincoln National Life Insurance Company is responsible for managing claims for benefits under the Siemens Long Term Disability (LTD) Insurance Policy.

We previously wrote to Ms. Naugle on December 28, 2021, indicating that we required additional time to render a determination on her LTD claim. Due to extenuating circumstances, we require an additional thirty days to render a full and fair determination on her claim for benefits under the Policy. Currently, we are awaiting the report from the Peer Medical Reviewers of medical records submitted. We expect to make a determination on her claim no later than March 12, 2022.

We apologize for any inconvenience caused by this delay and will make every effort to render a determination as soon as possible. In the interim, should you have any questions pertaining to the status of Ms. Naugle's claim, please contact me at the telephone number below.

If anything changes with this timeframe, we will notify you.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

Attachments: 12227902-REQUEST-CLAIMANT PROOF OF DISABILITY/FORMS-12.28.2021

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

| | |
|---|---|
| Date: | December 28, 2021 |
| To: | LAUREN BEST<br>CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | |
| Fax: | (877) 293-8687 |
| From: | Johnna Shorter<br>Senior LTD Technical Claim Specialist II<br>Phone No.: Phone No.: (877) 294-3423<br>Secure Fax No.: (603) 334-7174 |
| Total Pages (Including Cover): | 23 |
| RE: | Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (877) 294-3423 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

December 28, 2021

Lauren Best
Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

Dear Lauren Best:

The Lincoln National Life Insurance Company is responsible for managing claims for Long Term Disability (LTD) benefits under Siemens's Group Disability Policy. We are writing in reference to Kim Naugle's claim for LTD benefits under the Policy.

We are currently reviewing Ms. Naugle's eligibility for disability benefits, and are in need of additional information.

On December 28, 2021, we requested All treatment notes, diagnostic test results, procedure reports and your entire workers compensation file from your attorney at Crumley Roberts Attorneys at Law. This information is necessary to complete our initial claims investigation. Please provide us with the following information to assist us with our review of Ms. Naugle's eligibility for benefits:

- Office treatment notes, test results, operative reports, prescription histories, and treatment plans from December 23, 2020 through the present from all treating providers

If there are any other attending physicians or specialists, including physical therapy providers, that we are unaware of, please have them forward all medical records pertinent to Ms. Naugle's disability within the timeframe stated above.

Please complete the forms indicated below and return them to our office by February 10, 2022:

X Activities Questionnaire Form
X Agreement Concerning Benefits Form
X Functional Capacities Form

X Authorization - Medical
X Claimant Supplementary Statement
X Family Information Questionnaire
X Functional Status Evaluation
X Training Education Experience
X Workers' Compensation Information Form
X Authorization
__ Combined Claimant Statement**NOT REQUIRED**
__ Other

Siemens's LTD Policy requires that, in order to receive benefits, Ms. Naugle provide proof of disability within a required timeframe. Her cooperation in providing the requested information is essential to our claim investigation.

In the absence of this information, Ms. Naugle's claim may be denied.

We ask that Ms. Naugle provide us with this information no later than February 10, 2022 as required under the terms of the Policy.

If Ms. Naugle has any questions regarding this matter, please contact me.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

Attachments: Activities Questionnaire Form
Agreement Concerning Benefits Form
Functional Capacities Form
Authorization - Medical
Claimant Supplementary Statement
Family Information Questionnaire
Functional Status Evaluation
Training Education Experience
Workers' Compensation Information Form
Authorization
Combined Claimant Statement

# ACTIVITIES QUESTIONNAIRE

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return To:** Johnna Shorter ____________



EMPLOYEE/CLAIMANT NAME: Kim Naugle ____________

CLAIM NO: 12227902 ____________ DATE OF BIRTH: ________

EMPLOYER/SPONSOR: Siemens ____________

**TO BE COMPLETED BY THE CLAIMANT:**

Please answer the following questions and return the form to The Lincoln National Life Insurance Company.

How long are you able to:

sit ____________ stand ____________ walk ____________

How many hours a day do you:

sit ____________ stand ____________ walk ____________

Do you take a nap during the day?

Yes____________ No ____________

If Yes, for how long? ____________ At what time of the day?____________

How many hours a day do you spend in bed?____________

Do you require any assistive devices such as a:

cane ________ walker________ crutches ________ wheelchair ________ other________

How long are you able to sit in a car?____________

Do you hold a valid driver's license?

Yes____________ No ____________

If No, please explain: ____________

If Yes, how long are you able to drive a car?____________

**Please provide a copy of your driver's license when returning this form.**

How do you maintain contact with people or activities that matter most to you?

____________

Do you have children?

Yes________ No ________ If Yes, what are their dates of birth ____________

____________

Do you need help caring for your children?

Yes ________ No ________

Are you responsible for taking care of any grandchildren, an elderly parent or grandparent?

Yes________ No ________ If Yes, please explain ____________

How many times a day do you leave the house during the week? ____________

On the weekends? ____________

How often do you run errands? ____________

Please describe what errands you most commonly run: ____________

____________

How often do you get outdoors? ______________________________

Are you left or right hand dominant? Left ________ Right ________

Are you able to work in your garden? Yes ________ No ________

Are you able to work on your house? Yes ________ No ________

Are you able to wash your car? Yes ________ No ________

How much time is spent daily on your home computer?
_______ None _______ 0-1 hours _______ 1-2 hours _______ 2-3 hours _______ 3+ hours

How much time is spent weekly on your home computer?
_______ None _______ 0-1 hours _______ 1-2 hours _______ 2-3 hours _______ 3+ hours

What activities do you perform on your home computer. Please check all that apply:

_______ Pay bills _______ Read news/articles _______ Use search engines _______ Send emails

_______ Visit chat rooms _______ Photos Other: ______________________

What computer software applications do you utilize. Please check all that apply:

______ Word processing (Word) ______ Spreadsheets (Excel) ______ Database (Access) ______ Graphics

______ Photo software (Photoshop) ______ Programming Other: ______________________

Do you have a working home copy machine/fax machine? ________ Yes ________ No

If yes, please explain purpose and usage: ______________________________

The following questions intend to identify whether or not you are able to independently conduct routine daily activities. If assistance is required, please clarify.

| **How are the following accomplished?** | **By Whom?** | **Assistance Required?** |
|---|---|---|
| Grocery Shopping | | |
| Carrying groceries into the house | | |
| Cooking meals | | |
| Cleaning after meals | | |
| Cleaning bathrooms | | |
| Vacuuming | | |
| Doing the laundry | | |
| Opening and responding to mail | | |
| Managing your finances | | |
| Balancing your checkbook | | |
| Bathing yourself | | |
| Styling your own hair | | |
| Getting dressed | | |
| Going up and down stairs | | |

Have you been confined to a hospital within the last 12 months? Yes ________ No ________

If Yes, please provide reason and hospital contact Information: ______________________________

How often do you travel or take vacation? ______________________________

Where do you go? How do you get there (transportation method)? ______________________________

______________________________

Are you able to pursue your hobbies? Yes _______ No _______

If Yes, please describe ______________________________

Do you participate in an exercise program? Yes _______ No _______

If Yes, please describe ______________________________

Do you do any Volunteer work? Yes _______ No _______

If Yes:

how many hours per day? __________

how many hours per week? __________

for whom? ______________________________

Are you working for wages? Yes _______ No _______

If Yes, please provide employer's name ______________________________

**Describe in your own words, what prevents you from engaging in any gainful employment.**

______________________________

______________________________

______________________________

______________________________

______________________________

**Please describe your daily routine: (if more space is needed, please use the back of this form)**

______________________________

______________________________

______________________________

______________________________

______________________________

Is there a daytime number where you can be reached in the event we have any questions regarding your responses?

______________________________

In the event we cannot reach you, please provide an alternate contact's name and telephone number.

______________________________

**Upon completion of this form, please sign and date below and return in the envelope provided to you. Thank you for your cooperation.

The above statements are true and complete to the best of my knowledge and belief and I hereby authorize any hospital or physician who has treated me or other person who has attended me or examined me or any company or Government agency to furnish the Insurance Company providing this firm or their representative, any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records. A photo static copy of this form will be as valid as the original. I understand that if this information changes at any time, I will contact Lincoln Financial Group.

Name: ______________________________ Date: ______________________________

Signature: ______________________________

The Lincoln National Life Insurance
Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

# AGREEMENT CONCERNING BENEFITS

Return To: Johnna Shorter

Policy No: 03 - 510101

Claim Number: 12227902

Employer: Siemens

Address

Claimant: Kim Naugle

Date of Disability: 12/24/2020

In return for the advance payment of group disability benefits made to me by The Lincoln National Life Insurance Company, which may be in excess of the amount due to me under the terms of Policy number 03 510101 I, for myself, my heirs, executors, administrators and assigns agree:

1) That I am not currently receiving any benefits from Social Security and/or Workers' Compensation.

2) If I apply for Social Security benefits and/or Workers' Compensation benefits I will promptly notify The Lincoln National Life Insurance Company.

3) If I, and/or my spouse and family receive any benefits payments, from Social Security and/or Workers' Compensation, I, and/or my spouse and family will immediately notify by The Lincoln National Life Insurance Company, of such benefit payments and pay back any overpayment resulting from this award in accordance with my Policy provisions.

4) I understand that thereafter The Lincoln National Life Insurance Company is entitled to integrate any amounts received from Social Security and/or Workers' Compensation with the benefits payable under the Policy in accordance with the terms of the Policy.

I understand that The Lincoln National Life Insurance Company in reliance on the above statements and promises, has agreed to advance benefits to me.

______________________________
Claimant Name (please print)

______________________________
Address

______________________________
Signature

______________________________
Date

***PLEASE RETAIN A COPY FOR YOUR RECORDS, OR ONE MAY BE PROVIDED FOR YOU UPON REQUEST.***

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

# Attending Physician's Assessment of Capacity

| | | |
|---|---|---|
| Kim Naugle | | 12227902 |
| Patient Name | Date of Birth | Claim Number |
| Johnna Shorter | | |
| Case Manager | Date First Treated | Date Last Treated |

**Diagnosis(es)** Contributing to or Causing Impairment

**PHYSICAL CAPACITY (in an average 8-hour workday)**

| | **Constant** (Over 5 1/2 Hours / Day or Over 40 Min. / Hour) | **Frequent** (Up to 5 1/2 Hours / Day or Up to 40 Minutes / Hour) | **Occasional** (Up to 2 1/2 Hours / Day or Up to 20 Minutes / Hour) |
|---|---|---|---|
| Sitting | | | |
| Standing | | | |
| Walking | | | |
| Driving | | | |
| Climbing | | | |
| Squatting | | | |
| Bending | | | |
| Kneeling | | | |
| Push / Pull | | | |
| Light Grasping | | | |
| Force Grasping | | | |

| | **Constant** (Over 5 1/2 Hours / Day or Over 40 Min. / Hour) | **Frequent** (Up to 5 1/2 Hours / Day or Up to 40 Minutes / Hour) | **Occasional** (Up to 2 1/2 Hours / Day or Up to 20 Minutes / Hour) |
|---|---|---|---|
| Fingering / Typing | | | |
| Reaching Overhead | | | |
| Reaching Below Shoulders | | | |
| | | | |
| Lifting: | | | |
| Up to 10 lbs. | | | |
| Up to 20 lbs. | | | |
| Up to 30 lbs. | | | |
| Up to 40 lbs. | | | |
| Up to 50 lbs. | | | |
| Over 50 lbs. | | | |

| | |
|---|---|
| Are there additional restrictions / limitations not captured in the table above? Please list. Also, if any of the above capacities are never, please list the capacity and rationale. | |

| | | | | | |
|---|---|---|---|---|---|
| How long will these restrictions be imposed? | | Can your patient function in an occupational setting full time **within the capacities noted above**? | ☐ Yes<br>☐ No | If your patient cannot function in an occupational setting now, when will he / she be able to? | |

| | |
|---|---|
| If your patient cannot function in an occupational setting at this time, please outline your medical and functional treatment plan to facilitate return to work. | |

| | | | |
|---|---|---|---|
| Please indicate what your opinions regarding restrictions / limitations and work capacity are based on? | ☐ Clinical Experience<br>☐ Specialty Training<br>☐ Diagnostic Tests | ☐ Patient's Self-Report<br>☐ Direct Observation<br>☐ Clinical Examination | ☐ Functional Eval. (FCE)<br>☐ Other (Please List): ______ |

| | | | | | |
|---|---|---|---|---|---|
| If your patient is unable to work, what is the single most important barrier preventing your patient from returning to work? | ☐ Uncontrolled Pain | ☐ Unstable Medical Status | ☐ Patient's Motivation | ☐ Psychiatric Co-Morbid(s) | ☐ Other (List): ______ |

| | | |
|---|---|---|
| Provider's Name (Please Print) | Degree *AND* Area of Specialty | Social Security or Tax ID Number |
| Street Address | Telephone Number | Fax Number |
| City, State & Zip Code | Signature | Date |

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**
**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator, and any insurance support organizations.
**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.
**Description of the information that may be used or disclosed**: This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**
**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.
**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.
This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) ____________________________________

Name of legal representative, if applicable (print) _________________________________ Relationship ___________________

Signature of claimant or legal representative _______________________________________ Date: _____________________

Date of Birth: __ ________ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original.**

# CLAIMANT SUPPLEMENTARY STATEMENT

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return to:** Johnna Shorter

**EMPLOYEE/CLAIMANT NAME:** Kim Naugle **CLAIM #:** 12227902
**EMPLOYER:** Siemens **DATE OF BIRTH:**

| | | | |
|---|---|---|---|
| Full Name (Last, First, Middle Int.) | Social Security # | Email Address | |
| Street Address | City | State | Zip Code |
| Telephone Number (include area code) | Cell Phone Number (include area code) | Marital Status | |
| Spouse's Full Name and Date of Birth | Number of Children | Dates of Birth of Children | |

Next of Kin/Emergency Contact (required should additional benefits be payable in the event of your death).
Name Relationship to you? Tel #.

Have you returned to any type of employment or activity that provides you money? If yes, please provide name of employer, start date, hours worked per/wk and rate of pay.

Do you own a business, or are you involved or affiliated with any type of business, corporation, partnership, or sole proprietary? If yes, please explain and provide proof of income from prior year.

Do you have a tax identification number (TIN) or employer identification number (EIN)? If yes, for what purpose?

Do you hold a professional license? If yes, for what purpose?

Are you associated with an Internet business of any kind? Do you have a website? If yes, please explain and provide website address(es) and the date started.

Are you pursuing money from a third party or involved in any litigation? If yes, please explain why and provide your attorney's contact information.

Are you pursuing moneys from a third party: Workers' Compensation Carrier, Insurance Co., or Individual? If yes, please explain.

Identify other income you are receiving or for which you have applied. You have an ongoing obligation to notify us immediately of receipt of any other income or any other changes to this information, including supporting documentation confirming the amount you receive and the effective date:

| Yes | No | Type | Amount per Week/Month | Date Began Receiving | Date Ceased Receiving | Date Income Applied for |
|---|---|---|---|---|---|---|
| ☐ | ☐ | Wages/ Income/ Money/ Unemployment | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Social Security (disability or retirement) | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Social Security (for your spouse/dependents) | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Short Term Disability or State Disability | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Pension or Retirement benefits (lump sum/ongoing) | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Workers' Compensation | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Severance or Employment Separation payment (provide Agreement) | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Other income/money/benefit (describe) ____________ | ________ | ________ | ________ | ________ |

**If my claim is overpaid, I understand and agree that Lincoln Financial Group has the right to recover such overpayment from me, including the right to reduce future disability benefits, or pursue other collection methods as appropriate. The above statements are true and complete to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, or deceive Lincoln Financial Group and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law. A photo static copy of this form will be valid as the original.**

**EMPLOYEE'S PRINTED NAME:** ____________________

**DATE:**____________ **EMPLOYEE'S SIGNATURE:** ____________________

# Family Information Questionnaire

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return to:** Johnna Shorter

EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902
EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ______

To document your Long Term Disability Claim file and properly administer benefits, we need the following information. Please complete and return this form in the envelope provided. Thank you for your prompt attention to this request for information.

What is your marital status? Single ______ Married ______ Divorced ______
If married, please indicate your spouse's name and date of birth. Name: ______________________ DOB: _________

Do you have children or dependents*? Yes ______ No ______
If yes, please provide additional details below, using additional space as needed.
* An eligible dependent may include:

- Biological child(ren)
- Stepchildren
- Children not residing in your household
- Custodial Grandchildren
- A child 18 or older with a disability that started before age 22
- Adopted Children
- A child 18-19 and a full-time student (not higher than grade 12)

| **Name** | **DOB** | **If Divorced or Separated, Indicate Custodial or Non-Custodial** | **High School Student? Yes or No** | **Anticipated/Actual Last Month/Year of High School** |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Is your spouse and/or children receiving Social Security benefits? Yes: __________ No: __________
If yes, please complete the information below and include a copy of their Social Security Award Certificate(s).

If no, however, they were previously receiving Social Security benefits in the past and are no longer, please include a copy of the Social Security Termination notice (s), if this information has not already been provided to The Lincoln National Life Insurance Company.

| **Name** | **DOB** | **Awarded as: Dependent, Spouse or Disabled** | **Current Monthly Benefit Amount** | **Date of Entitlement to Benefits** | **Benefit Termination Date (if applicable)** |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Your Name: ________________________________________ Date: ____________________

# FUNCTIONAL MENTAL STATUS EVALUATION FORM

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return To:** Johnna Shorter



EMPLOYEE/CLAIMANT NAME: Kim Naugle

CLAIM NO: 12227902

EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ______

**TO BE COMPLETED BY CLINICIAN:**
Please provide a complete description of your patient's current Mental Status Exam in the following areas. Also, please attach a copy of your clinical progress notes and a copy of the treatment plan that is sent to the medical insurance company.

**Patient's description of Job Title and duties:** ______

**GENERAL APPEARANCE:** (physical characteristics/grooming, etc.)

______

**EMOTIONAL STATE:** (mood and affect)

______

**EXPERIENCES:** (describe hallucinations/delusions)

______

**SENSORIUM:** (level of alertness, patient's orientation)

______

**MEMORY:** (Define status and what testing determines impairment)

**Immediate:** ______
**Short Term:** ______
**Long Term:** ______

Lincoln
Financial Group®



**COGNITION:** (Define status and what testing determines impairment)

**JUDGMENT AND INSIGHT:** (What evidence supports impairment?)

**RISK BEHAVIORS:**

Suicidal thoughts, plans, actions ______

Homicidal thoughts, plans, actions ______

**SUBSTANCE ABUSE:** (abuse, dependency)

**In what way do the above symptoms interfere with the person's ability to function in a work setting?**

**What functional abilities are still retained?**

**What job tasks can this person perform?**

**What kind of work settings can the patient perform in, at this time, despite the limitations above?**

**How is work readiness being measured? How will you include return to work in the short term goals of the treatment plan?**

______________________________________________________________________
______________________________________________________________________
______________________________________________________________________
______________________________________________________________________

Goal: ____________________ Success Indicator: ____________________ Timeline: ____________________

**Diagnosis (DSM-5)**

______________________________
______________________________
______________________________

If psychotherapy is indicated, what is the modality, frequency, name of provider and phone number?

______________________________________________________________________
______________________________________________________________________
______________________________________________________________________
______________________________________________________________________

List all current medications:

| | | | | |
|---|---|---|---|---|
| ______________________ | Dosage: _________ | Frequency: _________ | Begin Date: ___________ | End Date: ___________ |
| ______________________ | Dosage: _________ | Frequency: _________ | Begin Date: ___________ | End Date: ___________ |
| ______________________ | Dosage: _________ | Frequency: _________ | Begin Date: ___________ | End Date: ___________ |
| ______________________ | Dosage: _________ | Frequency: _________ | Begin Date: ___________ | End Date: ___________ |

Next scheduled office visit: ________________________________________

Comments:

______________________________________________________________________
______________________________________________________________________
______________________________________________________________________
______________________________________________________________________

______________________________________________________________________

| Examiner's Name (Please Print) | Title/Specialty | Tax ID# | Telephone No. | Fax No. |
|---|---|---|---|---|

Signature required: ____________________________________________ Date: ______________________

# TRAINING-EDUCATION-EXPERIENCE FORM (TEE)

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902
EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ________

**Please fill out each section completely**

**EDUCATIONAL BACKGROUND: (If you have a resume, please attach)**

Highest Grade Completed: ________ Check if earned: ☐ GED ☐ HS Diploma

Vocational Training: ________ Certificate Program completed: ________

Associates Degree: ________ College: number of years: ________

Bachelor's Degree: BA /BS Major: ________ Graduate School: MA ☐ MS ☐ CAGS ☐ PHD Degree: ________

Professional Training, License, Certificates(s): ________

Are you currently attending any classes: ☐ Y ☐ N If yes, provide name of school: ________

List any other Training or Classes Attended or Plan to Attend: ________

Primary language spoken: ________ Other language(s) spoken fluently: ________

Additional Skills, Hobbies & Volunteer Work ________

Did you serve in the Armed Forces? ☐ Y ☐ N From: ________ To: ________

Branch of Service: ________ Specialty: ________

**WORK EXPERIENCE:** (If you've held different positions for the same employer, please include them below)
Please list chronologically (starting with the most recent) all the jobs/positions you have held in the past 15 years.
(add additional pages if needed for a complete work history).

1. Company: ________ Department: ________ From: ________ To: ________
   Job Title(s): ________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties/Physical Requirements (please be specific): ________

2. Company: ________ Department: ________ From: ________ To: ________
   Job Title(s): ________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific): ________

3. Company: ________________________ Department:________________________ From: _________ To: _______
Job Title(s): ________________________________________________
Supervisory Experience ☐ Y ☐ N
Tasks/Duties (please be specific): ________________________________________________
________________________________________________

4. Company: ________________________ Department:________________________ From: _________ To: _______
Job Title(s): ________________________________________________
Supervisory Experience ☐ Y ☐ N
Tasks/Duties (please be specific): ________________________________________________
________________________________________________

5. Company: ________________________ Department:________________________ From: _________ To: _______
Job Title(s): ________________________________________________
Supervisory Experience ☐ Y ☐ N
Tasks/Duties (please be specific): ________________________________________________
________________________________________________

**Computer Utilization:**

Computer Training/Courses, Certifications: ________________________________________________

| | Home | Work | | Home | Work |
|---|---|---|---|---|---|
| Email | ☐ | ☐ | Graphics Software | ☐ | ☐ |
| Internet | ☐ | ☐ | Installation/Repair Hardware | ☐ | ☐ |
| Word Processing (MS Word) | ☐ | ☐ | Installation/Repair Programming | ☐ | ☐ |
| Spread Sheet (MS Excel) | ☐ | ☐ | Project Management | ☐ | ☐ |
| Database | ☐ | ☐ | Other: ____________ | | |
| Photo Software | ☐ | ☐ | | | |

How much time is spent daily on your work computer? ☐ None ☐ 1-2 hours ☐ 2-3 hours ☐ 3+ hours

How much time is spent daily on your home computer? ☐ None ☐ 1-2 hours ☐ 2-3 hours ☐ 3+ hours

Keyboarding/Typing Experience: ☐ Yes ☐ No If yes, WPM (words per minute) ________________
(We recommend- http://typingtest.com to determine WPM)

Please provide your email address: Personal: ____________________ Work: ____________________

**SIGNATURE:** ____________________ **PHONE NO: (     )** ____________________

# Workers' Compensation
# INFORMATION FORM

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Return To: Johnna Shorter

EMPLOYEE/CLAIMANT NAME: Kim Naugle

CLAIM NO: 12227902

EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ____________

We received your disability claim form. The form indicates that your disability is the result of a work related Injury/Sickness. Please provide the following information and return this form to my attention in order to avoid any delay in processing.

1. Date of Injury/Sickness: ____________
2. Location of Injury (please provide complete address): ____________
3. Description of Injury/Sickness (please include copy of accident report): ____________

4. Please provide the name of your Employer:
   - Company Name: ____________
   - Address: ____________
   - Supervisor Name: ____________ Telephone: ( ) ____________

5. Please provide the name of your Employer's Workers' Compensation Carrier or Administrator:
   - Insurance Carrier: ____________
   - Address: ____________
   - Telephone: ( ) ____________
   - Claim Representative: ____________

6. Are you collecting benefits from your Employer's Workers' Compensation Insurance Company or Administrator?

   Yes ☐ No ☐

   If "Yes": Weekly Benefit Amount $ ____________
   Claim No.: ____________

7. Are you using the services of an attorney?

   Yes ☐ No ☐

   If "Yes": Name: ____________
   Address: ____________
   Telephone: ( ) ____________

SIGNATURE: ____________ DATE: ____________

DP 539D – Rev. 12/02

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**
**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator and any insurance support organizations.
**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.
**Description of the information that may be used or disclosed**: This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.
**The information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**
**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.
**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.
**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Name of claimant (print) ______________________________

Name of legal representative, if applicable (print) ______________________ Relationship __________

Signature of claimant or legal representative ______________________ Date: __________

Date of Birth: __ ________ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original**

# COMBINED CLAIMANT STATEMENT

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Return to: Johnna Shorter

EMPLOYEE/CLAIMANT NAME: Kim Naugle ______ CLAIM #: 12227902 ______
EMPLOYER: Siemens ______ DATE OF BIRTH: ______

Full Name (Last, First, Middle Int.) ______ Social Security # ______ Email Address ______

Street Address ______ City ______ State ______ Zip Code ______

Telephone Number (include area code) ______ Cell Phone Number (include area code) ______

Marital Status ______ Spouse's Full Name and Date of Birth ______

Number of Children ______ Dates of Birth of Children ______

Next of Kin/Emergency Contact (required should additional benefits be payable in the event of your death):

Name ______ Relationship to you? ______ Tel #. ______

List the names, addresses, and telephone numbers of doctors you see regularly:

Name: ______
Street Address: ______
City, State, Zip: ______
For what condition?: ______
How often?: ______

Name: ______
Street Address: ______
City, State, Zip: ______
For what condition?: ______
How often?: ______

Do you require any assistive devices such as a: cane______ walker______ crutches______ wheelchair______ other: ______

How many times a day do you leave the house during the week? ______ On the weekends? ______

How often do you get outdoors? ______

Are you left or right hand dominant? Left ______ Right ______

Have you been confined to a hospital within the last 12 months? Yes ______ No ______

If yes, please explain: ______

Are you able to pursue your hobbies? Yes ______ No ______

If yes, please describe ______

Do you do any Volunteer work? Yes ______ No ______

If yes, how many hours per day? ______, per week? ______

For whom? ______

Have you experienced any memory/concentration problems? Yes ______ No ______

If yes, please provide an example

______

**The following questions intend to identify whether or not you are able to independently conduct routine daily activities. If assistance is required, please clarify.**

| How are the following accomplished? | By Whom? | Assistance Required? |
| --- | --- | --- |
| Grocery Shopping | | |
| Cooking meals | | |
| Cleaning bathrooms | | |
| Vacuuming | | |
| Doing the laundry | | |
| Managing your finances | | |
| Balancing your checkbook | | |
| Bathing yourself | | |
| Getting dressed | | |
| Feeding yourself | | |
| Using the bathroom yourself | | |
| Going up and down stairs | | |

Describe in your own words, what prevents you from engaging in any gainful employment.

Please describe your daily routine:

Have you returned to any type of employment or activity that provides you money? If yes, please provide name of employer, start date, hours worked per/wk and rate of pay.

Do you own a business, or are you involved or affiliated with any type of business, corporation, partnership, or sole proprietary?

If yes, please explain and provide proof of income from prior year.

Do you have a tax identification number (TIN) or employer identification number (EIN)? If yes, for what purpose?

Do you hold a professional license? If yes, for what purpose?

Are you associated with an Internet business of any kind? Do you have a website? If yes, please explain and provide website address(es) and the date started.

Are you pursuing money from a third party or involved in any litigation? If yes, please explain why and provide your attorney's contact information.

Are you pursuing moneys from a third party: **Workers' Compensation** Carrier, Insurance Co., or Individual? If yes, please explain.

**Identify other income you are receiving or for which you have applied. You have an ongoing obligation to notify us immediately of receipt of any other income or any other changes to this information, including supporting documentation confirming the amount you receive and the effective date:**

| Yes | No | Type | Amount per Week/Month | Date Began Receiving | Date Ceased Receiving | Date Income Applied for |
|---|---|---|---|---|---|---|
| ☐ | ☐ | Wages/ Income/ Money/ Unemployment | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Social Security (disability or retirement) | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Social Security (for your spouse/dependents) | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Short Term Disability or State Disability | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Pension or Retirement benefits (lump sum/ongoing) | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | **Workers' Compensation** | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Severance or Employment Separation payment (provide Agreement) | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Other income/money/benefit (describe) ____________________ | $ ________ | ________ | ________ | ________ |

If my claim is overpaid, I understand and agree that Lincoln Financial Group has the right to recover such overpayment from me, including the right to reduce future disability benefits, or pursue other collection methods as permitted by law. The above statements are true and complete to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, or deceive Lincoln Financial Group and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law. A photo static copy of this form will be valid as the original.

The above statements are true and complete to the best of my knowledge and belief and I hereby authorize any hospital or physician who has treated me or other person who has attended me or examined me or any company or Government agency to furnish the Insurance Company providing this firm or their representative, any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records. A photostatic copy of this form will be as valid as the original. I understand that if this information changes at any time, I will contact Lincoln Financial Group.

EMPLOYEE'S PRINTED NAME: ______________________________

DATE: ______________ EMPLOYEE'S SIGNATURE: ______________________________

DP 408

**Wendell Goins, M.D.**
**Board Certified Addiction Medicine**
**Board Certified Family Medicine**
**Board Certified General Surgery**
**Board Certified Surgical Critical Care Medicine**

**CLAIMANT NAME: Kim Naugle**
**ECN #: 199863-2**
**CLAIM #: 12227902**
**DATE OF LOSS: 12/24/2020**
**DATE OF REVIEW: 03/01/2022**
**CASE TYPE: Long-Term Disability**

**MEDICAL RECORDS REVIEWED:**

1. 11/03/2020, Therapy Report, Sirrell Butler, LCSCW.
2. 11/24/2020, Progress Report, Malmouna Diop, NP.
3. 12/04/2020, Progress Report, Hemant Solomon, MD.
4. 12/11/2020, Progress Report, Ronald Prucha, MD.
5. 01/04/2021, Functional Mental Status Evaluation, Ronald Prucha, MD.
6. 02/08/2021, Functional Mental Status Evaluation, Eric Kelly, LCSW.
7. 02/12/2021, Progress Report, Ronald Prucha, MD.
8. 02/17/2021, Restrictions Form, Ronald Prucha, MD.
9. 02/24/2021, Behavioral Health Memorandum, Lincoln Financial Group.
10. 03/01/2021, Therapy Report, Eric Kelly, LCSW.
11. 04/01/2021, Therapy Report, Eric Kelly, LCSW.
12. 05/06/2021, Therapy Report, Eric Kelly, LCSW.
13. 05/17/2021, ICP Memo, Marcus Goldman, MD.
14. 05/20/2021, Therapy Report, Eric Kelly, LCSW.
15. 06/04/2021, Progress Report, Ronald Prucha, MD.
16. 06/18/2021, Progress Report, Hemant Solomon, MD.
17. 06/30/2021, Correspondence, Peter Burke,
18. 07/28/2021, Therapy Report, Eric Kelly, LCSW.
19. 09/07/2021, Therapy Report, Eric Kelly, LCSW.
20. 09/27/2021, Therapy Report, Eric Kelly, LCSW.
21. 10/01/2021, Progress Report, Jennie Buchkovich, PA-C.
22. 10/05/2021, Therapy Report, Eric Kelly, LCSW.
23. 10/20/2021, Therapy Report, Eric Kelly, LCSW.
24. 10/21/2021, Correspondence, Peter Burke,
25. 10/28/2021, Therapy Report, Eric Kelly, LCSW.
26. 10/29/2021, Progress Report, Jennie Buchkovich, PA-C.
27. 11/01/2021, Declaration of Claimant, Kim Naugle.

28. 11/09/2021, Peer Review, Candace Good, MD.
29. 11/10/2021, Peer Review, Mark Sims, MD.
30. 11/17/2021, Therapy Report, Eric Kelly, LCSW.
31. 12/01/2021, Correspondence, Peter Burke,
32. 12/08/2021, Peer Review, Mark Sims, MD.
33. 12/23/2021, Claim Information, Kim Naugle.
34. 12/29/2021, Individual Therapy Report, Eric Kelly, LCSW.
35. 01/30/2022, Activities Questionnaire, Lincoln Financial Group.
36. 02/05/2022, Therapy Report, Eric Kelly, LCSW.
37. 02/07/2022, Progress Report, Ronald Prucha, MD.

**HISTORY:** This case involves a now 58-year-old female with a date of loss of 12/24/2020. The documented diagnosis is anxiety disorder.

On 11/24/2020, the claimant was seen by Malmouna Diop, NP. The visit was performed by telemedicine. The claimant had a psychiatric history significant for PTSD, depression, and anxiety. Treatment had included Lexapro. Past history was significant for coronary artery bypass grafting. Medical history included hypertension, hyperlipidemia, congestive heart failure, acid reflux, obesity, and pain. There was a discussion related to use of additional medication. The claimant was going to address the use of medication with her cardiologist.

On 12/04/2020, the claimant was seen by Dr. Solomon. The claimant was seen for assessment of coronary artery disease. The claimant had a history of coronary artery bypass graft surgery on 08/07/2018. Most recent cardiac perfusion stress study from October 2019 showed normal findings with an ejection fraction of 73%. There was noted anxiety and depression. Medical history was positive for coronary artery disease, congestive heart failure, hypercholesterolemia, herpes, hypertension, sleep apnea, and arthritis. Examination demonstrated stable vital signs. There was a blood pressure 140/80. Heart was regular rate and rhythm. Lungs were clear. Coronary artery disease was stable.

On 12/11/2020, the claimant was seen by Dr. Prucha. The claimant was seen for follow-up of anxiety and depression. The claimant was to begin treatment with Paxil. The claimant had started treatment with Paxil.

On 06/18/2021, the claimant was seen by Dr. Solomon. The claimant was seen for a cardiac follow-up related to coronary artery disease. There was a discussion regarding bariatric surgery for weight loss. The claimant was encouraged exercise 30 minutes daily. Hydralazine dose was increased to address hypertension. Examination demonstrated a blood pressure of 170/90. There were no neurologic or musculoskeletal abnormalities. There was no additional change in treatment.

On 10/01/2021, the claimant was seen by Jennie Buchkovich, PA-C, for evaluation. The claimant was seen for a cardiology follow-up assessment. The claimant was seen for follow-up

of hypertension and coronary artery disease. Blood pressure remained elevated at 160/80. The claimant denied any symptoms of chest pain, dyspepsia, or palpitations. She was wearing a CPAP device at night and working on weight loss. Examination demonstrated the heart was regular rate and rhythm. Lungs were clear. There were no abdominal abnormalities. Neurologic and musculoskeletal examinations were benign. Weight loss measures and continued use of medication for hypertension was recommended.

On 10/29/2021, the claimant was seen by Jennie Buchkovich, PA-C. The claimant was seen for follow-up of obesity, coronary artery disease and hypertension. There were no listed subjective complaints. Examination noted a weight of 321 pounds. Blood pressure was 134/80. There was a mid systolic murmur. There were no abdominal or musculoskeletal abnormalities on examination. There was no interval change in the claimant's medication regimen. Continued weight loss measures were recommended.

On 02/07/2022, the claimant was seen by Dr. Prucha. The claimant had tested positive for Covid since the last visit. She continued treatment with supportive measures. The claimant requested a disability form/statement. The claimant stated that all of her issues are mental and emotional. She denied having any physical impairments. There were no medications prescribed or dispensed.

**DIAGNOSIS:** Anxiety disorder, unspecified

Medical / Surgical Conditions: Depression, prior cardiac issues, PTSD

**RESPONSE TO REFERRAL QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

History of coronary artery disease (I25.1) and coronary artery bypass grafting (Z95.1).

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Hypertension (I10), hyperlipidemia (E78.5), congestive heart failure (I50.9), gastroesophageal reflux disease, anxiety disorder, depressive disorder, posttraumatic stress disorder, and history of Covid.

**3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 6/22/21 (ltd benefit begin date) to - ongoing, and comment on the expected duration.**

Considering the entire clinical picture, the records do support an impairing diagnosis from a family practice perspective from 06/22/2021.

Relative to the claimant's chronic conditions, there is no evidence of any objective or diagnostic findings that would preclude activity. The claimant is being treated at the outpatient level for behavioral health related conditions. Relative to medical conditions, the claimant's cardiac presentation has been stable. While some elevated blood pressure readings are noted, treatment of hypertension would not necessitate restrictions or limitations. The claimant specifically states she has no physical impairments at the last clinical assessment on 02/07/2022. Chronic clinical conditions are stable. However, given her age and weight restrictions/limitations would be supported given her history of medical issues. Duration of the restrictions/limitations below are through 05/15/2022 to allow for reassessment.

Sitting: Unrestricted

Standing: Occasionally up to 20 minutes at one time and up to 2 hours per day

Walking: Occasionally up to 10 minutes at one time and up to 1 hour per day

Lifting/Carrying/Pushing/Pulling: Occasionally up to 20 pounds

Climbing Stairs: Occasionally

Climbing Ladders: Occasionally

Stooping: Occasionally

Kneeling: Occasionally

Crouching: Occasionally

Crawling: Occasionally

Reaching Overhead: Occasionally

Reaching at waist and desk level: Unrestricted

Reaching below waist and overhead: Occasionally

Use lower extremities for foot controls: Occasionally

Keyboarding: Unrestricted

In addition, the claimant was noted to have tested positive for Covid in the 02/07/2022 visit. The exact date of the positive test is unknown. In addition, there was no documentation of a positive lab test. However, based solely on the claimant's description of a positive test she would warrant restrictions to include no work for 10 days from the positive result. While the claimant self-treated for symptoms related to Covid, there is no manifestation of ongoing symptoms that would necessitate long-term restrictions or limitations. An impairing diagnosis from a family practice perspective has not been determined.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

There are no listed restrictions and limitations from a family practice perspective.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

The claimant has been treated appropriately for clinical symptoms.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

Nonmedical circumstances are not identified.

**AP CONTACT:**

I called the number listed (919-235-6575) on 2/16/22 at 11:36am CST and left a message for a return call on the general office voicemail.

My staff received a return call on 2/16/22 at 1:46pm CST from Dr. Prucha and I was unavailable to take the call; a message was left requesting a return phone call to an alternate number for Eric Kelly, LCSW (919-210-2070).

I called the number provided for Eric Kelly, LCSW (919-210-2070) on 2/22/22 at 10:30am CST and left a message for a return call on the general office voicemail.

My staff received a return call on 2/22/22 at 11:39am CST from Eric Kelly, LCSW and I discussed the case with Eric Kelly.

He stated that this claimant was unable to work due to her anxiety, depression, lethargy, and poor attention to detail and work. He did not know if and when she would be able to return to work. He did say that his conclusion was based on her own subjective complaints and his assessment of her coping skills. The additional information does not change the above opinions in this case from a family practice perspective.



Wendell Goins, M.D.
Board Certified Addiction Medicine
Board Certified Family Medicine
Board Certified General Surgery
Board Certified Surgical Critical Care Medicine

License: 9401199 NC
License: 17278 SC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881

Exam Coordinators Network A division of Genex Services, LLC
E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: Kim Naugle
Claim Number: 12227902
Case Number: 199863-2

"I, Wendell A Goins, MD, am a physician duly licensed to practice medicine in the State of NC. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

Wendell A Goins MD 3/1/2022

Signature of Physician Date

Medical/Professional License # 9401199

**From:**Staley, Sara <Sara.Staley@genexservices.com>
**Sent:**Tue, 1 Mar 2022 21:12:11 +0000
**To:**VendorReferrals
**Subject:**K. Naugle Claim #12227902
**Attachments:**Peer Review_7253398BOCA.PDF, Invoice.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi ,

Attached are the Peer Review and Invoice for the above referenced claimant. If we can further assist you with this file, please don't hesitate to give us a call.

Thanks for the referral,

**Sara Staley**
***Quality Assurance Coordinator***
Exam Coordinators Network, a division of Genex Services
**T**: 855-648-9248 #3
**F**: 561-392-5881
**Access our portal at:** **View My Cases**

urac
ACCREDITED
Independent
Medical
Examinations
Expires 04/01/2024

The information and any attachments contained in this email are confidential and proprietary, and may be protected under the law, including federal and state privacy laws. The information and attachments are intended solely for use by the individual or entity to whom this email is addressed. If you are not the intended recipient, you are notified that any use, dissemination, forwarding, or copying of this information or attachments is strictly prohibited. If you received this email in error, please notify the sender immediately and delete all copies of this email. Thank you.

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**Invoice:** **BOCA 132537**

**Date** **2/28/2022**

***Bill To:***

**Johnna Shorter**
**Lincoln Financial-London, KY**
**P.O. Box 7207**
**London, KY 40742**

**Claim #** 12227902
**Date of Loss:** 12/24/2020
**ECN #** 199863-2
**Account #**

**Claimant** Kim Naugle

| | | |
|---|---|---|
| 2/15/2022 | Peer Review - Long Term Disability: Service<br>Provider: Wendell A Goins, MD<br>Specialty: Family Medicine | $660.00 |
| | **SubTotal** | $660.00 |
| | **Final Invoice Total** | $660.00 |

***Remit To:***
Exam Coordinators Network
440 E. Swedesford Road
Suite 1000
Wayne, PA 19087

Terms: Net 30 days
Tax Id #: 95-3327434

THANK YOU FOR THE OPPORTUNITY TO PROVIDE THIS SERVICE FOR YOU. PLEASE REMIT PAYMENT PROMPTLY.

**Stephen Gilman, M.D.**
**Board Certified Psychiatry**
**Board Certified Addiction Psychiatry**

**CLAIMANT NAME: Kim Naugle**
**ECN #: 199863-1**
**CLAIM #: 12227902**
**DATE OF LOSS: 12/24/2020**
**DATE OF REVIEW: 02/28/2022**
**CASE TYPE: Long-Term Disability**

**MEDICAL RECORDS REVIEWED:**

1. 11/03/2020, Individual Therapy Report, Sirrell Butler, LCSCW.
2. 11/24/2020, Office Visit, Malmouna Diop, NP.
3. 12/04/2020, Office Visit, Hemant Solomon, MD.
4. 12/11/2020, Office Visit, Ronald Prucha, MD.
5. 01/04/2021, Mental Status Evaluation, Ronald Prucha, MD.
6. 02/08/2021, Mental Status Evaluation, Eric Kelly, LCSW.
7. 02/12/2021, Office Visit, Ronald Prucha, MD.
8. 02/17/2021, Restrictions Form, Ronald Prucha, MD.
9. 02/24/2021, Behavioral Health Memorandum, Lincoln Financial Group.
10. 03/01/2021, Individual Therapy Report, Eric Kelly, LCSW.
11. 04/01/2021, Individual Therapy Report, Eric Kelly, LCSW.
12. 05/06/2021, Individual Therapy Report, Eric Kelly, LCSW.
13. 05/17/2021, ICP Memo, Marcus Goldman, MD.
14. 05/20/2021, Individual Therapy Report, Eric Kelly, LCSW.
15. 06/04/2021, Office Visit, Ronald Prucha, MD.
16. 06/18/2021, Office Visit, Hemant Solomon, MD.
17. 06/30/2021, Letter, Peter Burke,
18. 07/28/2021, Individual Therapy Report, Eric Kelly, LCSW.
19. 09/07/2021, Individual Therapy Report, Eric Kelly, LCSW.
20. 09/27/2021, Individual Therapy Report, Eric Kelly, LCSW.
21. 10/01/2021, Office Visit, Jennie Buchkovich, PA-C.
22. 10/05/2021, Individual Therapy Report, Eric Kelly, LCSW.
23. 10/20/2021, Individual Therapy Report, Eric Kelly, LCSW.
24. 10/21/2021, Letter, Peter Burke,
25. 10/28/2021, Individual Therapy Report, Eric Kelly, LCSW.
26. 10/29/2021, Office Visit, Jennie Buchkovich, PA-C.
27. 11/01/2021, Declaration of Claimant, Kim Naugle.
28. 11/09/2021, Prior Review, Candace Good, MD.
29. 11/10/2021, Prior Review, Mark Sims, MD.

30. 11/17/2021, Individual Therapy Report, Eric Kelly, LCSW.
31. 12/01/2021, Letter, Peter Burke,
32. 12/08/2021, Prior Review, Mark Sims, MD.
33. 12/23/2021, Claim Information, Kim Naugle.
34. 12/29/2021, Individual Therapy Report, Eric Kelly, LCSW.
35. 01/30/2022, Activities Questionnaire, Lincoln Financial Group.
36. 02/05/2022, Individual Therapy Report, Eric Kelly, LCSW.
37. 02/07/2022, Office Visit, Ronald Prucha, MD.

**HISTORY:** This case involves a now 58-year-old female with a date of loss of 12/24/2020. The documented diagnosis is anxiety disorder.

On 11/03/2020, the claimant was seen for individual behavioral therapy. There was a noted diagnosis of anxiety disorder.

On 11/24/2020, the claimant was seen by Malmouna Diop, NP, for a telemedicine evaluation. The claimant was seen for a psychiatric assessment. The claimant presented to establish care. There was a noted history of anxiety, depression, and posttraumatic stress disorder. The claimant reported difficulty with symptoms over the past 10 years. Treatment had included Lexapro. The claimant denied any suicidal or homicidal ideation. Stressors included family and a high stress job environment. Medication use also included hydralazine, Synthroid, metoprolol, aspirin, multivitamins, and Benadryl. Medical history included hypertension, hyperlipidemia, history of heart attack, congestive heart failure, acid reflux, obesity, and pain. Examination demonstrated a linear and logical thought process. Thought content was unremarkable. The claimant was cooperative. Mood was depressed and affect was restricted. The claimant had a history of open-heart surgery. She was going to discuss the potential for additional medications with her cardiologist.

On 12/11/2020, the claimant was seen by Ronald Prucha, MD, for evaluation. The claimant was seen for follow-up of anxiety and depression. The claimant had started treatment with Paxil. Examination demonstrated stable vital signs. Heart was regular rate and rhythm. There was a normal psychiatric mood. The claimant denied any suicidal or homicidal ideation. The claimant was to continue with use of Paxil. There was no change in medication.

On 01/04/2021, a functional mental status evaluation form, completed by Dr. Prucha, noted a mental health referral was pending. The claimant was not capable of functioning at her current job.

On 02/08/2021, a functional mental status evaluation form, completed by Eric Kelly, LCSW, noted diagnosis of recurrent major depressive disorder, posttraumatic stress disorder and generalized anxiety disorder. Specific restrictions and limitations were not stated.

On 02/12/2021, the claimant was seen by Ronald Prucha, MD, for evaluation. The claimant remained on Paxil for treatment of anxiety and depression. The claimant was to continue with

medication at the same dose. She reported benefit. Examination demonstrated the claimant was alert and oriented. There were no focal examination abnormalities. There was no interval change the claimant's medication regimen.

On 02/17/2021, a restrictions form by Dr. Prucha, noted the claimant was undergoing mental health counseling and medication management. She was unable to perform the functions of her job.

On 03/01/2021, the claimant continued with individual behavioral health therapy.

On 06/04/2021, the claimant was seen by Ronald Prucha, MD, for evaluation. The claimant was seen for follow-up of depression and anxiety. The claimant reported an ankle injury after a twisting incident. The injury had occurred two days prior. She reported pain rated a 5/10 in severity. Examination demonstrated no behavioral health abnormalities. There was no acute distress. There was no suicidal or homicidal ideation. There were no musculoskeletal findings. The claimant was diagnosed with anxiety, depression, work stress, right ankle pain, diabetes and obesity. The claimant remained on Paxil for treatment of anxiety and depression.

On 07/28/2021, the claimant continued with individual psychotherapy treatment.

On 11/17/2021, the claimant continued with individual behavioral therapy. The session was performed via telemedicine. There was a working diagnosis of generalized anxiety disorder.

On 12/29/2021, an additional session of individual behavioral therapy was performed.

On 02/05/2022, the claimant continued treatment with individual behavioral therapy.

On 02/07/2022, the claimant was seen by Ronald Prucha, MD, for evaluation. Since her last assessment, the claimant had been diagnosed with Covid. She reported feeling sick for about three weeks prior to her diagnosis and was currently doing better. The claimant was in the process of disability. A lawyer was involved in her care. The claimant asked the provider to write a statement regarding her capacity. The claimant remained in psychotherapy and was making progress towards her goals. The claimant reported that all of her issues are mental and emotional and not physical. There were no additional symptoms. Examination demonstrated no focal abnormalities. Symptoms attributed to Covid were stable and self-limited. The claimant was to continue with conservative measures including fluid, rest and over-the-counter agents. There was no indication for prescription medications.

**DIAGNOSIS:** Anxiety Disorder, unspecified

**RESPONSE TO REFERRAL QUESTIONS:**

**1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

Generalized anxiety disorder (F41.9).

**2. If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Major depressive disorder (F32.9), posttraumatic stress disorder (F43.12), coronary artery disease (I25.1), hypertension and obstructive sleep apnea.

**3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 6/22/21 (ltd benefit begin date) to - ongoing, and comment on the expected duration.**

Taking into consideration the entire clinical picture, the records do not support an impairing diagnosis from a psychiatric perspective from 06/22/2021 and ongoing.

During the timeframe in question, the claimant was being managed for symptoms related to anxiety, depression, and posttraumatic stress. Clinical symptoms are largely stable. The claimant was treated on an outpatient basis with medication follow-up visits and with individual therapy. There was no evidence of any cognitive decline, psychosis, delusion, suicidal ideation, or requirements for higher levels of care or service. The claimant's clinical picture did not arise to the level of impairment. There were no clinical findings from 06/22/2021 moving forward that would preclude activity. On 02/07/2022, the claimant was still in psychotherapy and was making progress towards her goals. The claimant reported that all of her issues are mental and emotional and not physical. Examination demonstrated no focal abnormalities.

**4. Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

The reviewed records do not support restrictions and limitations placed by the treating providers. As noted above, it is not established that the claimant's behavioral health related symptoms support impairment for the timeframe in question. The claimant is not required any escalating needs for care or level of service. Clinical symptoms have been largely stable.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

The medical management recommended by the providers and followed by the claimant has been reasonable and consistent with the claimant symptoms; however, there is not a current diagnosis that would arise to the level of impairment.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

There are no nonmedical circumstances identified in the medical records that are adversely impacting work.

**AP CONTACT:**

I called the number listed (919-237-1337) on 2/16/22 at 11:25am CST and spoke with Jenia who transferred me to Specialty Systems and I left a message for a return call on the general office voicemail.

I called the number listed (919-237-1337) on 2/22/22 at 8:00am CST and left a message for a return call on the general office voicemail. At the time of submission no returned phone calls had been received.

Stephen Gilman, M.D.
Board Certified Psychiatry
Board Certified Addiction Psychiatry
License: 206351 NY

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: Kim Naugle
Claim Number: 12227902
Case Number: 199863-1

"I, Stephen Gilman, MD, am a physician duly licensed to practice medicine in the State of NY. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

2/28/2022

Signature of Physician Date
Medical/Professional License # 206351

**From:**Staley, Sara <Sara.Staley@genexservices.com>
**Sent:**Mon, 28 Feb 2022 22:57:01 +0000
**To:**VendorReferrals
**Subject:**K. Naugle Claim #12227902
**Attachments:**Peer Review_7242732BOCA.PDF

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi ,

Attached is the Peer Review with Invoice to follow for the above referenced claimant. If we can further assist you with this file, please don't hesitate to give us a call.

Thanks for the referral,

**Sara Staley**
***Quality Assurance Coordinator***
Exam Coordinators Network, a division of Genex Services
**T**: 855-648-9248 #3
**F**: 561-392-5881
**Access our portal at: View My Cases**

urac
ACCREDITED
Independent
Medical
Examinations
Expires 04/01/2024

The information and any attachments contained in this email are confidential and proprietary, and may be protected under the law, including federal and state privacy laws. The information and attachments are intended solely for use by the individual or entity to whom this email is addressed. If you are not the intended recipient, you are notified that any use, dissemination, forwarding, or copying of this information or attachments is strictly prohibited. If you received this email in error, please notify the sender immediately and delete all copies of this email. Thank you.

**From:**Chestnut, Vanessa <Vanessa.Chestnut@genexservices.com>
**Sent:**Mon, 28 Feb 2022 23:15:09 +0000
**To:**VendorReferrals
**Subject:**K. Naugle Claim #12227902 199863-1
**Attachments:**Invoice_7245944BOCA.docx.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good Afternoon,

Attached please find the invoice for the above named claimant.

If we can further assist you with this file, please don't hesitate to give us a call.

Thank you for trusting ECN/Genex with your referral. We value your partnership and look forward to working with you.

**Vanessa Chestnut**
***Accounting Manager***
ECN, a division of Genex Services
**T**: 561-293-2715
**F**: 561-214-4540

**Upcoming PTO:**

urac®
ACCREDITED
Independent Medical Examinations
Expires 04/01/2024

The information and any attachments contained in this email are confidential and proprietary, and may be protected under the law, including federal and state privacy laws. The information and attachments are intended solely for use by the individual or entity to whom this email is addressed. If you are not the intended recipient, you are notified that any use, dissemination, forwarding, or copying of this information or attachments is strictly prohibited. If you received this email in error, please notify the sender immediately and delete all copies of this email. Thank you.

ECN
Exam Coordinators Network A division of Genex Services, LLC

**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**Invoice:** **BOCA 132545**

**Date** **2/28/2022**

***Bill To:***

**Johnna Shorter**
**Lincoln Financial-London, KY**
**P.O. Box 7207**
**London, KY 40742**

**Claim #** 12227902
**Date of Loss:** 12/24/2020
**ECN #** 199863-1
**Account #**

**Claimant** Kim Naugle

| | | |
|---|---|---|
| 2/15/2022 | Peer Review - Long Term Disability: Service<br>Provider: Stephen Gilman, MD<br>Specialty: Psychiatry | $860.00 |
| | **SubTotal** | $860.00 |
| | **Final Invoice Total** | $860.00 |

***Remit To:***
Exam Coordinators Network
440 E. Swedesford Road
Suite 1000
Wayne, PA 19087

Terms: Net 30 days
Tax Id #: 95-3327434

THANK YOU FOR THE OPPORTUNITY TO PROVIDE THIS SERVICE FOR YOU. PLEASE REMIT PAYMENT PROMPTLY.

. ! 5' , %F +øþ $/ "Q 28.128.151307. XB12.Ld &XII! ì ì . dP 61191091З.$/3.Q 211.1612162.65.

Progress Note

Patient: Naugle, Kim
Account Number: 275659
DOB: Age: 58 Y Sex: Female
Phone:
Address:
Pcp: Monica L Williams

Provider: Eric Kelly, LCSW
Date: 07/28/2021

## Subjective:

Chief Complaints:
1. BW initial.

HPI:

Behavioral Wellness:

TELEHEALTH MODALITY: This session occurred by means of a telehealth platform utilizing synchronous audio and video connection. The therapist and patient were both located in the State of NC. The specific location of the patient was verified and documented below if not the home address of record. If not at home, the patient was reminded about the risks of utilizing public areas and/or wifi networks for these types of personal interactions.

.

LOCATION (If other than address of record): N/A

.

ADVISED OF PUBLIC LOCATION AND WIFI RISKS: Yes - The patient has been informed of potential risks of using public Wi-Fi and/or having a public Virtual Health Session up to and including breach of HIPPA. In addition to having read and signed the Virtual Health Consent, the patient verbalizes understanding and agreement to continue the session and will assume all risks associated with stated conditions.

.

PERSONALIZED SAFETY WORD OR PHRASE TO LISTEN FOR IN THIS CASE: Not applicable (We have specifically discussed any concerns pt might have had regarding people who might be non-compliant with respecting privacy boundaries or may have an intention to seek to intrude on treatment. If necessary, a safety word or phrase was created to give the patient a clandestine means for indicating when the privacy of a session has been compromised.)

.

FACE-TO-FACE TIME: 10:02 am- 11:10 am (68 mins total):

.

PRESENTING PROBLEM/PATIENT GOALS:

. Kim endorses a hypersensitivity to stress and the anxiety that comes with it. She would like to get her anxiety and stress under control. She has reached a saturation point. She endorses an increase in depression/anxiety symptoms lately and has increased her Klonopin medication to more times per week to help her manage the anxiety better.

.

REVIEW OF PSYCHOLOGICAL SCREENINGS:

. Will complete the PHQ9 and GAD-7 inventories during f/u session to assess her current severity levels; however, Kim has a history of depressive and anxiety symptoms. She had also previously been diagnosed with PTSD as well.

.

DANGEROUSNESS:

. No SI/HI or AH/VHs reported.

.

TREATMENT HISTORY:

. Kim was previously seeing this therapist while working at another community based mental health agency to treat her depression and anxiety symptoms. She initially worked with a psychiatrist at the same agency who then referred her to this therapist. Kim felt this therapist was understanding of her needs and she decided to voluntarily follow him to Avance Care to continue treatment with him.

. ! 5' , %F +øþ $/"ℒ 28.I28.I51307. XB12. L:d &XII!ìì . dP 61191091 3.$/3.ℒ 211.I612.I6265.

.
SUBSTANCE ABUSE HISTORY:
. Will gather during f/u session.

.
FAMILY PSYCHIATRIC HISTORY:
. Mother and brother were said to have some mental health difficulties. She has helped her brother out during his ongoing life struggles.

.
RELEVANT MEDICAL HISTORY (e.g., DIABETES, HTN, GI CONCERNS, etc.):
. High blood pressure and multiple other concerns reported that also affect her physical health as well.

.
RELATIONSHIP WITH FOOD/WEIGHT HISTORY: (e.g., PAST BEHAVIORS, CURRENT RITUALS, PRESENT GOALS, BODY IMAGE CONCERNS, etc.)
. Talks of occasional stress eating and talked of losing some weight earlier this year. She knows she needs to lose more weight and talks of having low energy that keeps her from following through on things.

.
SOCIAL HISTORY:
. Will gather during f/u session.

.
FAMILY/MARITAL HISTORY:
. Currently married and reports feeling guilty that her husband is taking on much of the financial responsibilities due to going on disability. She also described having a strained relationship with her family due to her political views and beliefs that differ from others in the family.

.
EDUCATIONAL HISTORY:
. Will gather during f/u session.

.
MILITARY HISTORY:
. Will gather during f/u session.

.
VOCATIONAL HISTORY:
. Had been working steadily for the same company until having to go on medical leave. She continues to navigate the system to file for disability benefits given current work limitations.

.
RECREATIONAL/LEISURE HISTORY:
. She enjoys taking care of her animals.

.
SPIRITUAL/RELIGIOUS HISTORY:
. Will gather during f/u session.

.
LEGAL HISTORY:
. Will gather during f/u session.

.
FUTURE PLANS:
. To be rewarded disability benefits and to better manage stress and anxiety to increase her energy and motivation to do more things. She wants to better cope with ongoing family stress as well.

Medical History:

## Objective:

Examination:

Mental Status:

GROOMING/ATTIRE casual, well-coordinated, appropriate. PHYSICAL APPEARANCE overweight. FACIAL EXPRESSION alert, tense, stressed. EYE CONTACT good. ATTITUDE cooperative, frank/open, polite, friendly, smiling often, humorous,

.!5',%F +øp $/"Ջ 28.I28.I51307. XÐ12.Ŀd &XII!ì ì .dP 61910913.$/3Ջ 211I612I6265.

silly. AFFECT congruent, anxious, expansive. MOOD congruent, depressed, anxious. PSYCHOMOTOR BEHAVIOR psychomotor acceleration (Talkative). SPEECH/COMMUNICATION WNL. ESTIMATE OF INTELLECTUAL FUNCTION grossly within normal limits. ORIENTATION person, place, alert. STREAM OF MENTAL ACTIVITY logical, goal-directed, spontaneous, relevant, tangential, rambling, flight of ideas. PERCEPTIONS absence of hallucinations. ABSTRACT THINKING within normal limits. INSIGHT good. JUDGEMENT good. MEMORY grossly intact. DANGEROUSNESS TO SELF denies thoughts of harming self. DANGEROUSNESS TO OTHERS denies thoughts of harming others.

## Assessment:

Assessment:

1. Severe episode of recurrent major depressive disorder, without psychotic features - F33.2 (Primary)
2. Generalized anxiety disorder - F41.1
3. Post traumatic stress disorder (PTSD) - F43.10

## Plan:

1. Others

Clinical Notes:

.

CLINICAL SUMMARY/CASE CONCEPTUALIZATION:

. Kim is a married adult white female who presents with severe depression and anxiety. In addition she has a PTSD diagnosis connected to her past and unresolved family conflicts. Some of the symptoms reported that endorse her Major Depression diagnosis are: Chronic fatigue, lowered interest in activities, weight related issues connected to medical problems (She lost 15 lbs from the beginning of this year but feels since working on this she should have lost more weight), a decreased appetite due to medication but also reports while having severe anxiety she cannot eat. Her trouble sleeping was described as broken/interruptive sleep, which is part of her daily fatigue as she is not getting consistent sleep throughout the night (Has been prescribed sleep medication as well). She also talked of having sleep apnea that also breaks up her sleep. She reported having a ton of guilt connected to feeling like the financial burden is all on her husband and feels like she is failing her husband. Problems with focusing, concentrating and making decisions as well. She talks of worrying about herself dying or husband dying and having to leave the other behind. She is worried that if she doesn't get her health related issues under control that she will die. Her fear of having to abandon others is very worrisome to her as well. She also continues to have family member conflicts connected to politics and other socially related issues, which is an additional source of her stress. She talked of being singled out some by her family for her personal views.

.

.Kim is taking Paxil and Klonopin to help reduce anxiety symptoms as well. She is having to take her klonopin multiple times per week where she hasn't had to do this before. Helps her to get through her anxiety episodes. While in the throws of anxiety she gets more irritable and has no patience and sometimes focuses on her husband. She also spoke of carrying bodily tension in her shoulders and neck as well. Talked of deep tissue "massage therapy" helping her a lot and she can then come home to relax for the remainder of the day, which is a good coping skill as well. Kim also tries to motivate herself each morning to take care of her pets and to fight her lethargy while engaged in daily tasks. She is eager to get through and better manage her stressors and also wants to continue solution focused based work with this therapist in order to increase and feel more hopeful that she is getting better both during and following this treatment period.

.

TREATMENT RECOMMENDATIONS:

.

1. This provider will gather the remaining pieces of information from Kim to complete the initial evaluation while also implementing the PHQ9 and GAD-7 to assess her current depression/anxiety severity levels.

. ! 5' , %F +øþ $/"Ȃ 28.I28.I51307. X912. L:d &XII ! ) ) . dP 61910913. $/3Ȃ 211.I612.I6265.

1a. This provider will utilize solution focused based interventions in order to assist Kim to reduce and better manage her depressive, anxiety, and PTSD symptoms.

2. The patient has been educated about telehealth and would be ready to utilize this modality when needed. Authorized emergency contact is: Not identified.

3. Encourage whole-person care by tracking the date of the annual physical and actively working with patients to promote buy-in for routine, preventitive care, and encourage an annual physical. Last CPE/AWV was performed on: Unknown, but will gather during next f/u session.

Procedure Codes: 90791 PSYCH DIAGNOSTIC EVALUATION

Follow Up: 2 Weeks

Eric J. Kelly, LCSW

Electronically signed by Eric Kelly , LCSW on 08/26/2021 at 10:10 AM EDT
Sign off status: Completed

Provider: Eric Kelly, LCSW Date: 07/28/2021

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 07/28/2021

**Progress Note**

**Patient:** Naugle, Kim
**Account Number:** 275659
**DOB:** **Age:** 58 Y **Sex:** Female
**Phone:**
**Address:**
**Pcp:** Monica L Williams

**Provider:** Eric Kelly, LCSW
**Date:** 07/28/2021

## Subjective:

**Chief Complaints:**

1. BW initial.

**HPI:**

Behavioral Wellness:

TELEHEALTH MODALITY: This session occurred by means of a telehealth platform utilizing synchronous audio and video connection. The therapist and patient were both located in the State of NC. The specific location of the patient was verified and documented below if not the home address of record. If not at home, the patient was reminded about the risks of utilizing public areas and/or wifi networks for these types of personal interactions.

.
LOCATION (If other than address of record): N/A

.
ADVISED OF PUBLIC LOCATION AND WIFI RISKS: Yes - The patient has been informed of potential risks of using public Wi-Fi and/or having a public Virtual Health Session up to and including breach of HIPPA. In addition to having read and signed the Virtual Health Consent, the patient verbalizes understanding and agreement to continue the session and will assume all risks associated with stated conditions.

.
PERSONALIZED SAFETY WORD OR PHRASE TO LISTEN FOR IN THIS CASE: Not applicable (We have specifically discussed any concerns pt might have had regarding people who might be non-compliant with respecting privacy boundaries or may have an intention to seek to intrude on treatment. If necessary, a safety word or phrase was created to give the patient a clandestine means for indicating when the privacy of a session has been compromised.)

.
FACE-TO-FACE TIME: 10:02 am- 11:10 am (68 mins total):

.
PRESENTING PROBLEM/PATIENT GOALS:
. Kim endorses a hypersensitivity to stress and the anxiety that comes with it. She would like to get her anxiety and stress under control. She has reached a saturation point. She endorses an increase in depression/anxiety symptoms lately and has increased her Klonopin medication to more times per week to help her manage the anxiety better.

.
REVIEW OF PSYCHOLOGICAL SCREENINGS:
. Will complete the PHQ9 and GAD-7 inventories during f/u session to assess her current severity levels; however, Kim has a history of depressive and anxiety symptoms. She had also previously been diagnosed with PTSD as well.

.
DANGEROUSNESS:
. No SI/HI or AH/VHs reported.

.
TREATMENT HISTORY:
. Kim was previously seeing this therapist while working at another community based mental health agency to treat her depression and anxiety symptoms. She initially worked with a psychiatrist at the same agency who then referred her to this therapist. Kim felt this therapist was understanding of her needs and she decided to voluntarily follow him to Avance Care to continue treatment with him.

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 07/28/2021

.
SUBSTANCE ABUSE HISTORY:
. Will gather during f/u session.

.
FAMILY PSYCHIATRIC HISTORY:
. Mother and brother were said to have some mental health difficulties. She has helped her brother out during his ongoing life struggles.

.
RELEVANT MEDICAL HISTORY (e.g., DIABETES, HTN, GI CONCERNS, etc.):
. High blood pressure and multiple other concerns reported that also affect her physical health as well.

.
RELATIONSHIP WITH FOOD/WEIGHT HISTORY: (e.g., PAST BEHAVIORS, CURRENT RITUALS, PRESENT GOALS, BODY IMAGE CONCERNS, etc.)
. Talks of occasional stress eating and talked of losing some weight earlier this year. She knows she needs to lose more weight and talks of having low energy that keeps her from following through on things.

.
SOCIAL HISTORY:
. Will gather during f/u session.

.
FAMILY/MARITAL HISTORY:
. Currently married and reports feeling guilty that her husband is taking on much of the financial responsibilities due to going on disability. She also described having a strained relationship with her family due to her political views and beliefs that differ from others in the family.

.
EDUCATIONAL HISTORY:
. Will gather during f/u session.

.
MILITARY HISTORY:
. Will gather during f/u session.

.
VOCATIONAL HISTORY:
. Had been working steadily for the same company until having to go on medical leave. She continues to navigate the system to file for disability benefits given current work limitations.

.
RECREATIONAL/LEISURE HISTORY:
. She enjoys taking care of her animals.

.
SPIRITUAL/RELIGIOUS HISTORY:
. Will gather during f/u session.

.
LEGAL HISTORY:
. Will gather during f/u session.

.
FUTURE PLANS:
. To be rewarded disability benefits and to better manage stress and anxiety to increase her energy and motivation to do more things. She wants to better cope with ongoing family stress as well.

**Medical History:**

## Objective:

**Examination:**

Mental Status:

GROOMING/ATTIRE casual, well-coordinated, appropriate. PHYSICAL APPEARANCE overweight. FACIAL EXPRESSION alert, tense, stressed. EYE CONTACT good. ATTITUDE cooperative, frank/open, polite, friendly, smiling often, humorous,

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 07/28/2021

silly. AFFECT congruent, anxious, expansive. MOOD congruent, depressed, anxious. PSYCHOMOTOR BEHAVIOR psychomotor acceleration (Talkative). SPEECH/COMMUNICATION WNL. ESTIMATE OF INTELLECTUAL FUNCTION grossly within normal limits. ORIENTATION person, place, alert. STREAM OF MENTAL ACTIVITY logical, goal-directed, spontaneous, relevant, tangential, rambling, flight of ideas. PERCEPTIONS absence of hallucinations. ABSTRACT THINKING within normal limits. INSIGHT good. JUDGEMENT good. MEMORY grossly intact. DANGEROUSNESS TO SELF denies thoughts of harming self. DANGEROUSNESS TO OTHERS denies thoughts of harming others.

## Assessment:

**Assessment:**

1. Severe episode of recurrent major depressive disorder, without psychotic features - F33.2 (Primary)
2. Generalized anxiety disorder - F41.1
3. Post traumatic stress disorder (PTSD) - F43.10

## Plan:

**1. Others**

Clinical Notes:

.

CLINICAL SUMMARY/CASE CONCEPTUALIZATION:

. Kim is a married adult white female who presents with severe depression and anxiety. In addition she has a PTSD diagnosis connected to her past and unresolved family conflicts. Some of the symptoms reported that endorse her Major Depression diagnosis are: Chronic fatigue, lowered interest in activities, weight related issues connected to medical problems (She lost 15 lbs from the beginning of this year but feels since working on this she should have lost more weight), a decreased appetite due to medication but also reports while having severe anxiety she cannot eat. Her trouble sleeping was described as broken/interruptive sleep, which is part of her daily fatigue as she is not getting consistent sleep throughout the night (Has been prescribed sleep medication as well). She also talked of having sleep apnea that also breaks up her sleep. She reported having a ton of guilt connected to feeling like the financial burden is all on her husband and feels like she is failing her husband. Problems with focusing, concentrating and making decisions as well. She talks of worrying about herself dying or husband dying and having to leave the other behind. She is worried that if she doesn't get her health related issues under control that she will die. Her fear of having to abandon others is very worrisome to her as well. She also continues to have family member conflicts connected to politics and other socially related issues, which is an additional source of her stress. She talked of being singled out some by her family for her personal views.

.

.Kim is taking Paxil and Klonopin to help reduce anxiety symptoms as well. She is having to take her klonopin multiple times per week where she hasn't had to do this before. Helps her to get through her anxiety episodes. While in the throws of anxiety she gets more irritable and has no patience and sometimes focuses on her husband. She also spoke of carrying bodily tension in her shoulders and neck as well. Talked of deep tissue "massage therapy" helping her a lot and she can then come home to relax for the remainder of the day, which is a good coping skill as well. Kim also tries to motivate herself each morning to take care of her pets and to fight her lethargy while engaged in daily tasks. She is eager to get through and better manage her stressors and also wants to continue solution focused based work with this therapist in order to increase and feel more hopeful that she is getting better both during and following this treatment period.

.

TREATMENT RECOMMENDATIONS:

.

1. This provider will gather the remaining pieces of information from Kim to complete the initial evaluation while also implementing the PHQ9 and GAD-7 to assess her current depression/anxiety severity levels.

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 07/28/2021

.
1a. This provider will utilize solution focused based interventions in order to assist Kim to reduce and better manage her depressive, anxiety, and PTSD symptoms.

.
2. The patient has been educated about telehealth and would be ready to utilize this modality when needed. Authorized emergency contact is: Not identified.

.
3. Encourage whole-person care by tracking the date of the annual physical and actively working with patients to promote buy-in for routine, preventitive care, and encourage an annual physical. Last CPE/AWV was performed on: Unknown, but will gather during next f/u session.

.

**Procedure Codes:** 90791 PSYCH DIAGNOSTIC EVALUATION

**Follow Up:** 2 Weeks

Eric J. Kelly, LCSW

**Electronically signed by Eric Kelly , LCSW on 08/26/2021 at 10:10 AM EDT**
**Sign off status: Completed**

---

**Provider:** Eric Kelly, LCSW **Date:** 07/28/2021

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 09/07/2021

**Progress Note**

**Patient:** Naugle, Kim
**Account Number:** 275659
**DOB:** **Age:** 58 Y **Sex:** Female
**Phone:**
**Address:**
**Pcp:** Monica L Williams

**Provider:** Eric Kelly, LCSW
**Date:** 09/07/2021

## Subjective:

**Chief Complaints:**

1. -BW f/u.

**HPI:**

Behavioral Wellness:

TELEHEALTH MODALITY: This session occurred by means of a telehealth platform utilizing synchronous audio and video connection. The therapist and patient were both located in the State of NC. The specific location of the patient was verified and documented below if not the home address of record. If not at home, the patient was reminded about the risks of utilizing public areas and/or wifi networks for these types of personal interactions.

.
LOCATION (If other than address of record):

.
ADVISED OF PUBLIC LOCATION AND WIFI RISKS: Yes - The patient has been informed of potential risks of using public Wi-Fi and/or having a public Virtual Health Session up to and including breach of HIPPA. In addition to having read and signed the Virtual Health Consent, the patient verbalizes understanding and agreement to continue the session and will assume all risks associated with stated conditions.

.
PERSONALIZED SAFETY WORD OR PHRASE TO LISTEN FOR IN THIS CASE: Not applicable (We have specifically discussed any concerns pt might have had regarding people who might be non-compliant with respecting privacy boundaries or may have an intention to seek to intrude on treatment. If necessary, a safety word or phrase was created to give the patient a clandestine means for indicating when the privacy of a session has been compromised.)

.
FACE-TO-FACE TIME: 11:00 am- 12:00 pm (60 mins):

.
P- To assist pt. by collaboratively deriving at solutions to get closer to her desired outcome to improving relationship with mom.

.
I- OPT utilized anticipatory guidance with pt. to encourage a reduction in bothersome thoughts/feelings related to she and mom not being on the best of terms. OPT challenged pt. to look at exception periods to the problem happening and to identify what was, is, and could be different and how she might be able to make some early changes (Noticing times when she and mom are having more pleasant discussions). OPT acknowledged her positive changes, efforts, strengths, and skills (Sharing how she most recently managed to overcome the stress she previously had connected to her last held job) that is allowing her to next work through the ongoing issues with her mom. This OPT also agreed to ask pt. f/u symptoms questions to rule out other dxs (Pt. is concerned that she may have OCD given that other family members have these behaviors).

.
E- Pt. is making a greater effort to improve relations with her mom as evidenced by showing an early desire to change this by describing what her "best hopes/preferred future" would look like as she continues to explore and apply solutions to mend their relationship. Pt. also appears to be paying closer attention to the signs/clues that are making the problem feel less intense, such as while choosing topics with her mom that would allow for more closeness between them. Pt. also managed to identify new solutions, such as wanting to have a plan and be more prepared as she begins making decisions on her

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 09/07/2021

mom's behalf due to aging concerns (Claims no other family members are helping in this area), which will likely help motivate pt. to re-connect with her mom in a way that will enable her to begin this process. Pt. also asked if this OPT could rule out/in an OCD diagnosis given some of her anxious behaviors as well.

.

**Medical History:**

## Objective:

## Assessment:

**Assessment:**

1. Generalized anxiety disorder - F41.1 (Primary)

.

CLINICAL SUMMARY/CASE CONCEPTUALIZATION:

.

. Kim is a married adult white female who presents with severe depression and anxiety. In addition she has a PTSD diagnosis connected to her past and unresolved family conflicts. Some of the symptoms reported that endorse her Major Depression diagnosis are: Chronic fatigue, lowered interest in activities, weight related issues connected to medical problems (She lost 15 lbs from the beginning of this year but feels since working on this she should have lost more weight), a decreased appetite due to medication but also reports while having severe anxiety she cannot eat. Her trouble sleeping was described as broken/interruptive sleep, which is part of her daily fatigue as she is not getting consistent sleep throughout the night (Has been prescribed sleep medication as well). She also talked of having sleep apnea that also breaks up her sleep. She reported having a ton of guilt connected to feeling like the financial burden is all on her husband and feels like she is failing her husband. Problems with focusing, concentrating and making decisions as well. She talks of worrying about herself dying or husband dying and having to leave the other behind. She is worried that if she doesn't get her health related issues under control that she will die. Her fear of having to abandon others is very worrisome to her as well. She also continues to have family member conflicts connected to politics and other socially related issues, which is an additional source of her stress. She talked of being singled out some by her family for her personal views.

.

.Kim is taking Paxil and Klonopin to help reduce anxiety symptoms as well. She is having to take her klonopin multiple times per week where she hasn't had to do this before. Helps her to get through her anxiety episodes. While in the throws of anxiety she gets more irritable and has no patience and sometimes focuses on her husband. She also spoke of carrying bodily tension in her shoulders and neck as well. Talked of deep tissue "massage therapy" helping her a lot and she can then come home to relax for the remainder of the day, which is a good coping skill as well. Kim also tries to motivate herself each morning to take care of her pets and to fight her lethargy while engaged in daily tasks. She is eager to get through and better manage her stressors and also wants to continue solution focused based work with this therapist in order to increase and feel more hopeful that she is getting better both during and following this treatment period.

.

TREATMENT RECOMMENDATIONS:

.

1. This provider will gather the remaining pieces of information from Kim to complete the initial evaluation while also implementing the PHQ9 and BAI to assess her current depression/anxiety severity levels (Completed during f/u session held on 8/11/21).

.

1a. This provider will utilize solution focused based interventions in order to assist Kim to reduce and better manage her depressive, anxiety, and PTSD symptoms (Initiated this process on 8/27/21).

.

2. The patient has been educated about telehealth and would be ready to utilize this modality when needed. Authorized emergency contact is: Not identified.

---

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 09/07/2021

.
3. Encourage whole-person care by tracking the date of the annual physical and actively working with patients to promote buy-in for routine, preventitive care, and encourage an annual physical. Last CPE/AWV was performed on: Unknown, but will gather during next f/u session on 8/27/21.

.
4. This provider will ask pt. to respond to f/u symptoms-related questions taken from the DSM-V to rule in/out an OCD diagnosis.

**Plan:**

**Procedure Codes:** 90837 PSYTX PT &/FAMILY 60 MINUTES

**Follow Up:** 2 Weeks

Eric J. Kelly, LCSW

**Electronically signed by Eric Kelly , LCSW on 09/27/2021 at 04:41 PM EDT**
**Sign off status: Completed**

---

**Provider:** Eric Kelly, LCSW **Date:** 09/07/2021

## Progress Note

**Patient:** Naugle, Kim
**Account Number:** 275659
**DOB:** **Age:** 58 Y **Sex:** Female
**Phone:**
**Address:**
**Pcp:** Monica L Williams

**Provider:** Eric Kelly, LCSW
**Date:** 09/27/2021

---

## Subjective:

**Chief Complaints:**

1. -BW f/u.

**HPI:**

Behavioral Wellness:

TELEHEALTH MODALITY: This session occurred by means of a telehealth platform utilizing synchronous audio and video connection. The therapist and patient were both located in the State of NC. The specific location of the patient was verified and documented below if not the home address of record. If not at home, the patient was reminded about the risks of utilizing public areas and/or wifi networks for these types of personal interactions.

.
LOCATION (If other than address of record):

.
ADVISED OF PUBLIC LOCATION AND WIFI RISKS: Yes - The patient has been informed of potential risks of using public Wi-Fi and/or having a public Virtual Health Session up to and including breach of HIPPA. In addition to having read and signed the Virtual Health Consent, the patient verbalizes understanding and agreement to continue the session and will assume all risks associated with stated conditions.

.
PERSONALIZED SAFETY WORD OR PHRASE TO LISTEN FOR IN THIS CASE: Not applicable (We have specifically discussed any concerns pt might have had regarding people who might be non-compliant with respecting privacy boundaries or may have an intention to seek to intrude on treatment. If necessary, a safety word or phrase was created to give the patient a clandestine means for indicating when the privacy of a session has been compromised.)

.
FACE-TO-FACE TIME: 11:15 am- 12:30 pm: 75 mins- (Pt. was initially having log on difficulties and signed on late to this call):

.
P- To assist pt. by collaboratively deriving at solutions to get closer to her desired outcome to further reduce the impact of multiple stressors on her to allow her to feel like she is moving forward again; To rule out an OCD diagnosis this session.

.
I- OPT utilized anticipatory guidance with pt. to encourage a reduction in bothersome thoughts/feelings related to family and things outside of her control. OPT challenged pt. to look at exception periods to the problems happening and to identify what was, is, and could be different and asked how she might be able to elicit some early changes (Continually advocating on her own behalf to get things accomplished). This OPT acknowledged her ongoing positive changes, efforts, strengths, and skills (Weight loss that she is proud of achieving) that are presently contributing to pt's most desired outcome as well. This OPT also asked her some common checklist DSM symptoms connected to OCD which was ruled out as a diagnosis (She only experiences some obsessive thinking, but not sufficient enough to make an OCD dx).

.
E- Pt. is making a greater effort to manage her stressors as evidenced by showing an improved ability and desire to change this by imagining what her "best hopes/preferred future" would look like as she continues to explore and apply solutions towards reducing the problems. Pt. also appears to be paying closer attention to the signs/clues that are making the problems feel less intense, such as

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 09/27/2021

having more quality time with her husband and improving in one health related area as well. Pt. also managed to identify other areas for future discussions, such as getting through obstacles that keep her and her mom at odds with one another, to help her feel less stressed over how she perceives she is viewed by her mom and others in her family. Pt. was also relieved that she was not experiencing OCD symptoms similarly to others in her family as well.

.

**Medical History:**

## Objective:

## Assessment:

**Assessment:**

1. Generalized anxiety disorder - F41.1 (Primary)

## Plan:

**1. Generalized anxiety disorder**
Clinical Notes:
CLINICAL SUMMARY/CASE CONCEPTUALIZATION:

.

. Kim is a married adult white female who presents with severe depression and anxiety. In addition she has a PTSD diagnosis connected to her past and unresolved family conflicts. Some of the symptoms reported that endorse her Major Depression diagnosis are: Chronic fatigue, lowered interest in activities, weight related issues connected to medical problems (She lost 15 lbs from the beginning of this year but feels since working on this she should have lost more weight), a decreased appetite due to medication but also reports while having severe anxiety she cannot eat. Her trouble sleeping was described as broken/interruptive sleep, which is part of her daily fatigue as she is not getting consistent sleep throughout the night (Has been prescribed sleep medication as well). She also talked of having sleep apnea that also breaks up her sleep. She reported having a ton of guilt connected to feeling like the financial burden is all on her husband and feels like she is failing her husband. Problems with focusing, concentrating and making decisions as well. She talks of worrying about herself dying or husband dying and having to leave the other behind. She is worried that if she doesn't get her health related issues under control that she will die. Her fear of having to abandon others is very worrisome to her as well. She also continues to have family member conflicts connected to politics and other socially related issues, which is an additional source of her stress. She talked of being singled out some by her family for her personal views.

.

.Kim is taking Paxil and Klonopin to help reduce anxiety symptoms as well. She is having to take her klonopin multiple times per week where she hasn't had to do this before. Helps her to get through her anxiety episodes. While in the throws of anxiety she gets more irritable and has no patience and sometimes focuses on her husband. She also spoke of carrying bodily tension in her shoulders and neck as well. Talked of deep tissue "massage therapy" helping her a lot and she can then come home to relax for the remainder of the day, which is a good coping skill as well. Kim also tries to motivate herself each morning to take care of her pets and to fight her lethargy while engaged in daily tasks. She is eager to get through and better manage her stressors and also wants to continue solution focused based work with this therapist in order to increase and feel more hopeful that she is getting better both during and following this treatment period.

.

TREATMENT RECOMMENDATIONS:

.

1. This provider will gather the remaining pieces of information from Kim to complete the initial evaluation while also implementing the PHQ9 and BAI to assess her current depression/anxiety severity levels (Completed during f/u session held on 8/11/21).

.

1a. This provider will utilize solution focused based interventions in order to assist Kim to reduce and

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 09/27/2021

better manage her depressive, anxiety, and PTSD symptoms (Initiated this process on 8/27/21).

.

2. The patient has been educated about telehealth and would be ready to utilize this modality when needed. Authorized emergency contact is: Not identified.

.

3. Encourage whole-person care by tracking the date of the annual physical and actively working with patients to promote buy-in for routine, preventitive care, and encourage an annual physical. Last CPE/AWV was performed on: Unknown, but will gather during next f/u session on 8/27/21.

.

4. This provider will ask pt. to respond to f/u symptoms-related questions taken from the DSM-V to rule in/out an OCD diagnosis (Completed 9/27).

**Procedure Codes:** 90837 PSYTX PT &/FAMILY 60 MINUTES

**Follow Up:** 1 Week

Eric J. Kelly, LCSW

**Electronically signed by Eric Kelly , LCSW on 09/30/2021 at 02:48 PM EDT**
**Sign off status: Completed**

---

**Provider:** Eric Kelly, LCSW **Date:** 09/27/2021

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 10/05/2021

## Progress Note

**Patient:** Naugle, Kim
**Account Number:** 275659
**DOB:** **Age:** 58 Y **Sex:** Female
**Phone:**
**Address:**
**Pcp:** Monica L Williams

**Provider:** Eric Kelly, LCSW
**Date:** 10/05/2021

### Subjective:

**Chief Complaints:**

1. -BW f/u.

**HPI:**

Behavioral Wellness:

TELEHEALTH MODALITY: This session occurred by means of a telehealth platform utilizing synchronous audio and video connection. The therapist and patient were both located in the State of NC. The specific location of the patient was verified and documented below if not the home address of record. If not at home, the patient was reminded about the risks of utilizing public areas and/or wifi networks for these types of personal interactions.

.

LOCATION (If other than address of record):

.

ADVISED OF PUBLIC LOCATION AND WIFI RISKS: Yes - The patient has been informed of potential risks of using public Wi-Fi and/or having a public Virtual Health Session up to and including breach of HIPPA. In addition to having read and signed the Virtual Health Consent, the patient verbalizes understanding and agreement to continue the session and will assume all risks associated with stated conditions.

.

PERSONALIZED SAFETY WORD OR PHRASE TO LISTEN FOR IN THIS CASE: Not applicable (We have specifically discussed any concerns pt might have had regarding people who might be non-compliant with respecting privacy boundaries or may have an intention to seek to intrude on treatment. If necessary, a safety word or phrase was created to give the patient a clandestine means for indicating when the privacy of a session has been compromised.)

.

FACE-TO-FACE TIME: 11:05 am- 11:50 am (45 mins): Pt. had much going on and preferred to keep session briefer today.

.

P- To assist pt. by collaboratively deriving at solutions to get closer to her desired outcome to reduce ongoing life stressors; To continue to work towards reducing the negative impact of her symptoms connected to mood, anxiety, and PTSD disorders.

.

I- OPT validated pt.'s feelings regarding the ongoing life stressors mostly connected to work/disability and family strife. OPT stressed to pt. the importance of reshifting her focus onto her preferred future and reconnecting to the things that were once more pleasing to experience in her life. This OPT also educated pt. on the format of his current clinical notes as she prepares to request copies for unemployment MH disability claim that has been ongoing as well. This OPT praised pt. for self advocating to get her tasks and goals accomplished.

.

E- Pt. is making a consistent effort to reduce life stressors as evidenced by being proactive and continuing to explore more feasible solutions to reduce her level of stress to date. Pt. also appears willing to pay closer attention to the previous signs/clues that once made the problems feel much less intense or non-existent, such as while she and family were more interactive and she was taking on more of a caregiving role to family members as well. Pt. continues to try to identify new solutions to better manage her life stressors; however, she continues to experience much difficulty given the intensity of her anxiety and trauma-based symptoms to date. Pt. also agreed to work with this OPT on

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 10/05/2021

envisioning a clearer, more hopeful future that includes all of what she would like to have instead of the current issues and problems that are keeping her feeling stuck and overwhelmed.

.

**Medical History:**

## Objective:

## Assessment:

**Assessment:**

1. Generalized anxiety disorder - F41.1 (Primary)

## Plan:

**1. Generalized anxiety disorder**
Clinical Notes:
CLINICAL SUMMARY/CASE CONCEPTUALIZATION:

.

. Kim is a married adult white female who presents with severe depression and anxiety. In addition she has a PTSD diagnosis connected to her past and unresolved family conflicts. Some of the symptoms reported that endorse her Major Depression diagnosis are: Chronic fatigue, lowered interest in activities, weight related issues connected to medical problems (She lost 15 lbs from the beginning of this year but feels since working on this she should have lost more weight), a decreased appetite due to medication but also reports while having severe anxiety she cannot eat. Her trouble sleeping was described as broken/interruptive sleep, which is part of her daily fatigue as she is not getting consistent sleep throughout the night (Has been prescribed sleep medication as well). She also talked of having sleep apnea that also breaks up her sleep. She reported having a ton of guilt connected to feeling like the financial burden is all on her husband and feels like she is failing her husband. Problems with focusing, concentrating and making decisions as well. She talks of worrying about herself dying or husband dying and having to leave the other behind. She is worried that if she doesn't get her health related issues under control that she will die. Her fear of having to abandon others is very worrisome to her as well. She also continues to have family member conflicts connected to politics and other socially related issues, which is an additional source of her stress. She talked of being singled out some by her family for her personal views.

.

.Kim is taking Paxil and Klonopin to help reduce anxiety symptoms as well. She is having to take her klonopin multiple times per week where she hasn't had to do this before. Helps her to get through her anxiety episodes. While in the throws of anxiety she gets more irritable and has no patience and sometimes focuses on her husband. She also spoke of carrying bodily tension in her shoulders and neck as well. Talked of deep tissue "massage therapy" helping her a lot and she can then come home to relax for the remainder of the day, which is a good coping skill as well. Kim also tries to motivate herself each morning to take care of her pets and to fight her lethargy while engaged in daily tasks. She is eager to get through and better manage her stressors and also wants to continue solution focused based work with this therapist in order to increase and feel more hopeful that she is getting better both during and following this treatment period.

.

TREATMENT RECOMMENDATIONS:

.

1. This provider will gather the remaining pieces of information from Kim to complete the initial evaluation while also implementing the PHQ9 and BAI to assess her current depression/anxiety severity levels (Completed during f/u session held on 8/11/21).

.

1a. This provider will utilize solution focused based interventions in order to assist Kim to reduce and better manage her severe depressive, anxiety, and PTSD symptoms (Initiated this process on 8/27/21 and goal remains ongoing).

.

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 10/05/2021

2. The patient has been educated about telehealth and would be ready to utilize this modality when needed. Authorized emergency contact is: Not identified.

.

3. Encourage whole-person care by tracking the date of the annual physical and actively working with patients to promote buy-in for routine, preventitive care, and encourage an annual physical. Last CPE/AWV was performed on: Unknown, but will gather during next f/u session in 2 weeks.

.

4. This provider will ask pt. to respond to f/u symptoms-related questions taken from the DSM-V to rule in/out an OCD diagnosis (Completed 9/27/21. OCD has been currently ruled out as an additional diagnosis).

**Procedure Codes:** 90834 PSYTX PT&/FAMILY 45 MINUTES

**Follow Up:** 2 Weeks

Eric J. Kelly, LCSW

**Electronically signed by Eric Kelly , LCSW on 10/30/2021 at 12:24 PM EDT**
**Sign off status: Completed**

---

**Provider: Eric Kelly, LCSW** **Date: 10/05/2021**

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 10/20/2021

**Progress Note**

**Patient:** Naugle, Kim
**Account Number:** 275659
**DOB:** **Age:** 58 Y **Sex:** Female
**Phone:**
**Address:**
**Pcp:** Monica L Williams

**Provider:** Eric Kelly, LCSW
**Date:** 10/20/2021

## Subjective:

**Chief Complaints:**
1. -BW f/u.

**HPI:**
Behavioral Wellness:
TELEHEALTH MODALITY: This session occurred by means of a telehealth platform utilizing synchronous audio and video connection. The therapist and patient were both located in the State of NC. The specific location of the patient was verified and documented below if not the home address of record. If not at home, the patient was reminded about the risks of utilizing public areas and/or wifi networks for these types of personal interactions.

LOCATION (If other than address of record):

ADVISED OF PUBLIC LOCATION AND WIFI RISKS: Yes - The patient has been informed of potential risks of using public Wi-Fi and/or having a public Virtual Health Session up to and including breach of HIPPA. In addition to having read and signed the Virtual Health Consent, the patient verbalizes understanding and agreement to continue the session and will assume all risks associated with stated conditions.

PERSONALIZED SAFETY WORD OR PHRASE TO LISTEN FOR IN THIS CASE: Not applicable (We have specifically discussed any concerns pt might have had regarding people who might be non-compliant with respecting privacy boundaries or may have an intention to seek to intrude on treatment. If necessary, a safety word or phrase was created to give the patient a clandestine means for indicating when the privacy of a session has been compromised.)

FACE-TO-FACE TIME: 11:03 am- 11:58 am (55 mins):

P- To assist pt. by collaboratively deriving at solutions to get closer to her desired outcome to move to new place and begin her preferred life with husband; To inform her that last piece of information requested by her attorney was faxed out earlier today.

I- OPT utilized anticipatory guidance with pt. to encourage a reduction in bothersome thoughts/feelings related to her current stressors. OPT challenged pt. to look at exception periods to the problem happening and to identify what was, is, and could be different while asking how she imagines her future to be (Living in Tennessee with her own "mini farm" and husband with minimal stress and less family drama). OPT acknowledged her positive changes, efforts, strengths, and skills (Having a clear idea as to where and how she wants to be living following the completion of pending life tasks here in NC) that are presently contributing to pt greatly desiring to start her new life described during this session.

E- Pt. is making a greater effort to see what waits for her once she can pass through current stressors connected to current employer and family as evidenced by showing an improved ability and desire to change her perspective by imagining what her "best hopes/preferred future" would look like as she continues to get through current obstacles. Pt. also appears to be paying closer attention to the signs/clues that are making the problem feel less intense, such as acknowledging much progress made over the last year to include health improvements. Pt. managed to identify other solutions, such as her

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 10/20/2021

willingness to talk about her talents/resources next session to continue to shift her focus away from the things that stress her in order to help her get closer to and see her preferred future more vividly as well. Pt. also thanked this OPT for completing the attorney document directly sent over to him to assist in her ongoing disability claim as well.

.

**Medical History:**

## Objective:

## Assessment:

**Assessment:**

1. Generalized anxiety disorder - F41.1 (Primary)

## Plan:

**1. Generalized anxiety disorder**

Clinical Notes:

CLINICAL SUMMARY/CASE CONCEPTUALIZATION:

.

. Kim is a married adult white female who presents with severe depression and anxiety. In addition she has a PTSD diagnosis connected to her past and unresolved family conflicts. Some of the symptoms reported that endorse her Major Depression diagnosis are: Chronic fatigue, lowered interest in activities, weight related issues connected to medical problems (She lost 15 lbs from the beginning of this year but feels since working on this she should have lost more weight), a decreased appetite due to medication but also reports while having severe anxiety she cannot eat. Her trouble sleeping was described as broken/interruptive sleep, which is part of her daily fatigue as she is not getting consistent sleep throughout the night (Has been prescribed sleep medication as well). She also talked of having sleep apnea that also breaks up her sleep. She reported having a ton of guilt connected to feeling like the financial burden is all on her husband and feels like she is failing her husband. Problems with focusing, concentrating and making decisions as well. She talks of worrying about herself dying or husband dying and having to leave the other behind. She is worried that if she doesn't get her health related issues under control that she will die. Her fear of having to abandon others is very worrisome to her as well. She also continues to have family member conflicts connected to politics and other socially related issues, which is an additional source of her stress. She talked of being singled out some by her family for her personal views.

.

.Kim is taking Paxil and Klonopin to help reduce anxiety symptoms as well. She is having to take her klonopin multiple times per week where she hasn't had to do this before. Helps her to get through her anxiety episodes. While in the throws of anxiety she gets more irritable and has no patience and sometimes focuses on her husband. She also spoke of carrying bodily tension in her shoulders and neck as well. Talked of deep tissue "massage therapy" helping her a lot and she can then come home to relax for the remainder of the day, which is a good coping skill as well. Kim also tries to motivate herself each morning to take care of her pets and to fight her lethargy while engaged in daily tasks. She is eager to get through and better manage her stressors and also wants to continue solution focused based work with this therapist in order to increase and feel more hopeful that she is getting better both during and following this treatment period.

.

TREATMENT RECOMMENDATIONS:

.

1. This provider will gather the remaining pieces of information from Kim to complete the initial evaluation while also implementing the PHQ9 and BAI to assess her current depression/anxiety severity levels (Completed during f/u session held on 8/11/21).

.

1a. This provider will utilize solution focused based interventions in order to assist Kim to reduce and better manage her severe depressive, anxiety, and PTSD symptoms (Initiated this process on 8/27/21

and goal remains ongoing).

.

2. The patient has been educated about telehealth and would be ready to utilize this modality when needed. Authorized emergency contact is: Not identified.

.

3. Encourage whole-person care by tracking the date of the annual physical and actively working with patients to promote buy-in for routine, preventitive care, and encourage an annual physical. Last CPE/AWV was performed on: Unknown, but will gather during next f/u session in 2 weeks.

.

4. This provider will ask pt. to respond to f/u symptoms-related questions taken from the DSM-V to rule in/out an OCD diagnosis (Completed 9/27/21. OCD has been currently ruled out as an additional diagnosis).

**Procedure Codes:** 90837 PSYTX PT &/FAMILY 60 MINUTES

**Follow Up:** 2 Weeks

Eric J. Kelly, LCSW

**Electronically signed by Eric Kelly , LCSW on 10/30/2021 at 12:30 PM EDT**
**Sign off status: Completed**

---

**Provider:** Eric Kelly, LCSW **Date:** 10/20/2021

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 10/28/2021

**Progress Note**

**Patient:** Naugle, Kim
**Account Number:** 275659
**DOB:** **Age:** 58 Y **Sex:** Female
**Phone:**
**Address:**
**Pcp:** Monica L Williams

**Provider:** Eric Kelly, LCSW
**Date:** 10/28/2021

## Subjective:

**Chief Complaints:**

1. -BW f/u.

**HPI:**

Behavioral Wellness:

TELEHEALTH MODALITY: This session occurred by means of a telehealth platform utilizing synchronous audio and video connection. The therapist and patient were both located in the State of NC. The specific location of the patient was verified and documented below if not the home address of record. If not at home, the patient was reminded about the risks of utilizing public areas and/or wifi networks for these types of personal interactions.

.

LOCATION (If other than address of record):

.

ADVISED OF PUBLIC LOCATION AND WIFI RISKS: Yes - The patient has been informed of potential risks of using public Wi-Fi and/or having a public Virtual Health Session up to and including breach of HIPPA. In addition to having read and signed the Virtual Health Consent, the patient verbalizes understanding and agreement to continue the session and will assume all risks associated with stated conditions.

.

PERSONALIZED SAFETY WORD OR PHRASE TO LISTEN FOR IN THIS CASE: Not applicable (We have specifically discussed any concerns pt might have had regarding people who might be non-compliant with respecting privacy boundaries or may have an intention to seek to intrude on treatment. If necessary, a safety word or phrase was created to give the patient a clandestine means for indicating when the privacy of a session has been compromised.)

.

FACE-TO-FACE TIME: 2:00 pm- 3:00 pm (60 mins):

.

P- To assist pt. by coordinating communication with psychiatrist reviewing her disability claim and walking her through completion of release form to allow communication and sharing of her clinical information.

.

I- OPT mostly utilized the session to talk with pt. about forms necessary to complete before having subsequent conversation with psychiatrist reviewing her case for disability claim. OPT also supportively listened to her express her ongoing frustration with her mom and how they continue to not interact in a way that is healthy for their relationship. This OPT expressed that he would like to continue this conversation during f/u session next week to help her to find an early start towards making a path forward with her mom. Lastly, this OPT stated he was going to contact the psychiatrist she provided authorization to share her information with for the remainder of the session time. This OPT followed up and answered some basic questions from psychiatrist connected to pt's diagnoses and history of working with this OPT to date to assist with her disability claim as well.

.

E- Pt. was able to make herself available for this same day apptmt after this OPT had time come available this afternoon. Pt. was able to navigate the correct release forms on the company portal, completed them, and uploaded them to her chart. Pt. also continues to have struggles with her mom due to conflicting values and life views. She agreed to work on finding other ways to rebuild their relationship despite their ongoing disagreements to date. Pt. was appreciative of this OPT's assistance

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 10/28/2021

in contacting psychiatrist who is reviewing her claim.

.

**Medical History:**

## Objective:

## Assessment:

**Assessment:**

1. Generalized anxiety disorder - F41.1 (Primary)

## Plan:

**1. Generalized anxiety disorder**
Clinical Notes:
CLINICAL SUMMARY/CASE CONCEPTUALIZATION:

.

. Kim is a married adult white female who presents with severe depression and anxiety. In addition she has a PTSD diagnosis connected to her past and unresolved family conflicts. Some of the symptoms reported that endorse her Major Depression diagnosis are: Chronic fatigue, lowered interest in activities, weight related issues connected to medical problems (She lost 15 lbs from the beginning of this year but feels since working on this she should have lost more weight), a decreased appetite due to medication but also reports while having severe anxiety she cannot eat. Her trouble sleeping was described as broken/interruptive sleep, which is part of her daily fatigue as she is not getting consistent sleep throughout the night (Has been prescribed sleep medication as well). She also talked of having sleep apnea that also breaks up her sleep. She reported having a ton of guilt connected to feeling like the financial burden is all on her husband and feels like she is failing her husband. Problems with focusing, concentrating and making decisions as well. She talks of worrying about herself dying or husband dying and having to leave the other behind. She is worried that if she doesn't get her health related issues under control that she will die. Her fear of having to abandon others is very worrisome to her as well. She also continues to have family member conflicts connected to politics and other socially related issues, which is an additional source of her stress. She talked of being singled out some by her family for her personal views.

.

.Kim is taking Paxil and Klonopin to help reduce anxiety symptoms as well. She is having to take her klonopin multiple times per week where she hasn't had to do this before. Helps her to get through her anxiety episodes. While in the throws of anxiety she gets more irritable and has no patience and sometimes focuses on her husband. She also spoke of carrying bodily tension in her shoulders and neck as well. Talked of deep tissue "massage therapy" helping her a lot and she can then come home to relax for the remainder of the day, which is a good coping skill as well. Kim also tries to motivate herself each morning to take care of her pets and to fight her lethargy while engaged in daily tasks. She is eager to get through and better manage her stressors and also wants to continue solution focused based work with this therapist in order to increase and feel more hopeful that she is getting better both during and following this treatment period.

.

TREATMENT RECOMMENDATIONS:

.

1. This provider will gather the remaining pieces of information from Kim to complete the initial evaluation while also implementing the PHQ9 and BAI to assess her current depression/anxiety severity levels (Completed during f/u session held on 8/11/21).

.

1a. This provider will utilize solution focused based interventions in order to assist Kim to reduce and better manage her severe depressive, anxiety, and PTSD symptoms (Initiated this process on 8/27/21 and goal remains ongoing).

.

2. The patient has been educated about telehealth and would be ready to utilize this modality when

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 10/28/2021

needed. Authorized emergency contact is: Not identified.

.

3. Encourage whole-person care by tracking the date of the annual physical and actively working with patients to promote buy-in for routine, preventitive care, and encourage an annual physical. Last CPE/AWV was performed on: Unknown, but will gather during next f/u session in 2 weeks.

.

4. This provider will ask pt. to respond to f/u symptoms-related questions taken from the DSM-V to rule in/out an OCD diagnosis (Completed 9/27/21. OCD has been currently ruled out as an additional diagnosis).

**Procedure Codes:** 90837 PSYTX PT &/FAMILY 60 MINUTES

**Follow Up:** 1 Week

Eric J. Kelly, LCSW

**Electronically signed by Eric Kelly , LCSW on 11/22/2021 at 01:28 PM EST**
**Sign off status: Completed**

---

**Provider: Eric Kelly, LCSW** **Date: 10/28/2021**

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 11/17/2021

**Progress Note**

**Patient:** Naugle, Kim
**Account Number:** 275659
**DOB:** **Age:** 58 Y **Sex:** Female
**Phone:**
**Address:**
**Pcp:** Monica L Williams

**Provider:** Eric Kelly, LCSW
**Date:** 11/17/2021

## Subjective:

**Chief Complaints:**

1. -BW f/u.

**HPI:**

Behavioral Wellness:

TELEHEALTH MODALITY: This session occurred by means of a telehealth platform utilizing synchronous audio and video connection. The therapist and patient were both located in the State of NC. The specific location of the patient was verified and documented below if not the home address of record. If not at home, the patient was reminded about the risks of utilizing public areas and/or wifi networks for these types of personal interactions.

.

LOCATION (If other than address of record):

.

ADVISED OF PUBLIC LOCATION AND WIFI RISKS: Yes - The patient has been informed of potential risks of using public Wi-Fi and/or having a public Virtual Health Session up to and including breach of HIPPA. In addition to having read and signed the Virtual Health Consent, the patient verbalizes understanding and agreement to continue the session and will assume all risks associated with stated conditions.

.

PERSONALIZED SAFETY WORD OR PHRASE TO LISTEN FOR IN THIS CASE: Not applicable (We have specifically discussed any concerns pt might have had regarding people who might be non-compliant with respecting privacy boundaries or may have an intention to seek to intrude on treatment. If necessary, a safety word or phrase was created to give the patient a clandestine means for indicating when the privacy of a session has been compromised.)

.

FACE-TO-FACE TIME: 11:02 am- 12:15 pm (73 mins):

.

P- To assist pt. by collaboratively deriving at solutions to get closer to her desire to re-connect with her mom in a healthier way.

.

I- OPT utilized anticipatory guidance with pt. to encourage a reduction in bothersome thoughts/feelings related to the ongoing difficulty and struggle related to having her mom in her life. OPT challenged pt. to look at exception periods to the problem happening and to identify what was and could potentially be different while asking how she might be able to elicit some early changes (Allowing her love for her mom to overpower the disagreements and negative issues she continues to experience within their relationship to date). OPT acknowledged her positive changes, efforts, strengths, and skills (She doesn't quit and gets right back up again), which has gotten her through many life challenges and may also likely be generalized to overcoming the difficult challenge she faces with her mom as well.

.

E- Pt. is making a greater effort to consider new ways to integrate her mom back in her life in a manner that works best for her as evidenced by showing an improved ability and willingness to change her perspective some by detailing how she prefers to be interacting with her mom in the future. She also appears willing to further explore potential solutions to overcoming the major barriers that keep her further away from communicating and spending time with her mom. Pt. also appears to be paying closer attention to the positive things about her mom that keep her from giving up on their relationship, such as mother always being there for her during times of crisis. Pt., with this OPT's guidance, also

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 11/17/2021

managed to identify some new solutions, such as being more attentive to those things that allow her to keep coming back despite feeling repeatedly knocked down by her mom throughout her life. These resiliencies will be the focus of the next f/u session as this OPT will help pt. to further build upon her resources, some already identified, such as her strong will to persevere through difficult things.

.

**Medical History:**

## Objective:

## Assessment:

**Assessment:**

1. Generalized anxiety disorder - F41.1 (Primary)

## Plan:

**1. Generalized anxiety disorder**
Clinical Notes:
CLINICAL SUMMARY/CASE CONCEPTUALIZATION:

.

. Kim is a married adult white female who presents with severe depression and anxiety. In addition she has a PTSD diagnosis connected to her past and unresolved family conflicts. Some of the symptoms reported that endorse her Major Depression diagnosis are: Chronic fatigue, lowered interest in activities, weight related issues connected to medical problems (She lost 15 lbs from the beginning of this year but feels since working on this she should have lost more weight), a decreased appetite due to medication but also reports while having severe anxiety she cannot eat. Her trouble sleeping was described as broken/interruptive sleep, which is part of her daily fatigue as she is not getting consistent sleep throughout the night (Has been prescribed sleep medication as well). She also talked of having sleep apnea that also breaks up her sleep. She reported having a ton of guilt connected to feeling like the financial burden is all on her husband and feels like she is failing her husband. Problems with focusing, concentrating and making decisions as well. She talks of worrying about herself dying or husband dying and having to leave the other behind. She is worried that if she doesn't get her health related issues under control that she will die. Her fear of having to abandon others is very worrisome to her as well. She also continues to have family member conflicts connected to politics and other socially related issues, which is an additional source of her stress. She talked of being singled out some by her family for her personal views.

.

.Kim is taking Paxil and Klonopin to help reduce anxiety symptoms as well. She is having to take her klonopin multiple times per week where she hasn't had to do this before. Helps her to get through her anxiety episodes. While in the throws of anxiety she gets more irritable and has no patience and sometimes focuses on her husband. She also spoke of carrying bodily tension in her shoulders and neck as well. Talked of deep tissue "massage therapy" helping her a lot and she can then come home to relax for the remainder of the day, which is a good coping skill as well. Kim also tries to motivate herself each morning to take care of her pets and to fight her lethargy while engaged in daily tasks. She is eager to get through and better manage her stressors and also wants to continue solution focused based work with this therapist in order to increase and feel more hopeful that she is getting better both during and following this treatment period.

.

TREATMENT RECOMMENDATIONS:

.

1. This provider will gather the remaining pieces of information from Kim to complete the initial evaluation while also implementing the PHQ9 and BAI to assess her current depression/anxiety severity levels (Completed during f/u session held on 8/11/21).

.

1a. This provider will utilize solution focused based interventions in order to assist Kim to reduce and better manage her severe depressive, anxiety, and PTSD symptoms (Initiated this process on 8/27/21

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 11/17/2021

and goal remains ongoing).

2. The patient has been educated about telehealth and would be ready to utilize this modality when needed. Authorized emergency contact is: Not identified.

3. Encourage whole-person care by tracking the date of the annual physical and actively working with patients to promote buy-in for routine, preventitive care, and encourage an annual physical. Last CPE/AWV was performed on: Unknown, but will gather during next f/u session in 2 weeks.

4. This provider will ask pt. to respond to f/u symptoms-related questions taken from the DSM-V to rule in/out an OCD diagnosis (Completed 9/27/21. OCD has been currently ruled out as an additional diagnosis).

5. To assist Kim in finding new avenues to re-connect with her mother by pulling from her resources, such as strong determination and perseverance (Added on 11/17/21).

**Procedure Codes:** 90837 PSYTX PT &/FAMILY 60 MINUTES

**Follow Up:** 2 Weeks

Eric J. Kelly, LCSW

**Electronically signed by Eric Kelly , LCSW on 11/22/2021 at 01:36 PM EST**
**Sign off status: Completed**

---

**Provider:** Eric Kelly, LCSW **Date:** 11/17/2021

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 12/01/2021

**Progress Note**

**Patient:** Naugle, Kim
**Account Number:** 275659
**DOB:** **Age:** 58 Y **Sex:** Female
**Phone:**
**Address:**
**Pcp:** Monica L Williams

**Provider:** Eric Kelly, LCSW
**Date:** 12/01/2021

## Subjective:

**Chief Complaints:**

1. -BW f/u.

**HPI:**

Behavioral Wellness:

TELEHEALTH MODALITY: This session occurred by means of a telehealth platform utilizing synchronous audio and video connection. The therapist and patient were both located in the State of NC. The specific location of the patient was verified and documented below if not the home address of record. If not at home, the patient was reminded about the risks of utilizing public areas and/or wifi networks for these types of personal interactions.

.

LOCATION (If other than address of record):

.

ADVISED OF PUBLIC LOCATION AND WIFI RISKS: Yes - The patient has been informed of potential risks of using public Wi-Fi and/or having a public Virtual Health Session up to and including breach of HIPPA. In addition to having read and signed the Virtual Health Consent, the patient verbalizes understanding and agreement to continue the session and will assume all risks associated with stated conditions.

.

PERSONALIZED SAFETY WORD OR PHRASE TO LISTEN FOR IN THIS CASE: Not applicable (We have specifically discussed any concerns pt might have had regarding people who might be non-compliant with respecting privacy boundaries or may have an intention to seek to intrude on treatment. If necessary, a safety word or phrase was created to give the patient a clandestine means for indicating when the privacy of a session has been compromised.)

.

FACE-TO-FACE TIME: 11:06 am- 12:00 pm (54 mins):

.

P- To assist pt. by collaboratively deriving at solutions to get closer to her desire to be more physically engaged in those things she enjoys most in her life.

.

I- OPT utilized anticipatory guidance with pt. to encourage a reduction in bothersome thoughts/feelings related to family conflicts, employment issues, etc. OPT challenged pt. to look at exception periods to the problems happening and to identify what was, is, and could be different and asked how she might be able to elicit some early changes (Trying to do more things to positively distract from her negative thoughts and things that agitate her). OPT acknowledged her positive changes, efforts, strengths, and skills (Taking her mother out for dinner on her birthday and having a pleasant experience) that are presently contributing to pt's desire to be more engaged in enjoyable activities outside of her home.

.

E- Pt. is making a greater effort to be more physically engaged in those things she enjoys as evidenced by showing an improved ability and early desire to change by detailing what her "best hopes/preferred future" would look like if there were no barriers preventing her from living her life as she would like to be living it. Pt. also appears to be paying closer attention to the signs/clues that are making the problems feel less intense, such as while doing things out of the home to include gardening and/or tending to her animals. Pt. also managed to identify new solutions, such as using the upcoming new year as a turning point to begin focusing her attention towards those things she enjoys and looks

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 12/01/2021

forward to the most in her life.

.

**Medical History:**

## Objective:

## Assessment:

**Assessment:**

1. Generalized anxiety disorder - F41.1 (Primary)

## Plan:

**1. Generalized anxiety disorder**
Clinical Notes:
CLINICAL SUMMARY/CASE CONCEPTUALIZATION:

.
. Kim is a married adult white female who presents with severe depression and anxiety. In addition she has a PTSD diagnosis connected to her past and unresolved family conflicts. Some of the symptoms reported that endorse her Major Depression diagnosis are: Chronic fatigue, lowered interest in activities, weight related issues connected to medical problems (She lost 15 lbs from the beginning of this year but feels since working on this she should have lost more weight), a decreased appetite due to medication but also reports while having severe anxiety she cannot eat. Her trouble sleeping was described as broken/interruptive sleep, which is part of her daily fatigue as she is not getting consistent sleep throughout the night (Has been prescribed sleep medication as well). She also talked of having sleep apnea that also breaks up her sleep. She reported having a ton of guilt connected to feeling like the financial burden is all on her husband and feels like she is failing her husband. Problems with focusing, concentrating and making decisions as well. She talks of worrying about herself dying or husband dying and having to leave the other behind. She is worried that if she doesn't get her health related issues under control that she will die. Her fear of having to abandon others is very worrisome to her as well. She also continues to have family member conflicts connected to politics and other socially related issues, which is an additional source of her stress. She talked of being singled out some by her family for her personal views.

.
.Kim is taking Paxil and Klonopin to help reduce anxiety symptoms as well. She is having to take her klonopin multiple times per week where she hasn't had to do this before. Helps her to get through her anxiety episodes. While in the throws of anxiety she gets more irritable and has no patience and sometimes focuses on her husband. She also spoke of carrying bodily tension in her shoulders and neck as well. Talked of deep tissue "massage therapy" helping her a lot and she can then come home to relax for the remainder of the day, which is a good coping skill as well. Kim also tries to motivate herself each morning to take care of her pets and to fight her lethargy while engaged in daily tasks. She is eager to get through and better manage her stressors and also wants to continue solution focused based work with this therapist in order to increase and feel more hopeful that she is getting better both during and following this treatment period.

.
TREATMENT RECOMMENDATIONS:

.
1. This provider will gather the remaining pieces of information from Kim to complete the initial evaluation while also implementing the PHQ9 and BAI to assess her current depression/anxiety severity levels (Completed during f/u session held on 8/11/21).

.
1a. This provider will utilize solution focused based interventions in order to assist Kim to reduce and better manage her severe depressive, anxiety, and PTSD symptoms (Initiated this process on 8/27/21 and goal remains ongoing).

.
2. The patient has been educated about telehealth and would be ready to utilize this modality when

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 12/01/2021

needed. Authorized emergency contact is: Not identified.

.

3. Encourage whole-person care by tracking the date of the annual physical and actively working with patients to promote buy-in for routine, preventitive care, and encourage an annual physical. Last CPE/AWV was performed on: Unknown, but will gather during next f/u session in 2 weeks.

.

4. This provider will ask pt. to respond to f/u symptoms-related questions taken from the DSM-V to rule in/out an OCD diagnosis (Completed 9/27/21. OCD has been currently ruled out as an additional diagnosis).

.

5. To assist Kim in finding new avenues to re-connect with her mother by pulling from her resources, such as strong determination and perseverance (Added on 11/17/21).

**Procedure Codes:** 90837 PSYTX PT &/FAMILY 60 MINUTES

**Follow Up:** 2 Weeks

Eric J. Kelly, LCSW

**Electronically signed by Eric Kelly , LCSW on 12/31/2021 at 03:22 PM EST**
**Sign off status: Completed**

---

**Provider:** Eric Kelly, LCSW **Date:** 12/01/2021

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 12/29/2021

## Progress Note

**Patient:** Naugle, Kim
**Account Number:** 275659
**DOB:** **Age:** 58 Y **Sex:** Female
**Phone:**
**Address:**
**Pcp:** Monica L Williams

**Provider:** Eric Kelly, LCSW
**Date:** 12/29/2021

### Subjective:

**Chief Complaints:**

1. -BW f/u.

**HPI:**

Behavioral Wellness:

TELEHEALTH MODALITY: This session occurred by means of a telehealth platform utilizing synchronous audio and video connection. The therapist and patient were both located in the State of NC. The specific location of the patient was verified and documented below if not the home address of record. If not at home, the patient was reminded about the risks of utilizing public areas and/or wifi networks for these types of personal interactions.

.

LOCATION (If other than address of record):

.

ADVISED OF PUBLIC LOCATION AND WIFI RISKS: Yes - The patient has been informed of potential risks of using public Wi-Fi and/or having a public Virtual Health Session up to and including breach of HIPPA. In addition to having read and signed the Virtual Health Consent, the patient verbalizes understanding and agreement to continue the session and will assume all risks associated with stated conditions.

.

PERSONALIZED SAFETY WORD OR PHRASE TO LISTEN FOR IN THIS CASE: Not applicable (We have specifically discussed any concerns pt might have had regarding people who might be non-compliant with respecting privacy boundaries or may have an intention to seek to intrude on treatment. If necessary, a safety word or phrase was created to give the patient a clandestine means for indicating when the privacy of a session has been compromised.)

.

FACE-TO-FACE TIME: 11:00 am- 11:59 am (59 mins):

.

P- To assist pt. by collaboratively deriving at solutions to get closer to her desired outcome to minimize family stress while resuming enjoyable leisure activities.

.

I- OPT utilized anticipatory guidance with pt. to encourage a further reduction in bothersome thoughts/feelings related to family members and ongoing conflicts to date. OPT challenged pt. to look at exceptions to the problem happening and to identify what was, is, and could be different while asking how she managed to elicit some early changes (Being able to passively listen to her mom and husband interact and refrain from intervening even when she did not like or agree with her comments). This OPT acknowledged her positive changes, efforts, strengths, and skills (Having a a better interaction with her mom and taking the initiative to reach out to her brother who she continues to have a rift with to date) that are presently contributing to pt's desire to minimize family related stress.

.

E- Pt. is making a greater effort to minimize family stress as evidenced by showing an improved ability and desire to change her responses by detailing what her "preferred future" would look like as she continues to explore and apply workable solutions, such as setting limits with family, to reduce the interactional problem. Pt. also appears to be paying closer attention to the signs/clues that are making this problem feel less intense, such as thinking of other ways to use her time to include outdoor activities and other talents to reduce stress. Pt. managed to identify new solutions, such as weighing the positives and negatives in session, to get closer to her desire to minimize family stress while

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 12/29/2021

resuming enjoyable leisure activities.

.

**Medical History:**

## Objective:

## Assessment:

**Assessment:**

1. Generalized anxiety disorder - F41.1 (Primary)

## Plan:

**1. Generalized anxiety disorder**
Clinical Notes:
CLINICAL SUMMARY/CASE CONCEPTUALIZATION:

.

. Kim is a married adult white female who presents with severe depression and anxiety. In addition she has a PTSD diagnosis connected to her past and unresolved family conflicts. Some of the symptoms reported that endorse her Major Depression diagnosis are: Chronic fatigue, lowered interest in activities, weight related issues connected to medical problems (She lost 15 lbs from the beginning of this year but feels since working on this she should have lost more weight), a decreased appetite due to medication but also reports while having severe anxiety she cannot eat. Her trouble sleeping was described as broken/interruptive sleep, which is part of her daily fatigue as she is not getting consistent sleep throughout the night (Has been prescribed sleep medication as well). She also talked of having sleep apnea that also breaks up her sleep. She reported having a ton of guilt connected to feeling like the financial burden is all on her husband and feels like she is failing her husband. Problems with focusing, concentrating and making decisions as well. She talks of worrying about herself dying or husband dying and having to leave the other behind. She is worried that if she doesn't get her health related issues under control that she will die. Her fear of having to abandon others is very worrisome to her as well. She also continues to have family member conflicts connected to politics and other socially related issues, which is an additional source of her stress. She talked of being singled out some by her family for her personal views.

.

.Kim is taking Paxil and Klonopin to help reduce anxiety symptoms as well. She is having to take her klonopin multiple times per week where she hasn't had to do this before. Helps her to get through her anxiety episodes. While in the throws of anxiety she gets more irritable and has no patience and sometimes focuses on her husband. She also spoke of carrying bodily tension in her shoulders and neck as well. Talked of deep tissue "massage therapy" helping her a lot and she can then come home to relax for the remainder of the day, which is a good coping skill as well. Kim also tries to motivate herself each morning to take care of her pets and to fight her lethargy while engaged in daily tasks. She is eager to get through and better manage her stressors and also wants to continue solution focused based work with this therapist in order to increase and feel more hopeful that she is getting better both during and following this treatment period.

.

TREATMENT RECOMMENDATIONS:

.

1. This provider will gather the remaining pieces of information from Kim to complete the initial evaluation while also implementing the PHQ9 and BAI to assess her current depression/anxiety severity levels (Completed during f/u session held on 8/11/21).

.

1a. This provider will utilize solution focused based interventions in order to assist Kim to reduce and better manage her severe depressive, anxiety, and PTSD symptoms (Initiated this process on 8/27/21 and goal remains ongoing).

.

2. The patient has been educated about telehealth and would be ready to utilize this modality when

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 12/29/2021

needed. Authorized emergency contact is: Not identified.

.

3. Encourage whole-person care by tracking the date of the annual physical and actively working with patients to promote buy-in for routine, preventitive care, and encourage an annual physical. Last CPE/AWV was performed on: Unknown, but will gather during next f/u session in 2 weeks.

.

4. This provider will ask pt. to respond to f/u symptoms-related questions taken from the DSM-V to rule in/out an OCD diagnosis (Completed 9/27/21. OCD has been currently ruled out as an additional diagnosis).

.

5. To assist Kim in finding new avenues to re-connect with her mother by pulling from her resources, such as strong determination and perseverance (Added on 11/17/21).

**Procedure Codes:** 90837 PSYTX PT &/FAMILY 60 MINUTES

**Follow Up:** 2 Weeks

Eric J. Kelly, LCSW

**Electronically signed by Eric Kelly , LCSW on 12/31/2021 at 03:31 PM EST**
**Sign off status: Completed**

---

**Provider:** Eric Kelly, LCSW **Date:** 12/29/2021

**Progress Note**

**Patient:** Naugle, Kim
**Account Number:** 275659
**DOB:** **Age:** 58 Y **Sex:** Female
**Phone:**
**Address:**
**Pcp:** Monica L Williams

**Provider:** Eric Kelly, LCSW
**Date:** 01/12/2022

## Subjective:

**Chief Complaints:**

1. -BW f/u.

**HPI:**

Behavioral Wellness:

TELEHEALTH MODALITY: This session occurred by means of a telehealth platform utilizing synchronous audio and video connection. The therapist and patient were both located in the State of NC. The specific location of the patient was verified and documented below if not the home address of record. If not at home, the patient was reminded about the risks of utilizing public areas and/or wifi networks for these types of personal interactions.

.

LOCATION (If other than address of record):

.

ADVISED OF PUBLIC LOCATION AND WIFI RISKS: Yes - The patient has been informed of potential risks of using public Wi-Fi and/or having a public Virtual Health Session up to and including breach of HIPPA. In addition to having read and signed the Virtual Health Consent, the patient verbalizes understanding and agreement to continue the session and will assume all risks associated with stated conditions.

.

PERSONALIZED SAFETY WORD OR PHRASE TO LISTEN FOR IN THIS CASE: Not applicable (We have specifically discussed any concerns pt might have had regarding people who might be non-compliant with respecting privacy boundaries or may have an intention to seek to intrude on treatment. If necessary, a safety word or phrase was created to give the patient a clandestine means for indicating when the privacy of a session has been compromised.)

.

FACE-TO-FACE TIME: 11:05 am- 12:10 pm (65 mins):

.

P- To assist pt. by collaboratively deriving at solutions to get closer to her desired outcome to have positive bonding moments with her only daughter.

.

I- OPT utilized anticipatory guidance with pt. to further encourage a reduction in bothersome thoughts/feelings related to multiple areas in her life to date. OPT challenged pt. to look at exceptions to the problems happening and to identify what was, is, and could potentially be different while asking how she envisions spending time with her daughter in the near future (Mother/daughter talks involving the showing of emotional support during daughter's time of need). OPT also acknowledged other positive changes, efforts, strengths, and skills (Ability to share her experiences that are very relatable to daughter's current situation) that are presently contributing to pt's desired outcome as well.

.

E- Pt. is making a greater effort to have positive bonding moments with her only daughter as evidenced by expressing her desire to physically be present for her during this major time of need. Pt. also appears to be paying closer attention to the signs/clues that are providing increased hope for her, such as beginning to think of the benefits to downsizing and simplifying her life. Pt. also managed to identify some new solutions, such as momentarily shifting her focus from her own stressors to be there for her daughter, to also get her closer to her desired outcome to have positive bonding moments with her only daughter.

.

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 01/12/2022

**Medical History:**

## Objective:

## Assessment:

**Assessment:**

1. Generalized anxiety disorder - F41.1 (Primary)

## Plan:

**1. Generalized anxiety disorder**
Clinical Notes:
CLINICAL SUMMARY/CASE CONCEPTUALIZATION:
.
. Kim is a married adult white female who presents with severe depression and anxiety. In addition she has a PTSD diagnosis connected to her past and unresolved family conflicts. Some of the symptoms reported that endorse her Major Depression diagnosis are: Chronic fatigue, lowered interest in activities, weight related issues connected to medical problems (She lost 15 lbs from the beginning of this year but feels since working on this she should have lost more weight), a decreased appetite due to medication but also reports while having severe anxiety she cannot eat. Her trouble sleeping was described as broken/interruptive sleep, which is part of her daily fatigue as she is not getting consistent sleep throughout the night (Has been prescribed sleep medication as well). She also talked of having sleep apnea that also breaks up her sleep. She reported having a ton of guilt connected to feeling like the financial burden is all on her husband and feels like she is failing her husband. Problems with focusing, concentrating and making decisions as well. She talks of worrying about herself dying or husband dying and having to leave the other behind. She is worried that if she doesn't get her health related issues under control that she will die. Her fear of having to abandon others is very worrisome to her as well. She also continues to have family member conflicts connected to politics and other socially related issues, which is an additional source of her stress. She talked of being singled out some by her family for her personal views.
.
.Kim is taking Paxil and Klonopin to help reduce anxiety symptoms as well. She is having to take her klonopin multiple times per week where she hasn't had to do this before. Helps her to get through her anxiety episodes. While in the throws of anxiety she gets more irritable and has no patience and sometimes focuses on her husband. She also spoke of carrying bodily tension in her shoulders and neck as well. Talked of deep tissue "massage therapy" helping her a lot and she can then come home to relax for the remainder of the day, which is a good coping skill as well. Kim also tries to motivate herself each morning to take care of her pets and to fight her lethargy while engaged in daily tasks. She is eager to get through and better manage her stressors and also wants to continue solution focused based work with this therapist in order to increase and feel more hopeful that she is getting better both during and following this treatment period.
.
TREATMENT RECOMMENDATIONS:
.
1. This provider will gather the remaining pieces of information from Kim to complete the initial evaluation while also implementing the PHQ9 and BAI to assess her current depression/anxiety severity levels (Completed during f/u session held on 8/11/21).
.
1a. This provider will utilize solution focused based interventions in order to assist Kim to reduce and better manage her severe depressive, anxiety, and PTSD symptoms (Initiated this process on 8/27/21 and goal remains ongoing).
.
2. The patient has been educated about telehealth and would be ready to utilize this modality when needed. Authorized emergency contact is: Not identified.
.

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 01/12/2022

3. Encourage whole-person care by tracking the date of the annual physical and actively working with patients to promote buy-in for routine, preventitive care, and encourage an annual physical. Last CPE/AWV was performed on: Unknown, but will gather during next f/u session in 2 weeks.

.

4. This provider will ask pt. to respond to f/u symptoms-related questions taken from the DSM-V to rule in/out an OCD diagnosis (Completed 9/27/21. OCD has been currently ruled out as an additional diagnosis).

.

5. To assist Kim in finding new avenues to re-connect with her mother by pulling from her resources, such as strong determination and perseverance (Added on 11/17/21).

**Procedure Codes:** 90837 PSYTX PT &/FAMILY 60 MINUTES

**Follow Up:** 2 Weeks

Eric J. Kelly, LCSW

**Electronically signed by Eric Kelly , LCSW on 01/14/2022 at 10:06 AM EST**
**Sign off status: Completed**

**Provider:** Eric Kelly, LCSW **Date:** 01/12/2022

NAUGLE, Kim DOB: (58 yo F) Acc No. 275659 DOS: 02/05/2022

**Progress Note**

**Patient:** Naugle, Kim
**Account Number:** 275659
**DOB:** **Age:** 58 Y **Sex:** Female
**Phone:**
**Address:**
**Pcp:** Monica L Williams

**Provider:** Eric Kelly, LCSW
**Date:** 02/05/2022

## Subjective:

**Chief Complaints:**

1. -BW f/u.

**HPI:**

Behavioral Wellness:

TELEHEALTH MODALITY: This session occurred by means of a telehealth platform utilizing synchronous audio and video connection. The therapist and patient were both located in the State of NC. The specific location of the patient was verified and documented below if not the home address of record. If not at home, the patient was reminded about the risks of utilizing public areas and/or wifi networks for these types of personal interactions.

.
LOCATION (If other than address of record):

.
ADVISED OF PUBLIC LOCATION AND WIFI RISKS: Yes - The patient has been informed of potential risks of using public Wi-Fi and/or having a public Virtual Health Session up to and including breach of HIPPA. In addition to having read and signed the Virtual Health Consent, the patient verbalizes understanding and agreement to continue the session and will assume all risks associated with stated conditions.

.
PERSONALIZED SAFETY WORD OR PHRASE TO LISTEN FOR IN THIS CASE: Not applicable (We have specifically discussed any concerns pt might have had regarding people who might be non-compliant with respecting privacy boundaries or may have an intention to seek to intrude on treatment. If necessary, a safety word or phrase was created to give the patient a clandestine means for indicating when the privacy of a session has been compromised.)

.
FACE-TO-FACE TIME: 12:07 pm- 1:00 pm (53 mins):

.
P- To assist pt. with a new LT disability claim being processed to help her get closer to being granted disability benefits.

.
I- OPT engaged pt. in responding to several "mental status exam" questions while also observing her demeanor, current affect, mood , etc. This OPT gathered and recorded the information that he observed and that she also reported to assist with the processing of her claim this session. This OPT also asked if a release was currently on file to share her clinical documentation with her disability attorney to which she affirmed is in her chart at this time. This OPT explained the process of retrieving copies of her records via the medical records department as she also requested a copy of the MSE completed this session. This OPT agreed to upload the completed 3-page mental status exam form completed this session that will be shared with her attorney per her written permission, along with her clinical notes and MH evaluation, before the submission deadline of 02/9/22.

.
E- Pt. provided the necessary pieces of information to help this OPT successfully complete the MSE form this session (OPT still needing to add her current MH diagnoses and sign the bottom of this form before uploading to her chart). It should be noted that pt. continually experiences multiple life stressors that cause her to present as overwhelmed in session while also displaying some inattentiveness as evidenced by this OPT needing to have her responses clarified and/or elaborated upon throughout this session. Pt. was appreciative and thankful to this OPT assisting with these

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 02/05/2022

concerns that have been going on for approximately over one year to date. Pt. also agreed to go through our medical records department directly to request any additional documents related to her mental health treatment as well.

.

**Medical History:**

## Objective:

## Assessment:

**Assessment:**

1. Generalized anxiety disorder - F41.1 (Primary)

## Plan:

**1. Generalized anxiety disorder**
Clinical Notes:
CLINICAL SUMMARY/CASE CONCEPTUALIZATION:

.

. Kim is a married adult white female who presents with severe depression and anxiety. In addition she has a PTSD diagnosis connected to her past and unresolved family conflicts. Some of the symptoms reported that endorse her Major Depression diagnosis are: Chronic fatigue, lowered interest in activities, weight related issues connected to medical problems (She lost 15 lbs from the beginning of this year but feels since working on this she should have lost more weight), a decreased appetite due to medication but also reports while having severe anxiety she cannot eat. Her trouble sleeping was described as broken/interruptive sleep, which is part of her daily fatigue as she is not getting consistent sleep throughout the night (Has been prescribed sleep medication as well). She also talked of having sleep apnea that also breaks up her sleep. She reported having a ton of guilt connected to feeling like the financial burden is all on her husband and feels like she is failing her husband. Problems with focusing, concentrating and making decisions as well. She talks of worrying about herself dying or husband dying and having to leave the other behind. She is worried that if she doesn't get her health related issues under control that she will die. Her fear of having to abandon others is very worrisome to her as well. She also continues to have family member conflicts connected to politics and other socially related issues, which is an additional source of her stress. She talked of being singled out some by her family for her personal views.

.

.Kim is taking Paxil and Klonopin to help reduce anxiety symptoms as well. She is having to take her klonopin multiple times per week where she hasn't had to do this before. Helps her to get through her anxiety episodes. While in the throws of anxiety she gets more irritable and has no patience and sometimes focuses on her husband. She also spoke of carrying bodily tension in her shoulders and neck as well. Talked of deep tissue "massage therapy" helping her a lot and she can then come home to relax for the remainder of the day, which is a good coping skill as well. Kim also tries to motivate herself each morning to take care of her pets and to fight her lethargy while engaged in daily tasks. She is eager to get through and better manage her stressors and also wants to continue solution focused based work with this therapist in order to increase and feel more hopeful that she is getting better both during and following this treatment period.

.

TREATMENT RECOMMENDATIONS:

.

1. This provider will gather the remaining pieces of information from Kim to complete the initial evaluation while also implementing the PHQ9 and BAI to assess her current depression/anxiety severity levels (Completed during f/u session held on 8/11/21).

.

1a. This provider will utilize solution focused based interventions in order to assist Kim to reduce and better manage her severe depressive, anxiety, and PTSD symptoms (Initiated this process on 8/27/21 and goal remains ongoing).

NAUGLE, Kim **DOB:** (58 yo F) **Acc No.** 275659 **DOS:** 02/05/2022

2. The patient has been educated about telehealth and would be ready to utilize this modality when needed. Authorized emergency contact is: Not identified.

3. Encourage whole-person care by tracking the date of the annual physical and actively working with patients to promote buy-in for routine, preventitive care, and encourage an annual physical. Last CPE/AWV was performed on: Unknown, but will gather during next f/u session in 2 weeks.

4. This provider will ask pt. to respond to f/u symptoms-related questions taken from the DSM-V to rule in/out an OCD diagnosis (Completed 9/27/21. OCD has been currently ruled out as an additional diagnosis).

5. To assist Kim in finding new avenues to re-connect with her mother by pulling from her resources, such as strong determination and perseverance (Added on 11/17/21).

**Procedure Codes:** 90837 PSYTX PT &/FAMILY 60 MINUTES

**Follow Up:** 1 Week

Eric J. Kelly, LCSW

**Electronically signed by Eric Kelly , LCSW on 02/05/2022 at 03:10 PM EST**
**Sign off status: Completed**

---

**Provider:** Eric Kelly, LCSW **Date:** 02/05/2022

# FUNCTIONAL MENTAL STATUS EVALUATION FORM

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Return To: Johnna Shorter



EMPLOYEE/CLAIMANT NAME: Kim Naugle

CLAIM NO: 12227902

EMPLOYER/SPONSOR: Siemens DATE OF BIRTH:

**TO BE COMPLETED BY CLINICIAN:**

Please provide a complete description of your patient's current Mental Status Exam in the following areas. Also, please attach a copy of your clinical progress notes and a copy of the treatment plan that is sent to the medical insurance company.

**Patient's description of Job Title and duties:** Project coordinator/Mgmt. Coord. of many construction projects. (↑ stress connected to mult tasking)

**GENERAL APPEARANCE:** (physical characteristics/grooming, etc.)

Appears disheveled given timing circumstances just before this apptmt.

**EMOTIONAL STATE:** (mood and affect)

Increased stress due to several life areas/factors. Presents as anxious. Appeared as stressed & overwhelmed.

**EXPERIENCES:** (describe hallucinations/delusions)

Denies such experiences. Has panic attacks mostly.

**SENSORIUM:** (level of alertness, patient's orientation)

Avoids negative feelings by going to sleep. She is oriented x 4.

**MEMORY:** (Define status and what testing determines impairment) – Beh. Hlth Eval./clinical note

Immediate: In-tact.

Short Term: Increased stress interferes with memory/gets foggy. (Mostly related to people names)

Long Term: NONE/no concerns reg. LT memory.

DP 532 Rev. 06/01

Lincoln Financial Group®

*Functional Mental Status Evaluation page 2 of 3*

**COGNITION:** (Define status and what testing determines impairment) - (Beh. Health evaluation)
Intrusive thoughts drives PTSD symptoms associated to medical events (Major heart surgery) in the past.

**JUDGMENT AND INSIGHT:** (What evidence supports impairment?) None reported.
No impairment in this area.

**RISK BEHAVIORS:**
Suicidal thoughts, plans, actions None. (Has fear of dying early).
Homicidal thoughts, plans, actions None.

**SUBSTANCE ABUSE:** (abuse, dependency) Denies h/o use/abuse.

In what way do the above symptoms interfere with the person's ability to function in a work setting?
Hypersensitivity to stressful situations; Chronic panic attacks, depression, PTSD. Anxiety tends to not being able to make decisions, multi-task at high pace, irritability, has irregular heart beat, & needs to take breaks.

What functional abilities are still retained?
pt. reports "Hasn't lost any"; All attributed to emotional/psychological issues.

What job tasks can this person perform? Low stress tasks to include computers, desk work only.

What kind of work settings can the patient perform in, at this time, despite the limitations above?
Pt. has not been medically relieved for work at this time.

Lincoln Financial Group®

Functional Mental Status Evaluation
page 3 of 3

How is work readiness being measured? How will you include return to work in the short term goals of the treatment plan?
Based on overall progress of emotional & physical health. Intends to return to work while accommodating medical needs. Exploring change of careers.

Goal: Wellness Success Indicator: Continuity of therapy. Timeline: undetermined.

Diagnosis (DSM-5)
1.) F33.2 - Severe episode of recurrent major depressive disorder (w/o psychotic features)
2.) F43.10 - Post traumatic stress disorder (PTSD)
3.) F41.1 - Generalized Anxiety disorder.

If psychotherapy is indicated, what is the modality, frequency, name of provider and phone number?
Pt. receives Solution focused Brief treatment on bi-weekly basis + more often as needed. Pt. works with Eric Kelly, LCSW and can be reached at (919) 210-2070.

List all current medications:

| Medication | Dosage | Frequency | Begin Date | End Date |
| --- | --- | --- | --- | --- |
| Paxil | 40mg | 1x daily | Jan. 2020 | present/ongoing |
| Klonopin | 0.5mg | PRN | March 2020 | " " |
| | | | | |
| | | | | |

Next scheduled office visit: Friday, 02/11/22 at 12PM.

Comments:
Pt's mental status and emotional stress continues to exacerbate her symptoms, which continues to yield minimal treatment gains/progress to date. Eric Kelly MSW, LCSW

| Examiner's Name (Please Print) | Title/Specialty | Tax ID# | Telephone No. | Fax No. |
| --- | --- | --- | --- | --- |
| Eric Kelly | LCSW - Behavioral Wellness Specialist | | (919) 210-2070 | |

Signature required: Eric Kelly, MSW, LCSW Date: 2/8/22

*0101BEV151CFGJL* CCM.M72.BEV15.R220210

Social Security Administration
# Benefit Verification Letter

Date: February 10, 2022
BNC#: 22GF934K95891

RO NAUGLE

You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter.

**Information About Application for Benefits**

Our records show that an application for benefits has been filed. However, we have not yet finished working on the claim and at this time we cannot tell you whether or not benefits will be payable.

**Suspect Social Security Fraud?**

Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

**If You Have Questions**

We invite you to visit our web site at www.socialsecurity.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local office at 1-877-803-6311. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
4701 Old Wake Forest Rd
Raleigh NC 27609

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

*Social Security Administration*

**Lincoln/Naugle 0391**

Crumley Roberts
Attorneys At Law
WE STAND UP FOR YOU®

**MAILING ADDRESS:**
2400 Freeman Mill Road
Suite 200
Greensboro, NC 27406
336-333-9899
336-333-9894 - fax

**1-800-288-1-LAW**
(1-800-288-1529)

**www.CrumleyRoberts.com**

February 10, 2022

**SENT VIA EMAIL:** Johnna.Shorter@lfg.com

Johnna Shorter
Senior LTD Technical Claim Specialist II
The Lincoln National Life Insurance Company
Disability and Life Claims
P.O. Box 2578
Omaha, NE 68172-9668

RE: KIM NAUGLE
CLAIM NO.: 12227902
SIEMENS CORPORATION

Dear Johnna:

I have enclosed an Authorization to Release Funds signed by Ms. Naugle. If it is determined that back pay benefits are owed on initial application, those funds should be paid to "Crumley Roberts, LLP as attorneys for Kim Naugle". Any future benefits should be paid directly to Ms. Naugle.

If you have any questions regarding this matter or need any other information in order to calculate the benefits owed to Ms. Naugle, please let me know.

Sincerely,
Crumley Roberts, LLP

Peter H. Burke
Attorney

Enclosure

Crumley Roberts®
Attorneys At Law
WE STAND UP FOR YOU®

**MAILING ADDRESS:**
2400 Freeman Mill Road
Suite 200
Greensboro, NC 27406
336-333-9899
336-333-9894 - fax

**1-800-288-1-LAW**
(1-800-288-1529)

**www.CrumleyRoberts.com**

February 10, 2022

**SENT VIA EMAIL:** Johnna.Shorter@lfg.com

Johnna Shorter
Senior LTD Technical Claim Specialist II
The Lincoln National Life Insurance Company
Disability and Life Claims
P.O. Box 2578
Omaha, NE 68172-9668

RE: KIM NAUGLE
CLAIM NO.: 12227902
SIEMENS CORPORATION

Dear Johnna:

I have enclosed an Authorization to Release Funds signed by Ms. Naugle. If it is determined that back pay benefits are owed on initial application, those funds should be paid to "Crumley Roberts, LLP as attorneys for Kim Naugle". Any future benefits should be paid directly to Ms. Naugle.

If you have any questions regarding this matter or need any other information in order to calculate the benefits owed to Ms. Naugle, please let me know.

Sincerely,
Crumley Roberts, LLP

Peter H. Burke
Attorney

Enclosure

<u>**AUTHORIZATION TO RELEASE FUNDS**</u>

**TO WHOM IT MAY CONCERN:**

**IN RE: LONG TERM DISABILITY BENEFITS**

I, Kim Naugle, authorize and specifically direct that all funds, benefits, and recovery of any kind to be paid to Crumley Roberts, LLP, at 2400 Freeman Mill Road, Suite 200, Greensboro, NC, 20706. These funds will be paid care of Crumley Roberts, LLP, to be disbursed to me after my attorneys confirm these funds have cleared. I authorize and direct Lincoln Life Assurance Company of Boston to pay these funds to Crumley Roberts, LLP, as attorneys for Kim Naugle.

Signed on 7/7/2021

Kim R Naugle

Kim Naugle

I, ________________, as an employee representative of Lincoln Life Assurance Company of Boston and on behalf of Lincoln Life Assurance Company of Boston, do acknowledge and agree to Kim Naugle's authorization and direction as stated here in.

Signed on ________________________.

____________________________

REPRESENTATIVE of Lincoln Life Assurance Company of Boston

**Important: Please note only data that has clinical mapping will be shared/transmitted.**

The following sections represent the most current data on record and are not specific to the date of the Visit: Demographics, Social History, Problems, Allergies, Immunizations, Health Concerns, and Medical Equipment (UDI).

# Patient Details

| Patient name | Contact info | Patient IDs | Sex |
|---|---|---|---|
| Kim Naugle | US | 275659<br>275659 | Female |
| | tel: | | |

| LANGUAGE | RACE | ETHNICITY |
|---|---|---|
| English | White | Hispanic or Latino |

| | |
|---|---|
| **Care Giver** | Eric Kelly |
| **Contact Info** | 815 Oberlin Rd<br>Raleigh, NC 27605-1130<br>Tel: 919-237-1337 |

| Information recipient: | |
|---|---|

# PROBLEMS

| Type | Condition | ICD9-CM Code | ICD10-CM Code | Onset Dates | Condition Status | W/U Status | Risk | SNOMED Code |
|---|---|---|---|---|---|---|---|---|
| Problem | Post-traumatic stress disorder, unspecified | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Generalized anxiety disorder | | F41.1 | | Active | confirmed | | 21897009 |
| Problem | Adjustment reaction with anxiety and depression | | F43.23 | | Active | confirmed | | 55668003 |
| Problem | Post traumatic stress disorder (PTSD) | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Severe episode of recurrent major depressive disorder, without psychotic features | | F33.2 | | Active | confirmed | | 36474008 |

# ALLERGIES

| Allergen (clinical drug ingredient) | Drug/Non Drug Allergy documented on EMR | Reaction | Allergy Type | Onset Date | Status |
|---|---|---|---|---|---|
| | CEPHLASPORINS | Unknown | Non Drug | | Active |

| | | | |
|---|---|---|---|
| | | Allergy | |

## ENCOUNTERS from to 2022-02-10

| Encounter | Location | Date | Provider | Diagnosis |
|---|---|---|---|---|
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 12 Jan, 2022 | Eric Kelly | Generalized anxiety disorder F41.1 |

## IMMUNIZATIONS

No Information

## SOCIAL HISTORY

Sex Assigned At Birth:

| Social History Observation | Description |
|---|---|
| Sex Assigned At Birth | Unknown |

## REASON FOR REFERRAL

No Information

## VITAL SIGNS

No information

## MEDICATIONS

No Information

## PROCEDURES

No Information

## RESULTS

No Results

## REASON FOR VISIT

No Information

## Goals Section

No Information

## Health Concerns

No Information

## MEDICAL EQUIPMENT

No Information

## MENTAL STATUS

No Information

## FUNCTIONAL STATUS

No Information

## ASSESSMENTS

| Encounter Date | Diagnosis | Treatment Notes |
|---|---|---|
| 12 Jan, 2022 | Generalized anxiety disorder (ICD-10 - F41.1) | |

## PLAN OF TREATMENT

Treatment Notes

| Assessment | Notes |
|---|---|
| Generalized anxiety disorder | |

Next Appt

| Details |
|---|
| 2 Weeks Reason: |
| Provider Name:Eric J Kelly, 2022-02-11 12:00:00 AM, 815 Oberlin Rd, Raleigh, NC, 27605-1130, 919-237-1337 |

## Insurance Providers

| Payer Name | Payer Address | Payer Phone | Insured Name | Patient Relationship to Insured | Coverage Start Date | Coverage End Date | Subscriber Number | Group Number |
|---|---|---|---|---|---|---|---|---|
| United Healthcare | PO BOX 5220 KINGSTON NY 12402-5032 | 844-368-7151 | Naugle, Kim | self | 01/01/2022 | | 122653234 | NCONEX |

## Care team

| | |
|---|---|
| **Guarantor** | Kim Naugle |
| **Contact** | US |

| | |
|---|---|
| **info** | Tel: |
| **Emergency contact** | ronald naugle |
| **Contact info** | US<br>Tel: |

***©Powered by eClinicalWorks***

**Important: Please note only data that has clinical mapping will be shared/transmitted.**

The following sections represent the most current data on record and are not specific to the date of the Visit: Demographics, Social History, Problems, Allergies, Immunizations, Health Concerns, and Medical Equipment (UDI).

# Patient Details

| Patient name | Contact info | Patient IDs | Sex |
|---|---|---|---|
| Kim Naugle | | US **275659** **275659** | Female |

tel:

| LANGUAGE | RACE | ETHNICITY |
|---|---|---|
| English | White | Hispanic or Latino |

| | |
|---|---|
| **Care Giver** | Eric Kelly |
| **Contact Info** | 815 Oberlin Rd<br>Raleigh, NC 27605-1130<br>Tel: 919-237-1337 |

Information recipient:

# PROBLEMS

| Type | Condition | ICD9-CM Code | ICD10-CM Code | Onset Dates | Condition Status | W/U Status | Risk | SNOMED Code |
|---|---|---|---|---|---|---|---|---|
| Problem | Post-traumatic stress disorder, unspecified | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Generalized anxiety disorder | | F41.1 | | Active | confirmed | | 21897009 |
| Problem | Adjustment reaction with anxiety and depression | | F43.23 | | Active | confirmed | | 55668003 |
| Problem | Post traumatic stress disorder (PTSD) | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Severe episode of recurrent major depressive disorder, without psychotic features | | F33.2 | | Active | confirmed | | 36474008 |

# ALLERGIES

| Allergen (clinical drug ingredient) | Drug/Non Drug Allergy documented on EMR | Reaction | Allergy Type | Onset Date | Status |
|---|---|---|---|---|---|
| | CEPHLASPORINS | Unknown | Non Drug Allergy | | Active |

# ENCOUNTERS from to 2022-02-10

| Encounter | Location | Date | Provider | Diagnosis |
|---|---|---|---|---|
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 05 Feb, 2022 | Eric Kelly | Generalized anxiety disorder F41.1 |

# IMMUNIZATIONS

No Information

# SOCIAL HISTORY

Sex Assigned At Birth:

| Social History Observation | Description |
|---|---|
| Sex Assigned At Birth | Unknown |

# REASON FOR REFERRAL

No Information

# VITAL SIGNS

No information

# MEDICATIONS

No Information

# PROCEDURES

No Information

# RESULTS

No Results

# REASON FOR VISIT

No Information

# Goals Section

No Information

# Health Concerns

No Information

# MEDICAL EQUIPMENT

No Information

# MENTAL STATUS

No Information

# FUNCTIONAL STATUS

No Information

# ASSESSMENTS

| Encounter Date | Diagnosis | Treatment Notes |
|---|---|---|
| 05 Feb, 2022 | Generalized anxiety disorder (ICD-10 - F41.1) | |

# PLAN OF TREATMENT

Treatment Notes

| Assessment | Notes |
|---|---|
| Generalized anxiety disorder | |

Next Appt

Details

1 Week Reason:

Provider Name:Eric J Kelly, 2022-02-11 12:00:00 AM, 815 Oberlin Rd, Raleigh, NC, 27605-1130, 919-237-1337

# Insurance Providers

| Payer Name | Payer Address | Payer Phone | Insured Name | Patient Relationship to Insured | Coverage Start Date | Coverage End Date | Subscriber Number | Group Number |
|---|---|---|---|---|---|---|---|---|
| United Healthcare | PO BOX 5220 KINGSTON NY 12402-5032 | 844-368-7151 | Naugle,Kim | self | 01/01/2022 | | 122653234 | NCONEX |

# Care team

| | | |
|---|---|---|
| **Guarantor** | Kim Naugle | |
| **Contact info** | Tel: | US |
| **Emergency contact** | ronald naugle | |
| **Contact info** | | US |

Tel:

©Powered by eClinicalWorks

WakeMed, 3000 New Bern Avenue, Raleigh, NC 27610, 919-350-8000

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# Progress Notes

Ronald Joseph Prucha at 2/7/2022 8:45 AM

**Subjective:**

**Patient ID:** Kim Romero Naugle is a 58 y.o. female.
**Date of Service:** 02/07/22

Is this a CM Visit?: No

**Chief Complaint:**
**Chief Complaint**
Patient presents with
- Cough
  *Go over symptoms of covid (CONSENT)*
- Sinus congestion/pain

**History of Present Illness:**

I conducted this encounter via secure, live face-to-face video conference using a Video Visit with the patient. Kim was located at home in North Carolina, with the patient and the provider participating in the encounter. Prior to the interview, the risks and benefits of telemedicine were discussed with the patient and verbal consent was obtained.

**Patient Active Problem List**
Diagnosis
- Essential hypertension
- Anxiety
- Hypothyroidism
- Cervical cancer screening
- OSA on CPAP
- Gastroenteritis
- Other chest pain
- Coronary artery disease of native artery of native heart with stable angina pectoris (CMS/HCC)
- H/O heart bypass surgery
- Morbid obesity with BMI of 45.0-49.9, adult (CMS/HCC)
- Annual physical exam
- URI, acute
- Need for influenza vaccination
- Need for hepatitis C screening test
- BMI 45.0-49.9, adult (CMS/HCC)
- Bacterial sinusitis
- Work stress
- Severe episode of recurrent major depressive disorder, without psychotic features (CMS/HCC)
- Depression

- Acute right ankle pain
- Prediabetes
- Post-nasal drip
- Choking due to phlegm in larynx
- Vasomotor rhinitis
- Multiple thyroid nodules
- Post-traumatic stress
- COVID-19

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Anxiety | |
| • Arachnoid cyst | |
| • Arthritis | |
| • CAD in native artery | |
| • Cervical cancer screening<br>*normal per pt* | 2014 |
| • Congenital heart disease<br>*Congenital heart mumur* | |
| • CTS (carpal tunnel syndrome) | |
| • Depression | |
| • Disease of thyroid gland | |
| • Fibroid | |
| • Gestational diabetes | |
| • Heart murmur | |
| • Herpes | |
| • High cholesterol<br>*Borderline* | |
| • History of recurrent miscarriages | |
| • Hx of colonoscopy<br>*3 polyps* | 2015 |
| • Hx of mammogram<br>*normal per pt* | 2014 |
| • Hx of pregnancy | |
| • Hypertension | |
| • Meniscus tear | |
| • Post-traumatic stress | |
| • Post-traumatic stress | |
| • Sleep apnea | 2009 |
| • STD (sexually transmitted disease)<br>*Genital Herpes* | |
| • Torn ACL | |
| • Urinary tract infection<br>*In the past* | |
| • Urogenital trichomoniasis | |
| • Varicella | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • ABDOMINAL SURGERY | | 1998 |
| • CARDIAC CATHETERIZATION | | |
| • CARPAL TUNNEL RELEASE | | 2015 |
| • CESAREAN SECTION | | |
| • COLONOSCOPY | | 2018 |
| • COLPOSCOPY | | |
| • CONDYLOMA EXCISION/FULGURATION | | |
| • CORONARIES LHC WITH OR WITHOUT LV<br>*Procedure: Coronaries LHC with or without LV; Surgeon: Hemant Solomon, MD; Location: WCH INVASIVE CARDIOLOGY; Service: Cardiovascular; Laterality: Left;* | Left | 8/3/2018 |

| | |
|---|---|
| • CORONARY ARTERY BYPASS GRAFT<br>*CAB x 2* | 08/07/2018 |
| • double open heart by pass | |
| • FLEXIBLE SIGMOIDOSCOPY | |
| • laminectomy | 1989 |
| • LUMBAR DISCECTOMY | 1989 |
| • TONSILECTOMY, ADENOIDECTOMY, BILATERAL MYRINGOTOMY AND TUBES | 1968 |
| • TONSILLECTOMY | 1968 |
| • TUBAL LIGATION | 2011 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Colon polyps | Mother | |
| • Cancer<br>*Cervical & Skin* | Mother | |
| • Diabetes | Mother | |
| • Heart attack | Father | |
| • Hypertension | Father | |
| • Heart disease | Father | |
| • Diabetes | Father | |
| • Vision loss<br>*Macular Degeneration* | Father | |
| • Hypertension | Brother | |
| • Cancer<br>*Breast & Bone* | Maternal Grandmother | |
| • Vision loss | Maternal Grandmother | |
| • Anemia | Maternal Grandmother | |
| • Breast cancer | Maternal Grandmother | 40 |
| • Cancer<br>*Throat* | Maternal Grandfather | |
| • Hypertension | Maternal Grandfather | |
| • Heart disease | Maternal Grandfather | |
| • Diabetes | Maternal Grandfather | |
| • Cancer | Paternal Grandmother | |
| • Vision loss<br>*Macular Degeneration* | Paternal Grandmother | |
| • Cancer<br>*Stomach/Stomach cancer* | Paternal Grandfather | |
| • Alcohol abuse<br>*Both Brothers* | Brother | |
| • Diabetes<br>*Both Brothers* | Brother | |
| • Heart disease<br>*Older Brother* | Brother | |
| • Hypertension<br>*Both Brothers* | Brother | |
| • Diabetes | Brother | |
| • Hypertension | Brother | |
| • Diabetes | Brother | |
| • Hypertension<br>*Younger Brother* | Brother | |

**Social History**

Occupational History

• Not on file

Tobacco Use

- Smoking status: Former Smoker
  - Packs/day: 0.50
  - Years: 3.00
  - Pack years: 1.50
  - Types: Cigarettes
  - Quit date: 1/1/1985
  - Years since quitting: 37.1
- Smokeless tobacco: Never Used
- Tobacco comment: 15 thru 19

Vaping Use

- Vaping Use: Never used

Substance and Sexual Activity

- Alcohol use: Yes
  - Alcohol/week: 1.0 standard drink
  - Types: 1 Glasses of wine per week
  - *Comment: once a month (Rarely)*
- Drug use: No
- Sexual activity: Yes
  - Partners: Male
  - Birth control/protection: Surgical
  - *Comment: Tubes Tied*

**Outpatient Medications Prior to Visit**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin 81 MG tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • atorvastatin (LIPITOR) 40 MG tablet | Take 1 tablet (40 mg total) by mouth nightly. | 90 tablet | 1 |
| • benazepril-hydrochlorthiazide (LOTENSIN HCT) 20-12.5 mg per tablet | TAKE 2 TABLETS BY MOUTH EVERY DAY | 180 tablet | 1 |
| • calcium carbonate (CALCIUM 600 ORAL) | Take 600 Units by mouth. | | |
| • cetirizine (ZYRTEC) 10 MG tablet | Take 10 mg by mouth daily. | | |
| • clonazepam (KLONOPIN) 0.5 MG tablet | Take 1 tablet (0.5 mg total) by mouth daily as needed for anxiety. | 30 tablet | 0 |
| • hydrALAZINE (APRESOLINE) 50 MG tablet | Take 1 tablet (50 mg total) by mouth 3 (three) times a day. Take at 8am, 2pm and 10pm daily | 360 tablet | 3 |
| • metformin (GLUCOPHAGE-XR) 500 MG 24 hr tablet | Take 2 tablets (1,000 mg total) by mouth daily with breakfast. | 60 tablet | 2 |
| • metoprolol succinate (TOPROL-XL) 100 MG 24 hr tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • multivitamin capsule | Take 1 capsule by mouth 2 (two) times a day. Bausch and lomb areds2 | | |
| • PARoxetine (PAXIL) 40 MG tablet | Take 1 tablet (40 mg total) by mouth daily. | 30 tablet | 2 |
| • SYNTHROID 137 mcg tablet | TAKE 1 TABLET BY | | 1 |

MOUTH 6 DAYS A WEEK AND 2 TABLETS BY MOUTH ONCE A WEEK

No facility-administered medications prior to visit.

Ms. Naugle presents to the office today VV after having contracted covid. She got sick about 3 weeks prior and is doing better from that standpoint as of the past several days now. She and her husband both got this. After the second week, she was unable to get into see me and had to go to America's Front Line Doctors to be seen and were given zpak and prednisone and hydroxychlorquine and ivermectin she tried to get but due to the cost of the Rx, she elected for the other hydroxy. She had to prove that they did not have covid in order to get the hydroxy filled and she is happy to be feeling better. She is gaining her energy back and half the day she is good and there other half of the day she can't get off of the couch. She is also desiring to discuss her therapy and her dealings with her insurance and the battle she is struggling with as regards her disability. Her therapist did a "mental" eval on her and her lawyer and her have discussed her. She is asking me to write a statement on the form rather than complete the form in the capacity that it is asking to be completed. In other words, simply put a narrative on the form rather than complete the individual boxes that it is asking for. She is asking me to write on the form due to it being straight forward that she is in therapy and has made progress and she feels like she wants to go back to work really soon and wants to get better psychology and she just wants to finish this go around. She is working with her therapist to get her anxiety under control. She is still in psychotherapy and is making progress towards working and that she is on medications and they are working and that all of her issues are mental and emotional and no physical as per pt. She has a pie in front of her that is affecting her and the biggest piece of this pie was her job, stress, depression, anxiety and the depression piece is mostly improved and she continues to work oin the PTSD part of her therapy and her panic attacks and her heart and her heart surgery. She is making progress and is seeing improvements and she is doing better. She feels her insurance company is looking for loopholes to get out of paying and she has been fighting this for over one year and has not received the 60% of her salary and have paid only the first 3 months. All this has done is to drag out her problem and has put her through a lot fighting with them. She wsnet me the form. The functional mental part has been done. She just wants the narrative on the functional assessment from me.

She is back to discussing covid and blood clots and she thought it was only from the vaccine. She is w/ no shortness of breath, dyspnea on exertion, chest pain, chest pressure, palpitations or lower extremity edema. We discussed the importance of mov't and exercise in the prevention of this.

The following portions of the patient's history were reviewed and updated as appropriate: medications, allergies, past medical history, family history, social history, surgical history, current problems.

**Review of Systems:** All of the patient's ROS were normal except as documented in the HPI.

**Objective:**

BP 135/80 (BP Location: Left upper arm, BP Position: Sitting, Cuff Size: Large Adult (Burgundy)) | Pulse 52 | Ht 1.795 m (5' 10.67") | Wt (!) 135.2 kg (298 lb) | LMP 05/14/2020 (Approximate) Comment: pmp had period 3 wks ago | BMI 41.95 kg/m²

**Physical Exam:**

Gen: alert and oriented, NAD, well appearing
Resp: normal RR, no tachypnea, no retractions

Skin: no visualized rash on observed skin
**Psych:** normal mood, A and O x3

**Assessment and Plan:**

1. **COVID-19**
2. Severe episode of recurrent major depressive disorder, without psychotic features (CMS/HCC)
3. Post-traumatic stress

**Severe episode of recurrent major depressive disorder, without psychotic features (CMS/HCC)**
Chronic stable problem
impr0ving gradually with therapy and medications
She will cont this modalites and I will complete paperwork pursuant ot her claim
See hpi fo r details of this

**COVID-19**
New problem, stable and self-limiting
Continue conservative measures for now:  Fluids, rest and over-the-counter measures discussed today.
No antimicrobial therapy is currently indicated based upon my clinical assessment today.
I have asked her to be on the alert for new or increasing symptoms such as new rash, fevers, chills, shortness of breath, wheezing, worsening cough or increased respiratory effort, chest pains or coughing blood and to call directly if such should occur.
She  verbalized satisfaction and understanding of this treatment plan and she  was afforded the opportunity to ask questions regarding this plan today.

**Post-traumatic stress**
Chronic stable problem
This problem is presently well controlled.
She will continue her psychotropic meds as prescribed, as she is tolerating this well without side effects.
The side effects of this medication were explained in detail to her and she verbalized understanding of these and will contact me to let me know if any occur.
She verbalized satisfaction and understanding of this treatment plan and she was afforded the opportunity to ask questions regarding this plan today.

I spent 22 minutes providing patient care, education, and counseling.

**Follow-Up:**

Return in about 3 months (around 5/7/2022).

**Patient Goals:**

**Goals**

- Avoid prcessed foods
  Avoid processed foods or “fast food.”

---

- Blood Pressure < 130/80
  Your blood pressure should generally be less than 130/80. Please let your

provider know if your blood pressure numbers are over this goal.

- Increase Daily Activity
  Attempt to increase exertion around daily activities (take the stairs instead of the elevator, walk instead of driving a few blocks, etc.).

- Weight < 68 kg (150 lb)
  3 month goal is to loose 26 lbs based on body fat percent

**Patient Instructions :**

There are no Patient Instructions on file for this visit.

MyChart® licensed from Epic Systems Corporation © 1999 - 2022



**Lincoln/Naugle 0410**

WakeMed, 3000 New Bern Avenue, Raleigh, NC 27610, 919-350-8000

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# Letter Details

WakeMed
Primary Care

110 Kildaire Park Drive
Suite 305
Cary NC 27518-6130
Phone: 919-235-6575
Fax: 919-235-6598

re:
Kim Romero Naugle

02/07/22

To whom it may concern:

I am writing on behalf of my longtime patient Ms. Kim Naugle, who has been through inordinate levels of stress, depression and anxiety exacerbated by many factors to include her previous job, which was stressful and anxiety-provoking and resulted in her having to leave her position to seek therapy, counseling and medication to manage her emotional lability. She continues to struggle daily with depression, anxiety, PTSD and stress and has been under the care of multiple physicians and therapists. She recently underwent an extensive mental health evaluation by her therapist and she presently feels she is making progress on all fronts of her mental health battle through the use of therapy and medications. Her desire is to return to work eventually once she has fully improved from a psychological standpoint and has gotten her anxiety under better control. She continues with psychotherapy presently and is making progress with this and feels that her present issues are more mental rather than physical and that her medications and current therapy program are affording her some improvement in her mental health state and overall, she feels she is doing considerably better.

The majority of her mental and emotional health issues are gradually beginning to resolve for her and she continues to make headway with her PTSD surrounding her panic attacks and her recent heart surgery and cardiac concerns. Her long-term goal is to put all of this behind her and return to being gainfully employed and is hoping to see an end to her emotional struggles of late and get on with her life in her newly improved mental health state. She is quickly approaching a state of work readiness and her short term goal presently is to return to work once she completes her current mental health treatment plan.

Respectfully,

Ronald J. Prucha, Jr., M.D.
PRIMARY CARE-KILDAIRE FARM RD
WAKEMED PRIMARY CARE-KILDAIRE
110 KILDAIRE PARK DRIVE
SUITE 305
CARY NC 27518-6130
Dept: 919-235-6575
Dept Fax: 919-235-6598
Loc: 919-235-6575

*This letter was initially viewed by Kim Romero Naugle at 2/10/2022 2:13 PM.*

MyChart® licensed from Epic Systems Corporation © 1999 - 2022

**From:**Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:**Thu, 10 Feb 2022 20:52:24 +0000
**To:**Shorter, Johnna
**Cc:**Peter H. Burke
**Subject:**RE: Kim Naugle - 12227902

Thanks for letting us know.

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office: 336-333-9899 | mlreynolds@crumleyroberts.com*

---

**From:** Shorter, Johnna [mailto:Johnna.Shorter@lfg.com]
**Sent:** Thursday, February 10, 2022 2:40 PM
**To:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

**[EXTERNAL]**

Good afternoon,

Information Received. Last day of Notice and is today so I am sending this for a medical review. As as long as we get the form/letter before the review is complete, I will add it! This can take up to 2 weeks.

Thank you,
Johnna

---

**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Thursday, February 10, 2022 2:44 PM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Cc:** Peter H. Burke <PHBurke@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

Johnna,

Attached are the following documents from Ms. Naugle:

Avance Care/Eric Kelly Notes from 1/12/2021 & 2/5/2021
WakeMed/Dr. Prucha notes from 2/7/2022
Letter from Dr. Prucha (in lieu of Lincoln's form)
Current Social Security Benefit Letter - It confirms that Ms. Naugle has not received SSDB as of this date.

Eric Kelly completed Lincoln's Mental Health Assessment, but informed Ms. Naugle that it must be sent through their authorized records department to our office. The facility would not provide Ms. Naugle with a copy of the completed form. We will forward the completed form as soon as it is received.

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office: 336-333-9899 | mlreynolds@crumleyroberts.com*

---

**From:** Shorter, Johnna [mailto:Johnna.Shorter@lfg.com]
**Sent:** Tuesday, February 1, 2022 1:08 PM
**To:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

**[EXTERNAL]**

Thank you. Please let me know when the file is complete and ready for review. This file will be sent for a peer review on day 45 (2/10/22) of notice and proof but we have a complete file, I can send early.

Thank you,

**Johnna Shorter**
Senior LTD Technical Claim Specialist II
PO Box 2578
Omaha NE 68182-9688
**Lincoln Financial Group**
LincolnFinancial.com

800-210-0268 x 16505 Office

603-334-7174 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**




**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Tuesday, February 1, 2022 12:39 PM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Cc:** Peter H. Burke <PHBurke@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

Johnna,

I am responding to Lincoln's letter dated December 28, 2021 wherein they requested medical records and completed forms from Ms. Naugle. Attached are the completed forms from Ms. Naugle.

Also attached are Ms. Naugle's updated medical records from the following:

Avance Therapy
Dr. Prucha
Wake Med Cardiology

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office: 336-333-9899 | mlreynolds@crumleyroberts.com*

**From:** Shorter, Johnna [mailto:Johnna.Shorter@lfg.com]
**Sent:** Thursday, January 27, 2022 3:02 PM
**To:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

**[EXTERNAL]**

Thank you, that works.  800-210-0268 x 16505

**Johnna Shorter**
Senior LTD Technical Claim
Specialist II
PO Box 2578
Omaha NE 68182-9688
**Lincoln Financial Group**
LincolnFinancial.com

800-210-0268 x 16505 Office

603-334-7174 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**




**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Thursday, January 27, 2022 11:44 AM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Subject:** RE: Kim Naugle - 12227902

Let's schedule for 1:30pm EST on 2/1/2022. I will have Mr. Burke initiate the call to you and have Ms. Naugle on the line. What is the best contact number for you?

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office:  336-333-9899 | mlreynolds@crumleyroberts.com*

**From:** Shorter, Johnna [mailto:Johnna.Shorter@lfg.com]
**Sent:** Thursday, January 27, 2022 10:10 AM
**To:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

**[EXTERNAL]**

Thank you for the update.  I am available anytime after 1pm est on 2/1/22

Johnna

---

**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Thursday, January 27, 2022 10:34 AM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Cc:** Peter H. Burke <PHBurke@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Johnna,

Ms. Naugle just contacted us back and she has been sick with COVID and should be getting us the completed forms within the next few days. She is available to do the interview on 2/1/2022. Please let me know your availability between 11:00am to 2:00pm EST.

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office:  336-333-9899 | mlreynolds@crumleyroberts.com*

---

**From:** Shorter, Johnna [mailto:Johnna.Shorter@lfg.com]
**Sent:** Tuesday, January 25, 2022 10:04 AM
**To:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

**[EXTERNAL]**

Monica –

My meeting just canceled for Thursday so I could make anything after 11 am est work now for the initial LTD interview w Ms Naugle (just as another option).

Johnna

**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Monday, January 24, 2022 5:13 PM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Subject:** RE: Kim Naugle - 12227902

Letters should be addressed to Peter Burke but sent to my email address – mlreynolds@crumleyroberts.com. I will then forward to Mr. Burke. This is the way her prefers it.

Also, do you have any availability for the LTD interview on February 1, 2022 between 11:00am to 2:00pm CST? If not Feb 1st, let me know your availability the remainder of that week. Thanks.

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office: 336-333-9899 | mlreynolds@crumleyroberts.com*

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the

sender immediately and permanently delete the original and any copy of this E-mail
and any printout. Thank You.**

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

WakeMed

WakeMed Physician Practices
Primary Care- Kildaire
110 Kildaire Park Drive Suite 305
Cary, North Carolina 27518
PH: (919)235-6575
FAX: (919)235-6598

# Fax

TO: Lincoln Financial Group FROM: Ronald Prucha, MD
FAX: (603) 334-7174 PH: (877) 294-3423
DATE: 2/8/2022 PAGES: 8 (including cover sheet)
RE: Attending Physicians Assessment of Capacity

☐ Urgent ☐ For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

• **Comments:** The documents accompanying this transmission may contain *confidential information* that is legally privileged and or legally protected. This information is intended only for the use of the individual or entity named above. The authorized recipient of this information is prohibited from disclosing this information to any other party unless required to do so by law or regulation and is required to destroy the information after its stated need has been fulfilled. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or action taken in reliance on the contents of these documents is strictly prohibited. If you have received this information in error, please notify the sender immediately and arrange for the return or destruction of these documents. If any of this transmission is missing or is not clearly received, please contact me at the number listed above.

**Letter by Ronald Joseph Prucha Jr., MD on 2/7/2022**

WakeMed Primary Care
110 Kildaire Park Drive
Suite 305
Cary NC 27518-6130
Phone: 919-235-6575
Fax: 919-235-6598

re:
Kim Romero Naugle

02/07/22

To whom it may concern:

I am writing on behalf of my longtime patient Ms. Kim Naugle, who has been through inordinate levels of stress, depression and anxiety exacerbated by many factors to include her previous job, which was stressful and anxiety-provoking and resulted in her having to leave her position to seek therapy, counseling and medication to manage her emotional lability. She continues to struggle daily with depression, anxiety, PTSD and stress and has been under the care of multiple physicians and therapists. She recently underwent an extensive mental health evaluation by her therapist and she presently feels she is making progress on all fronts of her mental health battle through the use of therapy and medications. Her desire is to return to work eventually once she has fully improved from a psychological standpoint and has gotten her anxiety under better control. She continues with psychotherapy presently and is making progress with this and feels that her present issues are more mental rather than physical and that her medications and current therapy program are affording her some improvement in her mental health state and overall, she feels she is doing considerably better.

The majority of her mental and emotional health issues are gradually beginning to resolve for her and she continues to make headway with her PTSD surrounding her panic attacks and her recent heart surgery and cardiac concerns. Her long-term goal is to put all of this behind her and return to being gainfully employed and is hoping to see an end to her emotional struggles of late and get on with her life in her newly improved mental health state. She is quickly approaching a state of work readiness and her short term goal presently is to return to work once she completes her current mental health treatment plan.

Respectfully,

Ronald J. Prucha, Jr., M.D.
PRIMARY CARE-KILDAIRE FARM RD
WAKEMED PRIMARY CARE-KILDAIRE
110 KILDAIRE PARK DRIVE
SUITE 305
CARY NC 27518-6130
Dept: 919-235-6575
Dept Fax: 919-235-6598
Loc: 919-235-6575

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

# Attending Physician's Assessment of Capacity

| | | | |
|---|---|---|---|
| Kim Naugle | | 12227902 | |
| Patient Name | Date of Birth | Claim Number | |
| Johnna Shorter | | | |
| Case Manager | Date First Treated | Date Last Treated | |
| Diagnosis(es) Contributing to or Causing Impairment | | | |

**PHYSICAL CAPACITY (in an average 8-hour workday)**

| | Constant (Over 5 1/2 Hours / Day or Over 40 Min. / Hour) | Frequent (Up to 5 1/2 Hours / Day or Up to 40 Minutes / Hour) | Occasional (Up to 2 1/2 Hours / Day or Up to 20 Minutes / Hour) |
|---|---|---|---|
| Sitting | | | |
| Standing | | | |
| Walking | | | |
| Driving | | | |
| Climbing | | | |
| Squatting | | | |
| Bending | | | |
| Kneeling | | | |
| Push / Pull | | | |
| Light Grasping | | | |
| Force Grasping | | | |

| | Constant (Over 5 1/2 Hours / Day or Over 40 Min. / Hour) | Frequent (Up to 5 1/2 Hours / Day or Up to 40 Minutes / Hour) | Occasional (Up to 2 1/2 Hours / Day or Up to 20 Minutes / Hour) |
|---|---|---|---|
| Fingering / Typing | | | |
| Reaching Overhead | | | |
| Reaching Below Shoulders | | | |
| Lifting: | | | |
| Up to 10 lbs. | | | |
| Up to 20 lbs. | | | |
| Up to 30 lbs. | | | |
| Up to 40 lbs. | | | |
| Up to 50 lbs. | | | |
| Over 50 lbs. | | | |

| | |
|---|---|
| Are there additional restrictions / limitations not captured in the table above? Please list. Also, if any of the above capacities are never, please list the capacity and rationale. | |

| | | | | | |
|---|---|---|---|---|---|
| How long will these restrictions be imposed? | | Can your patient function in an occupational setting full time **within the capacities noted above**? | ☐ Yes ☐ No | If your patient cannot function in an occupational setting now, when will he / she be able to? | |

| | |
|---|---|
| If your patient cannot function in an occupational setting at this time, please outline your medical and functional treatment plan to facilitate return to work. | |

| | | | |
|---|---|---|---|
| Please indicate what your opinions regarding restrictions / limitations and work capacity are based on? | ☐ Clinical Experience<br>☐ Specialty Training<br>☐ Diagnostic Tests | ☐ Patient's Self-Report<br>☐ Direct Observation<br>☐ Clinical Examination | ☐ Functional Eval. (FCE)<br>☐ Other (Please List): |

| | | | | | |
|---|---|---|---|---|---|
| If your patient is unable to work, what is the single most important barrier preventing your patient from returning to work? | ☐ Uncontrolled Pain | ☐ Unstable Medical Status | ☐ Patient's Motivation | ☐ Psychiatric Co-Morbid(s) | ☐ Other (List): |

| | | |
|---|---|---|
| Provider's Name (Please Print) | Degree *AND* Area of Specialty | Social Security or Tax ID Number |
| Street Address | Telephone Number | Fax Number |
| City, State & Zip Code | Signature | Date |

# FUNCTIONAL MENTAL STATUS EVALUATION FORM

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Return To: Johnna Shorter



EMPLOYEE/CLAIMANT NAME: Kim Naugle

CLAIM NO: 12227902

EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ______

**TO BE COMPLETED BY CLINICIAN:**
Please provide a complete description of your patient's current Mental Status Exam in the following areas. Also, please attach a copy of your clinical progress notes and a copy of the treatment plan that is sent to the medical insurance company.

**Patient's description of Job Title and duties:** ______

**GENERAL APPEARANCE:** (physical characteristics/grooming, etc.)

______

**EMOTIONAL STATE:** (mood and affect)

______

**EXPERIENCES:** (describe hallucinations/delusions)

______

**SENSORIUM:** (level of alertness, patient's orientation)

______

**MEMORY:** (Define status and what testing determines impairment)

Immediate: ______
Short Term: ______
Long Term: ______

DP 532 Rev. 06/01

Lincoln Financial Group®

*Functional Mental Status Evaluation*
*page 2 of 3*

**COGNITION:** (Define status and what testing determines impairment)

**JUDGMENT AND INSIGHT:** (What evidence supports impairment?)

**RISK BEHAVIORS:**

Suicidal thoughts, plans, actions

Homicidal thoughts, plans, actions

**SUBSTANCE ABUSE:** (abuse, dependency)

**In what way do the above symptoms interfere with the person's ability to function in a work setting?**

**What functional abilities are still retained?**

**What job tasks can this person perform?**

**What kind of work settings can the patient perform in, at this time, despite the limitations above?**

Lincoln Financial Group®

*Functional Mental Status Evaluation*
*page 3 of 3*

**How is work readiness being measured? How will you include return to work in the short term goals of the treatment plan?**

______________________________________________

______________________________________________

______________________________________________

______________________________________________

Goal: ____________ Success Indicator: ____________ Timeline: ____________

**Diagnosis (DSM-5)**

____________

____________

____________

If psychotherapy is indicated, what is the modality, frequency, name of provider and phone number?

______________________________________________

______________________________________________

______________________________________________

______________________________________________

List all current medications:

| | | | | |
|---|---|---|---|---|
| ____________ | Dosage: ______ | Frequency: ______ | Begin Date: ______ | End Date: ______ |
| ____________ | Dosage: ______ | Frequency: ______ | Begin Date: ______ | End Date: ______ |
| ____________ | Dosage: ______ | Frequency: ______ | Begin Date: ______ | End Date: ______ |
| ____________ | Dosage: ______ | Frequency: ______ | Begin Date: ______ | End Date: ______ |

Next scheduled office visit: ____________________

Comments:

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

| Examiner's Name (Please Print) | Title/Specialty | Tax ID# | Telephone No. | Fax No. |
|---|---|---|---|---|

Signature required: ______________________ Date: ____________

Crumley Roberts
Attorneys At Law

**FAX NUMBER:** 16034301744
**FROM:** Lauren Best
**DATE:** 02-04-2022 9:54 AM
**SUBJECT:** Kim Naugle, Claim # 10839136
**TOTAL PAGES:** 2

Please see attached request for updated claim file for Kim Naugle, Claim # 10839136.

**Lauren Best**
Case Manager

Crumley Roberts, LLP
2400 Freeman Mill Rd., Suite 200
Greensboro, NC 27406
Telephone: (800) 288-1529 Ext. 1601
Fax: (866) 916-8059
E-mail: labest@crumleyroberts.com
Web site: http://www.crumleyroberts.com

"We Stand Up For You!"

Privileged and Confidential - This communication may contain confidential or legally privileged information and is intended
only for the use of the individual or entity to whom it is addressed. Any dissemination, distribution, printing or copying of this
material by anyone other than the intended recipient is strictly prohibited. If you have received this communication in error,
please notify us immediately.

The information contained in this facsimile message is privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please notify us by telephone and return the original message to us via U.S. Postal Service to Crumley Roberts LLP. 2400 Freeman Mill Rd, Suite 200, Greensboro, NC 27406.

Crumley Roberts® Attorneys At Law
WE STAND UP FOR YOU®

**MAILING ADDRESS:**
2400 Freeman Mill Road
Suite 200
Greensboro, NC 27406
336-333-9899
336-333-9894 Fax

**1-800-288-1-LAW**
(1-800-288-1529)

**www.CrumleyRoberts.com**

February 04, 2022

**SENT VIA FACESMILE 603-430-1744**

Brook Mikulick
Lincoln National Life Insurance Company
Disability and Life Claims Appeal
P.O. Box 2578
Omaha, NE 68172-9668

**RE: KIM NAUGLE**
**CLAIM NO.: 10839136**
**SIEMENS CORPORATION**

Dear Brook:

I am writing to request an updated copy of Ms. Naugle's claim file from **July 8, 2021 to the present**. We are requesting the complete claim file, including but not limited to, all medical evidence, whether considered and mentioned in the evaluation process or not; correspondence from Lincoln to any of Ms. Naugle's medical providers regarding this claim; internal notes, updates and daily activity reports regarding this claim; opinions of any "independent medical examiners", on-site physicians, vocational experts or other medical professionals paid or employed by Lincoln to review this claim.

Please let us know if you need any other information. If the claim file is being sent via email please send to my assistant, Monica Reynolds at mlreynolds@crumleyroberts.com

Sincerely,
Crumley Roberts, LLP

Peter H. Burke
Attorney

WakeMed, 3000 New Bern Avenue, Raleigh, NC 27610, 919-350-8000

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# AFTER VISIT SUMMARY

Organization logo

**Kim R. Naugle** MRN: 4119042

12/15/2021 11:45 AM WakeMed Primary Care-Kildaire 919-235-6575

## Instructions from Dr. Prucha

### Well Visit, Women 50 to 65: Care Instructions

### Overview



Well visits can help you stay healthy. Your doctor has checked your overall health and may have suggested ways to take good care of yourself. Your doctor also may have recommended tests. At home, you can help prevent illness with healthy eating, regular exercise, and other steps.

**Follow-up care is a key part of your treatment and safety.** Be sure to make and go to all appointments, and call your doctor if you are having problems. It's also a good idea to know your test results and keep a list of the medicines you take.

### How can you care for yourself at home?

- Get screening tests that you and your doctor decide on. Screening helps find diseases before any symptoms appear.
- Eat healthy foods. Choose fruits, vegetables, whole grains, protein, and low-fat dairy foods. Limit fat, especially saturated fat. Reduce salt in your diet.
- Limit alcohol. Have no more than 1 drink a day or 7 drinks a week.
- Get at least 30 minutes of exercise on most days of the week. Walking is a good choice. You also may want to do other activities, such as running, swimming, cycling, or playing tennis or team sports.

- Reach and stay at a healthy weight. This will lower your risk for many problems, such as obesity, diabetes, heart disease, and high blood pressure.
- Do not smoke. Smoking can make health problems worse. If you need help quitting, talk to your doctor about stop-smoking programs and medicines. These can increase your chances of quitting for good.
- Care for your mental health. It is easy to get weighed down by worry and stress. Learn strategies to manage stress, like deep breathing and mindfulness, and stay connected with your family and community. If you find you often feel sad or hopeless, talk with your doctor. Treatment can help.
- Talk to your doctor about whether you have any risk factors for sexually transmitted infections (STIs). You can help prevent STIs if you wait to have sex with a new partner (or partners) until you've each been tested for STIs. It also helps if you use condoms (male or female condoms) and if you limit your sex partners to one person who only has sex with you. Vaccines are available for some STIs.
- If you think you may have a problem with alcohol or drug use, talk to your doctor. This includes prescription medicines (such as amphetamines and opioids) and illegal drugs (such as cocaine and methamphetamine). Your doctor can help you figure out what type of treatment is best for you.
- Protect your skin from too much sun. When you're outdoors from 10 a.m. to 4 p.m., stay in the shade or cover up with clothing and a hat with a wide brim. Wear sunglasses that block UV rays. Even when it's cloudy, put broad-spectrum sunscreen (SPF 30 or higher) on any exposed skin.
- See a dentist one or two times a year for checkups and to have your teeth cleaned.
- Wear a seat belt in the car.

## When should you call for help?

Watch closely for changes in your health, and be sure to contact your doctor if you have any problems or symptoms that concern you.

To learn more about "Well Visit, Women 50 to 65: Care Instructions", log into your personal health record at https://MyChart.WakeMed.org and search for **Y074** in the Health Library.

Current as of: October 6, 2021 Content Version: 13.1

© 2006-2021 Healthwise, Incorporated.
Care instructions adapted under license by your healthcare professional. If you have questions about a medical condition or this instruction, always ask your healthcare professional. Healthwise, Incorporated disclaims any warranty or liability for your use of this information.

## Well Visit, Women 50 to 65: Care Instructions

## Overview



Well visits can help you stay healthy. Your doctor has checked your overall health and may have suggested ways to take good care of yourself. Your doctor also may have recommended tests. At home, you can help prevent illness with healthy eating, regular exercise, and other steps.

**Follow-up care is a key part of your treatment and safety.** Be sure to make and go to all appointments, and call your doctor if you are having problems. It's also a good idea to know your test results and keep a list of the medicines you take.

## How can you care for yourself at home?

- Get screening tests that you and your doctor decide on. Screening helps find diseases before any symptoms appear.
- Eat healthy foods. Choose fruits, vegetables, whole grains, protein, and low-fat dairy foods. Limit fat, especially saturated fat. Reduce salt in your diet.
- Limit alcohol. Have no more than 1 drink a day or 7 drinks a week.
- Get at least 30 minutes of exercise on most days of the week. Walking is a good choice. You also may want to do other activities, such as running, swimming, cycling, or playing tennis or team sports.
- Reach and stay at a healthy weight. This will lower your risk for many problems, such as obesity, diabetes, heart disease, and high blood pressure.
- Do not smoke. Smoking can make health problems worse. If you need help quitting, talk to your doctor about stop-smoking programs and medicines. These can increase your chances of quitting for good.
- Care for your mental health. It is easy to get weighed down by worry and stress. Learn strategies to manage stress, like deep breathing and mindfulness, and stay connected with your family and community. If you find you often feel sad or hopeless, talk with your doctor. Treatment can help.
- Talk to your doctor about whether you have any risk factors for sexually transmitted infections (STIs). You can help prevent STIs if you wait to have sex with a new partner (or partners) until you've each been tested for STIs. It also helps if you use condoms (male or female condoms) and if you limit your sex partners to one person who only has sex with you. Vaccines are available for some STIs.
- If you think you may have a problem with alcohol or drug use, talk to your doctor. This includes prescription medicines (such as amphetamines and opioids) and illegal drugs (such as cocaine and methamphetamine). Your doctor can help you figure out what type of treatment is best for you.
- Protect your skin from too much sun. When you're outdoors from 10 a.m. to 4 p.m., stay in the shade or cover up with clothing and a hat with a wide brim. Wear sunglasses that block UV rays. Even when it's cloudy, put broad-spectrum sunscreen (SPF 30 or higher) on any exposed skin.
- See a dentist one or two times a year for checkups and to have your teeth cleaned.

- Wear a seat belt in the car.

## When should you call for help?

Watch closely for changes in your health, and be sure to contact your doctor if you have any problems or symptoms that concern you.

To learn more about "Well Visit, Women 50 to 65: Care Instructions", log into your personal health record at https://MyChart.WakeMed.org and search for **Y074** in the Health Library.

Current as of: October 6, 2021 Content Version: 13.1

© 2006-2021 Healthwise, Incorporated.
Care instructions adapted under license by your healthcare professional. If you have questions about a medical condition or this instruction, always ask your healthcare professional. Healthwise, Incorporated disclaims any warranty or liability for your use of this information.

## Well Visit, Women 50 to 65: Care Instructions

## Overview



Well visits can help you stay healthy. Your doctor has checked your overall health and may have suggested ways to take good care of yourself. Your doctor also may have recommended tests. At home, you can help prevent illness with healthy eating, regular exercise, and other steps.

**Follow-up care is a key part of your treatment and safety.** Be sure to make and go to all appointments, and call your doctor if you are having problems. It's also a good idea to know your test results and keep a list of the medicines you take.

## How can you care for yourself at home?

- Get screening tests that you and your doctor decide on. Screening helps find diseases before any symptoms appear.
- Eat healthy foods. Choose fruits, vegetables, whole grains, protein, and low-fat dairy foods. Limit fat, especially saturated fat. Reduce salt in your diet.
- Limit alcohol. Have no more than 1 drink a day or 7 drinks a week.
- Get at least 30 minutes of exercise on most days of the week. Walking is a good choice. You also may want to do other activities, such as running, swimming, cycling, or playing tennis or team sports.
- Reach and stay at a healthy weight. This will lower your risk for many problems, such as obesity, diabetes, heart disease, and high blood pressure.

- Do not smoke. Smoking can make health problems worse. If you need help quitting, talk to your doctor about stop-smoking programs and medicines. These can increase your chances of quitting for good.
- Care for your mental health. It is easy to get weighed down by worry and stress. Learn strategies to manage stress, like deep breathing and mindfulness, and stay connected with your family and community. If you find you often feel sad or hopeless, talk with your doctor. Treatment can help.
- Talk to your doctor about whether you have any risk factors for sexually transmitted infections (STIs). You can help prevent STIs if you wait to have sex with a new partner (or partners) until you've each been tested for STIs. It also helps if you use condoms (male or female condoms) and if you limit your sex partners to one person who only has sex with you. Vaccines are available for some STIs.
- If you think you may have a problem with alcohol or drug use, talk to your doctor. This includes prescription medicines (such as amphetamines and opioids) and illegal drugs (such as cocaine and methamphetamine). Your doctor can help you figure out what type of treatment is best for you.
- Protect your skin from too much sun. When you're outdoors from 10 a.m. to 4 p.m., stay in the shade or cover up with clothing and a hat with a wide brim. Wear sunglasses that block UV rays. Even when it's cloudy, put broad-spectrum sunscreen (SPF 30 or higher) on any exposed skin.
- See a dentist one or two times a year for checkups and to have your teeth cleaned.
- Wear a seat belt in the car.

## When should you call for help?

Watch closely for changes in your health, and be sure to contact your doctor if you have any problems or symptoms that concern you.

To learn more about "Well Visit, Women 50 to 65: Care Instructions", log into your personal health record at https://MyChart.WakeMed.org and search for **Y074** in the Health Library.

Current as of: October 6, 2021 Content Version: 13.1

© 2006-2021 Healthwise, Incorporated.
Care instructions adapted under license by your healthcare professional. If you have questions about a medical condition or this instruction, always ask your healthcare professional. Healthwise, Incorporated disclaims any warranty or liability for your use of this information.

Your medications have changed today
**See your updated medication list for details.**

Return in about 1 year
(around 12/15/2022) for Annual physical.

# Today's Visit



You saw Dr. Prucha on Wednesday December 15, 2021. The following issues were addressed:

- Encounter for annual physical exam
- Body mass index 45.0-49.9, adult
- High blood pressure disorder
- Prediabetes
- Multinodular goiter

Blood Pressure
Goal: Blood Pressure below 130/80




Weight
Goal: Weight below 150 lb




BMI
45.84

Pulse
49

Respiration
15

Oxygen Saturation
98%

## What's Next

JAN 13 2022

Video Visit with Kajal Gordhan Zalavadia, MD
Thursday January 13 11:20 AM
Instructions for your upcoming video visit:

1. Please download the app on your Apple or Android device before your appointment.
   Note: The video feature will NOT work on a web browser.

2. Before your visit, please complete all questionnaires sent to you in MyChart.

3. If you can, check your vital signs and have them written down before your appointment (temperature, heart rate, blood pressure, weight, O2 saturation).

4. Have a list of your current medications available to review.

5. 15-20 minutes before your appointment, you can expect a call from a staff member to begin your visit.

6. At that time, we will ask you to log into your MyChart App on your smartphone or tablet and select “Appointment”.

*If your provider recommended lab work please be sure to have your labs done at least 1-2 days prior to your visit.*

Thank you for choosing WakeMed.

MAR 1 2022

Return Appointment with Jennie Baird Buchkovich, PA-C
Tuesday March 1 11:00 AM (Arrive by 10:40 AM)
To help us provide you with exceptional care, please bring the following information to your appointment.

- List of current medications with dosage and instructions
- Insurance card
- Valid Photo ID
- Medical records if available
- Co-pay

We look forward to caring for you, and we appreciate you arriving 15 minutes before your appointment time.

WakeMed Heart & Vascular-Cardiology-Apex
120 Healthplex Way, Suite 210
Apex NC 27502
919-232-0322

## Allergies

| | |
|---|---|
| **Cephalosporins** | Rash |

# Changes to Your Medication List

**Accurate as of December 15, 2021 11:59 PM.**
Our goal is to provide a clear understanding of the purpose and side effects of the medications your provider prescribed for you today. Below is a list of your medications. If you have additional questions or concerns regarding a medication, you may contact the prescribing provider through MyChart or by phone.

## CONTINUE taking these medications

| | |
|---|---|
| aspirin 81 MG tablet | TAKE 1 TABLET BY MOUTH EVERY DAY |
| atorvastatin 40 MG tablet<br>Commonly known as: LIPITOR | TAKE 1 TABLET BY MOUTH EVERY DAY AT NIGHT |
| benazepril-hydrochlorthiazide 20-12.5 mg per tablet<br>Commonly known as: LOTENSIN HCT | TAKE 2 TABLETS BY MOUTH EVERY DAY |
| CALCIUM 600 ORAL | |
| cetirizine 10 MG tablet<br>Commonly known as: ZyrTEC | |
| clonazepam 0.5 MG tablet<br>Commonly known as: KlonoPIN | Take 1 tablet (0.5 mg total) by mouth daily as needed for anxiety. |
| hydrALAZINE 50 MG tablet<br>Commonly known as: APRESOLINE | Take 1 tablet (50 mg total) by mouth 3 (three) times a day. Take at 8am, 2pm and 10pm daily |
| ipratropium 21 mcg (0.03 %) nasal spray<br>Commonly known as: ATROVENT | 2 sprays into each nostril 2 (two) times a day. |
| metformin 500 MG 24 hr tablet<br>Commonly known as: GLUCOPHAGE-XR | Take 2 tablets (1,000 mg total) by mouth daily with breakfast. |
| metoprolol succinate 100 MG 24 hr tablet<br>Commonly known as: TOPROL-XL | TAKE 1 TABLET BY MOUTH EVERY DAY |
| multivitamin capsule | |
| PARoxetine 40 MG tablet<br>Commonly known as: PaxiL | Take 1 tablet (40 mg total) by mouth daily. |
| Synthroid 137 MCG tablet<br>Generic drug: levothyroxine | |

## STOP taking these medications

STOP

**NON FORMULARY**
Stopped by: Ronald Joseph Prucha Jr., MD

## Your Care Team

| | | |
|---|---|---|
| **Ronald Joseph Prucha Jr., MD** | PCP - General, Family Medicine | 919-235-6575 |
| 110 KILDAIRE PARK DRIVE SUITE 305 CARY NC 27518-8162 | | |
| **Hemant Solomon, MD** | Consulting Physician, Cardiovascular Medicine | 919-232-0322 |
| 120 HEALTHPLEX WAY SUITE 210 APEX NC 27502 | | |

## Other Information

- For evaluation of immediate mental health crisis/emergency services please contact mobile crisis at 1-877-626-1772.

  For help with mental health, substance abuse issues or domestic violence please contact the following national helplines:
  **Suicide Prevention Lifeline:** Call 1-800-273-8255**,** Available 24 hours everyday
  **Substance Abuse and Mental Health Services Administration (SAMHSA) Helpline:** 1-800-662-4357, Available 24 hours everyday
  **National Domestic Violence Hotline:** 1-800-799-7233, Available 24 hours everyday

- Your feedback is very important to us. Please update your Inbox spam settings so you are able to receive our survey. The sender will be Professional Research Consultants. Thank you for your time and allowing us to provide your healthcare needs.

## WakeMed CareEverywhere ID

Care Everywhere CEID = WKM-965-8252 : This CEID applies to WakeMed only. Use "Request Outside Records" to query other Epic organizations.

MyChart® licensed from Epic Systems Corporation © 1999 - 2022

**Important: Please note only data that has clinical mapping will be shared/transmitted.**
This health record is for date range : 06/01/2021 to 01/06/2022
Please note that below sections represents the most current data on record and are not specific to the date range :Demographics, Social History, Problems, Medications, Allergies, Immunizations, Health Concerns, and Medical Equipment (UDI).

# Patient Details

| Patient name | Contact info | Patient IDs | Sex |
|---|---|---|---|
| Kim Naugle | | **275659**<br>US **275659** | Female |

tel:

| LANGUAGE | RACE | ETHNICITY |
|---|---|---|
| English | White | Hispanic or Latino |

| | |
|---|---|
| **Care Giver** | Eric Kelly |
| **Contact Info** | 815 Oberlin Rd<br>Raleigh, NC 27605-1130<br>Tel: 919-237-1337 |
| **Care Giver** | Feyisayo Adeyina |
| **Contact Info** | 1004 Werrington Dr<br>Holly Springs, NC 27540-3325<br>Tel: 919-552-9952 |

# PROBLEMS

| Type | Condition | ICD9-CM Code | ICD10-CM Code | Onset Dates | Condition Status | W/U Status | Risk | SNOMED Code |
|---|---|---|---|---|---|---|---|---|
| Problem | Post-traumatic stress disorder, unspecified | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Generalized anxiety disorder | | F41.1 | | Active | confirmed | | 21897009 |
| Problem | Adjustment reaction with anxiety and depression | | F43.23 | | Active | confirmed | | 55668003 |
| Problem | Post traumatic stress disorder (PTSD) | | F43.10 | | Active | confirmed | | 47505003 |
| Problem | Severe episode of recurrent major depressive disorder, without psychotic features | | F33.2 | | Active | confirmed | | 36474008 |

# ALLERGIES

| Allergen (clinical drug ingredient) | Drug/Non Drug Allergy documented on EMR | Reaction | Allergy Type | Onset Date | Status |
|---|---|---|---|---|---|
| | CEPHLASPORINS | Unknown | Non Drug Allergy | | Active |

# ENCOUNTERS from 2021-06-01 to 2022-01-06

| Encounter | Location | Date | Provider | Diagnosis |
|---|---|---|---|---|
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 29 Dec, 2021 | Eric Kelly | Generalized anxiety disorder F41.1 |
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 01 Dec, 2021 | Eric Kelly | Generalized anxiety disorder F41.1 |
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 17 Nov, 2021 | Eric Kelly | Generalized anxiety disorder F41.1 |
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 28 Oct, 2021 | Eric Kelly | Generalized anxiety disorder F41.1 |
| Avance Care - Central Raleigh | 815 Oberlin Rd Raleigh, NC 27605-1130 | 28 Oct, 2021 | Monica Williams | |
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 20 Oct, 2021 | Eric Kelly | Generalized anxiety disorder F41.1 |
| Avance Care - Holly Springs | 1004 Werrington Dr Ste 200 Holly Springs, NC 27540-3325 | 19 Oct, 2021 | Monica Williams | |
| Avance Care - Central Raleigh | 815 Oberlin Rd Raleigh, NC 27605-1130 | 06 Oct, 2021 | Eric Kelly | |
| Avance Care - Central Raleigh | 815 Oberlin Rd Raleigh, NC 27605-1130 | 05 Oct, 2021 | Monica Williams | |
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 05 Oct, 2021 | Eric Kelly | Generalized anxiety disorder F41.1 |
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 27 Sep, 2021 | Eric Kelly | Generalized anxiety disorder F41.1 |

| Encounter | Location | Date | Provider | Diagnosis |
|---|---|---|---|---|
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 07 Sep, 2021 | Eric Kelly | Generalized anxiety disorder F41.1 |
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 27 Aug, 2021 | Eric Kelly | Generalized anxiety disorder F41.1 |
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 11 Aug, 2021 | Eric Kelly | Severe episode of recurrent major depressive disorder, without psychotic features F33.2 ; Generalized anxiety disorder F41.1 and Post traumatic stress disorder (PTSD) F43.10 |
| Avance Care - Holly Springs | 1004 Werrington Dr Ste 200 Holly Springs, NC 27540-3325 | 02 Aug, 2021 | Feyisayo Adeyina | |
| Avance Care - Virtual Care | 815 Oberlin Rd Raleigh, NC 27605-1130 | 28 Jul, 2021 | Eric Kelly | Severe episode of recurrent major depressive disorder, without psychotic features F33.2 ; Generalized anxiety disorder F41.1 and Post traumatic stress disorder (PTSD) F43.10 |
| Avance Care - Holly Springs | 1004 Werrington Dr Ste 200 Holly Springs, NC 27540-3325 | 29 Jun, 2021 | Monica Williams | Post traumatic stress disorder (PTSD) F43.10 and Adjustment reaction with anxiety and depression F43.23 |
| Avance Care - Holly Springs | 1004 Werrington Dr Ste 200 Holly Springs, NC 27540-3325 | 25 Jun, 2021 | Feyisayo Adeyina | |
| Avance Care - Holly Springs | 1004 Werrington Dr Ste 200 Holly Springs, NC 27540-3325 | 25 Jun, 2021 | Monica Williams | |
| Avance Care - Holly Springs | 1004 Werrington Dr Ste 200 Holly Springs, NC 27540-3325 | 25 Jun, 2021 | Monica Williams | |

# IMMUNIZATIONS

No Information

# SOCIAL HISTORY

Sex Assigned At Birth:

| Social History Observation | Description |
|---|---|
| Sex Assigned At Birth | Unknown |

# REASON FOR REFERRAL from 2021-06-01 to 2022-01-06

| | |
|---|---|
| Reason | B on 06/29 (UHC) PTSD, depression/anxiety|requests Eric Kelly |
| Diagnosis 1 | Post traumatic stress disorder (PTSD) (F43.10) |
| Diagnosis 2 | Adjustment reaction with anxiety and depression (F43.23) |
| Referral Organization | Avance Care - Holly Springs |
| Referring Provider First Name | Monica |
| Referring Provider Last Name | Williams |
| Referring Provider Specialty | Nurse Practitioner |
| Referred Provider | Avance Behavioral, Wellness |
| Referred Provider Specialty | Psychotherapist |
| Referral Priority | Routine |
| Referral Appointment Date | 2021-07-28 |
| General Notes | Quigley,Megan 06/29/2021 02:13:52 PM > booked for appt on 07/28@10am. Placed on waitlist |

# VITAL SIGNS

No information

# MEDICATIONS

| Medication | SIG (Take, Route, Frequency, Duration) | Notes | Start Date | End Date | Status |
|---|---|---|---|---|---|
| hydrALAZINE 25 mg | 1 tab(s) orally BID | | | | Active |
| metoprolol 100 mg | 1 tab(s) orally once a day for 30 day(s) | | | | Active |
| clonazePAM 0.5 mg | 1 tab(s) orally 3 times a day for 30 day(s) | | | | Active |
| metformin 500 mg | 1 tab(s) orally 2 times a day for 90 day(s) | | | | Active |
| aspirin 81 mg | 1 tab(s) orally once a day for 30 day(s) | | | | Active |
| PARoxetine 20 mg | 1 tab(s) orally once a day for 30 day(s) | | | | Active |
| benazepril-hydrochlorothiazide 20 mg-12.5 mg | 1 tab(s) orally once a day for 30 day(s) | | | | Active |
| atorvastatin 40 mg | 1 tab(s) orally once a day for 30 day(s) | | | | Active |
| levothyroxine 137 mcg (0.137 mg) | 1 tab(s) orally once a day for 30 day(s) | 2 on sat and sun | | | Active |

# PROCEDURES

No Information

# RESULTS

No Results

# REASON FOR VISIT

-BW f/u

# Goals Section

No Information

# Health Concerns

No Information

# MEDICAL EQUIPMENT

No Information

# MENTAL STATUS

No Information

# FUNCTIONAL STATUS

No Information

# ASSESSMENTS

| Encounter Date | Diagnosis | Treatment Notes |
|---|---|---|
| 29 Dec, 2021 | Generalized anxiety disorder (ICD-10 - F41.1) | |
| 01 Dec, 2021 | Generalized anxiety disorder (ICD-10 - F41.1) | |
| 17 Nov, 2021 | Generalized anxiety disorder (ICD-10 - F41.1) | |
| 28 Oct, 2021 | Generalized anxiety disorder (ICD-10 - F41.1) | |

| Encounter Date | Diagnosis | Treatment Notes |
|---|---|---|
| 20 Oct, 2021 | Generalized anxiety disorder (ICD-10 - F41.1) | |
| 05 Oct, 2021 | Generalized anxiety disorder (ICD-10 - F41.1) | |
| 27 Sep, 2021 | Generalized anxiety disorder (ICD-10 - F41.1) | |
| 07 Sep, 2021 | Generalized anxiety disorder (ICD-10 - F41.1) | |
| 27 Aug, 2021 | Generalized anxiety disorder (ICD-10 - F41.1) | |
| 11 Aug, 2021 | Severe episode of recurrent major depressive disorder, without psychotic features (ICD-10 - F33.2) | |
| 11 Aug, 2021 | Generalized anxiety disorder (ICD-10 - F41.1) | |
| 11 Aug, 2021 | Post traumatic stress disorder (PTSD) (ICD-10 - F43.10) | |
| 11 Aug, 2021 | Other | |
| 28 Jul, 2021 | Severe episode of recurrent major depressive disorder, without psychotic features (ICD-10 - F33.2) | |
| 28 Jul, 2021 | Generalized anxiety disorder (ICD-10 - F41.1) | |
| 28 Jul, 2021 | Post traumatic stress disorder (PTSD) (ICD-10 - F43.10) | |
| 28 Jul, 2021 | Other | |
| 29 Jun, 2021 | Post traumatic stress disorder (PTSD) (ICD-10 - F43.10) | PTSD: chronic- stable. Placed referral to therapist per pt request. |
| 29 Jun, 2021 | Adjustment reaction with anxiety and depression (ICD-10 - F43.23) | see ptsd note |

# PLAN OF TREATMENT

Treatment Notes

| Assessment | Notes |
|---|---|
| Generalized anxiety disorder | |
| Generalized anxiety disorder | |
| Generalized anxiety disorder | |
| Generalized anxiety disorder | |
| Generalized anxiety disorder | |
| Generalized anxiety disorder | |

| Assessment | Notes |
|---|---|
| Post traumatic stress disorder (PTSD) | PTSD: chronic- stable. Placed referral to therapist per pt request. |
| Generalized anxiety disorder | |
| Adjustment reaction with anxiety and depression | see ptsd note |

Referrals

| Referral Date | Details |
|---|---|
| 2021-07-28 | 2021-07-28, B on 06/29 (UHC) PTSD, depression/anxiety\|requests Eric Kelly, Wellness Avance Behavioral |

Next Appt

Details

2 Weeks Reason:

Provider Name:Eric J Kelly, 2022-01-12 11:00:00 AM, 815 Oberlin Rd, Raleigh, NC, 27605-1130, 919-237-1337

Provider Name:Eric J Kelly, 2022-01-26 11:00:00 AM, 815 Oberlin Rd, Raleigh, NC, 27605-1130, 919-237-1337

## Insurance Providers

| Payer Name | Payer Address | Payer Phone | Insured Name | Patient Relationship to Insured | Coverage Start Date | Coverage End Date | Subscriber Number | Group Number |
|---|---|---|---|---|---|---|---|---|
| United Healthcare | P O Box 740800 Atlanta GA 30374-0800 | 877-842-3210 | Naugle,Kim | self | | | 914229840 | 914229840 |

## Care team

| | | |
|---|---|---|
| **Guarantor** | Kim Naugle | |
| **Contact info** | Tel: | US |
| **Emergency contact** | ronald naugle | |
| **Contact info** | Tel: | US |

***©Powered by eClinicalWorks***

WakeMed, 3000 New Bern Avenue, Raleigh, NC 27610, 919-350-8000

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# Progress Notes

Jennie Baird Buchkovich at 10/29/2021 11:00 AM

**Chief Complaint**

**Chief Complaint**

Patient presents with

- 1mo f/u visit

**Problem List Items Addressed This Visit**

**Morbid obesity with BMI of 45.0-49.9, adult (CMS/HCC) (Chronic)**
**Coronary artery disease of native artery of native heart with stable angina pectoris (CMS/HCC) - Primary**

Relevant Orders
Lipid Panel
CMP
Hemoglobin A1C

**HPI/ CAD/ S/P CABG**

Kim Naugle is a very pleasant 58-year-old Caucasian female who underwent
**CABG 8/7/2018.**

6/2021: I would fully support her taking leave of absence from work if her PCP would recommend this. I am pleased to document that she will be meeting with bariatric surgery in the beginning of January to help with weight loss. I have encouraged her to exercise 30 minutes daily. I have increase her hydralazine to 50mg po tid due to uncontrolled BP currently.

Patient presents today **10/1/21** for follow-up. BP remains elevated in the office (repeat 160/80) patient notes at home BP is ~130/80. No symptoms of chest pain, dyspnea, palpitations. She continues to wear her CPAP. Working on losing weight.

She presents today **10/29/21** for follow-up. She notes BP at home usually 130/70s. Occasionally as high as 150s. She is still working with Bariatric surgery. No weight loss. BP better in the office today.

Current antihypertensive regimen
Metoprolol XL 100 mg daily
Hydralazine 50 TID
Benazepril/HCTZ 40/25 daily

**Cardiac risk factors:**
HTN YES
DM Pre-diabetes

HLD
Smoking 1.5 PPY hx
Family hx of CAD YES

**Coronary artery disease:**
CABG with Dr Kilinger **on 8/7/2018** with a LIMA -LAD and SVG - D2 - had a couple of episodes of PAF post op. Discharged home POD #4
NMT 10/2019 Normal myocardial perfusion study

**Cardiomyopathy:**
Echo 8/1/2018 EF 55-60%.

**Valvular:**
None

**Arrhythmia:**
Post-op PAF
Patient wore cardiac monitor from **8/22/2018 through 9/4/2018.** Predominant rhythm was normal sinus rhythm. There was no evidence of tachycardia or bradycardia arrhythmias. Symptoms of palpitations/rapid heart rate corresponded with sinus bradycardia and atrial run of 4 beats.
CHADS2-VAsc score = 3.

**Peripheral arterial disease:**
Carotid dopplers **8/1/2018** were essentially normal

**Other**:
Hypothyroidism

**Medical History:**

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Anxiety | |
| • Arachnoid cyst | |
| • Arthritis | |
| • CAD in native artery | |
| • Cervical cancer screening<br>*normal per pt* | 2014 |
| • Congenital heart disease<br>*Congenital heart mumur* | |
| • CTS (carpal tunnel syndrome) | |
| • Depression | |
| • Disease of thyroid gland | |
| • Fibroid | |
| • Gestational diabetes | |
| • Heart murmur | |
| • Herpes | |
| • High cholesterol<br>*Borderline* | |
| • History of recurrent miscarriages | |
| • Hx of colonoscopy<br>*3 polyps* | 2015 |
| • Hx of mammogram<br>*normal per pt* | 2014 |
| • Hx of pregnancy | |
| • Hypertension | |
| • Meniscus tear | |
| • Post-traumatic stress | |
| • Sleep apnea | 2009 |
| • STD (sexually transmitted disease)<br>*Genital Herpes* | |
| • Torn ACL | |
| • Urinary tract infection<br>*In the past* | |

- Urogenital trichomoniasis
- Varicella

**Surgical History:**

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • ABDOMINAL SURGERY | | 1998 |
| • CARDIAC CATHETERIZATION | | |
| • CARPAL TUNNEL RELEASE | | 2015 |
| • CESAREAN SECTION | | |
| • COLONOSCOPY | | 2018 |
| • COLPOSCOPY | | |
| • CONDYLOMA EXCISION/FULGURATION | | |
| • CORONARIES LHC WITH OR WITHOUT LV<br>*Procedure: Coronaries LHC with or without LV; Surgeon: Hemant Solomon, MD; Location: WCH INVASIVE CARDIOLOGY; Service: Cardiovascular; Laterality: Left;* | Left | 8/3/2018 |
| • CORONARY ARTERY BYPASS GRAFT<br>*CAB x 2* | | 08/07/2018 |
| • double open heart by pass | | |
| • FLEXIBLE SIGMOIDOSCOPY | | |
| • laminectomy | | 1989 |
| • LUMBAR DISCECTOMY | | 1989 |
| • TONSILECTOMY, ADENOIDECTOMY, BILATERAL MYRINGOTOMY AND TUBES | | 1968 |
| • TONSILLECTOMY | | 1968 |
| • TUBAL LIGATION | | 2011 |

**Medications:**

**Current Outpatient Medications**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin 81 MG tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • atorvastatin (LIPITOR) 40 MG tablet | TAKE 1 TABLET BY MOUTH EVERY DAY AT NIGHT | 90 tablet | 1 |
| • benazepril-hydrochlorthiazide (LOTENSIN HCT) 20-12.5 mg per tablet | TAKE 2 TABLETS BY MOUTH EVERY DAY | 180 tablet | 1 |
| • calcium carbonate (CALCIUM 600 ORAL) | Take 600 Units by mouth. | | |
| • cetirizine (ZYRTEC) 10 MG tablet | Take 10 mg by mouth daily. | | |
| • clonazepam (KLONOPIN) 0.5 MG tablet | Take 1 tablet (0.5 mg total) by mouth daily as needed for anxiety. | 30 tablet | 0 |
| • hydrALAZINE (APRESOLINE) 50 MG tablet | Take 1 tablet (50 mg total) by mouth 3 (three) times a day. Take at 8am, 2pm and 10pm daily | 360 tablet | 3 |
| • ipratropium (ATROVENT) 21 mcg (0.03 %) nasal spray | 2 sprays into each nostril 2 (two) times a day. | 30 mL | 5 |
| • metformin (GLUCOPHAGE-XR) 500 MG 24 hr tablet | Take 2 tablets (1,000 mg total) by mouth | 60 tablet | 2 |

| | | | |
|---|---|---|---|
| | daily with breakfast. | | |
| • metoprolol succinate (TOPROL-XL) 100 MG 24 hr tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • multivitamin capsule | Take 1 capsule by mouth 2 (two) times a day. Bausch and lomb areds2 | | |
| • NON FORMULARY | nightly. CPAP | | |
| • PARoxetine (PAXIL) 40 MG tablet | Take 1 tablet (40 mg total) by mouth daily. | 30 tablet | 2 |
| • SYNTHROID 137 mcg tablet | TAKE 1 TABLET BY MOUTH 6 DAYS A WEEK AND 2 TABLETS BY MOUTH ONCE A WEEK | | 1 |

No current facility-administered medications for this visit.

**Allergies:**

**Allergies**

| Allergen | Reactions |
|---|---|
| • Cephalosporins | Rash |

**Social History:**

**Social History**

Tobacco Use
- Smoking status: Former Smoker
  - Packs/day: 0.50
  - Years: 3.00
  - Pack years: 1.50
  - Types: Cigarettes
  - Quit date: 1/1/1985
  - Years since quitting: 36.8
- Smokeless tobacco: Never Used
- Tobacco comment: 15 thru 19

Substance Use Topics
- Alcohol use: Yes
  - Alcohol/week: 1.0 standard drinks
  - Types: 1 Glasses of wine per week
  - *Comment: once a month (Rarely)*

**Family History:**

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Colon polyps | Mother | |
| • Cancer<br>*Cervical & Skin* | Mother | |
| • Diabetes | Mother | |
| • Heart attack | Father | |
| • Hypertension | Father | |
| • Heart disease | Father | |
| • Diabetes | Father | |

| | | |
|---|---|---|
| • Vision loss<br>*Macular Degeneration* | Father | |
| • Hypertension | Brother | |
| • Cancer<br>*Breast & Bone* | Maternal Grandmother | |
| • Vision loss | Maternal Grandmother | |
| • Anemia | Maternal Grandmother | |
| • Breast cancer | Maternal Grandmother | 40 |
| • Cancer<br>*Throat* | Maternal Grandfather | |
| • Hypertension | Maternal Grandfather | |
| • Heart disease | Maternal Grandfather | |
| • Diabetes | Maternal Grandfather | |
| • Cancer | Paternal Grandmother | |
| • Vision loss<br>*Macular Degeneration* | Paternal Grandmother | |
| • Cancer<br>*Stomach/Stomach cancer* | Paternal Grandfather | |
| • Alcohol abuse<br>*Both Brothers* | Brother | |
| • Diabetes<br>*Both Brothers* | Brother | |
| • Heart disease<br>*Older Brother* | Brother | |
| • Hypertension<br>*Both Brothers* | Brother | |
| • Diabetes | Brother | |
| • Hypertension | Brother | |
| • Diabetes | Brother | |
| • Hypertension<br>*Younger Brother* | Brother | |

.

**Review of Systems:**
.Review of Systems
Constitutional: Negative for chills, fever and weight loss.
Respiratory: Negative for cough, shortness of breath and wheezing.
Cardiovascular: Negative for chest pain, palpitations, orthopnea, claudication, leg swelling and PND.
Gastrointestinal: Negative for constipation, diarrhea, nausea and vomiting.
Musculoskeletal: Negative for back pain, joint pain, myalgias and neck pain.
Skin: Negative for itching and rash.
Neurological: Negative for dizziness, weakness and headaches.
Endo/Heme/Allergies: Does not bruise/bleed easily.
Psychiatric/Behavioral: Negative for depression.

Objective

Blood pressure 134/80, pulse 51, temperature 97.4 °F (36.3 °C), temperature source Tympanic, height 1.778 m (5' 10"), weight **(!) 145.7 kg (321 lb 1.6 oz)**, last menstrual period 05/14/2020, SpO2 96 %.

**Physical Exam**
**Physical Exam**
Constitutional:

General: She is not in acute distress.
Appearance: She is well-developed. She is obese.

HENT:
Head: Normocephalic and atraumatic.

Eyes:
Conjunctiva/sclera: Conjunctivae normal.
Pupils: Pupils are equal, round, and reactive to light.

Neck:
Thyroid: No thyromegaly.
Vascular: No carotid bruit or JVD.

Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Pulses: Intact distal pulses.
Heart sounds: Murmur heard.
Harsh midsystolic murmur is present with a grade of 3/6 at the upper right sternal border radiating to the neck.
No friction rub. No gallop.

Pulmonary:
Effort: Pulmonary effort is normal. No respiratory distress.
Breath sounds: Normal breath sounds. No wheezing or rales.

Abdominal:
General: Bowel sounds are normal. There is no distension.
Palpations: Abdomen is soft.
Tenderness: There is no abdominal tenderness. There is no rebound.

Musculoskeletal:
General: No tenderness or deformity. Normal range of motion.
Cervical back: Normal range of motion and neck supple.

Skin:
General: Skin is warm and dry.
Findings: No erythema or rash.

Neurological:
Mental Status: She is alert and oriented to person, place, and time.

**Test Results**

**Lab Results**

| Component | Value | Date |
|---|---|---|
| CHOL | 152 | 10/04/2019 |
| LDL | 67 | 10/04/2019 |
| HDL | 66 | 10/04/2019 |
| TRIG | 97 | 10/04/2019 |
| NA | 140 | 02/19/2021 |
| K | 3.8 | 02/19/2021 |
| CL | 97 (L) | 02/19/2021 |
| CO2 | 34 (H) | 02/19/2021 |
| BUN | 21 | 02/19/2021 |
| CREAT | 0.92 | 02/19/2021 |
| GFR | >60 | 07/21/2017 |

]

Assessment/Plan

**1. Coronary artery disease of native artery of native heart with stable angina pectoris (CMS/HCC)**
- Will check blood work today.

- Continue ASA, Statin, Metoprolol.
- Lipid Panel; Future
- CMP; Future
- Hemoglobin A1C; Future

**2. Morbid obesity with BMI of 45.0-49.9, adult (CMS/HCC)**
- Continue with efforts for weight loss.

Return in about 4 months (around 2/28/2022).
**Patient Instructions**
- Continue all medications
- Blood work at your convenience

I have seen the patient with the assistance of ancillary staff. However, no physician was involved in the care of Kim Naugle at this time.

**Jennie Baird Buchkovich, PA-C**
**Hemant Solomon, MD, FACC, MRCP (UK), RPVI**
**WakeMed Heart and Vascular - Apex Office**
**120 Healthplex Way Suite 210**
**Apex, NC 27502**
**Phone: (919) 232-0322**

## Patient Instructions

Jennie Baird Buchkovich at 10/29/2021 11:00 AM
- Continue all medications
- Blood work at your convenience

MyChart® licensed from Epic Systems Corporation © 1999 - 2022