Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return To:** Johnna Shorter



EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902 DATE OF BIRTH:
EMPLOYER/SPONSOR: Siemens

**TO BE COMPLETED BY THE CLAIMANT:**

Please answer the following questions and return the form to The Lincoln National Life Insurance Company.

How long are you able to:
sit 2 Hrs +/- stand 1 Hr +/- walk 15 mins +/-

How many hours a day do you:
sit 4 Hrs +/- stand 4 Hrs +/- walk 1 +/-

Do you take a nap during the day?
Yes ✓ No

If Yes, for how long? Varies At what time of the day? Varies

How many hours a day do you spend in bed? 15 Hrs +/-

Do you require any assistive devices such as a:
cane ____ walker ____ crutches ____ wheelchair ____ other ____

How long are you able to sit in a car? 2 Hrs

Do you hold a valid driver's license?
Yes ✓ No

If No, please explain:

If Yes, how long are you able to drive a car? Local

**Please provide a copy of your driver's license when returning this form.**

How do you maintain contact with people or activities that matter most to you?
Computer, Phone

Do you have children?
Yes ✓ No ____ If Yes, what are their dates of birth Brianna Smith Aloi ~~[illegible]~~ March 1998

Do you need help caring for your children?
Yes ____ No ✓

Are you responsible for taking care of any grandchildren, an elderly parent or grandparent?
Yes ____ No ✓ If Yes, please explain

How many times a day do you leave the house during the week? 0 to 1
On the weekends? 0 to 1

How often do you run errands? When husband goes + Usually Drives

Please describe what errands you most commonly run: groceries, Pharmacy, Gifts

EXHIBIT
3, part 2

Lincoln Financial Group®



How often do you get outdoors? daily in yard for nature therapy, Calms anxiety.

| | | | | |
|---|---|---|---|---|
| Are you left or right hand dominant? | Left | | Right | ✓ |
| Are you able to work in your garden? | Yes | ✓ | No | |
| Are you able to work on your house? | Yes | | No | ✓ |
| Are you able to wash your car? | Yes | | No | ✓ |

How much time is spent daily on your home computer?
_____ None ✓ 0-1 hours _____ 1-2 hours _____ 2-3 hours _____ 3+ hours

How much time is spent weekly on your home computer?
_____ None ✓ 0-1 hours _____ 1-2 hours _____ 2-3 hours _____ 3+ hours

What activities do you perform on your home computer. Please check all that apply:
_____ Pay bills (circled) _____ Read news/articles _____ Use search engines _____ Send emails (circled)
_____ Visit chat rooms _____ Photos Other: _____

What computer software applications do you utilize. Please check all that apply:
_____ Word processing (Word) _____ Spreadsheets (Excel) _____ Database (Access) _____ Graphics
_____ Photo software (Photoshop) _____ Programming Other: Email

Do you have a working home copy machine/fax machine? _____ Yes ✓ No

If yes, please explain purpose and usage: _____

The following questions intend to identify whether or not you are able to independently conduct routine daily activities. If assistance is required, please clarify.

| How are the following accomplished? | By Whom? | Assistance Required? |
|---|---|---|
| Grocery Shopping | Husband | |
| Carrying groceries into the house | " | |
| Cooking meals | " | |
| Cleaning after meals | " | |
| Cleaning bathrooms | " | |
| Vacuuming | " | |
| Doing the laundry | Kim | |
| Opening and responding to mail | Husband | |
| Managing your finances | Husband | |
| Balancing your checkbook | Husband | |
| Bathing yourself | Kim | |
| Styling your own hair | Kim | |
| Getting dressed | Kim | |
| Going up and down stairs | Kim | |

Have you been confined to a hospital within the last 12 months? Yes _____ No ✓

If Yes, please provide reason and hospital contact Information: _____

Lincoln Financial Group®

ACTIVITIES QUESTIONNAIRE


How often do you travel or take vacation? Rarely
Where do you go? How do you get there (transportation method)? CAR / Family

Are you able to pursue your hobbies? Yes ____ No ✓
If Yes, please describe ____

Do you participate in an exercise program? Yes ____ No ✓
If Yes, please describe ____

Do you do any Volunteer work? Yes ____ No ✓

If Yes:
- how many hours per day? ____
- how many hours per week? ____
- for whom? ____

Are you working for wages? Yes ____ No ✓
If Yes, please provide employer's name ____

**Describe in your own words, what prevents you from engaging in any gainful employment.**

I was terminated From job while out on medical leave for Post-Traumatic Stress Syndrome + Severe Anxiety and Fighting the denial of my original Claim. I have not been medically released for work yet while receiving Meds + Treatment.

**Please describe your daily routine: (if more space is needed, please use the back of this form)**

Rise, dress, manage medications, get outdoors for nature therapy as it calms my anxiety, Doctor Appts, respond to correspondence, do whatever I can to help my husband care for us, and our home Every Day is a Struggle for me as I have hypersensitivity to Stress, panic attacks + PTSD from Open heart Surgery.

Is there a daytime number where you can be reached in the event we have any questions regarding your responses?
____

In the event we cannot reach you, please provide an alternate contact's name and telephone number.
____

**Upon completion of this form, please sign and date below and return in the envelope provided to you. Thank you for your cooperation.

The above statements are true and complete to the best of my knowledge and belief and I hereby authorize any hospital or physician who has treated me or other person who has attended me or examined me or any company or Government agency to furnish the Insurance Company providing this firm or their representative, any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records. A photo static copy of this form will be as valid as the original. I understand that if this information changes at any time, I will contact Lincoln Financial Group.

Name: Kim R Naugle Date: 1/30/2022
Signature: Kim R. Naugle

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

## AGREEMENT CONCERNING BENEFITS

Return To: Johnna Shorter

Policy No: 03 - 510101

Claim Number: 12227902

Employer: Siemens

Address

Claimant: Kim Naugle

Date of Disability: 12/24/2020

In return for the advance payment of group disability benefits made to me by The Lincoln National Life Insurance Company, which may be in excess of the amount due to me under the terms of Policy number 03 510101 I, for myself, my heirs, executors, administrators and assigns agree:

1) That I am not currently receiving any benefits from Social Security and/or Workers' Compensation.

*2) If I apply for Social Security benefits and/or Workers' Compensation benefits I will promptly notify The Lincoln National Life Insurance Company. * Applied in 2021 after denial of Claim - Pending Review*

3) If I, and/or my spouse and family receive any benefits payments, from Social Security and/or Workers' Compensation, I, and/or my spouse and family will immediately notify by The Lincoln National Life Insurance Company, of such benefit payments and pay back any overpayment resulting from this award in accordance with my Policy provisions.

4) I understand that thereafter The Lincoln National Life Insurance Company is entitled to integrate any amounts received from Social Security and/or Workers' Compensation with the benefits payable under the Policy in accordance with the terms of the Policy.

I understand that The Lincoln National Life Insurance Company in reliance on the above statements and promises, has agreed to advance benefits to me.

Kim R Naugle
Claimant Name (please print)

Address

Kim R. Naugle
Signature

1/30/2022
Date

*PLEASE RETAIN A COPY FOR YOUR RECORDS, OR ONE MAY BE PROVIDED FOR YOU UPON REQUEST.*

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**
**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator, and any insurance support organizations.
**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.
**Description of the information that may be used or disclosed**: This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**
**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.
**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.
This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) Kim R. Naugle
Name of legal representative, if applicable (print) Crumley-Roberts, PA Relationship Attorney

Signature of claimant or legal representative Kim R. Naugle Date: 1/30/2022
Date of Birth: ______ Claim Number: 12227902 0

**A copy of this authorization will be considered as valid as the original.**

# CLAIMANT SUPPLEMENTARY STATEMENT

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return to:** Johnna Shorter

**EMPLOYEE/CLAIMANT NAME:** Kim Naugle **CLAIM #:** 12227902
**EMPLOYER:** Siemens **DATE OF BIRTH:**

| | | |
|---|---|---|
| Full Name (Last, First, Middle Int.) Naugle, Kim R. | Social Security # | Email Address |
| Street Address | City | State / Zip Code |
| Telephone Number (include area code) | Cell Phone Number (include area code) | Marital Status Married |
| Spouse's Full Name and Date of Birth 11/28/60 Ronald L. Naugle | Number of Children 1 | Dates of Birth of Children |

Next of Kin/Emergency Contact (required should additional benefits be payable in the event of your death).
Name Ronald L. Naugle Relationship to you? Spouse Tel #.

Have you returned to any type of employment or activity that provides you money? If yes, please provide name of employer, start date, hours worked per/wk and rate of pay. NO

Do you own a business, or are you involved or affiliated with any type of business, corporation, partnership, or sole proprietary? If yes, please explain and provide proof of income from prior year. NO

Do you have a tax identification number (TIN) or employer identification number (EIN)? If yes, for what purpose? NO

Do you hold a professional license? If yes, for what purpose? Notary Public

Are you associated with an Internet business of any kind? Do you have a website? If yes, please explain and provide website address(es) and the date started. NO

Are you pursuing money from a third party or involved in any litigation? If yes, please explain why and provide your attorney's contact information. NO

Are you pursuing moneys from a third party: Workers' Compensation Carrier, Insurance Co., or Individual? If yes, please explain. Yes
Disability Claim w/ Lincoln Financial

Identify other income you are receiving or for which you have applied. You have an ongoing obligation to notify us immediately of receipt of any other income or any other changes to this information, including supporting documentation confirming the amount you receive and the effective date:

| Yes | No | Type | Amount per Week/Month | Date Began Receiving | Date Ceased Receiving | Date Income Applied for |
|---|---|---|---|---|---|---|
| | ✓ | Wages/ Income/ Money/ Unemployment | $ | | | |
| ✓ | | Social Security (disability or retirement) | $ Ø | N/A | Applied & Pending Review | |
| | ✓ | Social Security (for your spouse/dependents) | $ | | | |
| | ✓ | Short Term Disability or State Disability | $ | | | |
| | ✓ | Pension or Retirement benefits (lump sum/ongoing) | $ | | | |
| | ✓ | Workers' Compensation | $ | | | |
| | ✓ | Severance or Employment Separation payment (provide Agreement) | $ | | | |
| ✓ | ~~✓~~ | Other income/money/benefit (describe) PTO Pay @ Termination $3K/Lump Sum | | | | |

**If my claim is overpaid, I understand and agree that Lincoln Financial Group has the right to recover such overpayment from me, including the right to reduce future disability benefits, or pursue other collection methods as appropriate. The above statements are true and complete to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, or deceive Lincoln Financial Group and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law. A photo static copy of this form will be valid as the original.**

**EMPLOYEE'S PRINTED NAME:** Kim R. Naugle

**DATE:** 1/30/2022 **EMPLOYEE'S SIGNATURE:** Kim R. Naugle

DP 409

# Family Information Questionnaire

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return to:** Johnna Shorter

EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902
EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ______

To document your Long Term Disability Claim file and properly administer benefits, we need the following information. Please complete and return this form in the envelope provided. Thank you for your prompt attention to this request for information.

What is your marital status? Single ____ Married ✓ Divorced ____
If married, please indicate your spouse's name and date of birth. Name: Rond L. Naugle DOB: __/__/__

Do you have children or dependents*? Yes ✓ No ✓
If yes, please provide additional details below, using additional space as needed.
* An eligible dependent may include:

- Biological child(ren)
- Stepchildren
- Children not residing in your household
- Custodial Grandchildren
- A child 18 or older with a disability that started before age 22
- Adopted Children
- A child 18-19 and a full-time student (not higher than grade 12)

| Name | DOB | If Divorced or Separated, Indicate Custodial or Non-Custodial | High School Student? Yes or No | Anticipated/Actual Last Month/Year of High School |
|---|---|---|---|---|
| Brianna Smith Abi | | | NO | Adult |
| | | | | |
| | | | | |
| | | | | |

Is your spouse and/or children receiving Social Security benefits? Yes: ______ No: ✓
If yes, please complete the information below and include a copy of their Social Security Award Certificate(s).

If no, however, they were previously receiving Social Security benefits in the past and are no longer, please include a copy of the Social Security Termination notice (s), if this information has not already been provided to The Lincoln National Life Insurance Company.

| Name | DOB | Awarded as: Dependent, Spouse or Disabled | Current Monthly Benefit Amount | Date of Entitlement to Benefits | Benefit Termination Date (if applicable) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Your Name: ______________________ Date: ______________

# TRAINING-EDUCATION-EXPERIENCE FORM (TEE)

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902
EMPLOYER/SPONSOR: Siemens DATE OF BIRTH:

**Please fill out each section completely**

**EDUCATIONAL BACKGROUND: (If you have a resume, please attach)**

Highest Grade Completed: 12 Check if earned: ☐ GED ☑ HS Diploma
Vocational Training: N/A Certificate Program completed:
Associates Degree: N/A College: number of years: 1.5
Bachelor's Degree: BA /BS Major: Graduate School: MA ☐ MS ☐ CAGS ☐ PHD Degree:
Professional Training, License, Certificates(s): Notary Public of NC
Are you currently attending any classes: ☐ Y ☑ N If yes, provide name of school:
List any other Training or Classes Attended or Plan to Attend:
Primary language spoken: English Other language(s) spoken fluently: Spanish
Additional Skills, Hobbies & Volunteer Work
Did you serve in the Armed Forces? ☐ Y ☑ N From: To:
Branch of Service: Specialty:

**WORK EXPERIENCE:** (If you've held different positions for the same employer, please include them below)
Please list chronologically (starting with the most recent) all the jobs/positions you have held in the past 15 years.
(add additional pages if needed for a complete work history).

1. Company: Siemens Department: Infrastructure From: 8/2007 To: 12/2021
   Job Title(s): Project Coordinator
   Supervisory Experience ☐ Y ☑ N
   Tasks/Duties/Physical Requirements (please be specific): Project Management, Billing, Financials, Sub Contracts Wk'd on 250 +/- Projects with 5 managers 30 PM's + 4 Teams. Extreme multitasking, Coordination, goals, deadlines + Stress Levels.
2. Company: Department: From: To:
   Job Title(s):
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific):

3. Company: ______ Department: ______ From: ______ To: ______
   Job Title(s): ______
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific): ______

4. Company: ______ Department: ______ From: ______ To: ______
   Job Title(s): ______
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific): ______

5. Company: ______ Department: ______ From: ______ To: ______
   Job Title(s): ______
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific): ______

**Computer Utilization:**

Computer Training/Courses, Certifications: Fully Computer Literate

| | Home | Work | | Home | Work |
|---|---|---|---|---|---|
| Email | ☑ | ☑ | Graphics Software | ☐ | ☑ |
| Internet | ☑ | ☑ | Installation/Repair Hardware | ☐ | ☑ |
| Word Processing (MS Word) | ☐ | ☑ | Installation/Repair Programming | ☐ | ☐ |
| Spread Sheet (MS Excel) | ☐ | ☑ | Project Management | ☐ | ☑ |
| Database | ☐ | ☑ | Other: ______ | | |
| Photo Software | ☑ | ☐ | | | |

How much time is spent daily on your work computer? ☑ None ☑ 1-2 hours ☐ 2-3 hours ☑ 3+ hours

How much time is spent daily on your home computer? ☑ None ☑ 1-2 hours ☐ 2-3 hours ☐ 3+ hours

Keyboarding/Typing Experience: ☑ Yes ☐ No If yes, WPM (words per minute) 80 WPM +/-
(We recommend- http://typingtest.com to determine WPM)

Please provide your email address: Personal: Work: ______

SIGNATURE: [signature] PHONE NO: (919) 591-7929

# Workers' Compensation INFORMATION FORM

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Return To: Johnna Shorter

EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902
EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ______

We received your disability claim form. The form indicates that your disability is the result of a work related Injury/Sickness. Please provide the following information and return this form to my attention in order to avoid any delay in processing.

1. Date of Injury/Sickness: 12/23/2020
2. Location of Injury (please provide complete address): PsyCologicaL /Emotional
3. Description of Injury/Sickness (please include copy of accident report): Diagnosed with Severe Anxiety, Depression + PTSD.
4. Please provide the name of your Employer:
   Company Name: Siemens
   Address: 215 Southpont Drive
   Supervisor Name: Rob Yance Telephone: (919) 469-5095
5. Please provide the name of your Employer's Workers' Compensation Carrier or Administrator:
   Insurance Carrier: Lincoln Financial Group (See Above)
   Address:
   Telephone: ( )
   Claim Representative:
6. Are you collecting benefits from your Employer's Workers' Compensation Insurance Company or Administrator?
   Yes ☐ No ☑
   If "Yes": Weekly Benefit Amount $
   Claim No.:
7. Are you using the services of an attorney?
   Crumley Roberts Yes ☑ No ☐ Peter Burke
   If "Yes": Name: Crumbley-Robents Attn: Peter Berg + Monica Reynolds
   Address: 3535 Grandview Parkway, #100, Birmingham, AL 35243
   Telephone: (336) 333-9899

SIGNATURE: Kim R. Naugle DATE: 1/30/2022

DP 539D – Rev. 12/02

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed:** This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Name of claimant (print) Kim R. Naugle

Name of legal representative, if applicable (print) Crumley Roberts, LLP Crumbley-Roberts Relationship Attorney

Signature of claimant or legal representative [signature] Date: 1/30/2021

Date of Birth: __ _______ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original**

pg. 1 LMB.Psychotherapy.2020

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

| | |
|---|---|
| Date: | January 24, 2022 |
| To: | CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | P Burke |
| Fax: | (877) 293-8687 |
| From: | Johnna Shorter<br>Senior LTD Technical Claim Specialist II<br>Phone No.: Phone No.: (877) 294-3423<br>Secure Fax No.: (603) 334-7174 |
| Total Pages<br>(Including Cover): | 28 |
| RE:<br><br>Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (877) 294-3423 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

January 24, 2022

Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

Mr. Peter Burke:

This letter is to clarify the correct date of notice and proof Day 45. Day 45 is February 10, 2022. This is incorrect on the attached letter in error. Please have all medical records, ICP and forms submitted by February 10, 2022.

If you have any questions regarding this matter, please contact me.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

Attachments: 12227902-NOTIFY-ERISA-01.21.2022

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

| | |
|---|---|
| Date: January 21, 2022 | |
| To: | LAUREN BEST<br>CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | Medical records |
| Fax: | (877) 293-8687 |
| From: | Johnna Shorter<br>Senior LTD Technical Claim Specialist II<br>Phone No.: Phone No.: (877) 294-3423<br>Secure Fax No.: (603) 334-7174 |
| Total Pages<br>(Including Cover): 26 | |
| RE:<br><br>Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (877) 294-3423 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

January 21, 2022

Lauren Best
Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

Dear Lauren Best:

The Lincoln National Life Insurance Company is responsible for managing claims for benefits under the Siemens Long Term Disability (LTD) Insurance Policy.

The purpose of this letter is to inform Ms. Naugle that we require additional time to render a determination on her LTD claim. Under the Employee Retirement Income Security Act of 1974 (ERISA), an initial claim determination should be rendered within 45 days of receipt of claim, unless there are special circumstances which require a delay in making a claim determination. If additional time is needed, ERISA allows for up to two 30-day extensions to evaluate and render a claim decision.

At this time, we need additional information which is necessary to render a full and fair determination on Ms. Naugle's LTD claim for benefits under the Policy. Currently, we are awaiting all treatment notes, diagnostic test results, procedure reports and initial interview. We expect to make a determination on her claim no later than February 9, 2022.

We apologize for any inconvenience caused by this delay and will make every effort to render a determination as soon as possible. In the interim, should you have any questions pertaining to the status of Ms. Naugle's claim, please contact me at the telephone number below.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

Attachments: 12227902-REQUEST-CLAIMANT PROOF OF DISABILITY/FORMS-12.28.2021

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

| | |
|---|---|
| Date: | December 28, 2021 |
| To: | LAUREN BEST<br>CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | |
| Fax: | (877) 293-8687 |
| From: | Johnna Shorter<br>Senior LTD Technical Claim Specialist II<br>Phone No.: Phone No.: (877) 294-3423<br>Secure Fax No.: (603) 334-7174 |
| Total Pages<br>(Including Cover): | 23 |
| RE:<br><br>Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (877) 294-3423 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

December 28, 2021

Lauren Best
Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

Dear Lauren Best:

The Lincoln National Life Insurance Company is responsible for managing claims for Long Term Disability (LTD) benefits under Siemens's Group Disability Policy. We are writing in reference to Kim Naugle's claim for LTD benefits under the Policy.

We are currently reviewing Ms. Naugle's eligibility for disability benefits, and are in need of additional information.

On December 28, 2021, we requested All treatment notes, diagnostic test results, procedure reports and your entire workers compensation file from your attorney at Crumley Roberts Attorneys at Law. This information is necessary to complete our initial claims investigation. Please provide us with the following information to assist us with our review of Ms. Naugle's eligibility for benefits:

- Office treatment notes, test results, operative reports, prescription histories, and treatment plans from December 23, 2020 through the present from all treating providers

If there are any other attending physicians or specialists, including physical therapy providers, that we are unaware of, please have them forward all medical records pertinent to Ms. Naugle's disability within the timeframe stated above.

Please complete the forms indicated below and return them to our office by February 10, 2022:

X Activities Questionnaire Form
X Agreement Concerning Benefits Form
X Functional Capacities Form

X Authorization - Medical
X Claimant Supplementary Statement
X Family Information Questionnaire
X Functional Status Evaluation
X Training Education Experience
X Workers' Compensation Information Form
X Authorization
__ Combined Claimant Statement**NOT REQUIRED**
__ Other

Siemens's LTD Policy requires that, in order to receive benefits, Ms. Naugle provide proof of disability within a required timeframe. Her cooperation in providing the requested information is essential to our claim investigation.

In the absence of this information, Ms. Naugle's claim may be denied.

We ask that Ms. Naugle provide us with this information no later than February 10, 2022 as required under the terms of the Policy.

If Ms. Naugle has any questions regarding this matter, please contact me.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

Attachments: Activities Questionnaire Form
Agreement Concerning Benefits Form
Functional Capacities Form
Authorization - Medical
Claimant Supplementary Statement
Family Information Questionnaire
Functional Status Evaluation
Training Education Experience
Workers' Compensation Information Form
Authorization
Combined Claimant Statement

# ACTIVITIES QUESTIONNAIRE

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return To:** Johnna Shorter



EMPLOYEE/CLAIMANT NAME: Kim Naugle

CLAIM NO: 12227902 DATE OF BIRTH: ________

EMPLOYER/SPONSOR: Siemens

**TO BE COMPLETED BY THE CLAIMANT:**

Please answer the following questions and return the form to The Lincoln National Life Insurance Company.

How long are you able to:

sit ________ stand ________ walk ________

How many hours a day do you:

sit ________ stand ________ walk ________

Do you take a nap during the day?

Yes________ No ________

If Yes, for how long? ________ At what time of the day?________

How many hours a day do you spend in bed?________

Do you require any assistive devices such as a:

cane ________ walker________ crutches ________ wheelchair ________ other________

How long are you able to sit in a car?________

Do you hold a valid driver's license?

Yes________ No ________

If No, please explain: ________

If Yes, how long are you able to drive a car?________

**Please provide a copy of your driver's license when returning this form.**

How do you maintain contact with people or activities that matter most to you?

________

Do you have children?

Yes________ No ________ If Yes, what are their dates of birth ________

Do you need help caring for your children?

Yes ________ No ________

Are you responsible for taking care of any grandchildren, an elderly parent or grandparent?

Yes________ No ________ If Yes, please explain ________

How many times a day do you leave the house during the week? ________

On the weekends? ________

How often do you run errands? ________

Please describe what errands you most commonly run: ________

________

Lincoln Financial Group®



How often do you get outdoors? ______________________________

Are you left or right hand dominant? Left ________ Right ________

Are you able to work in your garden? Yes ________ No ________

Are you able to work on your house? Yes ________ No ________

Are you able to wash your car? Yes ________ No ________

How much time is spent daily on your home computer?
______ None ______ 0-1 hours ______ 1-2 hours ______ 2-3 hours ______ 3+ hours

How much time is spent weekly on your home computer?
______ None ______ 0-1 hours ______ 1-2 hours ______ 2-3 hours ______ 3+ hours

What activities do you perform on your home computer. Please check all that apply:

______ Pay bills ______ Read news/articles ______ Use search engines ______ Send emails

______ Visit chat rooms ______ Photos Other: ______________________

What computer software applications do you utilize. Please check all that apply:

_____ Word processing (Word) _____ Spreadsheets (Excel) _____ Database (Access) _____ Graphics

_____ Photo software (Photoshop) _____ Programming Other: ______________________

Do you have a working home copy machine/fax machine? ________ Yes ________ No

If yes, please explain purpose and usage: ______________________________

The following questions intend to identify whether or not you are able to independently conduct routine daily activities. If assistance is required, please clarify.

| **How are the following accomplished?** | **By Whom?** | **Assistance Required?** |
|---|---|---|
| Grocery Shopping | | |
| Carrying groceries into the house | | |
| Cooking meals | | |
| Cleaning after meals | | |
| Cleaning bathrooms | | |
| Vacuuming | | |
| Doing the laundry | | |
| Opening and responding to mail | | |
| Managing your finances | | |
| Balancing your checkbook | | |
| Bathing yourself | | |
| Styling your own hair | | |
| Getting dressed | | |
| Going up and down stairs | | |

Have you been confined to a hospital within the last 12 months? Yes ________ No ________

If Yes, please provide reason and hospital contact Information: ______________________________

______________________________

______________________________

Lincoln Financial Group®



How often do you travel or take vacation? ______________________________

Where do you go? How do you get there (transportation method)? ______________________________

______________________________

Are you able to pursue your hobbies? Yes _______ No _______

If Yes, please describe ______________________________

Do you participate in an exercise program? Yes _______ No _______

If Yes, please describe ______________________________

Do you do any Volunteer work? Yes _______ No _______

If Yes:

how many hours per day? __________

how many hours per week? __________

for whom? ______________________________

Are you working for wages? Yes _______ No _______

If Yes, please provide employer's name ______________________________

**Describe in your own words, what prevents you from engaging in any gainful employment.**

______________________________
______________________________
______________________________
______________________________
______________________________

**Please describe your daily routine: (if more space is needed, please use the back of this form)**

______________________________
______________________________
______________________________
______________________________
______________________________

Is there a daytime number where you can be reached in the event we have any questions regarding your responses?

______________________________

In the event we cannot reach you, please provide an alternate contact's name and telephone number.

______________________________

**Upon completion of this form, please sign and date below and return in the envelope provided to you. Thank you for your cooperation.

The above statements are true and complete to the best of my knowledge and belief and I hereby authorize any hospital or physician who has treated me or other person who has attended me or examined me or any company or Government agency to furnish the Insurance Company providing this firm or their representative, any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records. A photo static copy of this form will be as valid as the original. I understand that if this information changes at any time, I will contact Lincoln Financial Group.

Name: ______________________________ Date: ______________________________

Signature: ______________________________

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

# AGREEMENT CONCERNING BENEFITS

Return To: Johnna Shorter

| | |
|---|---|
| Policy No: 03 - 510101 | Claim Number: 12227902 |
| Employer: Siemens | Address |
| Claimant: Kim Naugle | |
| Date of Disability: 12/24/2020 | |

In return for the advance payment of group disability benefits made to me by The Lincoln National Life Insurance Company, which may be in excess of the amount due to me under the terms of Policy number 03 510101 I, for myself, my heirs, executors, administrators and assigns agree:

1) That I am not currently receiving any benefits from Social Security and/or Workers' Compensation.

2) If I apply for Social Security benefits and/or Workers' Compensation benefits I will promptly notify The Lincoln National Life Insurance Company.

3) If I, and/or my spouse and family receive any benefits payments, from Social Security and/or Workers' Compensation, I, and/or my spouse and family will immediately notify by The Lincoln National Life Insurance Company, of such benefit payments and pay back any overpayment resulting from this award in accordance with my Policy provisions.

4) I understand that thereafter The Lincoln National Life Insurance Company is entitled to integrate any amounts received from Social Security and/or Workers' Compensation with the benefits payable under the Policy in accordance with the terms of the Policy.

I understand that The Lincoln National Life Insurance Company in reliance on the above statements and promises, has agreed to advance benefits to me.

Claimant Name (please print)

Address

Signature

Date

***PLEASE RETAIN A COPY FOR YOUR RECORDS, OR ONE MAY BE PROVIDED FOR YOU UPON REQUEST.***

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

# Attending Physician's Assessment of Capacity

| | | |
|---|---|---|
| Kim Naugle | | 12227902 |
| Patient Name | Date of Birth | Claim Number |
| Johnna Shorter | | |
| Case Manager | Date First Treated | Date Last Treated |

**Diagnosis(es)** Contributing to or Causing Impairment

PHYSICAL CAPACITY **(in an average 8-hour workday)**

| | **Constant** (Over 5 1/2 Hours / Day or Over 40 Min. / Hour) | **Frequent** (Up to 5 1/2 Hours / Day or Up to 40 Minutes / Hour) | **Occasional** (Up to 2 1/2 Hours / Day or Up to 20 Minutes / Hour) |
|---|---|---|---|
| Sitting | | | |
| Standing | | | |
| Walking | | | |
| Driving | | | |
| Climbing | | | |
| Squatting | | | |
| Bending | | | |
| Kneeling | | | |
| Push / Pull | | | |
| Light Grasping | | | |
| Force Grasping | | | |

| | **Constant** (Over 5 1/2 Hours / Day or Over 40 Min. / Hour) | **Frequent** (Up to 5 1/2 Hours / Day or Up to 40 Minutes / Hour) | **Occasional** (Up to 2 1/2 Hours / Day or Up to 20 Minutes / Hour) |
|---|---|---|---|
| Fingering / Typing | | | |
| Reaching Overhead | | | |
| Reaching Below Shoulders | | | |
| | | | |
| Lifting: | | | |
| Up to 10 lbs. | | | |
| Up to 20 lbs. | | | |
| Up to 30 lbs. | | | |
| Up to 40 lbs. | | | |
| Up to 50 lbs. | | | |
| Over 50 lbs. | | | |

| | |
|---|---|
| Are there additional restrictions / limitations not captured in the table above? Please list. Also, if any of the above capacities are never, please list the capacity and rationale. | |

| | | | | | |
|---|---|---|---|---|---|
| How long will these restrictions be imposed? | | Can your patient function in an occupational setting full time **within the capacities noted above**? | ☐ Yes<br>☐ No | If your patient cannot function in an occupational setting now, when will he / she be able to? | |

| | |
|---|---|
| If your patient cannot function in an occupational setting at this time, please outline your medical and functional treatment plan to facilitate return to work. | |

| | | | |
|---|---|---|---|
| Please indicate what your opinions regarding restrictions / limitations and work capacity are based on? | ☐ Clinical Experience<br>☐ Specialty Training<br>☐ Diagnostic Tests | ☐ Patient's Self-Report<br>☐ Direct Observation<br>☐ Clinical Examination | ☐ Functional Eval. (FCE)<br>☐ Other (Please List): ____ |

| | | | | | |
|---|---|---|---|---|---|
| If your patient is unable to work, what is the single most important barrier preventing your patient from returning to work? | ☐ Uncontrolled Pain | ☐ Unstable Medical Status | ☐ Patient's Motivation | ☐ Psychiatric Co-Morbid(s) | ☐ Other (List): ____ |

| | | |
|---|---|---|
| Provider's Name (Please Print) | Degree *AND* Area of Specialty | Social Security or Tax ID Number |
| Street Address | Telephone Number | Fax Number |
| City, State & Zip Code | Signature | Date |

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

# AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator, and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed**: This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) ______________________________

Name of legal representative, if applicable (print) ______________________________ Relationship ____________________

Signature of claimant or legal representative ______________________________ Date: ____________________

Date of Birth: __ ________ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original.**

# CLAIMANT SUPPLEMENTARY STATEMENT

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return to:** Johnna Shorter

**EMPLOYEE/CLAIMANT NAME:** Kim Naugle **CLAIM #:** 12227902
**EMPLOYER:** Siemens **DATE OF BIRTH:**

| | | | |
|---|---|---|---|
| Full Name (Last, First, Middle Int.) | Social Security # | Email Address | |
| Street Address | City | State | Zip Code |
| Telephone Number (include area code) | Cell Phone Number (include area code) | Marital Status | |
| Spouse's Full Name and Date of Birth | Number of Children | Dates of Birth of Children | |

Next of Kin/Emergency Contact (required should additional benefits be payable in the event of your death).
Name Relationship to you? Tel #.

Have you returned to any type of employment or activity that provides you money? If yes, please provide name of employer, start date, hours worked per/wk and rate of pay.

Do you own a business, or are you involved or affiliated with any type of business, corporation, partnership, or sole proprietary? If yes, please explain and provide proof of income from prior year.

Do you have a tax identification number (TIN) or employer identification number (EIN)? If yes, for what purpose?

Do you hold a professional license? If yes, for what purpose?

Are you associated with an Internet business of any kind? Do you have a website? If yes, please explain and provide website address(es) and the date started.

Are you pursuing money from a third party or involved in any litigation? If yes, please explain why and provide your attorney's contact information.

Are you pursuing moneys from a third party: Workers' Compensation Carrier, Insurance Co., or Individual? If yes, please explain.

Identify other income you are receiving or for which you have applied. You have an ongoing obligation to notify us immediately of receipt of any other income or any other changes to this information, including supporting documentation confirming the amount you receive and the effective date:

| Yes | No | Type | Amount per Week/Month | Date Began Receiving | Date Ceased Receiving | Date Income Applied for |
|---|---|---|---|---|---|---|
| ☐ | ☐ | Wages/ Income/ Money/ Unemployment | $ | | | |
| ☐ | ☐ | Social Security (disability or retirement) | $ | | | |
| ☐ | ☐ | Social Security (for your spouse/dependents) | $ | | | |
| ☐ | ☐ | Short Term Disability or State Disability | $ | | | |
| ☐ | ☐ | Pension or Retirement benefits (lump sum/ongoing) | $ | | | |
| ☐ | ☐ | Workers' Compensation | $ | | | |
| ☐ | ☐ | Severance or Employment Separation payment (provide Agreement) | $ | | | |
| ☐ | ☐ | Other income/money/benefit (describe) ______________ | | | | |

**If my claim is overpaid, I understand and agree that Lincoln Financial Group has the right to recover such overpayment from me, including the right to reduce future disability benefits, or pursue other collection methods as appropriate. The above statements are true and complete to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, or deceive Lincoln Financial Group and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law. A photo static copy of this form will be valid as the original.**

**EMPLOYEE'S PRINTED NAME:** ______________________________

**DATE:**____________________ **EMPLOYEE'S SIGNATURE:** ______________________________

DP 409

# Family Information Questionnaire

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return to:** Johnna Shorter

EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902
EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ____________

To document your Long Term Disability Claim file and properly administer benefits, we need the following information. Please complete and return this form in the envelope provided. Thank you for your prompt attention to this request for information.

What is your marital status? Single ______ Married ______ Divorced ______
If married, please indicate your spouse's name and date of birth. Name: ______________________ DOB: _________

Do you have children or dependents*? Yes _____ No _____
If yes, please provide additional details below, using additional space as needed.
* An eligible dependent may include:

- Biological child(ren)
- Stepchildren
- Children not residing in your household
- Custodial Grandchildren
- A child 18 or older with a disability that started before age 22
- Adopted Children
- A child 18-19 and a full-time student (not higher than grade 12)

| Name | DOB | If Divorced or Separated, Indicate Custodial or Non-Custodial | High School Student? Yes or No | Anticipated/Actual Last Month/Year of High School |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Is your spouse and/or children receiving Social Security benefits? Yes: __________ No: __________
If yes, please complete the information below and include a copy of their Social Security Award Certificate(s).

If no, however, they were previously receiving Social Security benefits in the past and are no longer, please include a copy of the Social Security Termination notice (s), if this information has not already been provided to The Lincoln National Life Insurance Company.

| Name | DOB | Awarded as: Dependent, Spouse or Disabled | Current Monthly Benefit Amount | Date of Entitlement to Benefits | Benefit Termination Date (if applicable) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Your Name: ________________________________________ Date: ____________________

## FUNCTIONAL MENTAL STATUS EVALUATION FORM

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return To:** Johnna Shorter



EMPLOYEE/CLAIMANT NAME: Kim Naugle

CLAIM NO: 12227902

EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ______

**TO BE COMPLETED BY CLINICIAN:**

Please provide a complete description of your patient's current Mental Status Exam in the following areas. Also, please attach a copy of your clinical progress notes and a copy of the treatment plan that is sent to the medical insurance company.

**Patient's description of Job Title and duties:** ______

**GENERAL APPEARANCE:** (physical characteristics/grooming, etc.)

______

**EMOTIONAL STATE:** (mood and affect)

______

**EXPERIENCES:** (describe hallucinations/delusions)

______

**SENSORIUM:** (level of alertness, patient's orientation)

______

**MEMORY:** (Define status and what testing determines impairment)

**Immediate:** ______

**Short Term:** ______

**Long Term:** ______

Lincoln Financial Group®



**COGNITION:** (Define status and what testing determines impairment)

**JUDGMENT AND INSIGHT:** (What evidence supports impairment?)

**RISK BEHAVIORS:**

Suicidal thoughts, plans, actions ____________________

Homicidal thoughts, plans, actions ____________________

**SUBSTANCE ABUSE:** (abuse, dependency)

**In what way do the above symptoms interfere with the person's ability to function in a work setting?**

**What functional abilities are still retained?**

**What job tasks can this person perform?**

**What kind of work settings can the patient perform in, at this time, despite the limitations above?**

Lincoln Financial Group®

**How is work readiness being measured? How will you include return to work in the short term goals of the treatment plan?**

Goal: ____________ Success Indicator: ____________ Timeline: ____________

**Diagnosis (DSM-5)**

If psychotherapy is indicated, what is the modality, frequency, name of provider and phone number?

List all current medications:

| | | | | |
|---|---|---|---|---|
| ____________ | Dosage: ______ | Frequency: ______ | Begin Date: ______ | End Date: ______ |
| ____________ | Dosage: ______ | Frequency: ______ | Begin Date: ______ | End Date: ______ |
| ____________ | Dosage: ______ | Frequency: ______ | Begin Date: ______ | End Date: ______ |
| ____________ | Dosage: ______ | Frequency: ______ | Begin Date: ______ | End Date: ______ |

Next scheduled office visit: ____________________

Comments:

| Examiner's Name (Please Print) | Title/Specialty | Tax ID# | Telephone No. | Fax No. |
|---|---|---|---|---|

Signature required: ______________________ Date: ____________

# TRAINING-EDUCATION-EXPERIENCE FORM (TEE)

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902
EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ________

**Please fill out each section completely**

**EDUCATIONAL BACKGROUND: (If you have a resume, please attach)**

Highest Grade Completed: ________ Check if earned: ☐ GED ☐ HS Diploma

Vocational Training: ________ Certificate Program completed: ________

Associates Degree: ________ College: number of years: ________

Bachelor's Degree: BA /BS Major: ________ Graduate School: MA ☐ MS ☐ CAGS ☐ PHD Degree: ________

Professional Training, License, Certificates(s): ________

Are you currently attending any classes: ☐ Y ☐ N If yes, provide name of school: ________

List any other Training or Classes Attended or Plan to Attend: ________

Primary language spoken: ________ Other language(s) spoken fluently: ________

Additional Skills, Hobbies & Volunteer Work ________

Did you serve in the Armed Forces? ☐ Y ☐ N From: ________ To: ________

Branch of Service: ________ Specialty: ________

**WORK EXPERIENCE:** (If you've held different positions for the same employer, please include them below)
Please list chronologically (starting with the most recent) all the jobs/positions you have held in the past 15 years.
(add additional pages if needed for a complete work history).

1. Company: ________ Department: ________ From: ________ To: ________
   Job Title(s): ________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties/Physical Requirements (please be specific): ________

2. Company: ________ Department: ________ From: ________ To: ________
   Job Title(s): ________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific): ________

3. Company: ______________________ Department: ______________________ From: __________ To:

Job Title(s): ____________________________________________________________

Supervisory Experience ☐ Y ☐ N

Tasks/Duties (please be specific): ______________________________________________

_______________________________________________________________________

4. Company: ______________________ Department: ______________________ From: __________ To: ________

Job Title(s): ____________________________________________________________

Supervisory Experience ☐ Y ☐ N

Tasks/Duties (please be specific): ______________________________________________

_______________________________________________________________________

5. Company: ______________________ Department: ______________________ From: __________ To: ________

Job Title(s): ____________________________________________________________

Supervisory Experience ☐ Y ☐ N

Tasks/Duties (please be specific): ______________________________________________

_______________________________________________________________________

**Computer Utilization:**

Computer Training/Courses, Certifications: ______________________________________

| | Home | Work | | Home | Work |
|---|---|---|---|---|---|
| Email | ☐ | ☐ | Graphics Software | ☐ | ☐ |
| Internet | ☐ | ☐ | Installation/Repair Hardware | ☐ | ☐ |
| Word Processing (MS Word) | ☐ | ☐ | Installation/Repair Programming | ☐ | ☐ |
| Spread Sheet (MS Excel) | ☐ | ☐ | Project Management | ☐ | ☐ |
| Database | ☐ | ☐ | Other: ____________ | | |
| Photo Software | ☐ | ☐ | | | |

How much time is spent daily on your work computer? ☐ None ☐ 1-2 hours ☐ 2-3 hours ☐ 3+ hours

How much time is spent daily on your home computer? ☐ None ☐ 1-2 hours ☐ 2-3 hours ☐ 3+ hours

Keyboarding/Typing Experience: ☐ Yes ☐ No If yes, WPM (words per minute) ______________

(We recommend- http://typingtest.com to determine WPM)

Please provide your email address: Personal: ____________________ Work: ____________________

**SIGNATURE:** ______________________ **PHONE NO: (     )** ______________________

# Workers' Compensation
# INFORMATION FORM

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Return To: Johnna Shorter

EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902
EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ______

We received your disability claim form. The form indicates that your disability is the result of a work related Injury/Sickness. Please provide the following information and return this form to my attention in order to avoid any delay in processing.

1. Date of Injury/Sickness: ______
2. Location of Injury (please provide complete address): ______
3. Description of Injury/Sickness (please include copy of accident report): ______

4. Please provide the name of your Employer:
   Company Name: ______
   Address: ______
   Supervisor Name: ______ Telephone: ( ) ______
5. Please provide the name of your Employer's Workers' Compensation Carrier or Administrator:
   Insurance Carrier: ______
   Address: ______
   Telephone: ( ) ______
   Claim Representative: ______
6. Are you collecting benefits from your Employer's Workers' Compensation Insurance Company or Administrator?
   Yes ☐ No ☐
   If "Yes": Weekly Benefit Amount $ ______
   Claim No.: ______
7. Are you using the services of an attorney?
   Yes ☐ No ☐
   If "Yes": Name: ______
   Address: ______
   Telephone: ( ) ______

SIGNATURE: ______ DATE: ______

DP 539D – Rev. 12/02

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

# AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**
**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator and any insurance support organizations.
**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.
**Description of the information that may be used or disclosed**: This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.
**The information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**
**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.
**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.
**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Name of claimant (print) ______________________________

Name of legal representative, if applicable (print) ______________________ Relationship __________

Signature of claimant or legal representative ______________________ Date: __________

Date of Birth: ______________ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original**

# COMBINED CLAIMANT STATEMENT

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Return to: Johnna Shorter

EMPLOYEE/CLAIMANT NAME: Kim Naugle ____ CLAIM #: 12227902 ____
EMPLOYER: Siemens ____ DATE OF BIRTH ____

Full Name (Last, First, Middle Int.) ____ Social Security # ____ Email Address ____

Street Address ____ City ____ State ____ Zip Code ____

Telephone Number (include area code) ____ Cell Phone Number (include area code) ____

Marital Status ____ Spouse's Full Name and Date of Birth ____

Number of Children ____ Dates of Birth of Children ____

Next of Kin/Emergency Contact (required should additional benefits be payable in the event of your death):

Name ____ Relationship to you? ____ Tel #. ____

List the names, addresses, and telephone numbers of doctors you see regularly:

Name: ____
Street Address: ____
City, State, Zip: ____
For what condition?: ____
How often?: ____

Name: ____
Street Address: ____
City, State, Zip: ____
For what condition?: ____
How often?: ____

Do you require any assistive devices such as a: cane ____ walker ____ crutches ____ wheelchair ____ other: ____

How many times a day do you leave the house during the week? ____ On the weekends? ____

How often do you get outdoors? ____

Are you left or right hand dominant? Left ____ Right ____

Have you been confined to a hospital within the last 12 months? Yes ____ No ____

If yes, please explain: ____

Are you able to pursue your hobbies? Yes ____ No ____

If yes, please describe ____

Do you do any Volunteer work? Yes ____ No ____

If yes, how many hours per day? ____, per week? ____

For whom? ____

Have you experienced any memory/concentration problems? Yes ____ No ____

If yes, please provide an example

____

**The following questions intend to identify whether or not you are able to <u>independently</u> conduct routine daily activities. If assistance is required, please clarify.**

| How are the following accomplished? | By Whom? | Assistance Required? |
|---|---|---|
| Grocery Shopping | | |
| Cooking meals | | |
| Cleaning bathrooms | | |
| Vacuuming | | |
| Doing the laundry | | |
| Managing your finances | | |
| Balancing your checkbook | | |
| Bathing yourself | | |
| Getting dressed | | |
| Feeding yourself | | |
| Using the bathroom yourself | | |
| Going up and down stairs | | |

Describe in your own words, what prevents you from engaging in any gainful employment.

Please describe your daily routine:

Have you returned to any type of employment or activity that provides you money? If yes, please provide name of employer, start date, hours worked per/wk and rate of pay.

Do you own a business, or are you involved or affiliated with any type of business, corporation, partnership, or sole proprietary?

If yes, please explain and provide proof of income from prior year.

Do you have a tax identification number (TIN) or employer identification number (EIN)? If yes, for what purpose?

Do you hold a professional license? If yes, for what purpose?

Are you associated with an Internet business of any kind? Do you have a website? If yes, please explain and provide website address(es) and the date started.

Are you pursuing money from a third party or involved in any litigation? If yes, please explain why and provide your attorney's contact information.

Are you pursuing moneys from a third party: **Workers' Compensation** Carrier, Insurance Co., or Individual? If yes, please explain.

**Identify other income you are receiving or for which you have applied. You have an ongoing obligation to notify us immediately of receipt of any other income or any other changes to this information, including supporting documentation confirming the amount you receive and the effective date:**

| Yes | No | Type | Amount per Week/Month | Date Began Receiving | Date Ceased Receiving | Date Income Applied for |
|---|---|---|---|---|---|---|
| ☐ | ☐ | Wages/ Income/ Money/ Unemployment | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Social Security (disability or retirement) | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Social Security (for your spouse/dependents) | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Short Term Disability or State Disability | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Pension or Retirement benefits (lump sum/ongoing) | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | **Workers' Compensation** | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Severance or Employment Separation payment (provide Agreement) | $ ________ | ________ | ________ | ________ |
| ☐ | ☐ | Other income/money/benefit (describe) ____________________ | $ ________ | ________ | ________ | ________ |

If my claim is overpaid, I understand and agree that Lincoln Financial Group has the right to recover such overpayment from me, including the right to reduce future disability benefits, or pursue other collection methods as permitted by law. The above statements are true and complete to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, or deceive Lincoln Financial Group and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law. A photo static copy of this form will be valid as the original.

The above statements are true and complete to the best of my knowledge and belief and I hereby authorize any hospital or physician who has treated me or other person who has attended me or examined me or any company or Government agency to furnish the Insurance Company providing this firm or their representative, any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records. A photostatic copy of this form will be as valid as the original. I understand that if this information changes at any time, I will contact Lincoln Financial Group.

EMPLOYEE'S PRINTED NAME: ______________________________________________

DATE: ________________ EMPLOYEE'S SIGNATURE: ______________________________________________

DP 408

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

| | |
|---|---|
| Date: | January 21, 2022 |
| To: | LAUREN BEST<br>CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | Medical records |
| Fax: | (877) 293-8687 |
| From: | Johnna Shorter<br>Senior LTD Technical Claim Specialist II<br>Phone No.: Phone No.: (877) 294-3423<br>Secure Fax No.: (603) 334-7174 |
| Total Pages (Including Cover): | 26 |
| RE: | Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (877) 294-3423 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

January 21, 2022

Lauren Best
Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

Dear Lauren Best:

The Lincoln National Life Insurance Company is responsible for managing claims for benefits under the Siemens Long Term Disability (LTD) Insurance Policy.

The purpose of this letter is to inform Ms. Naugle that we require additional time to render a determination on her LTD claim. Under the Employee Retirement Income Security Act of 1974 (ERISA), an initial claim determination should be rendered within 45 days of receipt of claim, unless there are special circumstances which require a delay in making a claim determination. If additional time is needed, ERISA allows for up to two 30-day extensions to evaluate and render a claim decision.

At this time, we need additional information which is necessary to render a full and fair determination on Ms. Naugle's LTD claim for benefits under the Policy. Currently, we are awaiting all treatment notes, diagnostic test results, procedure reports and initial interview. We expect to make a determination on her claim no later than February 9, 2022.

We apologize for any inconvenience caused by this delay and will make every effort to render a determination as soon as possible. In the interim, should you have any questions pertaining to the status of Ms. Naugle's claim, please contact me at the telephone number below.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

Attachments: 12227902-REQUEST-CLAIMANT PROOF OF DISABILITY/FORMS-12.28.2021

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

| | |
|---|---|
| Date: | December 28, 2021 |
| To: | LAUREN BEST<br>CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | |
| Fax: | (877) 293-8687 |
| From: | Johnna Shorter<br>Senior LTD Technical Claim Specialist II<br>Phone No.: Phone No.: (877) 294-3423<br>Secure Fax No.: (603) 334-7174 |
| Total Pages<br>(Including Cover): | 23 |
| RE: | Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (877) 294-3423 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

December 28, 2021

Lauren Best
Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

Dear Lauren Best:

The Lincoln National Life Insurance Company is responsible for managing claims for Long Term Disability (LTD) benefits under Siemens's Group Disability Policy. We are writing in reference to Kim Naugle's claim for LTD benefits under the Policy.

We are currently reviewing Ms. Naugle's eligibility for disability benefits, and are in need of additional information.

On December 28, 2021, we requested All treatment notes, diagnostic test results, procedure reports and your entire workers compensation file from your attorney at Crumley Roberts Attorneys at Law. This information is necessary to complete our initial claims investigation. Please provide us with the following information to assist us with our review of Ms. Naugle's eligibility for benefits:

- Office treatment notes, test results, operative reports, prescription histories, and treatment plans from December 23, 2020 through the present from all treating providers

If there are any other attending physicians or specialists, including physical therapy providers, that we are unaware of, please have them forward all medical records pertinent to Ms. Naugle's disability within the timeframe stated above.

Please complete the forms indicated below and return them to our office by February 10, 2022:

X Activities Questionnaire Form
X Agreement Concerning Benefits Form
X Functional Capacities Form

X Authorization - Medical
X Claimant Supplementary Statement
X Family Information Questionnaire
X Functional Status Evaluation
X Training Education Experience
X Workers' Compensation Information Form
X Authorization
__ Combined Claimant Statement**NOT REQUIRED**
__ Other

Siemens's LTD Policy requires that, in order to receive benefits, Ms. Naugle provide proof of disability within a required timeframe. Her cooperation in providing the requested information is essential to our claim investigation.

In the absence of this information, Ms. Naugle's claim may be denied.

We ask that Ms. Naugle provide us with this information no later than February 10, 2022 as required under the terms of the Policy.

If Ms. Naugle has any questions regarding this matter, please contact me.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

Attachments: Activities Questionnaire Form
Agreement Concerning Benefits Form
Functional Capacities Form
Authorization - Medical
Claimant Supplementary Statement
Family Information Questionnaire
Functional Status Evaluation
Training Education Experience
Workers' Compensation Information Form
Authorization
Combined Claimant Statement

## ACTIVITIES QUESTIONNAIRE

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return To:** Johnna Shorter ______



EMPLOYEE/CLAIMANT NAME: Kim Naugle ______

CLAIM NO: 12227902 ______ DATE OF BIRTH: ______

EMPLOYER/SPONSOR: Siemens ______

**TO BE COMPLETED BY THE CLAIMANT:**

Please answer the following questions and return the form to The Lincoln National Life Insurance Company.

How long are you able to:

sit ______ stand ______ walk ______

How many hours a day do you:

sit ______ stand ______ walk ______

Do you take a nap during the day?

Yes______ No ______

If Yes, for how long? ______ At what time of the day?______

How many hours a day do you spend in bed?______

Do you require any assistive devices such as a:

cane ______ walker______ crutches ______ wheelchair ______ other______

How long are you able to sit in a car?______

Do you hold a valid driver's license?

Yes______ No ______

If No, please explain: ______

If Yes, how long are you able to drive a car?______

**Please provide a copy of your driver's license when returning this form.**

How do you maintain contact with people or activities that matter most to you?

______

Do you have children?

Yes______ No ______ If Yes, what are their dates of birth ______

______

Do you need help caring for your children?

Yes ______ No ______

Are you responsible for taking care of any grandchildren, an elderly parent or grandparent?

Yes______ No ______ If Yes, please explain ______

How many times a day do you leave the house during the week? ______

On the weekends? ______

How often do you run errands? ______

Please describe what errands you most commonly run: ______

______

Lincoln Financial Group®



How often do you get outdoors? ______________________________

Are you left or right hand dominant? Left ________ Right ________

Are you able to work in your garden? Yes ________ No ________

Are you able to work on your house? Yes ________ No ________

Are you able to wash your car? Yes ________ No ________

How much time is spent daily on your home computer?
_______ None _______ 0-1 hours _______ 1-2 hours _______ 2-3 hours _______ 3+ hours

How much time is spent weekly on your home computer?
_______ None _______ 0-1 hours _______ 1-2 hours _______ 2-3 hours _______ 3+ hours

What activities do you perform on your home computer. Please check all that apply:

_______ Pay bills _______ Read news/articles _______ Use search engines _______ Send emails

_______ Visit chat rooms _______ Photos Other: ______________________

What computer software applications do you utilize. Please check all that apply:

______ Word processing (Word) ______ Spreadsheets (Excel) ______ Database (Access) ______ Graphics

______ Photo software (Photoshop) ______ Programming Other: ______________________

Do you have a working home copy machine/fax machine? ________ Yes ________ No

If yes, please explain purpose and usage: ______________________________

The following questions intend to identify whether or not you are able to independently conduct routine daily activities. If assistance is required, please clarify.

| **How are the following accomplished?** | **By Whom?** | **Assistance Required?** |
|---|---|---|
| Grocery Shopping | | |
| Carrying groceries into the house | | |
| Cooking meals | | |
| Cleaning after meals | | |
| Cleaning bathrooms | | |
| Vacuuming | | |
| Doing the laundry | | |
| Opening and responding to mail | | |
| Managing your finances | | |
| Balancing your checkbook | | |
| Bathing yourself | | |
| Styling your own hair | | |
| Getting dressed | | |
| Going up and down stairs | | |

Have you been confined to a hospital within the last 12 months? Yes ________ No ________

If Yes, please provide reason and hospital contact Information: ______________________________

______________________________

______________________________

How often do you travel or take vacation? ______________________________

Where do you go? How do you get there (transportation method)? ______________________________

______________________________

Are you able to pursue your hobbies? Yes _______ No _______

If Yes, please describe ______________________________

Do you participate in an exercise program? Yes _______ No _______

If Yes, please describe ______________________________

Do you do any Volunteer work? Yes _______ No _______

If Yes:

how many hours per day? __________

how many hours per week? __________

for whom? ______________________________

Are you working for wages? Yes _______ No _______

If Yes, please provide employer's name ______________________________

**Describe in your own words, what prevents you from engaging in any gainful employment.**

______________________________
______________________________
______________________________
______________________________
______________________________

**Please describe your daily routine: (if more space is needed, please use the back of this form)**

______________________________
______________________________
______________________________
______________________________
______________________________

Is there a daytime number where you can be reached in the event we have any questions regarding your responses?

______________________________

In the event we cannot reach you, please provide an alternate contact's name and telephone number.

______________________________

**Upon completion of this form, please sign and date below and return in the envelope provided to you. Thank you for your cooperation.

The above statements are true and complete to the best of my knowledge and belief and I hereby authorize any hospital or physician who has treated me or other person who has attended me or examined me or any company or Government agency to furnish the Insurance Company providing this firm or their representative, any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records. A photo static copy of this form will be as valid as the original. I understand that if this information changes at any time, I will contact Lincoln Financial Group.

Name: ______________________________ Date: ______________________________

Signature: ______________________________

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

# AGREEMENT CONCERNING BENEFITS

Return To: Johnna Shorter

Policy No: 03 - 510101 Claim Number: 12227902

Employer: Siemens Address

Claimant: Kim Naugle

Date of Disability: 12/24/2020

In return for the advance payment of group disability benefits made to me by The Lincoln National Life Insurance Company, which may be in excess of the amount due to me under the terms of Policy number 03 510101 I, for myself, my heirs, executors, administrators and assigns agree:

1) That I am not currently receiving any benefits from Social Security and/or Workers' Compensation.

2) If I apply for Social Security benefits and/or Workers' Compensation benefits I will promptly notify The Lincoln National Life Insurance Company.

3) If I, and/or my spouse and family receive any benefits payments, from Social Security and/or Workers' Compensation, I, and/or my spouse and family will immediately notify by The Lincoln National Life Insurance Company, of such benefit payments and pay back any overpayment resulting from this award in accordance with my Policy provisions.

4) I understand that thereafter The Lincoln National Life Insurance Company is entitled to integrate any amounts received from Social Security and/or Workers' Compensation with the benefits payable under the Policy in accordance with the terms of the Policy.

I understand that The Lincoln National Life Insurance Company in reliance on the above statements and promises, has agreed to advance benefits to me.

Claimant Name (please print)

Address

Signature

Date

***PLEASE RETAIN A COPY FOR YOUR RECORDS, OR ONE MAY BE PROVIDED FOR YOU UPON REQUEST.***

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

# Attending Physician's Assessment of Capacity

| | | |
|---|---|---|
| Kim Naugle | | 12227902 |
| Patient Name | Date of Birth | Claim Number |
| Johnna Shorter | | |
| Case Manager | Date First Treated | Date Last Treated |

**Diagnosis(es)** Contributing to or Causing Impairment

**PHYSICAL CAPACITY (in an average 8-hour workday)**

| | **Constant** (Over 5 1/2 Hours / Day or Over 40 Min. / Hour) | **Frequent** (Up to 5 1/2 Hours / Day or Up to 40 Minutes / Hour) | **Occasional** (Up to 2 1/2 Hours / Day or Up to 20 Minutes / Hour) |
|---|---|---|---|
| Sitting | | | |
| Standing | | | |
| Walking | | | |
| Driving | | | |
| Climbing | | | |
| Squatting | | | |
| Bending | | | |
| Kneeling | | | |
| Push / Pull | | | |
| Light Grasping | | | |
| Force Grasping | | | |

| | **Constant** (Over 5 1/2 Hours / Day or Over 40 Min. / Hour) | **Frequent** (Up to 5 1/2 Hours / Day or Up to 40 Minutes / Hour) | **Occasional** (Up to 2 1/2 Hours / Day or Up to 20 Minutes / Hour) |
|---|---|---|---|
| Fingering / Typing | | | |
| Reaching Overhead | | | |
| Reaching Below Shoulders | | | |
| | | | |
| Lifting: | | | |
| Up to 10 lbs. | | | |
| Up to 20 lbs. | | | |
| Up to 30 lbs. | | | |
| Up to 40 lbs. | | | |
| Up to 50 lbs. | | | |
| Over 50 lbs. | | | |

| | |
|---|---|
| Are there additional restrictions / limitations not captured in the table above? Please list. Also, if any of the above capacities are never, please list the capacity and rationale. | |

| | | | | | |
|---|---|---|---|---|---|
| How long will these restrictions be imposed? | | Can your patient function in an occupational setting full time **within the capacities noted above**? | ☐ Yes<br>☐ No | If your patient cannot function in an occupational setting now, when will he / she be able to? | |

| | |
|---|---|
| If your patient cannot function in an occupational setting at this time, please outline your medical and functional treatment plan to facilitate return to work. | |

| | | | |
|---|---|---|---|
| Please indicate what your opinions regarding restrictions / limitations and work capacity are based on? | ☐ Clinical Experience<br>☐ Specialty Training<br>☐ Diagnostic Tests | ☐ Patient's Self-Report<br>☐ Direct Observation<br>☐ Clinical Examination | ☐ Functional Eval. (FCE)<br>☐ Other (Please List): |

| | | | | | |
|---|---|---|---|---|---|
| If your patient is unable to work, what is the single most important barrier preventing your patient from returning to work? | ☐ Uncontrolled Pain | ☐ Unstable Medical Status | ☐ Patient's Motivation | ☐ Psychiatric Co-Morbid(s) | ☐ Other (List): |

| | | |
|---|---|---|
| Provider's Name (Please Print) | Degree *AND* Area of Specialty | Social Security or Tax ID Number |
| Street Address | Telephone Number | Fax Number |
| City, State & Zip Code | Signature | Date |

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

## AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**
**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator, and any insurance support organizations.
**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.
**Description of the information that may be used or disclosed**: This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**
**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.
**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.
This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) ____________________________________

Name of legal representative, if applicable (print) ________________________________ Relationship ___________________

Signature of claimant or legal representative ______________________________________ Date: _____________________

Date of Birth: __ ________ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original.**



**Lincoln/Naugle 0505**

# CLAIMANT SUPPLEMENTARY STATEMENT

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return to:** Johnna Shorter

**EMPLOYEE/CLAIMANT NAME:** Kim Naugle **CLAIM #:** 12227902
**EMPLOYER:** Siemens **DATE OF BIRTH:**

| | | | |
|---|---|---|---|
| Full Name (Last, First, Middle Int.) | Social Security # | Email Address | |
| Street Address | City | State | Zip Code |
| Telephone Number (include area code) | Cell Phone Number (include area code) | Marital Status | |
| Spouse's Full Name and Date of Birth | Number of Children | Dates of Birth of Children | |

Next of Kin/Emergency Contact (required should additional benefits be payable in the event of your death).
Name Relationship to you? Tel #.

Have you returned to any type of employment or activity that provides you money? If yes, please provide name of employer, start date, hours worked per/wk and rate of pay.

Do you own a business, or are you involved or affiliated with any type of business, corporation, partnership, or sole proprietary? If yes, please explain and provide proof of income from prior year.

Do you have a tax identification number (TIN) or employer identification number (EIN)? If yes, for what purpose?

Do you hold a professional license? If yes, for what purpose?

Are you associated with an Internet business of any kind? Do you have a website? If yes, please explain and provide website address(es) and the date started.

Are you pursuing money from a third party or involved in any litigation? If yes, please explain why and provide your attorney's contact information.

Are you pursuing moneys from a third party: Workers' Compensation Carrier, Insurance Co., or Individual? If yes, please explain.

Identify other income you are receiving or for which you have applied. You have an ongoing obligation to notify us immediately of receipt of any other income or any other changes to this information, including supporting documentation confirming the amount you receive and the effective date:

| Yes | No | Type | Amount per Week/Month | Date Began Receiving | Date Ceased Receiving | Date Income Applied for |
|---|---|---|---|---|---|---|
| ☐ | ☐ | Wages/ Income/ Money/ Unemployment | $ | | | |
| ☐ | ☐ | Social Security (disability or retirement) | $ | | | |
| ☐ | ☐ | Social Security (for your spouse/dependents) | $ | | | |
| ☐ | ☐ | Short Term Disability or State Disability | $ | | | |
| ☐ | ☐ | Pension or Retirement benefits (lump sum/ongoing) | $ | | | |
| ☐ | ☐ | Workers' Compensation | $ | | | |
| ☐ | ☐ | Severance or Employment Separation payment (provide Agreement) | $ | | | |
| ☐ | ☐ | Other income/money/benefit (describe) ______________ | | | | |

**If my claim is overpaid, I understand and agree that Lincoln Financial Group has the right to recover such overpayment from me, including the right to reduce future disability benefits, or pursue other collection methods as appropriate. The above statements are true and complete to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, or deceive Lincoln Financial Group and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law. A photo static copy of this form will be valid as the original.**

**EMPLOYEE'S PRINTED NAME:** ____________________

**DATE:**____________________ **EMPLOYEE'S SIGNATURE:** ____________________

DP 409

# Family Information Questionnaire

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return to:** Johnna Shorter

EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902
EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ____________

To document your Long Term Disability Claim file and properly administer benefits, we need the following information. Please complete and return this form in the envelope provided. Thank you for your prompt attention to this request for information.

What is your marital status? Single ______ Married ______ Divorced ______
If married, please indicate your spouse's name and date of birth. Name: ______________________ DOB: _________

Do you have children or dependents*? Yes ______ No ______
If yes, please provide additional details below, using additional space as needed.
* An eligible dependent may include:

- Biological child(ren)
- Stepchildren
- Children not residing in your household
- Custodial Grandchildren
- A child 18 or older with a disability that started before age 22
- Adopted Children
- A child 18-19 and a full-time student (not higher than grade 12)

| Name | DOB | If Divorced or Separated, Indicate Custodial or Non-Custodial | High School Student? Yes or No | Anticipated/Actual Last Month/Year of High School |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Is your spouse and/or children receiving Social Security benefits? Yes: ___________ No: ___________
If yes, please complete the information below and include a copy of their Social Security Award Certificate(s).

If no, however, they were previously receiving Social Security benefits in the past and are no longer, please include a copy of the Social Security Termination notice (s), if this information has not already been provided to The Lincoln National Life Insurance Company.

| Name | DOB | Awarded as: Dependent, Spouse or Disabled | Current Monthly Benefit Amount | Date of Entitlement to Benefits | Benefit Termination Date (if applicable) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Your Name: ______________________________________ Date: ____________________

# FUNCTIONAL MENTAL STATUS EVALUATION FORM

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return To:** Johnna Shorter



EMPLOYEE/CLAIMANT NAME: Kim Naugle

CLAIM NO: 12227902

EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ______

**TO BE COMPLETED BY CLINICIAN:**
Please provide a complete description of your patient's current Mental Status Exam in the following areas. Also, please attach a copy of your clinical progress notes and a copy of the treatment plan that is sent to the medical insurance company.

**Patient's description of Job Title and duties:** ______

**GENERAL APPEARANCE:** (physical characteristics/grooming, etc.)

______

**EMOTIONAL STATE:** (mood and affect)

______

**EXPERIENCES:** (describe hallucinations/delusions)

______

**SENSORIUM:** (level of alertness, patient's orientation)

______

**MEMORY:** (Define status and what testing determines impairment)

**Immediate:** ______
**Short Term:** ______
**Long Term:** ______

Lincoln Financial Group®

*Functional Mental Status Evaluation*


**COGNITION:** (Define status and what testing determines impairment)

**JUDGMENT AND INSIGHT:** (What evidence supports impairment?)

**RISK BEHAVIORS:**

Suicidal thoughts, plans, actions __________

Homicidal thoughts, plans, actions __________

**SUBSTANCE ABUSE:** (abuse, dependency)

**In what way do the above symptoms interfere with the person's ability to function in a work setting?**

**What functional abilities are still retained?**

**What job tasks can this person perform?**

**What kind of work settings can the patient perform in, at this time, despite the limitations above?**

Lincoln Financial Group®



**How is work readiness being measured? How will you include return to work in the short term goals of the treatment plan?**

______________________________________________
______________________________________________
______________________________________________
______________________________________________

Goal: ____________ Success Indicator: ____________ Timeline: ____________

**Diagnosis (DSM-5)**

____________
____________
____________

If psychotherapy is indicated, what is the modality, frequency, name of provider and phone number?

______________________________________________
______________________________________________
______________________________________________
______________________________________________

List all current medications:

____________ Dosage: ______ Frequency: ______ Begin Date: ______ End Date: ______
____________ Dosage: ______ Frequency: ______ Begin Date: ______ End Date: ______
____________ Dosage: ______ Frequency: ______ Begin Date: ______ End Date: ______
____________ Dosage: ______ Frequency: ______ Begin Date: ______ End Date: ______

Next scheduled office visit: ____________________

Comments:

______________________________________________
______________________________________________
______________________________________________
______________________________________________

______________________________________________

| Examiner's Name (Please Print) | Title/Specialty | Tax ID# | Telephone No. | Fax No. |
|---|---|---|---|---|

Signature required: ______________________________ Date: ____________

# TRAINING-EDUCATION-EXPERIENCE FORM (TEE)

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902
EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ________

**Please fill out each section completely**

**EDUCATIONAL BACKGROUND:** **(If you have a resume, please attach)**

Highest Grade Completed: ____________ Check if earned: ☐ GED ☐ HS Diploma

Vocational Training: ____________ Certificate Program completed: ____________

Associates Degree: ____________ College: number of years: ____________

Bachelor's Degree: BA /BS Major: ____________ Graduate School: MA ☐ MS ☐ CAGS ☐ PHD Degree: ________

Professional Training, License, Certificates(s): ____________

Are you currently attending any classes: ☐ Y ☐ N If yes, provide name of school: ____________

List any other Training or Classes Attended or Plan to Attend: ____________

Primary language spoken: ____________ Other language(s) spoken fluently: ____________

Additional Skills, Hobbies & Volunteer Work ____________

Did you serve in the Armed Forces? ☐ Y ☐ N From: ________ To: ________

Branch of Service: ____________ Specialty: ____________

**WORK EXPERIENCE:** (If you've held different positions for the same employer, please include them below)
Please list chronologically (starting with the most recent) all the jobs/positions you have held in the past 15 years.
(add additional pages if needed for a complete work history).

1. Company: ____________ Department: ____________ From: ________ To: ________
   Job Title(s): ____________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties/Physical Requirements (please be specific): ____________

2. Company: ____________ Department: ____________ From: ________ To: ________
   Job Title(s): ____________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific): ____________

3. Company: ________________ Department: ________________ From: ________ To: ______

Job Title(s): ________________

Supervisory Experience ☐ Y ☐ N

Tasks/Duties (please be specific): ________________

________________

4. Company: ________________ Department: ________________ From: ________ To: ______

Job Title(s): ________________

Supervisory Experience ☐ Y ☐ N

Tasks/Duties (please be specific): ________________

________________

5. Company: ________________ Department: ________________ From: ________ To: ______

Job Title(s): ________________

Supervisory Experience ☐ Y ☐ N

Tasks/Duties (please be specific): ________________

________________

**Computer Utilization:**

Computer Training/Courses, Certifications: ________________

| | Home | Work | | Home | Work |
|---|---|---|---|---|---|
| Email | ☐ | ☐ | Graphics Software | ☐ | ☐ |
| Internet | ☐ | ☐ | Installation/Repair Hardware | ☐ | ☐ |
| Word Processing (MS Word) | ☐ | ☐ | Installation/Repair Programming | ☐ | ☐ |
| Spread Sheet (MS Excel) | ☐ | ☐ | Project Management | ☐ | ☐ |
| Database | ☐ | ☐ | Other: ________ | | |
| Photo Software | ☐ | ☐ | | | |

How much time is spent daily on your work computer? ☐ None ☐ 1-2 hours ☐ 2-3 hours ☐ 3+ hours

How much time is spent daily on your home computer? ☐ None ☐ 1-2 hours ☐ 2-3 hours ☐ 3+ hours

Keyboarding/Typing Experience: ☐ Yes ☐ No If yes, WPM (words per minute) ____________

(We recommend- http://typingtest.com to determine WPM)

Please provide your email address: Personal: ________________ Work: ________________

**SIGNATURE:** ________________ **PHONE NO:** ( ) ________________

# Workers' Compensation
# INFORMATION FORM

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Return To: Johnna Shorter

EMPLOYEE/CLAIMANT NAME: Kim Naugle

CLAIM NO: 12227902

EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ______________

We received your disability claim form. The form indicates that your disability is the result of a work related Injury/Sickness. Please provide the following information and return this form to my attention in order to avoid any delay in processing.

1. Date of Injury/Sickness: ______________________
2. Location of Injury (please provide complete address): ______________________
3. Description of Injury/Sickness (please include copy of accident report): ______________________

______________________________________________

4. Please provide the name of your Employer:

   Company Name: ______________________

   Address: ______________________

   Supervisor Name: ______________ Telephone: (____) ______________

5. Please provide the name of your Employer's Workers' Compensation Carrier or Administrator:

   Insurance Carrier: ______________________

   Address: ______________________

   Telephone: (____) ______________________

   Claim Representative: ______________________

6. Are you collecting benefits from your Employer's Workers' Compensation Insurance Company or Administrator?

   Yes ☐ No ☐

   If "Yes": Weekly Benefit Amount $ ______________________

   Claim No.: ______________________

7. Are you using the services of an attorney?

   Yes ☐ No ☐

   If "Yes": Name: ______________________

   Address: ______________________

   Telephone: (____) ______________________

SIGNATURE: ______________________ DATE: ______________________

DP 539D – Rev. 12/02

![Lincoln Financial Group®]

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

## AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**

**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator and any insurance support organizations.

**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.

**Description of the information that may be used or disclosed**: This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.

**The information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**

**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.

**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.

**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.

**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Name of claimant (print) ______________________________

Name of legal representative, if applicable (print) ____________________ Relationship ____________

Signature of claimant or legal representative ____________________ Date: ____________

Date of Birth: ____________ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original**

# COMBINED CLAIMANT STATEMENT

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Return to: Johnna Shorter

EMPLOYEE/CLAIMANT NAME: Kim Naugle ____________ CLAIM #: 12227902 ________

EMPLOYER: Siemens ____________ DATE OF BIRTH: ________

Full Name (Last, First, Middle Int.) ____________ Social Security # ________ Email Address ________

Street Address ____________ City ________ State ________ Zip Code ________

Telephone Number (include area code) ________ Cell Phone Number (include area code) ________

Marital Status ____________ Spouse's Full Name and Date of Birth ____________

Number of Children ________ Dates of Birth of Children ____________

Next of Kin/Emergency Contact (required should additional benefits be payable in the event of your death):

Name ________ Relationship to you? ________ Tel #. ________

List the names, addresses, and telephone numbers of doctors you see regularly:

Name: ____________
Street Address: ____________
City, State, Zip: ____________
For what condition?: ____________
How often?: ____________

Name: ____________
Street Address: ____________
City, State, Zip: ____________
For what condition?: ____________
How often?: ____________

Do you require any assistive devices such as a: cane____ walker____ crutches____ wheelchair____ other:________

How many times a day do you leave the house during the week? ________ On the weekends? ________

How often do you get outdoors? ____________

Are you left or right hand dominant? Left ____ Right ____

Have you been confined to a hospital within the last 12 months? Yes ____ No ____

If yes, please explain: ____________

Are you able to pursue your hobbies? Yes ____ No ____

If yes, please describe ____________

Do you do any Volunteer work? Yes ____ No ____

If yes, how many hours per day? ________, per week? ________

For whom? ____________

Have you experienced any memory/concentration problems? Yes ____ No ____

If yes, please provide an example

____________

**The following questions intend to identify whether or not you are able to <u>independently</u> conduct routine daily activities. If assistance is required, please clarify.**

| How are the following accomplished? | By Whom? | Assistance Required? |
|---|---|---|
| Grocery Shopping | | |
| Cooking meals | | |
| Cleaning bathrooms | | |
| Vacuuming | | |
| Doing the laundry | | |
| Managing your finances | | |
| Balancing your checkbook | | |
| Bathing yourself | | |
| Getting dressed | | |
| Feeding yourself | | |
| Using the bathroom yourself | | |
| Going up and down stairs | | |

Describe in your own words, what prevents you from engaging in any gainful employment.

Please describe your daily routine:

Have you returned to any type of employment or activity that provides you money? If yes, please provide name of employer, start date, hours worked per/wk and rate of pay.

Do you own a business, or are you involved or affiliated with any type of business, corporation, partnership, or sole proprietary?

If yes, please explain and provide proof of income from prior year.

Do you have a tax identification number (TIN) or employer identification number (EIN)? If yes, for what purpose?

Do you hold a professional license? If yes, for what purpose?

Are you associated with an Internet business of any kind? Do you have a website? If yes, please explain and provide website address(es) and the date started.

Are you pursuing money from a third party or involved in any litigation? If yes, please explain why and provide your attorney's contact information.

Are you pursuing moneys from a third party: **Workers' Compensation** Carrier, Insurance Co., or Individual? If yes, please explain.

**Identify other income you are receiving or for which you have applied. You have an ongoing obligation to notify us immediately of receipt of any other income or any other changes to this information, including supporting documentation confirming the amount you receive and the effective date:**

| Yes | No | Type | Amount per Week/Month | Date Began Receiving | Date Ceased Receiving | Date Income Applied for |
|---|---|---|---|---|---|---|
| ☐ | ☐ | Wages/ Income/ Money/ Unemployment | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Social Security (disability or retirement) | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Social Security (for your spouse/dependents) | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Short Term Disability or State Disability | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Pension or Retirement benefits (lump sum/ongoing) | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | **Workers' Compensation** | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Severance or Employment Separation payment (provide Agreement) | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Other income/money/benefit (describe) ______________________ | $ ______ | ______ | ______ | ______ |

If my claim is overpaid, I understand and agree that Lincoln Financial Group has the right to recover such overpayment from me, including the right to reduce future disability benefits, or pursue other collection methods as permitted by law. The above statements are true and complete to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, or deceive Lincoln Financial Group and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law. A photo static copy of this form will be valid as the original.

The above statements are true and complete to the best of my knowledge and belief and I hereby authorize any hospital or physician who has treated me or other person who has attended me or examined me or any company or Government agency to furnish the Insurance Company providing this firm or their representative, any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records. A photostatic copy of this form will be as valid as the original. I understand that if this information changes at any time, I will contact Lincoln Financial Group.

EMPLOYEE'S PRINTED NAME: ______________________________

DATE: ______________ EMPLOYEE'S SIGNATURE: ______________________________

**From:**Shorter, Johnna
**Sent:**Fri, 21 Jan 2022 19:20:51 +0000
**To:**Monica L. Reynolds
**Cc:**Peter H. Burke
**Subject:**RE: Kim Naugle - 12227902

Good afternoon,

We are half way through notice and proof and still need to interview the claimant as well as obtain all forms and medical records.  Please provide a time we can discuss the LTD interview with the claimant.  A formal letter will be sent to follow.

Thank you,


**[oEnnX SEorter**
Senior LTD Technical Claim Specialist II
PO Box 2578
Omaha NE 68182-9688
**RNncoln FNnXncNXL] rouJ**
LincolnFinancial.com

800-210-0268 x 16505 Office

603-334-7174 Fax



Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**





**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Thursday, December 30, 2021 2:35 PM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Cc:** Peter H. Burke <PHBurke@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

Johnna,

I will have to check with our client regarding her availability next week to complete the LTD interview. We will also want Mr. Burke on this call with Ms. Naugle.

Ms. Naugle does have some updated medical records she is getting to us to submit with the forms that Lincoln has requested.

Monica L. Reynolds
*Senior Litigation Case Manager, Crumley Roberts, LLP*
*Office: 336-333-9899 | mlreynolds@crumleyroberts.com*

---

**From:** Shorter, Johnna [mailto:Johnna.Shorter@lfg.com]
**Sent:** Wednesday, December 29, 2021 1:09 PM
**To:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Subject:** RE: Kim Naugle - 12227902

**hai Tal GARp**

Good afternoon,

Thank you for providing this for us. We will need to set up a time for me to complete the LTD interview (takes about 20 minutes). Please let me know a date and time that works for this.

Please verify if all medical records have been submitted under the STD or if you intend to submit more medical records to support the claim? All medical, forms and interview is due by February 10, 2022.

Thank you,

**[oEnnX SEorter**
Senior LTD Technical Claim
Specialist II
PO Box 2578
Omaha NE 68182-9688
**RNncoln FNNXncNXL] rouJ**
LincolnFinancial.com

800-210-0268 x 16505 Office

603-334-7174 Fax

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination,

distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**




---

**From:** Monica L. Reynolds <MLReynolds@crumleyroberts.com>
**Sent:** Wednesday, December 29, 2021 12:49 PM
**To:** Shorter, Johnna <Johnna.Shorter@lfg.com>
**Cc:** Peter H. Burke <PHBurke@crumleyroberts.com>
**Subject:** Kim Naugle - 12227902

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Johnna,

See attached letter from our firm regarding our representation of Ms. Naugle regarding her Long Term Disability benefits claim.

**Monica L. Reynolds**
**Senior Litigation Case Manager, Long Term Disability**

Crumley Roberts, LLP
3535 Grandview Parkway
Suite 100

Birmingham, AL 35243
Phone: 336-333-9899
Direct Dial No.: 205-747-1915
Fax: 877-293-8687

E-mail: mlreynolds@crumleyroberts.com
Website: http://www.CrumleyRoberts.com

*"Privileged and Confidential - This communication may contain confidential or legally privileged information and is intended only for the use of the individual or entity to whom it is addressed. Any dissemination, distribution, printing or copying of this material by anyone other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately."*

Please consider the environment before printing this email.

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

Crumley Roberts
Attorneys At Law
WE STAND UP FOR YOU®

**MAILING ADDRESS:**
2400 Freeman Mill Road
Suite 200
Greensboro, NC 27406
336-333-9899
336-333-9894 FAX

**1-800-288-1-LAW**
(1-800-288-1529)

**www.CrumleyRoberts.com**

December 29, 2021

**SENT VIA EMAIL:** Johnna.Shorter@lfg.com

Johnna Shorter
Senior LTD Technical Claim Specialist II
The Lincoln National Life Insurance Company
Disability and Life Claims
P.O. Box 2578
Omaha, NE 68172-9668

**RE: KIM NAUGLE**
**CLAIM NO.: 12227902**
**SIEMENS CORPORATION**

Dear Johnna:

This firm has been retained to represent Ms. Naugle in her claim for Long Term Disability benefits (See attached Privacy Release executed by Ms. Naugle). Please show me as Ms. Naugle's representative and include me on all future correspondence concerning her claim. All correspondence regarding Ms. Naugle's claim should be through this office.

Thank you in advance for your cooperation in this matter.

Sincerely,
CRUMLEY ROBERTS, LLP

Peter H. Burke
Attorney

PHB/mlr
Enclosure
cc: Kim Naugle

# PRIVACY RELEASE

I, Kim Naugle__________ (Client), ____________(Social Security Number), am currently seeking a reassessment of my claim for Long Term Disability Benefits by The Lincoln National Life Insurance Company (insurance company), Policy Number ________________________, Claim Number 12227902________. I have retained Crumley Roberts, LLP to be my legal representative in this review and intend for this legal representative to have immediate access to my claim file, including any medical records regarding my physical and mental conditions prior and subsequent to the date and authorization. This authorization shall be deemed to comply with all requirements of HIPAA (45 CFR § 16.509).

I understand that I may revoke this authorization at any time except to the extent that action has been taken in reliance on this authorization by sending written notice to the record providers and/or the person named as personal representative.

Kim Naugle
Signature

Kim R Naugle
Printed or Typed Name

08/10/2021
Date

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

| | |
|---|---|
| Date: | December 28, 2021 |
| To: | LAUREN BEST<br>CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | |
| Fax: | (877) 293-8687 |
| From: | Johnna Shorter<br>Senior LTD Technical Claim Specialist II<br>Phone No.: Phone No.: (877) 294-3423<br>Secure Fax No.: (603) 334-7174 |
| Total Pages<br>(Including Cover): | 23 |
| RE:<br><br>Claim #: 12227902<br>Claimant: Kim Naugle<br><br>Siemens | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (877) 294-3423 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

December 28, 2021

Lauren Best
Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Long Term Disability (LTD) Benefits
Siemens Corporation ("Siemens")
Claim #: 12227902
Claimant: Kim Naugle

Dear Lauren Best:

The Lincoln National Life Insurance Company is responsible for managing claims for Long Term Disability (LTD) benefits under Siemens's Group Disability Policy. We are writing in reference to Kim Naugle's claim for LTD benefits under the Policy.

We are currently reviewing Ms. Naugle's eligibility for disability benefits, and are in need of additional information.

On December 28, 2021, we requested All treatment notes, diagnostic test results, procedure reports and your entire workers compensation file from your attorney at Crumley Roberts Attorneys at Law. This information is necessary to complete our initial claims investigation. Please provide us with the following information to assist us with our review of Ms. Naugle's eligibility for benefits:

- Office treatment notes, test results, operative reports, prescription histories, and treatment plans from December 23, 2020 through the present from all treating providers

If there are any other attending physicians or specialists, including physical therapy providers, that we are unaware of, please have them forward all medical records pertinent to Ms. Naugle's disability within the timeframe stated above.

Please complete the forms indicated below and return them to our office by February 10, 2022:

X Activities Questionnaire Form
X Agreement Concerning Benefits Form
X Functional Capacities Form

- X Authorization - Medical
- X Claimant Supplementary Statement
- X Family Information Questionnaire
- X Functional Status Evaluation
- X Training Education Experience
- X Workers' Compensation Information Form
- X Authorization
- __ Combined Claimant Statement**NOT REQUIRED**
- __ Other

Siemens's LTD Policy requires that, in order to receive benefits, Ms. Naugle provide proof of disability within a required timeframe. Her cooperation in providing the requested information is essential to our claim investigation.

In the absence of this information, Ms. Naugle's claim may be denied.

We ask that Ms. Naugle provide us with this information no later than February 10, 2022 as required under the terms of the Policy.

If Ms. Naugle has any questions regarding this matter, please contact me.

Sincerely,

Johnna Shorter
Senior LTD Technical Claim Specialist II
Phone No.: (877) 294-3423 Ext. 16505
Secure Fax No.: (603) 334-7174

Attachments: Activities Questionnaire Form
Agreement Concerning Benefits Form
Functional Capacities Form
Authorization - Medical
Claimant Supplementary Statement
Family Information Questionnaire
Functional Status Evaluation
Training Education Experience
Workers' Compensation Information Form
Authorization
Combined Claimant Statement

# ACTIVITIES QUESTIONNAIRE

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return To:** Johnna Shorter



EMPLOYEE/CLAIMANT NAME: Kim Naugle

CLAIM NO: 12227902 DATE OF BIRTH: ____________

EMPLOYER/SPONSOR: Siemens

**TO BE COMPLETED BY THE CLAIMANT:**
Please answer the following questions and return the form to The Lincoln National Life Insurance Company.

How long are you able to:

sit ____________ stand ____________ walk ____________

How many hours a day do you:

sit ____________ stand ____________ walk ____________

Do you take a nap during the day?

Yes____________ No ____________

If Yes, for how long? ____________ At what time of the day?____________

How many hours a day do you spend in bed?____________

Do you require any assistive devices such as a:

cane ________ walker________ crutches ________ wheelchair ________ other________

How long are you able to sit in a car?____________

Do you hold a valid driver's license?

Yes____________ No ____________

If No, please explain: ________________________________________

If Yes, how long are you able to drive a car?__________

**Please provide a copy of your driver's license when returning this form.**

How do you maintain contact with people or activities that matter most to you?

________________________________________________________________

Do you have children?

Yes________ No ________ If Yes, what are their dates of birth ____________________

Do you need help caring for your children?

Yes ________ No ________

Are you responsible for taking care of any grandchildren, an elderly parent or grandparent?

Yes________ No ________ If Yes, please explain ____________________

How many times a day do you leave the house during the week? __________

On the weekends? __________

How often do you run errands? ______________________________

Please describe what errands you most commonly run: ______________________________

________________________________________________________________

How often do you get outdoors? ______________________________

Are you left or right hand dominant? Left _____ Right _____

Are you able to work in your garden? Yes _____ No _____

Are you able to work on your house? Yes _____ No _____

Are you able to wash your car? Yes _____ No _____

How much time is spent daily on your home computer?
_____ None _____ 0-1 hours _____ 1-2 hours _____ 2-3 hours _____ 3+ hours

How much time is spent weekly on your home computer?
_____ None _____ 0-1 hours _____ 1-2 hours _____ 2-3 hours _____ 3+ hours

What activities do you perform on your home computer. Please check all that apply:

_____ Pay bills _____ Read news/articles _____ Use search engines _____ Send emails

_____ Visit chat rooms _____ Photos Other: ______________

What computer software applications do you utilize. Please check all that apply:

_____ Word processing (Word) _____ Spreadsheets (Excel) _____ Database (Access) _____ Graphics

_____ Photo software (Photoshop) _____ Programming Other: ______________

Do you have a working home copy machine/fax machine? _____ Yes _____ No

If yes, please explain purpose and usage: ______________________________

The following questions intend to identify whether or not you are able to independently conduct routine daily activities. If assistance is required, please clarify.

| **How are the following accomplished?** | **By Whom?** | **Assistance Required?** |
|---|---|---|
| Grocery Shopping | | |
| Carrying groceries into the house | | |
| Cooking meals | | |
| Cleaning after meals | | |
| Cleaning bathrooms | | |
| Vacuuming | | |
| Doing the laundry | | |
| Opening and responding to mail | | |
| Managing your finances | | |
| Balancing your checkbook | | |
| Bathing yourself | | |
| Styling your own hair | | |
| Getting dressed | | |
| Going up and down stairs | | |

Have you been confined to a hospital within the last 12 months? Yes _____ No _____

If Yes, please provide reason and hospital contact Information: ______________________________

______________________________

______________________________

Lincoln Financial Group®



How often do you travel or take vacation? ______________________________

Where do you go? How do you get there (transportation method)? ______________________________

______________________________

Are you able to pursue your hobbies? Yes _______ No _______

If Yes, please describe ______________________________

Do you participate in an exercise program? Yes _______ No _______

If Yes, please describe ______________________________

Do you do any Volunteer work? Yes _______ No _______

If Yes:

how many hours per day? __________

how many hours per week? __________

for whom? ______________________________

Are you working for wages? Yes _______ No _______

If Yes, please provide employer's name ______________________________

**Describe in your own words, what prevents you from engaging in any gainful employment.**

______________________________

______________________________

______________________________

______________________________

______________________________

**Please describe your daily routine: (if more space is needed, please use the back of this form)**

______________________________

______________________________

______________________________

______________________________

______________________________

Is there a daytime number where you can be reached in the event we have any questions regarding your responses?

______________________________

In the event we cannot reach you, please provide an alternate contact's name and telephone number.

______________________________

**Upon completion of this form, please sign and date below and return in the envelope provided to you. Thank you for your cooperation.

The above statements are true and complete to the best of my knowledge and belief and I hereby authorize any hospital or physician who has treated me or other person who has attended me or examined me or any company or Government agency to furnish the Insurance Company providing this firm or their representative, any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records. A photo static copy of this form will be as valid as the original. I understand that if this information changes at any time, I will contact Lincoln Financial Group.

Name: ______________________________ Date: ______________________________

Signature: ______________________________

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

# AGREEMENT CONCERNING BENEFITS

Return To: Johnna Shorter

Policy No: 03 - 510101

Claim Number: 12227902

Employer: Siemens

Address

Claimant: Kim Naugle

Date of Disability: 12/24/2020

In return for the advance payment of group disability benefits made to me by The Lincoln National Life Insurance Company, which may be in excess of the amount due to me under the terms of Policy number 03 510101 I, for myself, my heirs, executors, administrators and assigns agree:

1) That I am not currently receiving any benefits from Social Security and/or Workers' Compensation.

2) If I apply for Social Security benefits and/or Workers' Compensation benefits I will promptly notify The Lincoln National Life Insurance Company.

3) If I, and/or my spouse and family receive any benefits payments, from Social Security and/or Workers' Compensation, I, and/or my spouse and family will immediately notify by The Lincoln National Life Insurance Company, of such benefit payments and pay back any overpayment resulting from this award in accordance with my Policy provisions.

4) I understand that thereafter The Lincoln National Life Insurance Company is entitled to integrate any amounts received from Social Security and/or Workers' Compensation with the benefits payable under the Policy in accordance with the terms of the Policy.

I understand that The Lincoln National Life Insurance Company in reliance on the above statements and promises, has agreed to advance benefits to me.

Claimant Name (please print)

Address

Signature

Date

***PLEASE RETAIN A COPY FOR YOUR RECORDS, OR ONE MAY BE PROVIDED FOR YOU UPON REQUEST.***

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

# Attending Physician's Assessment of Capacity

| Kim Naugle | | 12227902 |
|---|---|---|
| Patient Name | Date of Birth | Claim Number |
| Johnna Shorter | | |
| Case Manager | Date First Treated | Date Last Treated |

**Diagnosis(es)** Contributing to or Causing Impairment

**PHYSICAL CAPACITY (in an average 8-hour workday)**

| | **Constant** (Over 5 1/2 Hours / Day or Over 40 Min. / Hour) | **Frequent** (Up to 5 1/2 Hours / Day or Up to 40 Minutes / Hour) | **Occasional** (Up to 2 1/2 Hours / Day or Up to 20 Minutes / Hour) |
|---|---|---|---|
| Sitting | | | |
| Standing | | | |
| Walking | | | |
| Driving | | | |
| Climbing | | | |
| Squatting | | | |
| Bending | | | |
| Kneeling | | | |
| Push / Pull | | | |
| Light Grasping | | | |
| Force Grasping | | | |

| | **Constant** (Over 5 1/2 Hours / Day or Over 40 Min. / Hour) | **Frequent** (Up to 5 1/2 Hours / Day or Up to 40 Minutes / Hour) | **Occasional** (Up to 2 1/2 Hours / Day or Up to 20 Minutes / Hour) |
|---|---|---|---|
| Fingering / Typing | | | |
| Reaching Overhead | | | |
| Reaching Below Shoulders | | | |
| | | | |
| Lifting: | | | |
| Up to 10 lbs. | | | |
| Up to 20 lbs. | | | |
| Up to 30 lbs. | | | |
| Up to 40 lbs. | | | |
| Up to 50 lbs. | | | |
| Over 50 lbs. | | | |

Are there additional restrictions / limitations not captured in the table above? Please list. Also, if any of the above capacities are never, please list the capacity and rationale.

How long will these restrictions be imposed?

Can your patient function in an occupational setting full time **within the capacities noted above**? ☐ Yes ☐ No

If your patient cannot function in an occupational setting now, when will he / she be able to?

If your patient cannot function in an occupational setting at this time, please outline your medical and functional treatment plan to facilitate return to work.

Please indicate what your opinions regarding restrictions / limitations and work capacity are based on?
☐ Clinical Experience ☐ Patient's Self-Report ☐ Functional Eval. (FCE)
☐ Specialty Training ☐ Direct Observation ☐ Other (Please List): ____________
☐ Diagnostic Tests ☐ Clinical Examination

If your patient is unable to work, what is the single most important barrier preventing your patient from returning to work?
☐ Uncontrolled Pain ☐ Unstable Medical Status ☐ Patient's Motivation ☐ Psychiatric Co-Morbid(s) ☐ Other (List): ____________

| | | |
|---|---|---|
| Provider's Name (Please Print) | Degree *AND* Area of Specialty | Social Security or Tax ID Number |
| Street Address | Telephone Number | Fax Number |
| City, State & Zip Code | Signature | Date |

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

# AUTHORIZATION FOR THE RELEASE OF INFORMATION INCLUDING PROTECTED HEALTH INFORMATION

**I HEREBY AUTHORIZE THE DISCLOSURE OF INFORMATION ABOUT ME AS DESCRIBED BELOW:**
**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, credit or consumer reporting agency, financial/educational institutions, current or former employer, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator, and any insurance support organizations.
**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.
**Description of the information that may be used or disclosed**: This Authorization specifically includes the release of all information related to:

* My physical and mental health and my insurance policies and claims, including, but not limited to, those containing diagnosis, treatments, prognosis, prescription drug information, alcohol or drug abuse or information regarding communicable or infectious conditions, including HIV/AIDS.
* Job duties, earnings, personnel records and other work related information and federal and state tax returns.
* Information concerning Social Security benefits, including any records pertaining to me and my dependents

**The information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**
**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.
**I understand** that authorizing the disclosure of my health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.
This authorization shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

Name of claimant (print) ________________________

Name of legal representative, if applicable (print) ________________________ Relationship ____________

Signature of claimant or legal representative ________________________ Date: ____________

Date of Birth: ____________ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original.**

# CLAIMANT SUPPLEMENTARY STATEMENT

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return to:** Johnna Shorter

**EMPLOYEE/CLAIMANT NAME:** Kim Naugle **CLAIM #:** 12227902
**EMPLOYER:** Siemens **DATE OF BIRTH:**_________

| | | |
|---|---|---|
| Full Name (Last, First, Middle Int.) | Social Security # | Email Address |
| Street Address | City | State / Zip Code |
| Telephone Number (include area code) | Cell Phone Number (include area code) | Marital Status |
| Spouse's Full Name and Date of Birth | Number of Children | Dates of Birth of Children |

Next of Kin/Emergency Contact (required should additional benefits be payable in the event of your death).
Name Relationship to you? Tel #.

Have you returned to any type of employment or activity that provides you money? If yes, please provide name of employer, start date, hours worked per/wk and rate of pay.

Do you own a business, or are you involved or affiliated with any type of business, corporation, partnership, or sole proprietary? If yes, please explain and provide proof of income from prior year.

Do you have a tax identification number (TIN) or employer identification number (EIN)? If yes, for what purpose?

Do you hold a professional license? If yes, for what purpose?

Are you associated with an Internet business of any kind? Do you have a website? If yes, please explain and provide website address(es) and the date started.

Are you pursuing money from a third party or involved in any litigation? If yes, please explain why and provide your attorney's contact information.

Are you pursuing moneys from a third party: Workers' Compensation Carrier, Insurance Co., or Individual? If yes, please explain.

Identify other income you are receiving or for which you have applied. You have an ongoing obligation to notify us immediately of receipt of any other income or any other changes to this information, including supporting documentation confirming the amount you receive and the effective date:

| Yes | No | Type | Amount per Week/Month | Date Began Receiving | Date Ceased Receiving | Date Income Applied for |
|---|---|---|---|---|---|---|
| ☐ | ☐ | Wages/ Income/ Money/ Unemployment | $ | | | |
| ☐ | ☐ | Social Security (disability or retirement) | $ | | | |
| ☐ | ☐ | Social Security (for your spouse/dependents) | $ | | | |
| ☐ | ☐ | Short Term Disability or State Disability | $ | | | |
| ☐ | ☐ | Pension or Retirement benefits (lump sum/ongoing) | $ | | | |
| ☐ | ☐ | Workers' Compensation | $ | | | |
| ☐ | ☐ | Severance or Employment Separation payment (provide Agreement) | $ | | | |
| ☐ | ☐ | Other income/money/benefit (describe) ________ | | | | |

**If my claim is overpaid, I understand and agree that Lincoln Financial Group has the right to recover such overpayment from me, including the right to reduce future disability benefits, or pursue other collection methods as appropriate. The above statements are true and complete to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, or deceive Lincoln Financial Group and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law. A photo static copy of this form will be valid as the original.**

**EMPLOYEE'S PRINTED NAME:** ____________________

**DATE:**__________ **EMPLOYEE'S SIGNATURE:** ____________________

# Family Information Questionnaire

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return to:** Johnna Shorter

EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902
EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ____________

To document your Long Term Disability Claim file and properly administer benefits, we need the following information. Please complete and return this form in the envelope provided. Thank you for your prompt attention to this request for information.

What is your marital status? Single _____ Married _____ Divorced _____
If married, please indicate your spouse's name and date of birth. Name: ____________ DOB: ________

Do you have children or dependents*? Yes _____ No _____
If yes, please provide additional details below, using additional space as needed.
* An eligible dependent may include:

- Biological child(ren)
- Stepchildren
- Children not residing in your household
- Custodial Grandchildren
- A child 18 or older with a disability that started before age 22
- Adopted Children
- A child 18-19 and a full-time student (not higher than grade 12)

| Name | DOB | If Divorced or Separated, Indicate Custodial or Non-Custodial | High School Student? Yes or No | Anticipated/Actual Last Month/Year of High School |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Is your spouse and/or children receiving Social Security benefits? Yes: ________ No: ________
If yes, please complete the information below and include a copy of their Social Security Award Certificate(s).

If no, however, they were previously receiving Social Security benefits in the past and are no longer, please include a copy of the Social Security Termination notice (s), if this information has not already been provided to The Lincoln National Life Insurance Company.

| Name | DOB | Awarded as: Dependent, Spouse or Disabled | Current Monthly Benefit Amount | Date of Entitlement to Benefits | Benefit Termination Date (if applicable) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Your Name: ______________________ Date: ____________

# FUNCTIONAL MENTAL STATUS EVALUATION FORM

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return To:** Johnna Shorter ______



EMPLOYEE/CLAIMANT NAME: Kim Naugle ______

CLAIM NO: 12227902 ______

EMPLOYER/SPONSOR: Siemens ______ DATE OF BIRTH: ______

**TO BE COMPLETED BY CLINICIAN:**

Please provide a complete description of your patient's current Mental Status Exam in the following areas. Also, please attach a copy of your clinical progress notes and a copy of the treatment plan that is sent to the medical insurance company.

**Patient's description of Job Title and duties:** ______

**GENERAL APPEARANCE:** (physical characteristics/grooming, etc.)

______

**EMOTIONAL STATE:** (mood and affect)

______

**EXPERIENCES:** (describe hallucinations/delusions)

______

**SENSORIUM:** (level of alertness, patient's orientation)

______

**MEMORY:** (Define status and what testing determines impairment)

**Immediate:** ______

**Short Term:** ______

**Long Term:** ______

**COGNITION:** (Define status and what testing determines impairment)

**JUDGMENT AND INSIGHT:** (What evidence supports impairment?)

**RISK BEHAVIORS:**

**Suicidal thoughts, plans, actions** ____________

**Homicidal thoughts, plans, actions** ____________

**SUBSTANCE ABUSE:** (abuse, dependency)

**In what way do the above symptoms interfere with the person's ability to function in a work setting?**

**What functional abilities are still retained?**

**What job tasks can this person perform?**

**What kind of work settings can the patient perform in, at this time, despite the limitations above?**

**How is work readiness being measured? How will you include return to work in the short term goals of the treatment plan?**

Goal: ________ Success Indicator: ________ Timeline: ________

**Diagnosis (DSM-5)**

________

________

________

If psychotherapy is indicated, what is the modality, frequency, name of provider and phone number?

List all current medications:

| | | | | |
|---|---|---|---|---|
| ________ | Dosage: ________ | Frequency: ________ | Begin Date: ________ | End Date: ________ |
| ________ | Dosage: ________ | Frequency: ________ | Begin Date: ________ | End Date: ________ |
| ________ | Dosage: ________ | Frequency: ________ | Begin Date: ________ | End Date: ________ |
| ________ | Dosage: ________ | Frequency: ________ | Begin Date: ________ | End Date: ________ |

Next scheduled office visit: ________

Comments:

| Examiner's Name (Please Print) | Title/Specialty | Tax ID# | Telephone No. | Fax No. |
|---|---|---|---|---|

Signature required: ________ Date: ________

# TRAINING-EDUCATION-EXPERIENCE FORM (TEE)

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

EMPLOYEE/CLAIMANT NAME: Kim Naugle
CLAIM NO: 12227902
EMPLOYER/SPONSOR: Siemens DATE OF BIRTH: ________

**Please fill out each section completely**

**EDUCATIONAL BACKGROUND:** **(If you have a resume, please attach)**

Highest Grade Completed: ________ Check if earned: ☐ GED ☐ HS Diploma

Vocational Training: ________ Certificate Program completed: ________

Associates Degree: ________ College: number of years: ________

Bachelor's Degree: BA /BS Major: ________ Graduate School: MA ☐ MS ☐ CAGS ☐ PHD Degree: ________

Professional Training, License, Certificates(s): ________

Are you currently attending any classes: ☐ Y ☐ N If yes, provide name of school: ________

List any other Training or Classes Attended or Plan to Attend: ________

Primary language spoken: ________ Other language(s) spoken fluently: ________

Additional Skills, Hobbies & Volunteer Work ________

Did you serve in the Armed Forces? ☐ Y ☐ N From: ________ To: ________

Branch of Service: ________ Specialty: ________

**WORK EXPERIENCE:** (If you've held different positions for the same employer, please include them below)
Please list chronologically (starting with the most recent) all the jobs/positions you have held in the past 15 years.
(add additional pages if needed for a complete work history).

1. Company: ________ Department: ________ From: ________ To: ________
   Job Title(s): ________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties/Physical Requirements (please be specific): ________

2. Company: ________ Department: ________ From: ________ To: ________
   Job Title(s): ________
   Supervisory Experience ☐ Y ☐ N
   Tasks/Duties (please be specific): ________

3. Company: ______________________ Department:______________________ From: ________ To: ______

Job Title(s): ________________________________________________________________

Supervisory Experience ☐ Y ☐ N

Tasks/Duties (please be specific): ________________________________________________

________________________________________________________________________

4. Company: ______________________ Department:______________________ From: ________ To: ______

Job Title(s): ________________________________________________________________

Supervisory Experience ☐ Y ☐ N

Tasks/Duties (please be specific): ________________________________________________

________________________________________________________________________

5. Company: ______________________ Department:______________________ From: ________ To: ______

Job Title(s): ________________________________________________________________

Supervisory Experience ☐ Y ☐ N

Tasks/Duties (please be specific): ________________________________________________

________________________________________________________________________

**Computer Utilization:**

Computer Training/Courses, Certifications: ____________________________________________

| | Home | Work | | Home | Work |
|---|---|---|---|---|---|
| Email | ☐ | ☐ | Graphics Software | ☐ | ☐ |
| Internet | ☐ | ☐ | Installation/Repair Hardware | ☐ | ☐ |
| Word Processing (MS Word) | ☐ | ☐ | Installation/Repair Programming | ☐ | ☐ |
| Spread Sheet (MS Excel) | ☐ | ☐ | Project Management | ☐ | ☐ |
| Database | ☐ | ☐ | Other: ____________ | | |
| Photo Software | ☐ | ☐ | | | |

How much time is spent daily on your work computer? ☐ None ☐ 1-2 hours ☐ 2-3 hours ☐ 3+ hours

How much time is spent daily on your home computer? ☐ None ☐ 1-2 hours ☐ 2-3 hours ☐ 3+ hours

Keyboarding/Typing Experience: ☐ Yes ☐ No If yes, WPM (words per minute) ________________
(We recommend- http://typingtest.com to determine WPM)

Please provide your email address: Personal: ____________________ Work: ____________________

**SIGNATURE:** ______________________ **PHONE NO: (     )** ________________________

# Workers' Compensation
# INFORMATION FORM

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Return To: Johnna Shorter ______

EMPLOYEE/CLAIMANT NAME: Kim Naugle ______

CLAIM NO: 12227902 ______

EMPLOYER/SPONSOR: Siemens ______ DATE OF BIRTH: ______

We received your disability claim form. The form indicates that your disability is the result of a work related Injury/Sickness. Please provide the following information and return this form to my attention in order to avoid any delay in processing.

1. Date of Injury/Sickness: ______
2. Location of Injury (please provide complete address): ______
3. Description of Injury/Sickness (please include copy of accident report): ______

______

4. Please provide the name of your Employer:

Company Name: ______
Address: ______
Supervisor Name: ______ Telephone: (   ) ______

5. Please provide the name of your Employer's Workers' Compensation Carrier or Administrator:

Insurance Carrier: ______
Address: ______
Telephone: (   ) ______
Claim Representative: ______

6. Are you collecting benefits from your Employer's Workers' Compensation Insurance Company or Administrator?

Yes ☐ No ☐

If "Yes": Weekly Benefit Amount $ ______
Claim No.: ______

7. Are you using the services of an attorney?

Yes ☐ No ☐

If "Yes": Name: ______
Address: ______
Telephone: (   ) ______

SIGNATURE: ______ DATE: ______

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**AUTHORIZATION FOR THE RELEASE OF PROTECTED HEALTH INFORMATION**

**I HEREBY AUTHORIZE THE DISCLOSURE OF HEALTH INFORMATION ABOUT ME AS DESCRIBED BELOW:**
**Person(s) or group(s) of persons authorized to disclose the information:** Any physicians, medical practitioners, hospitals, clinics, HMOs, long-term care facilities, medical or medically-related facilities, pharmacies, insurance companies, governmental agency, MIB Inc., policy holder, reinsurance companies, policy or benefit plan administrator and any insurance support organizations.
**Person(s) or group(s) of persons authorized to collect or otherwise receive the information**: The particular Company in the Lincoln Financial Group of companies to which I am submitting a claim and its authorized representatives, agents and/or employees, the Plan Sponsor (if self-insured Plan) and other organizations providing claims management services.
**Description of the information that may be used or disclosed**: This Authorization specifically includes the release of all psychotherapy notes relating to me, without restriction, including psychotherapy notes recorded in any medium documenting or analyzing the contents of conversations during private counseling sessions and/or group, joint or family counseling sessions.
**The information will be used or disclosed only for the following purpose(s):** To evaluate and administer my claim, and/or for insurance-related functions.

**STATEMENTS OF UNDERSTANDING AND ACKNOWLEDGMENT:**
**I understand** that information used or disclosed pursuant to this authorization could be subject to redisclosure as necessary by the recipient and, if so, may not be subject to federal or state law protecting its confidentiality.
**I understand** that I may revoke this authorization in writing at any time by sending a written revocation to the Company in the Lincoln Financial Group of companies to which I have submitted a claim, except to the extent that action has been taken in reliance on this authorization, or to the extent that other law provides the Company with the right to contest a claim. I also understand that the revocation of this authorization will not affect uses and disclosures of my health information for purposes of treatment, payment and health care operations.
**I understand** that authorizing the disclosure of this health information is voluntary and the provision of health care services to me is not conditioned on whether I sign this authorization. If I choose not to sign this authorization, insurance coverage or claim payments may be denied or delayed.
**This authorization** shall remain in force for 24 months from the date of signature, except to the extent applicable state law imposes or allows a different duration. The information obtained under this authorization will be retained in accordance with the Company's standard retention policy and applicable law. I understand that I may request a copy of this authorization.

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

Name of claimant (print) ______________________________

Name of legal representative, if applicable (print) ______________________ Relationship ____________

Signature of claimant or legal representative ______________________ Date: ____________

Date of Birth: ____________ Claim Number: 12227902

**A copy of this authorization will be considered as valid as the original**

# COMBINED CLAIMANT STATEMENT

The Lincoln National Life Insurance Company
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (877) 294-3423
Secure Fax No.: (603) 334-7174

**Return to:** Johnna Shorter

**EMPLOYEE/CLAIMANT NAME:** Kim Naugle **CLAIM #:** 12227902
**EMPLOYER:** Siemens **DATE OF BIRTH:** ___________________

**Full Name (Last, First, Middle Int.)** _________________________ **Social Security #** ______________ **Email Address** ______________

**Street Address** ____________________ **City** ________________ **State** _____________ **Zip Code** ________________

**Telephone Number (include area code)** ________________ **Cell Phone Number (include area code)** ________________

**Marital Status** ____________________ **Spouse's Full Name and Date of Birth** ________________________________________

**Number of Children** ___________ **Dates of Birth of Children** ___________________________________________

**Next of Kin/Emergency Contact (required should additional benefits be payable in the event of your death):**

**Name** _________________ **Relationship to you?** ____________________ **Tel #.** _______________________

**List the names, addresses, and telephone numbers of doctors you see regularly:**

**Name:** ________________________________________
**Street Address:**________________________________
**City, State, Zip:**_______________________________
**For what condition?:** ___________________________
**How often?:**___________________________________

**Name:** ________________________________________
**Street Address:**________________________________
**City, State, Zip:**_______________________________
**For what condition?:** ___________________________
**How often?:**___________________________________

**Do you require any assistive devices such as a: cane_____ walker_____ crutches_____ wheelchair____ other:_______________**

**How many times a day do you leave the house during the week?** _____________ **On the weekends?** _____________

**How often do you get outdoors?** __________________________________________________________________________

**Are you left or right hand dominant? Left _____ Right _____**

**Have you been confined to a hospital within the last 12 months? Yes _____ No ______**

**If yes, please explain:** ________________________________________________________________

**Are you able to pursue your hobbies? Yes _____ No _____**

**If yes, please describe** ________________________________________________________________

**Do you do any Volunteer work? Yes _____ No _____**

**If yes, how many hours per day? _________, per week? ___________**

**For whom?** __________________________________________________________

**Have you experienced any memory/concentration problems? Yes _____ No _____**

**If yes, please provide an example**

______________________________________________________________________________________________

**The following questions intend to identify whether or not you are able to <u>independently</u> conduct routine daily activities. If assistance is required, please clarify.**

| How are the following accomplished? | By Whom? | Assistance Required? |
|---|---|---|
| Grocery Shopping | ________ | ________ |
| Cooking meals | ________ | ________ |
| Cleaning bathrooms | ________ | ________ |
| Vacuuming | ________ | ________ |
| Doing the laundry | ________ | ________ |
| Managing your finances | ________ | ________ |
| Balancing your checkbook | ________ | ________ |
| Bathing yourself | ________ | ________ |
| Getting dressed | ________ | ________ |
| Feeding yourself | ________ | ________ |
| Using the bathroom yourself | ________ | ________ |
| Going up and down stairs | ________ | ________ |

**Describe in your own words, what prevents you from engaging in any gainful employment.**

________________________________________
________________________________________
________________________________________
________________________________________

**Please describe your daily routine:**

________________________________________
________________________________________
________________________________________
________________________________________
________________________________________
________________________________________
________________________________________
________________________________________
________________________________________

**Have you returned to any type of employment or activity that provides you money? If yes, please provide name of employer, start date, hours worked per/wk and rate of pay.** ________________________________________

**Do you own a business, or are you involved or affiliated with any type of business, corporation, partnership, or sole proprietary?** ________________________________________
**If yes, please explain and provide proof of income from prior year.** ________________________________________

**Do you have a tax identification number (TIN) or employer identification number (EIN)? If yes, for what purpose?** ________________________________________

**Do you hold a professional license? If yes, for what purpose?** ________________________________________

**Are you associated with an Internet business of any kind? Do you have a website? If yes, please explain and provide website address(es) and the date started.** ________________________________________

**Are you pursuing money from a third party or involved in any litigation? If yes, please explain why and provide your attorney's contact information.** ________________________________________

**Are you pursuing moneys from a third party: Workers' Compensation Carrier, Insurance Co., or Individual? If yes, please explain.** ________________________________________

**Identify other income you are receiving or for which you have applied. You have an ongoing obligation to notify us immediately of receipt of any other income or any other changes to this information, including supporting documentation confirming the amount you receive and the effective date:**

| Yes | No | Type | Amount per Week/Month | Date Began Receiving | Date Ceased Receiving | Date Income Applied for |
|---|---|---|---|---|---|---|
| ☐ | ☐ | Wages/ Income/ Money/ Unemployment | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Social Security (disability or retirement) | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Social Security (for your spouse/dependents) | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Short Term Disability or State Disability | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Pension or Retirement benefits (lump sum/ongoing) | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Workers' Compensation | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Severance or Employment Separation payment (provide Agreement) | $ ______ | ______ | ______ | ______ |
| ☐ | ☐ | Other income/money/benefit (describe) ______ | $ ______ | ______ | ______ | ______ |

If my claim is overpaid, I understand and agree that Lincoln Financial Group has the right to recover such overpayment from me, including the right to reduce future disability benefits, or pursue other collection methods as permitted by law. The above statements are true and complete to the best of my knowledge and I understand that any person who knowingly, and with intent to injure, defraud, or deceive Lincoln Financial Group and/or Plan Sponsor, files a statement or claim containing any false, incomplete, or misleading information may be guilty of a criminal act punishable under law. A photo static copy of this form will be valid as the original.

The above statements are true and complete to the best of my knowledge and belief and I hereby authorize any hospital or physician who has treated me or other person who has attended me or examined me or any company or Government agency to furnish the Insurance Company providing this firm or their representative, any and all information with respect to any illness, injury, medical history, consultations, prescriptions, treatments or benefits and copies of all applicable records. A photostatic copy of this form will be as valid as the original. I understand that if this information changes at any time, I will contact Lincoln Financial Group.

**EMPLOYEE'S PRINTED NAME:** ______________________________

**DATE:** ____________ **EMPLOYEE'S SIGNATURE:** ______________________________

**From:**Boyce, Lynn
**Sent:**Wed, 22 Dec 2021 12:32:21 +0000
**To:**SCU
**Subject:**Need LTD claim loaded
**Importance:**High

Hello,
Please load an LTD claim and assign to LTD for Siemens Corp 03-510101, for Kim Naugle EID 337827, prior STD claim 10839136.

LDW 12/23/20
DOD 12/24/20
DX: F41.9 Anxiety

Thank you!

Lynn Boyce
STD Specialist II
Lincoln Financial Group
PO Box 2578
Omaha, NE 68172-9688

877-824-1724 x 69706 Office
603-334-0401 Fax

LincolnFinancial.com

Follow us on:

***Did you know you can access your claim or leave by visiting My Lincoln Portal [SM]? Track the status of a claim or leave, report an absence, view payment information and MORE…24 hours a day 7 days a week! Remember to visit mylincolnportal.com (Company Code: SIEMENS) and start accessing your information when you need it no matter the day or time.***




---

**From:** Mikulick, Brook <Brook.Mikulick@lfg.com>
**Sent:** Monday, December 20, 2021 4:31 PM
**To:** Boyce, Lynn <Lynn.Boyce@lfg.com>
**Cc:** Moreau, Allyson <Allyson.Moreau@lfg.com>
**Subject:** 10839136
**Importance:** High

Good afternoon Lynn,

I received a letter from the claimant's attorney requesting a LTD claim and forms to submit LTD application.

Please have a LTD claim set up for her.

Thanks,

**Brook Mikulick**
Appeals Specialist

**Lincoln Financial Group**
LincolnFinancial.com

Crumley Roberts
Attorneys At Law

**FAX NUMBER:** 16034301744
**FROM:** Monica L. Reynolds
**DATE:** 12-20-2021 3:19 PM
**SUBJECT:** Kim Naugle - 10839136
**TOTAL PAGES:** 2

See attached regarding Kim Naugle.

**Monica L. Reynolds**
**Senior Litigation Case Manager, Long Term Disability**

Crumley Roberts Website Logo

Crumley Roberts, LLP
3535 Grandview Parkway
Suite 100
Birmingham, AL 35243
Phone: 336-333-9899
Direct Dial No.: 205-747-1915
Fax: 877-293-8687

E-mail: mlreynolds@crumleyroberts.com
Website: http://www.CrumleyRoberts.com

*"Privileged and Confidential - This communication may contain confidential or legally privileged information and is intended only for the use of the individual or entity to whom it is addressed. Any dissemination, distribution, printing or copying of this material by anyone other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately."*

Please consider the environment before printing this email.

The information contained in this facsimile message is privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please notify us by telephone and return the original message to us via U.S. Postal Service to Crumley Roberts LLP. 2400 Freeman Mill Rd, Suite 200, Greensboro, NC 27406.

Crumley Roberts
Attorneys At Law
WE STAND UP FOR YOU®

**MAILING ADDRESS:**
2400 Freeman Mill Road
Suite 200
Greensboro, NC 27406
336-333-9899
336-333-9894 Fax

**1-800-288-1-LAW**
(1-800-288-1529)

**www.CrumleyRoberts.com**

December 20, 2021

**LETTER SENT VIA FACSIMILE: 603-430-1744**

The Lincoln National Life Insurance Co.
Disability and Life Claims Appeal
ATTN: Brook Mikulick
PO Box 2578
Omaha, NE 68172-9688

| | | |
|---|---|---|
| RE: | Claimant: | Kim Naugle |
| | Claim No.: | 10839136 |
| | Policyholder: | Siemens Corporation |

Dear Ms. Mikulick:

We have received Lincoln's letter dated December 10, 2021 denying Ms. Naugle's claim for disability benefits. Client was under the impression that this was for her Long Term Disability claim but the letter only references Short Term Disability benefits. If this denial is only for her STD benefits, please let us know what Ms. Naugle needs to do to apply for Long Term Disability benefits.

Thanks in advance for your assistance in this matter.

Sincerely,
Crumley Roberts, LLP

Peter H. Burke
Attorney

Lincoln Financial Group®

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1744

| | |
|---|---|
| Date: | December 10, 2021 |
| To: | LAUREN BEST<br>CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | Lauren |
| Fax: | (877) 293-8687 |
| From: | Brook Mikulick<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1744 |
| Total Pages (Including Cover): | 18 |
| RE: | Claim #: 10839136<br>Claimant: Kim Naugle<br><br>Siemens |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1744

December 10, 2021

Lauren Best
Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Short Term Disability (STD) Benefits
Siemens Corporation ("Siemens")
Claim #: 10839136
Claimant: Kim Naugle

Dear Lauren Best:

Enclosed is a copy of the Siemens Corporation's Short Term Disability (STD) Plan document.

If you have any questions regarding this matter, please contact me.

Sincerely,

Brook Mikulick
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 14716
Secure Fax No.: (603) 430-1744

Attachments: 10839136-EMPLOYER-CORRESPONDENCE-12.08.2021

# Siemens Corporation Short Term Disability Plan (Option 1D) Summary Plan Description

---

**Effective Date: August 1, 2018**

## Purpose

The purpose of the Siemens Corporation Short Term Disability Plan Option 1D ("Plan") is (i) to provide a defined level of income to eligible employees of a Siemens Operating Company ("Company") that participates in this Plan Option who are unable to perform their job as a result of a "Disability" as defined in the Plan for more than seven consecutive full calendar days and (ii) to reasonably aid, support, and accommodate eligible Company employees who are recovering from their disability as required by applicable law. See Appendix A for a list of applicable Siemens Operating Companies who participate in Option 1D.

## Scope

**Eligibility**
The Plan applies to all eligible regular salaried and hourly and union hourly paid United States employees and inbound delegates of the Company, actively at work with the Company at the time the Disability occurs.

The term "regular employee" means any individual who is employed by the Company but does not include:

1. Any employee covered by a collective bargaining agreement (including any applicable side agreements or memoranda of understanding) that does not provide for participation in the Plan;

2. Any individual classified by the Company as a leased employee or independent contractor, even if there is a subsequent contrary determination of this classification by a court or government agency;

3. Any employee of another employer even if working on Company premises or providing services to the Company;

4. Any "intern," "temporary," or "seasonal" employee; or

5. Any individual employed by the Company who is regularly or normally scheduled to work less than twenty (20) hours per week.

**Definition of Disability**

For purposes of the Plan, "Disability" means a physical or mental condition that prevents an eligible employee from performing all the essential functions of his or her position, with or without reasonable accommodations, for more than seven consecutive calendar days. The disability must be verified by and under the continuous care of an appropriate legally licensed health care practitioner working within the scope of his or her license. The employee must be Actively at Work at the time the disability occurs.

**Definition of a Legally Licensed Health Care Practitioner**

For purposes of the Plan, "an appropriate legally licensed health care practitioner" means a person who (i) is legally licensed to practice medicine; or any other person whose services according to applicable law, must be treated as Physician's services for purposes of the Plan; (ii) is licensed in the jurisdiction where such services are performed; (iii) is not related to the employee; and (iv) the care and treatment provided by the practitioner is within the scope of his or her license.

**Definition of Actively at Work**

Actively at Work or Active Work means that the employee is performing all of the usual and customary duties of his or her job at:

- The Employer's place of business;
- An alternate place approved by the Employer; or
- A place to which the Employer's business requires the employee to travel.

An employee will be deemed to be Actively at Work after normal business hours, during weekends or during Employer approved vacations/PTO, holidays, business closures, furloughs (provided the disability commences within the first six weeks of the furlough), and approved leave under the Company's Family and Medical Leave policy, where the employee was Actively at Work on his or her last scheduled work day preceding such time off.

**<u>Policy</u>**

1. Eligibility begins on the first day of employment. Short term disability benefits for part-time employees are pro-rated according to their normal work hours.

2. Short term disability benefits are available only to an eligible employee who is under the care of a licensed health care practitioner. A licensed health care practitioner must certify the starting, continuing and ending dates of the employee's disability. Payment of the

employee's short-term disability benefits may be delayed and/or denied if the status of the disability is not certified by the employee's licensed health care practitioner.

3. Lincoln Financial Group ("formerly known as Liberty Life Assurance Company of Boston") is the claims administrator of the Siemens Corporation Short Term Disability Plan Option 1D. In order to receive benefits under this Plan, the employee must notify Lincoln Financial Group. Lincoln Financial Group will forward a written application which must be completed within the time period specified by Lincoln Financial Group. An employee's claim for short term disability benefits must be approved by Lincoln Financial Group before any benefits can be paid. The fact that an employee presents a physician's certificate indicating disability does not, in and of itself, establish an employee's entitlement to short term disability benefits.

4. To file a disability claim, an employee must call Lincoln Financial Group at 1-877-294-3423 or submit their claim online at **MyLibertyConnection.com**. If the employee knows in advance that they will be out due to pregnancy or a planned medical procedure, the employee can initiate the claim in advance of the disability date.

5. Failure to comply with individual work location requirements for notification of absences or return to work procedures may result in disciplinary action up to and including termination of employment.

6. While reviewing an employee's claim for short term disability benefits, Lincoln Financial Group may request additional information from the employee or the employee's licensed health care practitioner and/or request the employee to obtain a second opinion from a physician of its choice (at Lincoln Financial Group's expense), prior to granting approval of short term disability benefits. In addition, Lincoln Financial Group may require the employee to periodically obtain a certification from his/her physician and/or obtain a second opinion from a physician of its choice (at Lincoln Financial Group's expense) in order to reconfirm the employee's disability. Failure to comply with Lincoln Financial Group's request for an independent medical exam may result in the termination or suspension of the short-term disability benefits.

7. An employee may be placed on a medical leave of absence without pay while the employee's claim for short term disability benefits is under consideration. Medical leaves of absence will be governed by the company's Family and Medical Leave policy.

8. There is a consecutive seven (7) full calendar day waiting period for short term disability benefits under this Plan. The employee may use available paid time off (PTO, Vacation, Sick Days, etc.) in order to receive pay during the waiting period. Use of paid time off beyond the waiting period is not permitted.

9. Paid Time Off (PTO), Vacation and Sick Days that accrue during the year will continue to accrue during the approved disability period under the Plan. All other provisions of the Paid Time Off, Vacation and Sick Days plans will apply during the disability period.

10. Disability resulting from pregnancy is treated the same as is any other illness or disability except that an eligible employee who is pregnant may elect to be treated as Disabled under this Plan up to two weeks prior to the expected delivery date, without further medical justification.

11. If an employee's claim for short term disability benefits is denied by Lincoln Financial Group, the employee will be notified of the denial. The employee may appeal a denial of benefits – see the "Filing an Appeal" section below. If a claim for short-term disability benefits is denied, the employee may be eligible for an unpaid medical leave of absence under the Company's Family and Medical Leave policy.

12. If an employee is found to have filed a false or fraudulent claim for short term disability benefits, he/she will not be eligible for short term disability benefits and may be subject to disciplinary action up to and including termination of employment as well as recovery of the amount paid as a result of the fraudulent claim.

13. Employees receiving benefits under this Plan will continue to be eligible for health and welfare benefits offered to active employees. Deductions for applicable benefits will continue to be made from the employee's short-term disability benefit payments.

14. Six jurisdictions, California, Hawaii, New Jersey, New York, Puerto Rico and Rhode Island have laws that require employees in those jurisdictions be covered by the state disability plan or an equal insured plan that complies with the mandated disability requirements (Rhode Island and Puerto Rico coverage is only available through the State/Commonwealth). The employee may pay for these statutory benefits through payroll deductions. Employees in these states should follow the following process:

    Hawaii, New York and New Jersey
    Employee will file a disability claim with Lincoln Financial Group. Lincoln Financial Group will pay the statutory benefit and the Company will pay any additional amount due under this Plan.

    California
    Employee will file disability claim with the State of California and with Lincoln Financial Group. California will pay the statutory benefit and the Company will pay the difference between the benefit under this Plan and the State of California maximum benefit. The employee should notify their case manager at Lincoln Financial Group, if they do not receive the maximum California benefit.

    Rhode Island and Puerto Rico
    Employee will file disability claim with the State/Commonwealth and with Lincoln Financial Group. Rhode Island or Puerto Rico will pay the statutory benefit and the Company will pay any additional amount due under this Plan.

15. Under no circumstances will the combined benefits from a state disability plan and this Plan exceed 100% of the employee's base pay. If the employee is overpaid, Siemens has the right to recover the overpayment from the employee.

16. This Plan excludes benefits when you become disabled as the result of a work-related illness or injury. If you become disabled due to a work-related illness or injury and are receiving Workers' Compensation benefits and then subsequently become disabled due to a non-work-related condition, the following will occur:
    - While receiving Workers' Compensation benefits, short term disability benefits from this Plan will not be payable
    - If the Workers' Compensation benefit period overlaps with the non-work-related disability, you will only be eligible for short term disability benefits from this Plan after Workers' Compensation benefits end
    - The Short-Term Disability Plan maximum benefit period will begin the date short term disability benefits from this Plan begin

    ***Example:***
    - Workers' Compensation benefits begin on 2/1/2016.
    - The non-work-related disability absence begins 3/1/2016.
    - Workers' Compensation benefits end on 5/1/2016.
    - The non-work-related disability absence continues.
    - Short Term Disability benefits from this Plan are payable beginning 5/2/2016 for up to 25 weeks (the 7 full calendar day waiting period for short term disability benefits occurred during the overlap of the work related disability and non-work related disability), provided all other Plan provisions are met.

## Procedure

**Who pays for the Short-Term Disability Plan?**
Except as otherwise indicated in previous provisions, coverage under the Plan is fully paid by the Company from its general assets.

**Benefit payment**
Subject to the terms and provisions of the Plan, an employee eligible under the Plan and who is absent from work due to a disability, is eligible to receive income replacement payments after a seven (7) consecutive full calendar day waiting period. The maximum duration of the Plan is 26 weeks from the date of disability (1 week waiting period plus 25 weeks of benefit payments) in accordance with the following: The STD Plan Benefit will equal 100% of eligible pay for weeks 2-9 and 66 2/3% of eligible pay for weeks 10-26.

**STD Benefit Calculation:**
The STD benefit is calculated as follows for employees on a conventional Monday-Friday work schedule:

Pay period salary or hourly equivalent ÷ Number of Mon.-Fri. days in the pay period = Daily rate.

Daily rate × Number of Mon.-Fri. days on disability in the pay period × STD percentage rate = STD pay.

Where employees have irregular schedules, STD benefits may be calculated on an hourly basis for normally scheduled work time missed.

**Biweekly Example:**
Biweekly Salary (or hourly equivalent): $3,000
Number of workdays in the pay period: 10
Workdays on Paid Disability: 45 (after waiting period)

$3,000 ÷10 days = $300
First 40 days (weeks 2-9) after waiting period paid at 100%
$300 × 40 days = $12,000
$12,000 x 100% = $12,000
Remaining 5 days paid at 66 2/3%
$300 × 5 days = $1,500
$1,500 × 66.67% = $1,000.50
Total STD Pay = $13,000.50 ($12,000+$1000.50) for 45 days

**Notes**
STD benefits paid by the Company will be offset by state disability benefits if applicable. For commissioned employees see Determining an Employee's Rate of Pay. Please contact Lincoln Financial Group at 1-877-294-3423 with questions on how your benefit will be calculated.

**Date of Disability**
The date of disability is determined by Lincoln Financial Group as supported by medical evidence and as certified as the starting date of the disability by the employee's health care practitioner. This is contingent upon (i) the employee being continuously absent from work before seeing the health care practitioner and (ii) the first date the employee is absent from work is not more than 7 calendar days before they met with the health care practitioner.

**Determining an Employee's Rate of Pay**
The rate of pay for all short term disability payments under this Plan will be based upon the employee's base salary or base hourly rate of pay at the time the disability began, excluding any bonus, overtime, shift differential, or other contingent or incentive pay. An average of commissions earned over the preceding 3 years will be included in base pay for the disability calculation, if during such period commissions accounted for more than 50% of the employee's monetary compensation. If an employee has been employed for less than 3 years, and such commissions have accounted for at least 50% of the employee's mandatory compensation, an average of commissions earned during the period of employment will be included in the calculation unless the employer determines that such amount is unlikely to be representative of future employment, in which case a lesser amount may be used in the company's discretion.

Rate of pay will not change during the period the employee is receiving Plan benefits. Employees will not be eligible for wage/salary increases during the disability period. Increases will be applied when the employee returns to work and begins receiving pay for work instead of benefits from this Plan.

If an eligible employee is still Disabled following the 26th week period under the Plan has passed, the employee may be eligible for long term disability benefits in accordance with the provisions of the applicable long-term disability plan.

**Impact on Other Benefits While on Short Term Disability**
An employee's health and welfare benefits in effect immediately prior to his or her "Disability," will continue at the active employee rates as long as the employee is eligible to receive benefits under this Plan. The employee will make required premium payments for these benefits through payroll deductions as long as benefits are paid under this Plan. Any unpaid periods will require direct payments to the Siemens Benefits Service Center. If the employee is eligible to participate in the Siemens Savings Plan, the Siemens Savings Plan for Union Employees, immediately prior to his or her "Disability," that eligibility will continue as long as the employee remains employed by a participating employer and the employee's contributions will be made through payroll deduction from benefits paid under this Plan.

**Work Incentive/ Transitional Duty Program**
While an employee is on "Disability", the employee may be required to work or participate in a Transitional Duty Program as defined below and as approved by Lincoln Financial Group.

When an employee works while having a "Disability" under this Plan, the employee will receive the sum of the following amounts:

- The employee's benefits under the Plan are pro-rated for the period(s) not worked; plus
- The amount of the employee's earnings for working while on "Disability."

The employee's payments under the Plan will be reduced if the total amount the employee is due to receive from the above sources exceeds 100% of the employee's base salary at the time the employee's disability began. The employee's payments under the Plan will be reduced by that

portion equal to the amount that exceed 100% of the employee's base salary at the time the employee's disability began.

"Transitional Duty Program" means the employee returns to active employment with the Company (i) on a part-time/reduced schedule or (ii) under a work modification/accommodation which could last up to 90 days on a part-time or full-time basis. The "Transitional Duty Program" is intended to assist the employee in regaining productive employment or service in an occupation for which the employee is reasonably qualified, taking into account the employee's training, education, experience and past earnings. The Transitional Duty Program may include participation in vocational training or physical therapy. The Transitional Duty Program must be mutually agreed upon by the employee's health care practitioner, the Company, and one of Lincoln Financial Group's disability or vocational case managers. Benefits under the Plan may end if the employee refuses to participate in a Lincoln Financial Group recommended Transitional Duty Program.

**Light Duty**

If the Company offers the employee light duty or other suitable work which complies with the employee's work restrictions as determined by Lincoln Financial Group (with due consideration of the report of the employee's physician), the employee's benefit under this Plan will be reduced by the amount the employee earns in such light duty or other suitable work. If the employee refuses such light duty or other suitable work which is offered, the employee's benefit under this plan will be reduced by the amount the employee would have earned if the employee had accepted and performed such light duty or other suitable work.

**Successive Disabilities**

If an eligible employee becomes disabled again due to the same or a related cause after returning to work for ninety (90) calendar days or less, the second period of Disability will be considered a continuation of the first. In such case, no 7-day waiting period will be required, and the maximum duration (of benefits) will be extended by the period of time the employee returned to work. Separate periods of total disability resulting from unrelated causes will be considered one period of total disability unless these periods are separated by return to active employment for at least one full day. If an employee returns to work as part of a transitional duty program, this will not be considered a return to active employment for purposes of determining if the employee has successive disabilities.

**When Coverage Ends**

Coverage under the Plan stops if:

- An employee no longer meets the Plan's eligibility requirements;
- An employee terminates employment with the Company for any reason except a disability for which benefits are paid;
- An employee retires;
- The Plan terminates; or
- An employee is on a leave other than a leave which is protected under the federal FMLA or similar state law.

**When Benefits End**

- An employee is paid for the maximum duration of benefits (25 Weeks after the waiting period unless extended due to successive disabilities);
- An employee is no longer disabled within the provisions of the Plan;
- An employee fails to provide Lincoln Financial Group with necessary information needed to make a disability determination as defined under the provisions of the Plan;
- The date an employee ceases or refuses to participate in a Transitional Duty Program recommended by Lincoln Financial Group;
- The date an employee fails to attend a medical examination requested by Lincoln Financial Group; or
- The day an employee dies.

**Reduction of Benefit Payments**

Benefits under the Plan are reduced by any amounts payable for the same periods from:

- The Jones Act or similar law;
- Social Security disability Benefits (for the employee) (the insurance company will estimate the Social Security benefits used to reduce the Plan benefit unless proof is provided that it was applied for, and was denied);
- The mandatory part of any automobile insurance policy written to comply with a "no-fault" insurance law;
- Subrogation (see Right of Recovery, below);
- California, Hawaii, New Jersey, New York, Rhode Island, or Puerto Rico disability benefits law (and any future state plans enacted);
- Another Company-paid group insurance plan; or
- Unemployment insurance law

**Exclusion**

The Plan does not cover any disability that results directly or indirectly from:

- Work related injuries and illnesses;
- War (declared or undeclared) or service in the armed forces of any country, government body or international authority;
- Intentionally self-inflicted injuries, while sane or insane;
- Active participation in a riot;
- The committing of or attempting to commit a felony or misdemeanor;
- Elective treatment or procedures, such as cosmetic surgery, reversal of sterilization, liposuction, visual corrective surgery, and in vitro fertilization, embryo transfer procedure or artificial insemination.

No benefit will be payable during any period of incarceration.

With respect to this provision, "participation" shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the employee, if

such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and fire fighters.

With respect to this provision, “riot” shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

**Right of Recovery**
If an employee receives benefits from this Plan for an illness or injury for which the employee also receives payments from a third party, or if the employee receives any payment from the Company for the injury or illness other than benefits under this Plan, the employee must repay the Company or Lincoln Financial Group. The repayment must equal the benefits the employee received from the Plan or the amount received from the Company or the third party (less reasonable expenses to make the recovery) if less. Personal disability policies owned by the employee for whom the employee makes all premium payments are exempt from this right of recovery.

**Recovery of Overpayment**
If an employee’s monthly disability benefit is overpaid, the Company or Lincoln Financial Group has the right to recover the excess amount. The overpayment may be deducted from the employee’s future disability benefits, earnings, or the employee may be required to make a lump sum payment. Overpayments may also be withheld from the employee’s future wage or salary payments where permitted by State law.

**Medical Examinations**
Lincoln Financial Group has the right to have the employee examined at any time at reasonable intervals by medical specialists of their choice. The examination will be at Lincoln Financial Group’s expense. Failure to attend a medical examination or cooperate with the medical examiner may be cause for denial or suspension of the employee’s benefits.

**Filing an Appeal**
If Lincoln Financial Group denies the employee’s claim for benefits under the Plan, the employee may appeal the decision by writing to the following address, Lincoln Financial Group, Group Benefits Disability Claims, P.O. Box 7211, London, KY 40742-7211, within 180 days of receiving Lincoln Financial Group's decision. Upon the employee’s written request, Lincoln Financial Group will provide the employee, free of charge, with copies of documents, records and other information relevant to the employee’s claim. Appeals must be in writing and must include at least the following information:

- Name of Employee
- Name of the Plan
- Reference to the initial decision

- An explanation why you are appealing the initial determination.

As part of the employee's appeal, the employee may submit any written comments, documents, records, or other information relating to the employee's claim. After Lincoln Financial Group receives the employee's written request appealing the initial determination, Lincoln Financial Group will conduct a full and fair review of the employee's claim. Deference will not be given to the initial denial, and Lincoln Financial Group's review will look at the claim anew. The review on appeal will take into account all comments, documents, records, and other information that the employee submits relating to the employee's claim without regard to whether such information was submitted or considered in the initial determination. The person who will review the employee's appeal will not be the same person that made the initial decision to deny the employee's claim. In addition, the person who is reviewing the appeal will not be a subordinate of the person who made the initial decision to deny the employee's claim. If the initial denial is based in whole or in part on a medical judgment, Lincoln Financial Group will consult with a health care professional with appropriate training and experience in the field of medicine involved in the medical judgment. This health care professional will not have been consulted on the initial determination and will not be a subordinate of any person who was consulted on the initial determination.

Lincoln Financial Group will notify the employee in writing of its' final decision within a reasonable period of time, but no later than 45 days after Lincoln Financial Group's receipt of the employee's written request for review, except that under special circumstances Lincoln Financial Group may have up to an additional 45 days to provide written notification of the final decision. If such an extension is required, Lincoln Financial Group will notify the employee prior to the expiration of the initial 45 day period, state the reason(s) why such an extension is needed, and state when it will make its' determination. If an extension is needed because the employee did not provide sufficient information, the time period from Lincoln Financial Group's notice to the employee of the need for an extension to when Lincoln Financial Group receives the requested information does not count toward the time Lincoln Financial Group is allowed to notify the employee of its' final decision. The employee will have 45 days to provide the requested information from the date the employee receives the notice from Lincoln Financial Group.

If Lincoln Financial Group denies the claim on appeal, Lincoln Financial Group will send the employee a final written decision which will contain the following information (a) the specific reason for its' decision and the specific reference to the provisions of the Plan on which the decision is based; (b) a statement that the employee is entitled to receive upon request and free of charge copies of all documents, records and other information relevant to the claim for benefits; and (c) if any internal rule, guideline, protocol or other similar criteria were relied upon in denying the employee's claim, an explanation of those criteria or a statement that such criteria will be provided to the employee free of charge, upon request.

Lincoln Financial Group has full and exclusive discretionary authority to interpret all provisions of the Plan, to determine all facts and eligibility for benefits and to construe the terms of the Plan. Interpretations and determinations made by Lincoln Financial Group under the Plan will be final, conclusive and binding unless it can be shown that such interpretation or determination was arbitrary and capricious. Lincoln Financial Group's decision on appeal is final.

**Plan Amendment and Termination**
Siemens Corporation reserves the right to change, modify, or terminate the Plan or any of its provisions in whole or in part at any time and for any reason.

## Plan Information

Plan Sponsor

The Sponsor of the Siemens Corporation Short Term Disability Plan (Option 1D) is:

Siemens Corporation
170 Wood Avenue South
Iselin, NJ 08830

The Plan Number is 502.

Employer Identification Number
The Employer Identification Number (EIN) assigned by the Internal Revenue Service to Siemens Corporation is 13-2623356.

Type of Plan
Welfare Plan

Legal Service
Legal Process may be served on:

Siemens Corporation
170 Wood Avenue South
Iselin, NJ 08830

Plan Year
All plan records are kept on a calendar year basis.

## ERISA

This Plan is covered by Employee Retirement Income Security Act ("ERISA"). ERISA does not require employers to provide benefits. However, it does set standards for any benefits an employer wishes to offer, and it requires that the employee be given an opportunity to learn what those benefits are and the employee's rights to them under the law. As a participant in this Plan, the employee is entitled to certain rights under ERISA.

ERISA provides that all Plan participants shall be entitled to:

Receive Information About Your Plans and Benefits

- Examine, without charge, at the employee's participating employer's, Plan Administrator's, or claims administrator's office, all documents governing the Plan, including trust agreements, insurance contracts, collective bargaining agreements and copies of the latest annual reports (Form 5500 Series) filed by the plans with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

- Obtain, upon written request to the Plan Administrator, copies of all documents governing the operation of the plans including insurance contracts and collective bargaining agreements, and copies of the latest annual reports (Form 5500 Series) and updated summary plan descriptions. The Plan Administrator may make a reasonable charge for the copies.

- Receive a summary of each Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of the summary annual report.

Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of employee benefit plans. The people who operate the employee's plans, called "fiduciaries" of the plans, have a duty to do so prudently and in the interest of the employee and other plan participants and beneficiaries. Although these rights are in no way a guarantee or contract of employment, no one, including the employee's participating employer, the employee's union (if applicable) or any other person, may fire the employee or otherwise discriminate against the employee in any way to prevent the employee from obtaining a benefit from a plan, or exercising the employee's rights under ERISA.

**Enforce your Rights**

If the employee's claim for benefits is denied or ignored in part or in whole, the employee has a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps the employee can take to enforce the above rights. For instance, if the employee requests a copy of plan documents or the latest annual report from the Plan

Administrator and does not receive them within 30 days, the employee may file suit in a federal court. In such a case, the court may require the employee's Employer to provide the materials and pay the employee up to $110 a day until the employee receives the materials, unless the materials were not sent because of reasons beyond the control of the employee's Employer.

If the employee has a claim for benefits which is denied or ignored, in whole or in part, the employee may file suit in a state or federal court. If it should happen that plan fiduciaries misuse a plan's money, or if the employee is discriminated against for asserting the employee's rights, the employee may seek assistance from U.S. Department of Labor, or the employee may file suit in a federal court. The court will decide who should pay court costs and legal fees. If the employee is successful ,the court may order the person the employee has sued to pay these costs and fees. If the employee loses, the court may order the employee to pay these costs and fees if for example, the court finds the employee's claim is frivolous.

**Assistance with Your Questions**

If you have any questions about the Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest Area Office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory, or the:

Division of Technical Assistance and Inquiries
Employee Benefits Security Administration
U.S. Department of Labor
200 Constitution Avenue N.W.
Washington, D.C. 20210

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

**March 1, 2020**

# Appendix A

## Siemens Operating Companies who participate in the Siemens Corporation Short Term Disability Plan (Option 1D)

| Name |
|---|
| Siemens Industry Software, Inc. (all salaried and hourly nonunion employees) (682, 752) |
| Siemens Corporation (all salaried and hourly nonunion employees) (10,96,97,315,364, 041,115,302) |
| Siemens Financial Services, Inc. (all salaried and hourly nonunion employees) (11,366) |
| Siemens Capital Company LLC (all salaried and hourly nonunion employees) (076) |
| Siemens Government Technologies Inc. (all salaried and hourly nonunion employees in the U.S.) (351,653,654,701,373,661,397) |
| Siemens Industry, Inc. (all salaried and hourly nonunion employees in the U.S.) (65, 368, 304, 339,356,044, 310,046, 522, 524, 525, 526, 555,546, 637,645, 648, 651, 669, 692, 700,702,703,704,705, 707, 711, 712, 724)<br>Siemens Industry, Inc. (all hourly union employees who are members of IUE AFL-CIO Local 765 – Norwood, Ohio) (386,570)<br>Siemens Industry, Inc. (all hourly union employees who are members of Local 553 Wendell, NC) (647,716) |
| Siemens Mobility Inc (all salaried nonunion and hourly nonunion and union employees including former employees of Siemens Energy and Siemens Power Transmission & Distribution) (708, 709, 710, 070)<br>Siemens Infrastructure & Cities (all hourly union employees who are members of the Brotherhood of Railroad Signalmen, and Local Union 234) (725) |
| NEM USA (all salaried nonunion employees) (740) |
| EMeter Corporation (all salaried and hourly nonunion employees) (717) |
| Building Robotics (all salaried nonunion employees) (755) |
| J2 Innovations Inc. (all salaried nonunion employees) (756) |
| Enlighted Inc. (all salaried nonunion employees) (754) |
| Siemens Logistics LLC (all salaried/hourly nonunion employees) (759)<br>Siemens Logistics LLC (all hourly union employees who are members of International Union of Operating Engineers (IUOE), Stationary Engineers, Local 39 AFL-CIO) (760) |

**From:**Cade, Sam <sam.cade@siemens.com>
**Sent:**Fri, 10 Dec 2021 03:15:58 +0000
**To:**Mikulick, Brook
**Subject:**RE: Kim Naugle

Hello Brook. I have confirmed with our counsel that it is OK to provide the document to her counsel. Thanks

Sam

---

**From:** Mikulick, Brook <Brook.Mikulick@lfg.com>
**Sent:** Wednesday, December 08, 2021 9:33 AM
**To:** Cade, Sam (RC-US P&O OPS) <sam.cade@siemens.com>
**Cc:** Yance Jr, Robert (RC-US SI RAM Z4 SOL RAL) <robert.yance@siemens.com>
**Subject:** RE: Kim Naugle

Can I send this to her attorney?

Thanks,

**Brook Mikulick**
Appeals Specialist

**Lincoln Financial Group**
LincolnFinancial.com

---

**From:** Cade, Sam <sam.cade@siemens.com>
**Sent:** Wednesday, December 8, 2021 10:31 AM
**To:** Mikulick, Brook <Brook.Mikulick@lfg.com>
**Cc:** Yance Jr, Robert <robert.yance@siemens.com>
**Subject:** Kim Naugle

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Morning. Please see the attached document. Thanks

Sam Cade
Human Resources
Siemens Corporation
1000 Deerfield Pkwy
Buffalo Grove, IL 60089
847-271-0639

Notice of Confidentiality: **This E-mail and any of its attachments may contain Lincoln National Corporation proprietary information, which is privileged, confidential, or subject to copyright belonging to the Lincoln National Corporation family of companies. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout. Thank You.**

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1744

| | |
|---|---|
| Date: | December 10, 2021 |
| To: | LAUREN BEST<br>CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | Lauren |
| Fax: | (877) 293-8687 |
| From: | Brook Mikulick<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1744 |
| Total Pages<br>(Including Cover): | 9 |
| RE:<br><br>Claim #: 10839136<br>Claimant: Kim Naugle<br><br>Siemens | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1744

December 10, 2021

Lauren Best
Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Short Term Disability (STD) Benefits
Siemens Corporation ("Siemens")
Claim #: 10839136
Claimant: Kim Naugle

Dear Lauren Best:

The Lincoln National Life Insurance Company is responsible for managing claims for Short Term Disability (STD) benefits under the Siemens Corporation's Short Term Disability (STD) Plan. We are writing in reference to Kim Naugle's claim for STD benefits under the Plan.

We have completed our review of your request for reconsideration of Ms. Naugle's claim for Short Term Disability (STD) benefits. Based on the information contained in Ms. Naugle's claim file, we are unable to alter the determination to deny Ms. Naugle's claim for benefits beyond March 22, 2021.

To be eligible to receive benefits, the Plan requires that Ms. Naugle have met the following contractual provision(s):

> ***Definition of Disability***
>
> *For purposes of the Plan,* ***Disability*** *means a physical or mental condition that prevents an eligible employee from performing all the essential functions of his or her position, with or without reasonable accommodations, for more than seven consecutive calendar days. The disability must be verified by and under the continuous care of an appropriate legally licensed health care practitioner working within the scope of his or her license. The employee must be Actively at Work at the time the disability occurs.*
>
> ***"Own Occupation"*** *means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the local economy.*

***Initial Claim Decision***

Ms. Naugle filed a claim due anxiety, depression, PTSD, and coronary artery disease. Based on the documentation contained in Ms. Naugle's claim file, her last day of work was on December 23, 2020 and her date of disability was December 24, 2020. Benefits were approved for December 24, 2020 through March 22, 2021.

The Lincoln National Life Insurance Company evaluated Ms. Naugle's claim beyond March 22, 2021 based on medical information received from Dr. Prucha, Eric Kelly, LCSW, Maimonuna Diop, NP, and Sirrell Butler, LCSW. A clinical review was performed by a Board Certified Physician, specializing in psychiatry, and it was determined that ongoing restrictions and limitations were not supported. Specifically, the reviewer concluded the following:

> *Provider contact with Dr. Prucha indicated that there has been no clinical contact since well prior to the dates in question and that most recently the data suggest that the claimant is pursuing bariatric surgery. The provider noted that the claimant has a terrible job, was not suicidal, homicidal or psychotic, and presented with complaints of work stress (which is a situational issue). The most recent primary care progress note from the treating provider from February 12, 2021 contains a limited mental status examination unremarkable for debilitating psychopathology (Alert, oriented, no distress, well appearing, normal respiratory effort, normal mood), and with findings that contrast with the corresponding form which indicates cognitive dysfunction, severe anxiety and fatigue. Therapy notes are brief, and do not contain mental status examinations. The patient health questionnaire, administered on May 6, 2021, is a self-reported symptom checklist that does not address or assess functionality. The notes do not convey a sense of debilitating distress or incapacity due to a mental illness. The medical records do not establish treatment with a psychiatrist, ongoing and aggressive alteration in pharmacotherapy or the need for transition to a more intense level of care for functional incapacity. The medical record does not demonstrate vegetative signs, outward and debilitating anxiety, gross dysregulation of affect, impairments in speech, language, processing or cognition or sedation from medications. The medical record does not reasonably establish limiting deficits in decision-making or problem-solving, multitasking, maintaining adequate pace or focus, interacting appropriately, conveying information clearly or managing activities and instrumental activities of daily living due to a mental disorder.*

The basis for the denial of benefits was outlined in a letter sent to Ms. Naugle dated June 3, 2021. The letter detailed the medical information in Ms. Naugle's claim, explained the claim decision, and outlined Ms. Naugle's right to appeal by providing a written appeal request stating the reasons why she felt that her claim should not have been denied. The denial letter also advised Ms. Naugle to include the following documentation with her appeal request: *Copies of all office treatment notes, diagnostic test results, prescription histories, treatment plans, physical therapy records, procedure or operative reports, and any hospital discharge summaries from December 1, 2020 through the present. This medical information is needed from all treating providers, specialists or therapists, along with any additional information or specific restrictions and limitations established with the objective evidence to support disability.*

***Appeal***

On July 7, 2021, we received a letter of representation from your office dated June 30, 2021. You requested a copy of Ms. Naugle's claim file along with a copy of her Short Term Disability Plan.

On July 7, 2021, we sent your office a complete copy of Ms. Naugle's claim file via email.

We received your written request for reconsideration on October 21, 2021 and the following information was submitted for Ms. Naugle's appeal:

- ***Out of work note dated July 15, 2021, progress notes dated February 12, 2021 (previously reviewed), June 4, 2021, October 6, 2021 from Dr. Prucha***
- ***Treatment plan dated march 1, 2021, PHQ-9 Questionnaire dated May 6, 2021 (previously reviewed), and telehealth notes dated March 1, 2021 (previously reviewed), April 1, 2021 (previously reviewed), April 15, 2021 (previously reviewed), May 6, 2021 (previously reviewed), May 20, 2021 (previously reviewed) from Eric Kelly, LCSW***
- ***Telehealth note dated November 24, 2020 (prior to Ms. Naugle going out of work) from Maimouna Diop, NP***
- ***Progress notes dated December 4, 2020 (prior to Ms. Naugle going out of work), June 18, 2021 from Dr. Hemant Solomon***
- ***Progress notes dated October 1, 2021 from Jennie Buchkovich, PA-C***
- ***Declaration dated July 20, 2021 from Kim Naugle***
- ***Declaration dated July 20, 2021 from Ronald Naugle***

Today, we faxed a copy of the Siemens Corporation's Short Term Disability (STD) Plan document to your office.

***<u>Appeal Evaluation</u>***

In order to ensure a thorough evaluation of Ms. Naugle's appeal, additional clinical reviews were performed by independent peer physicians, Dr. Candace Good, specializing in psychiatry, and Dr. Mark Sims, specializing in cardiology.

On June 4, 2021, Ms. Naugle had a follow up with Dr. Prucha, specializing in family medicine, regarding her anxiety and an ankle sprain. Dr. Prucha listed a variety of work-related stressors for everyone employed by the company and that others were leaving. Ms. Naugle reported the disability process as "driving her crazy" and reported using clonazepam two to three times a week for the past month for anxiety manifest by crying jags.

On June 18, 2021, Ms. Naugle was seen by Dr. Hemant Solomon, specializing in cardiology, for a follow up. The doctor stated he would support a leave of absence and was pleased Ms. Naugle was considering bariatric surgery.

Ms. Naugle had a follow up with Jennie Buchkovich, PA-C on October 1, 2021. She was advised to continue her medications and weight loss program.

On October 6, 2021, Ms. Naugle had a follow up with Dr. Prucha regarding her anxiety, issues with her CPAP, and skin problems. The note mentioned seeing her therapist the previous week. She experienced postnasal drip that caused her to choke. She endorsed anxiety, panic, and restlessness. Paroxetine was increased to 40 mg daily.

Contact was made with Dr. Prucha to discuss Ms. Naugle's condition and restrictions and limitations. The conversation is summarized below:

*Dr. Prucha confirmed that her high blood pressure and other cardiac issues have been well controlled and that no medications were needed to address those co-morbid concerns. He stated that she feels at war with her disability company and is reliant on the health insurance plan provided by her employer. When questioned re: other updated clinical, treatment or functional capacity he stated that all information would be present in the note, and he can only comment on the patient's report.*

Contact was made with Eric Kelly, LCSW, to discuss Ms. Naugle's condition and restrictions and limitations. The conversation is summarized below:

*Eric Kelly, LCSW/Therapist stated that he has been treating the claimant for about a year on transfer from another therapist who did an intake. He stated that the claimant remains anxious and is processing her posttraumatic stress in therapy. When questioned re: PTSD related symptoms he discussed her attachments with mother and parentified child role due to maternal mental health issues. Other stressors include health and loss. He stated that he was not the clinician who used that diagnosis, and his sessions are solution focused, what the client brings so he could not comment on additional PTSD criteria or her day-to-day functioning. He has not had any contact with her husband. He referred to the questionnaire when asked about specific examples of how her concentration issues manifest in session or everyday life, he stated that she sometimes needed redirection in session for getting stuck on a topic and that inability to work was the totality of her psychiatric, medical, and family interactions. Reinforced that I am focused on psychiatric concerns from March 22, 2021-present and he added that she has made minimal progress with therapy as progress forward is inconsistent .*

Based on the conversation with Dr. Prucha and Eric Kelly, LCSW, and a complete review of Ms. Naugle's file, Dr. Good concluded the following in a report dated November 9, 2021:

*Given consideration to both the self-reported and clinical information, the evidence does not suggest that the claimant suffers from a medical condition of such severity to warrant the placement of restrictions or limitations on their activities for the time period of March 23, 2021 to present.*

*The claimant is a 58-year-old female with a history of General Anxiety Disorder (GAD), Major Depressive Disorder (MDD), Hypothyroidism, Coronary Artery Disease (CAD) with history of Coronary Artery Bypass Graft (CABG) in 2018, Hypertension, Sleep Apnea (CPAP dependent), and morbid obesity.*

*During the time period -March 23, 2021 to -present she was seen more regularly for therapy (though session notes were not provided) but only saw a medical doctor or advanced practice provider four times.*

*Two of the visits to primary care listed anxiety among the chief complaint (June 4, 2021 and October 6, 2021) but included other more acute concerns (ankle sprain and postnasal*

*drip/CPAP issue). She did report an increase in her use of prn Klonopin on June 4, 2021 related to work-related stress but primarily her disability claim. Most of the documented discussion of work was related to how the environment impacted others versus and workload being unreasonable rather than detailed information of her functional capacity. Paroxetine was not increased until the October 6, 2021 appointment.*

*The cardiology visits (June 18, 2021 and October 1, 2021) were routine follow ups and focused on general health counseling in anticipation of a bariatric surgery consult. There were no medication adjustments that would suggest her anxiety was causing her other conditions to be uncontrolled.*

*The therapy notes do not clearly outline function with regards to activities of daily living or measures of concentration that would support her therapists' responses on the claimant's attorney questionnaire.*

Contact was attempted with Dr. Hemant Solomon on October 28, 2021 and October 29, 2021 to discuss Ms. Naugle's conditions and restrictions and limitations. However, contact was not successful.

Based on a complete review of your file, Dr. Sims concluded the following in a report dated November 10, 2021:

*It is my opinion that no cardiovascular based diagnoses, treatment, or medications support impairment from March 23, 2021 and ongoing. The medical records provided for review did not support ongoing angina, LV dysfunction, arrhythmias, from March 23, 2021 and ongoing. No cardiovascular test-based data were supplied during the timeframe in question which would definitively support ongoing cardiovascular based impairment. Should additional data become available that would alter/impact this assessment it should of course be reviewed.*

On November 1, 2021, we sent your office a copy of the above clinical reviews and provided you with the opportunity to submit any additional medical information you would like considered for Ms. Naugle's appeal. The deadline for this receipt of information was December 1, 2021.

On December 1, 2021, we received a letter from your office in response to the above clinical reviews.

Based on the additional information received, we referred Ms. Naugle's file back to the independent peer physicians for further review and assessment.

Dr. Good, specializing in psychiatry, completed an addendum report on December 8, 2021 and concluded the following:

*It is true that I did not examine the patient directly, my role is to review and summarize records and provide an opinion. I am a paid reviewer but do not work directly for the insurance company and my reimbursement is not dependent on my opinion.*

*It is also true that her therapist provides objective information re: subjective symptoms but*

*stating that she sometimes needs to be redirected in session for getting stuck on a topic is not the same as her attention being so impaired that she cannot work. Her therapist is treating her regularly for PTSD, but session notes are limited with regards to how impairment informs his opinion on her functional capacity and did not provide additional information re: DSM-5 criteria on the call.*

*The statements about anxiety being a cardiovascular risk factor is rather general in that it applies to population in general and the cardiologist's notes state her blood pressure is controlled. Again, determination of her ability to work based on cardiovascular status is deferred to the appropriate specialty reviewer.*

Dr. Sims, specializing in cardiology, completed an addendum report on December 8, 2021 and concluded the following:

*The case was carefully reviewed, all cardiac related records were meticulously summarized and assessed. Dr. Solomon's August 31, 2021 Cardiology questionnaire failed to provide any current clinical or test-based assessment of the claimant's current cardiac functional capacity, status of her ischemic heart disease, left ventricular function, any assessment of cardiac rhythm on a long-term basis, or documentation of serial blood pressures in her free- living state. My assessment that the records provided for review failed to support cardiovascular based impairment was based on a lack of formal clinical and test-based data supporting such impairment. If additional data that would alter/impact my prior expressed opinion should become available, it should of course be reviewed. In addition, I would recommend that Dr. Solomon respond to my posed questions or preferably respond to attempts to reach him, allowing him the opportunity to provide rigorously based data that would support his opinions in this case. Mr. Burke has opined that my review should have accepted the opinion of Dr. Solomon without appropriate supporting data. I would add that Dr. Solomon opined that anxiety, depression, and PSTD may raise blood pressure he did not provide any documentation that this in fact had occurred or resulted in additional cardiac related morbidity. As an independent reviewer it is my responsibly to evaluate medical records and seek data that would support or fail to support impairment in my area of specialty and not to provide opinions in other medical disciplines which are outside my area of expertise such as Psychiatry particularly in view of the fact that this case was reviewed by a psychiatrist.*

***<u>Conclusion</u>***

We conducted a thorough and independent review of Kim Naugle's entire claim. While we acknowledge that she may have symptoms associated with her conditions, the medical records on file do not substantiate the presence of a disabling condition that would warrant sustained occupational restrictions and limitations beyond March 22, 2021. In totality, the medical records did not document physical, or clinical exam findings or diagnostic test results of such severity to warrant ongoing sustained restrictions or limitations beyond March 22, 2021.

This determination reflects an evaluation of the claim facts and Plan provisions.

*Since your health benefit plan is subject to the Employee Retirement Income Security Act of 1974 (ERISA), once you have exhausted all mandatory appeal rights, you have the right to*

*bring a civil action in federal court under section 502(a)(1)(B) of ERISA; however under the provisions of the Siemens Corporation Group Insurance and Flexible Benefits Program you must bring such civil actions within* ***three years*** *of the date you or your covered dependent, as applicable, are notified in writing of the final decision on your or your covered dependent's claim, or you or your covered dependent, as applicable, lose any rights to bring such civil action.*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, Ms. Naugle was entitled to appeal the determination made by The Lincoln National Life Insurance Company, and to submit any additional information wished to be considered as part of the appeal. Lincoln has conducted a full and fair review of your appeal and accompanying materials, and has determined that the denial of benefits beyond March 22, 2021 will be maintained.

At this time Ms. Naugle's administrative right to review has been exhausted, no further review will be conducted by The Lincoln National Life Insurance Company and Ms. Naugle's claim will remain closed. You may request to review, free of charge, copies of all documents relevant to Ms. Naugle's claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned Plan and all of the rights and defenses are reserved to the company, whether or not they are specifically mentioned herein.

Determinations made by The Lincoln National Life Insurance Company are based on the provisions outlined in Siemens Corporation's Short Term Disability (STD) Plan. These provisions are not contingent on decisions made by the Social Security Administration nor the Workers' Compensation carrier.

If you require language translation assistance, please contact The Lincoln National Life Insurance Company to initiate a service provided free of charge to assist with understanding Ms. Naugle's claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducci n, cont cteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelaci n.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Brook Mikulick
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 14716
Secure Fax No.: (603) 430-1744

**From:**Mikulick, Brook
**Sent:**Fri, 10 Dec 2021 19:13:20 +0000
**To:**'gina.weiner@siemens.com';Yance Jr, Robert
**Subject:**STD APPEAL DETERMINATION, KIM NAUGLE 10839136, EEID 337827

Good Afternoon,

We have reviewed Kim Naugle's file in response to her request for reconsideration for Short Term Disability benefits beyond March 22, 2021. Based on our review, we are maintaining the decision to deny benefits beyond March 22, 2021 as Ms. Naugle no longer meets the definition of disability as defined in Siemens Corporation's Short Term Disability plan. This determination is based on the medical and vocational information contained in Ms. Naugle's disability file.

Ms. Naugle's attorney will be notified of this determination under a separate cover.

Please feel free to contact me if you have any questions regarding this correspondence.

Thanks,

**Please note: Liberty Life Assurance Company of Boston is now a Lincoln Financial Group company.**




**Brook Mikulick**
Appeals Consultant
Group Protection

Lincoln Financial Group
100 Liberty Way
Dover, NH 03820

**T**: (888) 437-7611 ext. 14716
**F**: 603-430-1744

LincolnFinancial.com


**Follow us on:**

Mark A, Sims MD, MBA, MHA

Board Certified: Cardiovascular Diseases/Internal Medicine

Florida Medical License # 31653

ADDENDUM:

Claimant: Kim Naugle

Claim Number: 10839136

ECN #: 190637-4

Primary Diagnosis: Coronary Artery Disease S/P CABG, Anxiety

Date of Disability: 12/24/2020

Date of Review: 12/08/2021

1. **Please review the additional medical information and advise if it alters your prior opinion stated in your report. Please explain why or why not.**

I have reviewed the supplied letter authored by Attorney Peter Block:

The contents of this letter do not alter my prior opinion in this case. Mr. Block incorrectly asserts that I had not carefully reviewed the claimant's case and that I had disregarded Dr. Solomon's opinions in this case that anxiety, depression, and PTSD may raise blood pressure. He further indicated that my not commenting on the claimant's psychiatric issues because I am a Cardiologist not a psychiatrist. In addition, Mr. Burke provided medical analysis of the claimant's case.

I would respond as follows:

The case was carefully reviewed, all cardiac related records were meticulously summarized and assessed. Dr. Solomon's 8/31/21 Cardiology questionnaire failed to provide any current clinical or test-based assessment of the claimant's current cardiac functional capacity, status of her ischemic heart disease, left ventricular function, any assessment of cardiac rhythm on a long-term basis, or documentation of serial blood pressures in her free- living state. My assessment that the records provided for review failed to support cardiovascular based impairment was based on a lack of formal clinical and test-based data supporting such impairment. If additional data that would alter/impact my prior expressed opinion should become available, it should of course be reviewed. In addition, I would recommend that Dr. Solomon respond to my posed questions or preferably respond to attempts to reach him, allowing him the opportunity to provide rigorously based data that would support his opinions in this case. Mr. Burke has

opined that my review should have accepted the opinion of Dr. Solomon without appropriate supporting data. I would add that Dr. Solomon opined that anxiety, depression, and PSTD may raise blood pressure he did not provide any documentation that this in fact had occurred or resulted in additional cardiac related morbidity. As an independent reviewer it is my responsibly to evaluate medical records and seek data that would support or fail to support impairment in my area of specialty and not to provide opinions in other medical disciplines which are outside my area of expertise such as Psychiatry particularly in view of the fact that this case was reviewed by a psychiatrist.

Lincoln/Naugle 0583

Mark A. Sims MD, MBA, MHA



# Candace Good, MD
***Board-Certified in Psychiatry***
***Child and adolescent psychiatry***

CLAIMANT NAME: Naugle, Kim
EXAMINER: Candace Good, MD
ECN #: 190637-3
CLAIM #: 10839136
DATE OF LOSS: 12/24/2020
DATE OF SERVICE: 12/8/2021

**12/08/21 Addendum:**

1. **Please review the additional medical information and advise if it alters your prior opinion stated in your report. Please explain why or why not.**

I reviewed the letter from the claimant's attorney, Peter Burke, Crumley Roberts, LLP dated 12/01/21 and it does not change my determination. The attorney cites concerns re: my opinion but no new clinical records or details were provided.

It is true that I did not examine the patient directly, my role is to review and summarize records and provide an opinion. I am a paid reviewer but do not work directly for the insurance company and my reimbursement is not dependent on my opinion.

It is also true that her therapist provides objective information re: subjective symptoms but stating that she sometimes needs to be redirected in session for getting stuck on a topic is not the same as her attention being so impaired that she cannot work. Her therapist is treating her regularly for PTSD, but session notes are limited with regards to how impairment informs his opinion on her functional capacity and did not provide additional information re: DSM-5 criteria on the call.

The statements about anxiety being a cardiovascular risk factor is rather general in that it applies to population in general and the cardiologist's notes state her blood pressure is controlled. Again, determination of her ability to work based on cardiovascular status is deferred to the appropriate specialty reviewer.

Respectfully,

Candace Good, MD
Board certified Psychiatrist
Medical License MD073835L

**From:**Staley, Sara <Sara.Staley@genexservices.com>
**Sent:**Wed, 8 Dec 2021 16:12:36 +0000
**To:**VendorReferrals
**Subject:**K. Naugle Claim #10839136
**Attachments:**Addendum_6851963BOCA.PDF, Invoice.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi ,

Attached are the Addendum and Invoice for the above referenced claimant. If we can further assist you with this file, please don't hesitate to give us a call.

Thanks for the referral,

**Sara Staley**
***Quality Assurance Coordinator***
Exam Coordinators Network, a division of Genex Services
**T**: 855-648-9248 #3
**F**: 561-392-5881
**Access our portal at: View My Cases**

urac
ACCREDITED
Independent Medical Examinations
Expires 04/01/2024

All electronic communications from Genex are confidential, unpublished property of Genex. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. This document is intended for the use of the individual(s) or entity to which it is addressed, and may contain information that is privileged and confidential, including personal health information, and applicable law may prohibit further disclosure of this information. If the recipient of the message is not the intended addressee, or the employee or agent responsible for delivering this message to the addressee, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender. Please note the following from the HIPAA Privacy Rule Standards: A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault. Refer to 45 CFR 164.512(l)

**From:**Staley, Sara <Sara.Staley@genexservices.com>
**Sent:**Wed, 8 Dec 2021 16:07:13 +0000
**To:**VendorReferrals
**Subject:**K. Naugle Claim #10839136
**Attachments:**Addendum_6851931BOCA.PDF, Invoice.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi ,

Attached are the Addendum and Invoice for the above referenced claimant. If we can further assist you with this file, please don't hesitate to give us a call.

Thanks for the referral


**Sara Staley**
***Quality Assurance Coordinator***
Exam Coordinators Network, a division of Genex Services
**T**: 855-648-9248 #3
**F**: 561-392-5881
**Access our portal at: View My Cases**


urac®
ACCREDITED
Independent
Medical
Examinations
Expires 04/01/2024


All electronic communications from Genex are confidential, unpublished property of Genex. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. This document is intended for the use of the individual(s) or entity to which it is addressed, and may contain information that is privileged and confidential, including personal health information, and applicable law may prohibit further disclosure of this information. If the recipient of the message is not the intended addressee, or the employee or agent responsible for delivering this message to the addressee, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender. Please note the following from the HIPAA Privacy Rule Standards: A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault. Refer to 45 CFR 164.512(l)

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**Invoice:** **BOCA 124632**

**Date** **12/8/2021**

***Bill To:***

**Brook Mikulick**
**Lincoln Financial-London, KY**
**P.O. Box 7207**
**London, KY 40742**

**Claim #** 10839136
**Date of Loss:** 12/24/2020
**ECN #** 190637-4
**Account #**

**Claimant** Kim Naugle

| | | |
|---|---|---|
| 12/2/2021 | Addendum Peer - Short Term Disability: Addendum<br>Provider: Mark A Sims, MD<br>Specialty: Cardiology | $200.00 |
| | **SubTotal** | $200.00 |
| | **Final Invoice Total** | $200.00 |

***Remit To:***
Exam Coordinators Network
440 E. Swedesford Road
Suite 1000
Wayne, PA 19087

Terms: Net 30 days
Tax Id #: 95-3327434

THANK YOU FOR THE OPPORTUNITY TO PROVIDE THIS SERVICE FOR YOU. PLEASE REMIT PAYMENT PROMPTLY.

ECN
Exam Coordinators Network A division of Genex Services, LLC

**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com Web: www.ecnime.com

**Invoice:** **BOCA 124631**

**Date** **12/8/2021**

***Bill To:***

**Brook Mikulick**
**Lincoln Financial-London, KY**
**P.O. Box 7207**
**London, KY 40742**

**Claim #** 10839136
**Date of Loss:** 12/24/2020
**ECN #** 190637-3
**Account #**

**Claimant** Kim Naugle

| | | |
|---|---|---|
| 12/1/2021 | Addendum Peer - Short Term Disability: Addendum<br>Provider: Candace R Good, MD<br>Specialty: Psychiatry | $200.00 |
| | **SubTotal** | $200.00 |
| | **Final Invoice Total** | $200.00 |

***Remit To:***
Exam Coordinators Network
440 E. Swedesford Road
Suite 1000
Wayne, PA 19087

Terms: Net 30 days
Tax Id #: 95-3327434

THANK YOU FOR THE OPPORTUNITY TO PROVIDE THIS SERVICE FOR YOU. PLEASE REMIT PAYMENT PROMPTLY.

# Siemens Corporation Short Term Disability Plan (Option 1D) Summary Plan Description

**Effective Date: August 1, 2018**

## Purpose

The purpose of the Siemens Corporation Short Term Disability Plan Option 1D ("Plan") is (i) to provide a defined level of income to eligible employees of a Siemens Operating Company ("Company") that participates in this Plan Option who are unable to perform their job as a result of a "Disability" as defined in the Plan for more than seven consecutive full calendar days and (ii) to reasonably aid, support, and accommodate eligible Company employees who are recovering from their disability as required by applicable law. See Appendix A for a list of applicable Siemens Operating Companies who participate in Option 1D.

## Scope

**Eligibility**
The Plan applies to all eligible regular salaried and hourly and union hourly paid United States employees and inbound delegates of the Company, actively at work with the Company at the time the Disability occurs.

The term "regular employee" means any individual who is employed by the Company but does not include:

1. Any employee covered by a collective bargaining agreement (including any applicable side agreements or memoranda of understanding) that does not provide for participation in the Plan;

2. Any individual classified by the Company as a leased employee or independent contractor, even if there is a subsequent contrary determination of this classification by a court or government agency;

3. Any employee of another employer even if working on Company premises or providing services to the Company;

4. Any "intern," "temporary," or "seasonal" employee; or

5. Any individual employed by the Company who is regularly or normally scheduled to work less than twenty (20) hours per week.

**Definition of Disability**

For purposes of the Plan, "Disability" means a physical or mental condition that prevents an eligible employee from performing all the essential functions of his or her position, with or without reasonable accommodations, for more than seven consecutive calendar days. The disability must be verified by and under the continuous care of an appropriate legally licensed health care practitioner working within the scope of his or her license. The employee must be Actively at Work at the time the disability occurs.

**Definition of a Legally Licensed Health Care Practitioner**

For purposes of the Plan, "an appropriate legally licensed health care practitioner" means a person who (i) is legally licensed to practice medicine; or any other person whose services according to applicable law, must be treated as Physician's services for purposes of the Plan; (ii) is licensed in the jurisdiction where such services are performed; (iii) is not related to the employee; and (iv) the care and treatment provided by the practitioner is within the scope of his or her license.

**Definition of Actively at Work**

Actively at Work or Active Work means that the employee is performing all of the usual and customary duties of his or her job at:

- The Employer's place of business;
- An alternate place approved by the Employer; or
- A place to which the Employer's business requires the employee to travel.

An employee will be deemed to be Actively at Work after normal business hours, during weekends or during Employer approved vacations/PTO, holidays, business closures, furloughs (provided the disability commences within the first six weeks of the furlough), and approved leave under the Company's Family and Medical Leave policy, where the employee was Actively at Work on his or her last scheduled work day preceding such time off.

**Policy**

1. Eligibility begins on the first day of employment. Short term disability benefits for part-time employees are pro-rated according to their normal work hours.

2. Short term disability benefits are available only to an eligible employee who is under the care of a licensed health care practitioner. A licensed health care practitioner must certify the starting, continuing and ending dates of the employee's disability. Payment of the

employee's short-term disability benefits may be delayed and/or denied if the status of the disability is not certified by the employee's licensed health care practitioner.

3. Lincoln Financial Group ("formerly known as Liberty Life Assurance Company of Boston") is the claims administrator of the Siemens Corporation Short Term Disability Plan Option 1D. In order to receive benefits under this Plan, the employee must notify Lincoln Financial Group. Lincoln Financial Group will forward a written application which must be completed within the time period specified by Lincoln Financial Group. An employee's claim for short term disability benefits must be approved by Lincoln Financial Group before any benefits can be paid. The fact that an employee presents a physician's certificate indicating disability does not, in and of itself, establish an employee's entitlement to short term disability benefits.

4. To file a disability claim, an employee must call Lincoln Financial Group at 1-877-294-3423 or submit their claim online at **MyLibertyConnection.com**. If the employee knows in advance that they will be out due to pregnancy or a planned medical procedure, the employee can initiate the claim in advance of the disability date.

5. Failure to comply with individual work location requirements for notification of absences or return to work procedures may result in disciplinary action up to and including termination of employment.

6. While reviewing an employee's claim for short term disability benefits, Lincoln Financial Group may request additional information from the employee or the employee's licensed health care practitioner and/or request the employee to obtain a second opinion from a physician of its choice (at Lincoln Financial Group's expense), prior to granting approval of short term disability benefits. In addition, Lincoln Financial Group may require the employee to periodically obtain a certification from his/her physician and/or obtain a second opinion from a physician of its choice (at Lincoln Financial Group's expense) in order to reconfirm the employee's disability. Failure to comply with Lincoln Financial Group's request for an independent medical exam may result in the termination or suspension of the short-term disability benefits.

7. An employee may be placed on a medical leave of absence without pay while the employee's claim for short term disability benefits is under consideration. Medical leaves of absence will be governed by the company's Family and Medical Leave policy.

8. There is a consecutive seven (7) full calendar day waiting period for short term disability benefits under this Plan. The employee may use available paid time off (PTO, Vacation, Sick Days, etc.) in order to receive pay during the waiting period. Use of paid time off beyond the waiting period is not permitted.

9. Paid Time Off (PTO), Vacation and Sick Days that accrue during the year will continue to accrue during the approved disability period under the Plan. All other provisions of the Paid Time Off, Vacation and Sick Days plans will apply during the disability period.

10. Disability resulting from pregnancy is treated the same as is any other illness or disability except that an eligible employee who is pregnant may elect to be treated as Disabled under this Plan up to two weeks prior to the expected delivery date, without further medical justification.

11. If an employee's claim for short term disability benefits is denied by Lincoln Financial Group, the employee will be notified of the denial. The employee may appeal a denial of benefits – see the "Filing an Appeal" section below. If a claim for short-term disability benefits is denied, the employee may be eligible for an unpaid medical leave of absence under the Company's Family and Medical Leave policy.

12. If an employee is found to have filed a false or fraudulent claim for short term disability benefits, he/she will not be eligible for short term disability benefits and may be subject to disciplinary action up to and including termination of employment as well as recovery of the amount paid as a result of the fraudulent claim.

13. Employees receiving benefits under this Plan will continue to be eligible for health and welfare benefits offered to active employees. Deductions for applicable benefits will continue to be made from the employee's short-term disability benefit payments.

14. Six jurisdictions, California, Hawaii, New Jersey, New York, Puerto Rico and Rhode Island have laws that require employees in those jurisdictions be covered by the state disability plan or an equal insured plan that complies with the mandated disability requirements (Rhode Island and Puerto Rico coverage is only available through the State/Commonwealth). The employee may pay for these statutory benefits through payroll deductions. Employees in these states should follow the following process:

    Hawaii, New York and New Jersey
    Employee will file a disability claim with Lincoln Financial Group. Lincoln Financial Group will pay the statutory benefit and the Company will pay any additional amount due under this Plan.

    California
    Employee will file disability claim with the State of California and with Lincoln Financial Group. California will pay the statutory benefit and the Company will pay the difference between the benefit under this Plan and the State of California maximum benefit. The employee should notify their case manager at Lincoln Financial Group, if they do not receive the maximum California benefit.

    Rhode Island and Puerto Rico
    Employee will file disability claim with the State/Commonwealth and with Lincoln Financial Group. Rhode Island or Puerto Rico will pay the statutory benefit and the Company will pay any additional amount due under this Plan.

15. Under no circumstances will the combined benefits from a state disability plan and this Plan exceed 100% of the employee's base pay. If the employee is overpaid, Siemens has the right to recover the overpayment from the employee.

16. This Plan excludes benefits when you become disabled as the result of a work-related illness or injury. If you become disabled due to a work-related illness or injury and are receiving Workers' Compensation benefits and then subsequently become disabled due to a non-work-related condition, the following will occur:
    - While receiving Workers' Compensation benefits, short term disability benefits from this Plan will not be payable
    - If the Workers' Compensation benefit period overlaps with the non-work-related disability, you will only be eligible for short term disability benefits from this Plan after Workers' Compensation benefits end
    - The Short-Term Disability Plan maximum benefit period will begin the date short term disability benefits from this Plan begin

    ***Example:***
    - Workers' Compensation benefits begin on 2/1/2016.
    - The non-work-related disability absence begins 3/1/2016.
    - Workers' Compensation benefits end on 5/1/2016.
    - The non-work-related disability absence continues.
    - Short Term Disability benefits from this Plan are payable beginning 5/2/2016 for up to 25 weeks (the 7 full calendar day waiting period for short term disability benefits occurred during the overlap of the work related disability and non-work related disability), provided all other Plan provisions are met.

## Procedure

**Who pays for the Short-Term Disability Plan?**
Except as otherwise indicated in previous provisions, coverage under the Plan is fully paid by the Company from its general assets.

**Benefit payment**
Subject to the terms and provisions of the Plan, an employee eligible under the Plan and who is absent from work due to a disability, is eligible to receive income replacement payments after a seven (7) consecutive full calendar day waiting period. The maximum duration of the Plan is 26 weeks from the date of disability (1 week waiting period plus 25 weeks of benefit payments) in accordance with the following: The STD Plan Benefit will equal 100% of eligible pay for weeks 2-9 and 66 2/3% of eligible pay for weeks 10-26.

**STD Benefit Calculation:**
The STD benefit is calculated as follows for employees on a conventional Monday-Friday work schedule:

Pay period salary or hourly equivalent ÷ Number of Mon.-Fri. days in the pay period = Daily rate.

Daily rate × Number of Mon.-Fri. days on disability in the pay period × STD percentage rate = STD pay.

Where employees have irregular schedules, STD benefits may be calculated on an hourly basis for normally scheduled work time missed.

**Biweekly Example:**
Biweekly Salary (or hourly equivalent): $3,000
Number of workdays in the pay period: 10
Workdays on Paid Disability: 45 (after waiting period)

$3,000 ÷10 days = $300
First 40 days (weeks 2-9) after waiting period paid at 100%
$300 × 40 days = $12,000
$12,000 x 100% = $12,000
Remaining 5 days paid at 66 2/3%
$300 × 5 days = $1,500
$1,500 × 66.67% = $1,000.50
Total STD Pay = $13,000.50 ($12,000+$1000.50) for 45 days

**Notes**
STD benefits paid by the Company will be offset by state disability benefits if applicable. For commissioned employees see Determining an Employee's Rate of Pay. Please contact Lincoln Financial Group at 1-877-294-3423 with questions on how your benefit will be calculated.

**Date of Disability**
The date of disability is determined by Lincoln Financial Group as supported by medical evidence and as certified as the starting date of the disability by the employee's health care practitioner. This is contingent upon (i) the employee being continuously absent from work before seeing the health care practitioner and (ii) the first date the employee is absent from work is not more than 7 calendar days before they met with the health care practitioner.

**Determining an Employee's Rate of Pay**

The rate of pay for all short term disability payments under this Plan will be based upon the employee's base salary or base hourly rate of pay at the time the disability began, excluding any bonus, overtime, shift differential, or other contingent or incentive pay. An average of commissions earned over the preceding 3 years will be included in base pay for the disability calculation, if during such period commissions accounted for more than 50% of the employee's monetary compensation. If an employee has been employed for less than 3 years, and such commissions have accounted for at least 50% of the employee's mandatory compensation, an average of commissions earned during the period of employment will be included in the calculation unless the employer determines that such amount is unlikely to be representative of future employment, in which case a lesser amount may be used in the company's discretion.

Rate of pay will not change during the period the employee is receiving Plan benefits. Employees will not be eligible for wage/salary increases during the disability period. Increases will be applied when the employee returns to work and begins receiving pay for work instead of benefits from this Plan.

If an eligible employee is still Disabled following the 26th week period under the Plan has passed, the employee may be eligible for long term disability benefits in accordance with the provisions of the applicable long-term disability plan.

**Impact on Other Benefits While on Short Term Disability**

An employee's health and welfare benefits in effect immediately prior to his or her "Disability," will continue at the active employee rates as long as the employee is eligible to receive benefits under this Plan. The employee will make required premium payments for these benefits through payroll deductions as long as benefits are paid under this Plan. Any unpaid periods will require direct payments to the Siemens Benefits Service Center. If the employee is eligible to participate in the Siemens Savings Plan, the Siemens Savings Plan for Union Employees, immediately prior to his or her "Disability," that eligibility will continue as long as the employee remains employed by a participating employer and the employee's contributions will be made through payroll deduction from benefits paid under this Plan.

**Work Incentive/ Transitional Duty Program**

While an employee is on "Disability", the employee may be required to work or participate in a Transitional Duty Program as defined below and as approved by Lincoln Financial Group.

When an employee works while having a "Disability" under this Plan, the employee will receive the sum of the following amounts:

- The employee's benefits under the Plan are pro-rated for the period(s) not worked; plus
- The amount of the employee's earnings for working while on "Disability."

The employee's payments under the Plan will be reduced if the total amount the employee is due to receive from the above sources exceeds 100% of the employee's base salary at the time the employee's disability began. The employee's payments under the Plan will be reduced by that

portion equal to the amount that exceed 100% of the employee's base salary at the time the employee's disability began.

"Transitional Duty Program" means the employee returns to active employment with the Company (i) on a part-time/reduced schedule or (ii) under a work modification/accommodation which could last up to 90 days on a part-time or full-time basis. The "Transitional Duty Program" is intended to assist the employee in regaining productive employment or service in an occupation for which the employee is reasonably qualified, taking into account the employee's training, education, experience and past earnings. The Transitional Duty Program may include participation in vocational training or physical therapy. The Transitional Duty Program must be mutually agreed upon by the employee's health care practitioner, the Company, and one of Lincoln Financial Group's disability or vocational case managers. Benefits under the Plan may end if the employee refuses to participate in a Lincoln Financial Group recommended Transitional Duty Program.

**Light Duty**

If the Company offers the employee light duty or other suitable work which complies with the employee's work restrictions as determined by Lincoln Financial Group (with due consideration of the report of the employee's physician), the employee's benefit under this Plan will be reduced by the amount the employee earns in such light duty or other suitable work. If the employee refuses such light duty or other suitable work which is offered, the employee's benefit under this plan will be reduced by the amount the employee would have earned if the employee had accepted and performed such light duty or other suitable work.

**Successive Disabilities**

If an eligible employee becomes disabled again due to the same or a related cause after returning to work for ninety (90) calendar days or less, the second period of Disability will be considered a continuation of the first. In such case, no 7-day waiting period will be required, and the maximum duration (of benefits) will be extended by the period of time the employee returned to work. Separate periods of total disability resulting from unrelated causes will be considered one period of total disability unless these periods are separated by return to active employment for at least one full day. If an employee returns to work as part of a transitional duty program, this will not be considered a return to active employment for purposes of determining if the employee has successive disabilities.

**When Coverage Ends**

Coverage under the Plan stops if:

- An employee no longer meets the Plan's eligibility requirements;
- An employee terminates employment with the Company for any reason except a disability for which benefits are paid;
- An employee retires;
- The Plan terminates; or
- An employee is on a leave other than a leave which is protected under the federal FMLA or similar state law.

**When Benefits End**

- An employee is paid for the maximum duration of benefits (25 Weeks after the waiting period unless extended due to successive disabilities);
- An employee is no longer disabled within the provisions of the Plan;
- An employee fails to provide Lincoln Financial Group with necessary information needed to make a disability determination as defined under the provisions of the Plan;
- The date an employee ceases or refuses to participate in a Transitional Duty Program recommended by Lincoln Financial Group;
- The date an employee fails to attend a medical examination requested by Lincoln Financial Group; or
- The day an employee dies.

**Reduction of Benefit Payments**

Benefits under the Plan are reduced by any amounts payable for the same periods from:

- The Jones Act or similar law;
- Social Security disability Benefits (for the employee) (the insurance company will estimate the Social Security benefits used to reduce the Plan benefit unless proof is provided that it was applied for, and was denied);
- The mandatory part of any automobile insurance policy written to comply with a “no-fault” insurance law;
- Subrogation (see Right of Recovery, below);
- California, Hawaii, New Jersey, New York, Rhode Island, or Puerto Rico disability benefits law (and any future state plans enacted);
- Another Company-paid group insurance plan; or
- Unemployment insurance law

**Exclusion**

The Plan does not cover any disability that results directly or indirectly from:

- Work related injuries and illnesses;
- War (declared or undeclared) or service in the armed forces of any country, government body or international authority;
- Intentionally self-inflicted injuries, while sane or insane;
- Active participation in a riot;
- The committing of or attempting to commit a felony or misdemeanor;
- Elective treatment or procedures, such as cosmetic surgery, reversal of sterilization, liposuction, visual corrective surgery, and in vitro fertilization, embryo transfer procedure or artificial insemination.

No benefit will be payable during any period of incarceration.

With respect to this provision, “participation” shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the employee, if

such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and fire fighters.

With respect to this provision, “riot” shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

**Right of Recovery**
If an employee receives benefits from this Plan for an illness or injury for which the employee also receives payments from a third party, or if the employee receives any payment from the Company for the injury or illness other than benefits under this Plan, the employee must repay the Company or Lincoln Financial Group. The repayment must equal the benefits the employee received from the Plan or the amount received from the Company or the third party (less reasonable expenses to make the recovery) if less. Personal disability policies owned by the employee for whom the employee makes all premium payments are exempt from this right of recovery.

**Recovery of Overpayment**
If an employee’s monthly disability benefit is overpaid, the Company or Lincoln Financial Group has the right to recover the excess amount. The overpayment may be deducted from the employee’s future disability benefits, earnings, or the employee may be required to make a lump sum payment. Overpayments may also be withheld from the employee’s future wage or salary payments where permitted by State law.

**Medical Examinations**
Lincoln Financial Group has the right to have the employee examined at any time at reasonable intervals by medical specialists of their choice. The examination will be at Lincoln Financial Group’s expense. Failure to attend a medical examination or cooperate with the medical examiner may be cause for denial or suspension of the employee’s benefits.

**Filing an Appeal**
If Lincoln Financial Group denies the employee’s claim for benefits under the Plan, the employee may appeal the decision by writing to the following address, Lincoln Financial Group, Group Benefits Disability Claims, P.O. Box 7211, London, KY 40742-7211, within 180 days of receiving Lincoln Financial Group's decision. Upon the employee’s written request, Lincoln Financial Group will provide the employee, free of charge, with copies of documents, records and other information relevant to the employee’s claim. Appeals must be in writing and must include at least the following information:

- Name of Employee
- Name of the Plan
- Reference to the initial decision

- An explanation why you are appealing the initial determination.

As part of the employee’s appeal, the employee may submit any written comments, documents, records, or other information relating to the employee’s claim. After Lincoln Financial Group receives the employee’s written request appealing the initial determination, Lincoln Financial Group will conduct a full and fair review of the employee’s claim. Deference will not be given to the initial denial, and Lincoln Financial Group’s review will look at the claim anew. The review on appeal will take into account all comments, documents, records, and other information that the employee submits relating to the employee’s claim without regard to whether such information was submitted or considered in the initial determination. The person who will review the employee’s appeal will not be the same person that made the initial decision to deny the employee’s claim. In addition, the person who is reviewing the appeal will not be a subordinate of the person who made the initial decision to deny the employee’s claim. If the initial denial is based in whole or in part on a medical judgment, Lincoln Financial Group will consult with a health care professional with appropriate training and experience in the field of medicine involved in the medical judgment. This health care professional will not have been consulted on the initial determination and will not be a subordinate of any person who was consulted on the initial determination.

Lincoln Financial Group will notify the employee in writing of its’ final decision within a reasonable period of time, but no later than 45 days after Lincoln Financial Group's receipt of the employee’s written request for review, except that under special circumstances Lincoln Financial Group may have up to an additional 45 days to provide written notification of the final decision. If such an extension is required, Lincoln Financial Group will notify the employee prior to the expiration of the initial 45 day period, state the reason(s) why such an extension is needed, and state when it will make its’ determination. If an extension is needed because the employee did not provide sufficient information, the time period from Lincoln Financial Group's notice to the employee of the need for an extension to when Lincoln Financial Group receives the requested information does not count toward the time Lincoln Financial Group is allowed to notify the employee of its’ final decision. The employee will have 45 days to provide the requested information from the date the employee receives the notice from Lincoln Financial Group.

If Lincoln Financial Group denies the claim on appeal, Lincoln Financial Group will send the employee a final written decision which will contain the following information (a) the specific reason for its’ decision and the specific reference to the provisions of the Plan on which the decision is based; (b) a statement that the employee is entitled to receive upon request and free of charge copies of all documents, records and other information relevant to the claim for benefits; and (c) if any internal rule, guideline, protocol or other similar criteria were relied upon in denying the employee’s claim, an explanation of those criteria or a statement that such criteria will be provided to the employee free of charge, upon request.

Lincoln Financial Group has full and exclusive discretionary authority to interpret all provisions of the Plan, to determine all facts and eligibility for benefits and to construe the terms of the Plan. Interpretations and determinations made by Lincoln Financial Group under the Plan will be final, conclusive and binding unless it can be shown that such interpretation or determination was arbitrary and capricious. Lincoln Financial Group’s decision on appeal is final.

**Plan Amendment and Termination**
Siemens Corporation reserves the right to change, modify, or terminate the Plan or any of its provisions in whole or in part at any time and for any reason.

## Plan Information

Plan Sponsor

The Sponsor of the Siemens Corporation Short Term Disability Plan (Option 1D) is:

Siemens Corporation
170 Wood Avenue South
Iselin, NJ 08830

The Plan Number is 502.

Employer Identification Number
The Employer Identification Number (EIN) assigned by the Internal Revenue Service to Siemens Corporation is 13-2623356.

Type of Plan
Welfare Plan

Legal Service
Legal Process may be served on:

Siemens Corporation
170 Wood Avenue South
Iselin, NJ 08830

Plan Year
All plan records are kept on a calendar year basis.

## ERISA

This Plan is covered by Employee Retirement Income Security Act ("ERISA"). ERISA does not require employers to provide benefits. However, it does set standards for any benefits an employer wishes to offer, and it requires that the employee be given an opportunity to learn what those benefits are and the employee's rights to them under the law. As a participant in this Plan, the employee is entitled to certain rights under ERISA.

ERISA provides that all Plan participants shall be entitled to:

Receive Information About Your Plans and Benefits

- Examine, without charge, at the employee's participating employer's, Plan Administrator's, or claims administrator's office, all documents governing the Plan, including trust agreements, insurance contracts, collective bargaining agreements and copies of the latest annual reports (Form 5500 Series) filed by the plans with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

- Obtain, upon written request to the Plan Administrator, copies of all documents governing the operation of the plans including insurance contracts and collective bargaining agreements, and copies of the latest annual reports (Form 5500 Series) and updated summary plan descriptions. The Plan Administrator may make a reasonable charge for the copies.

- Receive a summary of each Plan's annual financial report. The Plan Administrator is required by law to furnish each participant with a copy of the summary annual report.

Prudent Actions by Plan Fiduciaries

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of employee benefit plans. The people who operate the employee's plans, called "fiduciaries" of the plans, have a duty to do so prudently and in the interest of the employee and other plan participants and beneficiaries. Although these rights are in no way a guarantee or contract of employment, no one, including the employee's participating employer, the employee's union (if applicable) or any other person, may fire the employee or otherwise discriminate against the employee in any way to prevent the employee from obtaining a benefit from a plan, or exercising the employee's rights under ERISA.

**Enforce your Rights**

If the employee's claim for benefits is denied or ignored in part or in whole, the employee has a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps the employee can take to enforce the above rights. For instance, if the employee requests a copy of plan documents or the latest annual report from the Plan

Administrator and does not receive them within 30 days, the employee may file suit in a federal court. In such a case, the court may require the employee's Employer to provide the materials and pay the employee up to $110 a day until the employee receives the materials, unless the materials were not sent because of reasons beyond the control of the employee's Employer.

If the employee has a claim for benefits which is denied or ignored, in whole or in part, the employee may file suit in a state or federal court. If it should happen that plan fiduciaries misuse a plan's money, or if the employee is discriminated against for asserting the employee's rights, the employee may seek assistance from U.S. Department of Labor, or the employee may file suit in a federal court. The court will decide who should pay court costs and legal fees. If the employee is successful ,the court may order the person the employee has sued to pay these costs and fees. If the employee loses, the court may order the employee to pay these costs and fees if for example, the court finds the employee's claim is frivolous.

**Assistance with Your Questions**

If you have any questions about the Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest Area Office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory, or the:

Division of Technical Assistance and Inquiries
Employee Benefits Security Administration
U.S. Department of Labor
200 Constitution Avenue N.W.
Washington, D.C. 20210

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

**March 1, 2020**

# Appendix A

## Siemens Operating Companies who participate in the Siemens Corporation Short Term Disability Plan (Option 1D)

| Name |
|---|
| Siemens Industry Software, Inc. (all salaried and hourly nonunion employees) (682, 752) |
| Siemens Corporation (all salaried and hourly nonunion employees) (10,96,97,315,364, 041,115,302) |
| Siemens Financial Services, Inc. (all salaried and hourly nonunion employees) (11,366) |
| Siemens Capital Company LLC (all salaried and hourly nonunion employees) (076) |
| Siemens Government Technologies Inc. (all salaried and hourly nonunion employees in the U.S.) (351,653,654,701,373,661,397) |
| Siemens Industry, Inc. (all salaried and hourly nonunion employees in the U.S.) (65, 368, 304, 339,356,044, 310,046, 522, 524, 525, 526, 555,546, 637,645, 648, 651, 669, 692, 700,702,703,704,705, 707, 711, 712, 724)<br>Siemens Industry, Inc. (all hourly union employees who are members of IUE AFL-CIO Local 765 – Norwood, Ohio) (386,570)<br>Siemens Industry, Inc. (all hourly union employees who are members of Local 553 Wendell, NC) (647,716) |
| Siemens Mobility Inc (all salaried nonunion and hourly nonunion and union employees including former employees of Siemens Energy and Siemens Power Transmission & Distribution) (708, 709, 710, 070)<br>Siemens Infrastructure & Cities (all hourly union employees who are members of the Brotherhood of Railroad Signalmen, and Local Union 234) (725) |
| NEM USA (all salaried nonunion employees) (740) |
| EMeter Corporation (all salaried and hourly nonunion employees) (717) |
| Building Robotics (all salaried nonunion employees) (755) |
| J2 Innovations Inc. (all salaried nonunion employees) (756) |
| Enlighted Inc. (all salaried nonunion employees) (754) |
| Siemens Logistics LLC (all salaried/hourly nonunion employees) (759)<br>Siemens Logistics LLC (all hourly union employees who are members of International Union of Operating Engineers (IUOE), Stationary Engineers, Local 39 AFL-CIO) (760) |

**From:**Cade, Sam <sam.cade@siemens.com>
**Sent:**Wed, 8 Dec 2021 15:30:43 +0000
**To:**Mikulick, Brook
**Cc:**Yance Jr, Robert
**Subject:**Kim Naugle
**Attachments:**STD SPD Option 1D 092820.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Morning.  Please see the attached document.  Thanks

Sam Cade
Human Resources
Siemens Corporation
1000 Deerfield Pkwy
Buffalo Grove, IL 60089
847-271-0639

**From:**Mikulick, Brook
**Sent:**Wed, 1 Dec 2021 21:42:01 +0000
**To:**BocaLegacy
**Subject:**(SECURE) addendum request 10839136
**Attachments:**10839136-EMPLOYEE-CLAIMANT-ATTORNEYDOCUMENTS-12.01.2021.pdf
**Importance:**High

Good Afternoon,

Please refer this file back to Dr. Candace Good and Dr. Mark Sims to review the enclosed information and provide addendum reports.

- Does the additional information provided for review alter the conclusion from your previous report?

Thanks,

**Brook Mikulick**
Appeals Specialist

**Lincoln Financial Group**
LincolnFinancial.com

**From:**ecn-no-reply@ecnime.com
**Sent:**1 Dec 2021 21:58:11 +0000
**To:**Mikulick, Brook
**Subject:**New Referral Claim 10839136 Naugle, Kim

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hello,

A new referral was received for the above referenced claimant. Our office is in the process of scheduling this service.

Thank you,
ECN
6111 Broken Sound Parkway, NW
Suite 207
Boca Raton, FL 33487

**From:**ecn-no-reply@ecnime.com
**Sent:**1 Dec 2021 21:58:12 +0000
**To:**Mikulick, Brook
**Subject:**New Referral Claim 10839136 Naugle, Kim

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hello,

A new referral was received for the above referenced claimant. Our office is in the process of scheduling this service.

Thank you,
ECN
6111 Broken Sound Parkway, NW
Suite 207
Boca Raton, FL 33487

Crumley Roberts
Attorneys At Law

**FAX NUMBER:** 16034301744
**FROM:** Monica L. Reynolds
**DATE:** 12-01-2021 3:12 PM
**SUBJECT:** Kim Naugle - 10839136
**TOTAL PAGES:** 7

See attached regarding Kim Naugle.

**Monica L. Reynolds**
**Senior Litigation Case Manager, Long Term Disability**

WE STAND UP FOR YOU®
CrumleyRoberts.com

Crumley Roberts, LLP
3535 Grandview Parkway
Suite 100
Birmingham, AL 35243
Phone: 336-333-9899
Direct Dial No.: 205-747-1915
Fax: 877-293-8687

E-mail: mlreynolds@crumleyroberts.com
Website: http://www.CrumleyRoberts.com

*"Privileged and Confidential - This communication may contain confidential or legally privileged information and is intended only for the use of the individual or entity to whom it is addressed. Any dissemination, distribution, printing or copying of this material by anyone other than the intended recipient is strictly prohibited. If you have received this communication in error, please notify us immediately."*

Please consider the environment before printing this email.

The information contained in this facsimile message is privileged and confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this fax in error, please notify us by telephone and return the original message to us via U.S. Postal Service to Crumley Roberts LLP. 2400 Freeman Mill Rd, Suite 200, Greensboro, NC 27406.

Crumley Roberts
Attorneys At Law
WE STAND UP FOR YOU®

**MAILING ADDRESS:**
2400 Freeman Mill Road
Suite 200
Greensboro, NC 27406
336-333-9899
336-333-9894 Fax

**1-800-288-1-LAW**
(1-800-288-1529)

**www.CrumleyRoberts.com**

December 1, 2021

**LETTER SENT VIA FACSIMILE: 603-430-1744**

The Lincoln National Life Insurance Co.
Disability and Life Claims Appeal
ATTN: Brook Mikulick
PO Box 2578
Omaha, NE 68172-9688

RE: Claimant: Kim Naugle
Claim No.: 10839136
Policyholder: Siemens Corporation

Dear Ms. Mikulick:

I hope this finds you well. I am writing in response to your letter of November 11, 2021 in which you informed our office of independent peer reviews performed on Ms. Naugle's disability claim. There are several points to be addressed regarding these reviews and their bearing on Ms. Naugle's claim for benefits. Ms. Naugle's claim was referred to Dr. Candace Good, Board Certified in Psychiatry, and Dr. Mark A. Sims, Board Certified in Cardiovascular Diseases. Both of these reviewers came to the conclusion that Ms. Naugle did not require restrictions and limitations severe enough to preclude full-time work. These reviews largely failed to support or justify their findings and relied instead upon a limited reading of the file and a dismissal of treating providers' opinions.

Dr. Good concluded in her report that Ms. Naugle did not suffer any medical conditions of such severity to warrant the placement of restrictions or limitations. This stance openly contradicts the clear opinions of her treating physicians, who have provided documentation to Lincoln outlining Ms. Naugle's impairments. Dr. Good's rationale for ignoring Ms. Naugle's own treating physicians and instead proclaiming the claimant fully able to return to full-time work with no accommodations whatsoever, however, is somewhat lacking. Dr. Good acknowledged diagnoses of generalized anxiety disorder and major depressive disorder, as characterized by symptoms including restlessness, fatigue, poor concentration, irritability, muscle tension, sleep disturbance, loss of interest. depressed mood, and feelings of worthlessness. Dr. Good also noted Ms. Naugle's medical of history of coronary artery disease, obstructive sleep apnea, and hypothyroidism, which were acknowledged to likely contribute to fatigue. However, despite these acknowledgments, Dr. Good still refused to recognize the need for assigned restrictions and limitations.

In her report, Dr. Good stated that "[t]he claimant is clearly having symptoms, but anxiety and depression are typically treated on an outpatient basis and do not interfere with ability to work." Further, Dr. Good noted Ms. Naugle's outpatient therapy sessions, which she noted to occur on a more frequent basis than medical appointments. The frequency of this mental health treatment having been established. receptivity to the opinions and observations of the claimant's mental health provider would be expected. Instead, Dr. Good dismissed the strident opinion of therapist Eric Kelly, who has provided clear written descriptions of Ms. Naugle's impairment and even spoke with, and reaffirmed these impairments to, Dr. Good. Nevertheless, Dr. Good refused to credit these clear and repeated restrictions and instead imposed arbitrary standards of disability in order to proclaim Ms. Naugle unimpaired. Dr. Good's assertion that anxiety and depression are conditions typically managed successfully on an outpatient basis, and thus the implication that Ms. Naugle's anxiety and depression should not be disabling, is nothing but conjecture. How a patient "typically" responds to treatment has no bearing on Ms. Naugle's specific case, especially given the strong endorsement for disability and medical examples provided by her mental health provider as well as her primary care physician and cardiologist. It is clear that the typical course of treatment and recovery is not the actual outcome in this circumstance, and a reliance upon average versus actual prognoses only results in a misinformed, biased review process.

Dr. Good's review also seemed to indicate that Ms. Naugle's non-therapy treatment did not support impairing anxiety. Dr. Good noted that Ms. Naugle's primary care visits discussed anxiety as a chief complaint "but included other more acute concerns" such as a sprained ankle. This is entirely reasonable for a primary care appointment, which manages Ms. Naugle's underlying, longstanding anxiety but also must address other, less enduring medical problems. Ms. Naugle received more in-depth treatment for her severe anxiety and depression from therapy, and the fact that these conditions are documented alongside more acute issues during all-encompassing primary care visits is no indication that these mental health conditions are not significant. Dr. Good further noted Ms. Naugle's cardiology treatment and concluded that, since no medication changes are documented in these notes, Ms. Naugle's anxiety did not impact her cardiac conditions. This assumption disregards the statement provided by Dr. Solomon, Ms. Naugle's cardiologist, on August 13, 2021 which noted that Ms. Naugle's anxiety-related condition raised the risk for developing heart problems. It seems obvious that Ms. Naugle's anxiety must be monitored in conjunction with her cardiac conditions, and that a rise in stress and anxiety, such as would be precipitated by a return to full-time work with its inherent stressors and pressures, would facilitate a decline in her cardiac health.

Medical statements, like Dr. Solomon's above referenced questionnaire of August 13, 2021, have been provided to Lincoln from several of Ms. Naugle's medical providers. Her primary care physician, Dr. Prucha, also provided a statement on July 15, 2021 which noted that Ms. Naugle "remains unable to work due to an underlying medical condition. She has not, as yet, been medically cleared to return to work and continues to convalesce from her condition." Perhaps most relevant to Dr. Good's review is a medical questionnaire provided by Ms. Naugle's therapist, Eric Kelly, LCSW on October 20, 2021. Mr. Kelly, who has treated Ms. Naugle for a prolonged period of time and has obtained a great deal of familiarity with her symptoms and condition, noted that Ms. Naugle was not exaggerating her mental health complaints and that her severe anxiety and depression "significantly decreases her focus, as well as slowed pace & lower

functioning in the workplace." Regarding workplace stress and its impact on Ms. Naugle's health, Mr. Kelly opined that Ms. Naugle's work environment placed extreme stress and marked anxiety upon her and that the performance of a high-stress job on a full-time basis in conjunction with her anxiety, depression, and PTSD could cause her to miss work more than three days per month. Ms. Naugle's treating providers are all in agreement that Ms. Naugle's medical conditions, and notably her anxiety and depression, make it impossible to return to her regular occupation on a full-time basis. Ms. Naugle's treating providers have provided this information to Lincoln, and its reviewers, in support of Ms. Naugle's claim. Dr. Good nevertheless dismissed all of these statements in order to proclaim Ms. Naugle capable of returning to work.

The dismissal of Mr. Kelly's written opinion by Dr. Good is all the more egregious given her conversation with this provider. Dr. Good contacted Mr. Kelly on October 28, 2021 and was informed by this provider that Ms. Naugle remained anxious and continued to suffer posttraumatic stress symptoms. Mr. Kelly noted specific instances of poor concentration and distraction during sessions, and reiterated his responses to the written questionnaire in which he deemed Ms. Naugle incapable of working. Mr. Kelly also noted that progress with therapy was inconsistent and, as such, minimal progress had been made. This seems to indicate that, while she is receiving therapy and working to address her mental health, Ms. Naugle's treatment course has experienced ups and downs and she retains significant symptoms of anxiety and depression.

Dr. Good further stated in her report that Ms. Naugle's reported symptoms were not sufficient evidence and that Mr. Kelly's provided assessments were inconsistent with the medical records. As before, in dismissing the opinions of Ms. Naugle's treating providers, Dr. Good's assertions that Mr. Kelly's written opinions did not correlate with the medical records or that Ms. Naugle's descriptions of her symptoms were not sufficient evidence are contradictory to the medical file and the consensus of Ms. Naugle's treating providers. Although Dr. Good asserted that "[s]ymptoms reported by a patient are not the same as impairment," this disregards the value of Ms. Naugle's subjective symptoms. Further, Dr. Good ignores the corroboration of such symptoms by Ms. Naugle's medical providers, noting that "if a patient complains of concentration difficulties to the point they cannot work, a reviewer looks for treating provider reports of difficulties with concentration in activities of daily living… or an objective measure of attention." This again discounts the subjective symptoms described consistently by Ms. Naugle as well as Mr. Kelly's repeated reports of diminished concentration and observed distraction which were provided to Lincoln and spoken directly to Dr. Good.

The importance of such subjective evidence reported on a consistent basis and assessed by a treating medical provider cannot be understated with regard to mental health diagnoses and their bearing on disability. As his treatment of the claimant is extensive and longstanding, Mr. Kelly is much better qualified to assess Ms. Naugle's actual functioning than a paid reviewer, especially regarding her psychological status. This was addressed in the 2005 decision of Sheehan v. Metropolitan Life Ins. Co., 368 F.Supp.2d 228 (S.D.N.Y.2005), which stated that:

> "Courts discount the opinions of psychiatrists who have never seen the patient for obvious reasons. Unlike cardiologists or orthopedists, who can formulate medical opinions based upon objective findings derived from objective clinical tests, the psychiatrist typically treats his patient's subjective symptoms: in Sheehan's case,

> as described by Dr. Prati, depression, fear of death, and anxiety, among others. Physicians do not diagnose or evaluate these different conditions in the same way. It matters not if a patient with ischemia. ventricular scarring, or atrial fibrillations is depressed or elated; an echocardiogram or stress test will reveal his condition. But surely Dr. Prati was right in testifying that when a psychiatrist evaluates a patient's mental condition, 'a lot of this depends on interviewing the patient and spending time with the patient," TR. 145, a methodology essential to understanding and treating the fears. anxiety, depression, and other subjective symptoms the patient describes."

The facts of Sheehan are relevant to Ms. Naugle's claim. As in Sheehan, Lincoln is relying upon the opinion of a paid psychiatric reviewer who discounted the opinions and direct rebuttal of Ms. Naugle's own treating providers. Despite never seeing or speaking with the claimant, much less extensively observing her behaviors and symptoms as her treating providers have, Lincoln's paid reviewer nevertheless opined that psychiatric or psychological functional limitations were not supported. It is outrageous to deem the opinion of a paid reviewer, without the familiarity and understanding of the claimant's mental health condition obtained through extensive personal treatment, as more accurate than those medical providers who have treated the claimant, interviewed and spent time with the claimant, and observed and evaluated her symptoms. Especially with regard to her mental health conditions, the opinion of a paid reviewer should be held in lower regard than those of Ms. Naugle's own physicians "for obvious reasons."

Dr. Good ended her report with the claim that "[a] physician supporting a leave of absence to focus on health is not the same as supporting a disability case." This is a nonsensical claim. A physician's recommendation for a leave of absence – such as Dr. Prucha's statement that Ms. Naugle was currently convalescing and not yet cleared to return to work – is a direct indication that a claimant is not able to work and will not be able for an extended amount of time. Asserting that a physician's recommendation that a patient not work for a certain amount of time, but that this same recommendation wouldn't apply to a disability claim covering the same period of time, is entirely and explicitly disingenuous.

Dr. Sims also evaluated Ms. Naugle's claim from a cardiovascular perspective. He, too, concluded that Ms. Naugle's medical condition did not warrant the placement of restrictions or limitations. However, Dr. Sims also seemed to disregard direct statements and medical opinions from Ms. Naugle's treating medical providers in order to come to this conclusion. All of Ms. Naugle's medical providers, including her cardiologist, Dr. Solomon, have opined that Ms. Naugle's medical conditions, including her cardiovascular disease in conjunction with her anxiety, prevent her from returning to work. As Dr. Solomon's written opinion was not given due consideration, perhaps more clarity might have been obtained had Dr. Sims been able to confer with this physician. Unfortunately, Dr. Sims was unsuccessful in his attempts to contact Dr. Solomon, and as such was unable to gain significant insight into Ms. Naugle's medical state, prognosis, and limitations. However, as Dr. Solomon was unable to be personally consulted, his written opinions should have been given due credence as the most definitive source of medical insight available to the reviewer.

While Dr. Sims did cite Dr. Solomon's medical questionnaire, including the notations that Ms. Naugle's anxiety was impairing to a degree which would prevent full-time work and that her anxiety could increase her risk of developing cardiovascular-related problems, he ultimately declared that any assessment of any contribution of Ms. Naugle's psychiatric diagnoses to impairment was outside his expertise and was therefore not considered. This is unfortunate, as Dr. Solomon explicitly linked Ms. Naugle's mental and cardiovascular conditions and noted that anxiety, depression, and PTSD symptoms could contribute to elevated blood pressure, as could Ms. Naugle's stressful job. As Dr. Good avoided commenting on Ms. Naugle's cardiovascular conditions and their effect upon anxiety and depression, and as Dr. Sims was unable to examine Ms. Naugle's mental health conditions and their effect upon her cardiovascular health, a glaring blind spot now exists within the review process. Further, the support of Ms. Naugle's disability from Dr. Solomon is all but erased from consideration due to an inability to consider Ms. Naugle's entire medical state, comorbidities and all. Dr. Good did not comment on Dr. Solomon's provided medical questionnaire. Meanwhile, Dr. Sims dismissed Dr. Solomon's opinion because, even though this assessment discussed the effect of anxiety on Ms. Naugle's cardiovascular health, this aspect of her medical state is seemingly outside of his realm of expertise and therefore not able to be considered in any aspect. Dr. Solomon's observations and medical opinions are thereby effectively erased entirely from consideration by either of Lincoln's paid reviewers.

Mr. Kelly, Dr. Prucha, and Dr. Solomon have all opined that Ms. Naugle is incapable of returning to full-time work. Lincoln's reviewers stand alone in the opinion that Ms. Naugle is unimpaired. A reliance on Lincoln's paid reviewers would go against the overwhelming consensus of those medical professionals who have personally treated, examined, and spoken with Ms. Naugle and have thereby gained a far greater understanding of her physical and mental state, impairments, and capabilities than can be obtained through simple record review alone. In a case decided in June 2019 in the United States Court of Appeal for the Fourth Circuit, a federal judge reached a decision reflective of the same set of facts of Ms. Naugle's claim. In Smith v. Reliance Std. Life Ins. Co., 2019 US. App. LEXIS 18518 (2019), the Fourth Circuit found the carrier's reliance upon a paid reviewer's opinion to be arbitrary and capricious. In Smith, the paid reviewing physician focused on the physical requirements of Mr. Smith's job and Reliance adopted this opinion to the exclusion of the treating doctors who all agreed that Mr. Smith was disabled and entitled to benefits. In ruling against Reliance, the Court stated the following:

> At argument, Reliance came close to asserting that Smith needed to prove that he could not perform sedentary work due to a physical limitation on, for example, sitting, typing, or speaking. This is quite a high standard. Such a rule would erase disability eligibility for all but the bedridden. Some serious diseases are debilitating because of their effect on the mind or because they worsen with stress. This is a place for medical judgment, not per se rule: 'The rule is one of reason.' *Harrison*, 773. F.3d at 22. The only doctor who believed Smith was not disabled was Dr. Weston, whom Reliance hired to review Smith's file. He neither examined Smith nor spoke with his doctors, and he believed Smith's 'prognosis is unclear.' A hired consultant's lone view cannot immunize Reliance. Were the evidence balanced, his review could make a difference, but it is a pillar too weak to support the decision here. *Id.* at 14.

The facts in Smith are quite similar to that of Ms. Naugle's claim. Just as in Smith, Lincoln has relied on the sole opinion of paid reviewers whom has not seen Ms. Naugle. As such, the Fourth Circuit has given guidance to the district courts to find any carrier's decision relying upon a paid reviewer's opinion over that of the claimant's treating doctors to be erroneous, arbitrary, and capricious. as a "hired consultant's lone view cannot immunize" the insurance carrier. Ms. Naugle's own medical providers were unequivocal that her medical conditions caused severe impairment prevented her from returning to work on a full-time basis. Lincoln's reliance on the opinions of its paid reviewers – whom never spoke with or examined the claimant – is unreasonable and would be deemed arbitrary and capricious. Lincoln's reliance upon these paid reviewers' opinions over the universal consensus of Ms. Naugle's treating medical providers would, in its best light, be viewed by the federal courts to be erroneous, arbitrary, and patently capricious.

As stated in our previous appeal, Ms. Naugle no longer has the capacity to perform all the essential functions of her position, a fact echoed by each of her treating medical providers. The opinions of Dr. Good and Dr. Sims go against the provided evidence and the opinions of the providers most familiar with her condition. The opinions of Ms. Naugle's treating providers should be given greater preference and an approval for disability benefits should be rendered.

Sincerely,
Crumley Roberts, LLP

Peter H. Burke
Attorney

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1744

| | |
|---|---|
| Date: | November 11, 2021 |
| To: | LAUREN BEST<br>CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | Lauren |
| Fax: | (877) 293-8687 |
| From: | Brook Mikulick<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1744 |
| Total Pages<br>(Including Cover): | 24 |
| RE:<br><br>Claim #: 10839136<br>Claimant: Kim Naugle<br><br>Siemens | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1744

November 11, 2021

Lauren Best
Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Short Term Disability (STD) Benefits
Siemens Corporation ("Siemens")
Claim #: 10839136
Claimant: Kim Naugle

Dear Lauren Best:

The Lincoln National Life Insurance Company (Lincoln) is responsible for managing claims for Short Term Disability (STD) benefits under the Siemens Corporation's Group Disability Plan. We are writing regarding Kim Naugle's claim for STD benefits under the Plan.

We are in process of reviewing Ms. Naugle's appeal of our denial determination regarding the above-referenced claim. The purpose of this letter and enclosure(s) is to provide you with an opportunity to review and comment on new/ additional evidence that has been received before a decision is rendered on Ms. Naugle's appeal.

Please find attached copies of independent peer reports, which are new or additional evidence in connection with Ms. Naugle's appeal. You may review the reports, and provide a response to us, which we will consider in making our decision on Ms. Naugle's appeal. If we do not receive your response within 21 days of the date of this letter or December 1, 2021, we will proceed with making a determination on Ms. Naugle's appeal.

Upon receipt of your response, we will promptly complete our review and render a determination on Ms. Naugle's appeal. If your response is not received by **December 1, 2021**, we will render a determination based on the information contained in Ms. Naugle's file.

Due to these special circumstances, an extension of time to process Ms. Naugle's appeal is required and we are exercising our right to take such an extension under the Employee Retirement Income Security Act.

Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond

Lincoln's control, which require a delay in making a determination. If additional time is needed, ERISA allows for a 45-day extension to evaluate and render an appeal decision. [Pursuant to ERISA Regulations, additional time for a final decision may exceed 90 days to the extent that the timeframe is tolled while Lincoln is awaiting receipt of requested documentation needed to fully evaluate your claim. (Tolled: accumulation of time is suspended.)]

If you have any questions regarding this matter, please contact me.

Sincerely,

Brook Mikulick
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 14716
Secure Fax No.: (603) 430-1744

Attachments: 10839136-MEDICAL-CP/PEER REVIEW-11.09.2021
10839136-MEDICAL-CP/PEER REVIEW-11.10.2021

# Candace Good, MD

***Board-Certified in Psychiatry***
***Child and adolescent psychiatry***

CLAIMANT NAME: Naugle, Kim
EXAMINER: Candace Good, MD
ECN #: 190637-1
CLAIM #: 10839136
DATE OF LOSS: 12/24/2020
DATE OF SERVICE: 11/9/2021

**Peer Review**

This is a peer review regarding Naugle, Kim. I have been asked to review the medical records on behalf of ECN. I reviewed records from Ronald Prucha, MD/Family Medicine from 12/12/21 through 10/06/21; Sirrell Butler, LCSW/Behavioral Health Therapist 11/24/20; Malmouna Dlop, NP/Psychiatric Prescriber 11/24/20; Herman Solomon, MD and Jennie Buchkovich, PA-C/Cardiology 12/04/20-10/01/21; Eric Kelly, LCSW/Therapist 03/01/21-10/20/21; and Disability Questionnaires and Application for Benefits-Appeal Letter from Peter H. Burke/Attorney dated 10/21/21.

**DIAGNOSES: Anxiety disorder unspecified.**

**FILE HISTORY/SUMMARY:**

The claimant is a 58-year-old female with a history of General Anxiety Disorder (GAD), Major Depressive Disorder, recurrent episode, moderate (MDD), Unspecified trauma- and stressor-related disorder or Posttraumatic Stress Disorder (PTSD), Hypothyroidism, Coronary Artery Disease (CAD) with history of Coronary Artery Bypass Graft (CABG) in 2018, Hypertension, Sleep Apnea (CPAP dependent), and morbid obesity.

11/03/20, Sirrell Butler, LCSW/Behavioral Health Therapist: The claimant was seen for therapy assessment and reported an increase in anxiety since her cardiac bypass surgery two years ago. She has taken escitalopram 10 mg for 12 years. Her PHQ-9 score was 16. GAD-7 was >10. Since her heart surgery she's experienced flashbacks, negative alterations in mood, trouble concentrating/hyperalert, and panic. She did not endorse any suicidal ideation.

11/24/20, Malmouna Dlop, NP/Psychiatric Prescriber: The claimant was seen for an assessment and endorsed waking up with severe panic attacks, sleep disturbance, feeling down, and high-stress job. The claimant indicated she wanted to discuss medications with her cardiologist before initiating any changes.

12/04/20, Herman Solomon, MD/Cardiology: The claimant expressed concern that psychiatry couldn't help her. He directed her back to her primary care provider to discuss a possible trial of paroxetine.

12/11/20, Ronald Prucha, MD/Family Medicine: The claimant was seen for stomach cramping. She was treated with antibiotics for sinusitis.

12/14/20, Ronald Prucha, MD/Family Medicine: The claimant was seen for an annual exam with a primary diagnosis of MDD. She endorsed multiple symptoms of anxiety and referred to her job as "very high stress" per provider and that family drama was high. She was prescribed paroxetine 20 mg daily and clonazepam 0.5 mg daily as needed for anxiety. She was directed to follow up in 3 months.

01/04/21, Ronald Prucha, MD/Family Medicine: The doctor completed the Functional Mental Status Evaluation Form. Of note the claimant's emotional state was "sad, slightly anxious". Memory was not tested. Cognition was noted to be within normal limits but the claimant was deemed to not be able to perform any job tasks but that could perform in a quiet stress-free environment. Work readiness would be measured by self-monitoring.

02/12/21, Ronald Prucha, MD/Family Medicine: The claimant reported some response to Paxil 20 mg but ongoing low energy and depression. She was to see a therapist on 03/01/21. She was seen for some orthopedic issues and had a visit to a bariatric surgeon. She opted to continue the same medication.

02/17/21, Ronald Prucha, MD/Family Medicine: The doctor completed a restrictions form. No physical restrictions were checked. Counseling and pharmacotherapy were recommended with anticipated date of restrictions through 6/14/21.

03/01/21, Eric Kelly, LCSW/Therapist: The claimant was seen for a session of solution focused therapy. Weekly therapy sessions were recommended.

04/01/21, Eric Kelly, LCSW/Therapist: The claimant was seen for a session of solution focused therapy.

04/15/21, Eric Kelly, LCSW/Therapist: The claimant was seen for a session of solution focused therapy. She was noted to be making a greater effort to address unresolved issues with her mother.

05/06/21, Eric Kelly, LCSW/Therapist: The claimant was seen for a session of solution focused therapy. PHQ-9 score was 15, no suicidal thoughts.

05/20/21, Eric Kelly, LCSW/Therapist: The claimant was seen for a session of solution focused therapy. This was a termination session as the therapist was relocating from the practice and much of the focus was on her disability claim.

05/28/21, Ronald Prucha, MD/Family Medicine: A phone note indicated the doctor confirmed the claimant has not been seen since February and that she declined behavioral health services due to financial reasons.

06/04/21, Ronald Prucha, MD/Family Medicine: The claimant was seen for a follow up appointment for anxiety and an ankle sprain and listed a variety of work-related stressors for everyone employed by the company and that others were leaving. She reported the disability process as "driving her crazy" and reported using clonazepam 2-3 times a week for the past month for anxiety manifest by crying jags.

06/18/21, Herman Solomon, MD/Cardiology: The claimant was seen for a follow up. The doctor stated he would support a leave of absence and was pleased she was considering bariatric surgery.

07/15/21, Ronald Prucha, MD/Family Medicine: The doctor provided a letter that the claimant remained unable to work.

08/13/21, Herman Solomon, MD/Cardiology: The doctor completed a health questionnaire that indicated that anxiety-related conditions raise the risk for heart problems. He indicated that the claimant's stress could further elevate her blood pressure.

10/01/21, Jennie Buchkovich, PA-C/Cardiology: The claimant was seen for a cardiology follow-up. She was to continue her medications and weight loss program.

10/06/21, Ronald Prucha, MD/Family Medicine: The claimant was seen for a follow up appointment for anxiety, issues with her CPAP and skin problems. The note mentioned seeing her therapist the previous week. She experienced postnasal drip that caused her to choke. She endorsed anxiety, panic, and restlessness. Paroxetine was increased to 40 mg daily.

10/21/21, Eric Kelly, LCSW/Therapist: The provider continued to see the claimant through a separate agency with 14 dates of service from 06/29/21-10/05/21, primarily for a diagnosis of GAD. No sessions notes were provided.

10/26/21, Eric Kelly, LCSW/Therapist: The therapist completed a questionnaire indicating the provide believed her work environment placed extreme stress on the claimant with marked anxiety. The claimant's anxiety and depression were noted to decrease her focus and pace and he believed that her mental condition would result in missing work more than three days a month.

**PROVIDER CONTACT LOG:**
Times are EDT
Case received: 10/27/21
Contact 1: Ronald Prucha, MD/Family Medicine 10/28/21 9:04 am LM with reception
Contact 1: Eric Kelly, LCSW/Therapist 10/28/21 9:14 am called phone number provided, no longer with practice. Contacted AvanceCare location at address listed at 919-322-4722 LM on main office voicemail. Received return call from reception asking to clarify if I am affiliated with the claimant's attorney.
Contact 2: Ronald Prucha, MD/Family Medicine 10/29/21 0732

Contact 2: Eric Kelly, LCSW/Therapist 10/28/21 1452
Response: See Question 7.

**RESPONSE TO QUESTIONS:**

**1. Please identify the primary impairing Diagnosis (es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

The claimant meets criteria for Generalized Anxiety Disorder with panic attacks (F41.1) and Major Depressive Disorder, moderate (F32.1).

A DSM-5 diagnosis of Generalized Anxiety Disorder requires the presence of excessive anxiety and worry on most days for a period of at least 6 months. The person finds it difficult to control the worry and the anxiety and worry are associated with three or more of the following:
1. Restlessness or feeling keyed up or on edge.
2. Being easily fatigued.
3. Difficulty concentrating or mind going blank
4. Irritability
5. Muscle tension
6. Sleep disturbance

There is overlap between many symptoms of anxiety and a depressive disorder. Based on severity of PHQ-9 scores, likely moderate.

A DSM-5 diagnosis of Major depressive disorder requires at least 5 symptoms present over the same 2-week period of time:
depressed mood, loss of interest in activities, significant change in weight or appetite, sleep disturbance, psychomotor agitation or retardation, fatigue or loss of energy, feelings of worthlessness, decreased concentration, or recurrent thoughts of death.

**2. If applicable, identify co morbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Her medical history of Coronary Artery Disease, Obstructive Sleep Apnea, and Hypothyroidism likely contribute to her fatigue. Further delineation of classification and on medical control of these conditions is outside of the scope of psychiatry.

**3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from -3/23/2021 to - present and ongoing, and comment on the expected duration.**

No, given consideration to both the self-reported and clinical information, the evidence does not suggest that the claimant suffers from a medical condition of such severity to warrant the placement of restrictions or limitations on their activities for the time period of -3/23/21 to -present.

The claimant is a 58-year-old female with a history of General Anxiety Disorder (GAD), Major Depressive Disorder (MDD), Hypothyroidism, Coronary Artery Disease (CAD) with history of Coronary Artery Bypass Graft (CABG) in 2018, Hypertension, Sleep Apnea (CPAP dependent), and morbid obesity.

During the time period -3/23/21 to -present she was seen more regularly for therapy (though session notes were not provided) but only saw a medical doctor or advanced practice provider four times.

Two of the visits to primary care listed anxiety among the chief complaint (6/4/21 and 10/6/21) but included other more acute concerns (ankle sprain and postnasal drip/CPAP issue). She did report an increase in her use of prn Klonopin on 6/4/21 related to work-related stress but primarily her disability claim. Most of the documented discussion of work was related to how the environment impacted others versus and workload being unreasonable rather than detailed information of her functional capacity. Paroxetine was not increased until the 10/6/21 appointment.

The cardiology visits (6/18/21 and 10/1/21) were routine follow ups and focused on general health counseling in anticipation of a bariatric surgery consult. There were no medication adjustments that would suggest her anxiety was causing her other conditions to be uncontrolled.

The therapy notes do not clearly outline function with regards to activities of daily living or measures of concentration that would support her therapists' responses on the claimant's attorney questionnaire.

**4. Do medical records support any R&L's that were recommended by treating providers for the timeframes in question?**

No, medical records do not support any R&L's that were recommended by treating providers for the timeframes in question.

The claimant is clearly having symptoms, but anxiety and depression are typically treated on an outpatient basis and do not interfere with ability to work. She did not require hospitalization, urgent care in an emergency department, and declined med changes or psychiatric care at some visits. Her antidepressant medication was only changed once and titrated very late in course.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Yes, the medical management recommended by the provider and/or followed by the claimant is clinically reasonable and consistent with the apparent level of severity of the reported condition.

Selective serotonin reuptake inhibitor (SSRI)'s and therapy are the mainstay of treatment for anxiety and depression. A psychiatrist may have adjusted the medication more quickly and/or met with the claimant at more regular intervals.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

No, no non-medical circumstances are identified in the records that may adversely impact work.

**7. Please contact Dr. Prucha (pcp) and Eric Kelly, LCSW. When contacting the treating providers, please discuss the claimant's condition, treatment, and functional capacity beyond 3/22/21 to the present. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.**

Eric Kelly, LCSW/Therapist stated that he has been treating the claimant for about a year on transfer from another therapist who did an intake. He stated that the claimant remains anxious and is processing her posttraumatic stress in therapy. When questioned re: PTSD related symptoms he discussed her attachments with mother and parentified child role due to maternal mental health issues. Other stressors include health and loss. He stated that he was not the clinician who used that diagnosis, and his sessions are solution focused, "what the client brings" so he could not comment on additional PTSD criteria or her day-to-day functioning. He has not had any contact with her husband. He referred to the questionnaire when asked about specific examples of how her concentration issues manifest in session or everyday life, he stated that she sometimes needed redirection in session for getting stuck on a topic and that inability to work was "the totality" of her psychiatric, medical, and family interactions. Reinforced that I am focused on psychiatric concerns from 3/22/21-present and he added that she has made minimal progress with therapy as progress forward is "inconsistent".

Dr. Prucha confirmed that her high blood pressure and other cardiac issues have been well controlled and that no medications were needed to address those co-morbid concerns. He stated that she feels "at war" with her disability company and is reliant on the health insurance plan provided by her employer. When questioned re: other updated clinical, treatment or functional capacity he stated that all information would be present in the note, and he can only comment on the patient's report.

The consensus is solely that the claimant is symptomatic but limited detail on severity and frequency other than the patient's claim that she cannot work. There is little information re: her functional capacity at home and much of the anxiety reported recently is tied directly to her upset of her disability claim. Symptoms reported by a patient are not the same as impairment and clear descriptions of frequency and functional impairment are needed.
A physician supporting a leave of absence to focus on health is not the same as supporting a disability claim. For example, in the case where a questionnaire is completed in support of a disability appeal, the clinical documentation should support some impact on activities of daily living, social functioning, and concentration, especially if there is an example of how those functional impairments lead to deterioration or decompensation in a complex or work-like setting.

A reviewer looks for consistency in the documentation. For example, if a patient complains of concentration difficulties to the point they cannot work, a reviewer looks for treating providers reports of difficulties with concentration on activities of daily living like driving or remembering appointments or an objective measure of attention. If concentration and memory are consistently impaired, notes may reflect consideration for psychological testing or other assessment.

Finally, if a claimant remains severely impaired and the treating providers state they are not progressing, notes typically reflect a change in treatment course or modality and/or comment on the need for a second opinion from a specialist.

Respectfully,

Candace Good, MD
Board certified Psychiatrist
Medical License MD073835L

ECN
Corporate Office
Exam Coordinators Network A division of Genex Services, LLC

Claimant Name: Kim Naugle
Claim Number: 10839136
Case Number: 190637-1

"I, Candace R Good, MD, am a physician duly licensed to practice medicine in the State of PA. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

Signature of Physician

Date 11/9/2021

Medical/Professional License # MD073835L

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 453-9463
Local: (561) 932-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com Web: www.ecnime.com

November 09, 2021

Eric Kelly, LCSW:
T: (866) 272-7826
F: (919) 856-4677

CLAIMANT: Kim Naugle
ECN #: 190637-1
CLAIM #: 10839136
DATE OF LOSS: 12/24/2020
DATE OF BIRTH:

This letter is to confirm the conversation we had regarding your patient Kim Naugle on 10/28/2021

The following was discussed:

> Eric Kelly, LCSW/Therapist stated that he has been treating the claimant for about a year on transfer from another therapist who did an intake. He stated that the claimant remains anxious and is processing her posttraumatic stress in therapy. When questioned re: PTSD related symptoms he discussed her attachments with mother and parentified child role due to maternal mental health issues. Other stressors include health and loss. He stated that he was not the clinician who used that diagnosis, and his sessions are solution focused, "what the client brings" so he could not comment on additional PTSD criteria or her day-to-day functioning. He has not had any contact with her husband. He referred to the questionnaire when asked about specific examples of how her concentration issues manifest in session or everyday life, he stated that she sometimes needed redirection in session for getting stuck on a topic and that inability to work was "the totality" of her psychiatric, medical, and family interactions. Reinforced that I am focused on psychiatric concerns from 3/22/21-present and he added that she has made minimal progress with therapy as progress forward is "inconsistent".

Agree:

____________________________________
Signature and date

Disagree:

____________________________________
Signature and date

If you disagree, please explain:

________________________________________________________

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 453-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

____________________________________________________________

____________________________________________________________

Please fill out and sign the above indicating your agreement or disagreement by 11/16/2021.

Sincerely,

*Candace R Good, MD*

Candace R Good, MD

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 453-9463
Local: (561) 932-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com Web: www.ecnime.com

November 09, 2021

Eric Kelly, LCSW:
T: (866) 272-7826
F: (919) 856-4677

CLAIMANT: Kim Naugle
ECN #: 190637-1
CLAIM #: 10839136
DATE OF LOSS: 12/24/2020
DATE OF BIRTH:

This letter is to confirm the conversation we had regarding your patient Kim Naugle on 10/28/2021

The following was discussed:

> Eric Kelly, LCSW/Therapist stated that he has been treating the claimant for about a year on transfer from another therapist who did an intake. He stated that the claimant remains anxious and is processing her posttraumatic stress in therapy. When questioned re: PTSD related symptoms he discussed her attachments with mother and parentified child role due to maternal mental health issues. Other stressors include health and loss. He stated that he was not the clinician who used that diagnosis, and his sessions are solution focused, "what the client brings" so he could not comment on additional PTSD criteria or her day-to-day functioning. He has not had any contact with her husband. He referred to the questionnaire when asked about specific examples of how her concentration issues manifest in session or everyday life, he stated that she sometimes needed redirection in session for getting stuck on a topic and that inability to work was "the totality" of her psychiatric, medical, and family interactions. Reinforced that I am focused on psychiatric concerns from 3/22/21-present and he added that she has made minimal progress with therapy as progress forward is "inconsistent".

Agree:

______________________________
Signature and date

Disagree:

______________________________
Signature and date

If you disagree, please explain:

__________________________________________________

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com Web: www.ecnime.com

---

---

Please fill out and sign the above indicating your agreement or disagreement by 11/16/2021.

Sincerely,

*Candace R Good, MD*

Candace R Good, MD

**From:** Fax2Mail powered by OpenText
**To:** Osborne, Sandi
**Subject:** AP Teleconference Letter_Naugle
**Date:** Tuesday, November 9, 2021 4:55:29 PM

EXTERNAL: This email was received from outside of Genex Services. Please do not click links or open attachments unless you know the content is safe.

| MAIL2FAX DETAILED DELIVERY REPORT | |
|---|---|
| **Attention** | Sandi Osborne |
| **Job Number** | 1733973440 |
| **Sent By User** | F2M/38215396141 |
| **Entered Fax2Mail System** | 11/09 13:53 |
| **Report Generated** | 11/09 13:55 |
| **Subject** | AP Teleconference Letter_Naugle |
| **Page Count** | 3 (including cover sheet) |

| SUMMARY | | |
|---|---|---|
| **Sent: 1** | **Errors: 0** | **Cancelled: 0** |
| **Total: 1** | | |

| Destination | Status | Date | Time | Num. Retries |
|---|---|---|---|---|
| 9198564677 | SENT | 11/09 | 13:54 | 1 |

**From:** Fax2Mail powered by OpenText
**To:** Osborne, Sandi
**Subject:** AP Teleconference Letter_Naugle
**Date:** Tuesday, November 9, 2021 5:01:47 PM

EXTERNAL: This email was received from outside of Genex Services. Please do not click links or open attachments unless you know the content is safe.

| MAIL2FAX DETAILED DELIVERY REPORT | |
|---|---|
| **Attention** | Sandi Osborne |
| **Job Number** | 1436596111 |
| **Sent By User** | F2M/38215396141 |
| **Entered Fax2Mail System** | 11/09 13:59 |
| **Report Generated** | 11/09 14:01 |
| **Subject** | AP Teleconference Letter_Naugle |
| **Page Count** | 3 (including cover sheet) |

| SUMMARY | | |
|---|---|---|
| **Sent: 1** | **Errors: 0** | **Cancelled: 0** |
| **Total: 1** | | |

| Destination | Status | Date | Time | Num. Retries |
|---|---|---|---|---|
| 9192356598 | SENT | 11/09 | 14:01 | 1 |

Mark A. Sims MD, MBA,MHA

Board Certified: Cardiovascular Diseases

Florida Medical License: 31653

Claimant: Kim Naugle

Claim Number: 10839136

ECN #: 190637-2

Primary Diagnosis: Coronary Artery Disease S/P CABG, Anxiety

Date of Disability: 12/24/2020

Date of Review: 11/10/2021

Diagnoses:

1. Coronary artery disease.
2. Status post CABG
3. Hypertension.
4. Obesity.
5. ? Takotsubo Cardiomyopathy.
6. Obstructive sleep apnea (OSA).
7. PTSD.
8. Generalized anxiety.

Medications:

1. Aspirin 81 mg by mouth daily
2. Benazepril-hydrochlorothiazide 20-12.5 mg per day.
3. Hydralazine 50 mg by mouth twice a day
4. Metoprolol succinate 100 mg by mouth daily

12/4/20: Cardiology office visit: Hemant Solomon, M.D.: Pulse 67, BP 140/80, BMI 50.91.

Diagnoses: CAD, without angina, anxiety.

The claimant underwent a carotid ultrasound 8/1/18 which was normal. Transthoracic echocardiography performed 8/1/18, was notable for a 55-60% EF, without valvular disease and normal diastolic function. 8/7/18. The claimant underwent CABG with a LIMA to the LAD, SVG to the D- 2 branch of the LAD. Post operatively she developed paroxysmal atrial fibrillation. She was discharged on postoperative day 4. An event monitor was performed 8/22/18-9/4/18. This revealed evidence for normal sinus rhythm, symptoms of palpitations and rapid heartbeats, which corresponded to episodes of sinus bradycardia and a 4-beat atrial run. A myocardial perfusion imaging stress test was performed 10/2019 was normal, EF 73%. The claimant exercised for 5 minutes and 7 seconds on a Bruce protocol to a Met level of 7. The claimant works as a project manager from home. She is concerned with anxiety and is requesting a leave of absence on this basis. Dr. Solomon indicated that he fully supported the leave of absence if the claimant's PCP agrees. She will be seeing a Bariatric Surgeon early in January 2021. She was encouraged to exercise for 30 minutes per day. No changes were made today. Cardiac and pulmonary, physical exam was unremarkable. ECG was notable for normal sinus rhythm, normal. Assessment: CAD, without angina, stable, anxiety.

12/14/20: Family Medicine office visit: Ronald Purcha M.D.: 61, BP 130/82.

The claimant complained of job and family related stress. Cardiac and pulmonary physical exam was unremarkable. Assessment: Morbid obesity, anxiety, depression. FMLA-pending.

2/17/21: Restriction's form: Ronald Purcha M.D.:

The claimant was opined to be incapable functioning at work due to mental health issues.

6/4/21: Ronald Purcha M.D.: Pulse 54, 146/65, blood pressure.

No coronary artery- vascular-related issues were referenced in this note.

6/18/21: Cardiology office visit: Hemant Solomon M.D.: Pulse 60, BP 170/90.

The claimant was seen for 6-month follow-up. Diagnoses of essential hypertension, CAD with stable angina were referenced. Cardiac and pulmonary physical exam was unremarkable. ECG was notable for normal sinus rhythm-normal. Assessment CAD with stable angina. (Note: No mention of chest pain was included in this note). Essential hypertension was referenced as well. Plan: Return to clinic in 3 months EPP for blood pressure control. No medication changes were made.

7/15/21: Ronald Purcha M.D.: The claimant was unable to work due to underlying medical condition (no specifics were provided).

8/13/21: Cardiology: Questionnaire: Dr. Hemant Solomon

1. Anxiety-related problems which were noted to increase the risk of cardiovascular-related problems. Takotsubo Cardiomyopathy was mentioned (the records provided for review did not include any other mention of Takotsubo Cardiomyopathy which is a stress provoked Cardiomyopathy).

2. The claimant has coronary artery disease.

3. Generalized anxiety, depression and PTSD can increase blood pressure levels.

4. Claimant has a high stress job. This in conjunction with the mental issues could increase blood pressure.

5. Exacerbation of the claimant's condition could result in increased levels of distraction while working.

10/1/21: Cardiology Office Visit: Jennie Burchkovich PA-C: P: 64, BP 140/80

Diagnoses: Angina, Hypertension

Cardiac and pulmonary review of systems and physical exam were unremarkable. Assessment: CAD with stable angina, essential hypertension. Plan: Continue current Rx, RTC 4 weeks, once daily BP checks, weights loss with a DASH diet.

10/6/21: FP Office Visit: Ronald Purcha MD: P 51, BP 130/80

Diagnoses: Anxiety and Hypertension were referenced as chronic problems. Cardiac and pulmonary review of systems were notable for the absence of chest pain, palpitations, and dyspnea. No associated agents to hypertension noted. Risk factors to CAD-obesity. Current treatment resulted in mild improvement. There is no history of CHF, no symptoms of thyroid disease. Cardiac and pulmonary review of systems and physical exam were unremarkable. Assessment: Anxiety, hypertension, obesity, s/p CABG, morbid obesity-employ dietary efforts., hypothyroidism-controlled, essential hypertension-controlled

**AP Contact Attempts:**

1. 10/28/21: 1:55 PM, Dr. Hemant Solomon was contacted at (913) 232-0322 after first attempting contact at (913) 350-8000 it was not possible to leave a message at either number which appeared to be hospital public relations departments. I subsequently checked for additional phone contact numbers online with no success in locating Dr. Solomon.
2. 10.29/21: 10:17 AM contact was again attempted as above with no success in reaching Dr. Solomon or being able to leave a message

Case Summary:

The claimant is a 58-year-old female who works as a project manager. She underwent CABG 8/7/21 complicated by a brief period of post-operative Atrial Fibrillation, she was discharged on post-operative day 4. The claimant does have a history of hypertension, obesity (BMI 50.91), palpitations, as well as anxiety. She has requested impairment status based on her ongoing anxiety. Dr. Solomon opined in a 8/13/21 Cardiology Questionnaire that the claimant's anxiety related

problem could increase her risk of developing cardiovascular related problems, he did mention Takotsubo Cardiomyopathy (Stress Provoked Cardiomyopathy) however the records provided for review did not support this diagnosis other than this single mention. Dr. Solomon also noted that anxiety, depression and PTSD can contribute to elevation of blood pressure and that the claimant's high-stress job in conjunction with her mental health issues could elevate her BP and cause distraction. Jennie Burchkovich in a 10/1/21 Cardiology progress note mentions CAD with stable angina however, the records do not support post CABG angina, LV dysfunction, hemodynamically significant arrhythmias, or recurrent angina.

Questions:

1. **Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

   The claimant does not have any cardiovascular based impairing diagnoses from 3/23/21 and ongoing. Her impairment if any appears to be related to anxiety the assessment of which is outside my area of expertise as a Cardiologist.

2. **If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

   There are no cardiovascular based co-morbid diagnoses contributing to impairment however the claimant is noted to be morbidly obese (E66.01)

3. **Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 3/23/2021 to - present, and comment on the expected duration.**

   It is my opinion that no cardiovascular based diagnoses, treatment, or medications support impairment from 3/23/21 and ongoing. The medical records provided for review did not support ongoing angina, LV dysfunction, arrhythmias, from 3/23/21 and ongoing. No cardiovascular test-based data were supplied during the timeframe in question which would definitively support ongoing cardiovascular based impairment. Should additional data become available that would alter/impact this assessment it should of course be reviewed.

4. **Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

   The medical records provided for review do not support cardiovascular based impairment from 3/23/21 and ongoing. Dr. Solomon does opine that the claimant's anxiety is impairing to a level that would preclude full-time work. Assessment of any contribution of the claimant's Psychiatric diagnoses to impairment is outside my area of expertise as a Cardiologist.

5. **Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

The medical management recommended by the claimant's providers appear clinically reasonable and consistent with the apparent level of severity for her reported cardiovascular based conditions. She is free of angina, her hypertension is reasonably well controlled, she is on lipid lowering therapy, and is free of angina, chf, and hemodynamically significant arrhythmias.

6. **Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

   The claimant appears to suffer from anxiety, assessment of any contribution of this diagnosis to impairment is outside my expertise as a Cardiologist however as stated previously cardiovascular based impairment is not supported by the records provided for review from 3/23/21 and ongoing.

7. **Please contact Dr. Solomon/Jennie Buchkovich, PA-C (cardio). When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity beyond 3/22/21 to the present. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.**
   Please see documentation of AP contact section of this report.

Mark A. Sims MD

Mark A. Sims MD, MBA,MHA

Board Certified Cardiovascular Diseases/Internal Medicine

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office

Claimant Name: Kim Naugle
Claim Number: 10839136
Case Number: 190637-2

"I, Mark A Sims, MD, am a physician duly licensed to practice medicine in the State of FL. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

Mark A Sims MD

Signature of Physician Date 11/10/2021

Medical/Professional License # 31653

Mark A. Sims MD, MBA,MHA

Board Certified: Cardiovascular Diseases

Florida Medical License: 31653

Claimant: Kim Naugle

Claim Number: 10839136

ECN #: 190637-2

Primary Diagnosis: Coronary Artery Disease S/P CABG, Anxiety

Date of Disability: 12/24/2020

Date of Review: 11/10/2021

Diagnoses:

1. Coronary artery disease.
2. Status post CABG
3. Hypertension.
4. Obesity.
5. ? Takotsubo Cardiomyopathy.
6. Obstructive sleep apnea (OSA).
7. PTSD.
8. Generalized anxiety.

Medications:

1. Aspirin 81 mg by mouth daily
2. Benazepril-hydrochlorothiazide 20-12.5 mg per day.
3. Hydralazine 50 mg by mouth twice a day
4. Metoprolol succinate 100 mg by mouth daily

12/4/20: Cardiology office visit: Hemant Solomon, M.D.: Pulse 67, BP 140/80, BMI 50.91.

Diagnoses: CAD, without angina, anxiety.

The claimant underwent a carotid ultrasound 8/1/18 which was normal. Transthoracic echocardiography performed 8/1/18, was notable for a 55-60% EF, without valvular disease and normal diastolic function. 8/7/18. The claimant underwent CABG with a LIMA to the LAD, SVG to the D- 2 branch of the LAD. Post operatively she developed paroxysmal atrial fibrillation. She was discharged on postoperative day 4. An event monitor was performed 8/22/18-9/4/18. This revealed evidence for normal sinus rhythm, symptoms of palpitations and rapid heartbeats, which corresponded to episodes of sinus bradycardia and a 4-beat atrial run. A myocardial perfusion imaging stress test was performed 10/2019 was normal, EF 73%. The claimant exercised for 5 minutes and 7 seconds on a Bruce protocol to a Met level of 7. The claimant works as a project manager from home. She is concerned with anxiety and is requesting a leave of absence on this basis. Dr. Solomon indicated that he fully supported the leave of absence if the claimant's PCP agrees. She will be seeing a Bariatric Surgeon early in January 2021. She was encouraged to exercise for 30 minutes per day. No changes were made today. Cardiac and pulmonary, physical exam was unremarkable. ECG was notable for normal sinus rhythm, normal. Assessment: CAD, without angina, stable, anxiety.

12/14/20: Family Medicine office visit: Ronald Purcha M.D.: 61, BP 130/82.

The claimant complained of job and family related stress. Cardiac and pulmonary physical exam was unremarkable. Assessment: Morbid obesity, anxiety, depression. FMLA-pending.

2/17/21: Restriction's form: Ronald Purcha M.D.:

The claimant was opined to be incapable functioning at work due to mental health issues.

6/4/21: Ronald Purcha M.D.: Pulse 54, 146/65, blood pressure.

No coronary artery- vascular-related issues were referenced in this note.

6/18/21: Cardiology office visit: Hemant Solomon M.D.: Pulse 60, BP 170/90.

The claimant was seen for 6-month follow-up. Diagnoses of essential hypertension, CAD with stable angina were referenced. Cardiac and pulmonary physical exam was unremarkable. ECG was notable for normal sinus rhythm-normal. Assessment CAD with stable angina. (Note: No mention of chest pain was included in this note). Essential hypertension was referenced as well. Plan: Return to clinic in 3 months EPP for blood pressure control. No medication changes were made.

7/15/21: Ronald Purcha M.D.: The claimant was unable to work due to underlying medical condition (no specifics were provided).

8/13/21: Cardiology: Questionnaire: Dr. Hemant Solomon

1. Anxiety-related problems which were noted to increase the risk of cardiovascular-related problems. Takotsubo Cardiomyopathy was mentioned (the records provided for review did not include any other mention of Takotsubo Cardiomyopathy which is a stress provoked Cardiomyopathy).

2. The claimant has coronary artery disease.

3. Generalized anxiety, depression and PTSD can increase blood pressure levels.

4. Claimant has a high stress job. This in conjunction with the mental issues could increase blood pressure.

5. Exacerbation of the claimant's condition could result in increased levels of distraction while working.

10/1/21: Cardiology Office Visit: Jennie Burchkovich PA-C: P: 64, BP 140/80

Diagnoses: Angina, Hypertension

Cardiac and pulmonary review of systems and physical exam were unremarkable. Assessment: CAD with stable angina, essential hypertension. Plan: Continue current Rx, RTC 4 weeks, once daily BP checks, weights loss with a DASH diet.

10/6/21: FP Office Visit: Ronald Purcha MD: P 51, BP 130/80

Diagnoses: Anxiety and Hypertension were referenced as chronic problems. Cardiac and pulmonary review of systems were notable for the absence of chest pain, palpitations, and dyspnea. No associated agents to hypertension noted. Risk factors to CAD-obesity. Current treatment resulted in mild improvement. There is no history of CHF, no symptoms of thyroid disease. Cardiac and pulmonary review of systems and physical exam were unremarkable. Assessment: Anxiety, hypertension, obesity, s/p CABG, morbid obesity-employ dietary efforts., hypothyroidism-controlled, essential hypertension-controlled

**AP Contact Attempts:**

1. 10/28/21: 1:55 PM, Dr. Hemant Solomon was contacted at (913) 232-0322 after first attempting contact at (913) 350-8000 it was not possible to leave a message at either number which appeared to be hospital public relations departments. I subsequently checked for additional phone contact numbers online with no success in locating Dr. Solomon.
2. 10.29/21: 10:17 AM contact was again attempted as above with no success in reaching Dr. Solomon or being able to leave a message

Case Summary:

The claimant is a 58-year-old female who works as a project manager. She underwent CABG 8/7/21 complicated by a brief period of post-operative Atrial Fibrillation, she was discharged on post-operative day 4. The claimant does have a history of hypertension, obesity (BMI 50.91), palpitations, as well as anxiety. She has requested impairment status based on her ongoing anxiety. Dr. Solomon opined in a 8/13/21 Cardiology Questionnaire that the claimant's anxiety related

problem could increase her risk of developing cardiovascular related problems, he did mention Takotsubo Cardiomyopathy (Stress Provoked Cardiomyopathy) however the records provided for review did not support this diagnosis other than this single mention. Dr. Solomon also noted that anxiety, depression and PTSD can contribute to elevation of blood pressure and that the claimant's high-stress job in conjunction with her mental health issues could elevate her BP and cause distraction. Jennie Burchkovich in a 10/1/21 Cardiology progress note mentions CAD with stable angina however, the records do not support post CABG angina, LV dysfunction, hemodynamically significant arrhythmias, or recurrent angina.

Questions:

1. **Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

   The claimant does not have any cardiovascular based impairing diagnoses from 3/23/21 and ongoing. Her impairment if any appears to be related to anxiety the assessment of which is outside my area of expertise as a Cardiologist.

2. **If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

   There are no cardiovascular based co-morbid diagnoses contributing to impairment however the claimant is noted to be morbidly obese (E66.01)

3. **Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 3/23/2021 to - present, and comment on the expected duration.**

   It is my opinion that no cardiovascular based diagnoses, treatment, or medications support impairment from 3/23/21 and ongoing. The medical records provided for review did not support ongoing angina, LV dysfunction, arrhythmias, from 3/23/21 and ongoing. No cardiovascular test-based data were supplied during the timeframe in question which would definitively support ongoing cardiovascular based impairment. Should additional data become available that would alter/impact this assessment it should of course be reviewed.

4. **Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

   The medical records provided for review do not support cardiovascular based impairment from 3/23/21 and ongoing. Dr. Solomon does opine that the claimant's anxiety is impairing to a level that would preclude full-time work. Assessment of any contribution of the claimant's Psychiatric diagnoses to impairment is outside my area of expertise as a Cardiologist.

5. **Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Lincoln/Naugle 0645

The medical management recommended by the claimant's providers appear clinically reasonable and consistent with the apparent level of severity for her reported cardiovascular based conditions. She is free of angina, her hypertension is reasonably well controlled, she is on lipid lowering therapy, and is free of angina, chf, and hemodynamically significant arrhythmias.

6. **Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

   The claimant appears to suffer from anxiety, assessment of any contribution of this diagnosis to impairment is outside my expertise as a Cardiologist however as stated previously cardiovascular based impairment is not supported by the records provided for review from 3/23/21 and ongoing.

7. **Please contact Dr. Solomon/Jennie Buchkovich, PA-C (cardio). When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity beyond 3/22/21 to the present. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.**
   Please see documentation of AP contact section of this report.

Mark A. Sims MD, MBA,MHA

Board Certified Cardiovascular Diseases/Internal Medicine

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: Kim Naugle
Claim Number: 10839136
Case Number: 190637-2

"I, Mark A Sims, MD, am a physician duly licensed to practice medicine in the State of FL. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

Mark A. Sims MD

Signature of Physician Date 11/10/2021

Medical/Professional License # 31653

Mark A. Sims MD, MBA,MHA

Board Certified: Cardiovascular Diseases

Florida Medical License: 31653

Claimant: Kim Naugle

Claim Number: 10839136

ECN #: 190637-2

Primary Diagnosis: Coronary Artery Disease S/P CABG, Anxiety

Date of Disability: 12/24/2020

Date of Review: 11/10/2021

Diagnoses:

1. Coronary artery disease.
2. Status post CABG
3. Hypertension.
4. Obesity.
5. ? Takotsubo Cardiomyopathy.
6. Obstructive sleep apnea (OSA).
7. PTSD.
8. Generalized anxiety.

Medications:

1. Aspirin 81 mg by mouth daily
2. Benazepril-hydrochlorothiazide 20-12.5 mg per day.
3. Hydralazine 50 mg by mouth twice a day
4. Metoprolol succinate 100 mg by mouth daily

12/4/20: Cardiology office visit: Hemant Solomon, M.D.: Pulse 67, BP 140/80, BMI 50.91.

Diagnoses: CAD, without angina, anxiety.

The claimant underwent a carotid ultrasound 8/1/18 which was normal. Transthoracic echocardiography performed 8/1/18, was notable for a 55-60% EF, without valvular disease and normal diastolic function. 8/7/18. The claimant underwent CABG with a LIMA to the LAD, SVG to the D- 2 branch of the LAD. Post operatively she developed paroxysmal atrial fibrillation. She was discharged on postoperative day 4. An event monitor was performed 8/22/18-9/4/18. This revealed evidence for normal sinus rhythm, symptoms of palpitations and rapid heartbeats, which corresponded to episodes of sinus bradycardia and a 4-beat atrial run. A myocardial perfusion imaging stress test was performed 10/2019 was normal, EF 73%. The claimant exercised for 5 minutes and 7 seconds on a Bruce protocol to a Met level of 7. The claimant works as a project manager from home. She is concerned with anxiety and is requesting a leave of absence on this basis. Dr. Solomon indicated that he fully supported the leave of absence if the claimant's PCP agrees. She will be seeing a Bariatric Surgeon early in January 2021. She was encouraged to exercise for 30 minutes per day. No changes were made today. Cardiac and pulmonary, physical exam was unremarkable. ECG was notable for normal sinus rhythm, normal. Assessment: CAD, without angina, stable, anxiety.

12/14/20: Family Medicine office visit: Ronald Purcha M.D.: 61, BP 130/82.

The claimant complained of job and family related stress. Cardiac and pulmonary physical exam was unremarkable. Assessment: Morbid obesity, anxiety, depression. FMLA-pending.

2/17/21: Restriction's form: Ronald Purcha M.D.:

The claimant was opined to be incapable functioning at work due to mental health issues.

6/4/21: Ronald Purcha M.D.: Pulse 54, 146/65, blood pressure.

No coronary artery- vascular-related issues were referenced in this note.

6/18/21: Cardiology office visit: Hemant Solomon M.D.: Pulse 60, BP 170/90.

The claimant was seen for 6-month follow-up. Diagnoses of essential hypertension, CAD with stable angina were referenced. Cardiac and pulmonary physical exam was unremarkable. ECG was notable for normal sinus rhythm-normal. Assessment CAD with stable angina. (Note: No mention of chest pain was included in this note). Essential hypertension was referenced as well. Plan: Return to clinic in 3 months EPP for blood pressure control. No medication changes were made.

7/15/21: Ronald Purcha M.D.: The claimant was unable to work due to underlying medical condition (no specifics were provided).

8/13/21: Cardiology: Questionnaire: Dr. Hemant Solomon

1. Anxiety-related problems which were noted to increase the risk of cardiovascular-related problems. Takotsubo Cardiomyopathy was mentioned (the records provided for review did not include any other mention of Takotsubo Cardiomyopathy which is a stress provoked Cardiomyopathy).

2. The claimant has coronary artery disease.

3. Generalized anxiety, depression and PTSD can increase blood pressure levels.

4. Claimant has a high stress job. This in conjunction with the mental issues could increase blood pressure.

5. Exacerbation of the claimant's condition could result in increased levels of distraction while working.

10/1/21: Cardiology Office Visit: Jennie Burchkovich PA-C: P: 64, BP 140/80

Diagnoses: Angina, Hypertension

Cardiac and pulmonary review of systems and physical exam were unremarkable. Assessment: CAD with stable angina, essential hypertension. Plan: Continue current Rx, RTC 4 weeks, once daily BP checks, weights loss with a DASH diet.

10/6/21: FP Office Visit: Ronald Purcha MD: P 51, BP 130/80

Diagnoses: Anxiety and Hypertension were referenced as chronic problems. Cardiac and pulmonary review of systems were notable for the absence of chest pain, palpitations, and dyspnea. No associated agents to hypertension noted. Risk factors to CAD-obesity. Current treatment resulted in mild improvement. There is no history of CHF, no symptoms of thyroid disease. Cardiac and pulmonary review of systems and physical exam were unremarkable. Assessment: Anxiety, hypertension, obesity, s/p CABG, morbid obesity-employ dietary efforts., hypothyroidism-controlled, essential hypertension-controlled

**AP Contact Attempts:**

1. 10/28/21: 1:55 PM, Dr. Hemant Solomon was contacted at (913) 232-0322 after first attempting contact at (913) 350-8000 it was not possible to leave a message at either number which appeared to be hospital public relations departments. I subsequently checked for additional phone contact numbers online with no success in locating Dr. Solomon.
2. 10.29/21: 10:17 AM contact was again attempted as above with no success in reaching Dr. Solomon or being able to leave a message

Case Summary:

The claimant is a 58-year-old female who works as a project manager. She underwent CABG 8/7/21 complicated by a brief period of post-operative Atrial Fibrillation, she was discharged on post-operative day 4. The claimant does have a history of hypertension, obesity (BMI 50.91), palpitations, as well as anxiety. She has requested impairment status based on her ongoing anxiety. Dr. Solomon opined in a 8/13/21 Cardiology Questionnaire that the claimant's anxiety related

problem could increase her risk of developing cardiovascular related problems, he did mention Takotsubo Cardiomyopathy (Stress Provoked Cardiomyopathy) however the records provided for review did not support this diagnosis other than this single mention. Dr. Solomon also noted that anxiety, depression and PTSD can contribute to elevation of blood pressure and that the claimant's high-stress job in conjunction with her mental health issues could elevate her BP and cause distraction. Jennie Burchkovich in a 10/1/21 Cardiology progress note mentions CAD with stable angina however, the records do not support post CABG angina, LV dysfunction, hemodynamically significant arrhythmias, or recurrent angina.

Questions:

1. **Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

   The claimant does not have any cardiovascular based impairing diagnoses from 3/23/21 and ongoing. Her impairment if any appears to be related to anxiety the assessment of which is outside my area of expertise as a Cardiologist.

2. **If applicable, identify comorbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

   There are no cardiovascular based co-morbid diagnoses contributing to impairment however the claimant is noted to be morbidly obese (E66.01)

3. **Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from - 3/23/2021 to - present, and comment on the expected duration.**

   It is my opinion that no cardiovascular based diagnoses, treatment, or medications support impairment from 3/23/21 and ongoing. The medical records provided for review did not support ongoing angina, LV dysfunction, arrhythmias, from 3/23/21 and ongoing. No cardiovascular test-based data were supplied during the timeframe in question which would definitively support ongoing cardiovascular based impairment. Should additional data become available that would alter/impact this assessment it should of course be reviewed.

4. **Do medical records support any R&Ls that were recommended by treating providers for the timeframes in question?**

   The medical records provided for review do not support cardiovascular based impairment from 3/23/21 and ongoing. Dr. Solomon does opine that the claimant's anxiety is impairing to a level that would preclude full-time work. Assessment of any contribution of the claimant's Psychiatric diagnoses to impairment is outside my area of expertise as a Cardiologist.

5. **Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

The medical management recommended by the claimant's providers appear clinically reasonable and consistent with the apparent level of severity for her reported cardiovascular based conditions. She is free of angina, her hypertension is reasonably well controlled, she is on lipid lowering therapy, and is free of angina, chf, and hemodynamically significant arrhythmias.

6. **Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

   The claimant appears to suffer from anxiety, assessment of any contribution of this diagnosis to impairment is outside my expertise as a Cardiologist however as stated previously cardiovascular based impairment is not supported by the records provided for review from 3/23/21 and ongoing.

7. **Please contact Dr. Solomon/Jennie Buchkovich, PA-C (cardio). When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity beyond 3/22/21 to the present. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.**
   Please see documentation of AP contact section of this report.



Mark A. Sims MD, MBA,MHA

Board Certified Cardiovascular Diseases/Internal Medicine

Lincoln/Naugle 0651

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: Kim Naugle
Claim Number: 10839136
Case Number: 190637-2

"I, Mark A Sims, MD, am a physician duly licensed to practice medicine in the State of FL. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

Signature of Physician Date 11/10/2021

Medical/Professional License # 31653

**From:**Palkewick, Dave <Dave.Palkewick@genexservices.com>
**Sent:**Wed, 10 Nov 2021 22:25:02 +0000
**To:**VendorReferrals
**Subject:**K.Naugle Claim # 10839136 - 190637-2
**Attachments:**Invoice_6754143BOCA.docx.pdf

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Good afternoon,

Attached please find the invoice for the above-named claimant.

If we can further assist you with this file, please don't hesitate to give us a call.

Thank you for trusting ECN/Genex with your referral. We value your partnership and look forward to working with you.

Thank you,

**Dave Palkewick**
***Accounting Coordinator***
ECN, a division of Genex Services
**T**: 855-644-4298 option 5
**F**: 561-287-4486

**Upcoming PTO:**

urac
ACCREDITED
Independent Medical Examinations
Expires 04/01/2024

All electronic communications from Genex are confidential, unpublished property of Genex. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. This document is intended for the use of the individual(s) or entity to which it is addressed, and may contain information that is privileged and confidential, including personal health information, and applicable law may prohibit further disclosure of this information. If the recipient of the message is not the intended addressee, or the employee or agent responsible for delivering this message to the addressee, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender. Please note the following from the HIPAA Privacy Rule Standards: A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by

law, that provide benefits for work-related injuries or illness without regard to fault. Refer to 45 CFR 164.512(l)

**From:**Monashkin, Wendy <Wendy.Monashkin@genexservices.com>
**Sent:**Wed, 10 Nov 2021 22:10:00 +0000
**To:**VendorReferrals
**Subject:**K. Naugle Claim #10839136
**Attachments:**Peer Review_6753448BOCA.PDF

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hi,
Attached is the Peer Review for the above referenced claimant. Invoice to follow. If we can further assist you with this file, please don't hesitate to give us a call.
Thanks for the referral,

**Wendy Monashkin**
***Quality Assurance Coordinator***
Exam Coordinators Network, a division of Genex Services
**T**: 877-643-9463
**F**: 561-392-5881
**Access our portal at:** View My Cases

urac
ACCREDITED
Independent Medical Examinations
Expires 04/01/2024

All electronic communications from ECN / Genex are confidential, unpublished property of Genex. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. This document is intended for the use of the individual(s) or entity to which it is addressed, and may contain information that is privileged and confidential, including personal health information, and applicable law may prohibit further disclosure of this information. If the recipient of the message is not the intended addressee, or the employee or agent responsible for delivering this message to the addressee, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender. Please note the following from the HIPAA Privacy Rule Standards: A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault. Refer to 45 CFR 164.512(l)

All electronic communications from Genex are confidential, unpublished property of Genex. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. This document is intended for the use of the individual(s) or entity to which it is addressed, and may contain information that is privileged and confidential, including personal health information, and applicable law may prohibit further disclosure of this information. If the recipient of the message is not the intended addressee, or the employee or agent responsible for delivering this message to the addressee, you are hereby notified that any dissemination, distribution or copying

of this communication is strictly prohibited. If you received this communication in error, please notify the sender. Please note the following from the HIPAA Privacy Rule Standards: A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault. Refer to 45 CFR 164.512(l)

ECN
Exam Coordinators Network A division of Genex Services, LLC

**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

**Invoice:** **BOCA 122454** **Date** **11/10/2021**

***Bill To:***

**Brook Mikulick**
**Lincoln Financial-London, KY**
**P.O. Box 7207**
**London, KY 40742**

**Claim #** 10839136
**Date of Loss:** 12/24/2020
**ECN #** 190637-2
**Account #**

**Claimant** Kim Naugle

| | | |
|---|---|---|
| 10/27/2021 | Peer Review - Short Term Disability: Service Provider: Mark A Sims, MD Specialty: Cardiology | $660.00 |

**SubTotal** $660.00

**Final Invoice Total** $660.00

***Remit To:***
Exam Coordinators Network
440 E. Swedesford Road
Suite 1000
Wayne, PA 19087

Terms: Net 30 days
Tax Id #: 95-3327434

THANK YOU FOR THE OPPORTUNITY TO PROVIDE THIS SERVICE FOR YOU. PLEASE REMIT PAYMENT PROMPTLY.

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1744

| | |
|---|---|
| Date: | November 10, 2021 |
| To: | LAUREN BEST<br>CRUMLEY ROBERTS ATTORNEYS AT LAW<br>2400 FREEMAN MILL ROAD<br>SUITE 200<br>GREENSBORO NC 27406 |
| Attn: | Lauren |
| Fax: | (877) 293-8687 |
| From: | Brook Mikulick<br>Appeals Consultant<br>Phone No.: Phone No.: (888) 437-7611<br>Secure Fax No.: (603) 430-1744 |
| Total Pages<br>(Including Cover): | 2 |
| RE:<br><br>Claim #: 10839136<br>Claimant: Kim Naugle<br><br>Siemens | |

This fax, and any attachments thereto, is intended only for the use of the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this fax, you are hereby notified that any dissemination, distribution or copying of this fax, and any attachments thereto, is strictly prohibited. If you have received this fax in error, please notify me by telephone at (888) 437-7611 and permanently shred the original and any copy of any fax and any printout thereof.

The Lincoln National Life Insurance Company
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 430-1744

November 10, 2021

Lauren Best
Crumley Roberts Attorneys At Law
2400 FREEMAN MILL ROAD
SUITE 200
GREENSBORO, NC 27406

RE: Short Term Disability (STD) Benefits
Siemens Corporation ("Siemens")
Claim #: 10839136
Claimant: Kim Naugle

Dear Lauren Best:

We are writing to you in regard to Kim Naugle's claim for Short Term Disabiity (STD) benefits.

We received a voicemail today requesting a copy of the Siemens Corporation's Short Term Disability (STD) Plan. You must request a copy of the plan from the employer. The phone # to request this information is (800) 392-7495.

If you have any questions regarding this matter, please contact me.

Sincerely,

Brook Mikulick
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 14716
Secure Fax No.: (603) 430-1744

# Candace Good, MD
### *Board-Certified in Psychiatry*
### *Child and adolescent psychiatry*

CLAIMANT NAME: Naugle, Kim
EXAMINER: Candace Good, MD
ECN #: 190637-1
CLAIM #: 10839136
DATE OF LOSS: 12/24/2020
DATE OF SERVICE: 11/9/2021

**Peer Review**

This is a peer review regarding Naugle, Kim. I have been asked to review the medical records on behalf of ECN. I reviewed records from Ronald Prucha, MD/Family Medicine from 12/12/21 through 10/06/21; Sirrell Butler, LCSW/Behavioral Health Therapist 11/24/20; Malmouna Dlop, NP/Psychiatric Prescriber 11/24/20; Herman Solomon, MD and Jennie Buchkovich, PA-C/Cardiology 12/04/20-10/01/21; Eric Kelly, LCSW/Therapist 03/01/21-10/20/21; and Disability Questionnaires and Application for Benefits-Appeal Letter from Peter H. Burke/Attorney dated 10/21/21.

**DIAGNOSES: Anxiety disorder unspecified.**

**FILE HISTORY/SUMMARY:**

The claimant is a 58-year-old female with a history of General Anxiety Disorder (GAD), Major Depressive Disorder, recurrent episode, moderate (MDD), Unspecified trauma- and stressor-related disorder or Posttraumatic Stress Disorder (PTSD), Hypothyroidism, Coronary Artery Disease (CAD) with history of Coronary Artery Bypass Graft (CABG) in 2018, Hypertension, Sleep Apnea (CPAP dependent), and morbid obesity.

11/03/20, Sirrell Butler, LCSW/Behavioral Health Therapist: The claimant was seen for therapy assessment and reported an increase in anxiety since her cardiac bypass surgery two years ago. She has taken escitalopram 10 mg for 12 years. Her PHQ-9 score was 16. GAD-7 was >10. Since her heart surgery she's experienced flashbacks, negative alterations in mood, trouble concentrating/hyperalert, and panic. She did not endorse any suicidal ideation.

11/24/20, Malmouna Dlop, NP/Psychiatric Prescriber: The claimant was seen for an assessment and endorsed waking up with severe panic attacks, sleep disturbance, feeling down, and high-stress job. The claimant indicated she wanted to discuss medications with her cardiologist before initiating any changes.

12/04/20, Herman Solomon, MD/Cardiology: The claimant expressed concern that psychiatry couldn't help her. He directed her back to her primary care provider to discuss a possible trial of paroxetine.

12/11/20, Ronald Prucha, MD/Family Medicine: The claimant was seen for stomach cramping. She was treated with antibiotics for sinusitis.

12/14/20, Ronald Prucha, MD/Family Medicine: The claimant was seen for an annual exam with a primary diagnosis of MDD. She endorsed multiple symptoms of anxiety and referred to her job as "very high stress" per provider and that family drama was high. She was prescribed paroxetine 20 mg daily and clonazepam 0.5 mg daily as needed for anxiety. She was directed to follow up in 3 months.

01/04/21, Ronald Prucha, MD/Family Medicine: The doctor completed the Functional Mental Status Evaluation Form. Of note the claimant's emotional state was "sad, slightly anxious". Memory was not tested. Cognition was noted to be within normal limits but the claimant was deemed to not be able to perform any job tasks but that could perform in a quiet stress-free environment. Work readiness would be measured by self-monitoring.

02/12/21, Ronald Prucha, MD/Family Medicine: The claimant reported some response to Paxil 20 mg but ongoing low energy and depression. She was to see a therapist on 03/01/21. She was seen for some orthopedic issues and had a visit to a bariatric surgeon. She opted to continue the same medication.

02/17/21, Ronald Prucha, MD/Family Medicine: The doctor completed a restrictions form. No physical restrictions were checked. Counseling and pharmacotherapy were recommended with anticipated date of restrictions through 6/14/21.

03/01/21, Eric Kelly, LCSW/Therapist: The claimant was seen for a session of solution focused therapy. Weekly therapy sessions were recommended.

04/01/21, Eric Kelly, LCSW/Therapist: The claimant was seen for a session of solution focused therapy.

04/15/21, Eric Kelly, LCSW/Therapist: The claimant was seen for a session of solution focused therapy. She was noted to be making a greater effort to address unresolved issues with her mother.

05/06/21, Eric Kelly, LCSW/Therapist: The claimant was seen for a session of solution focused therapy. PHQ-9 score was 15, no suicidal thoughts.

05/20/21, Eric Kelly, LCSW/Therapist: The claimant was seen for a session of solution focused therapy. This was a termination session as the therapist was relocating from the practice and much of the focus was on her disability claim.

05/28/21, Ronald Prucha, MD/Family Medicine: A phone note indicated the doctor confirmed the claimant has not been seen since February and that she declined behavioral health services due to financial reasons.

06/04/21, Ronald Prucha, MD/Family Medicine: The claimant was seen for a follow up appointment for anxiety and an ankle sprain and listed a variety of work-related stressors for everyone employed by the company and that others were leaving. She reported the disability process as “driving her crazy” and reported using clonazepam 2-3 times a week for the past month for anxiety manifest by crying jags.

06/18/21, Herman Solomon, MD/Cardiology: The claimant was seen for a follow up. The doctor stated he would support a leave of absence and was pleased she was considering bariatric surgery.

07/15/21, Ronald Prucha, MD/Family Medicine: The doctor provided a letter that the claimant remained unable to work.

08/13/21, Herman Solomon, MD/Cardiology: The doctor completed a health questionnaire that indicated that anxiety-related conditions raise the risk for heart problems. He indicated that the claimant’s stress could further elevate her blood pressure.

10/01/21, Jennie Buchkovich, PA-C/Cardiology: The claimant was seen for a cardiology follow-up. She was to continue her medications and weight loss program.

10/06/21, Ronald Prucha, MD/Family Medicine: The claimant was seen for a follow up appointment for anxiety, issues with her CPAP and skin problems. The note mentioned seeing her therapist the previous week. She experienced postnasal drip that caused her to choke. She endorsed anxiety, panic, and restlessness. Paroxetine was increased to 40 mg daily.

10/21/21, Eric Kelly, LCSW/Therapist: The provider continued to see the claimant through a separate agency with 14 dates of service from 06/29/21-10/05/21, primarily for a diagnosis of GAD. No sessions notes were provided.

10/26/21, Eric Kelly, LCSW/Therapist: The therapist completed a questionnaire indicating the provide believed her work environment placed extreme stress on the claimant with marked anxiety. The claimant’s anxiety and depression were noted to decrease her focus and pace and he believed that her mental condition would result in missing work more than three days a month.

**PROVIDER CONTACT LOG:**

Times are EDT
Case received: 10/27/21
Contact 1: Ronald Prucha, MD/Family Medicine 10/28/21 9:04 am LM with reception
Contact 1: Eric Kelly, LCSW/Therapist 10/28/21 9:14 am called phone number provided, no longer with practice. Contacted AvanceCare location at address listed at 919-322-4722 LM on main office voicemail. Received return call from reception asking to clarify if I am affiliated with the claimant’s attorney.
Contact 2: Ronald Prucha, MD/Family Medicine 10/29/21 0732

Contact 2: Eric Kelly, LCSW/Therapist 10/28/21 1452
Response: See Question 7.

**RESPONSE TO QUESTIONS:**

**1. Please identify the primary impairing Diagnosis (es) with ICD 10 Code(s). Codes are only needed on up to the first 3 diagnoses.**

The claimant meets criteria for Generalized Anxiety Disorder with panic attacks (F41.1) and Major Depressive Disorder, moderate (F32.1).

A DSM-5 diagnosis of Generalized Anxiety Disorder requires the presence of excessive anxiety and worry on most days for a period of at least 6 months. The person finds it difficult to control the worry and the anxiety and worry are associated with three or more of the following:
1. Restlessness or feeling keyed up or on edge.
2. Being easily fatigued.
3. Difficulty concentrating or mind going blank
4. Irritability
5. Muscle tension
6. Sleep disturbance

There is overlap between many symptoms of anxiety and a depressive disorder. Based on severity of PHQ-9 scores, likely moderate.

A DSM-5 diagnosis of Major depressive disorder requires at least 5 symptoms present over the same 2-week period of time:
depressed mood, loss of interest in activities, significant change in weight or appetite, sleep disturbance, psychomotor agitation or retardation, fatigue or loss of energy, feelings of worthlessness, decreased concentration, or recurrent thoughts of death.

**2. If applicable, identify co morbid diagnoses significant to impairment with ICD 10 Codes(s). Codes are only needed on up to the first 3 diagnoses.**

Her medical history of Coronary Artery Disease, Obstructive Sleep Apnea, and Hypothyroidism likely contribute to her fatigue. Further delineation of classification and on medical control of these conditions is outside of the scope of psychiatry.

**3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from -3/23/2021 to - present and ongoing, and comment on the expected duration.**

No, given consideration to both the self-reported and clinical information, the evidence does not suggest that the claimant suffers from a medical condition of such severity to warrant the placement of restrictions or limitations on their activities for the time period of -3/23/21 to -present.

The claimant is a 58-year-old female with a history of General Anxiety Disorder (GAD), Major Depressive Disorder (MDD), Hypothyroidism, Coronary Artery Disease (CAD) with history of Coronary Artery Bypass Graft (CABG) in 2018, Hypertension, Sleep Apnea (CPAP dependent), and morbid obesity.

During the time period -3/23/21 to -present she was seen more regularly for therapy (though session notes were not provided) but only saw a medical doctor or advanced practice provider four times.

Two of the visits to primary care listed anxiety among the chief complaint (6/4/21 and 10/6/21) but included other more acute concerns (ankle sprain and postnasal drip/CPAP issue). She did report an increase in her use of prn Klonopin on 6/4/21 related to work-related stress but primarily her disability claim. Most of the documented discussion of work was related to how the environment impacted others versus and workload being unreasonable rather than detailed information of her functional capacity. Paroxetine was not increased until the 10/6/21 appointment.

The cardiology visits (6/18/21 and 10/1/21) were routine follow ups and focused on general health counseling in anticipation of a bariatric surgery consult. There were no medication adjustments that would suggest her anxiety was causing her other conditions to be uncontrolled.

The therapy notes do not clearly outline function with regards to activities of daily living or measures of concentration that would support her therapists' responses on the claimant's attorney questionnaire.

**4. Do medical records support any R&L's that were recommended by treating providers for the timeframes in question?**

No, medical records do not support any R&L's that were recommended by treating providers for the timeframes in question.

The claimant is clearly having symptoms, but anxiety and depression are typically treated on an outpatient basis and do not interfere with ability to work. She did not require hospitalization, urgent care in an emergency department, and declined med changes or psychiatric care at some visits. Her antidepressant medication was only changed once and titrated very late in course.

**5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition?**

Yes, the medical management recommended by the provider and/or followed by the claimant is clinically reasonable and consistent with the apparent level of severity of the reported condition.

Selective serotonin reuptake inhibitor (SSRI)'s and therapy are the mainstay of treatment for anxiety and depression. A psychiatrist may have adjusted the medication more quickly and/or met with the claimant at more regular intervals.

**6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?**

No, no non-medical circumstances are identified in the records that may adversely impact work.

**7. Please contact Dr. Prucha (pcp) and Eric Kelly, LCSW. When contacting the treating providers, please discuss the claimant's condition, treatment, and functional capacity beyond 3/22/21 to the present. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.**

Eric Kelly, LCSW/Therapist stated that he has been treating the claimant for about a year on transfer from another therapist who did an intake. He stated that the claimant remains anxious and is processing her posttraumatic stress in therapy. When questioned re: PTSD related symptoms he discussed her attachments with mother and parentified child role due to maternal mental health issues. Other stressors include health and loss. He stated that he was not the clinician who used that diagnosis, and his sessions are solution focused, "what the client brings" so he could not comment on additional PTSD criteria or her day-to-day functioning. He has not had any contact with her husband. He referred to the questionnaire when asked about specific examples of how her concentration issues manifest in session or everyday life, he stated that she sometimes needed redirection in session for getting stuck on a topic and that inability to work was "the totality" of her psychiatric, medical, and family interactions. Reinforced that I am focused on psychiatric concerns from 3/22/21-present and he added that she has made minimal progress with therapy as progress forward is "inconsistent".

Dr. Prucha confirmed that her high blood pressure and other cardiac issues have been well controlled and that no medications were needed to address those co-morbid concerns. He stated that she feels "at war" with her disability company and is reliant on the health insurance plan provided by her employer. When questioned re: other updated clinical, treatment or functional capacity he stated that all information would be present in the note, and he can only comment on the patient's report.

The consensus is solely that the claimant is symptomatic but limited detail on severity and frequency other than the patient's claim that she cannot work. There is little information re: her functional capacity at home and much of the anxiety reported recently is tied directly to her upset of her disability claim. Symptoms reported by a patient are not the same as impairment and clear descriptions of frequency and functional impairment are needed.
A physician supporting a leave of absence to focus on health is not the same as supporting a disability claim. For example, in the case where a questionnaire is completed in support of a disability appeal, the clinical documentation should support some impact on activities of daily living, social functioning, and concentration, especially if there is an example of how those functional impairments lead to deterioration or decompensation in a complex or work-like setting.

A reviewer looks for consistency in the documentation. For example, if a patient complains of concentration difficulties to the point they cannot work, a reviewer looks for treating providers reports of difficulties with concentration on activities of daily living like driving or remembering appointments or an objective measure of attention. If concentration and memory are consistently impaired, notes may reflect consideration for psychological testing or other assessment.

Finally, if a claimant remains severely impaired and the treating providers state they are not progressing, notes typically reflect a change in treatment course or modality and/or comment on the need for a second opinion from a specialist.

Respectfully,

Candace Good, MD
Board certified Psychiatrist
Medical License MD073835L

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com • Web: www.ecnime.com

Claimant Name: Kim Naugle
Claim Number: 10839136
Case Number: 190637-1

"I, Candace R Good, MD, am a physician duly licensed to practice medicine in the State of PA. I am an independent contractor and I am paid to review claim files and render medical opinions. I am not responsible for deciding whether a claimant is entitled to insurance benefits. My role is to provide objective medical opinions to Genex Services, LLC.

I hereby attest that the following statements are true:

- I have the scope of licensure or certification that typically manages the medical condition, procedure, treatment or issue under review
- I have current, relevant knowledge to render an opinion for the case under review
- No financial incentive was received based on the outcome of the opinion
- No delegation of the examination rendered

I attest that no conflict of interest exists, this includes any situation where an individual has a material, professional, familial, or financial conflict of interest regarding any of the following:

- Compensation for IME/Peer Review activities that are dependent in any way on the specific outcome of the case
- Have involvement with the case prior to its referral for review
- The referring entity
- The health benefit plan
- The consumer
- The attending provider or any other advisor previously involved in the case
- The facility at which the recommended healthcare service(s) would be provided
- The developer or manufacturer of the principal drug, device, procedure, or other therapy being recommended for the customer

I declare that the information contained in the above-referenced report was prepared by and is the work product of the undersigned and is true to the best of my knowledge and information. I certify that my medical/professional license is current and is in good standing in the jurisdiction in which my practice is located.

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com • Web: www.ecnime.com

Signature of Physician Date 11/9/2021

Medical/Professional License # MD073835L

ECN
Exam Coordinators Network A division of Genex Services, LLC

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

November 09, 2021

Eric Kelly, LCSW:
T: (866) 272-7826
F: (919) 856-4677

CLAIMANT: Kim Naugle
ECN #: 190637-1
CLAIM #: 10839136
DATE OF LOSS: 12/24/2020
DATE OF BIRTH:

This letter is to confirm the conversation we had regarding your patient Kim Naugle on 10/28/2021

The following was discussed:

> Eric Kelly, LCSW/Therapist stated that he has been treating the claimant for about a year on transfer from another therapist who did an intake. He stated that the claimant remains anxious and is processing her posttraumatic stress in therapy. When questioned re: PTSD related symptoms he discussed her attachments with mother and parentified child role due to maternal mental health issues. Other stressors include health and loss. He stated that he was not the clinician who used that diagnosis, and his sessions are solution focused, "what the client brings" so he could not comment on additional PTSD criteria or her day-to-day functioning. He has not had any contact with her husband. He referred to the questionnaire when asked about specific examples of how her concentration issues manifest in session or everyday life, he stated that she sometimes needed redirection in session for getting stuck on a topic and that inability to work was "the totality" of her psychiatric, medical, and family interactions. Reinforced that I am focused on psychiatric concerns from 3/22/21-present and he added that she has made minimal progress with therapy as progress forward is "inconsistent".

Agree:

________________________________________
Signature and date

Disagree:

________________________________________
Signature and date

If you disagree, please explain:

____________________________________________________________

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

________________________________________________

________________________________________________

Please fill out and sign the above indicating your agreement or disagreement by 11/16/2021.

Sincerely,

*Candace R Good, MD*

Candace R Good, MD

Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
Toll Free: (877) 463-9463
Local: (561) 922-5200
Fax: (561) 392-5881

Exam Coordinators Network A division of Genex Services, LLC E-mail: info@ecnime.com Web: www.ecnime.com

November 09, 2021

Eric Kelly, LCSW:
T: (866) 272-7826
F: (919) 856-4677

CLAIMANT: Kim Naugle
ECN #: 190637-1
CLAIM #: 10839136
DATE OF LOSS: 12/24/2020
DATE OF BIRTH:

This letter is to confirm the conversation we had regarding your patient Kim Naugle on 10/28/2021

The following was discussed:

> Eric Kelly, LCSW/Therapist stated that he has been treating the claimant for about a year on transfer from another therapist who did an intake. He stated that the claimant remains anxious and is processing her posttraumatic stress in therapy. When questioned re: PTSD related symptoms he discussed her attachments with mother and parentified child role due to maternal mental health issues. Other stressors include health and loss. He stated that he was not the clinician who used that diagnosis, and his sessions are solution focused, "what the client brings" so he could not comment on additional PTSD criteria or her day-to-day functioning. He has not had any contact with her husband. He referred to the questionnaire when asked about specific examples of how her concentration issues manifest in session or everyday life, he stated that she sometimes needed redirection in session for getting stuck on a topic and that inability to work was "the totality" of her psychiatric, medical, and family interactions. Reinforced that I am focused on psychiatric concerns from 3/22/21-present and he added that she has made minimal progress with therapy as progress forward is "inconsistent".

Agree:

________________________________________
Signature and date

Disagree:

________________________________________
Signature and date

If you disagree, please explain:

____________________________________________________________

ECN
Exam Coordinators Network A division of Genex Services, LLC
Corporate Office
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881
E-mail: info@ecnime.com Web: www.ecnime.com

Please fill out and sign the above indicating your agreement or disagreement by 11/16/2021.

Sincerely,

*Candace R Good, MD*

Candace R Good, MD

**From:** Fax2Mail powered by OpenText
**To:** Osborne, Sandi
**Subject:** AP Teleconference Letter_Naugle
**Date:** Tuesday, November 9, 2021 4:55:29 PM

EXTERNAL: This email was received from outside of Genex Services. Please do not click links or open attachments unless you know the content is safe.

| MAIL2FAX DETAILED DELIVERY REPORT | |
|---|---|
| **Attention** | Sandi Osborne |
| **Job Number** | 1733973440 |
| **Sent By User** | F2M/38215396141 |
| **Entered Fax2Mail System** | 11/09 13:53 |
| **Report Generated** | 11/09 13:55 |
| **Subject** | AP Teleconference Letter_Naugle |
| **Page Count** | 3 (including cover sheet) |

| SUMMARY | | |
|---|---|---|
| **Sent: 1** | **Errors: 0** | **Cancelled: 0** |
| **Total: 1** | | |

| Destination | Status | Date | Time | Num. Retries |
|---|---|---|---|---|
| 9198564677 | SENT | 11/09 | 13:54 | 1 |

| | |
|---|---|
| From: | Fax2Mail powered by OpenText |
| To: | Osborne, Sandi |
| Subject: | AP Teleconference Letter_Naugle |
| Date: | Tuesday, November 9, 2021 5:01:47 PM |

EXTERNAL: This email was received from outside of Genex Services. Please do not click links or open attachments unless you know the content is safe.

| MAIL2FAX DETAILED DELIVERY REPORT | |
|---|---|
| **Attention** | Sandi Osborne |
| **Job Number** | 1436596111 |
| **Sent By User** | F2M/38215396141 |
| **Entered Fax2Mail System** | 11/09 13:59 |
| **Report Generated** | 11/09 14:01 |
| **Subject** | AP Teleconference Letter_Naugle |
| **Page Count** | 3 (including cover sheet) |

| SUMMARY | | |
|---|---|---|
| **Sent: 1** | **Errors: 0** | **Cancelled: 0** |
| **Total: 1** | | |

| Destination | Status | Date | Time | Num. Retries |
|---|---|---|---|---|
| 9192356598 | SENT | 11/09 | 14:01 | 1 |

**From:**Monashkin, Wendy <Wendy.Monashkin@genexservices.com>
**Sent:**10e, N2ov : +: V : Rf++fl V K++++
**To:**uendorCe#erra8s
**Subject:**3. 2a0g8e 98aim 6V+PRNVRw
**Attachments:**_eer Cevie7 5w4BN: l : OD9A._F H, tnvoice.bd#

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

l i ,
Appached is phe _eer Cevie7 and tnvoice #or phe a' ove re#erenced c8aimanp. t#7 e can #0rpher assispyo0 7 iph phis #l8e, b8ease donTphesipape po give 0s a ca88
1hanks #or phe re#erra8,

**Wendy Monashkin**
***Quality Assurance Coordinator***
Exam Coordinators Network, a division of Genex Services
**T**: 877-643-9463
**F**: 561-392-5881
**Access our portal at:** View My Cases

urac
ACCREDITED
Independent Medical Examinations
Expires 04/01/2024

All electronic communications from ECN / Genex are confidential, unpublished property of Genex. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. This document is intended for the use of the individual(s) or entity to which it is addressed, and may contain information that is privileged and confidential, including personal health information, and applicable law may prohibit further disclosure of this information. If the recipient of the message is not the intended addressee, or the employee or agent responsible for delivering this message to the addressee, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you received this communication in error, please notify the sender. Please note the following from the HIPAA Privacy Rule Standards: A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault. Refer to 45 CFR 164.512(l)

All electronic communications from Genex are confidential, unpublished property of Genex. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. This document is intended for the use of the individual(s) or entity to which it is addressed, and may contain information that is privileged and confidential, including personal health information, and applicable law may prohibit further disclosure of this information. If the recipient of the message is not the intended addressee, or the employee or agent responsible for delivering this message to the addressee, you are hereby notified that any dissemination, distribution or copying

of this communication is strictly prohibited. If you received this communication in error, please notify the sender. Please note the following from the HIPAA Privacy Rule Standards: A covered entity may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs, established by law, that provide benefits for work-related injuries or illness without regard to fault. Refer to 45 CFR 164.512(l)

**ECN**
Exam Coordinators Network A division of Genex Services, LLC

**Corporate Office**
6111 Broken Sound Parkway NW, Suite 207
Boca Raton, Florida 33487
**Toll Free: (877) 463-9463**
Local: (561) 922-5200
Fax: (561) 392-5881

E-mail: info@ecnime.com Web: www.ecnime.com

**Invoice:** **BOCA 122365**

**Date** **11/9/2021**

***Bill To:***

**Brook Mikulick**
**Lincoln Financial-London, KY**
**P.O. Box 7207**
**London, KY 40742**

**Claim #** 10839136
**Date of Loss:** 12/24/2020
**ECN #** 190637-1
**Account #**

**Claimant** Kim Naugle

| | | |
|---|---|---|
| 10/27/2021 | Peer Review - Short Term Disability: Service Provider: Candace R Good, MD Specialty: Psychiatry | $860.00 |

**SubTotal** $860.00

**Final Invoice Total** $860.00

***Remit To:***
Exam Coordinators Network
440 E. Swedesford Road
Suite 1000
Wayne, PA 19087

Terms: Net 30 days
Tax Id #: 95-3327434

THANK YOU FOR THE OPPORTUNITY TO PROVIDE THIS SERVICE FOR YOU. PLEASE REMIT PAYMENT PROMPTLY.

**Clinical Review Memo**

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| Siemens Corp | Kim Naugle | 10839136 |

| | | | |
|---|---|---|---|
| **Report Date:** | | | |
| **Referred By:** | Brook Mikulick | **Claimant DOB:** | |
| **Referral Date:** | 10/26/2021 | **Job Title:** | PROJECT COORDINATOR |
| **Due Date:** | 11/09/2021 | **Medical/ Surgical Condition:** | anxiety/depression, work stress, PTSD |
| **Referral Type:** | Appeal Referral | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | STD |
| **Other Considerations** | TCMS Special Circumstance | **LDW:** | 12/23/2020 |
| | | **DOD:** | 12/24/2020 |
| **Physical Demands:** | | **BBD:** | |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

## Referral Questions

1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.

2. If applicable please identify clinical significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 3/23/2021 to present, and comment on the expected duration.

4. Do the medical records reviewed support the R&Ls, if any, that were recommended by treating providers for the time frames in question? (If "No," please discuss differences in the comment section below).

5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition? (If "No" please explain in the comment section below).

6. Are there any non-medical circumstances identified in the medical records  (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?

**Additional Questions**

Other Please contact Dr. Prucha (pcp) @ 919-235-6575 (f) 919-235-6598 and Eric Kelly, LCSW @ (866) 272-7826 (F) 919-856-4677. When contacting the treating providers, please discuss the claimant's condition, treatment, and functional capacity beyond 3/22/21 to the present. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.

Other NOT RELATED TO COVID 19

**Other Comments**
Other Comments - null

**Analysis of Medical Documentation and Support for Responses to Referral Questions:**

**All medical records provided by Lincoln Financial Group as of today's date were reviewed, including the most recent record in the file which is:**

**Electronically Signed:**

## Clinical Review Memo

| Customer Name | Claimant Name | Claim Number |
|---|---|---|
| Siemens Corp | Kim Naugle | 10839136 |

| | | | |
|---|---|---|---|
| **Report Date:** | | | |
| **Referred By:** | Brook Mikulick | **Claimant DOB:** | |
| **Referral Date:** | 10/26/2021 | **Job Title:** | PROJECT COORDINATOR |
| **Due Date:** | 11/09/2021 | **Medical/ Surgical Condition:** | ANXIETY/DEPRESSION, PTSD, WORK STRESS, CAD |
| **Referral Type:** | Appeal Referral | **Disability Occupational Type:** | |
| **Reason for Priority Handling:** | | **Product Type:** | STD |
| **Other Considerations** | TCMS Special Circumstance | **LDW:** | 12/23/2020 |
| | | **DOD:** | 12/24/2020 |
| **Physical Demands:** | | **BBD:** | |
| **Non-Medical Issue:** | No | **Non-Medical Issue Details:** | |

### Referral Questions

1. Please identify the primary impairing Diagnosis(es) with ICD 10 Code(s) on up to the first 3 diagnoses.

2. If applicable please identify clinical significant comorbid Diagnosis(es) with ICD with ICD 10 Codes(s) on up to the first 3 diagnoses.

3. Taking into consideration the entire clinical picture, including evidence based medicine and any medication or other treatment side effects, please describe how any supported level of impairment translates into restrictions and limitations from 3/23/2021 to present, and comment on the expected duration.

4. Do the medical records reviewed support the R&Ls, if any, that were recommended by treating providers for the time frames in question? (If “No,” please discuss differences in the comment section below).

5. Is the medical management recommended by the provider and/or followed by the claimant clinically reasonable and consistent with the apparent level of severity for the reported condition? (If “No” please explain in the comment section below).

6. Are there any non-medical circumstances identified in the medical records (e.g. workplace conflicts-child or elder care issues, or legal issues) that may adversely impact work?

**Additional Questions**

Other Please contact Dr. Solomon/Jennie Buchkovich, PA-C (cardio) @ 919-350-8000. When contacting the treating provider please discuss the claimant's condition, treatment, and functional capacity beyond 3/22/21 to the present. Please indicate the information reviewed and indicate whether or not you reached consensus with the treating provider. If not, please discuss your final assessment after the call.

Other NOT RELATED TO COVID 19

**Other Comments**
Other Comments - null

**Analysis of Medical Documentation and Support for Responses to Referral Questions:**

**All medical records provided by Lincoln Financial Group as of today's date were reviewed, including the most recent record in the file which is:**

**Electronically Signed:**

**From:**ecn-no-reply@ecnime.com
**Sent:**26 Oct 2021 19:50:46 +0000
**To:**Mikulick, Brook
**Subject:**New Referral Claim 10839136 Naugle, Kim

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hello,

A new referral was received for the above referenced claimant. Our office is in the process of scheduling this service.

Thank you,
ECN
6111 Broken Sound Parkway, NW
Suite 207
Boca Raton, FL 33487

**From:**ecn-no-reply@ecnime.com
**Sent:**26 Oct 2021 19:52:47 +0000
**To:**Mikulick, Brook
**Subject:**New Referral Claim 10839136 Naugle, Kim

***This email is from an external source. Only open links and attachments from a Trusted Sender.***

Hello,

A new referral was received for the above referenced claimant. Our office is in the process of scheduling this service.

Thank you,
ECN
6111 Broken Sound Parkway, NW
Suite 207
Boca Raton, FL 33487

# Lincoln Financial Group Appeal Referral

**Appeal Referral From:** **DOVER**

| | | | | | |
|---|---|---|---|---|---|
| Office: | 096 | Manager: | MOREAU, ALLYSON | Case Mgr: | BOYCE, LYNN |

| | | | |
|---|---|---|---|
| Claimant Name: | KIM R NAUGLE | Claim #: | 10839136 |
| Occupation (Job Title): | PROJECT COORDINATOR | Date Sent: | 10/25/2021 |
| Diagnosis: | F41.9 Anxiety disorder, unspecified, I51.9 Heart disease, unspecified | | |
| Date of Disability: | 12/24/2020 | Date Benefits Began: | 12/31/2020 |
| Maximum Duration: | 6/23/2021 | Paid Through: | 3/22/2021 |
| Date of Denial or (DB451): | 6/2/2021 | Date Appeal Received: | 10/22/2021 |

**This is the date that the full appeal was received by the Field Claim Office*

| | | | |
|---|---|---|---|
| Policyholder/Self-Insured Plan Holder: | SIEMENS CORPORATION | | |
| Product: | STD | Funding: | ASO |
| Is Claimant Eligible for LTD? | Y | | |
| Erisa or Non-Erisa? | ERISA Plan | | |

Document Locations

- [x] Paperless
- [ ] Bilingual - translation complete
- [ ] Paper File
- [ ] Surveillance disk(s)

**Please be sure to send all claim paper files & all surveillance disks to the ARU.*

ER Contacts/CC (if applicable):

ER Contact Addresses (including email address):

email mgr and hr see eligability addlt info by SSN

Phone No.

FAX No.

Account Specific or Unique Contract Issues / Additional Info:

STD Appeal Service Levels: Enhanced. However, because Lincoln has agreed to be claim fiduciary, Lincoln will manage all aspects of the appeal.

Crumley Roberts
Attorneys At Law
WE STAND UP FOR YOU®

MAILING ADDRESS:
2400 Freeman Mill Road
Ste. 200
Greensboro, NC 27406
336-333-9899
336-333-9894 Fax

800.288.1.LAW
800.288.1529

CrumleyRoberts.com

October 21, 2021

**Letter and attachments sent via**
**Facsimile 603-334-5219 and US mail**
Lincoln Life Assurance Company of Boston
Attn: Appeal Review Unit
Disability and Life Claims
PO Box 2578
Omaha, NE 68172-9688

| | | |
|---|---|---|
| RE: | Claimant: | Kim R. Naugle |
| | Claim No.: | 10839136 |
| | Policyholder: | Siemens Corporation |

To Whom it May Concern:

I hope this finds you well. Please consider this notice of our appeal of the denial of disability benefits to Ms. Naugle.

By letter dated June 3, 2021, Lincoln informed Ms. Naugle of its decision to deny benefits. The decision to deny benefits to the claimant and basis given is in contrast to the medical evidence already contained in the claim file, the opinions of her treating physicians, as well as the additional evidence provided as part of this appeal.

Enclosed for review on this appeal are the following:

1. February 12, 2021 through October 6, 2021 Medical Records from Dr. Ronald Prucha;
2. July 15, 2021 Letter from Dr. Ronald Prucha;
3. November 24, 2020 through May 20, 2021 Medical Records from Monarch;
4. June 5, 2021 through October 5, 2021 Medical Records from Avance Care;
5. December 4, 2020 through October 1, 2021 Medical Records from Dr. Hemant Solomon;
6. August 13, 2020 Medical Questionnaire from Dr. Hemant Solomon;
7. October 20, 2021 Medical Questionnaire from Eric Kelly, LCSW;
8. Declaration of Kim Naugle; and
9. Declaration of Ronald Naugle.

The insurance contract at issue is subject to the ERISA statute. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in

employee benefit plans." With the information provided in this appeal, Lincoln should agree that Ms. Naugle is entitled to all benefits owed under her policy.

**Lincoln's Determination that Ms. Naugle Does Not Meet the Definition of Disability is Erroneous and Unreasonable.**

Lincoln's June 3, 2021 letter wrongfully denies Ms. Naugle's benefits. Lincoln's assertion that Ms. Naugle, a woman fifty-eight years of age suffering from generalized anxiety disorder, major depressive disorder, posttraumatic stress disorder (PTSD), coronary artery disease, hypertension, and history of coronary bypass surgery can perform all the essential functions of his or her position is unreasonable. Due to her ongoing health complications, Ms. Naugle is disabled and unable to perform the essential duties of her own occupation.

The disability policy at issue defines disability as:

> For purposes of the Plan, "Disability" means a physical or mental condition that prevents an eligible employee from performing all the essential function of his or her position, with or without reasonable accommodations, for more than seven consecutive calendar days. The disability must be verified by and under the continuous care of an appropriate legally licensed health care practitioner working within the scope of his or her license. The employee must be actively at work at the time the disability occurs.

Prior to her disability, Ms. Naugle was employed as a Project Coordinator. This position is sedentary in nature. Federal Code 20 C.F.R § 404.1567 defines the physical exertion requirements of sedentary work as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

In addition to the physical requirements necessary to perform any reasonable occupation, an insured's non-exertional requirements of an occupation must also be considered. For instance, medical conditions can distract an employee causing them to be "off task" and not as productive as other employees. Federal Courts have held that a person experiencing 10-15% of time off task would not be able to sustain substantial gainful employment. See Mills v. Colvin, 959 F. Supp. 2d 1079, 1084 (2013) stating that "the general tolerance of off-task time is around 10-12% and an individual who needed a ten-minute break every hour would exceed that tolerance." See also Lewis v. Colvin, 973 F. Supp. 2d 985, 992 (2013) stating that "being off task 10-12% of the time [is] the upper limit of what employers will typically tolerate."

Another consideration of non-exertional requirements is an employee's ability to regularly attend work. Frequent absenteeism caused by medical appointments or conditions would preclude employment in any reasonable occupation. A majority of the Federal Courts have found that employers will not tolerate absenteeism averaging two or more days per month. See Conner v. Shalala, 900 F. Supp. 994, 1003-4 (1995) stating that "in unskilled work the

tolerance level would not exceed two absences per month." See also Dennis v. Astrue, 655 F. Supp. 2d 746, 753 (2009) stating that "employers typically will tolerate no more than two absences per month." Spillers v. Colvin, 24 F. Supp. 3d 818, 823 (2014) stated that "if an individual were unable to attend work on a regular basis, missing work two days per month, then full time competitive work was precluded." While Federal Courts have consistently found that an employee may miss up to two absences per month, the absenteeism national average, which includes the employee's peers and coworkers, is significantly less. In 2018, the Bureau of Labor Statistics document that absence in full-time employment averaged 2.9 days per year, substantially less than two days per month or twenty-four days per year. As the Federal Courts and labor market reflects, to perform the main duties of any reasonable occupation an employee must consistently attend work and be absent no more than two days per month, and to be competitive, must limit their absences to less than three days per year.

If an insured is unable to perform the minimal sedentary physical exertional requirements, or is unable to stay on task, or is unable to consistently attend work, the insured is incapable of performing the main duties of any reasonable occupation and thus would meet the disability under the policy. In other words, and when considering the opinions of the Federal Courts, for the claimant to be employable and not disabled under the policy, she must be able to meet the sedentary physical exertional requirements, stay on task at least 85% of the work day, and have no more than two absences per month. If the claimant fails to meet any of these criteria, she must be found disabled under the policy.

**Dr. Goldman's Review is Flawed in Several Material Ways**

By letter dated June 3, 2021, Lincoln denied Ms. Naugle's benefits. In denying her claim, Lincoln utilized a review conducted by a consulting physician, Dr. Marcus Goldman. Dr. Goldman concluded, after reviewing the medical records, that this documentation did not support restrictions which would prevent Ms. Naugle from returning to her former position. To support this stance, Dr. Goldman noted a lack of mental status examinations in the record and what he felt to be insufficient documentation of severe symptoms. Further, Dr. Goldman discounted some information within the file because they included self-reported symptoms or mentioned work-related stress, which was deemed not indicative of disability. This does not give adequate credence to the reports from Ms. Naugle or the observations of her treating physicians.

In his report, Dr. Goldman concluded that the claimant did not suffer from impairments that would prevent her from returning to her regular occupation. Dr. Goldman noted that Ms. Naugle's intensity of care was inconsistent with incapacity, that she did not treat with a psychiatrist or require a transition to a more intense level of care, and that the records available did not include mental status evaluations. Further, Dr. Goldman asserted that Ms. Naugle's work stress, a factor often discussed with her physicians, did not indicate a globally debilitating mental illness and was not in itself disabling. Dr. Goldman's stance is shortsighted. Dr. Goldman made note of a conversation with Ms. Naugle's primary care physician, Dr. Prucha on May 28, 2021, wherein Dr. Prucha noted that he had not seen Ms. Naugle since February 2021 and that Ms. Naugle complained of work stress. Dr. Goldman further noted Dr. Prucha's most recent treatment note on February 12, 2021 to be unremarkable for debilitating psychopathology. At the time of Dr. Goldman's report, Ms. Naugle had indeed not treated with Dr. Prucha for a few

months. However, no attempt was made to speak with her medical provider at Monarch, where Ms. Naugle received regular therapy. Further, the medical records from Monarch document a variety of stressors beyond work and demonstrate Ms. Naugle's inability to tolerate stress and persistent mental health symptoms outside of the workplace parameters asserted by Dr. Goldman. For example, in a therapy note dated April 15, 2021, Ms. Naugle was noted to experience anxiety and stress related to her family, while on April 1, 2021 she reported anxiety regarding household tasks such as paying bills. It seems clear that, while Ms. Naugle did experience significant stress from work, she also experiences significant stress from many aspects of daily life. A more reasonable explanation would be that Ms. Naugle's depression, anxiety, and PTSD leave her incapable of tolerating all manner of stressors including, but not limited to, her work. This is undoubtedly indicative of globally debilitating mental illness, contrary to Dr. Goldman's opinion.

Dr. Goldman's assertion that Ms. Naugle's medical treatment did not rise to the frequency and severity of treatment to indicate disability is also unreasonable. Prior to her denial of benefits on March 22, 2021, Ms. Naugle was obtaining treatment from her primary care physician, Dr. Prucha, as well as a therapist from Monarch. This level of treatment was initially deemed adequate to prove disability and, as Ms. Naugle has maintained regular treatment with these very same medical providers, there is no cause to suddenly deem this treatment regimen insufficient. Ms. Naugle's symptoms remain severe, and she has maintained treatment while also seeking out new medical treatment. On June 25, 2021, Ms. Naugle initiated therapy with Avance Care for further treatment of her PTSD, generalized anxiety disorder, adjustment reaction with anxiety and depression, and major depressive disorder. She has attended frequent sessions with this office, presenting to twelve appointments between June 25, 2021 and October 5, 2021. Ms. Naugle's treatment has been frequent and consistent and is more than enough to demonstrate unrelieved and uncontrolled symptoms.

**Lincoln Should Give Considerable weight to the opinions of Ms. Naugle's Providers**

The support of Ms. Naugle's treating medical providers becomes irrefutable when considering the newest evidence from her treating medical providers. Ms. Naugle has continued to treat with her primary care physician, attending a checkup on June 4, 2021 in which she endorsed severe anxiety, depression, and hypersensitivity to stress. She was noted to have a dysphoric mood and was observed to be nervous and anxious. Major depressive disorder, anxiety, and prediabetes were diagnosed, and her anxiety was noted to be a "[c]hronic worsening problem." Dr. Prucha provided a letter on July 15, 2021 in which he noted that "Ms. Naugle continues to be under my medical care and remains unable to work due to an underlying medical condition. She has not, as yet, been medically cleared to return to work and continues to convalesce from her condition." When she next appeared for an appointment with Dr. Prucha on October 6, 2021, Ms. Naugle continued to experience severe anxiety, and was treated for this and for her history of heart bypass surgery, hypertension, and hypothyroidism.

Meanwhile, Ms. Naugle continued to treat with her cardiologist, Dr. Solomon. On December 4, 2020, Ms. Naugle was treated for her coronary artery disease and anxiety, and Dr. Solomon noted his support for a leave of absence from work. She followed up with cardiology checkups in June and October 2021, in which Dr. Solomon documented continued support for

leave from work. In a letter dated September 13, 2021, Dr. Solomon noted diagnoses of takotsubo cardiomyopathy and coronary artery disease. Further, Dr. Solomon noted that he believed that Ms. Naugle's generalized anxiety, major depression, and PTSD could further elevate her blood pressure. It is clear that Ms. Naugle's mental health conditions affect, and are affected by, her cardiologic conditions, and that the stress and exertion of full-time work would be impossible due to her overall medical state.

On October 20, 2021, Ms. Naugle's therapist, Eric Kelly, LCSW, provided an assessment of Ms. Naugle's impairments. Mr. Kelly noted that Ms. Naugle's work environment placed extreme stress and marked anxiety upon the claimant. He further noted that Ms. Naugle's depression, anxiety, and PTSD caused her difficulty in concentration, persistence, and pace as well as serious distraction which would result in failure to complete job tasks in a timely manner. Her conditions were expected to cause her to miss work more than three days per month. Dr. Kelly noted that "[h]er severe anxiety/depression symptoms significantly decreases her focus, as well as slowed pace & lower functioning in the workplace."

The support for Ms. Naugle's disability expressed by Dr. Prucha and Dr. Solomon are extremely significant when compared to the opinion of Lincoln's paid reviewer, Dr. Goldman. Dr. Prucha and Dr. Solomon have both treated Ms. Naugle for extended periods of time, have spoken with her at length, have examined her in person, and have attained a level of familiarity with Ms. Naugle, her medical condition, and her limitations. Such a level of familiarity into a patient's medical state is unobtainable through record review alone, and as such, Ms. Naugle's own treating physicians' opinions should be recognized as accurate. It was for this reason that the North Carolina legislature specifically addressed the insurance industry's practice of using non-treating and paid reviewers to justify the denial of claims. North Carolina law acknowledges, and codifies, that treating physicians have a greater opportunity than consultants to know and observe the patient, and as such, greater weight should be afforded to the opinions of treating physicians. [1] Failure to recognize and credit the opinions of Ms. Naugle's treating physicians would be improper and in violation of 11 NCAC 04.0319. Accordingly, Dr. Goldman's opinion as a non-treating provider should be subordinate to those of Ms. Naugle's treating doctors.

**Lincoln Failed to Adequately Consider Ms. Naugle's Non-Exertional Limitations.**

While Lincoln's June 3, 2021 denial letter noted Ms. Naugle's diagnoses of anxiety, depression, and PTSD, it failed to adequately consider the full extent of Ms. Naugle's non-exertional limitations in conjunction with her physical limitations. Federal Courts have held that both the physical exertional and non-exertional limitations must be considered in determining whether an insured meets the definition of disability. See Rabuck v. Hartford Life and Accident Ins. Co., 522F. Supp. 2d 844 (2007).

---

[1] 11 NCAC 04.0319 attached, provides in part: The Commissioner shall consider as prima facie violative of G.S. 58-63-15(11) the failure by an insurer to adhere to the following procedures concerning the settlement of life, accident, health and disability claims when such failure is so frequent as to indicate a general business practice:

(1) Examining Physician's Opinion. When the patient's health is in question, an insurer shall give greater weight to the opinion of a physician who has examined the patient than to the opinion of a physician who has not examined the patient and whose opinion is based solely on a review of the examining physician's notes or reports.

Medical conditions that would prevent Ms. Naugle from performing the duties of her own position, but most specifically would prevent her from staying on task at least 85% of the time and prevent consistent attendance at work, are Ms. Naugle's severe anxiety and depression, as well as the resultant hypersensitivity to stress which results from these conditions. Her treating medical providers have agreed that these conditions would have a negative effect on Ms. Naugle's ability to work. Although Lincoln and its paid reviewer asserted that work stress was not a disabling condition, this ignores the fact that Ms. Naugle's intolerance to work stress is a symptom of her multiple mental health diagnoses. Ms. Naugle's severe anxiety leaves her incapable of adequately coping with the stress and pressures inherent in day-to-day work activity, both within her own occupation and in any occupation. Further, her depression, anxiety, and PTSD would take her off-task a great deal of the workday by impeding her concentration, persistence, and pace. Ms. Naugle would also require excessive unscheduled breaks in order to rest due to symptoms such as panic attacks or fatigue. Unexcused absences would also be commonplace on days that Ms. Naugle's symptoms prevented her from pursuing work, or even from leaving the house, entirely.

Lincoln failed to adequately address all of Ms. Naugle's non-exertional limitations. Ms. Naugle's concentration, persistence, and pace is so severely limited by chronic, severe anxiety, major depression, and PTSD that she is unable to perform her own position as a Project Coordinator on a full-time basis. She is unable to stay on task for an adequate amount of the workday. Both the exertion and inability to rest as needed exacerbate Ms. Naugle's condition. Undoubtedly, a return to work would increase Ms. Naugle's symptoms, leading her to require additional rest, medication, and treatment, which in turn would lead to a further decrease in ability to maintain an acceptable absentee rate. Lincoln must adequately consider the exertional and non-exertional limitations of all Ms. Naugle's conditions and it failed to do so in the previous review.

**Declarations Supporting Ms. Naugle's Disability**

To support Ms. Naugle's appeal, our office has obtained declarations from Ms. Naugle herself as well as from her husband, Ronald Naugle, pursuant to 28 U.S.C. §1746. These statements provide further evidence as to Ms. Naugle's inability to perform her own occupation.

In her declaration, Ms. Naugle reported diagnoses of severe anxiety, depression, and PTSD as well as a history of emergency coronary artery bypass grafting in 2018. She noted that she now experienced constant anxiety, panic attacks, and extreme sensitivity to stress. She noted that, while she tried to manage her stress, she began experiencing panic attacks, crying spells, indecisiveness, body aches, insomnia and loss of interest in activities. After being diagnosed with anxiety, depression, and PTSD, Ms. Naugle reported coordinating her care with her primary care physician and cardiologist as well as initiating therapy. Despite these actions, Ms. Naugle reported continuous debility because of her overwhelming symptoms. "I have gone from being someone who was very active, outgoing with a positive can-do attitude, who was a work horse, to someone who barely leaves the house or can get out of bed." Tasks such as bathing, cooking, laundry, or cleaning were now difficult and overwhelming, and tasks were frequently left unfinished.

Ms. Naugle described her anxiety to cause fearfulness, mental anguish, guilt, and low energy. She reported having to manage her time carefully so as to conserve energy in order to accomplish even minimal tasks. She also voiced concerns as to the effect of stress on her heart. She noted that her husband now had to perform many of the household tasks as well as working a full-time job. Ms. Naugle documented numerous medications for anxiety, depression, as well as her heart condition, which caused negative side effects including urinary frequency and some incontinence, as well as sleep loss. Ms. Naugle described numerous symptoms of her diagnoses, including lack of energy, poor focus, inability to sit or stand for prolonged periods, panic attacks, fatigue, joint and muscle pain, muscle weakness, nausea, and dizziness, "which makes it impossible to do anything with consistency." Even preparing her declaration proved to be arduous, as Ms. Naugle reported that completing this statement took two and a half days. She noted that, due to her medical state, "I don't even know how I would handle my current job and its demands, or any job for that matter."

Mr. Naugle also provided a declaration in support of his wife's STD claim. Mr. Naugle reported his wife's difficulty with stress and exhaustion. "She has a never ending routine of trying to manage her medications, her doctor appointments, her emotions, accomplish any goals, try to relax her mind or find some peace is all she can barely do, and it takes everything out of her to do it." Mr. Naugle reported a lack of improvement in his wife's symptoms, even with regular and extensive treatment. He noted that, while Ms. Naugle was now unable to care for herself or others and was prevented from living "her best healthy life."

**Lincoln Should Reverse its Decision and Reinstate Ms. Naugle's Disability Benefits.**

Lincoln has in its possession medical records and declarations from Ms. Naugle and her husband that support Ms. Naugle's inability to work in her own occupation. It is unclear why Lincoln has chosen to disregard the medical evidence and Ms. Naugle's treating doctors to reach a decision that she is not disabled. Ms. Naugle's medical records do not reflect any appreciable change or improvement in her medical condition. To the contrary, the condition has only worsened as she and her doctors try to bring her symptoms under control. Therefore, Lincoln's decision to change course and deny Ms. Naugle's benefits when her health continues to decline, rather than improve, is arbitrary, capricious, and unreasonable.

When comparing the requirements of Ms. Naugle's sedentary occupation as a Project Coordinator, and considering the substantial evidence from Ms. Naugle's treating providers and sworn statements from those who know Ms. Naugle best, it is clear that she is unable to meet the exertional and non-exertional requirements of her own occupation. Ms. Naugle's generalized anxiety disorder, major depressive disorder, PTSD, coronary artery disease, hypertension, and history of coronary bypass prevent her from consistently working in any employment. Lincoln's denial of Ms. Naugle's claim clearly goes against the provided evidence at this point. Proper consideration was not given to the combination of her physical and non-exertional impairments. Ms. Naugle's treating physicians have indicated that she has restrictions and limitations that would prevent her from performing her own occupation. Ms. Naugle's health has and will

continue to deteriorate since becoming disabled. Ms. Naugle's appeal should reverse the initial denial, and benefits should be approved.

Sincerely,
CRUMLEY ROBERTS, LLP

Peter H. Burke
Attorney

Enclosures

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# Progress Notes

Ronald Joseph Prucha at 2/12/2021 11:00 AM

**Subjective:**

**Patient ID:** Kim Romero Naugle is a 57 y.o. female.
**Date of Service:** 02/12/21

Is this a CM Visit?: No

**Chief Complaint:**
**Chief Complaint**
Patient presents with
- Follow-up
- Anxiety
- Depression

**History of Present Illness:**

I conducted this encounter via secure, live with the patient. Kim was located at . in North Carolina, with the patient and the provider participating in the encounter. Prior to the interview, the risks and benefits of telemedicine were discussed with the patient and verbal consent was obtained. This is a f/u visit in pursuit of her ongoing depression and struggles with stress-related work burden and diminished quality of life and decrease cognitive and physical functioning secondary to the sheer amount of work stress she was incurring at her job and stress she was bringing home to her family. She was placed on paxil 20 mg daily and has been compliant on this regimen and finds it to be somewhat helpful for her after discussing the efficacy of this medication with her husband as manifested by her mood and level of function since having commenced it early Januaary. She continues to feel she suffers from lack of energy and continues to endorse a fair degree of ongoing depressed feelings, of which the paxil has yet to affect completely. She is due to see her therapist at Monarch March 1, 2021 to address some of her mental health concerns including stress and decreased level of psychosocial and physical functioning and the manner in which this aspect of her life is impacting her family and wellbeing overall. In the midst of her current stress and depression, she has been also dealing with some ortho problems and has had some related gyn issues resurface that have both resulted in visits to specialists in the month of January, which have exacerbated her stress levels and increased her depression somewhat. In addition, she is working closely with her disability company who, while pursuing her claim, are making her feel stressed about the issues surrounding this to include whether it will ultimately be successful in reimbursing her for this time she is required to be away from work for mental health reasons. The multiple phone calls and endless questions from her disablity company surrounding her case are compounding her stress levels and making convalescence difficult and protracted for her. She also had a visit with bariatric surgeon, who at this time, recommended therapy in lieu of surgery and she is in the process of pusuing this entitiy for control of her weitght.
at this time she would like to remain on her paxil at 20 mg and c ontinue to determine if she derives benefit from this medication.

**Patient Active Problem List**
Diagnosis
- Essential hypertension

- Anxiety
- Hypothyroidism
- Cervical cancer screening
- OSA on CPAP
- Gastroenteritis
- Other chest pain
- Coronary artery disease of native artery of native heart with stable angina pectoris (CMS/HCC)
- S/P CABG x 2; Left EVH; Sternal Plating; 8/7/18
- Morbid obesity with BMI of 45.0-49.9, adult (CMS/HCC)
- Healthcare maintenance
- URI, acute
- Need for influenza vaccination
- Need for hepatitis C screening test
- BMI 45.0-49.9, adult (CMS/HCC)
- Bacterial sinusitis
- Work stress
- Severe episode of recurrent major depressive disorder, without psychotic features (CMS/HCC)
- Depression

**Past Medical History:**

| Diagnosis | Date |
|---|---|
| • Anxiety | |
| • Arachnoid cyst | |
| • Arthritis | |
| • CAD in native artery | |
| • Cervical cancer screening<br>*normal per pt* | 2014 |
| • Congenital heart disease<br>*Congenital heart mumur* | |
| • CTS (carpal tunnel syndrome) | |
| • Depression | |
| • Disease of thyroid gland | |
| • Fibroid | |
| • Gestational diabetes | |
| • Heart murmur | |
| • Herpes | |
| • High cholesterol<br>*Borderline* | |
| • History of recurrent miscarriages | |
| • Hx of colonoscopy<br>*3 polyps* | 2015 |
| • Hx of mammogram<br>*normal per pt* | 2014 |
| • Hx of pregnancy | |
| • Hypertension | |
| • Meniscus tear | |
| • Post-traumatic stress | |
| • Sleep apnea | 2009 |
| • STD (sexually transmitted disease)<br>*Genital Herpes* | |
| • Torn ACL | |
| • Urinary tract infection<br>*In the past* | |
| • Urogenital trichomoniasis | |
| • Varicella | |

**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| • ABDOMINAL SURGERY | | 1998 |
| • CARDIAC CATHETERIZATION | | |
| • CARPAL TUNNEL RELEASE | | 2015 |
| • CESAREAN SECTION | | |
| • COLONOSCOPY | | 2018 |
| • COLPOSCOPY | | |
| • CONDYLOMA EXCISION/FULGURATION | | |
| • CORONARIES LHC WITH OR WITHOUT LV | Left | 8/3/2018 |
| *Procedure: Coronaries LHC with or without LV; Surgeon: Hemant Solomon, MD; Location: WCH INVASIVE CARDIOLOGY; Service: Cardiovascular; Laterality: Left;* | | |
| • CORONARY ARTERY BYPASS GRAFT | | 08/07/2018 |
| *CAB x 2* | | |
| • double open heart by pass | | |
| • FLEXIBLE SIGMOIDOSCOPY | | |
| • laminectomy | | 1989 |
| • LUMBAR DISCECTOMY | | 1989 |
| • TONSILECTOMY, ADENOIDECTOMY, BILATERAL MYRINGOTOMY AND TUBES | | 1968 |
| • TONSILLECTOMY | | 1968 |
| • TUBAL LIGATION | | 2011 |

**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| • Hypertension | Mother | |
| • Colon polyps | Mother | |
| • Cancer *Cervical & Skin* | Mother | |
| • Diabetes | Mother | |
| • Heart attack | Father | |
| • Hypertension | Father | |
| • Heart disease | Father | |
| • Diabetes | Father | |
| • Vision loss *Macular Degeneration* | Father | |
| • Hypertension | Brother | |
| • Cancer *Breast & Bone* | Maternal Grandmother | |
| • Vision loss | Maternal Grandmother | |
| • Anemia | Maternal Grandmother | |
| • Breast cancer | Maternal Grandmother | 40 |
| • Cancer *Throat* | Maternal Grandfather | |
| • Hypertension | Maternal Grandfather | |
| • Heart disease | Maternal Grandfather | |
| • Diabetes | Maternal Grandfather | |
| • Cancer | Paternal Grandmother | |
| • Vision loss *Macular Degeneration* | Paternal Grandmother | |
| • Cancer *Stomach/Stomach cancer* | Paternal Grandfather | |
| • Alcohol abuse *Both Brothers* | Brother | |
| • Diabetes *Both Brothers* | Brother | |
| • Heart disease *Older Brother* | Brother | |
| • Hypertension *Both Brothers* | Brother | |
| • Diabetes | Brother | |

| | |
|---|---|
| • Hypertension | Brother |
| • Diabetes | Brother |
| • Hypertension<br>*Younger Brother* | Brother |

**Social History**

Occupational History
- Not on file

Tobacco Use

| | |
|---|---|
| • Smoking status: | Former Smoker |
| Packs/day: | 0.50 |
| Years: | 3.00 |
| Pack years: | 1.50 |
| Types: | Cigarettes |
| Quit date: | 1/1/1985 |
| Years since quitting: | 36.1 |
| • Smokeless tobacco: | Never Used |
| • Tobacco comment: 15 thru 19 | |

Substance and Sexual Activity

| | |
|---|---|
| • Alcohol use: | Yes |
| Alcohol/week: | 1.0 standard drinks |
| Types: | 1 Glasses of wine per week |
| *Comment: once a month (Rarely)* | |
| • Drug use: | No |
| • Sexual activity: | Yes |
| Partners: | Male |
| Birth control/protection: | Surgical |
| *Comment: Tubes Tied* | |

**Outpatient Medications Prior to Visit**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin 81 MG tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • atorvastatin (LIPITOR) 40 MG tablet | TAKE 1 TABLET BY MOUTH EVERY DAY AT NIGHT | 90 tablet | 1 |
| • benazepril-hydrochlorthiazide (LOTENSIN HCT) 20-12.5 mg per tablet | TAKE 2 TABLETS BY MOUTH EVERY DAY | 180 tablet | 1 |
| • calcium carbonate (CALCIUM 600 ORAL) | Take 600 Units by mouth. | | |
| • clonazepam (KLONOPIN) 0.5 MG tablet | Take 1 tablet (0.5 mg total) by mouth daily as needed for anxiety. | 30 tablet | 0 |
| • hydrALAZINE (APRESOLINE) 25 MG tablet | TAKE 2 TABLETS (50 MG TOTAL) BY MOUTH 2 (TWO) TIMES A DAY. | 360 tablet | 3 |
| • metoprolol succinate (TOPROL-XL) 100 MG 24 hr tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • multivitamin capsule | Take 1 capsule by mouth 2 (two) times a day. Bausch and lomb areds2 | | |

| | | | |
|---|---|---|---|
| • NON FORMULARY | nightly. CPAP | | |
| • PARoxetine (PAXIL) 20 mg tablet | Take 1 tablet (20 mg total) by mouth daily. | 90 tablet | 1 |
| • SYNTHROID 137 mcg tablet | TAKE 1 TABLET BY MOUTH 6 DAYS A WEEK AND 2 TABLETS BY MOUTH ONCE A WEEK | | 1 |

No facility-administered medications prior to visit.

The following portions of the patient's history were reviewed and updated as appropriate: medications, allergies, past medical history, family history, social history, surgical history, current problems.

**Review of Systems:** All of the patient's ROS were normal except as documented in the HPI.

**Objective:**

LMP 05/14/2020 (Approximate) Comment: pmp had period 3 wks ago

**Physical Exam:**

Gen: alert and oriented, NAD, well appearing
Resp: normal RR, no tachypnea, no retractions
Skin: no visualized rash on observed skin
**Psych:** normal mood, A and O x3

**Assessment and Plan:**

1. **Work stress**
2. Current severe episode of major depressive disorder without psychotic features without prior episode (CMS/HCC)
3. Anxiety

**Work stress**
Chronic stable problem
Will continue her paxil as rx'd
The side effects of this medication were explained in detail to her and she verbalized understanding of these and will contact me to let me know if any occur.
She is toelerating this well and weill continue this w/o change
Will see her hgack ina bout 90 days to check in and see how her visit with therapy went and is going and to assess her response to medication.
She verbalized satisfaction and understanding of this treatment plan and she was afforded the opportunity to ask questions regarding this plan today.

**Depression**

Chronic stable problem
Will continue her paxil as rx'd
The side effects of this medication were explained in detail to her and she verbalized understanding of these and will contact me to let me know if any occur.
She is toelerating this well and weill continue this w/o change
Will see her hgack ina bout 90 days to check in and see how her visit with therapy went and is going and to assess her response to medication.

She verbalized satisfaction and understanding of this treatment plan and she was afforded the opportunity to ask questions regarding this plan today.

**Anxiety**
Chronic stable problem
Will continue her paxil as rx'd
The side effects of this medication were explained in detail to her and she verbalized understanding of these and will contact me to let me know if any occur.
She is toelerating this well and weill continue this w/o change
Will see her hgack ina bout 90 days to check in and see how her visit with therapy went and is going and to assess her response to medication.
She verbalized satisfaction and understanding of this treatment plan and she was afforded the opportunity to ask questions regarding this plan today.

I spent 22 minutes providing patient care, education, and counseling.

**Follow-Up:**

Return in about 3 months (around 5/12/2021).

**Patient Goals:**

**Goals**

- Avoid prcessed foods
  Avoid processed foods or "fast food."
- Blood Pressure < 130/80
  Your blood pressure should generally be less than 130/80. Please let your provider know if your blood pressure numbers are over this goal.
- Increase Daily Activity
  Attempt to increase exertion around daily activities (take the stairs instead of the elevator, walk instead of driving a few blocks, etc.).
- Weight < 68 kg (150 lb)
  3 month goal is to loose 26 lbs based on body fat percent

**Patient Instructions :**

**Patient Instructions**

**Recovering From Depression: Care Instructions**
**Your Care Instructions**



Taking good care of yourself is important as you recover from depression. In time, your symptoms will fade as your treatment takes hold. Do not give up. Instead, focus your energy on getting better.

Your mood will improve. It just takes some time. Focus on things that can help you feel better, such as being with friends and family, eating well, and getting enough rest. But take things slowly. Do not do too much too soon. You will begin to feel better gradually.

**Follow-up care is a key part of your treatment and safety.** Be sure to make and go to all appointments, and call your doctor if you are having problems. It's also a good idea to know your test results and keep a list of the medicines you take.

**How can you care for yourself at home?**

**Be realistic**

- If you have a large task to do, break it up into smaller steps you can handle, and just do what you can.
- You may want to put off important decisions until your depression has lifted. If you have plans that will have a major impact on your life, such as marriage, divorce, or a job change, try to wait a bit. Talk it over with friends and loved ones who can help you look at the overall picture first.
- Reaching out to people for help is important. Do not isolate yourself. Let your family and friends help you. Find someone you can trust and confide in, and talk to that person.
- Be patient, and be kind to yourself. Remember that depression is not your fault and is not something you can overcome with willpower alone. Treatment is important for depression, just like for any other illness. Feeling better takes time, and your mood will improve little by little.

**Stay active**

- Stay busy and get outside. Take a walk, or try some other light exercise.
- Talk with your doctor about an exercise program. Exercise can help with mild depression.
- Go to a movie or concert. Take part in a church activity or other social gathering. Go to a ball game.
- Ask a friend to have dinner with you.

**Take care of yourself**

- Eat a balanced diet with plenty of fresh fruits and vegetables, whole grains, and lean protein. If you have lost your appetite, eat small snacks rather than large meals.
- Avoid using illegal drugs or marijuana and drinking alcohol. Do not take medicines that have not been prescribed for you. They may interfere with medicines you may be taking for depression, or they may make your depression worse.
- Take your medicines exactly as they are prescribed. You may start to feel better within 1 to 3 weeks of taking antidepressant medicine. But it can take as many as 6 to 8 weeks to see more improvement. If you have questions or concerns about your medicines, or if you do not notice any improvement by 3 weeks, talk to your doctor.
- Continue to take your medicine after your symptoms improve. Taking your medicine for at least 6 months after you feel better can help keep you from getting depressed again. If this isn't the first time you have been depressed, your doctor may recommend you to take medicine even longer.

- If you have any side effects from your medicine, tell your doctor. Many side effects are mild and will go away on their own after you have been taking the medicine for a few weeks. Some may last longer. Talk to your doctor if side effects are bothering you too much. You might be able to try a different medicine.
- Continue counseling. It may help prevent depression from returning, especially if you've had multiple episodes of depression. Talk with your counselor if you are having a hard time attending your sessions or you think the sessions aren't working. Don't just stop going.
- Get enough sleep. Talk to your doctor if you are having problems sleeping.
- Avoid sleeping pills unless they are prescribed by the doctor treating your depression. Sleeping pills may make you groggy during the day, and they may interact with other medicine you are taking.
- If you have any other illnesses, such as diabetes, heart disease, or high blood pressure, make sure to continue with your treatment. Tell your doctor about all of the medicines you take, including those with or without a prescription.
- If you or someone you know talks about suicide, self-harm, or feeling hopeless, get help right away. Call the National Suicide Prevention Lifeline at 1-800-273-TALK (1-800-273-8255) or text HOME to 741741 to access the Crisis Text Line. Consider saving these numbers in your phone.

**When should you call for help?**

**Call 911** anytime you think you may need emergency care. For example, call if:

- You feel like hurting yourself or someone else.
- Someone you know has depression and is about to attempt or is attempting suicide.

**Call your doctor now** or seek immediate medical care if:

- You hear voices.
- Someone you know has depression and:
  - Starts to give away his or her possessions.
  - Uses illegal drugs or drinks alcohol heavily.
  - Talks or writes about death, including writing suicide notes or talking about guns, knives, or pills.
  - Starts to spend a lot of time alone.
  - Acts very aggressively or suddenly appears calm.

Watch closely for changes in your health, and be sure to contact your doctor if:

- You do not get better as expected.

To learn more about "Recovering From Depression: Care Instructions", log into your personal health record at https://MyChart.WakeMed.org and search for **N529** in the Health Library.

Current as of: September 23, 2020 Content Version: 12.7

© 2006-2021 Healthwise, Incorporated.
Care instructions adapted under license by your healthcare professional. If you have questions about a medical condition or this instruction, always ask your healthcare professional. Healthwise, Incorporated disclaims any warranty or liability for your use of this information.

## Patient Instructions

Ronald Joseph Prucha at 2/12/2021 11:00 AM

# Recovering From Depression: Care Instructions

## Your Care Instructions



Taking good care of yourself is important as you recover from depression. In time, your symptoms will fade as your treatment takes hold. Do not give up. Instead, focus your energy on getting better.

Your mood will improve. It just takes some time. Focus on things that can help you feel better, such as being with friends and family, eating well, and getting enough rest. But take things slowly. Do not do too much too soon. You will begin to feel better gradually.

**Follow-up care is a key part of your treatment and safety.** Be sure to make and go to all appointments, and call your doctor if you are having problems. It's also a good idea to know your test results and keep a list of the medicines you take.

## How can you care for yourself at home?

### Be realistic

- If you have a large task to do, break it up into smaller steps you can handle, and just do what you can.
- You may want to put off important decisions until your depression has lifted. If you have plans that will have a major impact on your life, such as marriage, divorce, or a job change, try to wait a bit. Talk it over with friends and loved ones who can help you look at the overall picture first.
- Reaching out to people for help is important. Do not isolate yourself. Let your family and friends help you. Find someone you can trust and confide in, and talk to that person.
- Be patient, and be kind to yourself. Remember that depression is not your fault and is not something you can overcome with willpower alone. Treatment is important for depression, just like for any other illness. Feeling better takes time, and your mood will improve little by little.

### Stay active

- Stay busy and get outside. Take a walk, or try some other light exercise.
- Talk with your doctor about an exercise program. Exercise can help with mild depression.
- Go to a movie or concert. Take part in a church activity or other social gathering. Go to a ball game.
- Ask a friend to have dinner with you.

### Take care of yourself

- Eat a balanced diet with plenty of fresh fruits and vegetables, whole grains, and lean protein. If you have lost your appetite, eat small snacks rather than large meals.
- Avoid using illegal drugs or marijuana and drinking alcohol. Do not take medicines that have not been prescribed for you. They may interfere with medicines you may be taking for depression, or they may make your depression worse.
- Take your medicines exactly as they are prescribed. You may start to feel better within 1 to 3 weeks of taking antidepressant medicine. But it can take as many as 6 to 8 weeks to see more improvement. If you have questions or concerns about your medicines, or if you do not notice any improvement by 3 weeks, talk to your doctor.
- Continue to take your medicine after your symptoms improve. Taking your medicine for at least 6 months after you feel better can help keep you from getting depressed again. If this isn't the first time you have been depressed, your doctor may recommend you to take medicine even longer.
- If you have any side effects from your medicine, tell your doctor. Many side effects are mild and will go away on their own after you have been taking the medicine for a few weeks. Some may last longer. Talk to your doctor if side effects are bothering you too much. You might be able to try a different medicine.
- Continue counseling. It may help prevent depression from returning, especially if you've had multiple episodes of depression. Talk with your counselor if you are having a hard time attending your sessions or you think the sessions aren't working. Don't just stop going.
- Get enough sleep. Talk to your doctor if you are having problems sleeping.
- Avoid sleeping pills unless they are prescribed by the doctor treating your depression. Sleeping pills may make you groggy during the day, and they may interact with other medicine you are taking.
- If you have any other illnesses, such as diabetes, heart disease, or high blood pressure, make sure to continue with your treatment. Tell your doctor about all of the medicines you take, including those with or without a prescription.
- If you or someone you know talks about suicide, self-harm, or feeling hopeless, get help right away. Call the National Suicide Prevention Lifeline at 1-800-273-TALK (1-800-273-8255) or text HOME to 741741 to access the Crisis Text Line. Consider saving these numbers in your phone.

## When should you call for help?

**Call 911** anytime you think you may need emergency care. For example, call if:

- You feel like hurting yourself or someone else.
- Someone you know has depression and is about to attempt or is attempting suicide.

**Call your doctor now** or seek immediate medical care if:

- You hear voices.
- Someone you know has depression and:
  - Starts to give away his or her possessions.
  - Uses illegal drugs or drinks alcohol heavily.
  - Talks or writes about death, including writing suicide notes or talking about guns, knives, or pills.
  - Starts to spend a lot of time alone.



**Lincoln/Naugle 0706**

- Acts very aggressively or suddenly appears calm.

Watch closely for changes in your health, and be sure to contact your doctor if:

- You do not get better as expected.

To learn more about "Recovering From Depression: Care Instructions", log into your personal health record at https://MyChart.WakeMed.org and search for **N529** in the Health Library.

Current as of: September 23, 2020 Content Version: 12.7

© 2006-2021 Healthwise, Incorporated.
Care instructions adapted under license by your healthcare professional. If you have questions about a medical condition or this instruction, always ask your healthcare professional. Healthwise, Incorporated disclaims any warranty or liability for your use of this information.

MyChart® licensed from Epic Systems Corporation © 1999 - 2020

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# Telephone Encounter

Ronald Joseph Prucha at 5/28/2021 7:38 AM

Returned Dr. Goldman's call from patient's insurance company he has a psychiatrist representing her claim for disability and wanted to discuss her case. I reviewed with him that I have not seen her in follow-up since February where she had a televisit with me. I also shared with him the Video behavioral health note that states she declined the behavioral health services due to financial reasons.

MyChart® licensed from Epic Systems Corporation © 1999 - 2020

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# Progress Notes

Ronald Joseph Prucha at 6/4/2021 9:15 AM

Ms. Naugle:

I have reviewed the results of your XRAY and everything appears to be within normal limits. No fractures or other abnormalities were identified. Please let me know if you have any questions or concerns.

Dr. Prucha

Ronald Joseph Prucha at 6/4/2021 9:15 AM

**Subjective:**

Subjective

**Patient ID:** Kim Romero Naugle is a 58 y.o. female.

Is this a CM Visit?: **(!) Yes**

**Chief Complaint:**
Anxiety (Follow up ) and Ankle Injury (Twisted it, happened Wednesday )

**History of Present Illness:**
Ms. Naugle presents to the office today for anxiety and depression and she is seeing therapist for this. Her disability insurance company is driving her crazy as she states it and it has become a full time job to get her disability for her anxiety and depression and in the interim, this has exacerbated her condition and she is not sleeping and is now using clonazepam. "I'm write where I was in January and I blame them for the situation I am in". She is frustrated with the process. She is seeing a therapist and is seeing him 2 times per month. She sees Monarch. Her anxiety is daily, worsening and she is using clonazepam and Paxil for this, which she feels is helping in the sense that it is making things steady from a moment to moment basis as she puts it. She is ultra hypersensitive to stress as she puts it and the stress of thinking is too much for her and she is having difficulty making decisions and "I'm not happy right now". Her therapist just left the company he was working for and she is having to make a decision as to whether to follow him to his new company or remain with Monarch, his old company. She is w/o SI. She is unable to extract herself from her work situation b/c she needs her employment for her insurance and cannot work due to the stress and states " I can't go back there at alla nd the stress of going back there is stressful". She has not been working since Dec 24 due to the stress she has experienced at work and the anxiety it has created in her life. When asked, itt is the goals, the work, the micro managing and multi millions of dollars worth of projects and deadlines and people. PM's have 60 projects per person and at any time she was juggling 250 construction projects and worked with 35 people and 6 other teams and also trained everyone who walked in the door. Apparently employees are leaving and she is thankful she is not there presently, which she feels would add more stress to her life. She is using her clonazepam for her anxiety and is taking it about 2 to 3 times per wek in the past month as per pt when asked. It is when she has so much anxiety that all she can do is cry and cry and cry and it helps take it down a

notch and she can relax as she puts it. She is in the process of gathering all of her records and has procured a lawyer to help her with her disability struggle. She is prediabetic. She is doing the medical supervised weight loss and refuses to do bariatric surgery. She struggles to lose weight. Her cardiologist is pushing her to get bariatric surgery but she is against this recommendation due to having too many friends with complications. She is on board with losing the weight slowly through medically supervised weight loss given her heart disease and cards ruled out Keto diet.

**Ankle Injury**

The incident occurred 2 days ago. The incident occurred at home. The injury mechanism was a twisting injury. The pain is at a severity of 5/10. The pain is moderate. The pain has been fluctuating since onset. Associated symptoms include an inability to bear weight and a loss of sensation. She reports no foreign bodies present. The symptoms are aggravated by movement. She has tried NSAIDs for the symptoms. The treatment provided mild relief.

**Thyroid Problem**

Presents for follow-up visit. Symptoms include anxiety.

**Outpatient Medications Prior to Visit**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin 81 MG tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • atorvastatin (LIPITOR) 40 MG tablet | TAKE 1 TABLET BY MOUTH EVERY DAY AT NIGHT | 90 tablet | 1 |
| • benazepril-hydrochlorthiazide (LOTENSIN HCT) 20-12.5 mg per tablet | Take 2 tablets by mouth daily. | 180 tablet | 1 |
| • calcium carbonate (CALCIUM 600 ORAL) | Take 600 Units by mouth. | | |
| • cetirizine (ZYRTEC) 10 MG tablet | Take 10 mg by mouth daily. | | |
| • clonazepam (KLONOPIN) 0.5 MG tablet | Take 1 tablet (0.5 mg total) by mouth daily as needed for anxiety. | 30 tablet | 0 |
| • hydrALAZINE (APRESOLINE) 25 MG tablet | TAKE 2 TABLETS (50 MG TOTAL) BY MOUTH 2 (TWO) TIMES A DAY. | 360 tablet | 3 |
| • metformin (GLUCOPHAGE-XR) 500 MG 24 hr tablet | Take 2 tablets (1,000 mg total) by mouth daily with breakfast. | 60 tablet | 2 |
| • metoprolol succinate (TOPROL-XL) 100 MG 24 hr tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • multivitamin capsule | Take 1 capsule by mouth 2 (two) times a day. Bausch and lomb areds2 | | |
| • NON FORMULARY | nightly. CPAP | | |
| • SYNTHROID 137 mcg tablet | TAKE 1 TABLET BY MOUTH 6 DAYS A WEEK AND 2 TABLETS BY MOUTH ONCE A WEEK | | 1 |
| • PARoxetine (PAXIL) 20 mg tablet | Take 1 tablet (20 mg total) by mouth daily. | 90 tablet | 1 |

No facility-administered medications prior to visit.

Review of Systems
Constitutional: Negative for activity change and appetite change.
Respiratory: Negative for shortness of breath.
Gastrointestinal: Negative for nausea and vomiting.
Psychiatric/Behavioral: Positive for dysphoric mood and sleep disturbance. The patient is nervous/anxious.

**Objective:**

Objective

BP 146/65 (BP Location: Left upper arm, BP Position: Sitting, Cuff Size: Large Adult (Burgundy)) | Pulse 54 | Temp 98.6 °F (37 °C) (Oral) | Resp 18 | Ht 1.795 m (5' 10.67") | Wt (!) 153.7 kg (338 lb 11.8 oz) | LMP 05/14/2020 (Approximate) Comment: pmp had period 3 wks ago | SpO2 98% | BMI 47.69 kg/m²

**Physical Exam**
Vitals reviewed.
Constitutional:
General: She is not in acute distress.
Appearance: She is well-developed.
HENT:
Head: Normocephalic.
Right Ear: External ear normal.
Left Ear: External ear normal.
Nose: Nose normal.
Mouth/Throat:
Pharynx: No oropharyngeal exudate.
Eyes:
Conjunctiva/sclera: Conjunctivae normal.
Neck:
Thyroid: No thyromegaly.
Vascular: No JVD.
Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Pulmonary:
Effort: Pulmonary effort is normal. No respiratory distress.
Breath sounds: Normal breath sounds.
Abdominal:
General: There is no distension.
Palpations: Abdomen is soft.
Musculoskeletal:
Cervical back: Neck supple.
Skin:
General: Skin is warm and dry.

**Assessment:**

Assessment

1. **Anxiety about health**
2. Severe episode of recurrent major depressive disorder, without psychotic features (CMS/HCC)
3. Work stress

4. Acute right ankle pain
5. Prediabetes
6. BMI 45.0-49.9, adult (CMS/HCC)
7. Anxiety

**BMI 45.0-49.9, adult (CMS/HCC)**
Chronic worsening problem
This entity was addressed today and she is taking steps to improve control over this aspect of her life through a combination of both increased physical activity as tolerated and selective calorie restriction through reduced frequency of eating and improved food choices overall. We discussed the benefits of weight loss as regards improved quality of life and reduced health problems. she was asked to make an attempt to improve diet and exercise patterns to aid in medical management of this problem.

**Anxiety**
Chronic worsening problem
Will cont her paxil
The side effects of this medication were explained in detail to her and she verbalized understanding of these and will contact me to let me know if any occur.
She will also use her clonazepam prn as detailed int he HPI
She is aware of the risks of increased sedation and decreased reaction time especially when this medication is used in conjunction with other sedating medications or drugs such as alcohol, prescription or over-the-counter sleep medications. She is aware that these combinations can cause respiratory depression and possible unintended harm due to over-sedation and death.

**Plan:**

Plan

**Orders Placed This Encounter**
Procedures
- XR Ankle Right
- Microalbumin, Urine

**Medications Ordered This Encounter**
Medications
- PARoxetine (PAXIL) 20 mg tablet
  Sig: Take 1 tablet (20 mg total) by mouth daily.
  Dispense: 90 tablet
  Refill: 1

## Goals

- Avoid prcessed foods
  Avoid processed foods or "fast food."
- Blood Pressure < 130/80
  Your blood pressure should generally be less than 130/80. Please let your provider know if your blood pressure numbers are over this goal.
- Increase Daily Activity
  Attempt to increase exertion around daily activities (take the stairs instead of the elevator, walk instead of driving a few blocks, etc.).
- Weight < 68 kg (150 lb)

3 month goal is to loose 26 lbs based on body fat percent

**Follow-Up:**

No follow-ups on file.

## Patient Instructions

Ronald Joseph Prucha at 6/4/2021 9:15 AM

# Anxiety Disorder: Care Instructions

## Your Care Instructions



Anxiety is a normal reaction to stress. Difficult situations can cause you to have symptoms such as sweaty palms and a nervous feeling.

In an anxiety disorder, the symptoms are far more severe. Constant worry, muscle tension, trouble sleeping, nausea and diarrhea, and other symptoms can make normal daily activities difficult or impossible. These symptoms may occur for no reason, and they can affect your work, school, or social life. Medicines, counseling, and self-care can all help.

**Follow-up care is a key part of your treatment and safety.** Be sure to make and go to all appointments, and call your doctor if you are having problems. It's also a good idea to know your test results and keep a list of the medicines you take.

## How can you care for yourself at home?

- Take medicines exactly as directed. Call your doctor if you think you are having a problem with your medicine.
- Go to your counseling sessions and follow-up appointments.
- Recognize and accept your anxiety. Then, when you are in a situation that makes you anxious, say to yourself, "This is not an emergency. I feel uncomfortable, but I am not in danger. I can keep going even if I feel anxious."

- Be kind to your body:
  - Relieve tension with exercise or a massage.
  - Get enough rest.
  - Avoid alcohol, caffeine, nicotine, and illegal drugs. They can increase your anxiety level and cause sleep problems.
  - Learn and do relaxation techniques. See below for more about these techniques.
- Engage your mind. Get out and do something you enjoy. Go to a funny movie, or take a walk or hike. Plan your day. Having too much or too little to do can make you anxious.
- Keep a record of your symptoms. Discuss your fears with a good friend or family member, or join a support group for people with similar problems. Talking to others sometimes relieves stress.
- Get involved in social groups, or volunteer to help others. Being alone sometimes makes things seem worse than they are.
- Get at least 30 minutes of exercise on most days of the week to relieve stress. Walking is a good choice. You also may want to do other activities, such as running, swimming, cycling, or playing tennis or team sports.

**Relaxation techniques**

Do relaxation exercises 10 to 20 minutes a day. You can play soothing, relaxing music while you do them, if you wish.

- Tell others in your house that you are going to do your relaxation exercises. Ask them not to disturb you.
- Find a comfortable place, away from all distractions and noise.
- Lie down on your back, or sit with your back straight.
- Focus on your breathing. Make it slow and steady.
- Breathe in through your nose. Breathe out through either your nose or mouth.
- Breathe deeply, filling up the area between your navel and your rib cage. Breathe so that your belly goes up and down.
- Do not hold your breath.
- Breathe like this for 5 to 10 minutes. Notice the feeling of calmness throughout your whole body.

As you continue to breathe slowly and deeply, relax by doing the following for another 5 to 10 minutes:

- Tighten and relax each muscle group in your body. You can begin at your toes and work your way up to your head.
- Imagine your muscle groups relaxing and becoming heavy.
- Empty your mind of all thoughts.
- Let yourself relax more and more deeply.
- Become aware of the state of calmness that surrounds you.
- When your relaxation time is over, you can bring yourself back to alertness by moving your fingers and toes and then your hands and feet and then stretching and moving your entire body. Sometimes people fall asleep during relaxation, but they usually wake up shortly afterward.
- Always give yourself time to return to full alertness before you drive a car or do anything that might cause an accident if you are not fully alert. Never play a relaxation tape while you drive a car.

## When should you call for help?

**Call 911** anytime you think you may need emergency care. For example, call if:

- You feel you cannot stop from hurting yourself or someone else.

Keep the numbers for these national suicide hotlines: 1-800-273-TALK (1-800-273-8255) and 1-800-SUICIDE (1-800-784-2433). If you or someone you know talks about suicide or feeling hopeless, get help right away.

Watch closely for changes in your health, and be sure to contact your doctor if:

- You have anxiety or fear that affects your life.
- You have symptoms of anxiety that are new or different from those you had before.

To learn more about "Anxiety Disorder: Care Instructions", log into your personal health record at https://MyChart.WakeMed.org and search for **P754** in the Health Library.

Current as of: September 23, 2020 Content Version: 12.9

© 2006-2021 Healthwise, Incorporated.
Care instructions adapted under license by your healthcare professional. If you have questions about a medical condition or this instruction, always ask your healthcare professional. Healthwise, Incorporated disclaims any warranty or liability for your use of this information.

MyChart® licensed from Epic Systems Corporation © 1999 - 2020

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# Progress Notes

Ronald Joseph Prucha at 10/6/2021 3:00 PM

**Subjective:**

Subjective

**Patient ID:** Kim Romero Naugle is a 58 y.o. female.

Is this a CM Visit?: **(!) Yes**

**Chief Complaint:**
Anxiety (increasing medication), gag reflex (cpap, choking and coughing, postnasal drip after sleeping), and Skin Problem (redness on neck, no pain, possible rosacea)

**History of Present Illness:**
Ms. Naugle presents to the office today for f/u of her anxiety and she is with her therapist and saw him last week and nothing has changed from an anxiety ptsd standpoint as per pt. She is unvaccinated and is not taking her vaccine and this is a stress in her family about this. She is a legal battle with her job and her disability company and this is stressing her out. She has ocp and uses CPAP. She had a choking episode the other day and lately she has developed a choking coughing epeisode in the AM most mornings of the week. This is every monring and is more frequent and she is w/ more post nasal drip and worse w/ AC in a room. She had an episode during a movie that left her unable to breath for several minutes and she panicked and this was alarming to her and after that seh was fine. She is w/o wheezing. She is feeling better after having left work and she is in a better place and is having some family issues.

**<u>Anxiety</u>**
Presents for follow-up visit. Symptoms include decreased concentration, excessive worry, irritability, nervous/anxious behavior, panic and restlessness. Patient reports no chest pain, nausea, palpitations or shortness of breath. Symptoms occur constantly. The severity of symptoms is moderate. The quality of sleep is fair.

Compliance with medications is 76-100%.

**<u>Hypertension</u>**
This is a chronic problem. The current episode started more than 1 year ago. The problem is unchanged. Associated symptoms include anxiety. Pertinent negatives include no chest pain, palpitations or shortness of breath. There are no associated agents to hypertension. Risk factors for coronary artery disease include obesity. Past treatments include diuretics and ACE inhibitors. The current treatment provides mild improvement. There is no history of heart failure. Identifiable causes of hypertension include a thyroid problem. There is no history of chronic renal disease.

**<u>Thyroid Problem</u>**
Presents for follow-up visit. Symptoms include anxiety. Patient reports no cold intolerance, diarrhea, fatigue, heat intolerance, palpitations or visual change. The symptoms have been stable. There is no history of heart failure.

BP 130/80 Comment: she is taking her home reaedings. and her cards doc is in on htis as well. | Pulse 51 | Temp 98.3 °F (36.8 °C) (Oral) | Resp 16 | Wt (!) 146.3 kg (322 lb 10.3 oz)

| LMP 05/14/2020 (Approximate) Comment: pmp had period 3 wks ago | SpO2 96% | BMI 46.29 kg/m²

**Outpatient Medications Prior to Visit**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| • aspirin 81 MG tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • atorvastatin (LIPITOR) 40 MG tablet | TAKE 1 TABLET BY MOUTH EVERY DAY AT NIGHT | 90 tablet | 1 |
| • benazepril-hydrochlorthiazide (LOTENSIN HCT) 20-12.5 mg per tablet | Take 2 tablets by mouth daily. | 180 tablet | 1 |
| • calcium carbonate (CALCIUM 600 ORAL) | Take 600 Units by mouth. | | |
| • cetirizine (ZYRTEC) 10 MG tablet | Take 10 mg by mouth daily. | | |
| • clonazepam (KLONOPIN) 0.5 MG tablet | Take 1 tablet (0.5 mg total) by mouth daily as needed for anxiety. | 30 tablet | 0 |
| • hydrALAZINE (APRESOLINE) 50 MG tablet | Take 1 tablet (50 mg total) by mouth 3 (three) times a day. Take at 8am, 2pm and 10pm daily | 360 tablet | 3 |
| • metformin (GLUCOPHAGE-XR) 500 MG 24 hr tablet | Take 2 tablets (1,000 mg total) by mouth daily with breakfast. | 60 tablet | 2 |
| • metoprolol succinate (TOPROL-XL) 100 MG 24 hr tablet | TAKE 1 TABLET BY MOUTH EVERY DAY | 90 tablet | 3 |
| • multivitamin capsule | Take 1 capsule by mouth 2 (two) times a day. Bausch and lomb areds2 | | |
| • SYNTHROID 137 mcg tablet | TAKE 1 TABLET BY MOUTH 6 DAYS A WEEK AND 2 TABLETS BY MOUTH ONCE A WEEK | | 1 |
| • PARoxetine (PAXIL) 20 mg tablet | Take 1 tablet (20 mg total) by mouth daily. | 90 tablet | 1 |
| • NON FORMULARY | nightly. CPAP | | |
| • chlorhexidine (PERIDEX) 0.12 % solution | SWISH AND SPIT 15 30ML 3 TIMES A DAY | | |

No facility-administered medications prior to visit.

Review of Systems
Constitutional: Positive for irritability. Negative for activity change, appetite change, fatigue, fever and unexpected weight change.
HENT: Negative for congestion and nosebleeds.
Eyes: Negative for discharge.
Respiratory: Negative for chest tightness and shortness of breath.
Cardiovascular: Negative for chest pain, palpitations and leg swelling.
Gastrointestinal: Negative for abdominal pain, blood in stool, diarrhea, nausea and vomiting.
Endocrine: Negative for cold intolerance, heat intolerance, polydipsia, polyphagia and polyuria.
Genitourinary: Negative for dysuria, flank pain and hematuria.

Musculoskeletal: Negative for arthralgias.
Skin: Negative for rash.
Allergic/Immunologic: Negative for immunocompromised state.
Neurological: Negative for seizures, weakness and light-headedness.
Hematological: Negative for adenopathy.
Psychiatric/Behavioral: Positive for decreased concentration. Negative for self-injury. The patient is nervous/anxious.

**Objective:**

Objective

BP 130/80 Comment: she is taking her home reaedings. and her cards doc is in on htis as well. | Pulse 51 | Temp 98.3 °F (36.8 °C) (Oral) | Resp 16 | Wt (!) 146.3 kg (322 lb 10.3 oz) | LMP 05/14/2020 (Approximate) Comment: pmp had period 3 wks ago | SpO2 96% | BMI 46.29 kg/m²

**Physical Exam**
Vitals reviewed.
Constitutional:
General: She is not in acute distress.
Appearance: She is well-developed.
HENT:
Head: Normocephalic.
Right Ear: External ear normal.
Left Ear: External ear normal.
Nose: Nose normal.
Mouth/Throat:
Pharynx: No oropharyngeal exudate.
Eyes:
Conjunctiva/sclera: Conjunctivae normal.
Neck:
Thyroid: No thyromegaly.
Vascular: No JVD.
Cardiovascular:
Rate and Rhythm: Normal rate and regular rhythm.
Pulmonary:
Effort: Pulmonary effort is normal. No respiratory distress.
Breath sounds: Normal breath sounds.
Abdominal:
General: There is no distension.
Palpations: Abdomen is soft.
Musculoskeletal:
Cervical back: Neck supple.
Skin:
General: Skin is warm and dry.

**Assessment:**

Assessment

1. **Anxiety**
2. Post-nasal drip
3. Choking due to phlegm in larynx, initial encounter
4. Essential hypertension

5. BMI 45.0-49.9, adult (CMS/HCC)
6. H/O heart bypass surgery
7. Hypothyroidism, unspecified type
8. Morbid obesity with BMI of 45.0-49.9, adult (CMS/HCC)

**Essential hypertension**
Hypertension control:

Medications:
Medication Management:
Home blood pressure monitoring recommended

The patient's care plan was reviewed and updated. Instructions and counseling were provided regarding patient goals and barriers. She was counseled to adopt a healthy lifestyle. Educational resources and self-management tools have been provided.

**Anxiety**
Chronic worsening problem
Will increase her paxil to 40 mg
The side effects of this medication were explained in detail to her and she verbalized understanding of these and will contact me to let me know if any occur.

**Hypothyroidism**
Chronic stable problem
This problem is presently well controlled and she see cary endo for this and her pre-diabetes as well.
She will continue her levothyoxine as prescribed and f/u with them as regards this entity of her health.

**Morbid obesity with BMI of 45.0-49.9, adult (CMS/HCC)**
Chronic worsening problem
This entity was addressed today and she is taking steps to improve control over this aspect of her life through a combination of both increased physical activity as tolerated and selective calorie restriction through reduced frequency of eating and improved food choices overall. We discussed the benefits of weight loss as regards improved quality of life and reduced health problems. she was asked to make an attempt to improve diet and exercise patterns to aid in medical management of this problem.

**Plan:**

Plan

**Orders Placed This Encounter**
Procedures
- Referral to ENT

**Medications Ordered This Encounter**
Medications
- PARoxetine (PAXIL) 40 MG tablet
  Sig: Take 1 tablet (40 mg total) by mouth daily.
  Dispense: 30 tablet
  Refill: 2

## Goals

- Avoid prcessed foods
  Avoid processed foods or “fast food.”

- Blood Pressure < 130/80
  Your blood pressure should generally be less than 130/80. Please let your provider know if your blood pressure numbers are over this goal.

- Increase Daily Activity
  Attempt to increase exertion around daily activities (take the stairs instead of the elevator, walk instead of driving a few blocks, etc.).

- Weight < 68 kg (150 lb)
  3 month goal is to loose 26 lbs based on body fat percent

**Follow-Up:**

No follow-ups on file.

MyChart® licensed from Epic Systems Corporation © 1999 - 2020

WakeMed

WakeMed, 3000 New Bern Avenue, Raleigh, NC 27610, 919-350-8000

Name: Kim Romero Naugle | DOB: | MRN: 4119042 | PCP: Ronald Joseph Prucha Jr., MD

# Letter Details

WakeMed
Primary Care

110 Kildaire Park Drive
Suite 305
Cary NC 27518-6130
Phone: 919-235-6575
Fax: 919-235-6598

re:
Kim Romero Naugle

07/15/21

To whom it may concern:

Ms. Naugle continues to be under my medical care and remains unable to work due to an underlying medical condition She has not, as yet, been medically cleared to return to work and continues to convalesce from her condition.

Sincerely,

Ronald Joseph Prucha Jr., M.D.
PRIMARY CARE-KILDAIRE FARM RD
WAKEMED PRIMARY CARE-KILDAIRE
110 KILDAIRE PARK DRIVE
SUITE 305
CARY NC 27518-6130
Dept: 919-235-6575
Dept Fax: 919-235-6598
Loc: 919-235-6575

*This letter was initially viewed by Kim Romero Naugle at 7/16/2021 11:49 AM.*

MyChart® licensed from Epic Systems Corporation © 1999 - 2020

# Monarch

130 N Judd Pkwy NE
Fuquay-Varina, NC 275262367

| | | | |
|---|---|---|---|
| Client Name: | **Kim Naugle** | Employee Name: | **Eric Kelly , LCSW** |
| DOB/Age: | **58** | Insurance ID: | **914229840** |
| Service/Modifier/CPT: | **Ind Ther Telehealth GT 90834** | Program: | **OP** |
| Date/Time: | **4/15/2021 9:00 AM to 9:45 AM** | Duration (Mins): | **45** |
| Recipient: | **ClientOnly** | Location: | **BH-WakeJud(OF)** |
| Medicaid Number: | | | |
| Record Number | **894744** | External ID (ECHO) | |

## PIE SERVICE NOTE

**Date of Birth:**

**Credible Patient ID:**
**894744**

**Medicaid Number:**

**External (Echo) ID:**

**Type of Contact:** Telehealth / Video

**Patient's Location:** Home or other location (not a Monarch facility)

**Adress 1:**
**City:**
**State:**
**Zip:**
**Phone:**
**The patient has given verbal consent for treatment by telehealth/telephone:** Yes
**Privacy:** I have verified that the patient is alone
**Place of Service:** Home

**EBP Utilized:** Solution Focused Therapy

**Purpose**
***(Please check box to add notes - This field is mandatory)*:** .
To engage PWS in more Solution Focused based conversation related to her preferred future and identifying her resources that have gotten her through things; To supportively listen as PWS voluntarily shared family history connected to mom.

**Intervention *(Please check box to add notes)*:** .
This OPT utilized anticipatory guidance with PWS to encourage a reduction in bothersome thoughts/feelings related to anxiety while using "miracle questions" to allow her to focus on hopeful possibilities as she reported waking up in a very good mood this morning. This OPT challenged PWS to look at exception periods to the problems happening and to identify what was, is, and could be different and how she might be able to elicit some early changes beginning today. This OPT acknowledged her positive changes, efforts, strengths, and skills (All of her personal resources) that are continually contributing to PWS's most desired outcome of her getting back to "taking care of business."

**Effectiveness *(Please check box to add notes)*:** .
PWS is making a greater effort to manage the presenting problems to also include the unresolved issues with her mother as evidenced by showing an improved ability and desire to change by imagining what her "best hopes/preferred future" would look like as she continues to explore and apply solutions to reduce the intensity of problems. PWS also appears to be paying closer attention to the signs/clues that are making the problems feel less intense, such as when her husband notices and acknowledges her improvements. PWS also managed to identify

some new solutions, such as tackling things she had put off as opposed to avoiding them, to get her closer to feeling like she was "taking care of business" again.

**Was Individual admitted to Hospital, reported an ER visit, or released from Incarceration since date of last service?:** No

## EXISTING PLAN INFORMATION

Employee Signature

4/15/2021 10:53 AM
Eric Kelly - Behavioral Health Therapist V
LCSW

Approved by 42214 on 4/19/2021

Monarch

# Monarch

130 N Judd Pkwy NE
Fuquay-Varina, NC 275262367

| | | | |
|---|---|---|---|
| Client Name: | **Kim Naugle** | Employee Name: | **Eric Kelly , LCSW** |
| DOB/Age: | | Insurance ID: | **914229840** |
| Service/Modifier/CPT: | **Ind Ther Telehealth GT 90837** | Program: | **OP** |
| Date/Time: | **4/1/2021 10:00 AM to 11:00 AM** | Duration (Mins): | **60** |
| Recipient: | **ClientOnly** | Location: | **BH-WakeJud(OF)** |
| Medicaid Number: | | | |
| Record Number | **894744** | External ID (ECHO) | |

## PIE SERVICE NOTE

**Date of Birth:**

**Credible Patient ID:**
894744

**Medicaid Number:**

**External (Echo) ID:**

**Type of Contact:** Telehealth / Video

**Patient's Location:** Home or other location (not a Monarch facility)

**Adress 1:**
**City:**
**State:**
**Zip:**
**Phone:**
**The patient has given verbal consent for treatment by telehealth/telephone:** Yes
**Privacy:** I have verified that the patient is alone
**Place of Service:** Home

**EBP Utilized:** Solution Focused Therapy

**Purpose**
***(Please check box to add notes - This field is mandatory)*:** .
To assist PWS by collaboratively deriving at solutions to get closer to her desired outcome of wanting to resume the feeling of "taking care of business."

**Intervention *(Please check box to add notes)*:** .
OPT utilized anticipatory guidance with PWS to encourage a reduction in bothersome thoughts/feelings related to feeling unmotivated and overwhelmed. OPT challenged PWS to look at exception periods to the problem happening and to identify what was and could be different and how she might be able to elicit some early changes. OPT acknowledged her positive changes, efforts, strengths, and skills that have previously contributed to PWS's most desired outcome as well.

**Effectiveness *(Please check box to add notes)*:** .
PWS is making a greater effort to manage her feelings as evidenced by showing an improved ability and desire to change them by imagining what her "best hopes/preferred future" could look like as she continues to explore and apply solutions towards reducing the problems. PWS was asked to pay closer attention to signs and clues that are making the problem feel less intense/bothersome as she starts taking steps towards getting things done in her life. PWS also managed to identify new solutions, such as sitting at her desk to begin sifting through bills that are past due, to better manage her stress level while reducing overwhelming feelings.

**Was Individual admitted to Hospital, reported an ER visit, or released from Incarceration since date of last service?:** No

## EXISTING PLAN INFORMATION

Employee Signature

4/1/2021 11:18 AM
Eric Kelly - Behavioral Health Therapist V
LCSW

Approved by 40015 on 4/4/2021

# Monarch

130 N Judd Pkwy NE
Fuquay-Varina, NC 275262367

| | | | |
|---|---|---|---|
| Client Name: | **Kim Naugle** | Employee Name: | **Eric Kelly , LCSW** |
| DOB/Age: | | Insurance ID: | **914229840** |
| Service/Modifier/CPT: | **Ind Ther Telehealth GT 90837** | Program: | **OP** |
| Date/Time: | **3/1/2021 9:00 AM to 10:00 AM** | Duration (Mins): | **60** |
| Recipient: | **ClientOnly** | Location: | **BH-WakeJud(OF)** |
| Medicaid Number: | | | |
| Record Number | **894744** | External ID (ECHO) | |

## PIE SERVICE NOTE

**Date of Birth:**

**Credible Patient ID:**
**894744**

**Medicaid Number:**

**External (Echo) ID:**

**Type of Contact:** Telehealth / Video

**Patient's Location:** Home or other location (not a Monarch facility)

**Adress 1:**

**City:**

**Zip:**

**Phone:**

**The patient has given verbal consent for treatment by telehealth/telephone:** Yes

**Privacy:** I have verified that the patient is alone

**Place of Service:** Home

**EBP Utilized:** Solution Focused Therapy

**Purpose**
***(Please check box to add notes - This field is mandatory)***: .
To engage PWS in developing/completing the initial treatment plan; To provide new grounding exercises to help PWS cope better with her anxiety/panic symptoms.

**Intervention *(Please check box to add notes)***: .
This OPT collaborated with PWS on developing/creating new short- and long-range goals. This OPT reviewed the initial plan contents following completion to ensure PWS agreed with her initial treatment goals. This OPT also educated PWS on the benefits to practicing grounding exercises to minimize anxiety/panic symptoms.

**Effectiveness *(Please check box to add notes)***: .
PWS assisted with the development of her treatment goals this session. PWS provided "verbal consent" due to Covid-19. The next 90- day review is scheduled for 06/1/21 and the annual review will be held on or before 02/28/22. PWS also appeared interested in receiving grounding exercises reviewed this session and agreed to begin practicing those she finds most helpful to her.

**Was Individual admitted to Hospital, reported an ER visit, or released from Incarceration since date of last service?:** No

## EXISTING PLAN INFORMATION

Employee Signature

3/1/2021 10:37 AM
Eric Kelly - Behavioral Health Therapist V
LCSW

Approved by 40015 on 3/1/2021

Monarch

# Monarch

130 N Judd Pkwy NE
Fuquay-Varina, NC 275262367

| | | | |
|---|---|---|---|
| Client Name: | **Kim Naugle** | Employee Name: | **Eric Kelly , LCSW** |
| DOB/Age: | **58** | Insurance ID: | **914229840** |
| Service/Modifier/CPT: | **Tx Plan NB** | Program: | **OP** |
| Date/Time: | **3/1/2021 9:00 AM to 10:00 AM** | Duration (Mins): | **60** |
| Recipient: | **ClientOnly** | Location: | **BH-WakeJud(OF)** |
| Medicaid Number: | | | |
| Record Number | **894744** | External ID (ECHO) | |

## TREATMENT PLAN

**Master Plan Start/End Dates**

**Description:**
3/1/21-2/28/22

**Start Date:**
3/1/2021

**End Date:**
2/28/2022

---

**Long Range Outcome**

1.

**Description:**
"How to manage multiple life stressors. I would like to know why I'm having anxiety/PTSD/depression and to learn tools to

**How would you rate your progress in achieving this outcome? (0 = no progress; 10 = fully achieved):**
Kim reports a current score of "2" as it relates to her long range outcome.

---

**WHAT (Short-Range Goal)**

1a.

**Description:**
Close-to-daily actions/steps to help me better cope with anxiety and to better manage life stressors:<ul><li>To eventually run current company with husband. </li><li>To distance self from family members who create drama for me (To improve relationships with some family members).</li><li>To obtain a more fulfilling job (Acting, outdoors, and gardening are big interests).</li><li>Used to "act" (Resume acting?--Used to be in theater). </li><li>To get through several unfinished tasks (Taxes, medical bills, home repairs, yardwork, "end of life" documents, centralize monies with husband, etc.) to help me get back to doing more exciting things. </li><li>To be "happy, healthy, and have enough income to survive" (To not always be "right," but to do the right things and be happy). </li><li>To listen better as opposed to "overtalking" others in my life. </li><li>To build better tolerance for things that annoy me.</li><li>To use grounding techniques to help with anxiety/panic symptoms as well. </li></ul>

**Documentation:**

**Who is Responsible?:**
Kim Naugle (PWS) and Monarch therapist.

**Service, Frequency, and Intervention:**
Individual OPT up to once per week.

**Target Date (Not to exceed 12 months):**
3/1/2021

**Date Goal was reviewed (Enter the date progress towards the goal was reviewed.):**
N/A. New goal.

**Status Codes (Based on progress review, enter the status code.):**
New

**Progress toward goal and justification for continuation or discontinuation of goal:**
New goal remains in place. Next review period (In 90 days) will determine the status change of this goal.

---

## OTHER PLAN DETAILS

**Tx Plan Start Date:** 03/01/2021

**Tx Plan End Date:** 02/28/2022

### I. PERSON RECEIVING SERVICES

---

**I confirm and agree with my involvement in the development of this Treatment Plan. My signature means that I agree with the services/supports to be provided.:** CONFIRMED

**I understand that I have the choice of service providers and may change service providers at any time, by contacting the person responsible for this Treatment Plan.:** CONFIRMED

**Legally Responsible Person: Self:** Yes

**Medical necessity for services requested is present and constitutes the service order:** Yes

| Employee Signature | Client Signature |
| --- | --- |
| 3/1/2021 10:27 AM<br>Eric Kelly - Behavioral Health Therapist V<br>LCSW | 3/1/2021 10:28 AM<br>Verbal consent due to Covid-19. |

Approved by 39742 on 3/1/2021

# Monarch

130 N Judd Pkwy NE
Fuquay-Varina, NC 275262367

| | | | |
|---|---|---|---|
| Client Name: | **Kim Naugle** | Employee Name: | **Maimouna Diop , NP** |
| DOB/Age: | **58** | Insurance ID: | **914229840** |
| Service/Modifier/CPT: | **EM Est Telehealth GT 99214** | Program: | **MEDMGMT** |
| Date/Time: | **11/24/2020 1:30 PM to 2:30 PM** | Duration (Mins): | **60** |
| Recipient: | **ClientOnly** | Location: | **BH-WakeJud(OF)** |
| Medicaid Number: | | | |
| Record Number | **894744** | External ID (ECHO) | |

## PSYCH E/M ESTABLISHED

**Date of Birth:**

**Credible Client ID:**
**894744**

**Medicaid Number:**

**External (Echo) ID:**

**Age:**
**57**

**Identified Gender:**
**Female**

**Diagnosis:**
**Effective Date:** 11/3/2020
**Last Updated:** 11/3/2020
1(300.02 / F41.1) GENERALIZED ANXIETY DISORDER
2(296.32 / F33.1) Major depressive disorder, Recurrent episode, Moderate
3(309.81 / F43.10) POSTTRAUMATIC STRESS DISORDER
**WHODAS 2.0 General Disability**

**Contact Type:** Telehealth / Video

**Patient's Location:** Home or other location (not a Monarch facility)

**Address 1:** on file

**Phone Number if Disconnected:** on file

**The patient has given verbal consent for treatment by telehealth/telephone:** Yes

**Privacy:** The patient is not alone but has identified anyone in the room with him/her and verified that they consent to having their telephone appointment in the presence of others. I have noted any individuals reported to me in the section below.

**Sources of Information Contained in this Assessment (check all that apply):**

**Patient:** .

**Parent or Guardian:** .

**Spouse/ Friend/ Family Member:** .
Ronald

**Other Treating Provider:** .
Sirrell Butler, LCSW

**Identifying Data:** Kim Naugle is a 57 yo white woman presenting to establish care. Prior diagnoses: anxiety, depression and PTSD

**Chief Complaint / Presenting Problem:**

***(in patient's own words, use quotations)*** **:** anxious and having panic attacks

**History of the Present Illness:**

***1-3 Elements = Brief***
***4+ elements = Extended***
***Elements: location, quality, severity, duration, timing, content, modifying factors, associated signs/symptoms***

MONARCH
350 Pee Dee Ave.
Suite 101
Albemarle, NC
28001

**Client Name**: Kim Naugle
**Employee Name**: Eric Kelly , LCSW

**Date / Time**: 05/06/2021 09:00 AM to 10:00 AM
**DOB / Axis I**: / 296.32

## PHQ-9 ADULT

**1. Little interest or pleasure in doing things:** 2

**2. Feeling down, depressed, or hopeless:** 2

**3. Trouble falling asleep or staying asleep, or sleeping too much:** 3

**4. Feeling tired or having little energy:** 3

**5. Poor appetite or overeating:** 1

**6. Feeling bad about yourself or that you are a failure or have let yourself or your family down.:** 3

**7. Trouble concentrating on things, such as reading the newspaper or watching television:** 1

**8. Moving or speaking so slowly that other people could have noticed. Or the opposite - being so fidgety or restless that you have been moving around a lot more than usual.:**

0

**9. Thoughts that you would be better off dead or of hurting yourself.:** 0

**10. If you checked off any problems, how difficult have these problems made it for you to do your work, take care of things at home, or get along with other people?:**

Very difficult

**Score:** 15

**Today's Date:** 5/6/2021

Monarch

MONARCH
350 Pee Dee Ave.
Suite 101
Albemarle, NC
28001

**Client Name**: Kim Naugle
**Employee Name**: Eric Kelly , LCSW

**Date / Time**: 05/06/2021 09:00 AM to 10:00 AM
**DOB / Axis I**: / 296.32

## PIE Service Note

**Credible Patient ID:**

**894744**

**Type of Contact:** Telehealth / Video
**Patient's Location:** Home or other location (not a Monarch facility)
**Adress 1:**
**City:**
**State**:
**Zip:**
**Phone:**
**The patient has given verbal consent for treatment by telehealth/telephone:** Yes
**Privacy:** I have verified that the patient is alone
**Place of Service:** Home
**EBP Utilized:** Solution Focused Therapy
**Purpose**
***(Please check box to add notes - This field is mandatory)***: .

To engage PWS in f/u PHQ9 inventory (Scores in the moderate to severe range for depression); To assist with coordination of PWS to finance department to correct billing for services issues; To announce departure from Monarch as of 5/28/21.

**Intervention** ***(Please check box to add notes)***: .

This OPT engaged PWS in PHQ9 while also using it as an intervention tool to assess and provide insight and solutions to some of her increased symptoms this session. This OPT also reached out to his immediate supervisor via "Teams" to inquire about who to contact for billing/financial questions regarding claims for OPT. Lastly, this OPT also announced to PWS that he was leaving the agency the end of this month to which she took fairly well. This OPT explained that he would assist with making the re-assignment as smooth as possible as well.

**Effectiveness** ***(Please check box to add notes)*****:** .

PWS presents as rather stressed with home responsibilities and the long administrative wait times via Monarch's staff for a medical records request. PWS continues to vent her feelings during the sessions held and expressed appreciation to this OPT for assisting with some of her administrative questions as well. She also took this OPT's announcement of leaving the agency fairly well and wished him well as he departs by the end of this month. PWS spoke of having to use her anti-anxiety medication as needed given spike in her anxiety recently and also has sleeping difficulties to date. PWS looks forward to meeting with this OPT at least one more time later this month.

**Was Individual admitted to Hospital, reported an ER visit, or released from Incarceration since date of last service?:**

No

MONARCH
350 Pee Dee Ave.
Suite 101
Albemarle, NC
28001

**Client Name**: Kim Naugle | **Date / Time**: 05/20/2021 10:00 AM to 11:00 AM
**Employee Name**: Eric Kelly , LCSW | **DOB / Axis I**: / 300.02

## PIE Service Note

**Credible Patient ID:**

**894744**

**Type of Contact:** Telehealth / Video
**Patient's Location:** Home or other location (not a Monarch facility)
**Adress 1:**
**City:**
**State:**
**Zip:**
**Phone:** (
**The patient has given verbal consent for treatment by telehealth/telephone:** Yes
**Privacy:** I have verified that the patient is alone
**Place of Service:** Home
**EBP Utilized:** Solution Focused Therapy
**Purpose**
***(Please check box to add notes - This field is mandatory)***: .

To allow PWS to emotionally vent her feelings connected to employment/disability related issues; To also have some discussion around upcoming OPT change as she has requested a new OPT because of this OPT preparing to leave Monarch; To educate PWS about PTSD and varying expressions and presentations.

**Intervention *(Please check box to add notes)***: .

This OPT validated PWS' feelings regarding her current situation with employer and having to phase into long term disability giveh her medical and mental health complications. This OPT also inquired as to what she would like shared with her "insurance adjuster" during follow up phone call (PWS signed a release form granting this OPT permission to communicate with this individual about her treatment as well). This OPT praised PWS for actively working through these challenges to reduce her stress level to date. This OPT processed/explored next treatment steps and talked of potential therapist she may begin to work with following this OPT's departure. This

OPT also educated PWS on the various trauma expressions and unique experiences per each person who is diagnosed with a trauma related disorder as well.

**Effectiveness *(Please check box to add notes)*:** .

PWS managed to use this session to effectively express her feelings related to work stress while trying to acquire her LT disability benefits while on temporary leave. PWS sent over the necessary release and exchange of information forms allowing Monarch to share treatment information to further justify her need for LT disability. PWS voiced her appreciation to this OPT for helping with this matter. PWS voiced being okay with next possible OPT to be assigned to her as well. PWS also asked about trauma and the varying degrees and ways it is presented across those who experience it to help her broaden her view of how it impacts individuals in different ways. PWS thanked this OPT for all of his help and wished him luck moving forward in his new therapy position before ending.

**Was Individual admitted to Hospital, reported an ER visit, or released from Incarceration since date of last service?:**

No